ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (111070)
DAVID W. MITCHELL (199706)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com

DEVINE GOODMAN RASCO &
  WATTS-FITZGERALD, LLP
JOHN W. DEVINE
LAWRENCE D. GOODMAN
ROBERT J. KUNTZ, JR.
2800 Ponce De Leon Blvd., Suite 1400
Coral Gables, FL  33134
Telephone:  305/374-8200
305/374-8208 (fax)
jdevine@devinegoodman.com
lgoodman@devinegoodman.com
rkuntz@devinegoodman.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| B & R SUPERMARKET, INC., d/b/a MILAM'S MARKET, a Florida corporation, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiffs,<br><br>  vs.<br><br>VISA, INC., a Delaware corporation, et al.,<br><br>              Defendants. | Case No. 4:16-cv-01150-DMR<br><br>CLASS ACTION<br><br>NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION<br><br>DATE:    April 28, 2016<br>TIME:    11:00 a.m.<br>CTRM:  4 - 3rd Floor<br>JUDGE:  Hon. Mag. Judge Donna M. Ryu |

1127154_1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...........................................................................................................1

II. NATURE OF THE ACTION .........................................................................................2

III. STANDARD FOR RELIEF ............................................................................................4

    A. Plaintiffs and the Class Have Shown a Likelihood of Success on the Merits ...................................................................................................................4

        1. Plaintiffs Are Likely to Succeed on Their Sherman Antitrust Act Claims ......................................................................................................5

        2. Plaintiffs Are Likely to Succeed on Cartwright Act Claims......................6

        3. Plaintiffs Are Likely to Succeed on Their Unjust Enrichment Claims ........................................................................................................7

    B. Failure to Order Preliminary Relief Will Cause Irreparable Harm.........................7

    C. The Balance of Equities Tips in Favor of Plaintiffs ................................................8

    D. The Relief Requested Is in the Public Interest.........................................................9

IV. CONCLUSION................................................................................................................10

TO:   ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on April 28, 2016 at 11:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Magistrate Judge Donna M. Ryu, Courtroom 4 – 3rd Floor, Oakland United States Courthouse, 1301 Clay Street, Oakland, CA 94612, Plaintiffs Milam's Market and Grove Liquors LLC (collectively, "Plaintiffs"), will, and hereby do, move this Court pursuant to Rule 65 of the Federal Rules of Civil Procedure, and this Court's inherent authority to manage this litigation, seeking for an Order granting Preliminary Injunction.

Plaintiffs respectfully request the Court enter the proposed form of injunction filed with this motion.  Filed concurrently with the motion are:  (1) Plaintiffs' Memorandum of Law in Support of the Motion; (2) Declaration of Carmen A. Medici and accompanying Exhibits; and (3) [Proposed] Order granting the motion.

## I.   INTRODUCTION

Plaintiffs Milam's Market and Grove Liquors LLC – on behalf of a class of similarly situated persons and entities (the "Class," further defined below) – seek a preliminary injunction ordering Defendants[1] to halt imposition of the so-called "Liability Shift" for financial responsibility for certain credit card transactions which went into effect October 1, 2015, until all class members who have sought to comply with Defendants' announced Liability Shift receive the promised "certifications" which designate Plaintiffs as compliant with the new standards.  Without an injunction, Plaintiffs and members of the proposed class will continue to lose customers, waste time and be charged for certain transactions which they are unable to avoid.  Each and all of these deleterious impacts arise because of Defendants' agreement to shift liability from card issuing banks to merchants while failing to provide the necessary approvals or certifications within deadlines also set by Defendants.  Plaintiffs also seek a notice to the Class to inform them of the injunction.

---

[1]   Visa, Inc.; Visa Usa, Inc.; MasterCard International Incorporated; American Express Company; Discover Financial Services; Bank of America, N.A.; Barclays Bank Delaware; Capital One Financial Corporation; Chase Bank USA, National Association; Citibank (South Dakota), N.A.; Citibank, N.A.; PNC Bank, National Association; USAA Savings Bank; U.S. Bancorp National Association; Wells Fargo Bank, N.A.; EMVCo, LLC; JCB Co. Ltd; and UnionPay.

## II. NATURE OF THE ACTION

Plaintiffs here are merchants who have been unlawfully subjected to the Liability Shift for the assessment of MasterCard, Visa, Discover and American Express credit and charge card chargebacks, despite having purchased EMV-chip-compliant point of sale card readers and having otherwise complied with the directives of the Networks and Issuing Banks, during the period from October 1, 2015 until the present day.

Despite various security measures associated with credit cards, with any card transaction, even with EMV chip-enabled cards, there is a possibility of fraud, error or complaint: Cards may be stolen and used by the thief to make charges. A merchant might charge the wrong amount or deliver the wrong, or faulty, goods. A customer may simply regret a purchase and decide to challenge a transaction with their card-issuing bank, saying it was fraudulent. Typically, when a card-holding customer sees a fraudulent charge on his card statement, or wishes to dispute a charge for another reason, he contacts his issuing bank. (The telephone numbers and other contact information printed on the back of credit cards go to card issuers, not to the Networks such as MasterCard and Visa.) In such cases, the card-holding customer and the merchant are not usually liable for the fraudulent or unauthorized charge. Instead, the so called "chargebacks" are typically absorbed by the issuing banks – who market such "fraud protection" to their credit card customers as a core service of their cards – when fraudulent "card present" transactions occur. Before October 2015, the Class was not typically liable for the cost of fraudulent charges in card present transactions, except in those very rare occasions where the merchant improperly handled the transaction in some way, such as not obtaining a customer signature.

But the Networks decided that on October 1, 2015 – by fiat of Visa, MasterCard, Discover, American Express and the issuing banks, and without any opportunity for merchants like the Plaintiff Merchant Class to object or to opt out – that the system for handling chargebacks for card present transactions would change. Under the Liability Shift – accurately so named by the Defendants – the card-issuing banks and the Networks agreed and decreed that, as of that date, liability for billions of dollars of chargebacks would shift from the issuing banks to the merchants, unless the merchants could satisfy certain conditions – conditions, it would turn out, which were

impossible for the members of the Merchants Class to meet and which the Networks, the Issuing Banks and EMVCo *knew* were impossible for them to meet.

Merchants were not consulted about the change, were not permitted to opt out, were not offered any reduction of the interchange fee, the merchant discount fee, the swipe fee – or any other cost of accepting the Defendants' credit and charge cards in exchange for this enormous burden. As a result of the Liability Shift, instead of only rarely being liable for chargebacks, merchants who could not process EMV card transactions were to be held liable for any chargeback resulting from the use of the card, unless they purchased expensive new equipment capable of processing EMV card transactions.

But what the Merchant Class did not and could not know was that purchasing this equipment and training their staff wasn't going to be enough. In addition, the equipment would have to "certified" after the fact in a murky, nebulous process that was utterly outside of their control, and many times never happened. As a result, Merchant Class members, such as the Class Representatives here, could not timely comply with the standard, no matter what they did, because the Defendants refused to, or were unable to, "certify" the new equipment by the deadline – or, indeed, ever. Instead, the Networks, the issuing Banks and EMVCo knew from the outset – and the Merchant Class members are now learning – that the "certification" process would take years *after* the October 1, 2015 Liability Shift was imposed. The result has been massively increased costs for chargebacks being laid at the feet of the Merchant Class members, while the Issuing Banks have been spared those same costs and the Networks have continued to profit.

Without an injunction, the merchant Class, many of whom are small businesses with razor-thin margins, will continue to waste time away from their businesses and personal lives investigating and challenging fraudulent charges, will keep losing customers put off by new security procedures designed to mitigate circumstances not of the merchants' making, and will continue to be charged for transactions under the new Liability Shift regime that they are unable to avoid – unless, of course the merchants simply stop accepting credit and debit cards, an impossibility for any modern age business.

### III. STANDARD FOR RELIEF

Before a court can grant preliminary injunctive relief, a plaintiff must first "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009).[2] In the Ninth Circuit, "the factors may be balanced such that 'a stronger showing of one element may offset a weaker showing of another.'" *Lilith Games (Shanghai) Co. v. uCool, Inc.*, No. 15-cv-01267-SC, 2015 U.S. Dist. LEXIS 128619 (N.D. Cal. Sept. 23, 2015) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.2011)).

Because a fully developed record is not yet available, "a preliminary injunction is customarily granted on the basis of . . . evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, "the movant may satisfy its burden by submitting . . . evidence that might otherwise be inadmissible under the Federal Rules of Evidence." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 869 (S.D. W. Va. 2014).

A federal court may issue a preliminary injunction ordering notification to affected persons. *See, e.g.*, *Nabisco Brands, Inc. v. Conusa Corp.*, 722 F. Supp. 1287, 1294 (M.D.N.C.), *aff'd without op.*, 892 F.2d 74 (4th Cir. 1989) (in trademark action, granting preliminary injunction ordering defendant to recall infringing products and notify customers of order finding infringement).

#### A. Plaintiffs and the Class Have Shown a Likelihood of Success on the Merits

Plaintiffs in this action assert a number of counts under federal and state law, including civil conspiracy, violations of the Sherman Antitrust Act, violations of the Cartwright Act, unjust enrichment and for other equitable relief. "Where multiple causes of action are alleged, [a] plaintiff need only show likelihood of success on one claim to justify injunctive relief." *McNeil-PPC v. Granutec, Inc.*, 919 F. Supp. 198, 201 (E.D.N.C. 1995). Here, Plaintiffs have a clear likelihood of success on each of the claims alleged.

---

[2] Unless otherwise noted, citations are omitted and emphasis is, added here and throughout.

### 1. Plaintiffs Are Likely to Succeed on Their Sherman Antitrust Act Claims

Plaintiffs are likely to succeed on their antitrust claims. As detailed in Plaintiffs' Complaint filed on March 8, 2016 (Dkt. No. 1), Plaintiffs allege that Defendants conspired to shift billions of dollars in liability for fraudulent, faulty and otherwise rejected consumer credit card transactions from themselves to the Merchant Class, without consideration to, or meaningful recourse by, those merchants. Plaintiffs allege that Defendants accomplished this massive shift to merchants through the creation and implementation of a system with which Defendants knew many merchants are unable to comply, despite their best efforts.

Plaintiffs provide compelling proof that Defendants, primarily members of the very entity that sets standards for so-called EMV transactions, have made it impossible for Plaintiffs to receive the mandatory "certifications" that Defendants are in charge of supplying. While Plaintiffs attempt to comply with the Byzantine certification process, they are being assessed massive (and growing) charges that would not have fallen on them under the system in place prior to the imposition of the Liability Shift. Plaintiffs have provided detailed allegations regarding each aspect of Defendants' anticompetitive conduct, including evidence showing named Plaintiff Milam's Market's attempts to comply with Defendants' rules and regulations regarding the Liability Shift. Plaintiffs have also provided allegations regarding the structure and make up of EMVCo, including statements from the entity that the supposed competitor card networks make all decisions on "a consensus basis among the member organizations."

In order to establish a claim under 15 U.S.C. §1, plaintiff must demonstrate: (1) that there was a contract, combination, or conspiracy; (2) that the agreement unreasonably restrained competition under either a per se rule of illegality or a rule of reason analysis; and (3) that the restraint actually restrains competition, causing injury that extends beyond the impact on the claimant to affect the field of commerce in which the claimant is engaged (*i.e.*, "antitrust injury"). *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1062 (9th Cir. 2001); *Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1443-44 (9th Cir. 1995). Moreover, some types of restraint, such as those alleged here, are "so plainly anticompetitive that no elaborate study of the industry is needed to establish

their illegality." *Nat'l Soc'y of Prof'l Eng'rs v. United States*, 435 U.S. 679, 692 (1978).  When courts apply the per se rule to a particular type of restraint, there is "a conclusive presumption that the restraint is unreasonable" under §1.  *Ariz. v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 344 (1982); *see also United States v. Serta Assocs., Inc.*, 296 F. Supp. 1121 (N.D. Ill. 1968), *aff'd, Serta Assocs., Inc., v. United States*, 393 U.S. 534 (1969).

Plaintiffs have alleged an unreasonable restraint on competition by alleging a conspiracy consisting of a continuing agreement, understanding, or concerted action between and among Defendants and their co-conspirators in furtherance of which Defendants agreed to shift the liability of fraudulent payment card transactions from the card-issuing banks to merchants, with no ability for certain merchants to avoid such liability despite all efforts to do so.

The final requirement for a §1 violation is the presence of antitrust injury or injury to competition.  That element too is met here.  The Ninth Circuit has specifically identified four requirements for a showing of antitrust injury:  (1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) is of the type the antitrust laws were intended to prevent.  *See American Ad Mgmt., Inc. v. General Tel. Co.*, 190 F.3d 1051, 1055 (9th Cir. 1999).  Here Plaintiffs have demonstrated unlawful conduct by Defendants that caused injury in the form of lost time, lost customers and chargebacks that Plaintiffs would not have incurred in the absence of Defendants' illegal behavior.  Plaintiffs' damages flow directly from the illegal conduct alleged and is plainly of the type the antitrust laws were intended to prevent.

### 2. Plaintiffs Are Likely to Succeed on Cartwright Act Claims

The Cartwright Act is California's antitrust statute. Cal. Bus. & Prof Code §§16700, *et seq*. Cases decided under the Sherman Act are applicable to interpreting the Cartwright Act. *See Marin Cnty. Bd. of Realtors, Inc. v. Palsson*, 549 P.2d 833 (Cal. 1976).  Indeed, the analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act was modeled after the Sherman Act. *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001).  Therefore, the analysis and conclusions would be the same under the Cartwright Act, as under the federal claims.  Thus to the extent the Court finds Plaintiffs are likely to succeed on

the Sherman Act claims alleged, a similar analysis would compel a finding of likely success under the Cartwright Act.

### 3. Plaintiffs Are Likely to Succeed on Their Unjust Enrichment Claims

Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) the unjust retention of the benefit at the expense of another. *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316 (Cal. Ct. App. 2008). "Under Florida law, the elements of an unjust enrichment claim are 'a benefit conferred upon a defendant by the plaintiff, the defendant's appreciation of the benefit, and the defendant's acceptance and retention of the benefit under circumstances that make it inequitable for him to retain it without paying the value thereof.'" *Alvarez v. Royal Caribbean Cruises, Ltd.*, 905 F. Supp. 2d 1334, 1341 (S.D. Fla. 2012). Under both California and Florida law, Plaintiffs have properly alleged an unjust enrichment theory of harm by alleging that the Liability Shift imposed by Defendants conferred a benefit upon them at the expense of Plaintiffs. The Complaint further alleges that Defendants understood and appreciated the benefit the Liability Shift conferred upon them and that Defendants have accepted and retained the benefit of the new Liability Shift under inequitable circumstances.

### B. Failure to Order Preliminary Relief Will Cause Irreparable Harm

Preliminary relief by way of an injunction and notice are necessary to avoid irreparable harm to the Plaintiff class. This is not a case where merchants are simply being improperly assessed chargebacks which could be remedied by money damages. In fact, Defendants' Liability Shift has fundamentally altered the way that Plaintiffs and the Merchant Class conduct business and already it is leading to problems that may, if not enjoined, result in the decimation of Plaintiffs' business. Many merchants are small business owners and do not have the time or profit margins to absorb the new liability the Defendants have agreed to thrust on them. Because Defendants have failed to provide the required certifications prior to the Liability Shift, and failed to allow for a grace period, Plaintiffs and the Merchant Class have had to take steps in their business to protect themselves from unavoidable chargebacks in a way that threatens to drive customers away.

As but one example, Plaintiff Grove Liquors LLC now asks all payment card customers to show identification, a practice that that has alienated some customers to the point that those customers may not return.[3] Ex. A, Abolafia Decl., ¶¶8-12 (detailing frustration of customers with presenting ID and highlighting one instance where a sale was lost). Delays at the register stemming from EMV mandates also threaten to drive away both current and repeat customers. Once a customer has a negative experience in a store, they are often unlikely to return and money damages alone cannot remedy the problem.

As another example of irreparable harm, merchants lose something they can never get back when they have to deal with chargebacks: their time. Instead of spending time helping the business run or completing work and going home, merchants and their employees are spending large amounts of time communicating with the card networks, investigating potential fraud, viewing security footage and generally disputing the charge. Ex. B, Truntz Decl., ¶¶6-7 (detailing process of dealing with chargebacks); *id.*, ¶¶9-13 (estimating an 8x increase in the amount of time spent dealing with chargebacks since the Liability Shift). This is time that could have been spent elsewhere. *Id.*, ¶13.

Because Plaintiffs have demonstrated that there is no adequate remedy at law, this factor tips in favor of granting a temporary injunction.

### C. The Balance of Equities Tips in Favor of Plaintiffs

"'[W]hile cases frequently speak in the shorthand of considering the harm to the plaintiff if the injunction is denied and the harm to the defendant if the injunction is granted, the real issue in this regard is the degree of harm that will be suffered by the plaintiff or the defendant if the injunction is improperly granted or denied.'" *Blackbird Techs., Inc. v. Joshi*, No. 5:15-cv-04272-EJD, 2015 U.S. Dist. LEXIS 136505 (N.D. Cal. Oct. 6, 2015) (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 284 (4th Cir. 2002)). Here, the harm to Plaintiffs is substantial, as chargebacks are continuing to mount, customers are being driven away, businesses' existences are threatened and finite time is wasting away. On the other hand, an injunction which resets the clock back to before the Liability Shift went into effect only puts the parties into the same position they had occupied for

---

[3] All references to "Ex." are to the exhibits attached to the Declaration of Carmen A. Medici in support thereof, filed concurrently.

1 decades, with issuers generally responsible for the types of chargebacks now being assessed on
2 Plaintiff, despite Plaintiffs' efforts to comply with Defendants' fiat. The balance of equities
3 decidedly tips in Plaintiffs' favor.

### D. The Relief Requested Is in the Public Interest

Finally, granting this motion will promote the public interest. Millions of merchants are subject to Defendants' Liability Shift. While the reduction of fraud in credit card transactions is plainly in the public interest, Defendants' agreement to impose the Liability Shift on merchants and concurrent failure to provide all merchants with the means to actually follow the rules regarding the acceptance and use EMV cards does nothing to reduce fraud. It turns out the new EMV card regime is inimical to the very goals Defendants purported it would serve. Not only is the chip-and-signature system being imposed by Defendants vastly inferior to the chip-and-PIN system in use elsewhere with EMV cards, there is strong anecdotal evidence that card fraud is actually increasing since the Liability Shift went into effect. Many merchants have reported increased chargebacks since the October 1, 2015 Liability Shift. Because it has become public knowledge that many chip readers do not actually work, thieves have taken advantage of this and have sought to exploit the failure of Defendants to provide working software and hardware all to the detriment of the Merchant Class. So Merchant Class members – who occupy the core of the American economy – are suffering, even as the alleged benefits of the new regime are not being realized. Increased fraud is a direct result of Defendants' illegal anticompetitive conduct and thus halting the shift is in the public interest.

## IV. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court grant Plaintiffs' Motion for a Preliminary Injunction.

DATED: March 11, 2016

Respectfully submitted,

ROBBINS GELLER RUDMAN
 & DOWD LLP
PATRICK J. COUGHLIN
DAVID W. MITCHELL
ALEXANDRA S. BERNAY
CARMEN A. MEDICI

s/ Carmen A. Medici
CARMEN A. MEDICI

655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)

DEVINE GOODMAN RASCO &
 WATTS-FITZGERALD, LLP
JOHN W. DEVINE
LAWRENCE D. GOODMAN
ROBERT J. KUNTZ, JR.
2800 Ponce De Leon Blvd., Suite 1400
Coral Gables, FL 33134
Telephone: 305/374-8200
305/374-8208 (fax)

Attorneys for Plaintiffs