ROWAN D. WILSON (118488)
LAUREN K. ROSS (298181)

CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019
Telephone: (212) 474-1000
Fax: (212) 474-3700
rwilson@cravath.com
lross@cravath.com

Attorneys for Defendant American Express Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| B & R SUPERMARKET, INC.; GROVE LIQUORS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>VISA, INC.; VISA USA, INC.; MASTERCARD INTERNATIONAL, INC.; AMERICAN EXPRESS COMPANY; DISCOVER FINANCIAL SERVICES; BANK OF AMERICA, N.A.; BARCLAYS BANK DELAWARE; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK, N.A.; PNC BANK, N.A.; USAA SAVINGS BANK; U.S. BANCORP, N.A.; WELLS FARGO BANK, N.A., EMVCo, LLC; JCB CO., LTD; and UNIONPAY,<br><br>Defendants. | Case No. 3:16-cv-01150-WHA<br><br>DEFENDANT AMERICAN EXPRESS COMPANY'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE: June 2, 2016<br>TIME: 8:00 AM<br>COURTROOM: 8<br>JUDGE: Honorable William H. Alsup |

DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE: CASE NO. 3:16-CV-01150 (WHA)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT .......................................................................................................................... 5

I.    B & R Supermarket's Claims Against American Express Should be Compelled to Arbitration. ............................................................................................................... 5

     A.    The Arbitration Provision is Valid and Encompasses B & R Supermarket's Claims. ........................................................................................................... 6

          1.    A Valid Arbitration Agreement Exists. ............................................. 6

               a.    New York Law Governs the CAA. ......................................... 6

               b.    The CAA Is Valid Under New York Law. ............................. 8

          2.    B & R Supermarket's Claims Fall Within the Scope of the Parties' Agreement to Arbitrate. ...................................................................... 9

II.    The Claims Against American Express Should be Severed and Transferred to the Southern District of New York. ............................................................................. 11

     A.    The Forum Selection Clause is Valid. ....................................................... 12

     B.    The Motion for Transfer is Proper. ............................................................ 13

          1.    The Southern District of New York Is an Appropriate Forum for Transfer. ..... 13

          2.    The Preselected Forum Is Entitled to Controlling Weight. ............... 14

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*Abram Landau Real Estate v. Bevona*, 123 F.3d 69 (2d Cir. 1997) ....................................................... 10

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013) ................................................... 1, 5, 11

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ................................................................. 5

*Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568 (2013) ............... passim

*Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287 (9th Cir. 1997) ...................................................... 6, 10

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ......................................... 6

*Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003) ..................................................... 8

*Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) .................................................................. 1, 6

*E & J Gallo Winery v. Andina Licores S.A.*, 44 F. Supp. 2d 1115 (E.D. Cal. 2006) ........................... 12

*E. Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA, 2014 WL
      1618382 (N.D. Cal. Apr. 21, 2014) ................................................................................................ 12

*Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824 (N.Y. 1988) ........................................................ 8

*Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79 (2000) ................................................................ 6

*Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (11th Cir. 2014) ................................................................ 7

*Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564 (S.D.N.Y. 2013) ................................................. 9

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010 (9th Cir. 2004) ................................. 6, 9

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir.
      2001) ............................................................................................................................................... 10

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) .................................................................... 12

*Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509 (9th Cir. 1988) .............................................. 12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .................................. 6, 11

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2003) .......................................................... 12

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ............................................................ 13

*Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311 (1964) ................................................................ 12

*Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566 (S.D.N.Y. 2009) ..................................... 8

*Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400 (E.D.N.Y. 2014) ........................................ 11, 15

*Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115 (2d Cir. 2010) ................................................... 8

*Richards v. Lloyd's of London*, 135 F.3d 1289 (9th Cir. 1998) ........................................................... 12

*United States v. Am. Express Co.*, 88 F. Supp. 3d 143 (E.D.N.Y. 2015) ................................................ 9

*Valspar Corp. v. E. I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928 (D. Minn. 2014) ..................... 15

**Statutes & Rules**

28 U.S.C. § 1404(a) ........................................................................................................................... 1, 13

Fed. R. Civ. P. 21 ............................................................................................................................... 1, 11

Federal Arbitration Act, 9 U.S.C. § 2 ..................................................................................................... 5

Federal Arbitration Act, 9 U.S.C. § 4 ................................................................................................. 1, 6

**Other Authorities**

Restatement (Second) of Conflicts of Laws, § 187(2) (1988) ................................................................ 7

Restatement (Second) of Conflicts of Laws § 187 cmt. f (1988) ........................................................... 7

Restatement (Second) of Conflicts of Laws § 187 cmt. g (1988) .......................................................... 7

Restatement (Second) of Conflicts of Laws § 188(2) (1988) ................................................................ 7

iii

DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE CASE NO. 3:16-CV-01150-WHA

PLEASE TAKE NOTICE that on June 2, 2016, at 8:00 am, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Judge William Alsup, Courtroom 8, 19th Floor, San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant American Express Company ("American Express") will, and hereby does, move for an order granting American Express's Motion to Compel Arbitration and Transfer Venue.  Pursuant to this Court's Supplemental Order of March 18, 2016, ECF No. 41, and Defendant American Express Company's Law Firm Plan for In Court Opportunities for Young Attorneys, ECF No. 214, Lauren Ross, an attorney who graduated from law school in May 2013, will argue this motion on behalf of American Express.

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, Defendant American Express hereby moves this Court to compel arbitration of the claims against American Express. Defendant further moves this court to sever and transfer these claims to the Southern District of New York pursuant to Fed. R. Civ. P. 21 and 28 U.S.C. § 1404(a).  This motion is supported by the accompanying declaration of Lindsey Spellman, executed on April 18, 2016, with exhibits thereto ("Spellman Decl.").  A proposed order is also submitted herewith.

## PRELIMINARY STATEMENT

On June 20, 2013, the United States Supreme Court ruled that the arbitration clauses contained in the Card Acceptance Agreement ("CAA") between American Express and its merchants, which "require[] all disputes between the parties to be resolved by arbitration", are enforceable.  *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2312 (2013).  The Court explained that, "consistent with [the] text [of the FAA], courts *must* 'rigorously enforce' arbitration agreements according to their terms".  *Id.* at 2309 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (emphasis added)).  Here, B & R Supermarket's[1] claims against American Express are subject

---

[1] Plaintiffs Milam's Market and Grove Liquors LLC both operate under the B & R Supermarket parent merchant account with American Express.  (*See* Spellman Decl. ¶ 5).  Thus, this motion refers to both entities collectively as "B & R Supermarket".

to an arbitration clause and, at either party's request, must be resolved in arbitration. American Express invokes that clause.[2]

The CAA further specifies that any disputes arising under that agreement shall be litigated exclusively "in the appropriate federal or state court located in the County and State of New York". When parties have contractually agreed to a particular forum, that forum is entitled to "controlling weight in all but the most exceptional cases". *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 134 S. Ct. 568, 579 (2013). A plaintiff, "as the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted". *Id.* at 581. B & R Supermarket cannot meet the heavy burden required to prevent this action from proceeding in New York County. This Court should enforce the CAA's valid forum selection clause and transfer the claims against American Express to the United States District Court for the Southern District of New York.

**STATEMENT OF FACTS**

The gravamen of B & R Supermarket's complaint is that American Express conspired with other credit card networks, major card-issuing banks and a joint venture that develops and manages technical standards for credit card technology, to shift liability for certain fraudulent credit card charges from issuing banks to small merchants that had not obtained "certification" to accept chip-enabled credit cards by a set date, knowing that those merchants would be unable to install and have "certified" the necessary equipment and software in time to avoid the liability shift. Absent that conspiracy, B & R Supermarket suggests, the "chargebacks" for these fraudulent transactions occurring at their stores would have been borne by certain Defendants. B & R Supermarket claims that Defendants violated both Section 1 of the Sherman Antitrust Act and California's analogue, the Cartwright Act, and also allege that Defendants have been (and are being) unjustly enriched.

---

[2] Before filing a lawsuit against American Express, B & R Supermarket was required to provide American Express with written notice of a claim (Spellman Decl. Ex. C, 2014 CAA §§ 1.c; 7.a.), which it failed to do.

2
DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE CASE NO. 3:16-CV-01150-WHA

American Express issues chargebacks to merchants according to the terms of the CAA. B & R Supermarket has been an American Express merchant since October 24, 1997, after it was provided with a copy of the CAA and when it began accepting American Express credit cards. (*See* Spellman Decl. Ex. A, CAA, effective October 1997, p. 2 ("By accepting [American Express] Cards for the purchase of goods and/or services, you agree to be bound by this Agreement.").) Under the CAA, American Express has the right to issue chargebacks "as described in the Merchant Regulations". (Spellman Decl. Ex. C, CAA, effective December 2014 ("2014 CAA"), § 2.b.v; Ex. B, Amendment to the CAA, effective November 2015 ("2015 Amendment").) Merchants were given over three years' notice that the Fraud Liability Shift would occur in October 2015. (*See* Spellman Decl. Ex. I, Press Release, American Express, American Express Announces U.S. EMV Roadmap to Advance Contact, Contactless and Mobile Payments (June 29, 2012); Ex. D, CAA, Effective November 2013, p.3.) In October 2015, American Express issued updated Merchant Regulations instituting the Fraud Liability Shift, under which merchants that are not certified to accept EMV transactions may be liable for chargebacks for certain fraudulent transactions. (*See* Spellman Decl. Ex. H, American Express Merchant Regulations - U.S., October 2015 ("Merchant Regulations").) The current version of the CAA, to which American Express and B & R Supermarket are parties, contains an arbitration provision and forum selection clause.

1. The Arbitration Provision

Since October 1999, the standard Card Acceptance Agreement between American Express and its merchants has included a broad arbitration provision. (Spellman Decl. ¶ 8.) The current version of that arbitration provision, which has been in effect since October 2015, defines a "Claim" as follows:

> *Claim* means *any claim* (including initial claims, counterclaims, cross-claims, and third party claims), dispute, or controversy between you and us *arising from or relating to the Agreement* or prior Card acceptance agreements, *or the relationship resulting therefrom*, whether based in contract, tort (including negligence, strict liability, fraud, or otherwise), statutes, regulations, or any other theory, including any question relating to the existence, validity, performance, construction, interpretation, enforcement, or termination of the Agreement or prior

3
DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE CASE NO. 3:16-CV-01150-WHA

> Card acceptance agreements, or the relationship resulting therefrom, except for the validity, enforceability, or scope of section 7.c of the General Provisions.

(Spellman Decl. Ex. C, 2014 CAA, § 1.c (emphasis added).) The arbitration provision provides in relevant part that:

> You or we may elect to resolve any Claim by individual, binding arbitration.

> \* \* \*

> If arbitration is chosen by any party, neither you nor we will have the right to litigate that Claim in court or have a jury trial on that Claim. Further, you and we will not have the right to participate in a representative capacity or as a member of any class pertaining to any Claim subject to arbitration. . . . Except as set forth below, the arbitrator's decision will be final and binding. Other rights you or we would have in court may also not be available in arbitration.

(Spellman Decl. Ex. C, 2014 CAA § 7.c.) The CAA further provides that claims will be "referred to either JAMS or AAA" and resolved under the rules of the selected organization "except where those rules conflict with [the] Agreement". (Spellman Decl. Ex. C, 2014 CAA § 7.c.i.)

Since at least 2003, American Express' CAAs with B & R Supermarket have contained a provision permitting American Express to amend the CAA from time to time upon notice to B & R Supermarket. (*See* Spellman Decl. ¶ 6.)[3] Merchants—including B & R Supermarket—who do not wish to be bound by an amendment are free to terminate the agreement without cause "at any time by notifying the other party". (Spellman Decl. Ex. C, 2014 CAA § 6.a.) American Express

---

[3] The current version of this provision states in relevant part:

> We reserve the right to change the Agreement at any time (including by amending any of its provisions, adding new provisions, or deleting or modifying existing provisions) on at least ten days' prior notice to you, provided that we shall change the Merchant Regulations pursuant to the provisions set forth below. You agree to accept all changes (and further to abide by the changed provisions in the Merchant Regulations) as a condition of your agreement to accept the Card.

(Spellman Decl. Ex. B, 2015 Amendment, p. 2 (amending first sentence of § 8.j); Ex. C, 2014 CAA, § 8.j.)

4
DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE CASE NO. 3:16-CV-01150-WHA

never received any such notice from B & R Supermarket. Thus, at the time B & R Supermarket filed its complaint, it was subject to the above arbitration provisions.

2.  The Forum Selection Clause

The CAA has contained a forum selection clause since at least 2002. (Spellman Decl. ¶ 9.) The current version of that clause, which has been in effect since October 2015, states that subject to the CAA's dispute resolution provisions "any action by either party hereunder shall be brought only in the appropriate federal or state court located in the County and State of New York". (*See* Spellman Decl. Ex. B, 2015 Amendment, p. 3.)

## ARGUMENT

B & R Supermarket's claims against American Express arise from and relate to the chargeback provisions of the CAA. Consequently, those claims are subject to the broad, binding arbitration clause which requires arbitration at the request of either party. Moreover, any lawsuit between B & R Supermarket and American Express must be brought in federal or state court in Manhattan. B & R Supermarket cannot meet the heavy burden required to prevent this action from proceeding in the parties' preselected forum. For these reasons, and as set forth below, B & R Supermarket should be compelled to arbitrate its claims against American Express and/or those claims should be severed and transferred to the Southern District of New York.

I.  **B & R SUPERMARKET'S CLAIMS AGAINST AMERICAN EXPRESS SHOULD BE COMPELLED TO ARBITRATION.**

B & R Supermarket's claims against American Express are subject to the arbitration clause in the CAA, entitling American Express to resolve this dispute in arbitration. Under Section 2 of the FAA, a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract". 9 U.S.C. § 2. As the Supreme Court has stated, "our cases place it beyond dispute that the FAA was designed to promote arbitration", and "[t]hey have repeatedly described the Act as embodying a national policy favoring arbitration". *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (quotations and citations omitted). The Court explained that, "consistent with [the] text [of the FAA], courts *must*

1  'rigorously enforce' arbitration agreements according to their terms". *Italian Colors*, 133 S. Ct. at
2  2309 (quoting *Dean Witter*, 470 U.S. at 221 (emphasis added)). Accordingly, "questions of
3  arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration".
4  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

5        A party to a valid arbitration agreement may "'petition any United States district
6  court . . . for an order directing that such arbitration proceed in the manner provided for in such
7  agreement'". *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)
8  (quoting 9 U.S.C. § 4). "[T]he district court's role is limited to determining whether [1] a valid
9  arbitration agreement exists and, if so, [2] whether the agreement encompasses the dispute at issue".
10 *Id.*; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The
11 party seeking to avoid arbitration bears the burden of showing that the arbitration provision is invalid
12 or does not encompass the claims at issue. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79,
13 92 (2000).

14     A.    The Arbitration Provision is Valid and Encompasses B & R Supermarket's Claims.

15       As detailed above and in the accompanying declaration of Lindsey Spellman, B & R
16 Supermarket entered into a CAA with American Express that included a binding arbitration
17 provision. (*See* Spellman Decl. ¶¶ 6-10.) That provision is valid and encompasses the claims here.
18 *See Lifescan*, 363 F.3d at 1012.

19     1.    A Valid Arbitration Agreement Exists.

20       Under New York law, which governs the CAA, the arbitration provision is valid and
21 enforceable. (*See* Spellman Decl. Ex. C, 2014 CAA, § 8.e ("The Agreement and all Claims are
22 governed by and shall be construed and enforced according to the laws of the State of New York
23 without regard to internal principles of conflicts of law.").)

24     a.    New York Law Governs the CAA.

25       Courts exercising federal question jurisdiction apply federal common law to choice-of-
26 law determinations. *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997). "Federal
27 common law follows the approach of the Restatement (Second) of Conflicts of Laws." *Id.* Under the

28

1  Restatement, a choice-of-law provision will be enforced unless "'[1] the chosen state has no
2  substantial relationship to the parties or the transaction and there is no other reasonable basis for the
3  parties' choice' or [2] 'application of the law of the chosen state would be contrary to a fundamental
4  policy of a state which has a materially greater interest than the chosen state in the determination of
5  the particular issue' and that state would be the state of applicable law in the absence of a choice-of-
6  law clause." *Id.* (quoting Restatement (Second) of Conflicts of Laws § 187(2) (1988)).

7        *First*, American Express has a "substantial relationship" to the chosen forum because
8  American Express is domiciled and has its principal place of business in New York. *See* Restatement
9  § 187 cmt. f (noting that a substantial relationship exists where "one of the parties is domiciled or has
10  its principal place of business").

11        *Second*, application of New York contract law would not be "contrary to a
12  fundamental policy of a state that has a materially greater interest", Restatement § 187(2), than
13  New York in deciding this issue. In determining whether a different state has a "materially greater
14  interest" courts look to, *inter alia*, "the place of contracting", "the place of negotiation of the
15  contract", "the place of performance", "the location of the subject matter of the contract" and "the
16  domicile, residence, nationality, place of incorporation and place of business of the parties".
17  Restatement §§ 187(2), 188(2). Such a fundamental policy "will rarely be found" in a formal
18  requirement or in the "general rules of contract law", and a choice-of-law clause cannot be ignored
19  simply because local law would produce a different result. Restatement § 187 cmt. g. Rather, the
20  policy must be "substantial". *Id.* Here, Florida is the only other state that could possibly have an
21  interest in the validity of the arbitration agreement—Milam's Market and Grove Liquors are
22  domiciled in Florida and do business in Florida. (*See* Compl. ¶¶ 3-4.) However, because American
23  Express is headquartered and domiciled in New York, and has a strong interest in the uniform
24  interpretation of its standard merchant agreements, Florida cannot claim to have a materially greater
25  interest than New York in the application of its laws to the CAA. In any event, Florida and
26  New York law do not conflict on the validity of arbitration agreements. *Compare Inetianbor v.*
27  *CashCall, Inc.*, 768 F.3d 1346, 1355 (11th Cir. 2014) ("Under Florida Law, courts must find an

28  
7
DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE CASE NO. 3:16-CV-01150-WHA

arbitration agreement to be both substantively and procedurally unconscionable to invalidate the agreement."), *with Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) ("Generally, [under New York Law] there must be a showing that such a contract is both procedurally and substantially unconscionable."). Because New York has a substantial relationship to the parties and the application of New York law would not conflict with a fundamental policy of Florida, the validity of the CAA should be determined pursuant to New York law.

### b. The CAA Is Valid Under New York Law.

The arbitration clause is not unconscionable under New York law. A contract is unconscionable under New York law when it is "so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable [*sic*] according to its literal terms". *Ragone*, 595 F.3d 115, 121 (2d Cir. 2010) (quoting *Gillman v. Chase Manhattan Bank*, 534 N.E.2d 824, 828 (N.Y. 1988)). Unconscionability has a procedural and substantive component—the "procedural element . . . concerns the contract formation process and the alleged lack of meaningful choice; the substantive element looks to the content of the contract". *Id.* at 121-22.

The arbitration clause is not procedurally unconscionable. In determining whether the process of entering into a contract was procedurally unconscionable, "a court must assess such factors as: (1) the size and commercial setting of the transaction; (2) whether there was a lack of meaningful choice by the party claiming unconscionability; (3) the experience and education of the party claiming unconscionability; and (4) whether there was disparity in bargaining power." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 787 (2d Cir. 2003) (internal quotations omitted). Inequality in bargaining power alone is insufficient to render a provision procedurally unconscionable, as is the fact that a provision was offered on a "take-it-or-leave-it" basis. *See Nayal v. HIP Network Servs. IPA, Inc.*, 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009). B & R Supermarket, which operates a total of five liquor and grocery stores, is a commercial operation. B & R Supermarket was not presented with a "lack of meaningful choice" in entering the CAA—American Express regularly sent and B & R Supermarket received notice of the arbitration clause in

American Express's regular merchant mailing.  (*See* Spellman Decl. ¶¶ 10-15.)  If B & R Supermarket objected to the clause, it could have chosen not to accept the American Express card, like the millions of U.S. merchant locations that have accepted Visa, MasterCard and/or Discover cards without accepting American Express cards.  *See United States v. Am. Express Co.*, 88 F. Supp. 3d 143, 158 (E.D.N.Y. 2015) ("American Express is accepted in approximately three million fewer merchant locations than Visa, MasterCard, and Discover.").

The arbitration clause is also not substantively unconscionable.  "An agreement is substantively unconscionable if it is so grossly unreasonable as to be unenforceable according to its literal terms and those contract terms are unreasonably favorable to the party seeking to enforce the contract."  *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp. 2d 564, 569 (S.D.N.Y. 2013).  The terms of the CAA arbitration provision are reasonable and do not favor American Express over merchants.  The Agreement gives *either* party the right to seek arbitration.  (*See* Spellman Decl. Ex. C, 2014 CAA, § 7.c.)  Pursuant to the CAA, American Express will pay the costs of "any additional arbitration fees" beyond "the amount of filing fees [a merchant] would have incurred" by bringing a claim in court.  (*See* Spellman Decl. Ex. C, 2014 CAA, § 7.c.ix.)  JAMS and the AAA are the leading neutral arbitration services in the United States, and have sterling reputations for procedural and substantive fairness.

2. B & R Supermarket's Claims Fall Within the Scope of the Parties' Agreement to Arbitrate.

Because the arbitration provision is valid, it should be enforced as long as it encompasses B & R Supermarket's dispute—which it does.  *See Lifescan*, 363 F.3d at 1012.  The CAA's arbitration provision unambiguously obligates the parties, at the election of either B & R Supermarket or American Express, to arbitrate:

> any claim, . . . dispute, or controversy between [the Merchant] and [American Express] arising from or relating to the Agreement or prior Card acceptance agreements, or the relationship resulting therefrom, whether based in contract, tort . . . , statutes, regulations or any other theory . . . .

9
DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE CASE NO. 3:16-CV-01150-WHA

(Spellman Decl. Ex. C, 2014 CAA, §§ 1.c., 7.c.)  The CAA gives American Express the power to issue chargebacks "as described in the Merchant Regulations" (Spellman Decl. Ex. C, 2014 CAA, §§ 1.c, 2.v), which contain the provisions effectuating the Fraud Liability Shift (*see* Spellman Decl. Ex. H, Merchant Regulations.).

The CAA's expansive arbitration provision encompasses B & R Supermarket's antitrust claims.  The Federal Arbitration Act "expresses a liberal federal policy favoring arbitration agreements" such that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 223 (2d Cir. 2001) (internal citations and quotations omitted); *cf. Chiron Corp.*, 207 F.3d at 1131 (same in Ninth Circuit).  To determine the scope of an arbitration agreement, a court should consider whether the language of the clause, "taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute".  *Louis Dreyfus*, 252 F.3d at 225.  The Second Circuit has interpreted a similar but narrower arbitration clause to be broadly applicable.  *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 71 (2d Cir. 1997); *cf. Chiron Corp.*, 207 F.3d at 1131 (finding a similar but narrower provision to be "broad and far reaching").  That provision limited arbitration to any claims of "interpretation, application or performance" of the agreement.  *Abram Landau*, 123 F.3d at 71; *cf. Chiron*, 207 F.3d at 1131 (arbitration limited to claims "*relating to* the validity, construction, enforceability or performance of [the] Agreement").  Here, the CAA requires arbitration of claims "arising from or relating to the Agreement or prior Card acceptance agreements", without any limitation to questions of interpretation, application or performance.  (*See* Spellman Decl. Ex. C, 2014 CAA, §§ 1.c, 7.c.)  Thus, Second Circuit precedent demands that this CAA's provision must be read broadly.  This broad and far reaching provision encompasses B & R Supermarket's claim that American Express "conspired to shift billions of dollars in liability for fraudulent . . . consumer credit card transactions from [itself] to the Class, without consideration to, or meaningful recourse by, those merchants".  (Compl. ¶ 2.)  The chargeback provision in the CAA is an integral part of B & R Supermarket's

theory of liability—American Express effectuated the Liability Shift by changing the Merchant Regulations, which are encompassed in the CAA's chargeback provision.  (*See* Spellman Decl. Ex. C, 2014 CAA, §§ 1.c., 2.v; Ex. H, Merchant Regulations.)  Put differently, if American Express had not altered the fraud liability provisions in its CAA, it could not have been a defendant in this lawsuit.  Thus, the valid and enforceable arbitration provision "encompasses" B & R's claims, and American Express is entitled to resolve those claims in arbitration.

Although compelling arbitration would split B & R Supermarket's claims between two fora, the FAA "*requires* piecemeal resolution when necessary to give effect to an arbitration agreement," *Moses H. Cone Mem'l Hosp.* 460 U.S. at 20.  Thus, the Court should follow the FAA's mandate to enforce arbitration agreements rigorously and compel B & R Supermarket to arbitrate.  *See Italian Colors*, 133 S. Ct. at 2309.

## II. THE CLAIMS AGAINST AMERICAN EXPRESS SHOULD BE SEVERED AND TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK.

The CAA further specifies that any disputes arising under that agreement shall be litigated exclusively "in the appropriate federal or state court located in the County and State of New York".  (Spellman Decl. Ex. B, 2015 Amendment, p. 3.)  When parties have signed a forum selection clause, the preselected forum is entitled to "controlling weight in all but the most exceptional cases".  *Atl. Marine*, 134 S. Ct. at 579.  A plaintiff, "as the party defying the forum-selection clause . . . bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted".  *Id.* at 581.  A court has broad discretion to sever any claim against a party, Fed. R. Civ. P. 21, and may do so in order to enforce a forum selection clause.  *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 431-32 (E.D.N.Y. 2014) (severing and transferring claims pursuant to forum selection clause).  Because B & R Supermarket cannot meet its burden of showing that transfer is unwarranted, the Court should sever the claims against American Express and transfer the matter to the Southern District of New York.  (If the Court grants the motion to compel arbitration and dismisses the claims against American Express on that basis, there would be no occasion to reach the forum selection issue.)

### A. The Forum Selection Clause is Valid.

The CAA's forum selection clause is valid and should be enforced. Courts have consistently recognized parties' rights to agree on a preselected forum. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964) ("[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court."). Such an agreement is presumed valid. *E. Bay Women's Health, Inc. v. gloStream, Inc.*, No. C 14-00712 WHA, 2014 WL 1618382, at *1 (N.D. Cal. Apr. 21, 2014) ("A forum-selection clause is presumptively valid and should not be set aside unless the party challenging enforcement of the clause can prove that it is unreasonable or fundamentally unfair."); *see also M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 9-10 (1972) ("[F]orum-selection clauses . . . are prima facie valid."). Federal law governs a federal district court's enforcement of a forum selection clause. *Atl. Marine*, 134 S. Ct. at 579.

A forum selection clause should not be repudiated unless: (1) "the inclusion of the clause in the agreement was the product of fraud or overreaching"; (2) "the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced"; or (3) "enforcement would contravene a strong public policy of the forum in which suit is brought". *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (quoting *Bremen*, 407 U.S. at 12-13, 15, 18). B & R Supermarket bears the burden of "clearly show[ing] that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching". *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 512 (9th Cir. 1988) (citing *Bremen*, 407 U.S. at 15).

A forum selection clause is considered valid regardless of its "take it or leave it" nature or the difference in size between the parties. *See, e.g.*, *E. Bay Women's Health*, No. C 14-00712, 2014 WL 1618382, at *4 (a court may not "decline enforcement of a forum selection merely on the showing of non-negotiability and power difference") (citing *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1141 (9th Cir. 2003)); *E. & J. Gallo Winery v. Andina Licores S.A.*, 44 F. Supp. 2d 1115, 1126 (E.D. Cal. 2006) (enforcing a form, pre-printed contract signed by one large corporation and one smaller corporation).

12
DEFENDANT AMERICAN EXPRESS COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO COMPEL ARBITRATION AND TRANSFER VENUE CASE NO. 3:16-CV-01150-WHA

B & R Supermarket has no basis for contesting the validity of the CAA's forum selection clause. The agreement was not the result of fraud or overreaching, enforcement will not deprive B & R Supermarket of the ability to litigate, and there is no strong public policy preventing enforcement. B & R Supermarket's claims against American Express have no relationship to California, and California has no public policy interest in protecting Florida from the alleged actions of a New York corporation. This district court is no better situated to enforce the antitrust laws than the district court in New York. Indeed, "California favors contractual forum selection clauses so long as they are entered into freely and voluntarily and their enforcement would not be unreasonable." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1287 (9th Cir. 2006). Because B & R Supermarket cannot satisfy its burden, this Court should enforce the CAA's forum selection clause.

B. The Motion for Transfer is Proper.

A motion to transfer under 28 U.S.C. § 1404(a) is the proper mechanism for moving to transfer subject to a forum selection clause. *Atl. Marine*, 134 S. Ct. at 580. Section 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought". 28 U.S.C. § 1404(a). B & R Supermarket's claims against American Express originally could have been brought in the Southern District of New York, and they should be severed and transferred there in accordance with the CAA's forum selection clause.

1. The Southern District of New York Is an Appropriate Forum for Transfer.

Putting aside the CAA's arbitration provision, B & R Supermarket could have filed this action in the Southern District of New York. B & R Supermarket has alleged that venue is proper in the Northern District of California because:

> a substantial part of the events giving rise to plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District, and one or more of the defendants resides in, is licensed to do business in, is doing business in, had agents in, or is found or transacts business in this District.

13

(Compl. at ¶ 27.) All of those allegations are at least equally applicable to the Southern District of New York, where American Express is based. Therefore, this action may be properly transferred to the Southern District of New York under § 1404(a).

### 2. The Preselected Forum Is Entitled to Controlling Weight.

Because the parties have contractually agreed to state or federal court in the County and State of New York as the exclusive location to bring any disputes between them, the Southern District of New York is an appropriate forum for transfer. (*See* Spellman Decl. Ex. B, 2015 Amendment, p.2.) Therefore, a § 1404(a) motion should be denied "[o]nly under extraordinary circumstances unrelated to the convenience of the parties". *Atl. Marine*, 134 S. Ct. at 575.

In *Atlantic Marine*, the Supreme Court recently set out the required analysis for a § 1404(a) motion based on a forum selection. The Court held that in cases involving a forum selection clause, the usual § 1404(a) balancing test weighing various private and public interests does not apply. Instead, the preselected forum would be granted "controlling weight in all but the most exceptional cases", and courts could consider only public interest factors in their analysis. *Id.* at 581. Under *Atlantic Marine*, "the plaintiff's choice of forum merits no weight", and courts "should not consider arguments about the parties' private interests". *Id.* at 581-82. The Court also specified that the plaintiff, "as the party acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer". *Id.* at 583. The Court reasoned that generally, "the interest of justice is served by holding parties to their bargain", and therefore forum selection clauses should control in "all but the most unusual cases". *Id.* (internal quotation marks omitted).

B & R Supermarket cannot show that public interest factors overwhelmingly disfavor a transfer. Plaintiffs, both Florida entities operating retail stores exclusively located in Florida, may have chosen to file this action in the Northern District of California because their preferred counsel is located there, or to attempt to invoke the Cartwright Act, or for some other "private interest". None of those is an "exceptional" circumstance sufficient to overcome the "controlling weight" accorded to a valid forum selection clause. In addition, severance of the claims against American Express would

not give rise to an "exceptional" circumstance disfavoring transfer.  Any "efficiency and economy that could be achieved by a single trial would largely inure to [plaintiff's] benefit—precisely what the Supreme Court has counseled is not a relevant consideration," *Paduano*, 55 F. Supp. 3d at 435 (citing *Atl. Marine*, 134 S. Ct. at 582 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation.")); *see also Valspar Corp. v. E. I. DuPont de Nemours & Co.*, 15 F. Supp. 3d 928, 935 (D. Minn. 2014) ("[A]llowing efficiency and economy to rule the day would effectively swallow *Atlantic Marine*'s holding in every case with multiple defendants.").

American Express and B &R Supermarket have agreed to litigate their disputes, if at all, in the State and County of New York.  As a result, B & R Supermarket's claims against American Express must proceed in the parties' preselected forum, Manhattan.

## CONCLUSION

For the reasons stated above, American Express respectfully requests an order severing B & R Supermarket's claims against it, and compelling B & R Supermarket to arbitrate those claims and/or transferring those claims to the United States District Court for the Southern District of New York.

DATED: April 18, 2016                                    CRAVATH, SWAINE & MOORE LLP

                                                      s/ Rowan D. Wilson
                                                      ROWAN D. WILSON
                                                      LAUREN K. ROSS

                                                      825 Eighth Avenue
                                                      New York, NY 10019
                                                      Telephone:  (212) 474-1000
                                                      Fax: (212) 474-3700

                                                      *Attorneys for Defendant*
                                                      *American Express Company*