# Exhibit E



Dear Business Owner or Manager,

Enclosed is the amendment to your **American Express® Card Acceptance Agreement**, effective as of November 30, 2012. It updates several sections of your current agreement. Please read it carefully, as the updates affect your Card acceptance obligations. Highlights include:

- Changes in our Dispute Resolution provisions
- Change in our address where you are to send notices

In addition, we publish updates to our policies every April and October. You can access the documents listed below online on our secure website at **americanexpress.com/merchantpolicy** using your American Express Merchant Number.

- **American Express Merchant Regulations — U.S.** This document provides policies and procedures governing your acceptance of the American Express Card.
- **American Express Notification of Changes — U.S.** This document is a summary of upcoming changes to the Merchant Regulations – U.S.

Other Important Updates

Below we'd like to highlight a couple of changes that may affect your Merchant Account. For more information on which changes are applicable to your Merchant Account, please contact your client manager, or a representative at 1-800-528-5200 available Monday—Friday 8am—9pm Eastern Time.

**New U.S. Disputes Policy**

In 2013, we intend to change the way we service Disputed Charges in the U.S. to more closely align with payment industry practices.

Through this streamlined process, we will first review all available information to determine if a decision can be reached without contacting you. For certain cases we will still need to request supporting documentation from you, but in many cases we will process the Chargeback immediately.

If you believe a Chargeback was processed in error, you will generally have the opportunity to request a reversal by submitting supporting documentation within twenty (20) days of the Chargeback.

(over, please)

PM12                                            americanexpress.com/merchant

Benefits of this new process include:

- Faster case resolution
- Fewer Inquiries about Disputed Charges for you to process
- Simplified Chargeback codes to make supporting documentation requests for Chargeback reversals easier

To learn more about the effective date of this new policy, and for more information about the change, please refer to the October 2012 Notification of Changes - U.S. at americanexpress.com/merchantpolicy.

### Tax Code Requirements and 1099-K Reporting

Section 6050W of the Internal Revenue Code (IRC) requires merchant acquiring entities to report the annual gross (and monthly) amount of payment card transactions for each merchant to whom they remit payment. These amounts are reported on Form 1099-K by American Express to each of its Merchant payees annually in January, disclosing the amounts settled during the preceding calendar year, with a copy filed with the Internal Revenue Service (IRS) in March.

Effective January 1, 2013, American Express will be required to:

- Withhold 28% of the gross dollar amount of American Express Card transactions settled for any Merchant who fails to provide their Taxpayer Identification Number (TIN) on or before the settlement date or for whom the IRS indicates that the Merchant's legal name and TIN reported on a Form 1099-K do not match the IRS's records.
- Remit all monies withheld to the IRS promptly as required by law.

To avoid 28% backup withholding, you need to verify that the legal name and TIN you have provided to American Express is the same legal name and TIN that you have on file with the IRS for every business entity for which you receive payment from American Express.

For instructions on how to verify this data and any other questions regarding IRC Section 6050W and Form 1099-K, visit **americanexpress.com/1099-K**.

See the next pages for answers to frequently asked questions. If you have additional questions, please call Merchant Services at 1-800-528-5200 available Monday—Friday 8am—9pm Eastern Time.

Thank you for accepting American Express Cards. We appreciate and value your business.

Sincerely,

Ramon Martin
President, Merchant Services Americas
American Express



# Amendment to American Express® Card Acceptance Agreement

The agreement whereby you accept the American Express® Card ("Agreement") is amended, effective as of November 30, 2012, as set forth below. All terms that are not defined below have the same meaning as in the Agreement.

**The first sentence of Section 1.a of the General Provisions (regarding Scope of the Agreement) is replaced as follows:**

The Agreement governs your acceptance of American Express Cards in the United States, Puerto Rico, the U.S. Virgin Islands, and other U.S. territories and possessions, and, subject to Schedule A, Section 1, in Canada.

**The word "reserve" in the fifth sentence of Section 1.b.i of the General Provisions (regarding Merchant Regulations) is replaced with the word "have".**

**The definitions of *Claim, Other Payment Products*, and *You* and *Your* in Section 1.c of the General Provisions (regarding Definitions) are replaced with the following definitions, respectively:**

*Claim* means any claim (including initial claims, counterclaims, cross-claims, and third party claims), dispute, or controversy between you and us arising from or relating to the Agreement or prior Card acceptance agreements, or the relationship resulting therefrom, whether based in contract, tort (including negligence, strict liability, fraud, or otherwise), statutes, regulations, or any other theory, including any question relating to the existence, validity, performance, construction, interpretation, enforcement, or termination of the Agreement or prior Card acceptance agreements, or the relationship resulting therefrom, except for the validity, enforceability, or scope of Section 7.d of the General Provisions.

*Other Payment Products* mean any charge, credit, debit, stored value, prepaid, or smart cards, account access devices, or other payment cards, services, or products other than the Card.

*You* and *your* (sometimes called the "Merchant", "Service Establishment," or "SE" in our materials) mean the individual or Entity accepting the Card under the Agreement, and (as applicable) its Affiliates conducting business in the same industry.

**Section 1.d of the General Provisions (regarding List of Affiliates) is replaced as follows:**

You must provide to us a complete list of your Affiliates in the region specified in Section 1.a of the General Provisions that conduct business in your industry and notify us promptly of any subsequent changes in the list. You must notify us promptly if you have any Establishments in Puerto Rico, the U.S. Virgin Islands, and any other U.S. territory or possession, or in another area outside the U.S. where the U.S. dollar is the local currency, as our Discount, fees, and payment terms for Card acceptance may be different in those regions. We shall notify you of those terms after you have notified us that you have any such Establishments.

**The second sentence of Section 2.a of the General Provisions (regarding Acceptance) is replaced as follows:**

You agree that the provisions of Chapter 3 (Card Acceptance) of the Merchant Regulations are reasonable and necessary to protect the Cardmember's choice of which Card to use.

**The first sentence of Section 2.b.i of the General Provisions (regarding Format) is replaced as follows:**

You must create a Charge Record for every Charge, and a Credit Record for every Credit, that must comply with our Technical Specifications, as described in the Merchant Regulations.

**The last sentence of Section 3.a of the General Provisions (regarding Creating a Reserve) is replaced as follows:**

Upon the occurrence of an event described in Section 3.b.viii of the General Provisions, and during any continuation of such event, we may take immediate action to establish or increase the amount of any Reserve to an amount, in our reasonable judgment, proportional to the risk to us and our Affiliates arising from such event.

**Section 3.b.ii of the General Provisions (regarding Trigger Events for Reserve) is replaced as follows:**

**(ii)** your selling all or substantially all of your assets or any party acquiring 25% or more of the equity interests issued by you (other than parties owning 25% or more of such interests as of the effective date of the Agreement), whether through acquisition of new equity interests, previously outstanding interests, or otherwise;

**Section 4.b of the General Provisions (regarding Our Notice Address) is replaced as follows:**

**b.** <u>Our Notice Address</u>. Unless we notify you otherwise, you shall send notices to us at:

American Express Travel Related Services Company, Inc.
P.O. Box 299051
Fort Lauderdale, FL 33329
Attn: Department 87
E-mail: American.Express.Contract.Keying@aexp.com
Fax: (602) 744-8413
Tel: (800) 528-5200

1

**Section 5.a of the General Provisions (regarding Indemnity) is replaced as follows:**

**a.** <u>Indemnity</u>. You shall indemnify, defend, and hold harmless us and our Affiliates, successors, and assigns from and against all damages, liabilities, losses, costs, and expenses, including legal fees, arising or alleged to have arisen from your breach, negligent or wrongful act or omission, failure to perform under the Agreement, or failure in the provision of your goods or services.

**Section 7 of the General Provisions (regarding Dispute Resolution) is replaced as follows:**

We value our Merchant relationships. Most Merchant concerns can be resolved by contacting our Merchant Services representatives at tel: 1-800-528-5200 or by e-mail: American.Express.Contract.Keying@aexp.com. If Merchant Services does not address all of your concerns to your satisfaction, you and we agree that any Claim will be resolved, upon the election by you or us, either through mediation or arbitration instead of litigation in court (except for Claims pursued in small claims court).

This Dispute Resolution provision sets forth the circumstances and procedures under which Claims may be resolved through Merchant Services, mediated, or arbitrated instead of litigated in court. Mediation procedures and arbitration procedures are set forth below. Your agreement to this Dispute Resolution provision does not preclude you from bringing your concerns to the attention of any appropriate governmental agencies.

**a.** <u>Merchant Services</u>. For many of the concerns and problems you may encounter, you should first contact our Merchant Services representatives at tel: 1-800-528-5200 or by e-mail: American.Express.Contract.Keying@aexp.com. Merchant Services representatives are able to help resolve many of these matters. Please be prepared to provide them with any information you have about the matter, including any efforts you may have made to address or resolve the matter. Even if you believe our Merchant Services representative is unable to address or resolve the matter, we ask that you inform them before sending a Claim notice.

**b.** <u>Notice of Claim</u>. Before filing a lawsuit or beginning a mediation or arbitration regarding a Claim, you and we agree to send a written notice *(Claim notice)* to each party against whom the Claim is asserted. This provides the parties an opportunity to resolve the Claim informally or through mediation. The Claim notice must describe the nature and basis of the Claim and state the specific amount or other relief demanded. Notice to us must include your name, your Merchant name, address, and Merchant Number and be sent to our notice address set forth in Section 4.b of the General Provisions. If the Claim proceeds to arbitration, the amount of any relief demanded by you or us in a Claim notice shall not be disclosed to the arbitrator until after the arbitrator determines the amount, if any, to which you or we are entitled on the Claim.

**c.** <u>Mediation</u>. In mediation, a neutral mediator helps the parties to try to reach a mutually acceptable resolution of their Claim. The mediator does not decide how the Claim is to be resolved, only you and we do.

    **i.** <u>Initiation of Mediation</u>. Before beginning a mediation, you or we must first provide the Claim notice described above. Within thirty days after sending or receiving a Claim notice, you or we may submit the Claim to mediation by either JAMS or the American Arbitration Association (AAA) or an alternative mediator mutually agreed upon in writing by you and us.

    **ii.** <u>Conduct of Mediation</u>. You and we agree to cooperate in selecting a mediator from a panel of neutrals and in scheduling the mediation proceedings. We will pay the costs of the mediation.

    **iii.** <u>Confidentiality/Tolling</u>. All communications made for the purpose of, in the course of, or pursuant to the mediation shall be confidential, and no evidence of any such communication shall be admissible for any purpose or subject to discovery. All applicable statutes of limitation and defenses based upon the passage of time shall be tolled from thirty days following the sending of the Claim notice for sixty days or until termination of the mediation, whichever is earlier.

    **iv.** <u>Termination</u>. Either you or we may terminate the mediation at any time following the first mediation proceeding. Your or our submission or failure to submit a Claim to mediation shall not affect your or our right to elect to resolve a Claim through arbitration.

    **v.** <u>Additional Information</u>. For more information about JAMS and AAA mediation services, contact either JAMS (1920 Main Street, Suite 200, Irvine, CA 92614 or www.jamsadr.com) or AAA (1633 Broadway, New York, NY 10019 or www.adr.org).

**d.** <u>Arbitration</u>. In arbitration, the Claim will be decided by a neutral arbitrator instead of a judge or jury. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The decisions of the arbitrator are as enforceable as any court order and are subject to very limited review by a court.

    **i.** <u>Initiation of Arbitration</u>. Before beginning an arbitration, you or we must first provide the Claim notice described above. Any Claim that is not resolved informally or through mediation shall be resolved, upon your or our election, through arbitration pursuant to this section rather than by litigation.

    **ii.** <u>Arbitration Rules/Organizations</u>. The party asserting the Claim shall select one of the following arbitration organizations, which shall apply its rules in effect at the time the Claim is filed. In the event of an inconsistency between this section and any rule or procedure of the arbitration organization, this section controls. The party asserting the Claim shall simultaneously notify the other party of its selection. If our selection is not acceptable to you, then you may select another of the following organizations within thirty days after you receive notice of our initial selection. Any arbitration hearing that you attend shall take place in the federal judicial district where your headquarters is located or New York, NY, at your election.

- American Arbitration Association (*AAA*): 1633 Broadway, New York, NY 10019; (212) 716-5800; www.adr.org
- JAMS (*JAMS*): 1920 Main Street, Suite 300, Irvine, CA 92614; (949) 224-1810; www.jamsadr.com

In addition to the arbitration organizations listed above, Claims may be referred to any other arbitration organization that is mutually agreed upon in writing by you and us, or to an arbitration organization or arbitrators appointed pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. § 16 *et seq*. (FAA), provided that the arbitration organization and arbitrators enforce the terms of the next two sections below.

**iii.** <u>Limitation of Rights</u>. IF ARBITRATION IS CHOSEN BY A PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE RULES OR PROCEDURES OF AAA OR JAMS, AS APPLICABLE. FURTHER, YOU AND WE SHALL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. Notwithstanding any other provision of the Agreement and without waiving either party's right to appeal such decision, if any portion of this section 7.d.iii or of section 7.d.iv below is deemed invalid or unenforceable, then this entire section 7.d shall not apply.

**iv.** <u>Individually Named Parties Only</u>. ALL PARTIES TO THE ARBITRATION MUST BE INDIVIDUALLY NAMED. THERE IS NO RIGHT OR AUTHORITY FOR ANY CLAIMS TO BE ARBITRATED OR LITIGATED ON A CLASS-ACTION OR CONSOLIDATED BASIS, ON BEHALF OF THE GENERAL PUBLIC OR OTHER PARTIES, OR JOINED OR CONSOLIDATED WITH CLAIMS OF OTHER PARTIES, AND YOU AND WE ARE SPECIFICALLY BARRED FROM DOING SO. This prohibition is intended to, and does, preclude you from participating in any action by any trade association or other organization against us. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone. No arbitration award or decision will have any preclusive effect as to issues or Claims in any dispute with anyone who is not a named party to the arbitration.

**v.** <u>Previously Filed Claims/No Waiver</u>. You or we may elect to arbitrate any Claim that has been filed in court at any time before trial has begun or final judgment has been entered on the Claim. Either you or we may choose to delay enforcing or to not exercise rights under this arbitration provision, including the right to elect to arbitrate a Claim, without waiving the right to exercise or enforce those rights on any other occasion. For the avoidance of any confusion, and not to limit its scope, this section applies to any class-action lawsuit relating to the "Honor All Cards," "non-discrimination," or "no steering" provisions of the Merchant Regulations, or any similar provisions of any prior Card acceptance agreement, that was filed against us prior to the effective date of the Agreement.

**vi.** <u>Arbitrator's Authority</u>. The arbitrator shall have the power and authority to award any relief that would have been available in court, including equitable relief (e.g., injunction, specific performance) and, cumulative with all other remedies, shall grant specific performance whenever possible. The arbitrator shall have no power or authority to alter the Agreement or any of its separate provisions, including this section, nor to determine any matter or make any award except as provided in this section.

**vii.** <u>Split Proceedings for Equitable Relief</u>. Either you or we may seek equitable relief in arbitration prior to arbitration on the merits to preserve the status quo pending completion of such process. This section shall be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, including legal fees, to be paid by the party against whom enforcement is ordered.

**viii.** <u>Small-Claims Court; Injunctive Relief</u>. We shall not elect to use arbitration under this section for any Claim that you properly file in a small claims court so long as the Claim seeks individual relief only and is pending only in that court. Injunctive relief sought to enforce the provisions of sections 8.a and 8.b of the General Provisions is not subject to the requirements of this section. This section is not intended to, and does not, substitute for our ordinary business practices, policies, and procedures, including our rights to Chargeback and to create Reserves.

**ix.** <u>Governing Law/Arbitration Procedures/Entry of Judgment</u>. This section is made pursuant to a transaction involving interstate commerce and is governed by the FAA. The arbitrator shall apply New York law and applicable statutes of limitations and shall honor claims of privilege recognized by law. The arbitrator shall apply the rules of the arbitration organization selected, as applicable to matters relating to evidence and discovery, not the federal or any state rules of civil procedure or rules of evidence, provided that any party may request that the arbitrator expand the scope of discovery by doing so in writing and copying any other parties, who shall have fifteen days to make objections, and the arbitrator shall notify the parties of his/her decision within twenty days of any objecting party's submission. If your claim is for $10,000 or less, you may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the rules of the selected arbitration organization. At the timely request of a party, the arbitrator shall provide a written and reasoned opinion explaining his/her award. The arbitrator's decision shall be final and binding, except for any rights of appeal provided by the FAA. If the amount of the award exceeds $100,000, either party can appeal that award to a three-arbitrator panel administered by the selected arbitration organization, which shall reconsider de novo any aspect of the initial award and whose decision shall be final and binding. The decision of that three-person panel may be appealed as provided by the FAA. Judgment upon an award rendered by the arbitrator or by a panel of arbitrators on appeal may be entered in any state or federal court in the federal judicial district where your headquarters or your assets are located.

**x.** <u>Confidential Proceedings</u>. The arbitration proceeding and all testimony, filings, documents, and any information relating to or presented during the proceedings shall be deemed to be confidential information not to be disclosed to any other

party. All offers, promises, conduct, and statements, whether written or oral, made in the course of the Claim resolution, negotiations, mediations, arbitration, and proceedings to confirm arbitration awards by either party, its agents, employees, experts or attorneys, or by the arbitrator, including any arbitration award or judgment related thereto, are confidential, privileged, and inadmissible for any purpose, including impeachment or estoppel, in any other litigation or proceeding involving any of the parties or non-parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation, mediation, or arbitration.

**xi.** Severability. Except as otherwise provided in section 7.d.iii above, if any portion of this section (other than section 7.d.iii or section 7.d.iv) is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this section, the Agreement, or any predecessor agreement you may have had with us, each of which shall be enforceable regardless of such invalidity.

**xii.** Costs of Arbitration Proceedings. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing, and/or other fees) but only up to the amount of the filing fees you would have incurred if you had brought a Claim in the state or federal court located in the federal judicial district where your headquarters are located that would have had jurisdiction. We will be responsible for any additional arbitration fees. If you or we elect to arbitrate a Claim after you have filed the Claim in court, we also will pay your share, if any, of the arbitration fees up to the amount of any court filing fees paid by you and refund to you the remainder of any such fees, unless the arbitrator determines that your Claim was brought in bad faith. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

**xiii.** Additional Arbitration Awards. If the arbitrator finds that you are the prevailing party on a Claim described in your Claim notice, and if the award to you by the arbitrator is more favorable than any offer we made to you to resolve your Claim prior to the commencement of arbitration, the arbitrator's award shall include, in addition to any other relief awarded, any reasonable attorneys' fees, costs, and witness fees (including expert witness fees) to which you are entitled under Applicable Law or, if Applicable Law does not provide for recovery of these amounts, then the amount of reasonable attorneys' fees, costs, and witness fees (including expert witness fees) that your attorney, if any, reasonably incurred for investigating, preparing, and pursuing your claim in arbitration.

**e.** Definitions. For purposes of Section 7 of the General Provisions only, (i) *we, our,* and *us* include any of our Affiliates, licensees, predecessors, successors, or assigns, any purchasers of any receivables, and all agents, directors, and representatives of any of the foregoing, and (ii) *you* and *your* include any of your Affiliates, licensees, predecessors, successors, or assigns, any purchaser of any receivables and all agents, directors, and representatives of any of the foregoing,

**The words "applicable laws" in Section 8.d of the General Provisions (regarding Compliance with Laws) and the word "claim" in the last sentence of Section 8.e of the General Provisions (regarding Governing Law; Jurisdiction; Venue) are capitalized, respectively, as follows: "Applicable Laws" and "Claim".**

**Section 8.f of the General Provisions (regarding Interpretation) is replaced as follows:**

**f.** Interpretation. In construing the Agreement, unless the context requires otherwise: (i) the singular includes the plural and vice versa; (ii) the term "or" is not exclusive; (iii) the term "including" means "including, but not limited to;" (iv) the term "day" means "calendar day;" (v) all amounts are stated in U.S. dollars; (vi) references to a "party" means us, on the one hand, and you, on the other hand; (vii) the term "may" (unless followed by "not") means "has the right, but not the obligation, to"; (viii) any reference to any agreement (including the Agreement), instrument, contract, policy, procedure, or other document refers to it as amended, supplemented, modified, suspended, replaced, restated, or novated from time to time; (ix) any reference to a website or a URL (or both) refers to its successor website or URL; (x) all captions, headings, and similar terms are for reference only; and (xi) where specific language is used to illustrate by example or clarify a general statement, such specific language shall not be interpreted to modify, limit, or restrict the construction of the general statement. To the extent possible, these General Provisions, the provisions of Schedule A, and the provisions of the Merchant Regulations shall be interpreted to give each their full effect. However, if a conflict is deemed to exist between them, then that conflict shall be resolved in the following order of precedence: Schedule A and any accompanying exhibits shall control over these General Provisions or the Merchant Regulations (or both) and the Merchant Regulations shall control over these General Provisions.

**The last sentence of Section 8.j of the General Provisions (regarding Amendments) is replaced as follows:**

An e-mail or other electronic communication does not constitute such a signed writing.

**Section 8.m of the General Provisions (regarding No Third Party Beneficiaries) is replaced as follows:**

**m.** No Third-Party Beneficiaries. Except for the indemnities specified in Section 5.a of the General Provisions, the Agreement does not and is not intended to confer any rights or benefits on any person that is not a party hereto and none of the provisions of the Agreement shall be enforceable by any person other than the parties hereto, their successors and permitted assigns. The parties reserve the right to amend or terminate the Agreement without the consent of those indemnities.

---

In the event of any conflict between the provisions of this Amendment and the provisions of the Agreement, the provisions of this Amendment shall govern. Except as changed by this Amendment, the provisions of the Agreement shall remain unchanged and the Agreement shall remain in full force and effect.

4



# Frequently Asked Questions

**Questions Related to the Card Acceptance Agreement Amendment (CAA)**

**Q: A cross-reference to Schedule A has been added in section 1.a of the General Provisions. What has changed?**

A: Your responsibilities have not changed. Under Schedule A of prior versions of the CAA, you had to notify us if you had any Establishments in Canada and cause them to comply with an agreement governing Card acceptance in Canada. This cross-reference is a reminder to read both provisions.

**Q: The definitions of "Claims," "Other Payment Products," and "you/your" in section 1.c of the General Provisions have been replaced. What has changed?**

A: The Dispute Resolution provision of the CAA has been updated and a cross-reference to that provision has been added to the definition of "Claims." The definition of "Other Payment Products" has been clarified to include prepaid cards, and the definition of "you/your" has been clarified to include individuals.

A full list of definitions is set out in the glossary to the Merchant Regulations-U.S. You can access a copy online on our secure website at americanexpress.com/merchantpolicy using your American Express Merchant Number. As always, please read the definitions carefully as they explain the meanings of capitalized terms in the CAA, which includes the Merchant Regulations-U.S.

**Q: The "List of Affiliates" section, section 1.d of the General Provisions, has been replaced. What has changed?**

A: Your responsibilities have not changed. Under prior versions of the CAA, you had to provide us a list of your Affiliates conducting business in your industry and notify us of any changes in the list. That requirement is clarified to refer to your Affiliates in the regions covered by this CAA, i.e., the United States, Puerto Rico, the U.S. Virgin Islands, other U.S. territories and possessions, and (subject to Schedule A) Canada.

**Q: The way in which American Express can establish or increase a Reserve under section 3.a of the General Provisions has been changed. What has changed?**

A: The last sentence of section 3.a has been clarified so that, during events triggering a Reserve, we can set up the Reserve proportional, in our reasonable judgment, to protect ourself and our Affiliates to the risk arising from the event.

As always, please read this provision carefully, as it affects your Card acceptance obligations.

**Q: The "Indemnity" section, section 5.a of the General Provisions, has been replaced. What has changed?**

A: We have removed our third party licensees from the indemnity. As always, please read this provision carefully, as it affects your Card acceptance obligations.

**Q: The "Dispute Resolution" section of the General Provisions, has been replaced. What has changed?**

A: The Dispute Resolution section has been changed to include provisions encouraging merchants to attempt to resolve disputes by contacting Merchant Services, allowing disputes to be submitted to mediation prior to arbitration and requiring a pre-filing notice of the dispute (a claim notice). If a party prevails on a claim described in the claim notice and receives an award more favorable than a pre-arbitration settlement offer, the prevailing party is entitled to reasonable attorneys' fees, costs and witness fees (including expert witness fees). For claims of $10,000 or less, the merchant may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing or by an in-person hearing.

As always, please read this provision carefully, as it affects your Card acceptance obligations.

**Q: New clauses have been added in section 8.f of the General Provisions. What has changed?**

A: Section 8.f (regarding "Interpretation") describes various rules of interpretation for construing the CAA. These new clauses make clear that references to the "parties" are to you or us and that the word "may" means to have the right, but not the obligation, to do something.

As always, please read this provision carefully, as it affects your Card acceptance obligations.

**Q: The "No Third Party Beneficiaries" section, section 8.m of the General Provisions has been replaced. What has changed?**

A: A cross-reference to the indemnities specified in section 5.a of the General Provisions has been added. As always, please read this provision carefully, as it sets forth who has rights, benefits, and may enforce the CAA.

## Questions Related to the New U.S. Disputes Process

**Q: What do I need to do to prepare for the process change?**

A: Unless you currently receive your Chargebacks and Inquiries through an electronic file, American Express does not require any changes to support the new Disputed Charges process. Electronic data merchants should work directly with your American Express Representative to understand the required changes, and coordinate a timely implementation. No changes are required for Merchants who receive their Chargeback and Inquiry notifications via mail. No changes are required for merchants enrolled in My Merchant Account/OMS.

**Q: How long do I have to respond to an Inquiry or Chargeback?**

A: Merchants generally have 20 days to respond to an Inquiry. Merchants generally have 20 days after the date of the Chargeback to request a Chargeback reversal.

**Q: What documentation is needed for a Chargeback reversal?**

A: Please refer to the October 2012 Notification of Changes-U.S., section 11 for details regarding supporting documentation requirements.

**Q: How does this process change if I am on the Immediate Chargeback Program, Partial Immediate Chargeback Program or Fraud Full Recourse Program?**

A: Existing Immediate Chargeback Program, Partial Immediate Chargeback Program, and Fraud Full Recourse Program policies will remain the same.

**Questions related to Tax Code Requirements and Form 1099-K**

**Q: What is Form 1099-K?**

A: Form 1099-K is the information return the IRS developed for compliance with IRC Section 6050W. This form reports the annual and monthly gross dollar amount of payment card transactions settled for a participating Merchant during the prior calendar year. In addition, the form will reflect the Merchant's legal name and Taxpayer Identification Number (TIN). Forms 1099-K will be furnished to Merchants every January, and filed by merchant acquiring entities with the IRS in March.

**Q: What does IRC Section 6050W require?**

A: IRC Section 6050W requires that all merchant acquiring entities and payment companies, like American Express Travel Related Services Company, Inc., report the annual and monthly gross dollar amount of payment card transactions settled for each of their Merchant payees as well as the Merchant's legal name and Taxpayer Identification Number (TIN). Every January, payment companies will furnish an information return (Form 1099-K) to each Merchant reporting the prior calendar year's transactions. Every March, a copy of the Form 1099-K will be filed by the payment companies with the IRS.

**Q: What steps should I take with regard to IRC Section 6050W and Form 1099-K?**

A: To ensure accurate reporting and avoid potential backup withholding, a Merchant's legal name and Taxpayer Identification Number (TIN) on file with American Express must be the same legal name and TIN that it has on file with the IRS. A Merchant can verify its information with American Express at any time in the "Account Information" section in their Merchant Account online at americanexpress.com/MyMerchantAccount. Merchants should contact a tax, legal or professional advisor to understand the impact of Form 1099-K reporting on their business. Information herein does not constitute tax, legal or other professional advice and must not be used as such.

**Q: What happens if a Merchant does not provide its business Taxpayer Identification Number (TIN)?**

A: Beginning January 1, 2013, merchant acquiring entities will be required to withhold 28% of the gross dollar amount of payment card transactions settled for Merchants who fail to provide their TIN to them on or before the settlement date. As required by law, all monies withheld will be promptly remitted to the IRS.

**Q: Is IRC Section 6050W specific to American Express?**

A: No. IRC Section 6050W applies to all merchant acquiring entities or payment companies that make payments to Merchants in settlement of payment card transactions.

# Sign up for our exclusive online resources today

### My Merchant Account/Online Merchant Services
Grow and manage your business with our full suite of useful account management tools, including:



**Online Management**
See transaction details, respond to Disputes and more



**Alerts**
Receive automatic Merchant Account and banking alerts via e-mail or text message



**Secure Message Center**
Submit Merchant Account servicing requests via secure e-mail 24/7

**Sign up now at**
**americanexpress.com/MyMerchantAccount**



ES/AMM/1012

Visit us at americanexpress.com/merchant



American Express
P.O. Box 299051
Ft. Lauderdale, FL 33329-9051

PRSRT STD
U.S. POSTAGE
**PAID**
AMERICAN
EXPRESS

important account updates and policy news

PMOE12