# Exhibit F

Case 1:17-cv-02738-BMC-JAM   Document 229-8   Filed 04/18/16   Page 2 of 12 PageID #: 803

10101-5552-124 Copy A  Part 1 Face Black, 285 Blue, 2718 Blue

Order No. 10101-5552-124   Proof No. 4   Part No.  1 Face  Copy   A

October 2011

## updates to your account

ANY COMPANY
Sam A Sample
123 Main Street
Anytown, US 12345-6789
XXXXXXXXXXXXXXXXXXXXXXXXXXXX

Your Merchant Number:   XXXXXXXXXX

Dear Business Owner or Manager,

Enclosed is a copy of your new **American Express® Card Acceptance Agreement**. It officially amends and replaces your current agreement and becomes effective as of November 30, 2011. For highlights of key changes, please refer to the enclosed Frequently Asked Questions.

As a reminder, we also communicate our policies online in the following manner:

- **American Express Merchant Regulations - U.S.** This document provides detailed policies and procedures governing your acceptance of the American Express Card. The Merchant Regulations - U.S. are incorporated by reference in your Card Acceptance Agreement and are published every April and October. You can access a copy of this document online on our secure website at **americanexpress.com/merchantpolicy** using your American Express Merchant Number.

- **American Express Notification of Changes - U.S.** This document describes changes to the Merchant Regulations - U.S.  It is published in advance of changes to the Merchant Regulations - U.S., also every April and October or otherwise as indicated in the new Agreement. You can access a copy of this document online on our secure website at **americanexpress.com/merchantpolicy** using your American Express Merchant Number.

- **American Express Service Change Notification:** Contained within the Notification of Changes is the Merchant Servicing section. This section contains changes to how we or, in some cases, our Affiliates service Merchants. Such changes are not part of the Merchant Regulations, but rather serve to provide you more information about actions you may elect to take to improve your processing or merchant relationship with American Express.

In addition, we'd like to highlight a change below and remind you of the upcoming Internal Revenue Code change that may impact your account. If you have any questions, please contact your client manager, or a representative at 1-800-528-5200.

**Inbound Fee**
Effective April 1, 2012, a fee of 0.40% will be applied to any Charge made using an American Express Card issued outside the United States. American Express invests considerable resources in developing and incenting non-U.S. Cardmembers to encourage higher spend on average, which includes spend on additional products and services, as compared to U.S Cardmembers' spending within the U.S.  This fee represents a fraction of the total incremental value that these transactions generate for our Merchants.

We recognize that there may be some cases where this contractual change does not apply to particular merchants because of the specific terms and conditions of their agreement for Card acceptance.  If you believe that any of these changes would not be applicable under your agreement with American Express, please contact your American Express client manager to discuss it with them.

(over, please)



Order No. 10101-5552-124  Proof No. 3  Part No.  1 Back  Copy  A

**IRC Section 6050W and 1099-K Reporting**

With the enactment of Section 6050W of the Internal Revenue Code, the IRS requires all merchant acquiring entities, including American Express, to report the annual gross amount of payment card transactions for each merchant to whom they remit payment. **The IRS requires that merchant acquirers, like American Express:**

- Collect each Merchant payee's legal name and Taxpayer Identification Number (TIN).

- Furnish a Form 1099-K to each of its Merchant payees reporting the total annual gross dollar amount of American Express Card transactions settled for each Merchant during the preceding calendar year every January, and filing a copy of the information return with the IRS every March.

- Withhold 28% of the gross dollar amount of American Express Card transactions settled for any Merchant who fails to provide their TIN to American Express or for whom the IRS notifies American Express that the Merchant's legal name and Taxpayer Identification Number (TIN) reported on a Form 1099-K do not match according to the IRS's records.

- Remit all monies withheld to the IRS promptly as required by law

In order to avoid the 28% backup withholding, you need to verify that the legal name and Taxpayer Identification Number (TIN) you have provided to American Express is the same legal name and Taxpayer Identification Number (TIN) that you have on file with the IRS for every business entity for which you receive payment from American Express. For instructions on how to verify this data and any other questions regarding IRC Section 6050W and Form 1099-K, visit **americanexpress.com/1099-K**.

You may also want to contact your tax advisor to understand the impact of these tax provisions on your business as the information in this document does not constitute tax, legal, or other professional advice, and must not be used as such.

Refer to the next pages for answers to frequently asked questions. If you have additional questions, please call Merchant Services at 1-800-528-5200 or visit our merchant website at **americanexpress.com/merchant**.

Sincerely,

*Kim Goodman*

Kim Goodman
President, Merchant Services Americas
American Express

10101-5552-124 Copy A  Part 2 Face Black, 60% Black Toned, 285 Blue, 2718 Blue

Order No. 10101-5552-124  Proof No. 3  Part No. 2 Face  Copy  A

# frequently asked questions

**Questions Related to the Card Acceptance Agreement Amendment (CAA)**

Q: **This year's merchant mailing provides a full copy of the American Express® Card acceptance agreement. In prior, recent mailings American Express sent amendments to the Card acceptance agreement. What is different this year?**
  A: Every few years, we distribute a full copy of our Card acceptance agreement. This year, 2011, we are providing you a full copy of the agreement.  This copy amends and replaces your current agreement and becomes effective November 30, 2011.

Q: **The definition of "Chargeback" in section 1.c of the General Provisions has changed to include reversals of Charges.  What does this mean?**
  A: The definition has been revised to clarify that a Chargeback may also involve reversal of a Charge for which we have not paid you. As always, please read this provision carefully because it affects your Card acceptance obligations.

Q: **The "Format" section, section 2.b.i of the General Provisions, now states that Merchants must create Charge Records and Credit Records that comply with American Express's "Technical Specifications".  Where can I find these specifications?**
  A: We have required that you create Charge Records and Credit Records that comply with our Technical Specifications, as described in the Merchant Regulations.  The Technical Specifications are summarized in section 2.7 of the Merchant Regulations and posted online, as mentioned in that section. As always, please read this provision carefully because it affects your Card acceptance obligations.

Q: **The "Payment for Charges" section, section 2.b.iv of the General Provisions, now states that you will pay me "less all applicable deductions, rejections, and withholdings" which include the Discount and other specified amounts.  What has changed?**
  A: This section has been revised to indicate the sorts of amounts (e.g., deductions, rejections, and withholdings) that may be subtracted from our payments to you. As always, please read this provision carefully because it affects your Card acceptance obligations.

**Questions Related to Inbound Fee**

Q: **Does the Inbound Fee apply to all international American Express Card transactions?**
  A: Yes. We do not differentiate based on card products.

Q: **Does the Inbound Fee apply to all industries?**
  A: Yes, this fee applies across all industries.

Q: **How did you come up with 40bps?**
  A: We believe the 40bps fee is appropriate as it more closely aligns price with the value we deliver to our Merchants for these transactions. Even with this fee, we continue to deliver significant financial value to our Merchants.

(over, please)



americanexpress.com/merchant

PM11

Q: How does your Inbound Fee compare to that of Visa or Mastercard?
A: We have made the decision to realign price with our own value. While we do not base our pricing on that of Visa and Mastercard, we believe that our overall price/value ratio is extremely competitive and a good value for Merchants.

Q: American Express is known for its "bundled" rate. With the Inbound Fee, it looks like you are now moving to an "unbundled" rate, like Visa and MasterCard. Is this a change in your pricing model?
A: We strive to develop constructs that best reflect our value and are aligned with industry practices. We believe that even with the introduction of the Inbound Fee, we provide our Merchants with pricing transparency and simplicity by offering a mostly bundled rate and by continuing to provide advance notice of any pricing changes.

## Questions Related to IRC Section 6050W and Form 1099-K

Q: What is Internal Revenue Code (IRC) Section 6050W?
A: IRC Section 6050W was added to the Internal Revenue Code as part of the Housing and Economic Recovery Act of 2008. IRC Section 6050W became effective on January 1, 2011. Merchant acquiring entities must report on Forms 1099-K the annual gross amount of payment card transactions settled for each merchant starting with transactions that are settled in 2011. Merchants will receive their first Forms 1099-K in early 2012.

Q: Is IRC Section 6050W specific to American Express?
A: No. IRC Section 6050W applies to all merchant acquiring entities or payment companies that make payments to merchants in settlement of payment card transactions.

Q: What does IRC Section 6050W require?
A: IRC Section 6050W requires that all merchant acquiring entities and payment companies, like American Express Travel Related Services Company, Inc., report the annual gross dollar amount of payment card transactions settled for each of their merchant payees as well as the merchant's legal name and Taxpayer Identification Number (TIN). Every January, payment companies will furnish an information return (Form 1099-K) to each merchant reporting the prior calendar year's transactions. Every March, a copy of the Form 1099-K will be filed by the payment company with the IRS.

Q: What is Form 1099-K?
A: Form 1099-K is the information return the IRS had developed for compliance with IRC Section 6050W. This form reports the gross dollar amount of payment card transactions settled for a participating merchant during the prior calendar year. In addition, the form will reflect the merchant's legal name and Taxpayer Identification Number (TIN). Forms 1099-K will be furnished to merchants every January, and filed by merchant acquiring entities with the IRS in March.

Q: What steps should I take with regard to IRC Section 6050W and 1099-K?
A: If you haven't already updated your legal name and Taxpayer Identification Number (TIN), you must do so in order to ensure accurate reporting and **avoid potential backup withholding**. You can update your information with American Express at any time by logging into your Merchant Account online at **americanexpress.com/oms** and clicking on the "Account Information" section. If your account is not registered online, please call Merchant Services at 1-800-528-5200 to update your information. You should contact a tax, legal or professional advisor to understand the impact of Form1099-K reporting on their business. Information herein does not constitute tax, legal or other professional advice and must not be used as such.

Q: What happens if I do not provide my business Taxpayer Identification Number (TIN)?
A: Starting in 2012, merchant acquiring entities will be required to withhold 28% of the gross dollar amount of payment card transactions, settled for merchants who fail to provide their TIN to them. As required by law, all monies withheld will be promptly remitted to the IRS.



# Agreement for American Express® Card Acceptance

The Agreement is by and between **American Express Travel Related Services Company, Inc.**, a New York corporation, and **you, the Merchant**. By accepting the American Express® Card, you agree to be bound by the Agreement.

General Provisions

**1. SCOPE AND OTHER PARTS OF AGREEMENT; DEFINITIONS**

**a.** Scope of the Agreement. The Agreement governs your acceptance of American Express Cards in the United States, Puerto Rico, the U.S. Virgin Islands, and other U.S. territories and possessions, and in Canada. The Agreement covers you *alone*. You must not obtain Authorizations, submit Charges or Credits, or receive payments on behalf of any other party, except as otherwise expressly permitted in the Merchant Regulations.

**b.** Other Parts of the Agreement.

  **i.** Merchant Regulations. The Merchant Regulations set forth the policies and procedures governing your acceptance of the Card. You shall ensure that your personnel interacting with customers are fully familiar with the Merchant Regulations. The Merchant Regulations are a part of, and are hereby incorporated by reference into, the Agreement. You agree to be bound by and accept all provisions in the Merchant Regulations (as changed from time to time) as if fully set out herein and as a condition of your agreement to accept the Card. We reserve the right to make changes to the Merchant Regulations in scheduled changes and at any time in unscheduled changes as set forth in section 8.j of the General Provisions. The Merchant Regulations and releases of scheduled changes therein are provided only in electronic form, existing at the website specified below in the definition of "Merchant Regulations" or its successor website. However, we shall provide you a paper copy of or a CD-ROM containing the Merchant Regulations or releases of scheduled changes therein upon your request. To order a copy, please call our Merchant Services representatives (telephone: 1-800-528-5200). We may charge you a fee for each copy that you request.

  **ii.** Schedule A. Schedule A, attached hereto or which we otherwise may provide to you, contains other important provisions governing your acceptance of the Card. Schedule A is a part of, and is hereby incorporated by reference into, the Agreement.

**c.** Definitions. Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Merchant Regulations. Some definitions are repeated here for ease of reference.

*Affiliate* means any Entity that controls, is controlled by, or is under common control with either party, including its subsidiaries. As used in this definition, *control* means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an Entity, whether through the ownership of voting securities, by contract, or otherwise. For the avoidance of doubt, but not by way of limitation, the direct or indirect ownership of more than 50% of (i) the voting securities or (ii) an interest in the assets, profits, or earnings of an Entity shall be deemed to constitute "control" of the Entity.

*Agreement* means these General Provisions, Schedule A and any other accompanying schedules and exhibits, and the Merchant Regulations, collectively.

*American Express Card* and *Card* mean (i) any card, account access device, or payment device or service bearing our or our Affiliates' Marks and issued by an Issuer or (ii) a Card Number.

*Cardmember* means an individual or Entity (i) that has entered into an agreement establishing a Card account with an Issuer or (ii) whose name appears on the Card.

*Charge* means a payment or purchase made on the Card.

*Chargeback* (sometimes called "full recourse" or "Full Recourse" in our materials), when used as a verb, means (i) our reimbursement from you for the amount of a Charge subject to such right or (ii) our reversal of a Charge for which we have not paid you; when used as a noun, means the amount of a Charge subject to reimbursement from you or reversal.

*Claim* means any claim (including initial claims, counterclaims, cross-claims, and third party claims), dispute, or controversy between you and us arising from or relating to the Agreement or prior Card acceptance agreements, or the relationship resulting therefrom, whether based in contract, tort (including negligence, strict liability, fraud, or otherwise), statutes, regulations, or any other theory, including any question relating to the existence, validity, performance, construction, interpretation, enforcement, or termination of the Agreement or prior Card acceptance agreements or the relationship resulting therefrom.

*Credit* means the amount of the Charge that you refund to Cardmembers for purchases or payments made on the Card.

*Discount* means an amount that we charge you for accepting the Card, which amount is: (i) a percentage (*Discount Rate*) of the face amount of the Charge that you submit, or a flat per-Transaction fee, or a combination of both; and/or (ii) a Monthly Flat Fee (if you meet our requirements).

*Disputed Charge* means a Charge about which a claim, complaint, or question has been brought.

*Entity* means a corporation, partnership, sole proprietorship, trust, association, or any other legally recognized entity or organization.

*Establishments* means any or all of your and your Affiliates' locations, outlets, websites, online networks, and all other methods for selling goods and services, including methods that you adopt in the future.

*General Provisions* means the provisions set out in the Agreement other than the provisions in any accompanying schedule or exhibit hereto.

*Marks* mean names, logos, service marks, trademarks, trade names, taglines, or other proprietary designs or designations.

*Merchant Number* (sometimes called the "Merchant ID" or "Establishment" or "SE" number in our materials) means a unique number we assign to your Establishment.

*Merchant Regulations* means the American Express Merchant Regulations – U.S., which are available at www.americanexpress.com/merchantpolicy and can be accessed by entering your Merchant Number.

*Other Agreement* means any agreement, other than the Agreement, between (i) you or any of your Affiliates and (ii) us or any of our Affiliates.

*Other Payment Products* mean any charge, credit, debit, stored value or smart cards, account access devices, or other payment cards, services, or products other than the Card.

*Reserve* means a fund established and/or collateral held by us as security for your or any of your Affiliates' obligations to us or any of our Affiliates under the Agreement or any Other Agreement.

*We, our,* and *us* mean American Express Travel Related Services Company, Inc.

*You* and *your* (sometimes called the "Merchant", "Service Establishment", or "SE" in our materials) mean the Entity accepting the Card under the Agreement and (as applicable) its Affiliates conducting business in the same industry.

**d.** List of Affiliates. You must provide to us a complete list of your Affiliates conducting business in your industry and notify us promptly of any subsequent changes in the list. You must notify us promptly if you have any Establishments in Puerto Rico, the U.S. Virgin Islands, and any other U.S. territory or possession, or in another area where the U.S. dollar is the local currency, as our Discount, fees, and payment terms for Card acceptance may be different there. We shall notify you of those terms.

**2. ACCEPTING THE CARD**

**a.** Acceptance. You must accept the Card as payment for all goods and services sold at all of your Establishments, except as otherwise expressly specified in the Merchant Regulations. You agree that the provisions of Chapter 3 (Card Acceptance) of the Merchant Regulations are reasonable and necessary to protect the Cardmember's choice of which Card to use and that charge and credit Cards, including corporate Cards, are interchangeable. You are responsible and jointly and severally liable for the performance by your Establishments of all provisions of the Agreement and all obligations of your Establishments under the Agreement.

**b.** Transaction Processing and Payments. Our Card acceptance, processing, and payment requirements are set forth in the Merchant Regulations. Some requirements are summarized here for ease of reference, but do not supersede the provisions in the Merchant Regulations.

  **i.** Format. You must create a Charge Record for every Charge and a Credit Record for every Credit that comply with our Technical Specifications, as described in the Merchant Regulations. If the Cardmember wants to use different Cards for payment of a purchase, you may create a separate Charge Record for each Card used. However, if the Cardmember wants to use a single Card for payment of a purchase, you shall not divide the purchase into more than one Charge nor shall you create more than one Charge Record unless the purchase qualifies for a Delayed Delivery Charge.

  **ii.** Authorization. For every Charge, you must obtain from and submit to us an Authorization Approval code. An Authorization Approval does not guarantee that (i) the person making the Charge is the Cardmember, (ii) the Charge is in fact valid or bona fide, (iii) you will be paid for the Charge, or (iv) you will not be subject to Chargeback.

  **iii.** Submitting Charges and Credits. Your Establishments must submit Charges and Credits only in U.S. dollars. You must not issue a Credit when there is no corresponding Charge. You must issue Credits to the Card used to make the original purchase, except as otherwise expressly specified in the Merchant Regulations.

  **iv.** Payment for Charges. We will pay you according to your payment plan in U.S. dollars for the face amount of Charges submitted from your Establishments less all applicable deductions, rejections, and withholdings, which include: (i) the Discount, (ii) any amounts you owe us or our Affiliates, (iii) any amounts for which we have Chargebacks, and (iv) any Credits you submit. Your initial Discount is indicated in the Agreement or otherwise provided to you in writing by us. In addition to your Discount we may charge you additional fees and assessments, as listed in the Merchant Regulations. We may adjust any of these amounts and may change any other amount we charge you for accepting the Card.

  **v.** Chargeback. We have Chargeback rights, as described in the Merchant Regulations. We may Chargeback by (i) deducting, withholding, recouping from, or offsetting against our payments to you or debiting your Bank Account, or we may notify you of your obligation to pay us, which you must do promptly and fully; or (ii) reversing a Charge for which we have not paid you. Our failure to demand payment does not waive our Chargeback rights.

  **vi.** Protecting Cardmember Information. You must protect Cardmember Information, as described in the Merchant Regulations. You have additional obligations based on your Transaction volume, including providing to us documentation validating your compliance with the PCI DSS.

**3. PROTECTIVE ACTIONS**

**a.** Creating a Reserve. Regardless of any contrary provision in the Agreement, we have the right in our sole discretion to determine that it is necessary to establish a Reserve. If we believe that we need to create a Reserve, we may immediately establish a Reserve or terminate the Agreement. We shall inform you if we establish a Reserve or terminate the Agreement. We may establish a Reserve by (i) withholding amounts from payment we otherwise would make to you under the Agreement or (ii) requiring you to deposit funds or other collateral with us. Any collateral provided pursuant to this section 3 of the General Provisions is subject to our prior written approval. We may increase the amount of the Reserve at any time so long as the amount of the Reserve does not exceed an amount sufficient, in our reasonable judgment, to satisfy any financial exposure or risk to us under the Agreement (including Charges submitted by you for goods or services not yet received by Cardmembers and our costs of handling Disputed Charges) or to us or our Affiliates under any Other Agreement, or to Cardmembers. Upon the occurrence of an event described in section 3.b.viii of the General Provisions, and during any continuation of such event, we may take immediate action to establish or increase the amount of any Reserve to an amount proportional to the risk covered by such event.

**b.** Trigger Events for Reserve. Some of the events that may cause us to establish a Reserve include: (i) your ceasing a substantial portion of or adversely altering your operations; (ii) your selling all or substantially all of your assets or any party acquiring 25% or more of the equity interests issued by you (other than parties currently owning 25% or more of such interests), whether through acquisition of new equity interests, previously outstanding interests, or otherwise; (iii) your suffering a material adverse change in your business or a material adverse change occurs in your industry; (iv) your breach of section 3.e of the General Provisions; (v) your becoming insolvent; (vi) our receiving a disproportionate number or amount of Disputed Charges at your Establishments; (vii) our reasonable belief that you will not be able to perform your obligations under the

Agreement, any Other Agreement, or to Cardmembers; or (viii) the establishment of a reserve or other protective action taken by any Entity with whom you have entered into an arrangement for the acceptance or processing (or both) of Other Payment Products that (A) results in the withholding of funds that would otherwise have been payable to you, (B) requires you to make a direct payment into a reserve account or similar device, or (C) requires you to provide such Entity with a letter of credit or other third-party guaranty of payment.

**c.** Application of Reserve. We may deduct and withhold from, and recoup and set-off against, the Reserve (i) any amounts you or any of your Affiliates owe us or any of our Affiliates under the Agreement or any Other Agreement; (ii) any costs incurred by us in connection with the administration of the Reserve, including attorneys' fees; and (iii) any costs incurred by us as a result of your failure to fulfill any obligations to us, any of our Affiliates, or to Cardmembers, including attorneys' fees and our costs of handling Disputed Charges.

**d.** Other Protections. We may take other reasonable actions to protect our rights and rights of any of our Affiliates, including changing the speed or method of payment for Charges, exercising Chargeback under any of our Chargeback programs, or charging you fees for Disputed Charges.

**e.** Providing Information. You must provide to us promptly, upon request, information about your and your Affiliates' finances, creditworthiness, and operations, including the most recent certified financial statements. You must notify us immediately of the occurrence of any event described in section 3.b.viii of the General Provisions.

### 4. NOTICES

**a.** Delivery and Receipt. Unless otherwise explicitly provided for herein, all notices hereunder must be in writing and sent by hand delivery; or by U.S. postal service, such as first class mail or third class mail, postage prepaid; or by expedited mail courier service; or by electronic mail (*e-mail*); or by facsimile transmission, to the addresses set out below. Notices are deemed received and effective as follows: If hand-delivered, upon delivery; if sent by e-mail or facsimile transmission, upon sending; if mailed, upon the earlier of (i) receipt or (ii) three days after being deposited in the mail if mailed by first class postage or ten days after being deposited in the mail if mailed by third class postage. If the addressee provided for below rejects or otherwise refuses to accept the notice, or if the notice cannot be delivered because of a change in address for which no notice was appropriately given, then notice is effective upon the rejection, refusal or inability to deliver.

**b.** Our Notice Address. Unless we notify you otherwise, you shall send notices to us at:

American Express Travel Related Services Company, Inc.
P.O. Box 53773
Phoenix, AZ 85072
Attn: Department 87
E-mail: American.Express.Contract.Keying@aexp.com
Fax: (602) 744-8413
Tel: (800) 528-5200

**c.** Your Notice Address. We shall send notice to you at the address, e-mail address, or facsimile number you indicated on your application to accept the Card. You must notify us immediately of any change in your notice address.

### 5. INDEMNIFICATION AND LIMITATION OF LIABILITY

**a.** Indemnity. You shall indemnify, defend, and hold harmless us and our Affiliates, successors, assigns, and third party licensees, from and against all damages, liabilities, losses, costs, and expenses, including legal fees, arising or alleged to have arisen from your breach, negligent or wrongful act or omission, failure to perform under the Agreement, or failure in the provision of your goods or services.

**b.** Limitation of Liability. IN NO EVENT SHALL WE OR OUR AFFILIATES, SUCCESSORS, OR ASSIGNS BE LIABLE TO YOU FOR ANY INCIDENTAL, INDIRECT, SPECULATIVE, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR EXEMPLARY DAMAGES OF ANY KIND (WHETHER BASED IN CONTRACT, TORT, INCLUDING NEGLIGENCE, STRICT LIABILITY, FRAUD, OR OTHERWISE, OR STATUTES, REGULATIONS, OR ANY OTHER THEORY) ARISING OUT OF OR IN CONNECTION WITH THE AGREEMENT, EVEN IF ADVISED OF SUCH POTENTIAL DAMAGES. NEITHER YOU NOR WE WILL BE RESPONSIBLE TO THE OTHER FOR DAMAGES ARISING FROM DELAYS OR PROBLEMS CAUSED BY TELECOMMUNICATIONS CARRIERS OR THE BANKING SYSTEM, EXCEPT THAT OUR RIGHTS TO CREATE RESERVES AND EXERCISE CHARGEBACKS WILL NOT BE IMPAIRED BY SUCH EVENTS.

### 6. TERM AND TERMINATION

**a.** Effective Date/Termination Date. The Agreement begins as of the date (i) you first accept the Card after receipt of the Agreement or otherwise indicate your intention to be bound by the Agreement or (ii) we approve your application to accept the Card, whichever occurs first. Either party can terminate the Agreement without cause (and notwithstanding any other rights established under the Agreement) at any time by notifying the other party. Termination will take effect according to the notice period specified in section 4.a of the General Provisions.

**b.** Grounds for Termination. In addition to our rights in sections 3.a and 6.a of the General Provisions, we may terminate the Agreement at any time without notice to you and without waiving our other rights and remedies if you have not submitted a Charge within any twelve month period. The Agreement is a contract to extend financial accommodations, and if bankruptcy or similar proceedings are filed with respect to your business, then the Agreement will terminate automatically.

**c.** Post-Termination. If the Agreement terminates, without waiving our other rights and remedies, we may withhold from you any payments until we have fully recovered all amounts owing to us and our Affiliates. If any amounts remain unpaid, then you and your successors and permitted assigns remain liable for such amounts and shall pay us within thirty days of our request. You must also remove all displays of our Marks, return our materials and equipment immediately, and submit to us any Charges and Credits incurred prior to termination.

**d.** Effect of Termination. Termination of the Agreement for any reason does not relieve the parties of their respective rights and duties arising prior to the effective date of termination that by their nature are intended to survive termination, including the provisions of sections 1, 3, 5, 6, 7, and 8 of these General Provisions, our Chargeback rights, and your duties set forth in the Merchant Regulations to protect Cardmember Information, indemnify us, retain documents evidencing Transactions, and notify your Recurring Billing customers of such termination. Our right of direct access to the Bank Account will also survive until such time as all credits and debits permitted by the Agreement, and relating to Transactions prior to the effective date of termination, have been made.

## 7. DISPUTE RESOLUTION

**a.** <u>Arbitration Rights</u>. All Claims shall be resolved, upon your or our election, through arbitration pursuant to this section 7 rather than by litigation.

**b.** <u>Arbitration Rules/Organizations</u>. The party asserting the Claim shall select one of the following arbitration organizations, which shall apply its rules in effect at the time the Claim is filed. In the event of an inconsistency between this section 7 and any rule or procedure of the arbitration organization, this section 7 controls. The party asserting the Claim shall simultaneously notify the other party of its selection. If our selection is not acceptable to you, then you may select another of the following organizations within thirty days after you receive notice of our initial selection. Any arbitration hearing that you attend shall take place in the federal judicial district where your headquarters is located.

- National Arbitration Forum (*NAF*): P.O. Box 50191, Minneapolis, MN 55404-0191; (800) 474-2371; www.adrforum.com
- American Arbitration Association (*AAA*): 1633 Broadway, New York, NY 10019; (800) 778-7879; www.adr.org
- JAMS (*JAMS*): 1920 Main Street, Suite 300, Irvine, CA 92614; (949) 224-1810; www.jamsadr.com

In addition to the arbitration organizations listed above, Claims may be referred to any other arbitration organization that is mutually agreed upon in writing by you and us, or to an arbitration organization or arbitrators appointed pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. § 16 *et seq*. (*FAA*), provided that the arbitration organization and arbitrators enforce the terms of sections 7.c and 7.d below.

**c.** <u>Limitation of Rights</u>. IF ARBITRATION IS CHOSEN BY A PARTY WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE SHALL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED IN THE RULES OR PROCEDURES OF NAF, AAA, OR JAMS, AS APPLICABLE. FURTHER, YOU SHALL NOT HAVE THE RIGHT TO PARTICIPATE IN A REPRESENTATIVE CAPACITY OR AS A MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM. OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION. NOTWITHSTANDING ANY OTHER PROVISION IN THE AGREEMENT AND WITHOUT WAIVING EITHER PARTY'S RIGHT TO APPEAL SUCH DECISION, IF ANY PORTION OF THIS SECTION 7.c OR OF SECTION 7.d BELOW IS DEEMED INVALID OR UNENFORCEABLE, THEN THIS ENTIRE SECTION 7 (OTHER THAN THIS SENTENCE) SHALL NOT APPLY.

**d.** <u>Individually Named Parties Only</u>. All parties to the arbitration must be individually named. There is no right or authority for any Claim to be arbitrated or litigated on a class-action or consolidated basis, on behalf of the general public or other parties, or joined or consolidated with claims of other parties, and you and we are specifically barred from doing so. This prohibition is intended to, and does, preclude you from participating in any action by any trade association or other organization against us. The arbitrator's authority to resolve Claims is limited to Claims between you and us alone, and the arbitrator's authority to make awards is limited to awards to you and us alone.

**e.** <u>Application of Provision</u>. For the avoidance of any confusion, and not to limit its scope, this section 7 applies to any putative class action lawsuit that has been filed against us prior to the effective date of the Agreement relating to the "Honor All Cards", "non-discrimination", or "no steering" provisions of the Agreement as described in sections 1 and 2 of these General Provisions and Chapter 3 (Card Acceptance) of the Merchant Regulations, or prior versions of a Card acceptance agreement.

**f.** <u>Equitable Relief</u>. The arbitrator shall have the power and authority to grant equitable relief (e.g., injunction, specific performance) and, cumulative with all other remedies, shall grant specific performance whenever possible. The arbitrator shall have no power or authority to alter the Agreement or any of its separate provisions, including this section 7, nor to determine any matter or make any award except as provided in this section 7.

**g.** <u>Small-Claims Court; Injunctive Relief</u>. We shall not elect to use arbitration under this section for any individual Claim that you properly file in a small claims court so long as the Claim is pending only in that court. Injunctive relief sought to enforce the provisions of sections 8.a and 8.b of these General Provisions is not subject to the requirements of this section 7. This section 7 is not intended to, and does not, substitute for our ordinary business practices, policies, and procedures, including our rights to Chargeback and to create Reserves.

**h.** <u>Governing Law/Appeal/Entry of Judgment</u>. This section 7 is made pursuant to a transaction involving interstate commerce and is governed by the FAA. The arbitrator shall apply New York law and applicable statutes of limitations, honor claims of privilege recognized by law and, at the timely request of either party, provide a written and reasoned opinion explaining his or her decision. The arbitrator shall apply the rules of the arbitration organization selected, as applicable to matters relating to evidence and discovery, not the federal or any state rules of civil procedure or rules of evidence. The arbitrator's decision shall be final and binding, except for any rights of appeal provided by the FAA or if the amount of the award exceeds US $100,000, in which case either party can appeal that award to a three-arbitrator panel administered by NAF, AAA, or JAMS, as applicable, which shall reconsider de novo any aspect of the initial award requested by majority vote and whose decision shall be final and binding. The decision of that three-person panel may be appealed as provided by the FAA. The costs of such an appeal shall be borne by the appellant regardless of the outcome of the appeal. Judgment upon the award rendered by the arbitrator may be entered in any state or federal court in the federal judicial district where your headquarters or your assets are located.

**i.** <u>Confidential Proceedings</u>. The arbitration proceeding and all testimony, filings, documents, and any information relating to or presented during the proceedings shall be deemed to be confidential information not to be disclosed to any other party. All offers, promises, conduct, and statements, whether written or oral, made in the course of the negotiations, arbitrations, and proceedings to confirm arbitration awards by either party, its agents, employees, experts or attorneys, or by the arbitrator, including any arbitration award or judgment related thereto, are confidential, privileged, and inadmissible for any purpose, including impeachment or estoppel, in any other litigation or proceeding involving any of the parties or non-parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation or arbitration.

**j.** <u>Split Proceedings for Equitable Relief</u>. Either you or we may seek equitable relief in arbitration prior to arbitration on the merits to preserve the status quo pending completion of such process. This section shall be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, including legal fees, to be paid by the party against whom enforcement is ordered. Except

as otherwise provided in section 7.c. above, if any portion of this section 7 (other than section 7.c. or d.) is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this section 7, the Agreement, or any predecessor agreement you may have had with us, each of which shall be enforceable regardless of such invalidity.

**k.** Costs of Arbitration Proceedings. You will be responsible for paying your share, if any, of the arbitration fees (including filing, administrative, hearing and/or other fees) provided by the Arbitration Rules, to the extent such fees do not exceed the amount of the filing fees you would have incurred if the Claim had been brought in a state or federal court that would have jurisdiction over the Claim located in the federal judicial district where your headquarters are located. We will be responsible for paying the remainder of any arbitration fees. At your written request, we will consider in good faith making a temporary advance of all or part of your share of the arbitration fees for any Claim you initiate as to which you or we seek arbitration. You will not be assessed any arbitration fees in excess of your share if you do not prevail in any arbitration with us.

**8.   MISCELLANEOUS**

**a.** Confidentiality. You must keep confidential and not disclose to any third party the provisions of the Agreement and any information that you receive from us that is not publicly available.

**b.** Proprietary Rights and Permitted Uses. Neither party has any rights in the other party's Marks, except as otherwise expressly specified in the Merchant Regulations, nor shall one party use the other party's Marks without its prior written consent, except that we may use your name, address (including your website addresses or URLs), and customer service telephone numbers in any media at any time.

**c.** Your Representations and Warranties. You represent and warrant to us that: (i) you are duly organized, validly existing, and in good standing under the laws of the jurisdiction in which you are organized; (ii) you are duly qualified and licensed to do business in all jurisdictions in which you conduct business; (iii) you have full authority to enter into the Agreement and all necessary assets and liquidity to perform your obligations and pay your debts hereunder as they become due; (iv) there is no circumstance threatened or pending that might have a material adverse effect on your business or your ability to perform your obligations or pay your debts hereunder; (v) you are authorized to enter into the Agreement on behalf of your Establishments and Affiliates, including those indicated in the Agreement, and the individual who signs the Agreement or otherwise enters into it has authority to bind you and them to it; (vi) you are not (1) listed on the U.S. Department of Treasury, Office of Foreign Assets Control, Specially Designated Nationals and Blocked Persons List (available at www.treas.gov/ofac), (2) listed on the U.S. Department of State's Terrorist Exclusion List (available at www.state.gov), or (3) located in or operating under license issued by a jurisdiction identified by the U.S. Department of State as a sponsor of international terrorism, by the U.S. Secretary of the Treasury as warranting special measures due to money laundering concerns, or as noncooperative with international anti-money laundering principles or procedures by an intergovernmental group or organization of which the United States is a member; (vii) you have not assigned to any third party any payments due to you under the Agreement and all indebtedness arising from Charges are for bona fide sales of goods or services (or both) at your Establishments and free of any liens, claims, or encumbrances other than ordinary sales taxes; (viii) all information that you provided in connection with the Agreement is true, accurate, and complete; and (ix) you have read the Agreement and kept a copy for your file. If any of your representations or warranties in the Agreement becomes untrue, inaccurate, or incomplete at any time, we may immediately terminate the Agreement in our discretion.

**d.** Compliance with Laws. You shall comply with all applicable laws and governmental regulations and rules.

**e.** Governing Law; Jurisdiction; Venue. The Agreement and all Claims are governed by and shall be construed and enforced according to the laws of the State of New York without regard to internal principles of conflicts of law. Notwithstanding the immediately preceding sentence, the parties agree that an electronic transmission contemplated hereunder is being provided in connection with a transaction affecting interstate commerce that is subject to the federal Electronic Signatures in Global and National Commerce Act, 15 U.S.C. §1700 *et seq. (E-Sign Act).* The parties intend that the E-Sign Act apply to the fullest extent possible to validate their ability to electronically transmit and electronically commit to be bound by the obligations and form assent described in the Merchant Regulations and releases of scheduled changes therein. Subject to section 7, any action by either party hereunder shall be brought only in the appropriate federal or state court located in the County and State of New York. Each party consents to the exclusive jurisdiction of such court and waives any claim of lack of jurisdiction or forum non conveniens.

**f.** Interpretation. In construing the Agreement, unless the context requires otherwise: (i) the singular includes the plural and vice versa; (ii) the term "or" is not exclusive; (iii) the term "including" means "including, but not limited to;" (iv) the term "day" means "calendar day;" (v) all amounts are stated in U.S. dollars; (vi) any reference to any agreement (including the Agreement), instrument, contract, policy, procedure, or other document refers to it as amended, supplemented, modified, suspended, replaced, restated, or novated from time to time; (vii) any reference to a website or a URL (or both) refers to its successor website or URL; (viii) all captions, headings, and similar terms are for reference only; and (ix) where specific language is used to illustrate by example or clarify a general statement, such specific language shall not be interpreted to modify, limit, or restrict the construction of the general statement. To the extent possible, these General Provisions, the provisions of Schedule A, and the provisions of the Merchant Regulations shall be interpreted to give each their full effect. However, if a conflict is deemed to exist between them, then that conflict shall be resolved in the following order of precedence: Schedule A and any accompanying exhibits shall control over these General Provisions or the Merchant Regulations (or both) and the Merchant Regulations shall control over these General Provisions.

**g.** Assignment. You shall not assign the Agreement, or any of your rights, interests, or obligations hereunder, whether voluntarily or by operation of law (including by way of sale of assets, merger, or consolidation), without our prior written consent. Any purported assignment by operation of law is voidable in our sole discretion. We may assign the Agreement, or any of our rights, interests, or obligations hereunder, without your consent. Except as otherwise specified herein, the Agreement binds, and inures to the benefit of, the parties and their respective successors and permitted assigns.

**h.** Waiver; Cumulative Rights. Either party's failure to exercise any of its rights under the Agreement, its delay in enforcing any right, or its waiver of its rights on any occasion, shall not constitute a waiver of such rights on any other occasion. No course of dealing by either party in exercising any of its rights shall constitute a waiver thereof. No waiver of any provision of the Agreement shall be effective unless it is in writing and signed by

the party against whom the waiver is sought to be enforced. All rights and remedies of the parties are cumulative, not alternative.

**i.** Savings Clause. Other than as set forth in the last sentence of section 7.c of these General Provisions, if any provision of the Agreement is held by a court of competent jurisdiction to be illegal or unenforceable, that provision shall be replaced by an enforceable provision most closely reflecting the parties' intentions, with the balance of the Agreement remaining unaffected.

**j.** Amendments. We reserve the right to change the Agreement at any time (including by amending any of its provisions, adding new provisions, or deleting or modifying existing provisions) on at least ten days' prior notice to you, provided that we shall change the Merchant Regulations pursuant to the following provisions. You agree to accept all changes (and further to abide by the changed provisions in the Merchant Regulations) as a condition of your agreement to accept the Card. We are not bound by any changes that you propose in the Agreement, unless we expressly agree in a writing signed by our authorized representative. An e-mail does not constitute such a signed writing.

**(1)** Scheduled Changes. The Merchant Regulations are published twice each year, in April and October. We have the right to, and hereby notify you that we may, change the provisions of the Merchant Regulations in scheduled releases (sometimes called "Notification of Changes" in our materials) as follows:

- a release of scheduled changes, to be published every April, which changes shall take effect in the following October (or in a later) edition of the Merchant Regulations or during the period between two editions of the Merchant Regulations, and

- a release of scheduled changes, to be published every October, which changes shall take effect in the following April (or in a later) edition of the Merchant Regulations or during the period between two editions of the Merchant Regulations.

Where a change is to take effect during the period between two editions of the Merchant Regulations, we shall also include the change in the edition of the Merchant Regulations covering the period during which the change shall take effect, noting the effective date of the change therein.

**(2)** Unscheduled Changes. We also have the right to, and hereby notify you that we may, change the provisions of the Merchant Regulations in separate unscheduled releases, which generally shall take effect ten days after notice to you (unless another effective date is specified in the notice).

**k.** Entire Agreement. The Agreement is the complete and exclusive expression of the agreement between you and us regarding the subject matter hereof and supersedes any prior or contemporaneous agreements, understandings, or courses of dealing regarding the subject matter hereof.

**l.** Disclaimer of Warranties. WE DO NOT MAKE AND HEREBY DISCLAIM ANY AND ALL REPRESENTATIONS, WARRANTIES, AND LIABILITIES, WHETHER EXPRESS, IMPLIED, OR ARISING BY LAW OR FROM A COURSE OF DEALING OR USAGE OF TRADE, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR ANY WARRANTY OF TITLE OR NON-INFRINGEMENT.

**m.** No Third-Party Beneficiaries. The Agreement does not and is not intended to confer any rights or benefits on any person that is not a party hereto and none of the provisions of the Agreement shall be enforceable by any person other than the parties hereto, their successors and permitted assigns.

**n.** Press Releases. You shall not issue any press release or make any public announcement (or both) in respect of the Agreement or us without our prior written consent.

**o.** Independent Contractors. You and we are independent contractors. No agency, partnership, joint-venture, or employment relationship is created between the parties by the Agreement. Each party is solely responsible for its own acts and omissions and those of its respective agents, employees, representatives, and subcontractors in connection with the Agreement.

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC.**

By:

*[signature]*

Kim C. Goodman
President
Merchant Services, Americas

# Schedule A
# Other Important Provisions for Card Acceptance

### 1. YOUR CANADIAN ESTABLISHMENTS

**a.** Notification. You must notify us if you have any Establishments in Canada and cause them to comply with the terms of an agreement with our Affiliate governing Card acceptance there. You will be notified of those terms.

**b.** Submitting Charges and Credits; Payment for Charges. Your Establishments in Canada must submit Charges and Credits in Canadian dollars. They will be paid according to their payment plan in Canadian dollars for the face amount of Charges that they submit less: (i) the Discount, (ii) any amounts they owe us or our Affiliates, (iii) any amounts for which we have Chargebacks, and (iv) any Credits you submit. The Discount, fees, and payment terms for your Establishments in Canada may be different from the Discount, fees, and payment terms for your Establishments in the United States.

10101-5552-124  Copy A Part 6 Back Black, 285 Blue, 40% 2718 Blue Toned, 2718 Blue

Visit us at americanexpress.com/merchant



American Express
P.O. Box 35022
Greensboro, NC 27425

Order No. 10101-5552-124  Proof No. 1  Part No. 6 Back  Copy   A

PRSRT STD
U.S. POSTAGE
**PAID**
AMERICAN EXPRESS

important account updates and policy news

PMOE11