# Exhibit H



# American Express

# Merchant Regulations - U.S.

# October 2015





Copyright © 2008-2015 American Express. All rights reserved. This document contains published confidential and proprietary information of American Express. No disclosure or use of any portion may be made or reproduced in any form or by any electronic or mechanical means, including without limitation information storage and retrieval systems, without the express prior written consent of American Express Travel Related Services Company, Inc.

| change bars | Change bars are vertical lines in the left margin that identify revised, added, or removed text. All changes in the *Merchant Regulations* are indicated with a change bar as shown here: |
|---|---|

| summary of changes table | Important updates are listed in the following table and are also indicated in the *Merchant Regulations* with a change bar. |
|---|---|

| chapter (U.S.) | section / subsection | description |
|---|---|---|
| chapter 2, "doing business with American Express" | subsection 2.13, "marketing programs (U.S.)" | Added the terms of Marketing Programs to Chapter 2. |
| chapter 3, "Card acceptance" | subsection 3.2, "treatment of the American Express Brand" | Changes made in compliance with federal court ruling. |
|  | subsection 3.2.1, "treatment of the American Express marks" | Changes made in compliance with federal court ruling. |
| chapter 4, "transaction processing" | section 4.1, "the many types of transactions" | Added Digital Wallet Application-initiated Transactions. |
|  | section 4.3, "American Express payment options" | Replaced mobile phones with Mobile Devices. |
|  | section 4.4, "completing a transaction at the point of sale" | Replaced "e-wallet" accounts with Digital Wallet Payments. |
|  | subsection 4.5.1, "electronic charges" | Revised subsection to include Mobile Devices. |
|  | subsection 4.5.1.2, "contact chip Card charges" | Subsection revised to reflect the No Signature/No PIN policy. |
|  | section 4.5.1.2, "contact chip Card charges (US)" | ○ Added new section effective for all industries October 17, 2015 with the exception of CATs attached to automated fuel dispensers.<br><br>○ Tip box added to clarify that subsection 4.5.1.2 will not apply to CATs attached to fuel dispensers until October 17, 2017.<br><br>○ Subsection includes clarification that Contactless transactions and Digital Wallet Contactless-initiated Charges are excluded from Chip Card fraud liability shift and keyed Transactions are included. |
|  | subsection 4.5.1.3, "digital wallet payments" | Revised entire subsection and changed title to "Digital Wallet Payments". |

summary of changes

**summary of changes**

| chapter (U.S.) | section / subsection | description |
|---|---|---|
| chapter 4, "transaction processing" (continued) | section 4.5.2, "key-entered charges" | Subsection revised to reflect the No signature/No PIN policy as well as clarification on keyed Transactions. |
| | section 4.5.2, "key-entered charges (U.S.)" | Added clarification on keyed Transactions being subject to fraud liability shift. |
| | section 4.7, "processing a Card not present charge" | ○ Added a clarification for Digital Wallet Application-initiated Transactions.<br><br>○ Updated content and added a tip box for further clarification on recommended support. |
| | section 4.9, "processing a credit (U.S.)" | Revision of current section to remove language and link to calculator for discount rate due to expiration of the time frame. |
| | section 4.11, "return and cancellation policies" | ○ Revised to indicate a Token can replace the need for a full card number.<br><br>○ Changes made in compliance with federal court ruling. |
| | section 4.16, "delayed delivery charges" | Changes made in compliance with federal court ruling. |
| | section 4.18, "no signature/no pin program" | Revised No Signature policy to include No PIN as well. |
| chapter 5, "authorization" | subsection 5.9, "authorization reversal" | Subsection revised to recommend a reversal for an Approved Charge to avoid new Authorization Integrity Fee. |
| chapter 6, "submission" | subsection 6.5.1, "charge submissions (U.S.)" | Subsection revised to include a new Authorization Integrity Fee which may be assessed for Charges that we Authorize for which you do not reverse, submit or submit late. |
| chapter 10, "risk evaluation" | subsection 10.3, "monitoring" | Clarification added that Merchants must comply with technical specifications. |

| chapter (U.S.) | section / subsection | description |
|---|---|---|
| chapter 11, "chargebacks and inquiries" | section 11.4.2, "Cardmember dispute" | Updated goods/services not received or only partially received (C08), goods/services not as described (C31), and Card not present (F29) Chargeback reason codes to include additional Support that can be submitted to request a Chargeback Reversal. |
| | subsection 11.4.3, "fraud" | ○ Revised subsection to include two new Chargeback codes related to EMV. Effective October 2015.<br><br>○ Revised Chargeback description for missing signature to reflect "no signature/no pin".<br><br>○ Listed chargeback exclusions for Digital Wallet Application-initiated Transactions and Digital Wallet Contactless-initiated Transactions.<br><br>○ Updated goods/services not received or only partially received (C08), goods/services not as described (C31), and Card not present (F29) Chargeback reason codes to include additional Support that can be submitted to request a Chargeback Reversal. |
| | subsection 11.12, "chargeback and inquiry monitoring (U.S.)" | Subsection updated to reflect excessive Chargebacks as a condition that may result in a merchant fee. |

summary of changes

**summary of changes**

| chapter (U.S.) | section / subsection | description |
|---|---|---|
| chapter 12, "specific industries" | subsection 12.2, "rental establishments" | ○ Added clarifying language in regards to convenience fees for rental establishments.<br><br>○ Changes made in compliance with federal court ruling. |
| | subsection 12.7.3, "oil fraud protection program (U.S.)" | Tip box added to oil/petroleum in regards to Chip Card FLS dates. |
| | subsection 12.12.1.1, "cruise line - special authorization procedures (U.S.)" | ○ Subsections revised to remove restriction for the use of Prepaid Cards at check-in/pick-up or embarkation for lodging, car rental and cruise lines.<br><br>○ Clarifications to reinforce the Authorization procedures will help to further mitigate potential Chargeback exposure for Merchants in these industries. |
| | subsection 12.12.2.1, "lodging - special authorization procedures (U.S.)" | |
| | subsection 12.12.3.1, "vehicle rentals - special authorization procedures (U.S.)" | |
| | subsection 12.13, "government/utilities/education" | ○ Added clarifying language with regards to convenience fees for government/utilities/education.<br><br>○ Changes made in compliance with federal court ruling. |

| chapter (U.S.) | section / subsection | description |
|---|---|---|
| chapter 13, "payment service provider" | subsection 13.2, "definitions (U.S.)" | Clarified definition of High CV Sponsored Merchant. |
| | subsection 13.3.3, "exclusions (U.S.)" | Removed 'political parties' and 'internet/online pharmacies'. |
| | subsection 13.3.4, "sponsored merchant agreements (U.S.)" | ○ Inclusion of bullet referring to Cardmember Offers section in 2.12 to PSP chapter.<br>○ Changes made in compliance with federal court ruling. |
| | subsection 13.4, "general psp requirements (U.S.)" | ○ Clarified that PSPs have to abide by the provisions in chapter 9: fraud prevention.<br>○ Added requirement to provide further documentation about Charities, Licensed Massage Parlors, Online Pharmacies, Online Tobacco, and Political Organizations.<br>○ Added clarification in regards to Sponsored Merchant termination requirements. |
| | subsection 13.4.5, "treatment of specific industries (U.S.)" | Added subsection 13.4.5 regarding convenience fees for specific industries. |
| chapter 14, "merchant fees" | subsection 14.2.2, "authorization fees (U.S.)" | ○ Revised to include the Authorization Integrity Fee of 0.10% of the face amount of Charge plus $0.05 for each Charge that we Authorize for which you do not reverse, submit or submit late.<br>○ Removal of tip box that refers to a link and email which are no longer active. |
| | subsection 14.2.6, "excessive Chargeback fee (U.S.)" | Subsection revised to reflect changes in the method used to calculate fees and changes in the fee amounts. |

summary of changes

**summary of changes**

| chapter (U.S.) | section / subsection | description |
|---|---|---|
| glossary | Glossary Terms | ○ Added "Application-initiated Transaction" definition |
| | | ○ Added "Capable Chip and PIN POS System" definition |
| | | ○ Added "Cardholder Verification Method (CVM)" definition |
| | | ○ Added "Consumer Device Cardholder Verification Method (CDCVM)" definition |
| | | ○ Added "Digital Wallet Contactless-initiated Transaction" definition |
| | | ○ Added "Digital Wallet Magnetic Secure Transmission Transaction" definition |
| | | ○ Added "Digital Wallet Payment" definition |
| | | ○ Added "Digital Wallet Application-initiated Transaction" definition |
| | | ○ Added "Enabled Chip and PIN POS System Fallback" definition |
| | | ○ Added "Fallback" definition |
| | | ○ Added "Insertion Order" definition |
| | | ○ Added "Marketing Materials" definition |
| | | ○ Added "Marketing Program " definition |
| | | ○ Added "Merchant-Provided Creative" definition |
| | | ○ Added "Mobile Device" definition |
| | | ○ Revised "No Signature/No PIN Program" definition. |
| | | ○ Added "Non-Credit Payment Forms" definition |
| | | ○ Added "Offer" definition |
| | | ○ Added "Offer End Date" definition |
| | | ○ Added "QR Code" definition |
| | | ○ Added "Registered Card Offer" definition |
| | | ○ Added "Report" definition |

## Contact Information (U.S)

☎

| | |
|---|---|
| Merchant Services (general customer service for Merchants) | 1.800.528.5200 |
| Authorization Department | 1.800.528.2121 |
| Travelers Cheque/Gift Cheque Customer Service | 1.800.221.7282 |
| Travelers Cheque Authorizations and Fraud | 1.800.525.7641 |
| American Express Terminal Assistance (If a vendor other than American Express provided your terminal, contact that vendor directly.) | 1.800.851.5948 |
| General Charge/Credit forms (Vendor supplying paper Charge and Credit forms.) | 1.877.867.3409 |
| Charge Verification Group | 1.800.876.9786 |
| American Express Enterprise Incident Response Program (EIRP) | 1.602.537.3021 or 1.888.732.3750 |
| Trustwave | 1.866.659.9016 |

✉

| | |
|---|---|
| Paper submissions | American Express Initial Processing PO Box 2878 Omaha, NE 68103-2878 |
| Rush Paper Submissions | AJD Data Services, Inc. DHL Omaha Station Attn: Ryan Drees 1505 Hartman Court Omaha, NE 68110 |
| Customer Service Disputes | American Express Credit Card Account Customer Service Department PO Box 981532 El Paso, TX 79998 Fax: 623.444.3000 |
| Fraud Disputes | Overnight/Signature Required American Express Datamark, Inc. 43 Butterfield Circle El Paso, TX 79906-5202 |

💻

| | |
|---|---|
| Point of Sale Materials | www.americanexpress.com/decals |
| Merchant Fraud Prevention Information | www.americanexpress.com/fraudinfo |
| American Express Merchant homepage | www.americanexpress.com/merchant |

this page intentionally left blank

summary of changes ......................................................................................................... iii

# introduction ....................................................................................................... 1

1.1    about American Express .......................................................................... 2

1.2    about the merchant regulations ............................................................. 2

1.3    organization of the merchant regulations .......................................... 3

1.4    changes in merchant regulations .......................................................... 3

      1.4.1    scheduled changes ..................................................................... 4

      1.4.2    unscheduled changes ................................................................ 4

# doing business with American Express ....................................... 5

2.1    introduction ............................................................................................... 6

2.2    benefits of accepting the American Express Card ......................... 6

2.3    the American Express merchant number ........................................... 7

2.4    merchant information .............................................................................. 7

2.5    use of third parties ................................................................................ 11

2.6    configuring communications ............................................................... 11

2.7    compliance with the technical specifications ................................ 12

2.8    establishment closing ........................................................................... 13

2.9    verification and disclosure of information ....................................... 13

2.10    call monitoring ...................................................................................... 14

2.11    list of merchants .................................................................................. 14

2.12    cardmember offers (U.S.) ................................................................... 15

2.13    marketing programs (U.S.) ................................................................ 15

# Card acceptance ...................................................................................... 21

3.1    Card acceptance ..................................................................................... 22

3.2    treatment of the American Express Brand ..................................... 22

      3.2.1    treatment of the American Express marks ......................... 24

3.3    prohibited uses of the Card ................................................................ 25

3.4    prohibited merchants ............................................................................ 26

3.5    treatment of American Express Cardmember information ........... 26

table of contents

.

**table of contents**

**transaction processing**..................................................................**29**

4.1    the many types of transactions.................................................30

4.2    transaction cycle .......................................................................31

4.3    American Express payment options ..........................................32

4.4    completing a transaction at the point of sale ...........................33

4.5    processing an in-person charge ................................................34

       4.5.1    electronic charges ......................................................34

       4.5.2    key-entered charges ...................................................40

       4.5.3    actions for in-person charges ....................................41

4.6    customer activated terminals ...................................................42

4.7    processing a Card not present charge ......................................43

4.8    charge records ..........................................................................45

4.9    processing a credit ...................................................................47

4.10   credit records ...........................................................................48

4.11   return and cancellation policies ...............................................49

       4.11.1   return policy for prepaid products .............................49

4.12   processing transactions for specific industries ........................49

4.13   corporate purchasing Card charges .........................................50

4.14   advance payment charges .......................................................51

4.15   aggregated charges ..................................................................53

4.16   delayed delivery charges .........................................................54

4.17   keyed no imprint program ........................................................55

4.18   no signature/no pin program ...................................................56

4.19   recurring billing charges ..........................................................57

4.20   processing prepaid Cards .........................................................59

4.21   processing travelers/gift cheques ............................................60

       4.21.1   acceptance procedures ..............................................61

## authorization ........................................................................ 63

5.1    introduction ........................................................... 64

5.2    transaction cycle .................................................... 64

5.3    the purpose of authorization ................................. 65

5.4    authorization process ............................................ 65

5.5    possible authorization responses ......................... 66

5.6    obtaining an electronic authorization .................... 67

5.7    obtaining a voice authorization ............................. 67

5.8    Card identification (CID) number .......................... 68

5.9    authorization reversal ........................................... 69

5.10    authorization time limit ....................................... 69

5.11    floor limit ............................................................. 69

5.12    pre-authorization ................................................. 70

5.13    additional authorization requirements ................. 71

## submission ......................................................................... 73

6.1    introduction ........................................................... 74

6.2    transaction cycle .................................................... 74

6.3    purpose of submission .......................................... 75

6.4    submission process ............................................... 77

6.5    submission requirements - electronic .................. 77

    6.5.1    charge submissions ................................ 77

    6.5.2    credit submissions .................................. 78

6.6    submission requirements - paper ......................... 79

6.7    how to submit ........................................................ 80

table of contents

**table of contents**

**settlement** .................................................................................................... **81**

7.1      transaction cycle ................................................................................. 82

7.2      settlement amount ............................................................................. 83

7.3      discount/discount rate ....................................................................... 83

    7.3.1      monthly flat fee ................................................................. 84

    7.3.2      corporate purchasing Card discount reduction ........................ 84

7.4      method of payment ............................................................................ 85

7.5      speed of payment .............................................................................. 86

7.6      payment options ................................................................................ 88

7.7      reconciliation options ........................................................................ 90

7.8      payment errors or omissions ............................................................. 91

7.9      collecting from Cardmembers ............................................................ 91

**protecting Cardmember information** ............................................................ **93**

8.1      data security operating policy ............................................................ 94

8.2      definitions ......................................................................................... 94

8.3      standards for protection of Cardmember information ........................ 96

8.4      data incident management obligations .............................................. 97

8.5      indemnity obligations for a data incident .......................................... 98

8.6      periodic validation of merchant systems ......................................... 100

    8.6.1      merchants not compliant with PCI DSS .............................. 104

    8.6.2      non-validation fees and termination of agreement .............. 104

    8.6.3      periodic validation of Level EMV merchants ....................... 105

8.7      confidentiality and disclosure ......................................................... 106

8.8      disclaimer ....................................................................................... 106

## fraud prevention ........................................................................................... 107

| 9.1 | introduction | 108 |
| 9.2 | transaction cycle | 109 |
| 9.3 | strategies for deterring fraud | 110 |
| 9.4 | Card acceptance policies | 111 |
| 9.5 | Card security features | 112 |
| | 9.5.1 compromised Card security features | 113 |
| 9.6 | recognizing suspicious activity | 115 |
| 9.7 | prepaid Card security features | 116 |
| 9.8 | recognizing suspicious activity for prepaid Cards | 116 |
| 9.9 | travelers cheque and gift cheque security features | 117 |
| 9.10 | fraud mitigation tools | 118 |
| 9.11 | verification services | 123 |
| | 9.11.1 electronic verification services | 123 |
| | 9.11.2 additional services | 130 |

## risk evaluation ............................................................................................ 133

| 10.1 | introduction | 134 |
| 10.2 | prohibited merchants | 134 |
| 10.3 | monitoring | 137 |
| | 10.3.1 high risk merchants | 138 |
| | 10.3.2 fraudulent, deceptive, or unfair business practices, illegal activities, or prohibited uses of the Card | 139 |

**table of contents**

**table of contents**

**chargebacks and inquiries** ....................................................................**141**

11.1    introduction ........................................................................ 142

11.2    transaction cycle ................................................................ 143

11.3    disputed charge process .................................................... 144

11.4    chargeback reasons ............................................................ 144

    11.4.1    authorization ........................................................ 145

    11.4.2    Cardmember dispute ............................................ 147

    11.4.3    fraud .................................................................... 155

    11.4.4    inquiry/ miscellaneous ........................................ 159

    11.4.5    processing error .................................................. 161

    11.4.6    chargeback programs .......................................... 165

11.5    requesting a chargeback reversal ...................................... 166

11.6    resubmission of disputed charge ...................................... 166

11.7    inquiry ................................................................................ 166

11.8    inquiry reasons .................................................................. 167

11.9    substitute charge records .................................................. 169

11.10   deadline for responding .................................................... 169

11.11   Cardmember re-disputes .................................................... 170

11.12   chargeback and inquiry monitoring .................................. 170

11.13   how we chargeback ............................................................ 171

11.14   chargeback programs ........................................................ 171

11.15   tips for avoiding chargebacks and inquiries .................... 173

11.16   ways to receive chargebacks and inquiries ...................... 174

11.17   response methods .............................................................. 174

## specific industries ........................................................................................ 175

12.1 introduction......................................................................................... 176

12.2 rental establishments ......................................................................... 177

12.3 auto dealers ........................................................................................ 178

12.4 business-to- business (B2B)/ wholesale distribution........................... 180

12.5 charitable donations ........................................................................... 181

12.6 insurance ............................................................................................ 182

12.7 oil/petroleum ...................................................................................... 183

    12.7.1 requirements (U.S.)................................................................ 183

    12.7.2 recommendations (U.S.) ....................................................... 183

    12.7.3 oil fraud protection program (U.S.)........................................ 184

12.8 parking ................................................................................................ 185

12.9 restaurants .......................................................................................... 185

12.10 Telecommunications ......................................................................... 185

12.11 timeshares ........................................................................................ 186

12.12 travel industries ................................................................................ 187

    12.12.1 cruise line .......................................................................... 187

    12.12.2 lodging ............................................................................... 188

    12.12.3 vehicle rentals .................................................................... 192

12.13 government/utilities/education.......................................................... 196

12.14 internet/online pharmacies ............................................................... 197

12.15 online/mail order tobacco retail ........................................................ 197

table of contents

**table of contents**

**payment service provider** ................................................................ **199**

13.1    introduction ........................................................................ 200

13.2    definitions (U.S.) ................................................................ 202

13.3    recruitment of sponsored merchants (U.S.) ........................... 203

    13.3.1    payment service provider registration process (U.S) ......... 203

    13.3.2    payment service provider changes (U.S.) ........................ 204

    13.3.3    exclusions (U.S.) .......................................................... 205

    13.3.4    sponsored merchant agreements (U.S.) .......................... 206

    13.3.5    conversion of large merchants (U.S.) .............................. 209

13.4    general psp requirements (U.S.) .......................................... 210

    13.4.1    customer service information (U.S.) ................................ 214

    13.4.2    disclosures to Cardmembers and sponsored merchants (U.S.) ...... 214

    13.4.3    chargebacks / disputed charges (U.S.) ........................... 214

    13.4.4    marketing (U.S.) ........................................................... 215

    13.4.5    treatment of specific industries (U.S.) ............................ 216

13.5    financial and payment terms (U.S.) ...................................... 217

13.6    sponsored merchant reporting requirements (U.S.) ................ 217

    13.6.1    transactional data requirements (U.S.) ........................... 217

    13.6.2    disapproval of merchant (U.S.) ...................................... 218

13.7    indemnity - limitation of liability (U.S.) ................................ 218

    13.7.1    termination (U.S.) ........................................................ 218

13.8    audit and oversight (U.S.) ................................................... 218

    13.8.1    audit rights (U.S.) ......................................................... 219

    13.8.2    oversight reviews (U.S.) ................................................ 220

    13.8.3    audit and oversight review follow-up (U.S.) .................... 221

**merchant fees** ...................................................................................... **223**

14.1    introduction............................................................................... 224

14.2    types of fees............................................................................. 224

    14.2.1    Card acceptance discount fees (U.S.) ......................... 224

    14.2.2    authorization fees (U.S.)............................................ 225

    14.2.3    submission and settlement fees (U.S.) ...................... 227

    14.2.4    data security fees (U.S.) ............................................ 228

    14.2.5    data pass violation fee (U.S.) .................................... 229

    14.2.6    excessive Chargeback fee (U.S.) ............................... 229

    14.2.7    American Express Merchant Regulations fee (U.S.)................ 230

    14.2.8    Payment Service Provider fees (U.S.).......................... 231

**glossary** ............................................................................................... **233**

**appendix** .............................................................................................. **247**

table of contents

table of contents

this page intentionally left blank

# Merchant Regulations - U.S.

1

introduction

## contents

1.1   about American Express

1.2   about the merchant regulations

1.3   organization of the merchant regulations

1.4   changes in merchant regulations





introduction

| | | |
|---|---|---|
| **1.1** | **about American Express** | American Express was established more than 150 years ago and has undergone remarkable changes over the years. One characteristic has remained constant, however: our commitment to the core values of our founders. American Express is guided by a value system that is steadfastly focused on doing business in more than 130 countries around the globe with trust and integrity, delivering quality products and services to our valued customers. |
| | | The American Express Network operates worldwide, including in Territories where Applicable Law, or other considerations, may require that certain of our Affiliates or licensees act as Acquirers. |
| | | The Network also supports millions of Merchants globally and processes billions of Transactions daily, forging relationships between Cardmembers and Merchants. We help build the businesses of millions of Merchants, from neighborhood shops to multinational corporations. |
| **1.2** | **about the merchant regulations** | We are pleased to provide the *American Express Merchant Regulations*. It offers best practices, helpful tips, and available tools to assist your businesses. You can be more successful if you have access to and understand Card acceptance policies and procedures. |
| | | To serve all Merchants consistently, we require them to operate under the *Merchant Regulations*. |
| | | The *Merchant Regulations* set forth the policies and procedures governing your acceptance of the American Express® Card. It is a part of, and is hereby incorporated by reference into, the Agreement. You agree to be bound by and accept all provisions in the *Merchant Regulations* (as changed from time to time) as if fully set out in the Agreement and as a condition of your agreement to accept the Card. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

introduction

## 1.3 organization of the merchant regulations

Information boxes like this one are displayed throughout the Merchant Regulations to highlight important information such as definitions, fraud alerts, helpful tips and further information.

You should read the global policies together with any country-specific policies that follow. The two sections are organized one after the other, making it easier to read and find the information you need.

The *American Express Merchant Regulations* are designed to meet the needs of busy Merchants. The content is organized into:

- global policies that apply to your Establishment, and

- country-specific policies that apply to your Establishments located in the specific country listed.

In the event of any conflict between the global policies and country-specific policies, the requirements of the country-specific policies take precedence. In the event of any conflict between the Agreement and Applicable Law, the requirements of law govern.

The *Merchant Regulations* follows the flow of the Transaction cycle – from Card acceptance, to Authorization, to Submission, to Settlement, to Disputed Charges, to Chargebacks. To make it easier for you to locate the information you need quickly, the *Merchant Regulations* are designed with the following functionality:

- Important information is identified throughout the *Merchant Regulations* using the information boxes to the left of the main text.

- Point-and-click links to and from chapters are identified by blue underlined text when viewing the *Merchant Regulations* online.

- A table of contents and comprehensive glossary are provided at the front and back of the *Merchant Regulations*, respectively.

- Capitalized terms used in the *Merchant Regulations* have the meanings ascribed to them in the glossary. In addition, certain specialized terms also appear and are defined in the chapter or section in which they are used.

## 1.4 changes in merchant regulations

We reserve the right to make changes to the *Merchant Regulations* in scheduled changes and at any time in unscheduled changes as set forth in the General Provisions (see subsection 1.4.1, "scheduled changes" and subsection 1.4.2, "unscheduled changes").You agree to accept all changes (and further to abide by the changed provisions of the *Merchant Regulations*) as a condition of your agreement to accept the Card, except where Applicable Law takes precedence.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*
October 2015          3



introduction

| 1.4.1 | scheduled changes | The *Merchant Regulations* is published on a scheduled basis, twice each year, in April and October. We have the right to, and hereby notify you that we may, change the provisions of the *Merchant Regulations* in scheduled releases (sometimes called "Notification of Changes" in our materials) as follows: |

- ○ a release of scheduled changes, to be published every April, which changes shall take effect in the following October (or in a later) edition of the *Merchant Regulations* or during the period between two editions of the *Merchant Regulations*, and

- ○ a release of scheduled changes, to be published every October, which changes shall take effect in the following April (or in a later) edition of the *Merchant Regulations* or during the period between two editions of the *Merchant Regulations*.

Where a change is to take effect during the period between two editions of the *Merchant Regulations*, we shall also include the change in the edition of the *Merchant Regulations* covering the period during which the change shall take effect, noting the effective date of the change therein.

| 1.4.2 | unscheduled changes | We have the right, and hereby notify you that we may, change the provisions of the *Merchant Regulations* in separate unscheduled releases. |

| 1.4.2 | unscheduled changes (U.S.) | Provisions changed in unscheduled releases generally take effect ten (10) days after notice to you (unless another effective date is specified in the notice). |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

**2**

doing business with American Express

## contents

2.1  introduction

2.2  benefits of accepting the American Express Card

2.3  the American Express merchant number

2.4  merchant information

2.5  use of third parties

2.6  configuring communications

2.7  compliance with the technical specifications

2.8  establishment closing

2.9  verification and disclosure of information

2.10  call monitoring

2.11  list of merchants

2.12  cardmember offers (U.S.)

2.13  marketing programs (U.S.)



doing business with American Express

| 2.1 | introduction | At American Express, we feel privileged to do business with Merchants like you and want to help make the process of accepting Cards as simple as possible. The *Merchant Regulations* explain the policies and procedures related to accepting American Express Cards. It also highlights some of the services and tools that can help your business. This chapter outlines some general concepts that relate to doing business with American Express. |

| 2.2 | benefits of accepting the American Express Card | The decision you have made to accept the American Express Card demonstrates a commitment to the millions of Cardmembers who carry the Card. |

Accepting the Card allows you to:

- ○ offer your customers the convenience of paying with American Express Cards, and

- ○ improve retention by allowing customers with recurring Charges to pay automatically.

**2.2    benefits of accepting the American Express Card (U.S.)**

Accepting the Card also allows you to:

- ○ access your Merchant Account through our online program, and

- ○ manage your Inquiries, Submissions and payment information online with daily updates.

Sign up to manage your Merchant Account online and you can access easy-to-use account management features (terms apply). You can:

- ○ find out how much you're getting paid
- ○ manage cash flow
- ○ get access to detailed Transaction features
- ○ learn about and review new Disputed Charges

To enroll or learn more, go to www.americanexpress.com/merchant.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

Merchant Regulations - U.S.



doing business with American Express

## 2.3 the American Express merchant number

Your Merchant Number (sometimes called a "Merchant ID", "Establishment number" or "SE number" in our materials) is a unique number we assign to your Establishments.

- If you have more than one Establishment, we may assign a separate Merchant Number for each.

- If you accept Card Present Charges and also accept Card Not Present Charges, you must notify us so that we may assign a separate Merchant Number for each.

> If you do not know your Merchant Number, refer to your current statement—either paper or electronic (by accessing your Merchant Account online (terms apply))—or contact the representative from your corporate office that works with American Express.

- Your Merchant Number is assigned to you based on our classification of your industry. Certain Establishments may operate in more than one industry classification (e.g., a gasoline station with both in-store and Customer Activated Terminal (CAT) Transactions). In these instances, you must obtain a separate Merchant Number for each industry classification.

- Each Merchant Number is designated for a single currency.

- We may refuse to assign a Merchant Number or grant Card acceptance privileges to an Establishment.

If you require an additional Merchant Number, call Merchant Services.

You must use your Merchant Number to identify your business any time you contact us. This is the easiest and fastest way for us to access your Merchant Account information.

A Merchant Number is the sole property of American Express and you shall only use it for operating your Card acceptance relationship with us. You shall not assign or otherwise transfer any Merchant Number to any other party. You are responsible for safeguarding Merchant Numbers.

## 2.4 merchant information

Having current information about you enables us to serve you better.

> Incorrect information may result in servicing issues. For example, if your business name changes and American Express is not notified, your customers may not recognize the Charge on their statements. This could result in Disputed Charges.

You and any person signing the application to accept Cards must have provided all required information. We will obtain, verify, record, and analyze information (including your telephone calls) that identifies each person or Entity (which may, in our sole discretion, include information about its owners) applying to accept the Card and open a Merchant Account, as well as information that may be provided in subsequent calls or interactions with us. We will use such information to improve our services, prevent fraud, or for other business purposes.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



doing business with American Express

## 2.4  merchant information (U.S.)

As a result of IRS rules governing "merchant acquiring entities," American Express is required, effective January 1, 2012, to withhold 28% of Settlement from any Merchant whose tax identification number (TIN) and/or legal name are missing or do not match what is on file with the IRS. To avoid potential backup withholdings, you must notify us any time there is a change to your TIN, legal name, and/or business address, and ensure you respond to any requests for verification and record updates from us.

When you apply to accept the Card and open a Merchant Account, we will ask for your business name, a business street address and a business tax identification number. If you provide us with your personal name, street address, or tax identification number to be used as your business name, business street address, or business tax identification number, we will use this information as your business information for purposes of our relationship with you. Additionally, we may request or require that you provide information about your significant owners, including name, street address, date of birth, an identification number, such as a social security number, and other Merchant information, which may include additional contact information for your significant owners, personnel (e.g., authorized signers), and Establishments. This information may include telephone numbers, email addresses, and facsimile numbers. We may also ask to see identifying documents such as a business license, driver's license or similar documentation that will allow us to identify you. If you provide us with your personal contact number(s) to be used as your business contact number(s), we will use this information as your business information for purposes of our relationship with you.

You agree that, upon providing contact information to us, we may send you messages, including important information about your Merchant Account as well as information on products, services, and resources available to your business. These messages may be sent to the phone numbers, email addresses or fax numbers you provide. If you provide a wireless phone number to us, you agree that we may contact you at that number and the communications we send may include autodialed short message service (SMS or "text") messages or automated or prerecorded calls. If you provide a fax number to us, you agree that we may send you fax communications. We may otherwise use and share Merchant information for business purposes and as permitted by law. We use reasonable administrative, technical and physical security measures to protect Merchant information consistent with the sensitivity of the information.

You may opt out of newsletters or messages about products, services and resources for different forms of communications by contacting us at 1-800-528-5200 or by logging onto americanexpress.com/merchant and selecting "update your email address" from the list of account options and then selecting "marketing communications", or by exercising any opt-out options that we may describe or offer in emails, SMS messages, faxes or other communications. If you have opted-out, we may still send you servicing messages related to information about your account.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

doing business with American Express

**2.4    merchant information (U.S.) (continued)**

You must also notify us of any additions, deletions, and/or modifications to your Merchant information, particularly changes related to:

- banking information (e.g., routing number, Bank Account, bank name),
- legal name of business or corporate owner registered with the IRS,
- federal tax identification number as registered with the IRS,
- full physical address/location,
- telephone number at which we can contact you (e.g., your business telephone number),
- telephone number at which your customers may contact you (e.g., your customer service telephone number),
- email address at which we can contact you (e.g., your business email address),
- email address at which your customers may contact you (e.g., your customer service email address),
- website URL,
- goods/services offered (type of business),
- method of doing business (e.g., mail order, internet, storefront),
- form of organization (e.g., sole proprietorship, partnership, limited liability company, corporation, non profit, government),
- publicly traded or privately held organization,
- ownership/control (e.g., sale of business, change in control of business),





doing business with American Express

**2.4   merchant information (U.S.) (continued)**

○ significant owners that control 25% or more of your business. If you do not have a single significant owner that controls 25% or more, you still must provide one owner. For each significant owner or owner, provide:

■ name,

■ full home physical address/location,

■ Social Security Number or date of birth,

○ authorized signer information,

■ name and title,

■ Social Security Number,

○ other critical business information that helps us contact or do business with you (e.g., change of Processor).

This list is not exhaustive and we may, at our sole discretion, require additional information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

Merchant Regulations - U.S.




doing business with American Express

## 2.5    use of third parties

> Generally we require information about the third parties you work with such as their company name, address, and telephone number; the name, address, and telephone number of an individual whom we may contact about your Merchant Account; and the types of Merchant processing services offered by such third party.

As a Merchant, you make decisions and choices on behalf of your business each and every day. Some Merchants choose to deal directly with us for all aspects of the Transaction process; others enlist the assistance of various third parties to provide them with services. These third parties may include:

- ○ service providers/Processors,
- ○ Terminal Providers,
- ○ vendors, and
- ○ Covered Parties and other agents contracted to operate on your behalf.

You may retain, at your expense, such third parties; however, you remain financially and otherwise liable for all obligations (including confidentiality obligations and compliance with the Technical Specifications), services, and functions they perform under the Agreement for you, such as the technical requirements of authorizing and submitting Transactions to us, as if you performed such obligations, services, and functions. Any omission or failure to perform by your third party does not relieve you of your obligations under the Agreement. We need not alter our conduct of business in respect of your third parties' performance and may rely upon that performance as if done by you.

Any listing or certification by us of third parties does not constitute a guarantee or warranty by us of their performance and does not relieve you of your responsibility and liability for any such third party that you elect to use.

You are responsible and liable for all problems and expenses caused by your third parties, including any Settlement payments misdirected to other parties because of the mis-programming of your Point of Sale (POS) System by your third parties, and for any fees your third parties charge us or that we incur as a result of your third parties. We may bill you for any fees or deduct them from our payments to you.

You must ensure that these third parties cooperate with us to enable your Card acceptance. You must notify us if you intend for these third parties to deal directly with us and notify us promptly in writing if you change such third parties. You must provide us, on request, all relevant non-confidential information about your third parties. We generally use this information to help in servicing your Merchant Account, including troubleshooting issues affecting the processing of your Transactions, and ensuring compliance with the Technical Specifications (see section 2.7, "compliance with the technical specifications").

## 2.6    configuring communications

If commercially reasonable for you, and not prohibited by any of your other agreements, you must work with us to configure your Authorization, Submission and POS Systems to communicate directly with our systems for Authorization and Submission of Charge Data.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



doing business with American Express

## 2.7 compliance with the technical specifications

> **Technical Specifications**
> The set of mandatory, conditional, and optional requirements related to connectivity to the Network and electronic Transaction processing, including Authorization and Submission of Transactions (sometimes called "specifications" in our materials), which we may update from time to time.

> You may be required to comply with conditional and/or optional requirements in the Technical Specifications depending on:
> - ❏ your industry,
> - ❏ type of connectivity to the Network,
> - ❏ method of Transaction processing, and/or,
> - ❏ use of certain fraud mitigation tools.

Each day, billions of Transactions traverse, and are processed by, the American Express Network. Merchants, Processors, Terminal Providers, and others must conform to the Technical Specifications in order to connect to and transact on the Network.

Each Authorization request and Transaction, including data contained therein, must comply with the Technical Specifications, any other (or different) requirements of our local operating centers and Applicable Law. We reserve the right to modify the Technical Specifications or requirements of our local operating centers.

You must ensure that you and any third parties you enlist to facilitate Transaction processing with us comply with the Technical Specifications (see section 2.5, "use of third parties"). Valid and accurate data must be provided for all data elements in accordance with the Technical Specifications. Failure to comply with the Technical Specifications may impact your ability to successfully process Transactions.

To ensure your compliance with the Technical Specifications, work with your Processor, Terminal Provider, or if you have a direct link with us, your American Express representative.

## 2.7 compliance with the technical specifications (U.S.)

You may be charged non-compliance fees if you fail to comply with the Technical Specifications. See subsection 14.2.3, "submission and settlement fees (U.S.)".

Merchants who connect to the Network directly may elect to receive email notifications when updates are made to the Technical Specifications. To receive such email notifications, contact your American Express representative or send an email to SpecQuestions@aexp.com.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

doing business with American Express

| 2.8 | **establishment closing** | If you close any of your Establishments, you must follow these guidelines: |
|---|---|---|

○ Notify American Express' <u>Merchant Services</u> immediately.

○ Your policies must be conveyed to the Cardmember prior to completion of the Charge and printed on the copy of a receipt or Charge Record the Cardmember signs. See <u>section 4.11, "return and cancellation policies"</u> for additional information.

○ If you are not providing refunds or exchanges, post notices indicating that all sales are final (e.g., at the front doors, by the cash registers, on the Charge Record and on your website and catalog).

○ Your return and cancellation policies must be clearly disclosed at the time of sale.

○ For Advance Payment Charges or Delayed Delivery Charges, you must either deliver the goods or services for which you have already charged the Cardmember or issue Credit for any portion of the Charge for which you have not delivered the goods or services.

| 2.9 | **verification and disclosure of information** | We obtain information about you from your application to accept the Card and from other sources (e.g., credit reporting agencies and providers of business information). |
|---|---|---|

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



doing business with American Express

**2.9   verification and disclosure of information (U.S.)**

We may request from consumer or commercial credit reporting agencies or other investigative agencies an investigative or consumer report about the commercial or personal finances of you, any person signing your application to accept the Card (or any other application/setup page used in applying for Card acceptance), and any person providing us with permission to obtain such information in connection with the Agreement. You authorize and direct us to inform such persons directly, or through you, of reports about such persons that we have requested from such agencies.

Such information will include the name and address of the agency furnishing the report. You also authorize American Express to use the reports from consumer reporting agencies for marketing and administrative purposes.

The information we obtain about you from your application to accept the Card will include your taxpayer identification number.

We may, at our sole discretion, disclose information about you and/or any person signing the application/setup page of the Agreement, if applicable, and/or any person providing us with permission to obtain or disclose information in connection with the Agreement, including information about your Merchant Account, to our agents, subcontractors, Affiliates, and other parties, including industry organizations and reporting agencies, for any purpose permitted by law, including debt collection, fraud prevention, and risk reduction.

You and/or any person signing the application/setup page of the Agreement, if applicable, and/or any person providing us with permission to obtain or disclose information in connection with the Agreement, hereby release and waive any right or Claim arising out of or related to such disclosure, including defamation Claims, even if the information that we disclose is incorrect or incomplete. You acknowledge that we may report your business name and the name of your principals to the MATCH™ (Member Alert to Control High Risk Merchants) listing maintained by MasterCard. You and they hereby specifically consent to the reporting, and you and they hereby waive and hold us harmless from all Claims and liabilities you and they may have as a result of such reporting.

**2.10   call monitoring**

We will monitor or record (or both) and analyze telephone calls with you to improve our services, prevent fraud, or for other business purposes.

**2.11   list of merchants**

For the purpose of communicating your acceptance of the Card, we may include your name, address (including your website addresses or URLs), customer service telephone numbers, and/or industry classification in lists of Merchants that accept the Card based on information you have provided to us or that is otherwise publicly available. We may publish or publicly disclose that information from time to time.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

Merchant Regulations - U.S.



doing business with American Express

| | | |
|---|---|---|
| **2.12** | **cardmember offers (U.S.)** | We want to help encourage Cardmembers to seek out and shop at small Merchants that accept the American Express Card. From time to time, we may include small Merchants in Cardmember offers. There is no additional cost to your business to be included in these offers. |
| | | For more information, visit www.americanexpress.com/ShopSmallFAQs and click on the Cardmember Offers tab. There you can view offer terms and conditions, determine if your business is an eligible small Merchant that is included in any offers, and access any available signage to promote Cardmember offers, that you are included in, to your customers. |
| **2.13** | **marketing programs (U.S.)** | As a Merchant, you may be eligible to participate in American Express Marketing Programs that we conduct from time to time. We have the right, in our sole discretion, whether or not to approve you as an eligible Merchant for a Marketing Program. Not all Merchants are eligible for Marketing Programs. If we determine that you are eligible for a Marketing Program, you have the right, in your sole discretion, to decide whether you will elect to participate in such a Marketing Program. If you do elect to participate in such Marketing Program, you must complete and sign an Insertion Order, which we will provide to you. The Insertion Order will contain the specific details of the Marketing Program (e.g., promotion of the Offer, applicable marketing channels). The provisions of this chapter 2, along with the Insertion Order, will govern your participation in such programs. |
| | | During your participation in a Marketing Program as set forth in an Insertion Order, you must indicate your acceptance of the Card by displaying our Marks at the point of sale (including online or mobile services) or at the store entry in conformance with section 3.2.1, "treatment of the American Express marks". If you do not display the marks of any other payment form at the point of sale (including online or mobile services) or at store entry, the foregoing sentence shall not apply. |
| **2.13.1** | **honoring the offer (U.S.)** | You must not impose any restrictions on the Offer other than those specifically described in the copy approved by you and us. If you become aware of any issues with the Offer, you shall give us prompt written notice thereof, which notice will not relieve you of your obligations pursuant to the Insertion Order. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



doing business with American Express

| 2.13.2 | license (U.S.) | You hereby grant us a non-exclusive, non-transferable, royalty-free license to use those of your Marks, as set forth in an Insertion Order, and any copy you submit hereunder in any communications media (e.g., television, radio, print or online promotions), in connection with and solely to identify and promote the Marketing Program in the manner set forth in the Insertion Order, subject to subsection 2.13.4, "copy requirements; approval of marketing materials (U.S.)". We shall not alter or modify those Marks in any way. |
|---|---|---|

In the case of Merchant-Provided Creative, we hereby grant to you a non-exclusive, non-transferable, royalty-free license to use those of our Marks, as set forth in the Insertion Order, in connection with and solely to identify and promote the Marketing Program in the manner set forth in the Insertion Order, subject to subsection 2.13.4, "copy requirements; approval of marketing materials (U.S.)". You shall not alter or modify those Marks in any way.

Upon the termination or expiration of the Marketing Program, the licenses granted in this subsection 2.13.2, "license (U.S.)" shall expire.

| 2.13.3 | hyperlinking (U.S.) | Each of American Express and Merchant hereby grants to the other the right to establish a hyperlink to its respective designated website from, and embed a bitmap image referenced in the Insertion Order on, as appropriate, American Express or Merchant's website, digital platform and/or emails that are sent by American Express or Merchant to promote the Marketing Program as set forth in the Insertion Order. Additionally, if applicable, you grant us the right to use a QR Code to establish a hyperlink to your website from offline or direct mail marketing materials to be created under the Marketing Program. You shall notify us immediately of any change in a URL associated with a QR Code or any other URL in connection with an Offer. In case of a change in American Express' or Merchant's URL, American Express or Merchant, as applicable, shall adjust the hyperlinks as soon as possible, but in no event later than five (5) business days from the date of receipt of written notice of such change. |
|---|---|---|

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.

doing business with American Express

| 2.13.4 | copy requirements; approval of marketing materials (U.S.) | All copy shall conform to the space, style, and format requirements established by us. You will have the opportunity to review and approve all Marketing Materials within three (3) business days following receipt of such materials, which approval shall not be unreasonably withheld. You must not create or distribute any Marketing Materials or distribute Merchant-Provided Creative unless we have expressly approved in writing both the channel and content for any such Marketing Materials or Merchant-Provided Creative. For the avoidance of doubt, we have final approval over all Marketing Materials related to the Marketing Program and reserve the right not to approve any Marketing Materials for any reason. You accept full responsibility for the accuracy of the Marketing Materials approved by you in accordance with this subsection 2.13.4, "copy requirements; approval of marketing materials (U.S.)". |
| 2.13.5 | promotion of the offer (U.S.) | We, our Affiliates, and licensees reserve the right to discontinue promoting any Offer that does not comply with our policies and guidelines. Regardless of any prior approval by us, you shall immediately, upon our written request, stop communication of any Offer and communicate any messaging provided by us related to the removal, cancellation, and/or modification of any Offer. For the avoidance of doubt, any removal, cancellation, and/or modification of an Offer does not modify the Offer End Date, and you are obligated to fulfill all Offers through their respective Offer End Dates. |
| 2.13.6 | audit (U.S.) | You shall, on not less than three (3) business days' prior written notice from us, permit us or our representatives to audit your facilities, business practices and records in connection with the Marketing Program as necessary to verify your compliance with the terms of the Agreement relating to Cardmember Information. You will reasonably cooperate with us in any such audit. |

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



doing business with American Express

| 2.13.7 | no reverse engineering (U.S.) | You shall not, directly or indirectly, for your benefit or the benefit of any other party discover, reverse engineer, decompile, decode or otherwise use Segmentation Criteria, Cardmember Information, any information obtained through hyperlinks, or any Reports to (i) establish the personal identity of any Cardmember participating (or attempting to participate) in an Offer or (ii) identify any individual or group as Cardmembers for any purpose, including, without limitation, to create a group or segment composed exclusively of Cardmembers. In no event shall you use Cardmember Information, Segmentation Criteria, or any information obtained through hyperlinks to target, direct any marketing or solicitation or conduct analyses solely of Cardmembers on the basis of such persons being Cardmembers. You shall not, directly or indirectly, distribute, share, market, or sell Cardmember Information, Segmentation Criteria, any Reports, or any information obtained through hyperlinks to any third parties (which term, for the purposes of this section 2.13.7, "no reverse engineering (U.S.)", includes your Affiliates). This section 2.13, "marketing programs (U.S.)" does not limit a Merchant who opts to participate in Marketing Programs from using independently obtained Cardmember Information or information that a Cardmember has consented to allow such a Merchant to use for marketing purposes. |
|---|---|---|
| 2.13.8 | confidentiality (U.S.) | Each of American Express and Merchant agree to treat any information it receives from the other party in connection with the Marketing Program and the Insertion Order as Confidential Information, as defined and subject to the requirements under the Agreement. |
| 2.13.9 | registered card-specific terms (U.S.) | The following terms apply to certain Registered Card Offers, based on the specific Offer details selected in the Insertion Order.

In connection with a Registered Card Offer, we will issue statement credits to qualifying Cardmembers, which amount shall be funded in accordance with the Insertion Order.

If you submit a Credit to American Express in connection with a Transaction, we will deduct the full amount of the Credit from our payment to you in accordance with the terms of the Agreement and will not be obligated to reduce it by the amount of the statement credit provided to Cardmembers in connection with the Registered Card Offer. We may change the procedure described in this subsection 2.13.9, "registered card-specific terms (U.S.)" by providing you with thirty (30) days prior written notice. In the event a Credit is issued for the amount of the entire Transaction within sixty (60) days of the date of the Transaction, we will refund to you the statement credit associated with such Transaction. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

doing business with American Express

| | | |
|---|---|---|
| **2.13.10** | **intellectual property rights (U.S.)** | Nothing herein shall be construed to restrict, impair, or deprive American Express or Merchant of any of its intellectual property rights that existed prior to, or arise in connection with, the Marketing Program. |
| **2.13.11** | **indemnity (U.S.)** | In addition to your indemnification obligations under the Agreement, you hereby release and agree to indemnify, defend, and hold harmless us, our Affiliates, licensees and their respective officers, directors, and agents, from any claims and/or demands arising out of or related to (i) the content of all Marketing Materials, Merchant-Provided Creative approved or provided by you **(excluding our Marks and/or content related to our products and services); and (ii) any material breach of this chapter by you in connection with a Marketing Program.** |
| | | **In addition to any of our indemnification obligations under the Agreement, we hereby release and agree to indemnify, defend, and hold harmless you, and your respective officers, directors, and agents, from any claims and/or demands arising out of or related to (i) content of our products and/or services or creative provided by us; and (ii) any material breach of this chapter by us in connection with a Marketing Program.** |
| **2.13.12** | **limitation of liability; disclaimer (U.S.)** | NEITHER PARTY WILL BE LIABLE TO THE OTHER FOR ANY CLAIMS ARISING OUT OF OR RELATED TO THE USE OF FACEBOOK, TWITTER, OR ANY OTHER SOCIAL MEDIA CHANNEL AS SET FORTH ON AN INSERTION ORDER (EACH, A "SOCIAL MEDIA PLATFORM") THAT RESULT IN CONNECTION WITH OR OUT OF THE TERMS AND CONDITIONS, REGULATIONS AND/OR ACTIONS OR INACTIONS OF ANY SUCH SOCIAL MEDIA PLATFORM. NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS CHAPTER, THE MARKETING PROGRAM IS PROVIDED TO MERCHANT "AS IS" BY US WITHOUT WARRANTY OF ANY KIND, EITHER EXPRESS OR IMPLIED. |



doing business with American Express

this page intentionally left blank

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.

# Merchant Regulations - U.S.

**3**

# contents

3.1   Card acceptance

3.2   treatment of the American
      Express Brand

3.3   prohibited uses of the Card

3.4   prohibited merchants

3.5   treatment of American Express
      Cardmember information

Card acceptance



Merchant Regulations - U.S.

## Card acceptance

| 3.1 | **Card acceptance** |
|---|---|



You must accept the Card as payment for goods and services (other than those goods and services prohibited under section 3.3, "prohibited uses of the Card") sold, or (if applicable) for charitable contributions made, at all of your Establishments, except as expressly permitted by state statute. You are jointly and severally liable for the obligations of your Establishments under the Agreement.

By accepting the Card at your Establishment, you are providing your customers with convenience and flexibility in choosing their method of payment.

| 3.2 | **treatment of the American Express Brand** |
|---|---|

For the past 150 years, American Express has built a brand that is synonymous with trust, integrity, security, quality, and customer service. We work diligently to uphold our reputation, and restrict Merchants from engaging in activities that would harm our business or brand.

> You may issue policies related to customer identification, and define minimum Charge amounts, subject to Applicable Law and the Agreement.

Except as expressly permitted by Applicable Law, or as permitted elsewhere in this section 3.2, "treatment of the American Express Brand", you must not:

> "Non-Credit Payment Forms" are any forms of payment other than a (i) general purpose credit or charge card; or (ii) payment card brand name that refers to both general purpose credit or charge cards and debit cards, such as "Visa" or "MasterCard".

- ❍ indicate or imply that you prefer, directly or indirectly, any Non-Credit Payment Forms,
- ❍ mischaracterize the Card or any of our services or programs,
- ❍ try to persuade or prompt Cardmembers to use any Non-Credit Payment Forms,
- ❍ impose any fees when the Card is accepted that are not imposed equally on all Other Payment Products, except for electronic funds transfer, or cash and check,
- ❍ suggest or require Cardmembers to waive their right to dispute any Transaction,
- ❍ engage in activities that harm our business or the American Express Brand (or both),
- ❍ promote more actively than our Card any Non-Credit Payment Forms (except your own private label card that you issue for use solely at your Establishments),
- ❍ convert the currency of the original sale Transaction to another currency when requesting Authorization or submitting Transactions (or both), or
- ❍ try to persuade, prompt, or otherwise encourage Cardmembers to pay for goods or services using one American Express Card rather than another American Express Card based on the identity of the Issuer.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

Card acceptance

**3.2    treatment of the American Express Brand (U.S.)**

You may offer discounts from your regular or sale prices or in-kind incentives or otherwise to encourage payments by other general purpose credit or charge cards, or by payment card brand names that refer to both general purpose credit or charge cards and debit cards (such as "Visa" or "MasterCard"). Efforts to influence the general purpose credit or charge card that a customer uses in compliance with the terms of this paragraph will not constitute a violation of the provisions set forth above in this section 3.2, "treatment of the American Express Brand".

You may also offer discounts from your regular prices or in-kind incentives for payments in cash, ACH funds transfer, check, or debit card, provided that (to the extent required by Applicable Law): (i) you clearly and conspicuously disclose the terms of the discount or in-kind incentive to your customers, (ii) the discount or in-kind incentive is offered to all of your prospective customers, and (iii) the discount or in-kind incentive does not differentiate on the basis of the Issuer or debit card network or, except as expressly permitted by applicable state statute, payment card network.

You must not make untrue statements about American Express or about your cost of accepting the Card. If you choose to compare your reasonably estimated cost of accepting the Card to your reasonably estimated cost of accepting other credit or charge cards, you must exclude the costs of accepting debit cards from your calculation of your costs to accept other credit or charge cards.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Card acceptance

| | | |
|---|---|---|
| **3.2.1** | **treatment of the American Express marks** | When customers ask what payments are accepted, you must indicate your acceptance of the Card. If you choose to attempt to influence a customer's choice of credit or charge card, you must reasonably indicate that you accept the Card by posting signage either at the point of sale (including online or on mobile services) or store entry, or by communicating orally that you accept the Card prior to the request for Authorization of the transaction. For example, you may satisfy this requirement by displaying a sticker at the point of sale or at the store entrance indicating all brands you accept that includes the American Express logo. If you display our Marks, you must do so according to our guidelines. |

Our corporate logo, the "American Express® Blue Box" logo, is the strongest visual symbol of our company's image. The "Blue Box" represents and reinforces the high quality service and values of American Express. The appropriate version of the "Blue Box" logo must be displayed on all point-of-purchase materials and signs. The following guidelines apply to your use of the "Blue Box" logo in communications:

- ❍ The space around the "Blue Box" must equal at least 1/3 the size of the box.

- ❍ The "Blue Box" logo minimum size is 3/8" and 1/2" is the preferred size.

- ❍ The "Blue Box" logo must always be shown in the pre-approved "American Express blue" or, in one- or two-color communications, black.

- ❍ A minimum distance of 1-1/2 times the size of the "Blue Box" must be allowed between the "Blue Box" logo and a non-American Express Mark.

You must not use our Marks in any way that injures or diminishes the goodwill associated with the Mark, nor in any way (without our prior written consent) indicate that we endorse your goods or services. You shall only use our Marks as permitted by the Agreement and shall cease using our Marks upon termination of the Agreement.

For additional guidelines on the use of our Marks, contact your American Express representative or call Merchant Services.

| | | |
|---|---|---|
| 3.2.1 | **treatment of the American Express marks (U.S.)** | For more information and to order free point-of-purchase decals, you can also visit the American Express website at www.americanexpress.com/decals. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

Card acceptance

| 3.3 | prohibited uses of the Card | You must not accept the Card for any of the following: |

- adult digital content sold via Internet Electronic Delivery,

- amounts that do not represent bona fide sales of goods or services (or, if applicable, amounts that do not represent bona fide charitable contributions made) at your Establishments; for example, purchases at your Establishments by your owners (or their family members) or employees contrived for cash flow purposes, or payments that you have accepted in order to advance cash to Cardmembers in connection with the Transaction,

- amounts that do not represent bona fide, direct sales by your Establishment to Cardmembers made in the ordinary course of your business,

- cash or cash equivalent; for example, purchases of gold, silver, platinum and palladium bullion and/or bars (collectible coins and jewelry are not prohibited), or virtual currencies that can be exchanged for real currency (loyalty program currencies are not prohibited),

- Charges that the Cardmember has not specifically approved,

- costs or fees over the normal price of the goods or services (plus applicable taxes) that the Cardmember has not specifically approved,

- damages, losses, penalties, or fines of any kind,

- gambling services (including online gambling), gambling chips, gambling credits, or lottery tickets,

- unlawful/illegal activities, fraudulent business transactions or when providing the goods or services is unlawful/illegal (e.g., unlawful/illegal online internet sales of prescription medications or controlled substances; sales of any goods that infringe the rights of a Rights-holder under laws applicable to us, you, or the Cardmember),

> An example of selling something that infringes the rights of a Rights-holder, is the sale of counterfeit goods.

- overdue amounts or amounts covering returned, previously dishonored or stop-payment checks (e.g., where the Card is used as a payment of last resort),

- sales made by third parties or Entities conducting business in industries other than yours, except as provided in chapter 13, "payment service provider", or

- other items of which we notify you.

You must not use the Card to verify your customer's age.

For more information on how we monitor such uses of the Card, see chapter 10, "risk evaluation".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015    25





Card acceptance

| | | |
|---|---|---|
| **3.3** | **prohibited uses of the Card (U.S.)** | You must not accept the Card for:<br>○ amounts that represent repayment of a cash advance including, but not limited to, payday loans, pawn loans or payday advances. |
| **3.4** | **prohibited merchants** | Some Merchants are not eligible to accept our Card. The Merchant will be denied the privilege to accept our Card if we find they meet one or more of the criteria for a prohibited Merchant, including the criteria set forth in chapter 10, "risk evaluation". |

**3.5  treatment of American Express Cardmember information**

Any and all Cardmember Information is confidential and the sole property of the Issuer, American Express or its Affiliates.

Except as otherwise specified, you must not disclose Cardmember Information, nor use nor store it, other than to facilitate Transactions at your Establishments in accordance with the Agreement. For more information, see section 4.4, "completing a transaction at the point of sale".

For more information about protecting Cardmember Information, see chapter 8, "protecting Cardmember information".

> Remember: if the Agreement terminates, Cardmember Information can only be retained according to the Payment Card Industry Data Security Standard (PCI DSS), which is available at www.pcisecuritystandards.org.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



Card acceptance

**3.5    treatment of American Express Cardmember information (U.S.)**

With respect to participation in American Express marketing programs for Merchants located in the United States, Puerto Rico, the U.S. Virgin Islands, and other U.S. territories and possessions, use of Cardmember Information shall be in accordance with the terms set forth in this section 3.5, "treatment of American Express Cardmember information". For purposes of the foregoing sentence, Cardmember Information shall not include Independently Collected Information. For the avoidance of doubt, the foregoing provisions do not restrict you from obtaining or using Independently Collected Information in accordance with Applicable Law.

Furthermore, you shall not collect, directly or indirectly, or use Segmentation Criteria for any purpose whatsoever. In the event that you are able to extrapolate or infer any Cardmember Information or Segmentation Criteria, or otherwise mistakenly, inadvertently or inappropriately obtain access to any Cardmember Information, Segmentation Criteria or any other American Express proprietary information, then you shall not use any such information for any purpose and you shall immediately notify us and, as we may request, return or destroy such information. You shall not use Cardmember Information or Segmentation Criteria to establish the personal identity of any Cardmember participating (or attempting to participate) in a marketing campaign, nor identify any individual or group as Cardmembers for any purpose, including, without limitation, to create a group or segment composed exclusively of Cardmembers.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Card acceptance

this page intentionally left blank

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third
parties without the express prior written consent of American Express Travel Related Services Company, Inc.

## Merchant Regulations - U.S.

4

# transaction processing

# contents

4.1    the many types of transactions

4.2    transaction cycle

4.3    American Express payment options

4.4    completing a transaction at the point of sale

4.5    processing an in-person charge

4.6    customer activated terminals

4.7    processing a Card not present charge

4.8    charge records

4.9    processing a credit

4.10    credit records

4.11    return and cancellation policies

4.12    processing transactions for specific industries

4.13    corporate purchasing Card charges

4.14    advance payment charges

4.15    aggregated charges

4.16    delayed delivery charges

4.17    keyed no imprint program

4.18    no signature/no pin program

4.19    recurring billing charges

4.20    processing prepaid Cards

4.21    processing travelers/gift cheques



Merchant Regulations - U.S.



transaction processing

| | | |
|---|---|---|
| **4.1** | **the many types of transactions** | Remember when the only method by which to make a Charge was in person, in the presence of a store clerk at a traditional "brick and mortar" Establishment? In today's marketplace, point of sale Transactions encompass a wide variety of customer options, including: |

- in-store Transactions
- internet/e-commerce Transactions
- Application-initiated Transactions
- phone/mail order Transactions
- CAT Transactions

This chapter of the *Merchant Regulations* addresses Transaction processing and offers specific procedures for dealing with various Transaction types. It covers Card Present, Card Not Present, the acceptance of Prepaid Cards and more.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

**4.2    transaction cycle**    The first step in understanding the Card acceptance process is to understand the American Express Transaction cycle.

The following graphic illustrates the high level phases that occur throughout the Transaction cycle. We will refer to this Transaction cycle at various points throughout the *Merchant Regulations*.



*This graphic is for illustration purposes only and is not to be construed as limiting or waiving American Express' rights with respect to Cardmember Information or other information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

| 4.3 | **American Express payment options** | In an ongoing commitment to offering a variety of products, American Express Issuers deliver a wide range of payment options. |

**4.3    American Express payment options (U.S.)**



Payment options available in your area include:

*Credit and Charge Cards*

- ○ Charge Cards and Standard Credit Cards such as the Blue from American Express® Card
- ○ Cash Rewards Cards
- ○ Sports and Special Interest "Loyalty" Cards
- ○ Airline and Hotel Rewards Cards
- ○ Small Business and Corporate Cards
- ○ Many more

*Additional Products and Services*

- ○ Prepaid Cards
- ○ Travelers Cheques
- ○ Gift Cheques
- ○ Contactless (both physical Cards and Mobile Devices)

> American Express offers many products and services. If you are interested in a service that is not listed here, contact your American Express representative.

> Contactless technology allows the transfer of payment information wirelessly when an embedded Chip is held up to a contactless reader. For more information, contact Merchant Services.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

transaction processing

## 4.4    completing a transaction at the point of sale

All valid Transactions begin with a Cardmember's purchase at the point of sale. Whether the physical Card is used to facilitate a Card Present Charge, or the Cardmember provides his or her Cardmember Information over the phone, via mail order, or the internet, the Transaction must not be completed without the Card and/or information provided by the Cardmember.

To accept the Card for Charges at your Establishments, at the point of sale, you must:

- ❍ clearly and conspicuously, disclose all material terms of sale prior to obtaining an Authorization, and

- ❍ clearly and conspicuously inform Cardmembers at all points of interaction (e.g., sales conducted in person, over the internet, mobile or via mail or telephone order) what Entity is making the sales offer, so that the Cardmember can clearly distinguish you from any other party involved in the interaction (e.g., a vendor of goods or provider of services you may engage, or another Merchant seeking to conduct business with the Cardmember).

## 4.4    completing a transaction at the point of sale (U.S.)

> Where Cardmembers make an Application-initiated Transaction or pay using other mobile phone or tablet application based payments (which Cardmembers may have created by providing Cardmember Information when the account was established), the Transaction Data collected to facilitate the Card Not Present Charge has already been provided directly by the Cardmember. Such Merchants are not required to have the Cardmember re-enter the Transaction Data.

> **Transaction Data**
> All information required by American Express evidencing one or more Transactions, including information obtained at the point of sale, information obtained or generated during Authorization and Submission, and any Chargeback.

The Transaction Data you collect to facilitate the Charge must be or have been provided directly to you by the Cardmember.

You must not accept or have accepted Transaction Data from, nor shall you provide or have provided Transaction Data to, any third parties other than your Covered Parties. If you fail to comply with this requirement, in addition to our rights and remedies listed under section 10.3, "monitoring", we may, in our sole discretion, charge you non-compliance fees (see subsection 14.2.5, "data pass violation fee (U.S.)"), suspend Card acceptance privileges at your Establishments, or terminate the Agreement.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*
October 2015    33



transaction processing

| | |
|---|---|
| **4.5    processing an in-person charge** | In-Person Charges refer to Charges in which the Card and Cardmember are present at the point of sale. An example of this is when a Cardmember presents a Card to the Merchant at a retail store. |

For all In-Person Charges, the Card must be presented. There are several ways in which you can conduct the In-Person Charge. The steps you take vary according to how you go about conducting the following two types of In-Person Charges:

> American Express offers a variety of fraud prevention solutions that can be enabled at the point of sale. See chapter 9. "fraud prevention", which offers advice for implementing these solutions in your business.

- ○ electronic Charges
- ○ key-entered Charges

**4.5.1    electronic charges**

Electronic POS Systems automatically capture required information from the Card so it can be used to request Authorization for the Charge. Electronic charges can be conducted in a variety of ways depending on the type of Card presented.

- ○ Magnetic Stripe Cards - contain Cardmember and Card account information on the stripe on the back of the card, or in a contactless Chip embedded in the Card.

- ○ Chip Cards - contain a Chip on which data is stored (including Cardmember and Card account information), which the POS System can read in order to guide the processing of the Transaction.

- ○ Mobile Devices — An Issuer approved and American Express recognized electronic device (including, but not limited to, a mobile telephone, tablet, or wearable device) that is enabled to initiate a Digital Wallet Payment Transaction.

Some Magnetic Stripe, Chip Cards, and Mobile Devices may be read over the contactless interface of the POS System. The Charge Record is then created from the information captured during the electronic Charge.

Work with your Terminal Provider, Processor or if you have a direct link to American Express, your American Express representative if you have questions about your POS System's capabilities.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

**4.5.1.1  magnetic stripe Card charges**

When presented with a Card at the point of sale, you must:

**1.**  Verify that the Card is not visibly altered or mutilated (see chapter 9, "fraud prevention" for additional information),

**2.**  Verify that the customer is the Cardmember* (Cards are not transferable),

**3.**  Capture Magnetic Stripe data by swiping the Card (unless the Charge was already initiated by waving the contactless Chip Card in close proximity to the POS System, as described in subsection 4.5.1.2, "contactless chip Card charge (U.S.)"),

**4.**  Obtain an Authorization Approval,

**5.**  Obtain signature (excluding Charges at CATs) and verify that the signature is identical to the name on the Card.* Failure to obtain a signature, when required, can render you liable for Chargebacks if the Cardmember disputes the Charge. Obtaining a signature may not be required if your Establishment and the Charge qualify for the No Signature/No PIN Program (see section 4.18, "no signature/no pin program" for additional information),

**6.**  Compare the signature (when obtained) on the Charge Record with the signature on the Card,

**7.**  Verify the Card's Expiration Date,

**8.**  Match the Card Number and the Expiration Date on the Card to the same information on the Charge Record, and

**9.**  Ensure the name that prints on the Charge Record matches the name on the front of the Card.*

\*    Except when the Cardmember name is not captured on the Charge Record or for Prepaid Cards that do not show a name on their face.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

**4.5.1.2    contact chip Card charges**

When presented with a Chip Card to be inserted into a Chip Card reader, you must:

**1.** Verify that the Card is not visibly altered or mutilated (see chapter 9, "fraud prevention" for additional information),

**2.** Verify that the customer is the Cardmember* (Cards are not transferable),

**3.** Capture Chip Card Data by inserting the Card into the Chip Card reader,

The POS System will advise Cardmembers to enter their PIN (a Chip and PIN Charge) or sign for the Charge (a Chip and signature Charge):

○ Chip and PIN Charges: Cardmembers will enter their PIN into the POS System using the keypad. If the Chip and PIN Charge is unable to be completed due to a technical problem, the POS System will show an error message. Follow the procedures for a swiped Charge in subsection 4.5.1.1, "magnetic stripe Card charges". Failure to validate the PIN, when required, can render you liable for Chargebacks if the Cardmember disputes the Charge. Validating a PIN may not be required if your Establishment and the Charge qualify for the No Signature/No PIN Program (see section 4.18, "no signature/no pin program" for additional information),

○ Chip and signature Charge: Obtain the Cardmember's signature on the Charge Record and compare the signature on the Charge Record to the name and signature on the Card.* Failure to obtain a signature, when required, can render you liable for Chargebacks if the Cardmember disputes the Charge. Obtaining a signature may not be required if your Establishment and the Charge qualify for the No Signature/No PIN Program (see section 4.18, "no signature/no pin program" for additional information),

**4.** Obtain an Authorization Approval,

**5.** Verify the Card's Expiration Date,

**6.** Match the Card Number and the Expiration Date on the Card to the same information on the Charge Record, and

**7.** Ensure the name that prints on the Charge Record matches the name on the front of the Card.*

\*    Except when the Cardmember name is not captured on the Charge Record or for Prepaid Cards that do not show a name on their face.

---

In the case of Chip and PIN Transactions, if the PIN is not validated, you may be liable for Chargebacks unless your Establishment and the Charge qualify for the No signature/No PIN Program (see section 4.18, "no signature/no pin program".

Transactions that are manually key-entered when a Chip Card is presented may be subject to counterfeit, lost/stolen and non-received Chargebacks in the event of a fraud dispute. To minimize your risk of Chargebacks, we recommend that you avoid manually key-entered Transactions.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

#### 4.5.1.2 contact chip Card charges (US)

> Ensure that you comply with Technical Specification and submit your MCC code accurately in the Authorization and Submission Transaction. See section 2.7, "compliance with the technical specifications" for additional details.

If you use Enabled Chip and PIN POS Systems to process a Chip Transaction for Other Payment Products, then you must configure those Enabled Chip and PIN POS Systems for our Chip Cards in accordance with our Technical Specifications and other requirements we make available.

To qualify for Chip Card fraud liability shift, you must use an Enabled Chip and PIN POS System that can process Chip Cards at the time of the Transaction, and you must comply with all applicable Card acceptance procedures. Chip Card fraud liability shift does not apply to contactless Transactions or Digital Wallet Payments.

Chip Card fraud liability shift applies to all industries. Chip Card fraud liability shift will apply to CATs attached to automated fuel dispensers - MCC 5542, in October 2017. Please note, this exception does not apply to MCC 5541 or any other MCCs. See subsection 12.7.3, "oil fraud protection program (U.S.)".

If your POS System is not an Enabled Chip and PIN POS System that can process Chip Cards, and a Chip Card is presented, we may exercise Chargeback for counterfeit, lost, stolen or non-received fraud.

If your POS System is a Capable Chip and PIN POS System that can process Chip Cards and a Chip Card is presented:

- we may exercise Chargeback for counterfeit, lost, stolen or non-received fraud if a Chip Card with PIN functionality is presented and the Charge is not submitted as a Chip and PIN Charge because at the time of the Transaction, your Capable Chip and PIN POS System was not configured to process the Chip and PIN Charge.

- we will not exercise Chargeback for counterfeit, lost, stolen or non-received fraud for Fallback Transactions, if after inserting the Chip Card, your POS System prompts you to complete the Transaction by swiping the Magnetic Stripe of the Card, provided you follow all applicable Card acceptance steps as outlined in subsection 4.5.1.1, "magnetic stripe Card charges".

If you are presented with a Chip Card and manually key-enter the Transaction, you may be subject to counterfeit, lost/stolen and non-received Chargebacks in the event of a fraud dispute.

We will monitor your transactional data, including your reporting of the POS System capability provided in the Point of Service Data Code listed in our Technical Specifications. We may use this information to determine eligibility for Chip Card fraud liability shift, see section 10.3, "monitoring".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

| 4.5.1.2 | **contactless chip Card charge (U.S.)** |

Some Chip Card Charges involve transmission of payment information when the Card is waved in close proximity to a contactless reader.

When presented with a Chip Card to be read via a contactless reader, and the Charge qualifies for the No Signature/No PIN Program, you must:

1. Capture Magnetic Stripe or Chip Card Data using the contactless reader,

2. Obtain an Authorization Approval.

For Charges that do not qualify under the No Signature/No PIN Program, follow the relevant Card acceptance procedures outlined in either:

- subsection 4.5.1.1, "magnetic stripe Card charges", or

- subsection 4.5.1.2, "contact chip Card charges"

See section 4.18, "no signature/no pin program" for additional information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

transaction processing

**4.5.1.3   digital wallet payments**

> Mobile Devices do not have the same security features as a traditional plastic Card. For instance, the screen on the Mobile Device may not display all the digits of the Card Number and expiration date, or the Cardmember name. Likewise, there may not be a CID visible on the handset screen.

Digital Wallets within a Mobile Device conduct Transactions as follows:

- ○ For a Digital Wallet Contactless-initiated Transaction, the Mobile Device completes a Card Present Charge by waving the device in close proximity to a contactless-enabled POS System.

- ○ For a Digital Wallet Magnetic Secure Transmission Transaction, the Mobile Device completes a Card Present Charge by waving the device in close proximity to the magnetic swipe enabled POS System.

- ○ For a Digital Wallet Application-initiated Transaction, the Mobile Device completes a Card Not Present Charge (typically made online) using a software application within the Mobile Device and not the contactless payment application.

When presented with a Mobile Device for a Card Present Charge, you should:

1. Capture Magnetic Stripe or Chip Card data by having the Cardmember wave the Mobile Device in close proximity to the contactless reader or magnetic swipe enabled POS System. Merchants that choose to accept contactless payments should comply with the most current American Express contactless POS System requirements.

2. Obtain an Authorization Approval,

3. Obtain a signature or have the Cardmember complete a Consumer Device Cardholder Verification Method (CDCVM) on contactless initiated Transactions. For Magnetic Secure Transmission Transactions you must continue to obtain a signature (excluding Charges at CATs and Charges that qualify for the No Signature/No PIN Program—see section 4.18, "no signature/no pin program" for additional information),

4. Continue to include an indicator in the Authorization that the Transaction is a contactless Transaction, if applicable,

5. If a Mobile Device initiated Transaction cannot be processed for any reason, you should request that the Cardmember provide the companion physical Card and complete the Transaction by following the relevant Card acceptance procedures outlined in:

   - ○ subsection 4.5.1.1, "magnetic stripe Card charges", or

   - ○ subsection 4.5.1.2, "contact chip Card charges".

For Application-initiated Transactions, you should follow Card Not Present Charge policy as described in section 4.7, "processing a Card not present charge".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

transaction processing

**4.5.1.3   digital wallet payments (continued)**

For a Transaction to be recognized as Digital Wallet Application-initiated Transaction, you should:

1. Certify for Digital Wallet Application-initiated Transactions with your Processor, terminal Provider or if you have a direct link to American Express, your American Express representative.

2. Include appropriate indicators in the Authorization and Submission that the Transaction is a Digital Wallet Application-initiated Transaction (see section 2.7, "compliance with the technical specifications").

**4.5.2   key-entered charges**

There are instances when you may need to key-enter an In-Person Charge. This occurs most often when the POS System cannot read the Card.

If the Card cannot be read electronically and you wish to key-enter the transaction, then you must:

In-Person Charges that must be key-entered because the Magnetic Stripe cannot be read are more likely to be fraudulent. See chapter 9, "fraud prevention" to learn how to inspect the Card and for procedures to follow when you suspect fraud. Transactions that are manually key-entered when a Chip Card is presented may be subject to counterfeit, lost/stolen and non-received Chargebacks in the event of a fraud dispute. To minimize your risk of Chargebacks, we recommend that you avoid manually key-entered Transactions.

1. Verify that the Card is not visibly altered or mutilated (see chapter 9, "fraud prevention", for additional information),

2. Verify that the customer is the Cardmember* (Cards are not transferable),

3. Key-enter the data,

4. Obtain an Authorization Approval,

5. Obtain signature and verify that the signature is identical to the name on the Card.* Failure to obtain a signature, when required, can render you liable for Chargebacks if the Cardmember disputes the Charge. Obtaining a signature may not be required if your Establishment and the Charge qualify for the No Signature/No PIN Program (see section 4.18, "no signature/no pin program" for additional information),

6. Compare the signature (when obtained) on the Charge Record with the signature on the Card,

Supplies to help you process paper Charge and Credit Records are available. Call Paper submissions to order paper supplies.

7. Verify the Card's Expiration Date,

8. Match the Card Number and the Expiration Date on the Card to the same information on the Charge Record,

When keying Charges, ensure:

❏ the Card Number is keyed correctly, and

❏ the Expiration Date is entered in an YY/MM format.

9. Validate the Card's presence by taking an imprint of the Card (the imprint is for your records). Failure to validate the Card's presence by taking an imprint of the Card can render you liable for Chargebacks if the Cardmember disputes the Charge.

\*    Except when the Cardmember name is not captured on the Charge Record or for Prepaid Cards that do not show a name on their face.

You may still be subject to other fraud Chargebacks, including counterfeit, lost, stolen and non-received for manually key-entered Transactions.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

transaction processing

| 4.5.2 | key-entered charges (U.S.) | You may also validate the Card's presence by ensuring the Charge meets the criteria of the Keyed No Imprint Program. See section 4.17, "keyed no imprint program (U.S.)" for additional information. |

Key-entered Charges are subject to a fee. See subsection 14.2.2, "authorization fees (U.S.)".

If you are presented with a Chip Card and manually key-enter the Transaction, you may be subject to counterfeit, lost/stolen and non-received fraud Chargebacks.

Charges initiated with a contactless-enabled mobile device must not be key-entered.

**4.5.3 actions for in-person charges**

The following table describes the course of action required during an In-Person Transaction cycle:

| if | then |
|---|---|
| The Card is obviously altered or counterfeit. | Do not accept the Card. |
| The Cardmember is attempting to use the Card outside of its Valid Dates.<br>**Note:** Cards are valid through the last day of the month on the front of the Card. | Do not accept the Card. Advise the Cardmember to contact the customer service number on the back of the Card. |
| It appears that someone other than the Cardmember is attempting to use the Card. | Do not accept the Card. Indicate that the Cards are non-transferable and that only the Cardmember is permitted to use the Card. |
| The signature does not match the name on the Card. | Call the Authorization Department with a Code 10. |
| You are unable to obtain Authorization electronically. | Call the Authorization Department. |
| The Authorization is Declined. | Do not accept the Card, and follow your internal policies for handling various Authorization responses. See section 5.5, "possible authorization responses". |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

**4.5.3**   **actions for in-person charges (continued)**

| if | then |
|---|---|
| The customer presents an unsigned Card. | An unsigned Card is invalid. Show customer that the Card is not signed. Ask the customer to sign the Card and also request photo identification (ID) such as a valid driver's license or passport to compare the signatures. If the customer refuses to sign the Card, and you accept it, you are liable for a Chargeback. |
| The customer's signature on the Charge Record does not appear to match the customer's signature on the Card. | Call the Authorization Department with a Code 10, or, if you prefer, simply decline to accept the Card. For more information on Code 10, see chapter 9, "fraud prevention". |
| The Card Numbers and Valid Dates on the Card do not match the Charge Record. | |
| The name on the Charge Record does not match the name on the Card (except in the case of a Prepaid Card which may not show a name on its face). | |
| The appearance of the Card or the actions of the customer make you suspicious. | |

**4.6**   **customer activated terminals**

We will accept Charges for purchases at your CATs, provided that you meet the requirements for Charge Records as detailed in section 4.8, "charge records" as well as comply with the Technical Specifications (see section 2.7, "compliance with the technical specifications"). You must also follow any additional requirements in order for us to accept Charges for purchases at your CATs.

You must include:

> Zip Code Verification is a tool available to minimize the risk of fraud at CATs. The Zip Code Verification tool compares the billing zip code provided by the customer with that on file for the Cardmember. See chapter 9, "fraud prevention" for more information.

- ○ the full Magnetic Stripe data stream or Chip Card Data in all Authorization requests, and

- ○ a CAT indicator on all Authorization requests and Submissions.

**4.6**   **customer activated terminals (U.S.)**

We will not be liable for actual or alleged fraudulent Charges occurring through CATs, and we will have the right to Chargeback for those Charges.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

## 4.7 processing a Card not present charge

Mail orders, telephone orders, and Internet Orders increase your business opportunities, but such Card Not Present Charges do not provide you the opportunity to inspect the physical Card. For these Card Not Present Charges, fraud might be difficult for you to detect.

You must:

> To help reduce the anonymity criminals depend on, American Express offers fraud prevention solutions. See chapter 9, "fraud prevention" for available fraud tools.



obtain information of the Cardmember as described below

obtain an Authorization Approval

submit the Charge to American Express

> Ensure that your Proof of Delivery includes a courier receipt with the following information at minimum:
> ❍ date merchandise was delivered,
> ❍ full name of recipient, and
> ❍ full shipping address (e.g., suite or apartment number, city, state/province, zip/postal code, country).

For Card Not Present Charges, you must create a Charge Record as described in section 4.8, "charge records". The information you must obtain in order to proceed with the Transaction includes:

❍ Card Number or Token, and

❍ Card or Token Expiration Date.

In addition, we also recommend that you ask for:

❍ name as it appears on the Card,

❍ Cardmember's billing address, and

❍ ship-to address, if different from the billing address.

We have the right to Chargeback for any Card Not Present Charge that the Cardmember denies making or authorizing. We will not Chargeback for such Charges based solely upon a Cardmember claim that he or she did not receive the disputed goods if you have:

❍ verified with us the address to which the goods were shipped was the Cardmember's full billing address, and

❍ provided Proof of Delivery signed by the Cardmember or an authorized signer of the Card indicating the delivery of the goods or services to the Cardmember's full billing address.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

**4.7    processing a Card not present charge (continued)**

We will not be liable for actual or alleged fraudulent Transactions over the internet and we will have the right to Chargeback for those Charges.

For Internet Orders, you must:

○ use any separate Merchant Numbers that we provide you for Internet Orders in all your requests for Authorization and Submission of Charges,

○ provide us with at least one (1) month's prior written notice of any change in your internet address, and

○ comply with any additional requirements that we may have from time to time.

Additionally, if a Disputed Charge arises involving a Card Not Present Charge that is an Internet Electronic Delivery Charge, we may exercise Chargeback for the full amount of the Charge and place you in any of our Chargeback programs. See section 11.14, "chargeback programs".

In situations where the merchandise is ordered through a Card Not Present channel, but either:

○ picked up at a physical store by the Cardmember, or

○ delivered to the Cardmember by you (e.g., pizza delivery),

we recommend that you ask to see and obtain an imprint of the Card that was used to make the purchase and obtain a Cardmember signature on the pick-up form as well as additional proof to demonstrate that the identity of the Cardmember was verified at the time of pick-up before releasing the merchandise to the Cardmember. For other Fraud Prevention strategies, see chapter 9, "fraud prevention".

If you ship goods to an alternate address, we recommend that you keep a record of this. Then you can show a record of previous undisputed Transactions which were shipped to this address.

**4.7    processing a Card not present charge (U.S.)**

When providing Proof of Delivery, a signature from the Cardmember or an authorized signer of the Card is not required.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

## 4.8    charge records

> Retain a copy of the Charge Records with the Cardmember's signature for your records.

You must create a Charge Record for every Charge. For each Charge submitted electronically, you must create an electronically reproducible Charge Record, and the Charge must comply with the Technical Specifications. See section 2.7, "compliance with the technical specifications". For each Charge submitted on paper, you must comply with the Charge Record requirements listed in section 6.6, "submission requirements - paper".

The Charge Record (and a copy of the customer's receipt) must disclose your return and/or cancellation policies. See section 4.11, "return and cancellation policies" for additional information.

If the Cardmember wants to use different Cards for payment of a purchase, you may create a separate Charge Record for each Card used. However, if the Cardmember is using a single Card for payment of a purchase, you shall not divide the purchase into more than one Charge, nor shall you create more than one Charge Record.

For all Charge Records, you must:

1. submit the Charge to American Express directly, or through your Processor, for payment.

2. retain the original Charge Record (as applicable) and all documents evidencing the Charge, or reproducible records thereof, for the time frame listed in our country-specific policies. See chapter 8, "protecting Cardmember information" for additional information.

3. provide a copy of the Charge Record to the Cardmember.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

**4.8    charge records (U.S.)**

You may be able to create more than one Charge Record if the purchase qualifies for a Delayed Delivery Charge. See section 4.16, "delayed delivery charges (U.S.)".

The retention time frame for Charge Records is twenty-four (24) months from the date you submitted the corresponding Charge to us.

Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on the copies of Charge Records delivered to Cardmembers. Truncated Card Number digits must be masked with replacement characters such as "x," "*," or "#," and not blank spaces or numbers. Here is an example of a Charge Record with a truncated Card Number.



This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.

transaction processing

| 4.9 | processing a credit |

A Credit may occur when a Merchant processes a refund for purchases or payments made on the Card.

Follow these steps to issue a Credit:

**1.** Create a Credit Record.

**2.** Compare the last four digits on the Charge Record against the Card presented (when applicable).

**3.** Have the Cardmember sign the Credit Record (when applicable).

**4.** Provide a copy of the Credit Record to the Cardmember.

> In determining the date that a Credit is due, you should apply the date on which you accepted the return of the goods or forgave the amount that your customer owed you for the services.

You must submit Credits to us within seven (7) days of determining that a Credit is due and create a Credit Record that complies with our requirements (see section 4.10, "credit records" for additional information). You must not issue a Credit when there is no corresponding Charge, nor issue a Credit in exchange for cash or other consideration from a Cardmember.

You must submit all Credits under the Merchant Number of the Establishment where the Credit originated.

A Credit must be issued in the currency in which the original Charge was submitted to us.

You must issue Credits to the Card used to make the original purchase; however, if the Credit is for the return of a gift by someone other than the Cardmember who made the original purchase, apply your usual refund policy.

If the Cardmember indicates that the Card on which the purchase was originally made is no longer active or available, do the following:

❍ For all Cards except Prepaid Cards, advise the Cardmember that you must issue the Credit to that Card. If the Cardmember has questions, advise him or her to call the customer service number on the back of the Card in question.

❍ If the inactive or unavailable Card is a Prepaid Card, apply your usual refund policy for returns.

| 4.9 | processing a credit (U.S.) |

If you issue a Credit, we will not refund the Discount or any other fees or assessments previously applied on the corresponding Charge.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





transaction processing

| **4.10** | **credit records** | You must create a Credit Record for any Credit you issue. For each Credit submitted electronically, you must create an electronically reproducible Credit Record, and the Credit must comply with the Technical Specifications. See [section 2.7, "compliance with the technical specifications"](#). |

If you submit Credits on paper, you must create a Credit Record containing all of the following required data:

- ❍ full Card Number and Expiration Date (pursuant to Applicable Law), and if available, Cardmember name,

- ❍ the date the Credit was issued,

- ❍ the amount of the Credit,

- ❍ your Establishment name and address and, if applicable, store number, and

- ❍ your Merchant Number.

For all Credit Records, you must:

1. Submit the Credit to American Express directly, or through your Processor.

2. Retain the original Credit Records (as applicable) and all documents evidencing the Transaction, or reproducible records thereof, for the time frame listed in our country-specific policies.

3. Provide a copy of the Credit Record to the Cardmember.

| **4.10** | **credit records (U.S.)** | The retention time frame for Credit Records is twenty-four (24) months from the date you submitted the corresponding Credit to us. |

Pursuant to Applicable Law, truncate the Card Number and do not print the Card's Expiration Date on copies of Credit Records delivered to the Cardmember.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

## 4.11 return and cancellation policies

Post your return, exchange and cancellation policies in various places at your Establishment including:

❍ signs near the cash registers,

❍ on the Charge Record/sales slip the customer signs,

❍ any contract the Cardmember signs, and

❍ your terms and conditions of purchase on your website with "I accept" functionality.

For example, if your return policy is that the customer can return merchandise accompanied by a receipt for a full refund within thirty (30) days of the purchase, ensure this policy is coded to print on all receipts and copies of Charge Records.

It is recommended that you submit Credits the day the cancellation is received from the Cardmember.

Your return and cancellation policies must be fair and clearly disclosed at the time of sale in compliance with Applicable Law. Your policies must be conveyed to the Cardmember prior to completion of the Charge and printed on a copy of a receipt, Charge Record, or otherwise provided to the Cardmember in writing.

You must not give cash refunds to Cardmembers for goods or services they purchase on the Card, unless required by Applicable Law. Your refund policy for purchases on the Card must be at least as favorable as your refund policy for purchases made with any Non-Credit Payment Forms.

*Return Policy recommendations:*

Provide clear return instructions for your customers, including the following information:

❍ customer service telephone number,

❍ reference number for the return,

❍ expected processing time for the Credit, and

❍ return address, preferably on a pre-formatted shipping label (if applicable).

*Cancellation Policy recommendations:*

Document cancellation policy and terms and conditions on the contract the Cardmember signs, or on your website, as applicable. Provide Cardmember with a cancellation number that can be tracked in your records.

## 4.11.1 return policy for prepaid products

An example of a prepaid product return policy that is different from your standard return policy is if you allow returns or exchanges on store merchandise but sales of prepaid products are final.

This section applies to Merchants who accept our Card for the purchase of any prepaid product (Prepaid Cards, non-American Express branded stored value or gift cards, or both). If your return policy for the purchase of prepaid products is different from your standard return policy, notwithstanding the requirements listed in section 4.11, "return and cancellation policies", you must ensure that such prepaid product-specific return policy is clearly disclosed to the Cardmember at the time of purchase and also coded to print on all receipts and copies of Charge Records you provide to Cardmembers.

## 4.12 processing transactions for specific industries

Most policies and procedures in the *Merchant Regulations* are applicable to all Merchants, regardless of industry. Some Merchants classified in specific industries, however, are subject to additional policies and procedures. These policies and procedures are contained in chapter 12, "specific industries".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





transaction processing

---

**4.13**  **corporate purchasing Card charges**

We may adjust your Discount for Corporate Purchasing Card (CPC) Charges if you meet certain criteria.

---

**4.13**  **corporate purchasing Card charges (U.S.)**

In order for us to adjust your Discount for CPC Charges (if applicable), you must capture additional or reformatted Transaction Data on the Charge Record, and Transmission Data on the Transmissions, according to the Technical Specifications (see section 2.7, "compliance with the technical specifications") including:

> Accepting the CPC helps assist with procurement costs. The CPC Card enables streamlining of the procurement process, from sourcing and buying, to billing, payment and reconciliation.

- ○ the sales tax,

- ○ the ship-to zip code,

- ○ CPC Cardmember reference information,

- ○ the name of the CPC Cardmember's company, and

- ○ the Transaction descriptor, which is a description of the purchased goods and/or services.

Failure to comply with these requirements may impact our adjustments to your Discount for CPC Charges. You must obtain Authorization for and submit each CPC Charge to us electronically according to the Technical Specifications. We may modify the preceding requirements from time to time.

---

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

| 4.14 | **advance payment charges** | In some countries, certain industries may be able to process Advance Payment Charges. |

**4.14    advance payment charges (U.S.)**

You must follow these procedures if you offer Cardmembers the option or require them to make Advance Payment Charges for the following types of goods and/or services:

> **Advance Payment Charge**
> A Charge for which full payment is made in advance of your providing the goods and/or rendering the services to the Cardmember.

> Purchases involving Advance Payment Charges generally carry a higher level of risk than other Charges, due to the fact that goods and services are not provided at the time the Charge is processed. For this reason, we may withhold settlement for part or all of such Charges until we deem that our risk has diminished.

- ❍ Custom-orders (e.g., orders for goods to be manufactured to a customer's specifications)
- ❍ Entertainment/ticketing (e.g., sporting events, concerts, season tickets)
- ❍ Tuition, room and board, and other mandatory fees (e.g., library fees) of higher educational institutions
- ❍ Airline tickets
- ❍ Vehicle rentals
- ❍ Rail tickets
- ❍ Cruise line tickets
- ❍ Lodging
- ❍ Travel-related services (e.g., tours, guided expeditions)

For an Advance Payment Charge, you must:

- ❍ State your full cancellation and refund policies, clearly disclose your intent and obtain written consent from the Cardmember to bill the Card for an Advance Payment Charge before you request an Authorization. The Cardmember's consent must include:

  - ▪ his or her agreement to all the terms of the sale (including price and any cancellation and refund policies), and

  - ▪ a detailed description and the expected delivery date of the goods and/or services to be provided (including, if applicable, expected arrival and departure dates).

- ❍ Obtain an Authorization Approval.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

**4.14    advance payment charges (U.S.) (continued)**

To minimize your risk of a Disputed Advance Payment Charge, always:

○ clearly disclose all reservation, sales, cancellation, and refund policies (see section 4.11, "return and cancellation policies"), and

○ retain a copy of the Cardmember's written consent, including a detailed description and expected delivery date of the goods and/or services to be provided in a format that easily allows you to respond to an Inquiry.

See chapter 11, "chargebacks and inquiries" for additional information.

○ Complete a Charge Record. If the Advance Payment Charge is a Card Not Present Charge, you must also:

■ ensure that the Charge Record contains the words "Advance Payment" (see section 4.8, "charge records (U.S.)"), and

■ within twenty-four (24) hours of the Charge being incurred, provide the Cardmember written confirmation (e.g., email or facsimile) of the Advance Payment Charge, the amount, the confirmation number (if applicable), a detailed description and expected delivery date of the goods and/or services to be provided (including expected arrival and departure dates, if applicable) and details of your cancellation/refund policy.

If you cannot deliver goods and/or services (e.g., because custom-ordered merchandise cannot be fulfilled), and if alternate arrangements cannot be made, you must immediately issue a Credit for the full amount of the Advance Payment Charge which cannot be fulfilled.

In addition to our other Chargeback rights, we may exercise Chargeback for any Disputed Advance Payment Charge or portion thereof if, in our sole discretion, the dispute cannot be resolved in your favor based upon unambiguous terms contained in the terms of sale to which you obtained the Cardmember's written consent.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

transaction processing

---

| 4.15 | **aggregated charges** | In some countries, if we classify you in an internet industry, you may process Aggregated Charges. |

| **4.15** | **aggregated charges (U.S.)** | If we classify you in an internet industry, you may process Aggregated Charges provided the following criteria are met: |

**Aggregated Charge**
A Charge that combines multiple small purchases or refunds (or both) incurred on a Card into a single, larger Charge before submitting the Charge for payment.

To minimize your risk of a Disputed Charge with Aggregated Charges, always:

- confirm to the Cardmember the Aggregated Charge amount and individual purchase details (and/or refund as applicable) at check-out, and

- in the email confirmation, advise where the Cardmember can find additional information about their purchases (and/or refunds as applicable).

○ Clearly disclose your intent and obtain written consent from the Cardmember that their purchases or refunds (or both) on the Card may be aggregated and combined with other purchases or refunds (or both) before you request an Authorization.

○ Each individual purchase or refund (or both) that comprises the Aggregated Charge must be incurred under the same Merchant Number and on the same Card.

○ Obtain a pre-Authorization of no more than $15. See section 5.12, "pre-authorization" for additional information.

○ Create a Charge Record for the full amount of the Aggregated Charge. For more information on Charge Records, see section 4.8, "charge records (U.S.)".

○ The amount of the Aggregated Charge must not exceed $15 or the amount for which you obtained pre-Authorization.

○ Submit each Charge Record within our Submission time frame (see section 6.5, "submission requirements - electronic"). For the purposes of section 6.5, "submission requirements - electronic", a Charge will be deemed "incurred" on the date of the first purchase or refund (or both) that comprises the Aggregated Charge.

○ Provide the Cardmember with an email containing:

- the date, amount, and description of each individual purchase or refund (or both) that comprises the Aggregated Charge, and

- the date and the amount of the Aggregated Charge.

---

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

| 4.16 | **delayed delivery charges** | In some countries, you may accept the American Express Card for Delayed Delivery Charges if you meet specific criteria. |

**4.16    delayed delivery charges (U.S.)**

To accept the Card for Delayed Delivery Charges, you must:

- ❍ Clearly disclose your intent and obtain written consent from the Cardmember to perform a Delayed Delivery Charge before you request an Authorization,

- ❍ Obtain a separate Authorization Approval for each of the two Delayed Delivery Charges on their respective Charge dates,

- ❍ Clearly indicate on each Delayed Delivery Charge Record that the Charge is either for the deposit or for the balance of the Delayed Delivery Charge,

- ❍ Submit the Delayed Delivery Charge Record for the balance of the purchase only after the goods have been shipped, provided or services rendered,

- ❍ Submit each Delayed Delivery Charge Record within our Submission time frames (see section 6.5, "submission requirements - electronic"). For the purposes of section 6.5, "submission requirements - electronic", the Charge will be deemed "incurred":

  - ▪ for the deposit - on the date the Cardmember agreed to pay the deposit for the purchase.

  - ▪ for the balance - on the date the goods are shipped, provided or services are rendered.

- ❍ Submit and Authorize each Delayed Delivery Charge under the same Merchant Number, and

- ❍ Treat deposits on the Card no differently than you treat deposits on any Non-Credit Payment Forms.

**Delayed Delivery Charge**

A single purchase for which you must create and submit two separate Charge Records. The first Charge Record is for the deposit or down payment and the second Charge Record is for the balance of the purchase.

To minimize your risk of a Disputed Charge with Delayed Delivery Charges, always:

- ❍ clearly disclose all sales and refund policies (see section 4.11, "return and cancellation policies"), and

- ❍ retain a copy of the Cardmember's written consent in a format that easily allows you to respond to an Inquiry.

See chapter 11, "chargebacks and inquiries" for additional information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

| 4.17 | **keyed no imprint program** | In some countries, your Establishments may be eligible to participate in our Keyed No Imprint Program. |

| 4.17 | **keyed no imprint program (U.S.)** | The Keyed No Imprint Program allows you to submit In-Person Charges without taking an imprint of the Card if you meet the following Charge criteria. All Cards qualify for the Keyed No Imprint Program. |

*Charge criteria:*

○ the Charge must be key-entered,

○ the Charge Submission must include the appropriate indicator to reflect that the Card and the Cardmember were present at the point of sale,

○ the Charge Submission must include a valid Approval, and

○ the CID Number must be confirmed as a positive match.

Under the Keyed No Imprint Program, we will not exercise Chargeback for such Charges based solely on the Establishment's failure to obtain an imprint of the Card.

If we receive disproportionate amounts or numbers of Disputed Charges under the Keyed No Imprint Program, you must work with us to reduce the number of Disputed Charges. If such efforts fail, we may place you in any of our Chargeback programs (see section 11.14, "chargeback programs (U.S.)") or we may modify or terminate your participation in the Keyed No Imprint Program.

> To learn more about how to send CID through your POS System, see subsection 9.11.1.1. "Card identification (CID) verification (U.S.)"

> The Keyed No Imprint Program does not provide protection against all Chargebacks. Even if an Establishment and Charge qualify under the Keyed No Imprint Program, the Merchant may still be subject to Chargeback for reasons unrelated to its obtaining a positive CID Number match at the point of sale. For more information about Disputed Charges and Chargebacks, see chapter 11, "chargebacks and inquiries.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

## 4.18 no signature/no pin program

Your Establishment may participate in our No Signature/No PIN Program. The No Signature/No PIN Program allows Establishments not to request a signature or a PIN from Cardmembers on the Charge Record.

To qualify for the No Signature/No PIN Program, both the Establishment and each Charge must meet the following criteria:

*Establishment criteria:*

If we classify your Establishment in an industry that accepts In-Person Charges, then the Establishment may participate in the No Signature/No PIN Program with the exception of the following categories:

> The No Signature/No PIN Program does not provide protection against all Chargebacks. Even if an Establishment and Charge qualify under the No Signature/No PIN Program, the Merchant may still be subject to Chargeback for reasons unrelated to its failure to obtain a signature or PIN from the Cardmember at the point of sale, For more information about Disputed Charges and Chargebacks, see chapter 11, "chargebacks and inquiries".

- Merchants who do not conduct In-Person Charges (i.e., internet, mail order or telephone order).
- Prohibited Merchants or prohibited Transactions (or both) as defined in chapter 10, "risk evaluation". See section 3.3, "prohibited uses of the Card".
- High Risk Merchants (e.g., internet electronic services or nightclubs/lounges) as defined in subsection 10.3.1, "high risk merchants".
- Merchants placed in our Fraud Full Recourse Program. See section 11.14, "chargeback programs (U.S.)".

*Charge criteria:*

- The amount or Charge must meet the threshold established in our country-specific policy.
- The Charge Submission must include the appropriate indicator to reflect that the Card and the Cardmember were present at the point of sale.
- The Charge Submission must include a valid Approval.

Under the No Signature/No PIN Program, we will not exercise Chargeback for such Charges based solely on the Establishment's failure to obtain the Cardmember's signature or PIN at the point of sale.

If we receive disproportionate amounts or numbers of Disputed Charges under the No Signature/No PIN Program, you must work with us to reduce the amount or number of Disputed Charges. If such efforts fail, we may place you in any of our Chargeback programs, see section 11.14, "chargeback programs (U.S.)", or we may modify or terminate your Establishment's participation in the No Signature/No PIN Program.

## 4.18 no signature/no pin program (U.S.)

The established threshold for Charges to qualify under the No Signature/No PIN Program is $50.00 or less.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

## 4.19   recurring billing charges

To minimize your risk of Chargeback with Recurring Billing Charges, always:

○ ensure updates are applied in a timely manner when notified of Cardmember cancellation or Card Number update, and

○ obtain express written consent from the Cardmember to continue billing after the end date of the contract.

For more tips on reducing Chargebacks, see chapter 11, "chargebacks and inquiries"

Recurring Billing is an option offered to Cardmembers to make recurring Charges automatically on their Card. The Recurring Billing Charges are for a product or service the Cardmember agrees to pay periodically and automatically (e.g., membership fees to health clubs, magazine subscriptions, and insurance premiums).

If you offer Cardmembers the option to make Recurring Billing Charges, you must:

○ obtain the Cardmember's express written consent for you to bill the Card before submitting the first Recurring Billing Charge,

○ notify the Cardmember that he or she can withdraw such consent at any time,

In addition to our other Chargeback rights, we may exercise Chargeback for any Charge which does not meet the requirements listed in this section (including requirements listed in our country-specific policies). We may also exercise Chargeback, prior to sending you an Inquiry, if you process Recurring Billing Charges after we have previously notified you that the Cardmember has withdrawn their consent for Recurring Billing Charges.

The method you use to secure such consent must contain a disclosure that you may receive updated Card account information from the Issuer.

Before submitting a Recurring Billing Charge, you must obtain Authorization and complete a Charge Record (see section 4.8, "charge records"), except with the words "signature on file," if applicable, on the signature line and the appropriate electronic descriptor on the Charge Record. For complete Authorization requirements, see chapter 5, "authorization".

If the Agreement terminates for any reason, then you must notify all Cardmembers for whom you have submitted Recurring Billing Charges that you no longer accept the Card.

You must fulfill Cardmembers' requests that you discontinue the Recurring Billing Charges immediately and provide cancellation numbers to them.

The cancellation of a Card constitutes immediate cancellation of that Cardmember's consent for Recurring Billing Charges. We need not notify you of such cancellation, nor will we have any liability to you arising from such cancellation.

If a Card is cancelled, or if a Cardmember withdraws consent to Recurring Billing Charges, you are responsible for arranging another form of payment (as applicable) with the Cardmember.

You must permit us to establish a hyperlink from our website to your website (including its home page, payment page or its automatic/Recurring Billing page) and list your customer service contact information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



transaction processing

**4.19    recurring billing charges (U.S.)**

Recurring Billing Charges can either be for a fixed or varying amount.

○ Fixed amount - the dollar amount does not change from one payment to the next (e.g., monthly magazine subscription).

○ Varying amount - the dollar amount changes from one payment to the next (e.g., monthly utility bill).

You must retain evidence of consent to receive updated Card account information from the Issuer for twenty-four (24) months from the date you submit the last Recurring Billing Charge.

If you offer Cardmembers the option to make Recurring Billing Charges, you must:

○ ensure that your process for cancellation of Recurring Billing is simple and expeditious,

○ clearly and conspicuously disclose all material terms of the option, including, if applicable, the fact that Recurring Billing will continue until the option is cancelled by the Cardmember,

○ within twenty-four (24) hours of incurring the first Recurring Billing Charge, provide the Cardmember written confirmation (e.g., email or facsimile) of such Charge, including all material terms of the option and details of your cancellation/refund policy, and

○ where the material terms of the option change after Submission of the first Recurring Billing Charge, promptly notify the Cardmember in writing of such change and obtain the Cardmember's express written consent to the new terms prior to submitting another Recurring Billing Charge.

If your Recurring Billing Charge amounts vary, you must offer the Cardmember the right to receive written notification of the amount and date of each Recurring Billing Charge:

○ at least ten (10) days before submitting each Charge, or

○ whenever the amount of the Charge exceeds a maximum Recurring Billing Charge amount specified by the Cardmember.

We may exercise Chargeback for any Charge of which you have notified the Cardmember and to which the Cardmember does not consent.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

transaction processing

| | |
|---|---|
| **4.20** **processing prepaid Cards** | Prepaid Cards are available for a variety of uses: gifting, travel, incentive, etc. All American Express Prepaid Cards show the American Express "Blue Box" logo either on the face or back of the Prepaid Card. Prepaid Cards may or may not be embossed. Most Prepaid Cards can be used for both in-store and online purchases. |





Prepaid Cards are valid through the date on the Card. Follow the relevant Card acceptance procedures outlined in chapter 4, "transaction processing" when presented with a Prepaid Card at the point of sale just like any other Card. A Prepaid Card must be tendered for an amount that is no greater than the funds available on the Card.

- Instruct Cardmembers that, before making a purchase, they may check their remaining funds by:

  - calling the twenty-four (24) hour, toll-free number on the back of the Card,

  - checking online, or

  - using the mobile app offered by their Issuer (where available).

- Because Prepaid Cards are pre-funded, if you receive a Decline when seeking Authorization, ask the customer to go online, use their mobile app, or call the toll-free number on the back of the Card to confirm that the purchase price does not exceed the available funds on the Prepaid Card.

- If the Prepaid Card does not have enough funds to cover the purchase price, process a Split Tender Transaction or request an alternative form of payment. See section 5.13, "additional authorization requirements".

- You must create a Charge Record for a Prepaid Card as you would any other Card.

For information about processing Prepaid Cards, call the customer service number on the back of the Card in question.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

transaction processing

| 4.21 | **processing travelers/gift cheques** | American Express Travelers Cheques, Cheques for Two, and Gift Cheques are easy to accept provided that the cheque is an authentic American Express Travelers Cheque. See <u>subsection 4.21.1, "acceptance procedures"</u>. |

Businesses can accept these cheques for payment. You can deposit Travelers Cheques, Cheques for Two and Gift Cheques directly into your Bank Account as they never expire.

*Travelers Cheques*

American Express Travelers Cheques are a widely used and recognized travel currency. If they are ever lost or stolen, they can be replaced quickly and easily, almost anywhere in the world, usually within twenty-four (24) hours.

Travelers Cheques come in various denominations and currencies.

*Gift Cheques*

American Express Gift Cheques function like Travelers Cheques, and are available in $10, $25, $50, and $100 denominations only. Any Gift Cheque presented that is greater than $100 is counterfeit. If you receive a Gift Cheque greater than $100, do the following:

- ❍ Contact <u>Travelers Cheque/Gift Cheque Customer Service</u>.
- ❍ Do not accept it.
- ❍ Write the word "VOID" across the front of the counterfeit Cheque.

For further information, see <u>chapter 9, "fraud prevention"</u>.

| 4.21 | **processing travelers/gift cheques (U.S.)** | Travelers Cheques in circulation come in denominations ranging from $20 to $1000. Be cautious when presented with an American Express Travelers Cheque in a denomination of $500 or greater. These higher-denominated Travelers Cheques are rarely sold, and therefore are more likely to be counterfeit. For information on how to perform a "smudge test," which is designed to test the authenticity of the Travelers Cheques, see <u>section 9.9, "travelers cheque and gift cheque security features"</u>. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



transaction processing

**4.21.1** **acceptance procedures**

Accepting American Express Travelers and Gift Cheques is easy:

- ○ Watch your customer countersign in the lower left corner of the cheque, and compare the countersignature to the signature in the upper left corner for American Express Travelers Cheques and Gift Cheques. For Cheques for Two, the customer's countersignature must match either one of the two signatures on top.

- ○ Validate Security Features - Validating these features will help reduce the acceptance of counterfeit cheques. See section 9.9, "travelers cheque and gift cheque security features".

- ○ Obtain authorization - American Express recommends obtaining an authorization to reduce the chances of accepting fraudulent cheques. American Express offers a variety of authorization tools. See authorization methods in the following table to determine your course of action:

| if | then |
|---|---|
| The signature and countersignature are a reasonable match (they look alike, but may not be identical) | Accept the cheque. There is no need to obtain any identification. |
| You suspect that the countersignature may be false, or you did not watch the customer countersign | Ask the customer to turn the cheque over and sign again across the left-hand side (in the same manner one typically endorses a check). Then take the cheque and fold up the bottom right-hand corner so that you can compare the original signature with the new one. |
| The signatures are not the same, or if there is a question regarding the validity of the cheque | Call the Travelers Cheque/Gift Cheque Customer Service. |
| You suspect that the Travelers cheque being presented is fraudulent | Use any of the following methods to verify that the cheque you are accepting is authentic:<br><br>○ Perform a smudge test (see chapter 9, "fraud prevention" for details).<br><br>○ Obtain online Authorization at www.americanexpress.com/verifyamextc. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015          61



transaction processing

this page intentionally left blank

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

5

## contents

5.1    introduction

5.2    transaction cycle

5.3    the purpose of authorization

5.4    authorization process

5.5    possible authorization responses

5.6    obtaining an electronic
       authorization

5.7    obtaining a voice authorization

5.8    Card identification (CID) number

5.9    authorization reversal

5.10   authorization time limit

5.11   floor limit

5.12   pre-authorization

5.13   additional authorization
       requirements

authorization



Merchant Regulations - U.S

authorization

| 5.1 | introduction | The payment card industry devotes significant amounts of time and resources to developing Authorization systems and decision models in an effort to mitigate the financial losses. |

Every Transaction begins and ends with the Cardmember. Between the time the Cardmember presents the Card for payment and receives the goods or services, however, a great deal of data is exchanged, analyzed and processed. A process that literally takes seconds at the point of sale is actually a highly complex approach to analyzing each Transaction.

| 5.2 | transaction cycle | The Authorization process begins when you provide an Authorization request to us. After requesting Authorization, you receive an Authorization response, which you use, in part, to determine whether to proceed with the Charge. |



*This graphic is for illustration purposes only and is not to be construed as limiting or waiving American Express' rights with respect to Cardmember Information or other information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S

authorization

| 5.3 | the purpose of authorization | The purpose of an Authorization is to provide you with information that will help you determine whether or not to proceed with a Charge. |
|---|---|---|

For every Charge, you are required to obtain an Authorization Approval except for Charges under a Floor Limit (see section 5.11, "floor limit"). The Authorization Approval must be for the full amount of the Charge except for Merchants that we classify in the restaurant industry (see section 12.9, "restaurants") and certain Charges from Merchants we classify in the cruise line, lodging, and vehicle rental industries (see section 12.12, "travel industries").

An Authorization Approval does not guarantee that (i) the person making the Charge is the Cardmember, (ii) the Charge is in fact valid or bona fide, (iii) you will be paid for the Charge, or (iv) you will not be subject to a Chargeback.

**5.4    authorization process**



This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.

October 2015        65



Merchant Regulations - U.S

authorization

<table>
<tr><td>

**5.5    possible authorization responses**

</td><td>

Responses to your requests for Authorization are generated by Issuers and transmitted by us to you. The following are among the most commonly generated responses to your request for Authorization. The exact wording will vary, so check with your Processor or Terminal Provider to determine what Authorization responses will display on your equipment.

</td></tr>
</table>

> If you have a point of sale terminal printer, the Approval prints automatically. If you do not have a point of sale terminal printer, write down the Approval clearly on the Charge Record. You will need it as supporting documentation.

| authorization response | what it means |
|---|---|
| Approved | The Charge is approved. |
| Partially Approved (for use with Prepaid Cards only) | The Charge is approved. The approval is for an amount less than the value originally requested. The Charge must only be submitted for the approved amount. Collect the remaining funds due from the Cardmember via another form of payment. See section 5.13. "additional authorization requirements" for more information about split tender. |
| Declined or Card Not Accepted | The Charge is not approved. Do not submit the Charge. If you nevertheless choose to submit the Charge, you will be subject to a Chargeback. Inform the Cardmember promptly that the Card has been Declined. If the Cardmember has questions or concerns, advise the Cardmember to call the customer service telephone number on the back of the Card. Never discuss the reason for the Decline. |
| Please Call or Referral | Additional information is required to complete the Charge. Call our Authorization Department for resolution. See section 5.7. "obtaining a voice authorization" for instructions. |
| Pick up | You may receive an Issuer point of sale response indicating that you must pick up the Card. Follow your internal policies when you receive this response. Never put yourself or your employees in unsafe situations. If your policies direct you to do so, you may initiate the pick up process by calling our Authorization Department. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S



authorization

| | | |
|---|---|---|
| **5.6** | **obtaining an electronic authorization** | Generally, Establishments must obtain an electronic Authorization. |

You must ensure that all Authorization requests comply with the Technical Specifications (see section 2.7, "compliance with the technical specifications"). If the Authorization request does not comply with the Technical Specifications, we may reject the Submission or we may exercise a Chargeback.

> Failure to comply with the Technical Specifications for Authorization may impact your ability to successfully process Transactions. For example, we may not be able to issue an Authorization response or process the Charge at Submission (see section 6.5, "submission requirements - electronic").

If the Card is unreadable and you have to key-enter the Charge to obtain an Authorization, then you must follow the requirements for key-entered Charges. See subsection 4.5.2, "key-entered charges" for additional information.

If you use an electronic POS System to obtain Authorization, the Approval must be printed automatically on the Charge Record.

Occasionally, obtaining an electronic Authorization may not be possible (e.g., due to POS System problems, System Outages, or other disruptions of an electronic Charge). In these instances, you must obtain a Voice Authorization (see section 5.7, "obtaining a voice authorization").

| | | |
|---|---|---|
| **5.6** | **obtaining an electronic authorization (U.S.)** | We will have the right to assess non-compliance fees for Authorization requests that do not comply with the Technical Specifications (see subsection 14.2.3, "submission and settlement fees (U.S.)"). |

| | | |
|---|---|---|
| **5.7** | **obtaining a voice authorization** | When Authorization is required, if your electronic POS System is unable to reach our Authorization system, or you do not have an electronic POS System, you must seek Authorization using the following steps: |

**1.** Call our Authorization Department

**2.** The voice response system or an American Express representative will request, at a minimum, the following information:

- Card Number

- Merchant Number

- Charge amount

   In some situations, you may be asked for additional information such as Expiration Date or CID Number.

**3.** A response will be provided. If the request for Authorization is approved, capture the Approval for Submission.

**4.** If you are submitting electronically, you must enter the Approval into your POS System. For instructions on how to complete this type of Charge, contact your Terminal Provider, Processor, or if you have a direct link to American Express, your American Express representative.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



authorization

### 5.7 obtaining a voice authorization (U.S.)

American Express may assess a fee for Voice Authorization. Some ways to avoid this fee are:

- ❏ process and submit Charges electronically.
- ❏ obtain the Approval.
- ❏ if you receive a Please Call or Referral prompt on your POS System, you will not be assessed a Voice Authorization fee if you call the American Express Authorization Department on the same day you receive the Please Call or Referral message, and if you enter the same dollar amount (within $1) over the phone that you initially entered in the POS System when you received the message.

We may assess a fee (see subsection 14.2.2, "authorization fees (U.S.)") for each Charge for which you request a Voice Authorization unless such a failure to obtain Authorization electronically is due to the unavailability or inoperability of our computer Authorization system.

### 5.8 Card identification (CID) number

**Card Identification (CID) Number**

CID is a four-digit number printed on the face of the Card (circled in red in this picture).



The Card Identification (CID) Number provides an extra level of Cardmember validation and is part of the Authorization process. The CID Number is printed on the Card.

If, during the Authorization, a response is received that indicates the CID Number given by the person attempting the Charge does not match the CID Number that is printed on the Card, re-prompt the customer at least one more time for the CID Number. If it fails to match again, follow your internal policies.

**Note:** CID Numbers must not be stored for any purpose. They are available for real time Charges only. See chapter 8, "protecting Cardmember information."

See chapter 9, "fraud prevention" for more information on CID Numbers and CID Verification.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S

authorization

| 5.9 | **authorization reversal** |

We recommend that you reverse an Authorization for an Approved Charge if you do not intend to send a Submission to American Express within the Authorization time limits, see section 5.10, "authorization time limit".

You may reverse an Authorization for a corresponding Charge by:

- initiating an Authorization reversal message, or
- calling the American Express Authorization Department.

There may be a fee assessed for Approved Charges for which you do not reverse or submit or for which you submit late. See subsection 14.2.2, "authorization fees (U.S.)".

After a Charge Record has been submitted to us, however, the Authorization cannot be cancelled or changed. For example, if you make an error in a Charge but have already submitted the Charge Record, you cannot systematically request a change in the Charge. You must instead, follow the procedures for Processing a Credit, as defined in section 4.9, "processing a credit".

| 5.10 | **authorization time limit** |

Authorization Approvals are valid for seven (7) days after the Authorization date except for certain Charges from Merchants that we classify in the cruise line, lodging, and vehicle rental industries (see section 12.12, "travel industries" for Authorization Approval validity times for each of these industries). You must obtain a new Approval if you submit the Charge to us more than seven (7) days after the original Authorization date.

For Charges of goods or services that are shipped or provided more than seven (7) days after an order is placed, you must obtain an Approval for the Charge at the time the order is placed and again at the time you ship or provide the goods or services to the Cardmember.

The new Approval must be included in the Charge Record. If either of the Authorization requests is Declined, do not provide the goods or services or submit the Charge. If you do, you will be subject to a Chargeback.

| 5.11 | **floor limit** |

**Floor Limit**
A monetary threshold amount for a single Charge, at or above which you must obtain an Authorization before completing the Charge.

We may assign a Floor Limit to an Establishment. If any one Charge, or series of Charges made on the same day by any one Cardmember at the Establishment, is equal to or greater than this Floor Limit, the Establishment must request Authorization. See country-specific policies for additional information on Floor Limits.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015          69



authorization

| | | |
|---|---|---|
| **5.11** | **floor limit (U.S.)** | We maintain a zero-dollar Floor Limit on all Charges for our Merchants in the U.S., Puerto Rico, the U.S. Virgin Islands, and other U.S. territories and possessions, meaning that we require an Authorization on all purchase, regardless of the amount. |
| **5.12** | **pre-authorization** | A pre-Authorization is an Authorization request that you submit in advance of providing the goods or services, allowing you then to submit the Approved Charge (e.g., fuel pump CATs). |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S



authorization

| | |
|---|---|
| **5.13** **additional authorization requirements** | There are instances, which are outlined in the following table, when additional Authorization requirements apply. |
| | Merchants classified in certain industries are also subject to additional specific Authorization requirements. See chapter 12, "specific industries". |

| topic | additional requirements |
|---|---|
| Recurring Billing | You must flag all requests for Authorization with a Recurring Billing indicator. To improve the likelihood of obtaining an Approval to an Authorization request, we recommend you periodically verify with Cardmembers that all their information (e.g., Card Number, Expiration Date and billing address) is still accurate. See section 4.19. "recurring billing charges". |
| American Express Gift Cheques and American Express Travelers Cheques | You are not required to obtain Authorization prior to accepting Gift and Travelers Cheques. You must, however, follow the appropriate procedures outlined in section 4.21. "processing travelers/gift cheques". Questions concerning the validity of Gift or Travelers Cheques can be raised by calling the Travelers Cheque/Gift Cheque Customer Service. |
| Split Tender | During a Split Tender Transaction, the Cardmember uses multiple forms of payment for a single purchase (e.g., prepaid cards, cash, American Express Card).<br><br>You may follow your policy on combining payment on Prepaid Cards with any Other Payment Products or methods of payment. If the other payment method is an American Express Card then you are required to follow all provisions of the Agreement.<br><br>Check with your Terminal Provider, Processor or if you have a direct link to American Express, your American Express representative to determine if your POS System is set up for Split Tender functionality. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



authorization

this page intentionally left blank

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third
parties without the express prior written consent of American Express Travel Related Services Company, Inc.

# Merchant Regulations - U.S.

**6**

## contents

6.1    introduction                        6.5    submission requirements - electronic

6.2    transaction cycle                    6.6    submission requirements - paper

6.3    purpose of submission                6.7    how to submit

6.4    submission process

submission





submission

---

**6.1    introduction**

Merchants are familiar with commitments that keep their business running smoothly. One such commitment is to submit Transactions conducted at your Establishments to us for payment.

Since payment cannot occur until the Transactions are submitted, we encourage you to submit Transactions daily even though you have up to seven (7) days to do so.

See [section 4.5, "processing an in-person charge"](#) and [section 4.9, "processing a credit"](#) for additional information.

---

**6.2    transaction cycle**

Collect Transactions during the business day and submit them to us, directly or through a Processor, usually at the end of a day. If you have any Submission problems, contact your POS System vendor or Processor, Terminal Provider, or your American Express representative.



*This graphic is for illustration purposes only and is not to be construed as limiting or waiving American Express' rights with respect to Cardmember Information or other information.

---

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

submission

| 6.3 | **purpose of submission** | After we receive the Submission, either directly from you or from your Processor, we process it and settle with you according to your payment plan, speed of payment and payment methods, as described in chapter 7, "settlement". |

Transactions will be deemed accepted on a given business day if processed by us before the close of business.



Merchant Regulations - U.S.



submission

**6.3    purpose of submission (U.S.)**

For three-day payment plans or longer, the cut-off time is 6:00 p.m. during Eastern Standard Time and 7:00 p.m. during Eastern Daylight Savings Time.

Use the following tables to determine the associated cut-off time in your area.

| Standard Time Zones (3-day pay or longer) | | | |
|---|---|---|---|
| Pacific Standard Time | Mountain Standard Time | Central Standard Time | Eastern Standard Time |
| 3:00 p.m. | 4:00 p.m. | 5:00 p.m. | 6:00 p.m. |

| Daylight Savings Time Zones (3-day pay or longer) | | | |
|---|---|---|---|
| Pacific Daylight Savings Time | Mountain Daylight Savings Time | Central Daylight Savings Time | Eastern Daylight Savings Time |
| 4:00 p.m. | 5:00 p.m. | 6:00 p.m. | 7:00 p.m. |

For one-day payment plans, the cut-off time is 5:00 p.m. during Eastern Standard Time and 6:00 p.m. during Eastern Daylight Savings Time. Use the following tables to determine the associated cut-off time in your area.

| Standard Time Zones (1-day pay) | | | |
|---|---|---|---|
| Pacific Standard Time | Mountain Standard Time | Central Standard Time | Eastern Standard Time |
| 2:00 p.m. | 3:00 p.m. | 4:00 p.m. | 5:00 p.m. |

| Daylight Savings Time Zones (1-day pay) | | | |
|---|---|---|---|
| Pacific Daylight Savings Time | Mountain Daylight Savings Time | Central Daylight Savings Time | Eastern Daylight Savings Time |
| 3:00 p.m. | 4:00 p.m. | 5:00 p.m. | 6:00 p.m. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

submission

### 6.4  submission process



### 6.5  submission requirements - electronic

For additional information about retaining information, see section 4.8, "charge records" and section 8.3, "standards for protection of Cardmember information".

Besides impacting your Transaction processing, failure to comply with the Technical Specifications may increase your Disputed Charges. For instance, for a Card Not Present Charge, if you do not provide a customer service telephone number or web address, Cardmembers who do not recognize Charges, may initiate "no knowledge" Inquiries rather than contact you directly to identify the Charge.

For additional requirements for third parties, see section 2.5, "use of third parties".

You must submit Transactions electronically except under extraordinary circumstances.

When you transmit Charge Data and Transmission Data electronically, you must still complete and retain Charge Records and Credit Records.

A Submission must comply with the Technical Specifications. See section 2.7, "compliance with the technical specifications". Failure to follow these requirements could result in a rejection of your Submission or delay in your payment (or both). If a Batch rejects, you may not be paid until the Submission is corrected and resubmitted. You must work with your Terminal Provider and/or Processor, or if you have a direct link with American Express, your American Express representative, to correct the error, then resubmit. For Submissions which fail to comply with the Technical Specifications, we have the right to Chargeback.

### 6.5  submission requirements - electronic (U.S.)

Your Establishments in the United States, Puerto Rico, the U.S. Virgin Islands, and other U.S. territories and possessions, must submit Charges and Credits only in U.S. dollars.

### 6.5.1  charge submissions

You must submit all Charges to us within seven (7) days of the date they are incurred. Charges are deemed "incurred" on the date the Cardmember indicates to you that they will pay for the goods or services purchased with the Card. Charges must not be submitted to us until after the goods are shipped, provided, or the services are rendered. You must submit all Charges under the Merchant Number of the Establishment where the Charge originated.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





submission

| 6.5.1 | charge submissions (U.S.) | For Aggregated Charges, the Charge must be submitted within seven (7) days of the date of the last purchase (and/or refund as applicable) that comprises the Aggregated Charge. See section 4.15, "aggregated charges (U.S.)" for additional information. |
|---|---|---|
| | | Delayed Delivery Charges and Advance Payment Charges may be submitted before the goods are shipped, provided or the services are rendered. See section 4.16, "delayed delivery charges" and section 4.14, "advance payment charges" for additional information. |
| | | We may assess a fee for Approved Charges that we Authorize for which you do not reverse or submit or for which you submit late. See subsection 14.2.2, "authorization fees (U.S.)". |
| 6.5.2 | credit submissions | You must submit all Credits to us within seven (7) days of determining that a Credit is due. You must submit each Credit under the Merchant Number of the Establishment where the Credit originated. |

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.



submission

## 6.6 submission requirements - paper

If, under extraordinary circumstances, you submit Transactions on paper, you must do so in accordance with our instructions outlined in chapter 4, "transaction processing".

Examples of circumstances that may prevent Merchants from submitting electronically are:

- ○ special events (e.g., conferences, outdoor marketplaces, concerts)
- ○ Merchants that do not conduct business from fixed locations (e.g., taxis and limousine services)
- ○ remote locations, or Merchants who experience System Outages

> If you are presented with an un-embossed Prepaid Card, you must hand-write the required information to process a Charge Record. See section section 4.8, "charge records".

If you submit Charges on paper, you must create a Charge Record containing all of the following required data:

- ○ Full Card Number and Expiration Date (pursuant to Applicable Law), and if available, Cardmember name.
- ○ The date the Charge was incurred.
- ○ The amount of the Charge, which must be the total price for the purchase of goods and services (plus applicable taxes and gratuities) purchased on the Card.
- ○ The Authorization Approval.
- ○ A clear description of the goods or services purchased by the Cardmember.
- ○ An imprint or other descriptor of your name, address, Merchant Number and, if applicable, store number.
- ○ The words "No Refunds" if you have a no refund policy, and your return and/or cancellation policies. See section 4.11, "return and cancellation policies" for additional information.
- ○ If a Card Present Charge, the Cardmember's signature.
- ○ If a Card Not Present Charge, the words "telephone order," "mail order," "Internet Order," or "signature on file," as applicable.

> If you cannot obtain an electronic Authorization, you must obtain a Voice Authorization (see section 5.7, "obtaining a voice authorization" for more information).

> Retain a copy of the Charge Record with the Cardmember's signature for your records (see section 4.8, "charge records" and section 11.4.4, "inquiry/ miscellaneous" for more information).

Charge Records submitted on paper must comply with the applicable requirements in section 4.8, "charge records".

Charges must be submitted in accordance with the applicable requirements described in section 6.5, "submission requirements - electronic".

See Paper submissions to obtain the address when submitting Transactions on paper.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





submission

### 6.6 submission requirements - paper (U.S.)

Submitting electronically allows you to avoid paying a paper Submission rate. Electronic Submission ensures your Submission file is sent to us quickly, so we can begin the process of settling with you. If you are not submitting electronically, contact Merchant Services for information on how to facilitate electronic Submission

Fees may apply if you submit Transactions on paper. See subsection 14.2.3, "submission and settlement fees (U.S.)".

### 6.7 how to submit

Many terminals are equipped with a "batch out" key or functionality. Contact your Terminal Provider for information on the best way for you to submit a batch.



In many cases, your POS System automatically processes the Transactions in Batches at the end of the day. To be sure, contact your Terminal Provider or review the instructions for Submissions that were provided with your POS System.

On busy days, your Transaction volume may be greater than your POS System's storage capability. Work with your Terminal Provider to determine your storage capacity, then determine if you will need to submit more than once each day (e.g., submit a Batch at mid-day and again in the evening).

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

7

## contents

7.1   transaction cycle

7.2   settlement amount

7.3   discount/discount rate

7.4   method of payment

7.5   speed of payment

7.6   payment options

7.7   reconciliation options

7.8   payment errors or omissions

7.9   collecting from Cardmembers

settlement





settlement

| 7.1 | transaction cycle | After we receive a Submission file from you, we begin the process of settling. The Settlement amount is determined by totalling the Submissions adjusted for applicable debits and Credits. |



*This graphic is for illustration purposes only and is not to be construed as limiting or waiving American Express' rights with respect to Cardmember Information or other information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

settlement

| 7.2 | **settlement amount** | Your Settlement amount will be the face amount of Charges submitted from your Establishments pursuant to the Agreement, less all applicable deductions, rejections, and withholdings, which may include: |
|---|---|---|

- ○ Discount
- ○ Amounts you owe us or our Affiliates
- ○ Amounts for which we have Chargebacks
- ○ Amounts for which you have submitted Credits

We will subtract from our payment to you (or debit your Bank Account), the full amount of all applicable deductions, rejections and withholdings, but if we cannot, then you must pay us promptly upon receipt of our notification of any amount owing.

| 7.2 | **settlement amount (U.S.)** | We will pay you the Settlement amount according to your payment plan in U.S. dollars. |
|---|---|---|

| 7.3 | **discount/discount rate** | Your initial Discount is indicated in the Agreement or otherwise provided to you in writing by us. In addition to your Discount, we may charge you additional fees and assessments (see [chapter 14, "merchant fees"](#) or as otherwise provided to you in writing by us). We may adjust any of these amounts and may change any other amount we charge you for accepting the Card. |
|---|---|---|

**Discount/Discount Rate**

An amount that we charge you for accepting the Card, which amount is: (i) a percentage (Discount Rate) of the face amount of the Charge that you submit, or a flat per-Transaction fee, or a combination of both; and/or (ii) a Monthly Flat Fee (if you meet our requirements). See [subsection 7.3.1, "monthly flat fee"](#).

We may charge you different Discounts for Charges submitted by your Establishments that we have classified in different industries. We will notify you of such fees, such adjustments and charges, and assessments and any different Discounts that apply to you.





settlement

| 7.3.1 | monthly flat fee | If you select or are enrolled in the Monthly Flat Fee option, you will incur the Monthly Flat Fee the first month after you are set up for Card acceptance. If we charge you a Monthly Flat Fee, we will debit your Bank Account for such Monthly Flat Fee. |

We may stop charging you a Monthly Flat Fee and start charging you a Discount whenever:

- ❍ the total amount of Charges you submit to us during any consecutive twelve (12)-month period is greater than a threshold we determine,

- ❍ you so request, or

- ❍ we otherwise determine in our discretion.

We may automatically charge you a Monthly Flat Fee instead of a Discount if you do not activate your Merchant Account and submit Charges to us within 150 days after we set up your Merchant Account. If we do not receive any Charges from you within any period of twelve (12) consecutive months, we may charge you a Monthly Flat Fee instead of a Discount.

| 7.3.1 | monthly flat fee (U.S.) | If the total amount of annual Charges you expect to incur is less than a threshold we determine (currently $5,000), and you Submit, Authorize, and settle electronically, you may be enrolled in and pay a Monthly Flat Fee each month. See subsection 14.2.1, "Card acceptance discount fees (U.S.)" for the current Monthly Flat Fee. |

| 7.3.2 | corporate purchasing Card discount reduction | If you meet the requirements outlined in section 4.13, "corporate purchasing Card charges", we may adjust your Discount Rate for Charges made on the American Express® CPC. This Adjustment will not apply if you do not meet requirements in section 4.13, "corporate purchasing Card charges", or if your Discount is a flat Transaction fee for CPC Charges. We will notify you of such adjustments. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

settlement

**7.4    method of payment**

We will send Settlement amounts to you electronically to the Bank Account you designate.

You agree that the Bank Account is the account into which payments for Charges (and any other Settlement amounts) will be made and from which debits will be made for Chargebacks, Credits, the Discount, fees or assessments, amounts you owe us or our Affiliates, or other applicable deductions under the Agreement. We have the right (and you hereby authorize us) to initiate such debits from the Bank Account on your behalf, and you shall maintain in the Bank Account sufficient available funds to cover your payment obligations to us or our Affiliates under the Agreement.

You must provide us with the bank's name and bank routing information, and your Bank Account number, and you must notify your bank that we will have access to your account for debiting and crediting the Bank Account.

You must immediately notify us of any changes to your Bank Account information. Failure to notify us of such changes may cause us to delay your Settlement until you update your Merchant Account. To update your Merchant Account, contact your American Express representative, or contact Merchant Services.

The policies of the financial institution at which you have a Bank Account govern when funds are available from the Bank Account.

We will not be responsible for any obligations, damages, or liabilities in excess of the amount of the applicable debit, credit, or adjustment to your Bank Account in the event that your bank does not honor any such item or improperly applies it to your Bank Account.

**7.4    method of payment (U.S.)**

For information regarding NACHA Operating Rules and Guidelines, visit www.nacha.org

You are required to maintain a Bank Account at a financial institution domiciled in the United States for the purposes of the Agreement. The bank you designate in the United States must have access to the Federal Reserve System to receive transactions via an automated clearing house (ACH). You must participate in electronic pay and we will send Settlement amounts to you electronically via ACH to the Bank Account you designate at a bank in the United States that participates in the ACH. You hereby agree that we shall have direct access to the Bank Account and all necessary rights to debit all amounts hereunder from the Bank Account. You hereby agree that such debits shall be in accordance with the NACHA Operating Rules and Guidelines, and you agree to be bound by such terms. The NACHA Operating Rules and Guidelines are available at www.nacha.org, or its successor website. If we are required to pay you by check, we may assess a fee. See subsection 14.2.3, "submission and settlement fees (U.S.)".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



settlement

---

**7.5    speed of payment**

Frequency of payment depends on the payment plan that you select. Subject to Applicable Law, we shall make payment to the Bank Account that you or the Establishment designates, as applicable. If we pay you centrally for consolidated Charges submitted from Establishments, then you are responsible for settling payments with each Establishment whose Charges have been so consolidated.

Your initial choice of a payment plan is indicated in the Agreement or otherwise provided to you in writing. We may offer, in our discretion, other payment plans and will notify you of their terms, as applicable.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

Merchant Regulations - U.S.



settlement

## 7.5    speed of payment (U.S.)

> Fifteen (15) and thirty (30) day payment plans may include a reduction in the base Discount Rate.

Unless otherwise agreed in writing, we will use commercially reasonable efforts to initiate ACH payment to your Bank Account within three (3) days (excluding Sundays and Federal Reserve holidays) after our receipt of the Charge prior to our cut-off time for receiving and processing Charges. If your payment date falls on a day that our bank is not open for processing ACH payments, we will initiate payment on the next day our bank is open for such processing.

You may choose one of the following payment plans:

- One-day payment plan: If your annual Charge volume is less than $3,000,000, you may be eligible for a one-day payment plan. We initiate payment one (1) day* after our cut-off time for receiving and processing Charges. At this time, one-day payment plan may not be available outside the fifty United States.

- Three-day payment plan: We initiate payment three (3) days* after our cut-off time for receiving and processing Charges.

- Fifteen-day payment plan: We initiate payment fifteen (15) days* after our cut-off time for receiving and processing Charges.

- Thirty-day payment plan: We initiate payment thirty (30) days* after our cut-off time for receiving and processing Charges.

The following table illustrates the one and three-day payment plans:

| Receipt Date (Day 0) | Settlement Day (Day 1) | Settlement Day (Day 3) |
|---|---|---|
| Sunday | Monday | Wednesday |
| Monday | Tuesday | Thursday |
| Tuesday | Wednesday | Friday |
| Wednesday | Thursday | Monday* |
| Thursday | Friday | Monday* |
| Friday | Monday* | Monday |
| Saturday | Monday* | Tuesday |

*ACH network does not operate on Saturdays, Sundays and Federal Reserve holidays.

Payment plan cutoff times differ. See section 6.3, "purpose of submission" for more information.

If you do not choose a payment plan, you will automatically be enrolled in either the one-day or three-day payment plan, based on eligibility.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





Merchant Regulations - U.S.

settlement

| 7.6 | payment options | American Express offers you net pay whereby you are paid the full amount of the Charges submitted less the Discount and other applicable amounts. |

Net pay is the payment option where the Discount and other amounts are deducted from (or netted out of) the payment to you. For example, you submit a $100 Charge and your Discount Rate is 3%. Assuming there are no other Adjustments to your Settlement amount, you will be paid $97.00.

| net pay |
|---|
| You are paid the full amount of the Charges submitted less the Discount and other applicable amounts. |

See section 7.2, "settlement amount" for additional information.

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.



settlement

## 7.6    payment options (U.S.)

> The gross pay option makes it easier to reconcile your Merchant Account by breaking out the cost of the Discount, fees, and Chargebacks into Transactions separate from the payment Settlement.

In addition to net pay, we also offer you two gross pay options.

| gross pay |
|---|
| You are paid the full amount of the Charges submitted, and then a second Adjustment occurs to deduct the Discount and other applicable amounts. |

Gross pay is a payment option where the Discount and other amounts are not deducted (or netted out) from the face amount of the Charge you submit. Instead, when we pay you for the face amount of the Charge, we will settle with you by debiting your Bank Account (or otherwise deducting from payments) the amounts described in section 7.2, "settlement amount". In order to be eligible for gross pay, you must:

- ○ submit all Charges electronically,
- ○ participate in electronic pay,
- ○ participate in the one (1) day or three (3) day payment plan, and
- ○ not participate in the Monthly Flat Fee option.

By way of illustration, if you submit a $100 Charge and your Discount Rate is 3%, assuming there are no other Adjustments to your Settlement amount, you will be paid $100 and we will debit your Bank Account separately for $3.

You may qualify for one of the following two gross pay options:

- ○ Monthly gross pay option: we will debit your Bank Account monthly for the total Discount and other amounts for all of a month's Charges, and we may increase your Discount Rate by the amount of the monthly gross pay fee if your annual Charge volume is equal to or greater than $3,000,000. See subsection 14.2.3, "submission and settlement fees (U.S.)", for the monthly gross pay fee.

- ○ Daily gross pay option: we will debit your Bank Account separately for the Discount and other amounts for Charges at the time of each of our payments to you.

To determine if you are eligible for one of these gross pay options, contact Merchant Services.

If you do not choose a payment option, then one of the following two automatic enrollments will occur:

- ○ You will automatically be enrolled in the monthly gross pay option if you meet the eligibility requirements for gross pay described above in this section 7.6, "payment options (U.S.)" and your expected annual Charge volume is less than $3,000,000.

- ○ You will automatically be enrolled in the net pay option if you do not meet the eligibility requirements for monthly gross pay.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





settlement

| 7.7 | **reconciliation options** | There are two formats you can choose from to reconcile your Merchant Account. Each format can be used separately or in combination with the other formats. |

| **paper format** | **online format** |
| --- | --- |
| The monthly paper statement is the default reconciliation format provided by American Express.<br>Under this format, we may assess a fee for each paper statement. See <u>section 14.2, "types of fees"</u>. | Log into your Merchant Account online to access easy-to-use reconciliation tools, including electronic statements. Each statement contains a summary of your Merchant Account's activity for the Settlement period, as well as details, including dates and Submission amounts. |

| 7.7 | **reconciliation options (U.S.)** | In addition, you can also use the electronic format to reconcile your Merchant Account. Each format can be used separately or in combination with the other formats. |

| **electronic format** |
| --- |
| This format provides you with a raw data feed that you can import into your own software system.<br>To request further information regarding availability of this format, contact your American Express representative. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

settlement

| 7.8 | **payment errors or omissions** | You must notify us in writing of any error or omission in respect of your Discount or other fees or payments for Charges, Credits or Chargebacks or we will consider the statement to be conclusively settled as complete and correct in respect of such amounts. If the error involves a Chargeback, see <u>section 11.5, "requesting a chargeback reversal"</u>. |
| | | If we determine at any time that we have paid you in error, we will exercise Chargeback to recover such erroneous payment. If you receive any payment from us not owed to you under the Agreement, you must immediately notify us (by calling <u>Merchant Services</u>) and your Processor, and return such payment to us promptly. |
| | | We have the right to withhold future payments to you (or debit your Bank Account) until we fully recover the amount. We have no obligation to pay any party other than you under the Agreement. |
| 7.8 | **payment errors or omissions (U.S.)** | You must notify us in writing of any payment error or omission within ninety (90) days of the date of the statement containing such claimed error or omission. |
| 7.9 | **collecting from Cardmembers** | You must not bill or collect from any Cardmember for any purchase or payment made on the Card unless: |

- we have exercised Chargeback for such Charge,
- you have fully paid us for such Charge, and
- you otherwise have the right to do so.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015       91





settlement

**this page intentionally left blank**

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

**8**

## contents

8.1   data security operating policy

8.2   definitions

8.3   standards for protection of Cardmember information

8.4   data incident management obligations

8.5   indemnity obligations for a data incident

8.6   periodic validation of merchant systems

8.7   confidentiality and disclosure

8.8   disclaimer

protecting Cardmember information



protecting Cardmember information

| | | |
|---|---|---|
| **8.1** | **data security operating policy** | As a leader in consumer protection, American Express has a long-standing commitment to protect Cardmember Information, ensuring that it is kept secure. |

Compromised data negatively impacts consumers, Merchants, and Issuers. Even one incident can severely damage a company's reputation and impair its ability to effectively conduct business. Addressing this threat by implementing security operating policies can help improve customer trust, increase profitability, and enhance a company's reputation.

American Express knows that you share our concern and requires, as part of your responsibilities, that you comply with the data security provisions in the Agreement and this Data Security Operating Policy. These requirements apply to all your equipment, systems, and networks on which encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) are stored, processed, or transmitted.

| | | |
|---|---|---|
| **8.2** | **definitions** | For the purposes of this chapter 8 and the corresponding [section 14.2, "types of fees"](#), the following definitions apply: |

*Approved Scanning Vendors (ASVs)* – Entities that have been qualified by the Payment Card Industry Security Standards Council, LLC to validate adherence to certain Payment Card Industry Data Security Standard requirements by performing vulnerability scans of internet facing environments. See [section 8.6, "periodic validation of merchant systems"](#).

*Attestation of Compliance (AOC)* – A declaration of the status of your compliance with the PCI DSS, in the form provided by the Payment Card Industry Security Standards Council, LLC.

*Attestation of Scan Compliance (AOSC)* – A declaration of the status of your compliance with the PCI DSS based on a network scan, in the form provided by the Payment Card Industry Security Standards Council, LLC.

*Cardholder Data* – Has the meaning given in the then current Glossary of Terms for the PCI DSS.

*Compromised Card Number* – A Card Number related to a Data Incident.

*Data Incident* – An incident involving at least one Card Number in which there is (i) unauthorized access or use of encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) that are stored, processed, or transmitted on a Merchant's equipment, systems, and/or networks (or the components thereof); (ii) use of such encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) other than in accordance with the Agreement; and/or (iii) suspected or confirmed loss, theft, or misappropriation by any means of any media, materials, records, or information containing such encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each).

*Data Incident Event Window* – The period that begins 365 days prior to the Notification Date and ends 33 days after the Notification Date.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



protecting Cardmember information

**8.2    definitions (continued)**

*Data Security Operating Policy (DSOP)* – The American Express data security policy, as described in chapter 8, "protecting Cardmember information" of the *Merchant Regulations.*

*EMV Specifications* – The specifications issued by EMVCo, LLC, which are available at http://www.emvco.com.

*Merchant Level* – The designation we assign Merchants related to their PCI DSS compliance validation obligations, as described in section 8.6, "periodic validation of merchant systems".

*Notification Date* – The date, as designated by American Express, that Issuers receive notification of the Data Incident.

*Payment Application* – has the meaning given to it in the then current Glossary of Terms for Payment Card Industry Payment Application Data Security Standard, which is available at https://www.pcisecuritystandards.org.

*PCI Approved* – a PIN Entry Device or a Payment Application (or both) that appears at the time of deployment on the list of approved companies and providers maintained by the PCI Security Standards Council, LLC, which is available at https://www.pcisecuritystandards.org.

*PCI Forensic Investigator (PFI)* – An Entity that has been approved by the Payment Card Industry Security Standards Council, LLC to perform forensic investigations of a breach or compromise of payment card data.

*PIN Entry Device* – Has the meaning given to it in the then current Glossary of Terms for the Payment Card Industry PIN Transaction Security Requirements Point of Interaction Modular Security Requirements, which is available at https://www.pcisecuritystandards.org.

*Qualified Security Assessors (QSAs)* – Entities that have been qualified by the Payment Card Industry Security Standards Council, LLC to validate adherence to the Payment Card Industry Data Security Standard. See section 8.6, "periodic validation of merchant systems".

*Self Assessment Questionnaire (SAQ)* – A self assessment tool created by the Payment Card Industry Security Standards Council, LLC., intended to evaluate and attest to compliance with the PCI DSS.

*Sensitive Authentication Data* – Has the meaning given in the then current Glossary of Terms for the PCI DSS.

*Validation Documentation* – Documents to be provided by Merchants under the Data Security Operating Policy. See section 8.7, "confidentiality and disclosure" for a list of documents, and section 8.6, "periodic validation of merchant systems" for the policy's requirements.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



protecting Cardmember information

### 8.3 standards for protection of Cardmember information

**Covered Parties**

Any or all of your employees, agents, representatives, subcontractors, Processors, service providers, providers of your POS Systems or payment processing solutions, and any other party to whom you may provide Cardmember Information access in accordance with the Agreement.

**Payment Card Industry Data Security Standard (PCI DSS)**

The Payment Card Industry Data Security Standard, which is available at www.pcisecuritystandards.org.

Remember if the Agreement terminates, Cardholder Data can only be retained according to the PCI DSS which is available at www.pcisecuritystandards.org.

You must, and you must cause your Covered Parties, to:

- store Cardholder Data only to facilitate American Express Card Transactions in accordance with, and as required by, the Agreement, and

- comply with the current version of the Payment Card Industry Data Security Standard ("PCI DSS") no later than the effective date for implementing that version.

- use, when deploying new or replacement PIN Entry Devices or Payment Applications (or both), only those that are PCI Approved.

You must protect all Charge Records and Credit Records retained pursuant to the Agreement in accordance with these data security provisions; you must use these records only for purposes of the Agreement and safeguard them accordingly. You are financially and otherwise liable to American Express for ensuring your Covered Parties' compliance with this chapter 8, "protecting Cardmember information" (other than for demonstrating your Covered Parties' compliance with this policy under section 8.6, "periodic validation of merchant systems").

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



protecting Cardmember information

**8.4    data incident management obligations**

**Data Incident**

An incident involving at least one Card Number in which there is (i) unauthorized access or use of encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) that are stored, processed, or transmitted on a Merchant's equipment, systems, and/or networks (or the components thereof); (ii) use of such encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) other than in accordance with the Agreement; and/or (iii) suspected or confirmed loss, theft, or misappropriation by any means of any media, materials, records, or information containing such encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each).

You must notify American Express immediately and in no case later than twenty-four (24) hours after discovery of a Data Incident.

To notify American Express, contact the American Express Enterprise Incident Response Program (EIRP) or email at EIRP@aexp.com. You must designate an individual as your contact regarding such Data Incident.

You must conduct a thorough forensic investigation of each Data Incident. For Data Incidents involving 10,000 or more unique Card Numbers (or otherwise at American Express' request), a PCI Forensic Investigator (PFI) must conduct this investigation. You must promptly provide to American Express all Compromised Card Numbers and the forensic investigation report of the Data Incident. The report must be provided to American Express, without modification, within 10 business days after completion. You must work with American Express to rectify any issues arising from the Data Incident, including consulting with American Express about your communications to Cardmembers affected by the Data Incident and providing (and obtaining any waivers necessary to provide) to American Express all relevant information to verify your ability to prevent future Data Incidents in a manner consistent with the Agreement.

Forensic investigation reports must include forensic reviews, reports on compliance, and all other information related to the Data Incident; identify the cause of the Data Incident; confirm whether or not you were in compliance with the PCI DSS at the time of the Data Incident, and verify your ability to prevent future Data Incidents by providing a plan for remediating all PCI DSS deficiencies. Upon American Express' request, you shall provide validation by a Qualified Security Assessor (QSA) that the deficiencies have been remediated.

Notwithstanding any contrary confidentiality obligation in the Agreement, American Express has the right to disclose information about any Data Incident to Cardmembers, Issuers, other participants on the American Express Network, and the general public as required by Applicable Law; by judicial, administrative, or regulatory order, decree, subpoena, request, or other process; in order to mitigate the risk of fraud or other harm; or otherwise to the extent appropriate to operate the American Express Network.




Merchant Regulations - U.S.

protecting Cardmember information

| 8.5 | **indemnity obligations for a data incident** | Your indemnity obligations to American Express under the Agreement for Data Incidents shall be determined, without waiving any of American Express' other rights and remedies, under this section 8.5. |

American Express will not seek indemnification from you for a Data Incident (a) involving less than 10,000 unique Compromised Card Numbers, or (b) if:

○ you notified American Express of the Data Incident pursuant to this chapter,

○ you were in compliance at the time of the Data Incident with the PCI DSS (as determined by the PFI's investigation of the Data Incident), and

○ the Data Incident was not caused by your wrongful conduct or that of your Covered Parties.

You are liable for all other Data Incidents as follows. For a Data Incident involving Card Numbers alone, you shall compensate American Express promptly by paying a Data Incident non-compliance fee (see section 14.2, "types of fees"). For a Data Incident involving Card Numbers with Sensitive Authentication Data, you shall compensate American Express promptly for:

○ Incremental Fraud (see the following definition) within the Data Incident Event Window,

○ Card monitoring and replacement costs as outlined in our country-specified policies, and

○ a Data Incident non-compliance fee. See section 14.2, "types of fees" for more information.

> **Incremental Fraud**
> The dollar amount of fraud related to a Data Incident, as determined by American Express, and as calculated according to section 8.5, "indemnity obligations for a data incident".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

protecting Cardmember information

| 8.5 | **indemnity obligations for a data incident (continued)** | American Express shall calculate Incremental Fraud according to the following methodology: |

Incremental Fraud = (X - Y) multiplied by Z, where:

X = (i) Issuers' total fraud losses excluding fraud Chargebacks and losses from fraudulent Card applications on Compromised Card Numbers during the Data Incident Event Window divided by (ii) Issuers' total Charge volume on Compromised Card Numbers during the Data Incident Event Window.

Y = (i) Issuers' total fraud losses excluding fraud Chargebacks and losses from fraudulent Card applications on non-Compromised Card Numbers during the Data Incident Event Window divided by (ii) Issuers' total Charge volume on non-Compromised Card Numbers during the Data Incident Event Window.

Z = Issuers' total Charge volume on Compromised Card Numbers during the Data Incident Event Window.

American Express will exclude from its calculations of Incremental Fraud and Card monitoring and replacement costs any Card Number that was involved in another Data Incident involving Card Numbers with Sensitive Authentication Data, provided that American Express received notification of the other Data Incident within the twelve (12) months prior to the Notification Date. All calculations made by American Express under this methodology are final.

| 8.5 | **indemnity obligations for a data incident (U.S.)** | You shall compensate American Express promptly for Card monitoring and replacement costs of (i) $1.00 (USD) per Card Number for 90% of the total number of Compromised Card Numbers and (ii) $5.00 (USD) per Card Number for 10% of the total number of Compromised Card Numbers, respectively. |

American Express shall calculate Incremental Fraud in U.S. dollars.

Merchants' indemnity obligations for Data Incidents hereunder shall not be considered incidental, indirect, speculative, consequential, special, punitive, or exemplary damages under the Agreement; provided that such obligations do not include damages related to or in the nature of lost profits or revenues, loss of goodwill, or loss of business opportunities.





protecting Cardmember information

| | | |
|---|---|---|
| **8.6** | **periodic validation of merchant systems** | You must take steps to validate under PCI DSS annually and quarterly the status of your equipment, systems and/or networks (and their components) on which encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) are stored, processed, or transmitted. |

*Step 1 - Enroll in American Express' Compliance Program under this Policy*

Level 1 Merchants, Level 2 Merchants, those Level 3 Merchants whom American Express has designated (as described below), and Level EMV Merchants, as described below must enroll in American Express' compliance program under this policy by providing the full name, email address, telephone number, and physical mailing address of an individual who will serve as their general data security contact. You must submit this information to Trustwave ([www.trustwave.com](www.trustwave.com)), which administers the program on behalf of American Express, by one of the methods listed in Step 3 below. You must notify Trustwave if this information changes, providing updated information where applicable.

American Express may require certain Level 3 Merchants to enroll in American Express' compliance program under this policy by sending them written notice. The designated Level 3 Merchant must enroll no later than ninety (90) days following receipt of the notice.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



protecting Cardmember information

| 8.6 | **periodic validation of merchant systems (continued)** | *Step 2 - Determine Your Merchant Level and Validation Requirements* |

Most Merchant Levels are based on the volume of Transactions submitted by Establishments that roll-up to the highest American Express Merchant Account level. You will fall into one of the Merchant Levels specified in the following table.

| merchant level | definition | validation documentation | requirement |
| --- | --- | --- | --- |
| 1 | 2.5 million Transactions or more per year; or any Merchant that American Express otherwise deems a Level 1 Merchant | annual on-site security assessment report and quarterly network scan | mandatory |
| 2 | 50,000 to 2.5 million Transactions per year | annual Self Assessment Questionnaire and quarterly network scan | mandatory |
| 3 - Designated | Less than 50,000 Transactions per year and designated by American Express as being required to submit Validation Documentation | annual Self Assessment Questionnaire and quarterly network scan | mandatory |
| 3 - All Other | Less than 50,000 Transactions per year but not classified as Level 3 Designated | annual Self Assessment Questionnaire and quarterly network scan | strongly recommended* |

*For the avoidance of doubt, Level 3 Merchants (other than Designated Level 3 Merchants) need not submit Validation Documentation, but nevertheless must comply with, and are subject to liability under all other provisions of this Data Security Operating Policy.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





protecting Cardmember information

| 8.6 | periodic validation of merchant systems (continued) | Determine your Merchant Level and the Validation Documentation that you must send to American Express. |
|---|---|---|

| validation documentation | | |
|---|---|---|
| **annual onsite security assessment** | **annual self assessment questionnaire** | **quarterly network scan** |
| The annual onsite security assessment is a detailed onsite examination of your equipment, systems, and networks (and their components) where encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) are stored, processed, or transmitted. It must be performed by:<br><br>○ a QSA, or<br>○ you and certified by your chief executive officer, chief financial officer, chief information security officer, or principal.<br><br>The annual onsite security assessment must be submitted annually to American Express on the applicable Attestation of Compliance (AOC). To fulfill validation obligations under this policy, the AOC must certify compliance with all requirements of the PCI DSS and, upon request, include copies of the full report on compliance. | The annual self assessment is a process using the PCI DSS Self Assessment Questionnaire (SAQ) that allows self-examination of your equipment, systems, and networks (and their components) where encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) are stored, processed, or transmitted. It must be performed by you and certified by your chief executive officer, chief financial officer, chief information security officer, or principal. The AOC section of the SAQ must be submitted annually to American Express. To fulfill validation obligations under this policy, the AOC section of the SAQ must certify your compliance with all requirements of the PCI DSS and include full copies of the SAQ on request. | The quarterly network scan is a process that remotely tests your internet-connected computer networks and web servers for potential weaknesses and vulnerabilities. It must be performed by an Approved Scanning Vendor (ASV). You must complete and submit the ASV Scan Report Attestation of Scan Compliance (AOSC) or executive summary of findings of the scan (and copies of the full scan, on request) quarterly to American Express. To fulfill validation obligations under this policy, the AOSC or executive summary must certify that the results satisfy the PCI DSS scanning procedures, that no high risk issues are identified, and that the scan is passing or compliant. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

protecting Cardmember information

**8.6    periodic validation of merchant systems (continued)**

Visit
www.pcisecuritystandards.org for:

○ Lists of Qualified Security Assessors (QSAs) and Approved Scanning Vendors (ASVs)

○ Self-Assessment Questionnaires (SAQs)

○ The Attestation of Compliance (AOC) and Attestation of Scan Compliance (AOSC)

*Step 3 - Send the Validation Documentation to American Express*

Level 1, Level 2, and designated Level 3 Merchants must submit the Validation Documentation marked "mandatory" in the table in Step 1.

○ Level 1 Merchants' Validation Documentation must include the AOC from the annual onsite security assessment report and AOSC or executive summaries of findings of quarterly network scans.

○ Level 2 Merchants', and designated Level 3 Merchants' Validation Documentation must include the AOC from the SAQ and the AOSC or the executive summaries of findings of the Quarterly Network Scans, as described in the table above.

○ Level 3 Merchants (other than designated Level 3 Merchants) are not required to submit Validation Documentation (but must comply with, and are subject to liability under, all other provisions of this policy).

You must submit your Validation Documentation to Trustwave by one of these methods:

SECURE PORTAL: Validation Documentation may be uploaded via Trustwave's secure portal. Contact Trustwave or via email at AmericanExpressCompliance@trustwave.com for instructions in using this portal.

SECURE FAX: Validation Documentation may be faxed to 1.312.276.4019. Include your Merchant name, DBA ("Doing Business As") name, the 10-digit Merchant Number, data security contact name, Merchant address and phone number.

MAIL: Validation Documentation may be copied in an encrypted format on a compact disc. Place in an envelope marked "Mandatory" and mail to:

American Express DSOP Compliance Program

c/o Trustwave

70 West Madison, Suite 1050

Chicago, IL 60602 USA

Email the encryption key required to decrypt the Validation Documentation along with your Merchant name, DBA ("Doing Business As") name, 10-digit Merchant Number, data security contact name, Merchant address and phone number to Trustwave at AmericanExpressCompliance@trustwave.com.

If you have general questions about the program or the process above, contact Trustwave or via email at AmericanExpressCompliance@trustwave.com.

Compliance and validation are completed at your expense. By submitting Validation Documentation, you represent and warrant to American Express that you are authorized to disclose the information contained therein and are providing the Validation Documentation to American Express without violating any other party's rights.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





protecting Cardmember information

| | | |
|---|---|---|
| 8.6.1 | **merchants not compliant with PCI DSS** | If you are not compliant with the PCI DSS, then you must complete an AOC including "Part 4. Action Plan for Non-Compliant Status" and designate a remediation date, not to exceed twelve (12) months following the date of the AOC, for achieving compliance. You must submit this AOC with "Action Plan for Non-Compliant Status" to American Express by one of the methods listed in <u>section 8.6, "periodic validation of merchant systems"</u>. You shall provide American Express with periodic updates of your progress toward remediation under the "Action Plan for Non-Compliant Status." American Express shall not impose non-validation fees (see <u>subsection 8.6.2, "non-validation fees and termination of agreement"</u>) on you for non-compliance prior to the remediation date, but you remain liable to American Express for all indemnity obligations for a Data Incident and are subject to all other provisions of this Data Security Operating Policy. |
| 8.6.2 | **non-validation fees and termination of agreement** | American Express has the right to impose non-validation fees on you and terminate the Agreement if you do not fulfill these requirements or fail to provide the mandatory Validation Documentation to American Express by the applicable deadline. |
| | | American Express will notify you separately of the applicable deadline for each annual and quarterly reporting period. The fees for non-validation are outlined in <u>section 14.2, "types of fees"</u>. |
| | | If American Express does not receive your mandatory Validation Documentation within sixty (60) days of the first deadline, then American Express has the right to terminate the Agreement in accordance with its terms as well as impose non-validation fees on you. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

protecting Cardmember information

| 8.6.3 | periodic validation of Level EMV merchants | See country-specific policies for more information. |
|---|---|---|

**8.6.3  periodic validation of Level EMV merchants (U.S.)**

If you meet certain criteria, your Merchant Level may be classified as EMV.

To be eligible for Merchant Level EMV, you must submit 50,000 (or more) American Express Card Transactions per year, of which total Transactions at least 75% are made by the Cardmember with the physical Card present at a POS System compliant with EMV Specifications and capable of processing contact and contactless American Express Chip Cards.

If you are classified as Merchant Level EMV, you may submit a declaration of the status of your compliance with the PCI DSS, in the form which is available at https://login.trustwave.com (*Annual EMV Attestation* or *AEA*) instead of other Validation Documentation.* The AEA involves a process using PCI DSS requirements that allows self-examination of your equipment, systems, and networks (and their components) where encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) are stored, processed or transmitted. It must be performed by you and certified by your chief executive officer, chief financial officer, chief information security officer, or principal. You must complete the process by submitting the AEA form annually to American Express (see section 8.6, "periodic validation of merchant systems", Step 3). To fulfill validation obligations under this policy, the AEA must certify that you meet the requirements for Merchant Level EMV.

* For the avoidance of doubt, if you fall into Merchant Level 1 or 2 and are classified as Merchant Level EMV you need submit only the AEA, not the other Merchant Level 1 and 2 Validation Documentation set forth in the table in section 8.6, "periodic validation of merchant systems".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*    October 2015    105



protecting Cardmember information

| 8.7 | confidentiality and disclosure | American Express shall take reasonable measures to keep (and cause its agents and subcontractors, including Trustwave, to keep) your reports on compliance, including AOCs rendered in connection with an annual onsite security assessment or SAQ and the AOSC and executive summaries of findings rendered in connection with quarterly network scans, in confidence and not disclose the Validation Documentation to any third party (other than American Express' Affiliates, agents, representatives, service providers, and subcontractors) for a period of three (3) years from the date of receipt, except that this confidentiality obligation does not apply to Validation Documentation that: |

- is already known to American Express prior to disclosure;
- is or becomes available to the public through no breach of this paragraph by American Express;
- is rightfully received from a third party by American Express without a duty of confidentiality;
- is independently developed by American Express; or
- is required to be disclosed by an order of a court, administrative agency or governmental authority, or by any law, rule or regulation, or by subpoena, discovery request, summons, or other administrative or legal process, or by any formal or informal inquiry or investigation by any government agency or authority (including any regulator, inspector, examiner, or law enforcement agency).

## 8.8    disclaimer

**Further information**

American Express Data Security:
www.americanexpress.com/datasecurity

PCI Security Standards Council, LLC for:

- PCI Data Security Standards
- Self Assessment Questionnaire
- List of Qualified Security Assessors
- List of Approved Scanning Vendors
- List of PCI Forensic Investigators

www.pcisecuritystandards.org

AMERICAN EXPRESS HEREBY DISCLAIMS ANY AND ALL REPRESENTATIONS, WARRANTIES, AND LIABILITIES WITH RESPECT TO THIS DATA SECURITY OPERATING POLICY, THE PCI DSS, THE EMV SPECIFICATIONS, AND THE DESIGNATION AND PERFORMANCE OF QSAs, ASVs, OR PFIs (OR ANY OF THEM), WHETHER EXPRESS, IMPLIED, STATUTORY, OR OTHERWISE, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. Issuers are not third-party beneficiaries under this Data Security Operating Policy.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

9

# contents

9.1    introduction

9.2    transaction cycle

9.3    strategies for deterring fraud

9.4    Card acceptance policies

9.5    Card security features

9.6    recognizing suspicious activity

9.7    prepaid Card security features

9.8    recognizing suspicious activity for prepaid Cards

9.9    travelers cheque and gift cheque security features

9.10   fraud mitigation tools

9.11   verification services

fraud prevention



fraud prevention

| **9.1** | **introduction** | You work hard to protect the interests of your business and Cardmembers. Unfortunately, fraudulent Card use can undermine your best efforts. Millions of dollars are lost each year because of such fraud. |
| --- | --- | --- |

We offer a full suite of tools that can help to mitigate the chances of fraud on American Express Cards and reduce this cost to your business. We offer a variety of premium value tools that complement many aspects of your business. We and our Affiliates also may offer separate fraud tools and services, which are not a subject of the Agreement.

This chapter of the *Merchant Regulations* offers fraud mitigation tips for both Card Present and Card Not Present Transactions.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

fraud prevention

**9.2    transaction cycle**

Our primary strategy for combating fraudulent Card use is to address it at the point of Authorization. To accomplish this, we work with you to implement best practices and fraud mitigation tools.

While fraud usually is thought of as a deceptive act at the point of sale, detection can actually occur during any stage in the Transaction cycle. For this reason, "fraud detection", as depicted in the following graphic, applies throughout the entire Transaction cycle.



*This graphic is for illustration purposes only and is not to be construed as limiting or waiving American Express' rights with respect to Cardmember Information or other information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



fraud prevention

| | | |
|---|---|---|
| **9.3** | **strategies for deterring fraud** | We recommend implementing multiple layers of fraud protection to help secure your business. These layers may include a combination of your point of sale procedures and controls as well as implementation of fraud mitigation tools. |

*Layers of Protection*

Your first layer for mitigating fraud is to follow our Card acceptance policies and procedures, as outlined in chapter 4, "transaction processing." Other fraud mitigation strategies that you choose to implement may include any combination of:

- ❍ recognition of suspicious behaviors or circumstances that may signal fraudulent activity

- ❍ implementation of fraud mitigation tools that take advantage of our risk controls to identify fraudulent activity

- ❍ additional risk models or controls that you can develop internally or obtain externally from third parties



Merchant Internal Controls

Adherence to Card Acceptance Policies

Scrutiny of Card Security Features

Recognition of Suspicious Behavior

Fraud Mitigation Tool #1

Fraud Mitigation Tool #2

Fraud Mitigation Tool #3, 4, 5, etc.

Criminals attempt to circumvent the Merchant's control systems and procedures

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

fraud prevention

**9.3    strategies for deterring fraud (continued)**

We are committed to working with Merchants to deploy tools that can help reduce the likelihood that fraudulent Charges will be Approved. The implementation and use of the strategies and tools detailed in this chapter, however, does not guarantee that (i) the person making the Charge is the Cardmember, (ii) the Charge is in fact valid or bona fide, (iii) you will be paid for the Charge, or (iv) you will not be subject to a Chargeback.

The following illustration compares the data captured during a standard Card Not Present Charge (left) with the amount of data that can be captured when our full suite of fraud mitigation tools is implemented (right).



**9.4    Card acceptance policies**

A critical component in your overall fraud mitigation strategy is to follow our Card acceptance procedures, as defined in chapter 4, "transaction processing". The procedures outlined in the "transaction processing" chapter are required under the Agreement and can also serve as your first line of defense against potential fraud. The additional layers of fraud mitigation mentioned previously can supplement this line of defense.



Merchant Regulations - U.S.

fraud prevention

## 9.5  Card security features

In many cases, the physical appearance of the Card will offer the most obvious clues of fraudulent activity.

Our Card security features are designed to help you assess whether a Card is authentic or has been altered. Ensure that all of your personnel are familiar with our Card's security features so they can identify potentially compromised Cards.

The following picture is just one example of an American Express Card; we offer a number of different Cards. These are some things you must look for:





**1.** Pre-printed CID Numbers usually appear above the Card Number, on either the right or the left edge of the Card.

**2.** All American Express Card Numbers start with "37" or "34." The Card Number appears embossed on the front of the Card. Embossing must be clear, and uniform in sizing and spacing. Some Cards also have the Card Number printed on the back of the Card in the signature panel. These numbers, plus the last four digits printed on the Charge Record, must all match.

**3.** Do not accept a Card outside the Valid Dates.

**4.** Only the person whose name appears on an American Express Card is entitled to use it. Cards are not transferable.

**5.** Some Cards contain a holographic image on the front or back of the plastic to determine authenticity. Not all American Express Cards have a holographic image.

**6.** Some Cards have a Chip on which data is stored and used to conduct a Charge.

**7.** The signature on the back of the Card must match the Cardmember's signature on the Charge Record, and must be the same name that appears on the front of the Card. The signature panel must not be taped over, mutilated, erased or painted over. Some Cards also have a three-digit Card Security Code (CSC) number printed on the signature panel.

**Note:** The security features for Prepaid Cards and Travelers Cheques are listed in section 9.7, "prepaid Card security features" and section 9.9, "travelers cheque and gift cheque security features".

### Further Information

The four-digit CID Number is located on the front of the Card where the three-digit CSC is located on the back of the Card. These codes are considered Card security features and can validate that the Card is present for a Charge. You should prompt your customers for the four-digit CID Number. See subsection 9.11.1, "electronic verification services" for additional information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



fraud prevention

| | |
|---|---|
| **9.5.1** **compromised Card security features** | In this example of an altered Card, the signature panel has been painted white under the signature. In addition, the Card Number has been erased from the back panel. |



Do not accept a Card if:

*Altered Magnetic Stripe*

- ○ The Magnetic Stripe has been altered or destroyed.

- ○ The Card Number on the front of the Card does not match the number printed on the back (when present), or the last four digits printed on the Charge Record (or both).

*Altered Front of the Card*

- ○ The Card Number or Cardmember name on the front of the Card appears out of line, crooked, or unevenly spaced.

- ○ The ink on the raised Card Number or Cardmember name is smudged or messy.

- ○ The Card Number or Cardmember name is not printed in the same typeface as the American Express typeface.

*Altered Back of the Card*

- ○ The Card Number printed on the back of the Card (when present) is different from the Card Number on the front.

- ○ The Card Number on the back of the Card (when present) has been chipped off or covered up.

- ○ The signature panel has been painted-out, erased, or written over.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





fraud prevention

| 9.5.1 | compromised Card security features (continued) | *Altered Appearance of the Card* |
|---|---|---|

○ There are "halos" of previous embossing or printing underneath the current Card Number and Cardmember name.

○ A portion of the surface looks dull compared with the rest of the Card. Valid American Express Cards have a high-gloss finish.

○ The Card has a bumpy surface or is bent around the edges.

○ You suspect any Card security features have been compromised.

○ The Card appears physically altered in any way.

If you suspect Card misuse, follow your internal store policies, and, if directed to do so, call the Authorization Department and state that you have a Code 10. **Never put yourself or your employees in unsafe situations, nor physically detain or harm the holder of the Card.**

| 9.5.1 | compromised Card security features (U.S.) | Often, you can look closely at Cards to determine if they're altered or counterfeit. As another layer in your internal fraud prevention program, educate yourself and all your personnel on how to identify a potentially altered Card. Visit our website at: www.americanexpress.com/fraudinfo. |
|---|---|---|

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

fraud prevention

| 9.6 | **recognizing suspicious activity** |
|---|---|

No single factor by itself is indicative of risk; however, when a combination of factors is present during a Transaction, additional scrutiny is warranted.

Diligently scrutinizing behaviors and circumstances can help prevent you from being victimized by fraud.

As a prudent Merchant, you must always be aware of circumstances that may indicate a fraudulent scheme or suspicious behaviors that may flag a fraudulent customer.

*Suspicious Behavior*

A suspicious situation may arise, causing you to question the authenticity of the Card, or the legitimacy of the person presenting it. Any single behavior may not be risky. However, when customers exhibit more than one of the following behaviors, your risk factor may increase:

- larger-than-normal Transaction dollar amounts,
- orders containing many of the same items,
- orders shipped to an address other than a billing address,
- orders using anonymous/free email domains,
- orders sent to postal codes or countries where you show a history of fraudulent claims,
- orders of a "hot" product (i.e., highly desirable goods for resale),
- customer is a first-time shopper,
- customer is purchasing large quantities of high-priced goods without regard to color, size, product feature, or price,
- customer comes in just before closing time and purchases a large quantity of goods,
- customer wants to rush or overnight the order,
- customer has a previous history of Disputed Charges,
- customer is rude or abusive toward you; wanting to rush or distract you,
- customer frequents your Establishment to make small purchases with cash, then returns to make additional purchases of expensive items with a Card.

If you suspect Card misuse, follow your internal store policies, and, if directed to do so, call the Authorization Department with a Code 10. **Never put yourself or your employees in unsafe situations, nor physically detain or harm the holder of the Card.**

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



fraud prevention

| | | |
|---|---|---|
| **9.7** | **prepaid Card security features** | You are responsible for following all our Prepaid Card acceptance procedures in section 4.20, "processing prepaid Cards". Although there are a number of unique Prepaid Cards, all Prepaid Cards share similar features, except that: |

- Prepaid Cards may or may not be embossed, and
- The following features may appear on the front or back of the Card (or a combination of both):



1. The American Express logo generally appears in the bottom right corner.
2. The words PREPAID OR INCENTIVE will generally be shown above the American Express logo.
3. Cards pre-loaded with funds may show the dollar amount or the total points (reloadable Cards generally will not show a number).
4. The CID Number will appear usually above the Card Number or above the logo.
5. The Card Number appears on the Card.
6. The Valid Date or Expiration Date appears on the Card.
7. The recipient's name or company name may appear on the Card; otherwise a generic "Recipient" or "Traveler" may appear, or this area might be blank.

| | | |
|---|---|---|
| **9.8** | **recognizing suspicious activity for prepaid Cards** | We recommend that you follow the procedures in the preceding section 9.6, "recognizing suspicious activity" in addition to being vigilant for the following suspicious behaviors related specifically to Prepaid Cards: |

- customer frequently makes purchases and then returns goods for cash. (To avoid being the victim of this scheme, we suggest you follow your internal store procedures when you cannot issue a Credit on the Card used to make the original purchase),
- customer uses Prepaid Cards to purchase other Prepaid Cards,
- customer uses large numbers of Prepaid Cards to make purchases.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



fraud prevention

### 9.9 travelers cheque and gift cheque security features

We offer a variety of cheque verification solutions to help you avoid accepting fraudulent cheque products. For more details about Authorization solutions, contact us via email at tconlineAuthorizations@aexp.com.

Even though our Travelers Cheques and Gift Cheques offer more convenience and security, counterfeit products circulate worldwide. You must verify all cheque products presented at your Establishment and contact the Travelers Cheque/Gift Cheque Customer Service with questions or suspicions.

One of the easiest and most effective tests to determine authenticity is the smudge test:

1. Turn the cheque over (non-signature side).

2. Locate the denomination on the right side of the cheque. Wipe a moistened finger across the denomination. The ink *should not* smudge.

3. Wipe a moistened finger across the denomination on the left side of the cheque. The ink *should* smudge.

The following shows an example of a smudge test:

*left side smudges*       *right side does not smudge*

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

fraud prevention

| | | |
|---|---|---|
| **9.9** | **travelers cheque and gift cheque security features (continued)** | For Travelers and Gift Cheque acceptance procedures, see section 4.21, "processing travelers/gift cheques". We also recommend you follow the procedures in the preceding section 9.6, "recognizing suspicious activity" to assist you in the mitigation of fraud. |

As another layer of protection, there are a number of security features inherent in our Travelers Cheque and Gift Cheque products. Following are a few security features to help you recognize an authentic Cheque.

*Centurion Portrait*                                   *Watermark*



*Security Thread*                                   *Holographic Foils*

| | | |
|---|---|---|
| **9.10** | **fraud mitigation tools** | We offer fraud mitigation tools for both Card Present and Card Not Present Transactions to help verify that a Charge is valid. These tools help you mitigate the risk of fraud at the point of sale, but are not a guarantee that (i) the person making the Charge is the Cardmember, (ii) the Charge is in fact valid or bona fide, (iii) you will be paid for the Charge, or (iv) you will not be subject to a Chargeback. For optimal use of the tools, it is critical that: |

- ○ you comply with the applicable sections of the Technical Specifications (see section 2.7, "compliance with the technical specifications"), and

- ○ you provide high quality data in the Authorization request.

Failure to comply with all applicable sections of the Technical Specifications can impair or prevent your use of our fraud mitigation tools.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

fraud prevention

## 9.10    fraud mitigation tools (U.S.)

Our Affiliate - Accertify, Inc. - offers a comprehensive and integrated software platform, and other tools strategies, for mitigating the risk of online fraud on all payment card types, not only American Express Cards. To learn more, call 800.231.4912 or visit www.accertify.com.

The following table shows the tools available to you and indicates which tools are appropriate for each type of Transaction.

| fraud mitigation tools | | | |
|---|---|---|---|
| tool | in-person | CAT | card not present |
| Track 1 | ● | ● | |
| Code 10 | ● | | |
| Terminal ID | ● | ● | |
| Enhanced Authorization | | | ● |
| Verification Services | | | |
| Electronic Verification Services | | | |
| ❍  Card Identification (CID) | ● | | ● |
| ❍  Automated Address Verification | | | ● |
| ❍  Telephone Number Verification | | | ● |
| ❍  Email Address Verification | | | ● |
| ❍  Zip Code Verification | ● | ● | ● |
| Additional Services | | | |
| ❍  Name and Address Verification | | | ● |
| ❍  Charge Verification Program | | | ● |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



fraud prevention

**9.10.1     track 1 (U.S.)**

| | |
|---|---|
| **description** | There are two tracks of information encoded in the Magnetic Stripe. Track 1 contains additional data that provides an extra layer of fraud protection. |
| **purpose** | Criminals often alter the data when creating a counterfeit Magnetic Stripe. Sending the Track 1 data as part of the Authorization request helps facilitate additional verifications. |
| **how it works** | The POS System captures data encoded in the Track 1 of the Magnetic Stripe and sends it to the Issuer in the Authorization request. The Issuer can utilize this information to assess whether the transmitted Track 1 data is fraudulent. |
| **industry** | Appropriate for all Card Present Charges. |
| **implementation** | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative. |

**9.10.1     code 10 (U.S.)**

| | |
|---|---|
| **description** | A special phrase ("Code 10 Authorization Request") that Merchants use to indicate to the American Express representative that they have suspicions concerning the Cardmember, the Card, the CID Number, the circumstances of the sale, or any combination thereof. |
| **purpose** | "Code 10 Authorization Request" is used so that the customer does not know that you are suspicious. |
| **how it works** | By asking for a "Code 10 Authorization" you alert the American Express representative that you are suspicious of this Card, customer or Transaction. The representative then asks "yes" or "no" questions in order to assess the situation and make a recommendation. Respond to the representative's questions calmly; avoid rousing the customer's suspicions. |
| **industry** | Appropriate for all In-Person Charges. |
| **implementation** | If you suspect Card misuse, follow your internal store policies, and, if directed to do so, call the Authorization Department with a Code 10 Authorization Request. Only pick up a Card if directed to do so by an American Express representative or the Issuer. **Never put yourself or your employees in unsafe situations**. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

fraud prevention

**9.10.1    terminal ID (U.S.)**

| description | The Terminal ID tool captures a numeric identifier uniquely assigned to each register or terminal at a particular Establishment and sends the numeric identifier ("Terminal ID") to American Express with each Authorization request. |
|---|---|
| purpose | The Terminal ID tool helps detect high risk patterns of a particular register or terminal. Certain registers or terminals may be the source of higher-than-normal fraud due to their location (e.g., proximity to an exit) or other circumstances that a criminal may find appealing (e.g., self-check out). When you submit the Terminal ID with each Charge, the Issuer can apply its risk modeling to each Charge originating from a high risk register or terminal and incorporate the result into the appropriate Authorization response to you. |
| how it works | As a Card is swiped, the POS System captures the Terminal ID and sends it to the Issuer with the Authorization Request. The Issuer reviews this information using risk modeling and incorporates the result into the Authorization decision. |
| industry | Appropriate for all Card Present Charges. |
| implementation | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link with American Express, your American Express representative. |





fraud prevention

**9.10.1    enhanced
authorization (U.S.)**

**Further Information**

Criminals rely on the anonymity of confirming orders via email, shipping goods and then converting them to cash. That is why we request data such as email address and shipping address with Enhanced Authorization. Sending this information with an Authorization request reduces the anonymity criminals rely upon. It also allows us to identify multiple Cards being used to ship goods to a single compromised location.

| | |
|---|---|
| **description** | Charges that contain Enhanced Authorization data provide valuable information for determining the risk of Card Not Present Charges. When these additional data elements are included in Authorization requests, the Issuer can make a more thorough risk assessment, enabling a more informed Authorization decision. |
| **purpose** | Enhanced Authorization helps mitigate fraud before a Charge is Authorized by analyzing key data elements submitted with Authorization requests. While sending all data elements is the most effective use of Enhanced Authorization, any additional data elements can provide a more informed Authorization response. Enabling the review of your Enhanced Authorization data against Cardmembers', Merchants', and industry information improves risk assessment and enables legitimate Charges to be processed with greater efficiency. |
| **how it works** | Merchants may already be capturing Enhanced Authorization data elements and other Card information as part of the ordering process. The Merchant can submit the enhanced data in the Authorization request. Enhanced data elements may include:<br><br>❍ **Internet Data** – IP address, email address, product SKU (Stock Keeping Unit)<br><br>❍ **Phone Data** – Order telephone number<br><br>❍ **Airline Data** – Passenger name, origin airport, destination airport, travel date, routing, class of service, number of passengers, airline carrier codes, email address, IP address<br><br>❍ **Shipping Data** – Ship-to address, postal code, country code, telephone number, first and last name, and shipment method<br><br>Using these data elements to assess Charge risk is widely accepted for Card Not Present Charges. Where this American Express tool can add additional value is in the ability to leverage Cardmember and Merchant information history, combined with large volumes of data that flow on our Network, all of which can then be analyzed and incorporated into the Authorization response. |
| **industry** | Appropriate for all Card Not Present Charges. |
| **implementation** | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

fraud prevention

| 9.11 | verification services | We also offer tools that help verify information provided by your customer for both Card Present Charges and Card Not Present Charges. These verification tools can be used in multiple layers simultaneously to help you mitigate the risk of fraud, but are not a guarantee that (i) the person making the charge is the Cardmember, (ii) the Charge is in fact valid or bona fide, (iii) you will be paid for the Charge, or (iv) you will not be subject to a Chargeback. |
|---|---|---|

These verification services help mitigate the risk of fraud prior to the completion of a purchase by comparing information provided by the customer at the point of sale with information on file with the Issuer. The response from the Issuer only indicates the validity of and/or discrepancies in the information you provided for the customer. Although the Authorization may have been approved, you can decide whether to submit the Charge based on the verification response and your internal policies.

Prepaid Cards do not always require a Cardmember to provide an address to the Issuer. For these Charges you may receive an "Information Unavailable" response. Apply your existing policies for handling online purchases that receive an "Information Unavailable" response.

| 9.11.1 | electronic verification services | See country-specific policies for more information. |
|---|---|---|

| | 9.11.1 | electronic verification services (U.S.) | Electronic verification services offer a cost effective way to help mitigate the risk of fraud at the point of sale. These services allow you to compare information provided by the customer with information about the Cardmember not available on the Card, thereby allowing you to make a more informed decision about the validity of the Charge prior to completion of the purchase. |
|---|---|---|---|

Electronic verification can be used:

- when processing Authorizations in real time and/or when combining Authorizations and submitting all at once,

- to help identify high-risk Charges, and

- with, or in the case of some verification tools, without an Authorization request.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



fraud prevention

**9.11.1.1 Card identification (CID) verification (U.S.)**

The CID Number must not be stored after Authorization even if it has been encrypted. See section 8.3. "standards for protection of Cardmember information" for additional information.

Merchants to utilize the CID Verification tool for In-Person Charges may also qualify for the Keyed No Imprint Program. See section 4.17, "keyed no imprint program (U.S.)".

Training is recommended to minimize incorrect entries of the CID Number. Training materials are available for sales and/or telephone order representatives. To obtain these materials, see our website at: www.americanexpress.com/fraudinfo

| description | The CID Verification tool helps mitigate fraud on keyed and swiped Charges. The CID Number is associated with each individual Card. Merchants request the four-digit CID Number printed on the Card from the customer at the time of purchase and then submit the CID Number with the Authorization request. Verification of the CID Number is one method to authenticate whether an individual making a purchase has possession of the Card. <br><br>  <br><br> The CID is a four-digit, (flat) number that is printed on every American Express Card. The CID Number is usually located above the Card Number on the face of the Card. |
|---|---|
| purpose | Because the CID Number is associated with each individual Card, prompting for the CID Number authenticates the Card. <br><br> ○ Requesting the CID Number for Card Not Present Charges helps to determine that the person placing the order actually has the Card in his or her possession. <br><br> ○ Requesting the CID Number for Card Present Charges helps to determine that the person making the purchase is not using an altered or counterfeit Card. |
| requirement | To utilize this tool, you must: <br><br> ○ capture the CID Number and enable your POS System to be able to receive a CID response code. If you receive an "invalid CID Number" Decline, or a "no match" response code, then re-prompt the person making the purchase to re-enter the correct CID Number. <br><br> ○ add systematic editing and monitoring abilities to prevent unlimited and repetitive (more than two) entries of the CID Number. <br><br> ○ monitor and maintain a high positive match rate. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



fraud prevention

**9.11.1.1  Card identification (CID) verification (U.S.) (continued)**

| how it works | You obtain the four-digit CID Number and send it with the Authorization request. The Issuer compares this CID Number with that on file for the Card and, based on the comparison, returns a response code to your POS System. Check with your Processor, Terminal Provider or, if you have a direct link to American Express, your American Express representative to determine the codes that will be returned to your POS System. Use the code received to assess the level of risk and determine whether to complete the Charge. |
|---|---|
| industry | Appropriate for Card Present and Card Not Present Charges. |
| implementation | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



fraud prevention

### 9.11.1.2  automated address verification (U.S.)

We recommend that you utilize AAV with the Authorization request. In doing so, you will receive a match response, based on the AAV data sent, in addition to the Authorization response.

| | |
|---|---|
| **description** | The Automated Address Verification tool compares the billing name, street address, and zip code provided by the customer with the Cardmember's billing information on file with the Issuer. |
| **purpose** | The Automated Address Verification tool helps you evaluate the validity of a Charge by comparing information provided by the customer at the point of sale with information about the Cardmember not available on the Card. |
| **how it works** | You request information from the customer at the point of sale, including all or any of the following:<br><br>○  name<br><br>○  billing address<br><br>○  zip code<br><br>You supply this information in the Authorization request, through the Merchant's POS System.<br><br>The Issuer compares the information provided by you with the Cardmember's records, and returns a response code.<br><br>You should use the AAV response code from the Issuer to assess the level of risk and determine whether to complete the Charge. Check with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative to determine the codes that will be returned to your POS System. |
| **industry** | Appropriate for all Card Not Present Charges. |
| **implementation** | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



fraud prevention

### 9.11.1.3 telephone number verification (U.S.)

| | |
|---|---|
| **description** | The Telephone Number Verification tool compares the telephone number information provided by the customer with that on file with the Issuer. |
| **purpose** | The Telephone Number Verification tool helps you evaluate the validity of a Charge by comparing information provided by the customer at the point of sale with information about the Cardmember not available on the Card. |
| **how it works** | You request telephone number information from the customer at the point of sale. |
| | You supply this information in the Authorization request, through your POS System. |
| | The Issuer compares the information provided by you with the Cardmember's records, and returns a response code. |
| | You should use the response code from the Issuer to assess the level of risk and determine whether to complete the Charge. |
| | Check with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative to determine the codes that will be returned to your POS System. |
| **industry** | Appropriate for all Card Not Present Charges. |
| **implementation** | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





Merchant Regulations - U.S.



fraud prevention

**9.11.1.4 email address verification (U.S.)**

| | |
|---|---|
| **description** | The Email Address Verification tool compares email information provided by the customer with that on file with the Issuer. |
| **purpose** | The Email Address Verification tool helps you evaluate the validity of a Charge by comparing information provided by the customer at the point of sale with information about the Cardmember not available on the Card. |
| **how it works** | You request email information from the customer at the point of sale.<br><br>You supply this information in the Authorization request, through your POS System.<br><br>The Issuer compares the information provided by you with the Cardmember's records, and returns a response code.<br><br>You should use the response code from the Issuer to assess the level of risk and determine whether to complete the Charge.<br><br>Check with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative to determine the codes that will be returned to your POS System. |
| **industry** | Appropriate for all Card Not Present Charges. |
| **implementation** | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

fraud prevention

9.11.1.5  zip code verification
(U.S.)

| description | The Zip Code Verification tool compares the billing zip code provided by the customer with the Cardmember's billing zip code on file with the Issuer. |
|---|---|
| purpose | The Zip Code Verification tool helps you evaluate the validity of a Charge by comparing information provided by the customer at the point of sale with information about the Cardmember not available on the Card. |
| how it works | The customer is prompted to enter his or her billing zip code at the point of sale.<br><br>You supply this information in the Authorization request, through the your POS System.<br><br>The Issuer compares the billing zip code entered with that on file for the Cardmember and, based on the comparison, returns a response code to you.<br><br>You should incorporate the response from the Issuer into their risk assessment process and determine whether to complete the Charge.<br><br>Check with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative to determine the codes that will be returned to your POS System. |
| industry | Appropriate for all Card Not Present and Card Present Charges; optimal when your customers swipe their Card through your POS System. |
| implementation | To implement this tool, work with your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





fraud prevention

| 9.11.2 | additional services | See country-specific policies for more information. |
|---|---|---|

| 9.11.2 | additional services (U.S.) | In addition to our electronic verification services, we also offer verification services that can be utilized by telephone. These services allow you to compare information provided by the customer with information about the Cardmember not available on the Card, thereby allowing you to make a more informed decision about the validity of the Charge prior to completion of the purchase. |
|---|---|---|

**9.11.2.1 name and address verification (NAV) (U.S.)**

| description | The Name and Address Verification (NAV) tool helps you validate the billing name, street address, zip code and telephone number provided by the customer with that on file with the Issuer. The validation takes place when you call the American Express Authorization Department. |
|---|---|
| purpose | The NAV tool helps you evaluate the validity of a Charge by comparing information provided by the customer at the point of sale with information about the Cardmember not available on the Card. |
| how it works | You request information from the customer at the point of sale, including all or any of the following: <br>○ name <br>○ billing address <br>○ zip code <br>○ telephone number <br>You supply this information to American Express by calling the American Express Authorization Department and following the prompts on the automated system. You will be advised whether or not the information provided by the customer matches the Cardmember Information on file with the Issuer. You should use the responses to help assess the level of risk and determine whether to proceed with the Charge. |
| industry | Appropriate for all Card Not Present Charges. |
| implementation | To use this tool, call the American Express Authorization Department and request a name and address verification. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



fraud prevention

**9.11.2.2  charge verification program (U.S.)**

| | |
|---|---|
| **description** | When you accept orders over the telephone, internet, or through mail order, you can call the American Express Charge Verification Group for additional verification when an order more than $200 with an Approval appears to be risky. |
| **purpose** | The Charge Verification Program offer you additional validation on orders you feel are risky, helping you make decisions on whether or not to fulfill orders that they perceive as potentially fraudulent. |
| **how it works** | Following an Authorization Approval, if you suspect a high fraud risk on an order and the Charge is greater than $200, you call for Charge Verification. |
| | We will ask you for information about the Charge. Based on that information we will request the Issuer to contact the Cardmember within three (3) calendar days to verify the Charge. |
| | We will notify you of the Cardmember's response received from the Issuer. If you provide your email address when opening a Charge Verification case, we can notify you of the case outcome via email instead of telephone. |
| | If the Issuer is unable to contact the Cardmember (within the three calendar day time frame), you will need to determine whether or not to fulfill the order. |
| **industry** | Appropriate for all Card Not Present Charges. |
| **implementation** | To use this tool, simply contact the American Express Charge Verification Group. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



fraud prevention

this page intentionally left blank

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.

# Merchant Regulations - U.S.

10

## contents

10.1     introduction

10.2     prohibited merchants

10.3     monitoring

risk evaluation



risk evaluation

| | | |
|---|---|---|
| **10.1** | **introduction** | As a Merchant, you understand the hard work and dedication it takes to keep a business running. At American Express, we also work hard to maintain our business and uphold our reputation as a world-class global payments and network company. Part of our regimen is to evaluate Merchants to ensure compliance with our policies and procedures, in addition to assessing any potential risk to our business. |
| **10.2** | **prohibited merchants** | Some Merchants are not eligible (or may become ineligible) to accept the Card. We may terminate the Agreement (including immediate termination without prior notice to you) if we determine or have reason to believe, in our sole discretion, that you meet any of the following criteria: |

- ❍ Your participation as a Merchant on our Network or acceptance of Cards (or both) may cause us not to be in compliance with Applicable Laws, regulations, or rules.

- ❍ You do not have a verifiable physical address and can only be reached by telephone.

- ❍ You are involved (or knowingly participate or have participated) in a fraudulent or illegal activity.

- ❍ You are identified as a sponsor of international terrorism as warranting special measures due to money laundering concerns, or as noncooperative with international anti-money laundering principles or procedures.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



risk evaluation

| 10.2 | **prohibited merchants (U.S.)** |

Additionally, we may terminate the Agreement if:

❍ You are listed on the U.S. Department of Treasury, Office of Foreign Assets Control, Specially Designated Nationals and Blocked Persons List (available at [www.treas.gov/ofac](www.treas.gov/ofac)).

❍ You are listed on the U.S. Department of State's Terrorist Exclusion List (available at [www.state.gov](www.state.gov)).

❍ You are located in or operating under license issued by a jurisdiction identified by the U.S. Department of State as a sponsor of international terrorism, by the U.S. Secretary of the Treasury as warranting special measures due to money laundering concerns, or as noncooperative with international anti-money laundering principles or procedures by an intergovernmental group or organization of which the United States is a member.

❍ Your verifiable physical address is not located in the United States, Puerto Rico, U.S. Virgin Islands, or other U.S. territories or possessions.

❍ You fall into one of the following categories and/or accept Transactions for the prohibited activities displayed in the following table:

| business types | description |
|---|---|
| Adult entertainment | Internet adult digital content sites. |
| Check cashing/ guarantee and Bureau de Change Merchants | Cardmember cashes a check using the Card as a check guarantee. |
| child pornography | Any written or visual depiction of a minor engaged in obscene or sexually explicit conduct. |
| Debt collection | Collection agencies, payday lenders, factoring companies, liquidators, bailiffs, bail bondsmen, credit restoration services and bankruptcy lawyers. *Exceptions: outside agency collection fees and bail bondsmen fees (i.e., you must not accept our Cards to pay for a bail bond but you may accept the Card to pay the fee to the bail bondsman. You must not accept our Cards to pay the amount of a Cardmember's collection debt, but you may accept the Card to pay the fee to the collection agency).* |
| Door-to-door sales | Unsolicited vendors where payment is rendered on the spot. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





risk evaluation

**10.2    prohibited merchants (U.S.) (continued)**

| business types | description |
|---|---|
| Escort services and massage parlors | Payment of potentially sexually related services.<br>*Exceptions: licensed massage therapists.* |
| Financial services | Banks, credit unions, savings and loan associations, equities (defined as an instrument that signifies an ownership position, or equity, in a corporation, and represents a claim on its proportionate share in the corporation's assets and profits, e.g., stocks, bonds, and securities), unit trusts, mutual funds, foreign exchange, Bureau de Change, and payday lenders.<br>*Exceptions: taxation, brokerage fees, leasing Merchants, mortgage payments, condo down payments and financial advisor fees.* |
| Future services | Merchants that provide investment on future maturity goods/services (greater than four (4) months for delivery) with an intention of gaining return on investment (e.g., wines/spirits or timber investment).<br>*Exceptions: travel related services, membership services (e.g., magazine subscriptions), ticket sales to future events or real estate deposits.* |
| Gambling | Casino chips, bookmaker, federal, state and local lotteries, bingo, internet gambling and casino sites.<br>*Exceptions: lodging, restaurant, bar or gift shop facilities within a casino complex.* |
| Marijuana dispensaries | Sellers of marijuana, whether sold for recreational or medicinal purposes. |
| Multi-level pyramid sales | Multi-level marketing system using one or more of the following practices:<br>❑ Participants pay for the right to receive compensation for recruiting new participants<br>❑ Participants are required to buy a specific quantity of products, other than at cost, for the purpose of advertising before participants are allowed to join the plan or advance within the plan<br>❑ Participants are sold unreasonable quantities of the product or products (also known as inventory loading)<br>❑ Participants are not allowed to return products on reasonable commercial terms |
| Prostitution | Payment for sexual services. |
| Timeshares | Selling partial ownership of a property for use as a holiday home, whereby a Cardmember can buy the rights to use the property for the same fixed period annually.<br>*Exceptions: Merchants who qualify to accept the Card under the provisions listed in* <u>section 12.11, "timeshares (U.S.)"</u> |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

risk evaluation

**10.2    prohibited merchants (U.S.) (continued)**

*Mixed Business*

If any segment of your Charge volume is submitted from the aforementioned business types, you must not accept the Card for those Transactions. If you accept our Card for these Transactions, we will exercise Chargeback. We may also place you in one of our Chargeback programs or we may terminate the Agreement (or both).

**10.3    monitoring**

After you become a Merchant on the Network, we monitor to identify potential risks, assess your financial status and compliance with the Agreement.

We use internal and third-party information when monitoring and look for, among other things:

- disproportionate Disputed Charges and Chargebacks,
- Merchants that meet our High Risk Merchant criteria,
- schemes to defraud American Express,
- legal, compliance, or other credit and fraud risks, or
- data submitted in compliance with the Technical Specifications.

We will monitor you for actions or behaviors (or both) which may put us, Issuers or Cardmembers at risk. Based on the results of our monitoring, we reserve the right to take action to mitigate our risk, including one or more of the following (in our sole judgment):

- requesting information about your finances and operations,
- instituting Card acceptance restrictions,
- exercising Chargeback, rejecting Charges or withholding Settlements,
- charging fees or assessments to your Merchant Account,
- requesting corrective action by you,
- terminating any Establishment's Card acceptance privileges or suspending those privileges until the risk has subsided, or
- terminating the Agreement and your Merchant Account.



Merchant Regulations - U.S.

risk evaluation

| 10.3.1 | high risk merchants |

High Risk Merchants are those types of businesses that we determine put us at risk and/or whose business has excessive occurrences of fraud.

If we determine, in our sole discretion, that you meet the criteria for one or more of the High Risk Merchant categories, we may place you in a Chargeback program and/or terminate the Agreement. For more information on our Chargeback programs, see section 11.14, "chargeback programs (U.S.)".

We consider you to be "high risk" if you meet at least one criteria in the following table:*

| category | description |
|----------|-------------|
| high risk industry | A Merchant whose type of business has had historically high occurrences of fraud and Disputed Charges with us or as compared to other similarly situated Merchants (or both). Examples of high risk industries include: internet electronic services, nightclubs/lounges, CATs. |
| performance | A Merchant whose recent high occurrences of fraud present an excessive risk to us. These Merchants have high occurrences of fraud and/or high fraud amounts for a number of consecutive months. |
| cancelled derogatory | A Merchant whose Agreement was cancelled due to unsatisfactory activity. |
| fictitious | A Merchant that accepts Cards fraudulently. |
| prohibited | A Merchant is not eligible to accept our Card on our Network. For the prohibited criteria see section 10.2, "prohibited merchants". |

*This list is not exhaustive and we may, at our sole discretion, consider other criteria as high risk.

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.

risk evaluation

**10.3.2** **fraudulent, deceptive, or unfair business practices, illegal activities, or prohibited uses of the Card**

If we determine or have reason to believe, in our sole discretion, that you engage or have engaged (or knowingly participate or knowingly have participated) in any of the activities listed in the following table; in any scheme that defrauds American Express, Issuers, and/or our Cardmembers; or in business practices that we deem fraudulent, deceptive and/or unfair, we may take corrective action on your Merchant Account, which may include but is not limited to:

- placement in our Chargeback programs (see section 11.14, "chargeback programs (U.S.)"),

- exercising Chargeback, rejecting Charges or withholding Settlements, or

- termination of the Agreement (including immediate termination without prior notice to you).

| factoring | Factoring occurs when Transactions do not represent bona fide sales of goods or services at your Establishments (e.g., purchases at your Establishments by your owners (or their family members) or employees contrived for cash flow purposes). |
|---|---|
| collusion | Collusion refers to activities whereby your employee collaborates with another party to conduct fraudulent Transactions. It is your responsibility to set appropriate controls to mitigate such activity as well as to have monitoring systems to identify such activity. |
| marketing fraud | Marketing fraud occurs when mail, telephone, or Internet Order solicitations are used for fraudulent or deceptive purposes (e.g., to obtain valid Cardmember Information for fraudulent Transactions, or to charge unauthorized sales to a valid Card account). |
| identity theft | Identity theft is the assumption of another person's identity to gain access to their finances through fraudulent Merchant setup or fraudulent Transactions. |
| illegal activities, fraudulent (other than marketing), unfair or deceptive business practices, or prohibited uses of the Card | If we determine, or have reason to believe, in our sole discretion, that you engage or have engaged (or knowingly participate or knowingly have participated) in fraudulent, deceptive, or unfair business practices, or accepted the Card to facilitate, directly or indirectly, illegal activity of any kind, and without waiving our other rights and remedies, we have the right to terminate the Agreement. If we find that the Transaction involved a prohibited use of the Card (see section 3.3, "prohibited uses of the Card"), we may apply the corrective actions listed above. |

This list is not exhaustive and does not reflect all circumstances under which we may act to protect our interests.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



risk evaluation

| 10.3.2 | **fraudulent, deceptive, or unfair business practices, illegal activities, or prohibited uses of the Card (U.S.)** | We may assess fees to your Merchant Account (see <u>subsection 14.2.5, "data pass violation fee (U.S.)"</u>) if we determine or have reason to believe, in our sole discretion, that you engage or have engaged (or knowingly participate or knowingly have participated) in any of the activities listed in the table in <u>subsection 10.3.2, "fraudulent, deceptive, or unfair business practices, illegal activities, or prohibited uses of the Card"</u> in any scheme that defrauds American Express, Issuers, and/or our Cardmembers; or in business practices that we deem fraudulent, deceptive and/or unfair. |

| 10.3.2.1 | **consumer protection monitoring program (U.S).** | American Express monitors the Network for fraudulent, deceptive, and unfair practices relating to the sale, advertising, promotion, or distribution of goods or services to consumers. If we determine or have reason to believe, in our sole discretion, that you engage or have engaged (or knowingly participate or knowingly have participated) in such fraudulent, deceptive, or unfair practices, we may place you in our Consumer Protection Monitoring Program. Examples of instances that might trigger our review of a particular Merchant or Establishment include, but are not limited to, frequent consumer complaints, regulatory or consumer advocate (e.g., Better Business Bureau) inquiries, media coverage of a particular Merchant and/or industry, and high levels of Disputed Charges and/or Chargebacks. |

If you are placed in the Consumer Protection Monitoring Program, we will send you a questionnaire regarding your business practices, and conduct an investigation.

We may suspend or refuse to allow Card acceptance at an Establishment, or terminate the Agreement, if:

- ❍ you do not respond to our questionnaire, by the date we designate, with sufficient information about your business practices, and/or

- ❍ we conclude, in our sole discretion, that you or the Establishment in question engage or have engaged (or knowingly participate or knowingly have participated) in fraudulent, deceptive, or unfair practices relating to the sale, advertising, promotion, or distribution of goods or services to consumers.

If, in the course of our investigation, it does not appear that you engage or have engaged (or knowingly participate or knowingly have participated) in such fraudulent, deceptive, or unfair practices, we still may conduct an annual investigation of your business practices.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

**11**

**chargebacks and inquiries**

## contents

11.1  introduction

11.2  transaction cycle

11.3  disputed charge process

11.4  chargeback reasons

11.5  requesting a chargeback reversal

11.6  resubmission of disputed charge

11.7  inquiry

11.8  inquiry reasons

11.9  substitute charge records

11.10  deadline for responding

11.11  Cardmember re-disputes

11.12  chargeback and inquiry monitoring

11.13  how we chargeback

11.14  chargeback programs

11.15  tips for avoiding chargebacks and inquiries

11.16  ways to receive chargebacks and inquiries

11.17  response methods





chargebacks and inquiries

| | | |
|---|---|---|
| **11.1** | **introduction** | This chapter describes how American Express processes Chargebacks and Inquiries. Highlights of this chapter include: |

- ❑ a discussion of the American Express Disputed Charge process,
- ❑ a review of Chargeback and Inquiry reasons,
- ❑ an overview of the American Express Chargeback policies, and
- ❑ tips for avoiding Chargebacks and Inquiries, and preventing fraud.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

chargebacks and inquiries

| 11.2 | transaction cycle | Charges may be disputed for a variety of reasons. In general, most Disputed Charges stem from: |

- Cardmember dissatisfaction with some aspect of the purchase, (e.g., a failure to receive the merchandise, duplicate billing of a Charge, incorrect billing amount),

- an unrecognized Charge where the Cardmember requests additional information, or

- actual or alleged fraudulent Transactions.

If a Cardmember disputes a Charge, American Express opens a case. We may also open cases when Issuers or the Network initiates disputes. If a case is opened, we may initiate a Chargeback to you immediately or send you an Inquiry.

You must not suggest or require Cardmembers to waive their right to dispute any Transaction.



*This graphic is for illustration purposes only and is not to be construed as limiting or waiving American Express' rights with respect to Cardmember Information or other information.

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



chargebacks and inquiries

| 11.3 | disputed charge process | With respect to a Disputed Charge: |

- we may send you an Inquiry prior to exercising Chargeback, or
- we have Chargeback rights, prior to sending you an Inquiry, if we determine that we have sufficient information to resolve the Disputed Charge in favor of the Cardmember.

| When case is opened | | Results |
|---|---|---|
| Sufficient information to support Chargeback? | Yes | Chargeback |
| Sufficient information to support Chargeback? | No | Inquiry |

We have Chargeback rights:

- whenever Cardmembers bring Disputed Charges, as described in this chapter, or have rights under Applicable Law or contract to withhold payments,
- in cases of actual or alleged fraud relating to Charges,
- if you do not comply with the Agreement (including omitting any Transaction Data from Charge Submissions), even if we had notice when we paid you for a Charge that you did not so comply and even if you obtained Authorization for the Charge in question, or
- as provided elsewhere in the Agreement.

All judgments regarding resolution of Disputed Charges are at our sole discretion.

| 11.4 | chargeback reasons | When we process a Chargeback to you, we will provide information about the Chargeback. |

For each Chargeback reason, the following tables include:

- Description - brief description of the Chargeback reason,
- Information provided with Chargeback - type of information provided by the Cardmember or Issuer (or both) to support the Chargeback (documentation may not be provided with the Chargeback if it was preceded by an Inquiry),
- Inquiry required prior to Chargeback - indicates if an Inquiry must be sent prior to Chargeback,
- Support required to request a Chargeback Reversal - examples of required documentation if you request a Chargeback Reversal.

The tables in the following subsections list the Chargeback reasons and information related to each Chargeback reason.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

chargebacks and inquiries

## 11.4.1    authorization

| charge amount exceeds authorization amount (A01) | |
|---|---|
| Description | The amount of the Authorization Approval was less than the amount of the Charge you submitted.<br>Certain exceptions apply, see section 12.9, "restaurants (U.S.)" and section 12.12, "travel industries". |
| Information provided with the Chargeback | ○  Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  Proof that a valid Authorization Approval was obtained for the full amount of the Charge in accordance with the Agreement unless exceptions apply, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| no valid authorization (A02) | |
|---|---|
| Description | The Charge you submitted did not receive a valid Authorization Approval; it was declined or the Card was expired. |
| Information provided with the Chargeback | ○  Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  Proof that a valid Authorization Approval was obtained in accordance with the Agreement, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed<br>For "expired or not yet valid Card", the following support is also acceptable:<br>○  Proof that the Charge was incurred prior to the Card Expiration Date or within the Valid Dates on the Card |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

**11.4.1    authorization (continued)**

| authorization approval expired (A08) | |
|---|---|
| Description | The Charge was submitted after the Authorization Approval expired. See section 5.10, "authorization time limit". |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that a valid Authorization Approval was obtained in accordance with the Agreement, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

chargebacks and inquiries

**11.4.2    Cardmember dispute**

| credit not processed (C02) | |
|---|---|
| Description | We have not received the Credit (or partial Credit) you were to apply to the Card. |
| Information provided with the Chargeback | ○  Charge Data, and<br>○  Copy of the Credit Record or details showing that you were to provide Credit to the Cardmember |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  If no Credit (or only partial Credit) is due, a written explanation of why credit is not due with appropriate documents to support your position, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| goods/services returned or refused (C04) | |
|---|---|
| Description | The goods or services were returned or refused but the Cardmember did not receive Credit. |
| Information provided with the Chargeback | ○  Charge Data, and<br>○  If returned: Details of the return (e.g., returned date, shipping documentation, etc.), or<br>○  If refused: Date of the refusal and the method of refusal |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  Written explanation refuting the Cardmember's claim that goods were returned to your business, or<br>○  If returned: A copy of your return policy, an explanation of your procedures for disclosing it to the Cardmember, and details explaining how the Cardmember did not follow the return policy, or<br>○  A copy of the Charge Record indicating the terms and conditions of the purchase with details explaining how the Cardmember did not follow the policy, or<br>○  If goods/services refused: Proof that the goods/services were accepted (e.g., signed delivery slip if the goods were delivered, screen print showing use of the service if service was provided via internet), or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



chargebacks and inquiries

**11.4.2    Cardmember dispute (continued)**

| goods/services cancelled (C05) | |
|---|---|
| Description | The Cardmember claims that the goods/services ordered were cancelled. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Cancellation details (e.g., cancellation number, cancellation date, email notification, written documentation requesting cancellation, acknowledgment that cancellation request was received) |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ A copy of your cancellation policy, an explanation of your procedures for disclosing it to the Cardmember, and details explaining how the Cardmember did not follow the cancellation policy, or<br>○ A copy of the Charge Record indicating the terms and conditions of the purchase and details explaining how the Cardmember did not follow the policy, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| goods/services not received or only partially received (C08) | |
|---|---|
| Description | The Cardmember claims to have not received (or only partially received) the goods/services. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Written description of the goods/services the Cardmember purchased, or<br>○ Documentation showing return, or attempt to return, the partially received goods (e.g., pick-up/delivery confirmation) |
| Inquiry required prior to Chargeback | No |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

11.4.2    Cardmember dispute
(continued)

| goods/services not received or only partially received (C08) |
|---|
| **Support required to request a Chargeback Reversal** | <ul><li>Proof of Delivery including delivery date and full shipping address, or</li><li>Proof that the services were provided and the dates the services were provided, or</li><li>Signed completion of work order showing the Cardmember received the services and dates that the services were used/provided, or</li><li>Proof that a Credit which directly offsets the Disputed Charge has already been processed, or</li><li>Evidence to prove that there is a direct connection between the person who received the goods and services and the Cardmember (e.g., photographs, emails),</li></ul> For Airline Transactions, one (1) of the following must be provided: <ul><li>Evidence that the Cardmember or designated passenger participated in the flight (e.g., scanned boarding pass or passenger manifest), or</li><li>Credits of frequent flyer miles for the flight in question, showing a direct connection to the Cardmember, or</li><li>Proof flight in question was available during airline bankruptcy proceedings, or</li><li>Additional Transactions related to the original Transaction, such as seat upgrades, baggage payment, or purchases made on board the aircraft.</li></ul> For Internet Transactions representing the sale of Internet Electronic Delivery Charge, one (1) of the following must be provided: <ul><li>Proof that the Cardmember's IP address at the time of purchase matches the IP address where the digital goods were downloaded, or</li><li>Proof the Cardmember's email address provided at the time of purchase matches the email address used to deliver the digital goods, or</li><li>Proof that the Merchant's website was accessed by the Cardmember for services after the Transaction Date, or</li></ul> **Note:** In addition to the above, one (1) of the following may also be provided: <ul><li>Description of the digital goods, or</li><li>Date and time the digital goods were downloaded.</li></ul> For Card Not Present Transactions where the goods are picked up at the Merchant's location: <ul><li>The Merchant must provide the Cardmember signature on the pick-up form as well as additional proof to demonstrate that the identity of the Cardmember was verified at the time of pick-up.</li></ul> |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



chargebacks and inquiries

**11.4.2    Cardmember dispute (continued)**

| paid by other means (C14) | |
|---|---|
| Description | The Cardmember has provided us with proof of payment by another method. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Documentation or written explanation describing how the Cardmember paid with another form of payment |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Documentation showing that the Cardmember's other form of payment was not related to the Disputed Charge, or<br>○ Proof that the Cardmember provided consent to use the Card as a valid form of payment for the Disputed Charge, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| "no show" or CARDeposit cancelled (C18) | |
|---|---|
| Description | The Cardmember claims to have cancelled a lodging reservation or a Credit for a CARDeposit Charge was not received by the Cardmember. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Cancellation details (e.g., cancellation number, cancellation date, email notification, written documentation requesting cancellation, acknowledgement that cancellation request was received) |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Documentation that supports the validity of the "no show" reservation or CARDeposit Charge, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

chargebacks and inquiries

**11.4.2   Cardmember dispute (continued)**

| cancelled recurring billing (C28) | |
|---|---|
| Description | Cardmember claims to have cancelled or attempted to cancel Recurring Billing Charges for goods or services. Please discontinue all future billing for this Recurring Billing Charge. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Cancellation or attempted cancellation details (e.g., cancellation number, cancellation date, email notification, written documentation requesting cancellation, acknowledgement that cancellation request was received) |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ A copy of your cancellation policy, an explanation of your procedures for disclosing it to the Cardmember, and details explaining how the Cardmember did not follow the cancellation policy, or<br>○ Proof that the Cardmember has not cancelled and continues to use the service or receive the goods, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



chargebacks and inquiries

**11.4.2    Cardmember dispute (continued)**

| goods/services not as described (C31) | |
|---|---|
| Description | The Cardmember claims to have received goods/services that are different than the written description provided at the time of the Charge. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ A description of the Cardmember's claim that the goods/services received differ from your written description provided at the time of Charge, and<br>○ In the case of goods: written description of the Cardmember's attempt to return the goods |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof refuting the Cardmember's claim that the written description differs from the goods/services received, or<br>○ Proof that the Cardmember agreed to accept the goods/services as provided, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed, or<br>○ Proof that goods and services matched what was described at time of purchase (e.g., photographs, e-mails)<br>For goods or services purchased by the Cardmember that were received in a damaged or defective state, the Merchant must provide one (1) or more of the following items:<br>i. Show that an attempt was made by the Merchant to repair or replace damaged or defective goods or to provide replacement services.<br>ii. If returned, state how the Cardmember did not comply with the Merchant's clearly documented cancellation, return policy or applicable law and regulations.<br>iii. Show that the Cardmember agreed to accept the goods or services "as is." |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

**11.4.2    Cardmember dispute (continued)**

| goods/services damaged or defective (C32) | |
|---|---|
| Description | The Cardmember claims to have received damaged or defective goods/services. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Description of the damage or defective goods/services, date of receipt of the goods/services, extent of the damage to the goods or how the service was defective, and<br>○ Details of how you were notified or how the Cardmember attempted to notify you of the issue, and<br>○ If returned: Details of how the Cardmember returned, or attempted to return, the goods to you |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof refuting the Cardmember's claim that the goods/services were damaged or defective (provided that, in the case of goods, they were not returned to you), or<br>○ Proof that an attempt was made to repair or replace damaged or defective goods or to provide replacement services, or<br>○ Proof that the Cardmember did not comply with your clearly documented cancellation and return policies or Applicable Law (provided that, in the case of goods, they were returned to you), or<br>○ Proof that the Cardmember agreed to accept the goods as delivered, or<br>○ Proof that the goods/services were not returned to you, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

chargebacks and inquiries

11.4.2    Cardmember dispute
(continued)

| vehicle rental - capital damages (M10) | |
|---|---|
| Description | The Cardmember claims to have been incorrectly billed for Capital Damages. See section 12.12.3.2, "capital damages (U.S.)". |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Copy of the Cardmember acknowledgement of responsibility for Capital Damages, signed by the Cardmember showing the agreed-upon amount (the Charge amount submitted must not exceed 110% of the agreed-upon amount), or<br>○ Cardmember's statement that they did not sign a separate acknowledgement of responsibility for the Capital Damages |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that the Cardmember agreed to and signed an acknowledgement of responsibility for Capital Damages and that the Charge did not exceed 110% of the agreed-upon amount, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| vehicle rental - theft or loss of use (M49) | |
|---|---|
| Description | The Cardmember claims to have been incorrectly Charged for theft, loss of use, or other fees related to theft or loss of use of a rental vehicle. |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that the Charge was valid and not for theft, loss of use, or other fees related to theft or loss of use of the rental vehicle, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

**11.4.3    fraud**

| missing imprint (F10) | |
|---|---|
| Description | The Cardmember claims they did not participate in this Charge and you have not provided a copy of an imprint of the Card.<br>**Note:** Not applicable to Card Not Present Charges, Digital Wallet Payments, or Charges that qualify under the Keyed No Imprint Program. See section 4.17, "keyed no imprint program". |
| Information provided with the Chargeback | ○  Charge Data |
| Inquiry required prior to Chargeback | Yes |
| Support required to request a Chargeback Reversal | ○  Proof that the Charge qualifies under the Keyed No Imprint Program. See section 4.17, "keyed no imprint program", or<br>○  Proof that this was a Card Not Present Charge, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| missing signature (F14) | |
|---|---|
| Description | The Cardmember claims they did not participate in this Charge and you have not provided a copy of the Cardmember's signature to support the Charge.<br>**Note:** Not applicable to Card Not Present Charges, Digital Wallet Application-initiated Transactions, and Digital Wallet Contactless-initiated Transactions, Charges at CATs or Charges that qualify under the No Signature/No PIN Program. See section 4.18, "no signature/no pin program". |
| Information provided with the Chargeback | ○  Charge Data |
| Inquiry required prior to Chargeback | Yes |
| Support required to request a Chargeback Reversal | ○  Proof that this was a Card Not Present Charge, or<br>○  Proof that the Charge qualifies under the No Signature/No PIN Program, or<br>○  Proof that the Charge was completed at a CAT, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

A Digital Wallet Magnetic Secure Transmission Transaction is subject to the missing signature (F14) Chargeback. For these Transactions, a signature above the current No Signature/No PIN Program thresholds is required.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



chargebacks and inquiries

**11.4.3   fraud (continued)**

| no cardmember authorization (F24) | |
|---|---|
| Description | The Cardmember denies participation in the Charge you submitted and you have failed to provide proof that the Cardmember participated in the Charge. |
| Information provided with the Chargeback | ○  Charge Data |
| Inquiry required prior to Chargeback | Yes |
| Support required to request a Chargeback Reversal | ○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

**11.4.3   fraud (continued)**

Correction to text effective
October 30, 2015

| card not present (F29) | |
|---|---|
| Description | The Cardmember denies participation in a mail order, telephone order, or internet Charge. ~~Not applicable to Digital Wallet Application-initiated Transactions.~~ |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that the Cardmember participated in the Charge (e.g., billing authorization, usage details, proof of delivery to the Cardmember's billing address, contract), or<br><br>○ Proof that you attempted to validate the CID and you did not receive a response or you received an "unchecked" response, or<br><br>○ Proof that you validated the address via Authorization and shipped goods to the validated address, or<br><br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed, or<br><br>○ Proof that the Transaction contains a shipping address that matches a previously used shipping address from an undisputed Transaction<br><br>For Airline Transactions, one (1) of the following must be provided:<br><br>○ Evidence the Cardmember participated in the flight (e.g., scanned boarding pass or passenger manifest), or<br><br>○ Credits of frequent flyer miles for the flight in question, showing a direct connection to the Cardmember, or<br><br>○ Proof of receipt of the flight ticket at the Cardmember's billing address, or<br><br>○ Proof that the Transaction contains the designated passenger name that matches a previously used passenger name from an undisputed Transaction |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



chargebacks and inquiries

**11.4.3    fraud (continued)**

| EMV counterfeit (F30) | |
|---|---|
| Description | The Cardmember denies participation in the Charge and a counterfeit Chip Card was used at a POS System where the Transaction was not processed as a Chip Transaction because either the POS System was not an Enabled Chip and PIN POS System or the Transaction was manually keyed.<br>**Note:** Not applicable to contactless Transactions and Digital Wallet Payments. |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that this was a Card Not Present Charge,<br>○ Proof that the POS System processed a Chip Card Transaction, or<br>○ Proof that a Credit, which directly offsets the Disputed Charge, has already been processed |

| EMV Lost / Stolen / Non Received (F31) | |
|---|---|
| Description | The Cardmember denies participation in the Charge and Chip Card with PIN capabilities was lost/stolen/non-received and was used at a POS System where the Transaction was not processed as a Chip Card Transaction with PIN validation because either the POS System is not an Enabled Chip and PIN POS System, or, the Transaction was manually keyed.<br>**Note:** Not applicable to contactless Transactions and Digital Wallet Payments, and Charges that qualify under the No Signature/No PIN Program. (See section 4.18, "no signature/no pin program"). |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that this was a Card Not Present Charge,<br>○ Proof that the POS System processed a Chip Card Transaction with PIN validated, or<br>○ Proof that a Credit, which directly offsets the Disputed Charge, has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

**11.4.4   inquiry/ miscellaneous**

| insufficient reply (R03) | |
|---|---|
| Description | Complete support and/or documentation were not provided as requested. |
| Information provided with the Chargeback | ❍ Charge Data |
| Inquiry required prior to Chargeback | Yes |
| Support required to request a Chargeback Reversal | ❍ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| no reply (R13) | |
|---|---|
| Description | We did not receive your response to our Inquiry within the specified time frame. See section 11.10, "deadline for responding". |
| Information provided with the Chargeback | ❍ Charge Data |
| Inquiry required prior to Chargeback | Yes |
| Support required to request a Chargeback Reversal | ❍ Proof you responded to the original Inquiry within the specified time frame, or<br>❍ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



## chargebacks and inquiries

**11.4.4** **inquiry/ miscellaneous (continued)**

| chargeback authorization (M01) | |
|---|---|
| Description | We have received your authorization to process Chargeback for the Charge. |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | Yes |
| Support required to request a Chargeback Reversal | ○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

### 11.4.5    processing error

| unassigned card number (P01) | |
|---|---|
| Description | You have submitted a Charge using an invalid or otherwise incorrect Card Number.<br>**Note:** You may resubmit the Charge to us if you are able to verify and provide the correct Card Number. |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Copy of the imprint that confirms Card Number, or<br>○ Proof that you obtained an Authorization Approval for such Card Number, or<br>○ Copy of the Charge Record from the terminal that electronically read the Card Number, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| credit processed as charge (P03) | |
|---|---|
| Description | The Cardmember claims the Charge you submitted should have been submitted as a Credit. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Copy of the Credit Record or details showing you agreed to provide Credit to the Cardmember |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that the Charge was submitted correctly, or<br>○ Proof that a Credit which directly offsets the Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

chargebacks and inquiries

**11.4.5    processing error (continued)**

| charge processed as credit (P04) | |
|---|---|
| Description | The Cardmember claims the Credit you submitted should have been submitted as a Charge. |
| Information provided with the Chargeback | ○  Credit Data, and<br>○  Copy of the Charge Record or details of the Charge |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  Proof that the Credit was submitted correctly, or<br>○  Proof that a Charge that directly offsets the Credit has already been processed |

| incorrect charge amount (P05) | |
|---|---|
| Description | The Charge amount you submitted differs from the amount the Cardmember agreed to pay. |
| Information provided with the Chargeback | ○  Charge Data, and<br>○  Copy of the Charge Record and details describing the discrepancy |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  Proof that the Cardmember agreed to the amount submitted, or<br>○  Proof that the Cardmember was advised of and agreed to pay for any additional or delayed Charges using the Card the Charge was submitted to, or<br>○  Itemized contract/documentation substantiating the Charge amount submitted, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

**11.4.5   processing error (continued)**

| late submission (P07) | |
|---|---|
| Description | The Charge was not submitted within the required time frame. See section 6.5, "submission requirements - electronic". |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof the Charge was submitted within the required time frame, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| duplicate charge (P08) | |
|---|---|
| Description | The individual Charge was submitted more than once. |
| Information provided with the Chargeback | ○ Charge Data for each Charge |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Documentation showing that each Charge is valid, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



chargebacks and inquiries

**11.4.5    processing error (continued)**

| non-matching card number (P22) | |
|---|---|
| Description | The Card Number in the Submission does not match the Card Number in the original Charge. |
| Information provided with the Chargeback | ○ Charge Data, and<br>○ Supporting documentation showing the Card Number on the Charge Record is different than on the Submission |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Copy of the Card imprint confirming the Card Number, or<br>○ Copy of the Charge Record from the terminal that electronically read the Card Number, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| currency discrepancy (P23) | |
|---|---|
| Description | The Charge was incurred in an invalid currency. See <u>section 6.5, "submission requirements - electronic (U.S.)"</u>. |
| Information provided with the Chargeback | ○ Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

**11.4.6    chargeback programs**

| fraud full recourse program (FR2) | |
|---|---|
| Description | The Cardmember denies authorizing the Charge and your Establishment has been placed in the Fraud Full Recourse Program. |
| Information provided with the Chargeback | ○  Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  Proof that you had not been placed in the Fraud Full Recourse Program at the time of the Chargeback, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| immediate chargeback program (FR4) | |
|---|---|
| Description | The Cardmember has disputed the Charge and you have been placed in the Immediate Chargeback Program. |
| Information provided with the Chargeback | ○  Charge Data |
| Inquiry required prior to Chargeback | No |
| Support required to request a Chargeback Reversal | ○  Proof that you had not been placed in the Immediate Chargeback Program at the time of the Chargeback, or<br>○  Proof that a Credit which directly offsets the Disputed Charge has already been processed |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

chargebacks and inquiries

| 11.4.6 | chargeback programs (continued) | partial immediate chargeback program (FR6) | |
|---|---|---|---|
| | | Description | The Cardmember has disputed the Charge and you have been placed in the Partial Immediate Chargeback Program. |
| | | Information provided with the Chargeback | ○ Charge Data |
| | | Inquiry required prior to Chargeback | No |
| | | Support required to request a Chargeback Reversal | ○ Proof that you had not been placed in the Partial Immediate Chargeback Program at the time of the Chargeback, or<br>○ Proof that a Credit which directly offsets the Disputed Charge has already been processed |

| 11.5 | requesting a chargeback reversal | You may request a Chargeback Reversal if you provide the supporting information as described in section 11.4, "chargeback reasons". You must request the Chargeback Reversal within the time frame listed in our country specific policies. |
|---|---|---|
| | | Additionally, if the Chargeback was preceded by an Inquiry, you must have responded to the Inquiry by the deadline (section 11.10, "deadline for responding"). |
| | | If you have questions regarding the status of the reversal, contact Merchant Services. |

| | 11.5 | requesting a chargeback reversal (U.S.) | Requests for Chargeback Reversals must be made no later than twenty (20) days after the date of the Chargeback. |
|---|---|---|---|

| 11.6 | resubmission of disputed charge | You must not resubmit a Disputed Charge after it has been resolved in favor of the Cardmember. We will Chargeback all such Disputed Charges that are resubmitted. |
|---|---|---|

| 11.7 | inquiry | American Express tries to resolve Disputed Charges by first using information available to us. In instances where we cannot resolve a Disputed Charge, we will send you an Inquiry. |
|---|---|---|
| | | The form of Inquiry that we will send you includes information about the Charge in question, explanations of the material you must send us to support the Charge, and a deadline by which your response must be received. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

| 11.8 | inquiry reasons | The following table lists the Inquiry reasons and information related to each Inquiry reason. |
|------|-----------------|--------------------------------------------------------------------------------------------|

| inquiry reason | description |
|----------------|-------------|
| (004) | The Cardmember requests delivery of goods / services ordered but not received. Please provide the service, ship the goods, or provide Proof of Delivery or proof of services rendered. |
| (021) | The Cardmember claims the goods / services were cancelled / expired or the Cardmember has been unsuccessful in an attempt to cancel the goods / services. Please issue Credit, or provide a copy of your cancellation policy or contract signed by the Cardmember and discontinue future billings. |
| (024) | The Cardmember claims the goods received are damaged or defective and requests return authorization. If a return is not permitted, please provide a copy of your return or refund policy. |
| (059) | The Cardmember requests repair or replacement of damaged or defective goods received. Please provide return instructions and make the appropriate repairs, or provide a copy of your return/replacement policy and explain why the goods cannot be repaired/replaced. |
| (062) | The Cardmember claims the referenced Charge should have been submitted as a Credit. Please issue Credit, or provide support and itemization for the Charge and an explanation of why Credit is not due. |
| (063) | The Cardmember requests replacement for goods or services that were not as described by your Establishment, or Credit for the goods or services as the Cardmember is dissatisfied with the quality. |
| (127) | The Cardmember claims to not recognize the Charge. Please provide support and itemization. In addition, if the Charge relates to shipped goods, please include Proof of Delivery with the full delivery address. If this documentation is not available, please issue Credit. |
| (154) | The Cardmember claims the goods / services were cancelled and /or refused. Please issue Credit or provide Proof of Delivery, proof that the Cardmember was made aware of your cancellation policy and an explanation why Credit is not due. |
| (155) | The Cardmember has requested Credit for goods / services that were not received from your Establishment. Please issue Credit or provide Proof of Delivery, or a copy of the signed purchase agreement indicating the cancellation policy and an explanation of why Credit is not due. |
| (158) | The Cardmember has requested Credit for goods that were returned to your Establishment. Please issue Credit or explain why Credit is not due along with a copy of your return policy. |



chargebacks and inquiries

**11.8    inquiry reasons (continued)**

| inquiry reason | description |
|---|---|
| (173) | The Cardmember requests Credit from your Establishment for a duplicate billing. If your records show this is correct, please issue Credit. If Credit is not due, provide support and itemization of both charges and explain fully in the space below. |
| (175) | The Cardmember claims that a Credit is due but has not appeared on his/ her account. Please issue Credit or provide support for the Charge and an explanation of why Credit is not due. |
| (176) | The Cardmember claims to not recognize the referenced Card Not Present Charge(s). Please issue Credit or provide signed support and itemization and explain why Credit is not due. |
| (177) | The Cardmember claims this Charge was unauthorized. Please issue Credit or provide support for the Charge and an explanation of why Credit is not due. |
| (193) | The Cardmember claims the Charge incurred at your Establishment is fraudulent. For a Card Present Charge, provide a copy of the Charge Record and an imprint of the Card, if one was taken. For a Card Not Present Charge, provide a copy of the Charge Record (or Substitute Charge Record), any contracts or other details associated with the purchase, and Proof of Delivery (when applicable) with the full shipping address. |
| (680) | The Cardmember claims the Charge amount you submitted differs from the amount the Cardmember agreed to pay. Please issue Credit or explain why Credit is not due. |
| (684) | The Cardmember claims the Charge was paid by another form of payment. Please issue Credit or provide proof that the Cardmember's payment by other means was not related to the Disputed Charge or that you have no record of the Cardmember's other payment. |
| (691) | The Cardmember is not disputing the Charge at this time, but is requesting support and itemization. Please provide this requested documentation. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

| 11.9 | **substitute charge records** | In some cases, you may provide a Substitute Charge Record as supporting documentation for Card Not Present Charges in place of the original Charge Record. You must also provide any additional information requested in the Inquiry. Substitute Charge Records may be used in response to the following Inquiry reasons: |
|---|---|---|

- (127)
- (176)
- (177)
- (193)
- (691)

See section 11.8, "inquiry reasons" for additional information regarding Inquiry reasons.

The Substitute Charge Record must include the following:

- Card Number
- Cardmember name
- Merchant name
- Merchant location
- Transaction date/date goods or services were shipped or provided
- Transaction amount
- Authorization Approval
- description of goods/services

Additionally, the following optional information should be included, if available, on Substitute Charge Record:

- date goods/services were ordered
- website address
- your customer service's telephone number/email address
- "ship to" name and address
- Automated Address Verification response code
- order confirmation number
- electronically captured Cardmember signature

| 11.10 | **deadline for responding** | You must respond in writing to our Inquiry and provide the requested information as described in section 11.8, "inquiry reasons". For additional information, see section 11.17, "response methods". |
|---|---|---|

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





chargebacks and inquiries

| | | |
|---|---|---|
| **11.10** | **deadline for responding (U.S.)** | You must respond in writing to our Inquiry within twenty (20) days. |

| | | |
|---|---|---|
| **11.11** | **Cardmember re-disputes** | We may reinvestigate an Inquiry if a Cardmember provides new or additional information after we review the initial supporting documentation regarding a Disputed Charge (e.g., the Cardmember claims that the Charges are fraudulent). In such case, you may be required to provide additional information to support the validity of the Charge. |

**11.12  chargeback and inquiry monitoring**

We monitor the number of Chargebacks and Inquiries at all Merchants and Establishments on the Network. Your Chargebacks and/or Inquiries may be considered disproportionate if any of the following conditions are present:

- ○ You are unable to provide supporting documentation for Charges made at your Establishment consistently.

- ○ The number of No Reply and Insufficient Chargebacks at your Establishment is deemed to be excessive relative to your prior history or industry standards.

If any of the preceding conditions, or any conditions listed in our country-specific policies are present, notwithstanding anything to the contrary in the Agreement, we may place you in any of our Chargeback programs (section 11.14, "chargeback programs"), or create a Reserve, (or both).

The list of conditions above is not exhaustive and does not reflect all circumstances under which we will act to protect our interests.

**11.12  chargeback and inquiry monitoring (U.S.)**

Your Chargebacks and/or Inquiries may be considered disproportionate if you meet one or more of the following conditions:

- ○ The monthly ratio of Disputed Charges to gross Charges (less Credits) at an Establishment exceeds three percent (3%) in any three (3) months.

- ○ The monthly ratio of Chargebacks (less Chargeback Reversals) to gross Charges (less Credits) at an Establishment exceeds one percent (1%) in three (3) consecutive months.

Additionally, if you meet any of the conditions in the second bullet point above, we may charge you a fee (see subsection 14.2.6, "excessive Chargeback fee (U.S.)").

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



chargebacks and inquiries

| 11.13 | **how we chargeback** | We may Chargeback by (i) deducting, withholding, recouping from, or otherwise offsetting against our payments to you or debiting your Bank Account, or we may notify you of your obligation to pay us, which you must do promptly and fully; or (ii) reversing a Charge for which we have not paid you. Our failure to demand payment does not waive our Chargeback rights. |
| | **11.13  how we chargeback (U.S.)** | In the event of a Chargeback, we will not refund the Discount or any other fees or assessments, or we will otherwise recoup such amounts from you. |
| 11.14 | **chargeback programs** | Certain Chargebacks arise because Merchants are in our Chargeback programs. We may place you in any of these programs upon signing, or any time during the term of the Agreement. |

The reasons for which we may place you in one of our Chargeback programs are not exhaustive. We may, at our sole discretion, place you in any of our Chargeback programs at any time.

| **fraud full recourse program** |
| --- |
| This program allows us to Chargeback without first sending an Inquiry any time a Cardmember disputes a Charge based on actual or alleged fraud. |

You may be placed in this program for one or more of the following reasons:

- ❍ You are a High Risk Merchant. For more information on the high risk criteria, see subsection 10.3.1, "high risk merchants"
- ❍ We receive a disproportionately high number of Disputed Charges relative to your prior history or industry standards.
- ❍ You engage or participate in fraudulent, deceptive or unfair business practices, illegal activities, or prohibited uses of the Card, see subsection 10.3.2, "fraudulent, deceptive, or unfair business practices, illegal activities, or prohibited uses of the Card".

**Note:** The list is not exhaustive and we may, at our sole discretion, place you in the program for other reasons.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





chargebacks and inquiries

**11.14    chargeback programs (U.S.)**

In addition to the Fraud Full Recourse Program, the following Chargeback programs may apply to you.

| immediate chargeback program | partial immediate chargeback program |
|---|---|
| This program allows us to Chargeback without first sending an Inquiry any time a Cardmember disputes a Charge for any reason other than actual or alleged fraud. You may be placed in this program for three reasons:<br><br>❍ You may choose to enroll in this program to avoid receiving Inquiries or Disputes.<br><br>❍ We may place you in this program if you meet the criteria outlined in section 11.12, "chargeback and inquiry monitoring" or, as measured at any time after May 1, 2014 for any months preceding the applicable measurement date, if the monthly ratio of non-fraud Disputed Charges to gross Charges (less Credits) at an Establishment exceeds one percent in any three (3) months.<br><br>❍ Your industry has had historically high occurrences of Disputed Charges. | This program allows us to Chargeback below a predetermined amount without first sending an Inquiry any time a Cardmember disputes a Charge for any reason other than actual or alleged fraud. All disputed amounts above the predetermined amount will be processed under our standard Chargeback and Inquiry policy. You may be placed in this program for three reasons:<br><br>❍ You may choose to enroll in this program to avoid receiving Inquiries below a specific dollar amount.<br><br>❍ Your Agreement with us stipulates participation in this program.<br><br>❍ Your industry has had historically high occurrences of Disputed Charges. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

chargebacks and inquiries

| 11.15 | tips for avoiding chargebacks and inquiries | Inquiries are expensive for all parties involved. Follow these general steps and you may avoid unnecessary Chargebacks and Inquiries: |

- Keep track of all Charge Records.

- Issue Credits immediately after determining that Credit is due.

- Disclose all terms and conditions of your sale/return/exchange/cancellation policies at the point of sale, on all Charge Records and customer receipts and on your website.

- Encourage Cardmembers at the point of sale to contact your business directly should there be any problems with their purchase. Include your telephone number or web address and an appropriate description of goods or services purchased in your Submission.

- Contact your Processor or us to make sure the name that you provide to us in your Submission matches your business name

- Inform Cardmembers of your business name that will appear on their billing statement.

- Submit Charges only after goods have been shipped or services have been provided.

- Advise Cardmembers when goods or services will be delivered or completed, and always advise the Cardmember of any delays.

- Obtain a Cardmember's signature whenever completing a service or work order.

- Provide a cancellation number when applicable.

- Remind the Cardmember to retain any documents you have provided, along with shipping information when applicable.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



chargebacks and inquiries

| 11.16 | ways to receive chargebacks and inquiries | American Express has a variety of options for the exchange of Inquiry information with you. In addition to the traditional paper by mail method, you can access your Merchant Account online to receive and respond to Chargebacks and Inquiries. |
|---|---|---|

Managing your Merchant Account online offers the following benefits:

- allows you to address Disputed Charges and urgent Inquiries,
- helps eliminate the risk of mail delays and shuffling through stacks of paper, and
- allows you to upload and send scanned supporting documentation.

**11.17    response methods**    You may respond to Inquiries through various channels depending on how you receive your Inquiries.

| fax | mail | online |
|---|---|---|
| You may fax replies directly to Customer Service Disputes. Use the fax numbers listed in the Contact Information (U.S) or the fax number found on the respond offline page www.americanexpress.com/merchant. For paper by mail Disputes, we prefer that you fax all responses and include the Inquiry cover sheet. This will ensure the timely receipt of your documentation. | If you prefer to mail your responses, use the Disputed Charge addresses listed in the Contact Information (U.S) page. | You may respond to Inquiries online at www.americanexpress.com/merchant:<br>• Respond to Inquiries directly without paper-work.<br>• Address Disputed Charges and urgent Inquiries.<br>Online is our preferred method for handling Chargebacks and Inquiries. |

For fax and mail responses, you must include the claim form with your response. The claim form must include the Inquiry case number and the Merchant Number. Each page of the supporting documentation for the Disputed Charge must also include the Inquiry case number and Merchant Number. If the documentation does not contain the Inquiry case number, or you are unable to locate the Inquiry case number, you must include a copy of the initial Inquiry letter with your response. Failure to provide the Inquiry case number, Merchant Number or the Inquiry letter may result in a Chargeback.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

12

## contents

12.1    introduction

12.2    rental establishments

12.3    auto dealers

12.4    business-to- business (B2B)/ wholesale distribution

12.5    charitable donations

12.6    insurance

12.7    oil/petroleum

12.8    parking

12.9    restaurants

12.10   Telecommunications

12.11   timeshares

12.12   travel industries

12.13   government/utilities/education

12.14   internet/online pharmacies

12.15   online/mail order tobacco retail

specific industries





specific industries

| 12.1 | introduction | This chapter states additional policies and procedures applicable to Merchants classified in specific industries. All other provisions and requirements of the Agreement apply to these Merchants as well. To the extent possible, the provisions of this chapter 12 and the other provisions of the *Merchant Regulations* shall be interpreted to give each their full effect. However, if a conflict is deemed to exist between them, then the provisions of this chapter 12 shall govern. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



specific industries

## 12.2    rental establishments

**Rental Establishments**
Long-term rentals used as primary residences.

In some countries, additional policies and procedures are applicable to Merchants who accept the Card for payment for Rental Establishments.

If we determine that you are primarily in the business of operating one or more Rental Establishments, then you must provide to us, promptly on request, a list of your Rental Establishments and notify us of any subsequent changes in the list. In order to qualify for the Discount Rate for Charges of rent on Rental Establishments and related security deposits and common room fees (collectively, *Rent Payments*), you must offer Recurring Billing Charges for Rent Payments and actively promote acceptance of the Card (including by general communications to residents), and the majority of your Charge volume must come from Recurring Billing Charges for Rent Payments. See section 4.19, "recurring billing charges".

We may charge you different Discount Rates for Charges submitted by your Establishments that are not Rental Establishments (e.g., Discount Rates for the parking lot industry will apply to Charges from parking lots operated at your Rental Establishments). We may use your name, addresses, (including your website addresses or URLs) and telephone numbers in any media at any time to indicate that you accept the Card for Rent Payments, including Recurring Billing Charges for Rent Payments.

Customers should feel free to use all forms of payment that Merchants accept without being penalized for choosing a particular form of payment. You must not impose a higher convenience fee on Charges than you impose on Other Payment Products, except for automated clearing house funds transfers, cash, and checks. However, nothing in this paragraph prohibits Merchants from exercising their rights to offer discounts and incentives, or otherwise influence the customer's choice of payment form, as provided in section 3.2, "treatment of the American Express Brand".

Rental Establishments may assess convenience fees on Charges, provided that they comply with the other requirements of this section, as follows:

- ❍ You must clearly disclose the amount of convenience fees to the customer, which may include itemization on the customer receipt, invoice or confirmation email, and give the customer the opportunity to cancel the Charge if the customer does not want to pay the convenience fee.

- ❍ Any explanation, verbal or written, describing why the convenience fee is being assessed, or how it is calculated, must characterize the convenience fee as an assessment to cover your administrative costs and not as an assessment to cover your cost of accepting the Card.

Your third-party service provider can only assess a convenience fee when it accepts the Card for Charges in compliance with the requirements of this section.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

specific industries

| 12.3 | **auto dealers** | In some countries, additional policies and procedures are applicable to Merchants classified in the auto dealer industry. |
|---|---|---|

**12.3    auto dealers (U.S.)**

This section applies to Merchants that we classify in an auto dealer industry.

The following requirements will apply to Charges for the down payment or the entire purchase price of new and used motor vehicles.

You may accept the Card for down payment of a motor vehicle, subject to the following provisions:

- ❍ You must not submit a Charge for the down payment price of a used motor vehicle unless and until you have a written agreement/bill of sale signed by the Cardmember setting forth the terms of the sale, including down payment price, and your cancellation policy.

- ❍ In addition to our other Chargeback rights, we also have Chargeback rights for any portion of the Charge for the down payment price of a used motor vehicle which is disputed by the Cardmember, if such Disputed Charge cannot be resolved in your favor based upon unambiguous language contained in the written agreement/bill of sale.

- ❍ Should a Cardmember exercise his or her right to rescind the written agreement/bill of sale during any rescission period set forth in the Cardmember's agreement with you or at law, you shall submit a Credit to us promptly.

- ❍ If we have classified you as an auto dealer of used motor vehicles exclusively, the down payment must not exceed 50% of the full purchase price of the motor vehicle.

- ❍ If the Cardmember denies making or authorizing the Charge, we will have Chargeback rights for such Charge in addition to our other Chargeback rights (see If the Cardmember denies making or authorizing the Charge, we will have Chargeback rights for such Charge in addition to our other Chargeback rights (see [chapter 11, "chargebacks and inquiries"](#)).

You may also accept the Card for the entire purchase price of a new or used motor vehicle, subject to the following provisions:

- ❍ We have classified you as an auto dealer of new or new and used motor vehicles (i.e., your dealership sells new motor vehicles exclusively or both new and used motor vehicles).

- ❍ The amount of the Charge does not exceed the total price of the motor vehicle after deduction of applicable discounts, taxes, rebates, cash down payments, and trade-in values.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

specific industries

| 12.3 | auto dealers (U.S.) (continued) |

○ You must not submit a Charge for the entire purchase price of a new or used motor vehicle unless and until you have a written agreement/bill of sale signed by the Cardmember setting forth the terms of the sale, including purchase price, delivery date and your cancellation policy.

○ In addition to our other Chargeback rights, we also have Chargeback rights for any portion of the Charge for the entire purchase price of a new or used motor vehicle which is disputed by the Cardmember, if such Disputed Charge cannot be resolved in your favor based upon unambiguous language contained in the written agreement/bill of sale.

○ Should a Cardmember exercise his or her right to rescind the written agreement/bill of sale during any rescission period set forth in the Cardmember's agreement with you or at law, you shall submit a Credit to us promptly.

○ If the Cardmember denies making or authorizing the Charge and you have not transferred title or physical possession of the motor vehicle to the Cardmember, we will have Chargeback rights for such Charge in addition to our other Chargeback rights (see chapter 11, "chargebacks and inquiries").



Merchant Regulations - U.S.

specific industries

| 12.4 | business-to-business (B2B)/ wholesale distribution | In some countries, additional policies and procedures are applicable to Merchants we classify in the business-to-business (B2B) or wholesale distribution industry. |

### 12.4 business-to-business (B2B)/ wholesale distribution (U.S.)

If we classify you in the business-to-business (B2B) or wholesale distribution industries, and we determine that you are not in the Telecommunications industry, then notwithstanding the prohibition in section 3.3, "prohibited uses of the Card", you may accept the Card for overdue amounts to the extent that acceptance of overdue amounts is a common practice in your industry and does not constitute an attempt to obtain payment from the Cardmember whose prior methods of payment have, in our reasonable judgment, been difficult to collect or uncollectible. An indicator of such difficulty, for example, may be the fact that you have sent an overdue customer account to collections.

> Line Item Detail (LID) allows Merchants to receive a detailed invoice which expands the purchase order to include data such as the product numbers, part numbers, price per unit, quantity, etc. For information on Line Item Detail, contact your American Express representative or Merchant Services.

For the purposes of section 6.5, "submission requirements - electronic", a Charge submitted by your Establishments classified in the foregoing industries will be deemed "incurred" on the date the Cardmember indicates to you that the Cardmember will pay for the goods or services purchased with the Card, so long as:

- this is a common practice in your industry, and
- does not constitute an attempt to obtain payment from the Cardmember when prior methods of payment have been difficult to collect or uncollectible.

> To minimize your risk of a Chargeback with B2B Charges, always:
> - obtain a signature for all In-Person Charges. For Card Not Present Charges, obtain Proof of Delivery, and
> - maintain clear and accurate records of orders and returns.
> For more tips on reducing Chargebacks, see section 11.15, "tips for avoiding chargebacks and inquiries"

Notwithstanding the restriction in section 6.5, "submission requirements - electronic", you must not submit any Charge until the goods have been shipped or services have been provided to the Cardmember. To the extent that you have clearly disclosed your intentions to the Cardmember and the Cardmember agrees, then you may submit the following types of Charges to us before you ship the goods to the Cardmember:

- Charges representing deposits on custom and special orders (so long as you comply with Applicable Law) or goods not in inventory at the time the order is placed.
- Charges representing advance, partial, or full payment for goods that the Cardmember requests you to ship at a later date.

**Note:** For CPC Charges, you may qualify, at our sole discretion, for an adjustment in your Discount Rate. See section 4.13, "corporate purchasing Card charges (U.S.)".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



specific industries

| 12.5 | **charitable donations** | In some countries, additional policies and procedures are applicable to Merchants who accept the Card for charitable donations. |
|---|---|---|

**12.5  charitable donations (U.S.)**

If we determine that you are a non-profit organization incorporated or registered under Applicable Law and recognized as an Entity qualifying for tax exemption under Section 501(c)(3) of the U.S. Internal Revenue Service Code (Code), then:

- ❍ You must provide to us promptly, on request, documentation of such tax exempt status.

- ❍ You may accept the Card for charitable donations that:

   - ▪ are tax-deductible to the payor as a charitable contribution under the Code, or

   - ▪ include the receipt of an item or service of value (such as a meal or admission to an event or other incentive) where at least a portion of the amount is tax-deductible to the payor as a charitable contribution under the Code.

If you accept the Card for Transactions that are not tax-deductible to the payor as a charitable contribution under the Code, we may charge you a different Discount Rate for such Transactions.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





specific industries

| 12.6 | insurance | In some countries, additional policies and procedures are applicable to Merchants classified in the insurance industry. |

**12.6    insurance (U.S.)**

This section contains provisions specific to Merchants that we classify in the insurance industry. If any of your goods or services are sold or billed by independent Agencies, then you must provide to us a list of such independent Agencies and notify us of any subsequent changes in the list.

> **Agency**
> Any Entity or line of business that uses your Marks or holds itself out to the public as a member of your group of companies.

We may use this list to conduct mailings that encourage such independent Agencies to accept the Card. We may mention your name in such mailings, and you must provide us with a letter of endorsement or assistance as we may require.

You must use your best efforts to encourage independent Agencies to accept the Card. We acknowledge that you have no control over such independent Agencies. From time to time, and subject to chapter 3, "card acceptance", we may establish joint marketing campaigns that promote Card acceptance specifically at your Establishments or, generally, at insurance companies. A necessary purpose for which you submit Cardmember Information that is responsive to such joint marketing campaigns includes our use of that information to perform back-end analyses to determine the success of such joint marketing campaigns.

We undertake no responsibility on your behalf for the collection or timely remittance of premiums. We will not be subject to any liability, under any circumstances, for any claim arising from, or related to, any insurance policy issued by you or your Agencies. You must indemnify, defend, and hold harmless us and our Affiliates, successors, assigns, and Issuers, from and against all damages, liabilities, losses, costs, and expenses, including legal fees, to Cardmembers (or former Cardmembers) arising or alleged to have arisen from your or your Agencies termination or other action regarding their insurance coverage; breach, negligent or wrongful act or omission; failure to perform under the Agreement; or failure in the provision of your or their goods or services.

If the Card is accepted as payment for fixed rate cash value life insurance policies or fixed rate annuities under the Agreement, you represent and warrant that the fixed rate cash value life insurance policies and fixed rate annuities for which the Card will be accepted for premium payments are not securities requiring registration under the Securities Act of 1933, and, in addition to your other indemnification obligations to us, you must further indemnify, defend, and hold harmless us and our Affiliates, successors, assigns and Issuers from and against all damages, liabilities, losses, costs, and expenses, including legal fees, arising or alleged to have arisen from your or your Agencies breach of this representation and warranty.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

specific industries

| 12.7 | oil/petroleum | In some countries, additional policies and procedures are applicable to Merchants classified in the oil/petroleum industry. |
|---|---|---|

| 12.7 | oil/petroleum (U.S.) | If we classify you in the oil/petroleum industry, we may place you in our Fraud Full Recourse Program (see subsection 11.14, "chargeback programs (U.S.)") if you accept Charges originating at a CAT gas pump. We will not exercise Chargeback up to a certain dollar amount for Charges that qualify under the Oil Fraud Protection Program (see subsection 12.7.3, "oil fraud protection program (U.S.)". For information about CATs, see section 4.6, "customer activated terminals". |
|---|---|---|

**12.7.1  requirements (U.S.)**

You must:

- ○ Obtain a unique Merchant Number for your CAT gas pump sales. If you conduct any other business at your Establishment (e.g., convenience store sales, car washing services), you must obtain a unique Merchant Number for those lines of your business.

- ○ Submit dealer location data along with each Authorization request and each Submission file. Dealer location data consists of your business':
  - ▪ dealer number (store number)
  - ▪ name
  - ▪ street address
  - ▪ city
  - ▪ postal code

**12.7.2  recommendations (U.S.)**

American Express has implemented several policies and fraud prevention tools to assist in combating fraud at the gasoline pump.

We recommend that you:

> Due to the high risk of fraud at the gas pump, we recommend that you adopt our full set of fraud mitigation tools. See chapter 9, "fraud prevention".

- ○ Set a pre-Authorization request of $100 at your CAT gas pumps.

- ○ For higher Charges such as diesel, adjust the pre-Authorization amount to accommodate the higher Charges.

- ○ Set your CAT gas pumps to shut off when they reach the pre-Authorization amount.

- ○ Request a separate Authorization for purchases that exceed the original pre-Authorization amount.



specific industries

**12.7.3    oil fraud protection program (U.S.)**

Fraud at fuel pump CATs often occurs when criminals create a counterfeit magnetic stripe. Oil/petroleum Merchants can mitigate the risk of counterfeit fraud by implementing American Express fraud prevention tools such as track 1, zip code verification and terminal ID. See chapter 9, "fraud prevention" for more details.

For information regarding Chip Card Fraud Liability Shift, see section 4.5.1.2, "contact chip Card charges (US)" for more details.

The Oil Fraud Protection Program addresses counterfeit fraud Chargebacks at fuel pump CATs. Under this program, we will not exercise Chargeback for the amount of the Charge up to $100 provided that both the Establishment and each Charge meet the following criteria:

- ○ the Authorization request meets the data requirements listed in section 4.6, "customer activated terminals",

- ○ the Authorization request must include the correct Merchant Category Code (MCC) for "automated fuel dispensers" (5542),

- ○ the Issuer determines that the Card used to initiate the Charge was counterfeit, and

- ○ the Establishment qualified for Chargeback protection under the program at the time of the Charge, as follows:

For an Establishment to qualify under the Oil Fraud Protection Program, it (i) must authorize and submit Transactions under the unique Merchant Number which we assign to the Establishment, and (ii) must have, in a given month, a counterfeit fraud to Charge volume ratio below 1%. An Establishment whose counterfeit fraud to Charge volume ratio rises to or exceeds 1% in a given month will not qualify under the Oil Fraud Protection Program until the ratio falls below 1% for three (3) consecutive months. Notwithstanding the foregoing, the Oil Fraud Protection Program does not apply to Merchants that submit under one Merchant Number consolidated Charges from multiple Establishments (i.e., central submitters) or to the Establishments that those Merchants submit on behalf of.

American Express offers a variety of fraud prevention tools which may enable Merchants to reduce fraud in order to qualify and retain eligibility for the program. See chapter 9, "fraud prevention" for more details.

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.



specific industries

### 12.8    parking

In some countries, additional policies and procedures are applicable to Merchants classified in the parking industry.

### 12.9    restaurants

In some countries, additional policies and procedures are applicable to Merchants classified in the restaurant or bar industry.

#### 12.9    restaurants (U.S.)

If we classify or otherwise determine that you are in the restaurant or bar industry, then the following Authorization procedures apply. If the final restaurant or bar Charge is no greater than the amount for which you obtained Authorization plus 20% of that amount, no further Authorization is necessary.

If the final restaurant or bar Charge is greater than the amount for which you obtained Authorization by more than 20%, you must obtain Authorization for any additional amount of the Charge that is greater than the original Authorization. When submitting the Charge, only include the initial Approval.

See section 4.8, "charge records (U.S.)" for additional information on paying a single bill with multiple Cards.

> Skimming is the theft of payment Card information by an employee of an Establishment who uses a pocket-sized electronic device (a.k.a. "skimmer") to copy Cardmember Information from the Card's Magnetic Stripe. For Fraud Prevention tools, see chapter 9, "fraud prevention".

### 12.10    Telecommunications

In some countries, additional policies and procedures are applicable to Merchants classified in the Telecommunications industry.

> **Telecommunications**
> Communication services, including personal communication services; cellular, paging, long distance, etc.

#### 12.10    Telecommunications (U.S.)

If we classify you in the Telecommunications industry, notwithstanding anything to the contrary in the Agreement, we may place you in one or more of the following Chargeback programs (see section 11.14, "chargeback programs (U.S.)"):

- ❍ Partial Immediate Chargeback Program for an amount of $50 or less
- ❍ Fraud Full Recourse Program

We may establish audit procedures determined in our discretion to ensure that no Charges except for Recurring Billing Charges are submitted under the Merchant Number designated for Recurring Billing Charges.

The list of Affiliates that you must provide to us under the "List of Affiliates" section of the Agreement must include any Agency in the geographic area where you offer any Telecommunications services.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





specific industries

## 12.11   timeshares

In some countries, additional policies and procedures are applicable to Merchants accepting the card for Timeshare Units.

**Timeshare Unit**
The exclusive right to occupy a unit in a real estate development.

### 12.11   timeshares (U.S.)

If we determine (or you otherwise provide documentation to us) that you are a member of the American Resort Development Association ([www.arda.org](www.arda.org)) and for at least two (2) years you have been in the business of selling Timeshare Units or listing Timeshare Units for sale, rental, or exchange, you must accept the Card for:

❍ no more than 50% of the purchase price of an ownership interest or other annual occupancy right in a Timeshare Unit, if the total amount of Charges you submit to us during any consecutive twelve (12)-month period is no more than a threshold we determine (currently US $3 million), or the full purchase price of an ownership interest or other annual occupancy right in a Timeshare Unit, if the total amount of Charges you submit to us during any consecutive twelve (12)-month period exceeds that threshold.

❍ membership fees to register or list a Timeshare Unit for sale, rental, or exchange.

❍ maintenance fees or annual fees associated with the Timeshare Units, subject to the provisions of [section 4.19, "recurring billing charges"](section 4.19).

You must not submit any Charge until you have the irrevocable right to retain the payment under Applicable Law and under a written agreement signed by the Cardmember. You must not accept the Card for campground memberships, recreational fees, or interests in real property other than Timeshare Units, subject to what is described in [section 4.19, "recurring billing charges"](section 4.19).

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



specific industries

**12.12    travel industries**    In some countries, additional policies and procedures are applicable to Merchants classified in the cruise line, lodging and vehicle rental industries.

**12.12.1    cruise line**    See country-specific policies for more information.

**12.12.1    cruise line (U.S.)**    This section applies to Merchants that we classify in the cruise line industry. Cruise line Merchants may permit Cardmembers to use the Card to make purchases:

- at all cruise line ticket and sales offices worldwide including all central reservation systems (e.g., cruise ship travel, connecting air packages, air tickets, shore excursions and tours, port transfer and baggage charges, and pre- and post-cruise travel packages), and

- for on-board purchases on cruise line ships (e.g., purchase on shipboard of cabin upgrades, entertainment, goods, beverages, laundry services, gratuities, deck chairs, spa services).

**12.12.1.1    cruise line - special authorization procedures (U.S.)**

For on-board purchases:

- There may be times when you cannot obtain Authorization for every on-board purchase made on the Card. Instead, you must:
  - seek Authorization for estimated amounts at embarkation or check-in (with Authorization of any amounts in excess of such estimate to be obtained at the end of the cruise), or
  - seek Authorization intermittently (no less than daily) through the duration of the cruise.

> For additional information about accepting Prepaid Cards, see section 4.20, "processing prepaid Cards".

- If the POS System is unavailable to obtain an Authorization, then you must either:
  - obtain Authorization by telephoning our Authorization Department, or
  - collect all Charges during such nonfunctioning time and as soon as reasonably possible obtain an Authorization.

- An Authorization made for on-board purchases is valid for the duration of the cruise.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



specific industries

**12.12.1.1 cruise line - special authorization procedures (U.S.) (continued)**

> We recommend that you perform an additional Authorization as soon as the Charge amount exceeds the original Authorization by 15% as follows:
> ○ For Authorizations obtained intermittently - at least once per day.
> ○ For Authorizations for estimated amounts at check-in - at the point the amount of costs incurred exceeds the Authorization for estimated amounts by more than 15%.

Upon check-out:

| if | then |
|---|---|
| the final Charge amount is not greater than the Authorization for the estimated amount plus 15% | no further Authorization is required. |
| the final Charge amount is greater than the Authorization for the Estimated Charge amount by more than 15% | you must obtain Authorization for the additional amount of the Charge that is greater than the amount for which you have already obtained Authorization. If you fail to obtain Authorization for the additional amount, or your request for such Authorization is Declined, and the Cardmember fails to pay the Charge for any reason, we will have Chargeback rights for the amount in excess of the Approval for the estimated Charge amounts. |
| a Cardmember opts to use a Prepaid Card at the time of check-out when the final Charge is known | you must obtain Authorization for the full amount of the Charge to be placed on the Prepaid Card. <br><br> See "Split Tender" in section 5.13. "additional authorization requirements" for additional information. |

**12.12.2 lodging**

See country-specific policies for more information.

**12.12.2 lodging (U.S.)**

This section applies to Merchants that we classify in the lodging industry, and includes special Authorization procedures and programs for check-in and check-out. The Assured Reservations and CARDeposit® programs allow certain Charges to be submitted that would otherwise not be allowed by American Express.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

specific industries

**12.12.2.1  lodging - special authorization procedures (U.S.)**

For additional information about accepting Prepaid Cards, see section 4.20, "processing prepaid Cards".

When Cardmembers opt to pay for lodging stays on the Card, you must follow these procedures:

Upon check-in:

- ○ Obtain Authorization for the full estimated amounts of Charges based upon the room rates and the number of days that the Cardmember expects to stay, plus taxes and other known incidental amounts (Estimated Lodging Charges).

- ○ Do not overestimate the Authorization amount.

- ○ An Authorization for Estimated Lodging Charges is valid for the duration of the lodging stay.

Upon check-out:

We recommend that you perform an additional Authorization as soon as the Charge amount exceeds the original Authorization by 15%. For example: If the Cardmember extends the stay, before allowing the additional stay, obtain Authorization for the additional stay (plus incidentals) that exceeds the original Authorization for estimated amounts by 15%.

| if | then |
|---|---|
| the final charge is no greater than the Estimated Lodging Charge plus 15% of the Estimated Lodging Charge | no further Authorization is required. |
| the final Charge is greater than the Estimated Lodging Charge by more than 15% | you must obtain Authorization for any additional amount of the Charge that is greater than the Estimated Lodging Charge. If you fail to obtain such Authorization for the additional amount, or your request for such Authorization is Declined, and the Cardmember fails to pay the Charge for any reason, we will have Chargeback rights for the amount in excess of the Approved Estimated Lodging Charge. |
| a Cardmember opts to use Prepaid Cards at the time of check-out when the final Charge is known | you must obtain Authorization for the full amount of the Charge to be placed on the Prepaid Card. See "Split Tender" in section 5.13, "additional authorization requirements" for additional information. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015    189



specific industries

**12.12.2.1  assured reservations (U.S.)**

Assured Reservations means a Cardmember's accommodation is guaranteed by you to be held until the published check-out time on the date following the scheduled arrival date, as indicated by the Cardmember when making the Assured Reservation. You must honor Assured Reservations.

Lodging Merchants may submit "no show" charges, if they comply with the provisions of the Assured Reservations Program and the Cardmember does not use or cancel the reservation in accordance with program requirements.

Your Assured Reservations Program responsibilities include the following:

> **Assured Reservations Program**
>
> The Assured Reservation Program allows Cardmembers to call a participating hotel to make an Assured Reservation and guarantee the hotel reservation by giving their American Express Card.

- When accepting an Assured Reservation, you must advise the Cardmember that, if the Cardmember does not claim the Assured Reservation, or cancel it within the time specified in your stated reservation policy, the Cardmember may be charged for one (1) night's lodging plus applicable taxes. If the Cardmember does not claim the Assured Reservation or cancel in accordance with your stated reservation policy, you may bill the Cardmember for a "no show" Charge.

- If the Cardmember cancels an Assured Reservation, you must provide a cancellation number to the Cardmember and maintain a record of the cancellation number.

- Use the proper "no show" indicator, when submitting a "no show" Charge. If you are unsure of how to transmit using this code, contact your Processor or Terminal Provider, or if you have a direct link to American Express, your American Express representative.

If you do not honor the Assured Reservation Program requirements, your obligation to the Cardmember is the following:

- Pay for one (1) night's accommodation at a comparable property, located nearby.

- Pay for transportation to the alternate location.

- Pay for a three (3)-minute telephone call.

- Use good faith efforts to forward all communications to the Cardmember at the alternate location.

Failure to meet the previously-mentioned obligations may result in a Chargeback if the Cardmember disputes a "no show" Charge.

If we receive disproportionate numbers of Disputed "no show" Charges, you must work with us to reduce the number of disputes. If such efforts fail to reduce the number of disputes, we may place you in any of our Chargeback programs. See section 11.14, "chargeback programs (U.S.)".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

specific industries

**12.12.2.1 CARDeposit program (U.S.)**

**CARDeposit Program**
A program that permits Cardmembers to charge the payment of an Advance Payment Charge to their Cards when a deposit is required.

As a lodging Merchant, if you require room deposits, you must participate in the CARDeposit program. You must accept the Card for payment of CARDeposits. Your CARDeposit program responsibilities include the following:

- Follow all requirements for an Advance Payment Charge, as described in section 4.14, "advance payment charges (U.S.)".

- Upon arrival, the Cardmember must show the Card. If the Cardmember does not have the Card, other identification must be shown.

- Ensure the Charge Record contains the words "CARDeposit" on the Cardmember signature line or, for Charge Records submitted electronically, the appropriate indicator on the Charge Data. If you are unsure of how to submit the Charge using the appropriate indicator, contact your Processor, Terminal Provider, or if you have a direct link to American Express, your American Express representative.

| if | then |
|---|---|
| the CARDeposit is cancelled | you must send a written cancellation notice showing the cancellation number to the Cardmember within three (3) business days from the date of such cancellation. If a refund is due, pursuant to your advance deposit cancellation policy, you must include the appropriate indicator or submit a Credit form with the words "CARDeposit Cancellation" on the Cardmember signature line. If you are unsure of how to submit using the appropriate indicator, contact your Processor or Terminal Provider, or if you have a direct link to American Express, your American Express representative. |
| an arrival date of a CARDeposit is changed | you must send the Cardmember a written confirmation of the change within three (3) business days from the date the reservation was changed. |
| you are unable to honor a CARDeposit that was not previously cancelled | your obligation to the Cardmember includes the following:<br><br>• You must issue a Credit for the CARDeposit.<br><br>• You must pay for accommodations at a comparable location nearby, until the duration of the original reservation expires (up to fourteen (14) nights) or until accommodations become available at the original location, whichever occurs first.<br><br>• You must provide transportation to and from the alternate location once a day until the original accommodations are available.<br><br>• You must pay for one, three (3)-minute call to advise of the move to the alternate location, and one, three (3)-minute call to advise of the return to the original location. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



specific industries

| | |
|---|---|
| **12.12.2.1 emergency check-in (U.S.)** | If a Cardmember whose Card is lost or stolen requests check-in, you must call the <u>Authorization Department</u>, ask for an American Express representative, request Authorization for an "Emergency Check-In", and follow the representative's instructions. |
| **12.12.3 vehicle rentals** | See country-specific policies for more information. |
| **12.12.3 vehicle rentals (U.S.)** | This section applies to Merchants that we classify in the vehicle rental industry. When Cardmembers opt to pay for vehicle rentals (not to exceed four (4) consecutive months) on the Card, you must follow the listed procedures. |

**12.12.3.1 vehicle rentals - special authorization procedures (U.S.)**

Upon rental of the vehicle:

○ Obtain Authorization for the full estimated amount of the Charge (Estimated Vehicle Rental Charge). The Estimated Vehicle Rental Charge shall be determined by multiplying the rental rate by the rental period reserved by the Cardmember, plus any known incidentals. You must not overestimate this amount or include an amount for any possible damage to or theft of the vehicle.

○ If you fail to obtain Authorization for the Estimated Vehicle Rental Charge and submit the Charge, and the Cardmember fails to pay the Charge for any reason, we will have Chargeback rights for the full amount of the Charge.

○ An Authorization for Estimated Vehicle Rental Charges is valid for the duration of the rental agreement.

> For additional information about accepting Prepaid Cards, see <u>section 4.20, "processing prepaid Cards"</u>.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



specific industries

**12.12.3.1  vehicle rentals -
special
authorization
procedures (U.S.)
(continued)**

Upon return of the vehicle:

| if | then |
|---|---|
| the final Charge is not greater than the Estimated Vehicle Rental Charge plus 15% | no further Authorization is required. |
| the final Charge is greater than the Estimated Vehicle Rental Charge by more than 15% | obtain Authorization for any additional amount of the Charge that is greater than the Estimated Vehicle Rental Charge. If you do not obtain an Authorization for the additional amount, or you request Authorization for the additional amount but Authorization is Declined, and the Cardmember fails to pay the Charge for any reason, we will have Chargeback rights for the amount of the Charge in excess of the Estimated Vehicle Rental Charge for which you already obtained Authorization. |
| a Cardmember decides to extend a rental period | request Authorization for the estimated amount that will be in excess of the Estimated Vehicle Rental Charge.<br><br>Authorization Approved - If Authorization is granted, the amount of Authorization will be added to the original Estimated Vehicle Rental Charge and the total thereof will be considered the Estimated Vehicle Rental Charge.<br><br>Authorization Declined - If Authorization is declined, the original Estimated Vehicle Rental Charge amount will remain the Estimated Vehicle Rental Charge. |
| any additional Charges not previously approved for Authorization are incurred when the vehicle is returned | request Authorization for the additional amount not previously approved for Authorization. |
| a Cardmember opts to use Prepaid Cards upon return of the vehicle when the final Charge is known | you must obtain Authorization for the full amount of the Charge to be placed on the Prepaid Card.<br>See "Split Tender" in section 5.13, "additional authorization requirements" for additional information. |

We recommend that you perform an additional Authorization as soon as the Charge amount exceeds the original Authorization by 15%. For example: If the Cardmember extends their rental period, before allowing the additional rental period, obtain Authorization for the additional rental cost (plus incidentals) that exceeds the original Authorization for estimated amounts by 15%.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



specific industries

**12.12.3.1 prepayment on vehicle rentals (U.S.)**

If you permit Cardmembers to make Charges with the Card for vehicle rentals where Cardmembers elect to prepay for a vehicle rental over the phone, at the counter and via your company websites (not on any other third-party reservation system) (Prepaid Rental), you must:

- ○ Follow all requirements for an Advance Payment Charge, as described in <u>section 4.14, "advance payment charges"</u>.

- ○ Ensure that your vehicle rental contract with the Cardmember contains the terms and conditions of said reservation and cancellation policies.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

specific industries

**12.12.3.2  capital damages (U.S.)**

If a Cardmember voluntarily opts to use the Card to pay for property damage to a rented vehicle (Capital Damages), you may accept the Card, provided you have complied with all of the following conditions for payments of such items:

- The Card was used for the vehicle rental at the time the vehicle was checked out.

- You must provide in writing, to the Cardmember, an itemized list of specific damages which has occurred.

- You must secure from the Cardmember written acknowledgment of responsibility for the Capital Damages. The Cardmember's acknowledgment must be made freely and without any threat or duress.

- You must advise the Cardmember, in writing, of the total estimated amount for which the Cardmember may be responsible. No amounts in excess of 110% of the disclosed amount shall be charged to the Cardmember's Card, without the express prior written consent of the Cardmember.

- A description of the damage, acknowledgment of responsibility, and designation of the estimated amount of damage will be set forth on a single form (Acknowledgment of Responsibility Form). See appendix a.1 for a copy of the form.

- You must obtain Authorization for the amount of the Capital Damages each time an Acknowledgment of Responsibility Form is completed.

- On each occasion the Cardmember has chosen to use the Card for Capital Damages, you must prepare a Charge Record separate from the Charge Record for the rental. You must adhere to all requirements outlined in chapter 4, "transaction processing" for the completion of the Charge Record. In addition, you must observe the following:

  - After the exact amount of the Capital Damages has been determined, you must provide the Cardmember with itemized notice of damages; insert the amount of the Capital Damages on the Charge Record (in no event in excess of the estimated amount plus 10% agreed to by the Cardmember in the Acknowledgment of Responsibility Form).

  - For Charge Records submitted on paper or by other non-electronic means, you must write "Capital Damages" on the signature line; for electronic Submission you must provide the indicator. For instructions on how to provide the indicator, contact your Processor or Terminal Provider, or if you have a direct link to American Express, your American Express representative.

  - In addition to the other Chargeback rights contained in the Agreement, we may exercise Chargeback rights with respect to any Charge for Capital Damages which is not submitted in accordance with all the procedures contained within the Agreement.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015   195



specific industries

| 12.13 | **government/utilities/education** | In some countries, additional policies and procedures are applicable to Merchants in government, utilities or education industries. |

**12.13    government/utilities/education (U.S.)**

This section applies to Merchants that we classify in the government, utilities, or certain education industries (i.e., higher education, private school–kindergarten to grade 12).

Customers should feel free to use all forms of payment that Merchants accept without being penalized for choosing a particular form of payment.

The Merchant must not impose a higher convenience fee on Charges than it imposes on Other Payment Products, except for automated clearing house funds transfers, cash, and checks. American Express views discrimination against Cardmembers as a breach of the Agreement. However, nothing in this paragraph prohibits Merchants from exercising their rights to offer discounts and incentives, or otherwise influence the customer's choice of payment form, as provided in section 3.2, "treatment of the American Express Brand".

Merchants in the government, utilities, and applicable education sectors may assess convenience fees on Charges, provided that they comply with the other requirements of this section, as follows:

- Merchants classified as government Entities, including government utilities, and privately owned utilities may assess convenience fees on all Charges.

- Merchants classified as educational institutions may assess convenience fees only on Charges for tuition, room and board, school lunch payments, or other mandatory fees.

The Merchant must clearly disclose the amount of convenience fees to the customer, which may include itemization on the customer receipt, invoice or confirmation email, and give the customer the opportunity to cancel the Charge if the customer does not want to pay the convenience fee.

Any explanation, verbal or written, describing why the convenience fee is being assessed, or how it is calculated, must characterize the convenience fee as an assessment to cover the Merchant's administrative costs and not as an assessment to cover the Merchant's cost of accepting the Card.

Your third-party service provider can only assess a convenience fee when it accepts the Card for the foregoing Charges in compliance with the requirements of this section.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




Merchant Regulations - U.S.

specific industries

| 12.14 | **internet/online pharmacies** | In some countries, additional policies and procedures are applicable to internet/online pharmacy Merchants that accept the Card for sales of prescription medications. |
|---|---|---|

| | 12.14 | **internet/online pharmacies (U.S.)** | If we determine that you are an internet/online pharmacy Merchant that accepts the Card for sales of prescription medications (as defined by Applicable Law or regulation) in the Card Not Present environment: |

- you must be certified by the Verified Internet Pharmacy Practice Sites program of the National Association of Boards of Pharmacy (www.nabp.net), or

- you or your authorized representative must attest that you comply with the licensing and inspection requirements of (i) U.S. federal law and the state in which you are located and (ii) each state to which you dispense pharmaceuticals.

Upon request, you must promptly provide to us documentation that you fulfill the foregoing requirements. The Agreement may be terminated if you do not provide this documentation promptly.

Specific procedures exist for Transaction processing by internet/online Merchants. These procedures appear in section 4.7, "processing a Card not present charge (U.S.)".

See appendix a.6 for the affidavit of compliance with laws - internet/online pharmacies (U.S.).

| 12.15 | **online/mail order tobacco retail** | In some countries, additional policies and procedures are applicable to online/mail order tobacco retail Merchants. |
|---|---|---|

| | 12.15 | **online/mail order tobacco retail (U.S.)** | If we classify or otherwise determine that you are an online or mail order (or both) tobacco or e-cigarette Merchant, then you must provide us with the website address of the online store from which you sell your tobacco products. If your website facilitates tobacco sales, you will be required on request to provide an executed and notarized affidavit of compliance with laws - online/mail order tobacco (U.S.). If you fail to complete the Affidavit, your Merchant Account and the Agreement may be terminated. |

> Mail order and online retail represent a high source for fraud. Fraud prevention tools such as Enhanced Authorization and Charge Verification may be of benefit to you if you operate in an online or mail order environment. For information on the entire suite of fraud mitigation tools see chapter 9, "fraud prevention".

We may monitor your website.

See appendix a.5 for the affidavit of compliance with laws - online/mail order tobacco (U.S.) form.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

Merchant Regulations - U.S.





specific industries

this page intentionally left blank

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third
parties without the express prior written consent of American Express Travel Related Services Company, Inc.

# Merchant Regulations - U.S.

# 13

## contents

13.1    introduction

13.2    definitions (U.S.)

13.3    recruitment of sponsored merchants (U.S.)

13.4    general psp requirements (U.S.)

13.5    financial and payment terms (U.S.)

13.6    sponsored merchant reporting requirements (U.S.)

13.7    indemnity - limitation of liability (U.S.)

13.8    audit and oversight (U.S.)

payment service provider





payment service provider

| 13.1 | **introduction** | In some countries, additional policies and procedures are applicable to Merchants who provide payment services on behalf of Sponsored Merchants. |

| 13.1 | **introduction (U.S.)** | If you wish to provide Payment Services, we may request that you provide to us additional information about your business. We have the right, in our sole discretion, whether or not to approve and classify you as a Payment Service Provider (PSP) on our Network. If we so approve you, then: |

- ○ you must comply with the requirements of this chapter 13,

- ○ the prohibitions in the Agreement (including <u>section 3.3, "prohibited uses of the Card"</u>) against acting on behalf of other parties will not apply to your Payment Services,

- ○ the requirement in <u>section 4.4, "completing a transaction at the point of sale (U.S.)"</u> that Cardmembers provide Transaction Data directly to you is modified to the extent necessary to permit Sponsored Merchants to collect that Transaction Data directly from Cardmembers and provide it directly to you,

- ○ when processing an Aggregated Charge, you must not combine purchases or refunds (or both) from more than one Sponsored Merchant,

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



payment service provider

**13.1**  **introduction (U.S.)**
**(continued)**

○ in addition to our other rights and remedies, we may assess non-compliance fees if you fail to fulfill data and reporting requirements in this chapter 13. (See subsection 14.2.8, "Payment Service Provider fees (U.S.)"), and

Effective July 15, 2015, the following Payment Service Provider general non-compliance fees will apply if you fail to comply with policies and requirements in this chapter 13.

○ in addition to our other rights and remedies, we may assess other non-compliance fees if you fail to comply with policies and requirements in this chapter 13 (see subsection 14.2.8, "Payment Service Provider fees (U.S.)"). In lieu of or in addition to the imposition of such non-compliance fees, we, in our sole discretion, may require you to take such action and we may take such action as we deem necessary or appropriate to ensure compliance with policy and requirements. In the exercise of such discretion, we may consider the nature, willfulness, number and frequency of occurrences and possible consequences resulting from a failure to comply with policy and requirements. We may also, in our sole discretion, provide notice and to specify a timeframe by which to cure such non-compliance before assessing non-compliance fees.

This chapter 13 states additional requirements applicable to Merchants classified as PSPs. All other provisions and requirements of the Agreement apply to them as well. To the extent possible, the provisions of this chapter 13 and the other provisions of the Merchant Regulations shall be interpreted to give each their full effect. However, if a conflict is deemed to exist between them, the provisions of this chapter 13 shall control.



payment service provider

**13.2    definitions (U.S.)**     For purposes of this chapter 13, the following definitions apply:

*American Express Technical Requirements* - the Technical Specifications (including the American Express Authorization Guide and Financial Settlement Guide), BIN Range Specifications, Close Rate reporting requirements, Sponsored Merchant File, and Secure File Transfer Protocol Quick Reference Guide.

*Estimated Annual Charge Volume* - the annual Charges that you estimate a Sponsored Merchant Prospect will submit using a Card in the first twelve months after executing a Sponsored Merchant Agreement with you.

*High CV Sponsored Merchant* - a Sponsored Merchant with either (1) $1,000,000 or greater in Charge volume in a rolling twelve month period or (2) greater than $100,000 in Charge volume in any three consecutive months. For clarification, if a Sponsored Merchant has multiple Establishments under the same tax identification number (TIN), the Charge Volume from all Establishments shall be summed together when determining whether the Sponsored Merchant has exceeded the thresholds above.

*Oversight Review* - a periodic review of a PSP's Payment Services.

*Payment Services* - the provision of payment services in connection with Transactions between Cardmembers and Sponsored Merchants whereby you, the Entity providing such services (and not the Sponsored Merchant), are the Merchant of record, submit Transactions under your Merchant Number and receive payment from us for Charges (among other things).

*Payment Service Provider or PSP* - a provider of Payment Services (sometimes called an "aggregator" or "master merchant" in our materials).

*Sponsored Merchant* - a Sponsored Merchant Prospect that has entered into a Sponsored Merchant Agreement with you. Sponsored Merchants are one of your Covered Parties pursuant to chapter 8, "protecting Cardmember information".

*Sponsored Merchant Agreement* - the standard form agreement governing your provision of Payment Services that you must have the Sponsored Merchant Prospect execute pursuant to this chapter 13.

*Sponsored Merchant Prospect* - any third-party seller of goods and services that either:

❑    does not accept the Card and which operates one or more Sponsored Merchant Websites or other Establishments, or

❑    accepts the Card with respect to its existing methods for selling goods and services but also proposes to submit Transactions through a Payment Service Provider.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



payment service provider

| 13.2 | **definitions (U.S.) (continued)** | *Sponsored Merchant Website* – any website operated by a Sponsored Merchant Prospect for the sale of goods or services (or both). |
|---|---|---|

| 13.3 | **recruitment of sponsored merchants (U.S.)** | If we approve and classify you as a PSP, you are permitted to recruit for your Payment Services only Sponsored Merchant Prospects that: |
|---|---|---|

- are located in the United States, but not in Puerto Rico, the U.S. Virgin Islands, or other U.S. territories and possessions,

- do not fall within any of the exclusions set forth in subsection 13.3.3, "exclusions (U.S.)",

- transact in U.S. currency only (i.e., price their goods and services and receive Payment Services from you solely in U.S. dollars) and to which you remit Settlement payments solely to U.S. bank accounts, and

- have Estimated Annual Charge Volume of less than $1,000,000.

You must recruit Sponsored Merchant Prospects for Payment Services only in accordance with the provisions of this chapter 13.

| 13.3.1 | **payment service provider registration process (U.S)** | You must register with American Express in accordance with this section 13 and perform due diligence screening of your Sponsored Merchants, which must include a financial review and background check of each Sponsored Merchant per the provisions of this chapter 13. |
|---|---|---|

You must send to American Express a Payment Service Provider Registration Form as provided in appendix a.3, "Payment Service Provider registration form (U.S.)"via email with the subject line entitled "PSP Registration Form" to program.oversight.management@aexp.com.

You may solicit and sign Sponsored Merchant Prospects only after you have completed the Payment Service Provider Registration process set forth in these Merchant Regulations, and any required testing and/or certification and American Express has provided its approval for you to operate as a Payment Service Provider.

If you fail to comply with the Payment Service Provider registration, American Express has the right to issue a warning letter indicating your non-compliance. You shall have thirty (30) days to comply. If you fail to comply within thirty (30) days then American Express, in its sole discretion, may:

- assess the non-compliance fees set forth in subsection 14.2.8, "Payment Service Provider fees (U.S.)"

- take additional actions to address the non-compliance, including revocation of your eligibility to sign Sponsored Merchants.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



payment service provider

| | | |
|---|---|---|
| **13.3.2** | **payment service provider changes (U.S.)** | You must update your PSP information to keep such information current using the Payment Service Provider Change Form provided in <u>appendix a.4, "Payment Service Provider change form (U.S.)"</u>. |

In addition to your obligations under the Agreement, you must also use the Payment Service Provider Change Form to notify us if you are terminating your participation as a Payment Service Provider. You must send to American Express the Payment Service Provider Change Form via email with the subject line entitled "PSP Change Form" to: <u>program.oversight.management@aexp.com</u>.

In addition to our other rights and remedies, we may assess a non-compliance fee as described in <u>subsection 14.2.8, "Payment Service Provider fees (U.S.)"</u> if you fail to fulfill these reporting requirements.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

payment service provider

**13.3.3    exclusions (U.S.)**     You shall not recruit Sponsored Merchant Prospects that fall within any of the following exclusions:

- any of the criteria in section 10.2, "prohibited merchants (U.S.)",
- internet auctions,
- Payment Service Providers (except to the extent that the PSP itself sells goods to which it has title),
- Telecommunications industry (including wireless, cable, satellite, wireline, and ISP), or
- travel industry (including air travel, cruise line, car rental, lodging, and travel tour operators).

If a portion of a Sponsored Merchant's Charges, or one of its lines of business, falls within any of the foregoing exclusions, then you must exclude that portion or line of business from your Payment Services. We also have the right to disapprove such a Sponsored Merchant in our sole discretion, in which event you must cease providing Payment Services to it immediately upon notice from us.

We may modify these exclusions at any time in our sole discretion. If you have begun to recruit a Sponsored Merchant Prospect that falls within such a modified exclusion, you must cease all such efforts immediately. If you have begun providing Payment Services to a Sponsored Merchant that falls within:

- the first "prohibited Merchant" exclusion above (as modified), then you must cease providing Payment Services to it immediately, or
- the other exclusions above (as modified), then you must notify us and cooperate with us to transition such Sponsored Merchant to us as we may request, including providing to us the Sponsored Merchant's contact information.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



payment service provider

| | |
|---|---|
| **13.3.4** **sponsored merchant agreements (U.S.)** | You must enter into a Sponsored Merchant Agreement with each Sponsored Merchant Prospect that meets the foregoing requirements, and you must enforce each Sponsored Merchant's compliance with the provisions of the Sponsored Merchant Agreements, including terminating your provision of Payment Services to it if it has breached any of those provisions. You must not provide Payment Services before the Sponsored Merchant Agreement has been executed. |

All Sponsored Merchant Agreements must be consistent with the American Express Brand, all Applicable Laws, rules and regulations, and must include the following basic provisions:

- An express agreement from the Sponsored Merchant to accept Cards in accordance with the terms of the Sponsored Merchant Agreement and these basic provisions.

- An acknowledgment from the Sponsored Merchant that it may be converted from your Payment Services program to a direct Card acceptance relationship with us if and when it becomes a High CV Sponsored Merchant in accordance with subsection 13.3.5, "conversion of large merchants (U.S.)". This acknowledgment must include express agreement that, upon conversion, (i) the Sponsored Merchant will be bound by our then-current Card acceptance agreement; and (ii) we will set pricing and other fees payable by the Sponsored Merchant for Card acceptance.

- An express authorization from the Sponsored Merchant to you to submit Transactions to, and receive settlement from, us on behalf of the Sponsored Merchant.

- Express disclosures and consents necessary for:

  - you to disclose Transaction Data, Merchant data, and other information about the Sponsored Merchant to us and our Affiliates, agents, subcontractors, and employees, and

  - us and our Affiliates, agents, subcontractors, and employees to use such information to perform under the Agreement, operate and promote the Network, perform analytics and create reports, and for any other lawful business purpose, including as described in section 2.4, "merchant information".

- A third-party beneficiary provision, conferring on us beneficiary rights, but not obligations, to the Sponsored Merchant Agreement that will fully provide us with the ability to enforce the terms of the Sponsored Merchant Agreement against the Sponsored Merchant.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

payment service provider

**13.3.4    sponsored merchant agreements (U.S.) (continued)**

○ A provision containing the disclosures as described in section 2.12 "Cardmember offers".

○ Requirements to display our Marks and otherwise honor the Card in accordance with chapter 3, "Card acceptance" and the following sections of the Merchant Regulations must be included verbatim, except as appropriate to conform with the phrasing and terminology of the Sponsored Merchant Agreement (e.g., references in the sections to "you" can be changed to the term by which you refer to the Sponsored Merchant).

▪ First paragraph of section 3.1, "Card acceptance".

▪ Second paragraph of section 3.2, "treatment of the American Express Brand".

▪ Third paragraph of section 3.2, "treatment of the American Express Brand (U.S.)".

▪ First and third paragraphs of section 3.2.1, "treatment of the American Express marks".

▪ Second paragraph, and first sentence of third paragraph, of section 3.5, "treatment of American Express Cardmember information".

○ Requirement that the Sponsored Merchant comply with the applicable website information display guidelines set forth in section 13.4, "general psp requirements (U.S.)".

○ Requirements that will enable you to comply with chapter 4, "transaction processing," chapter 5, "authorization," chapter 6, "submission," chapter 8, "protecting Cardmember information," chapter 11, "chargebacks and inquiries"

○ Industry-specific requirements of chapter 12, "specific industries," as applicable to the Sponsored Merchant.

○ Requirement to maintain customer service information pursuant to subsection 13.4.1, "customer service information (U.S.)".

○ Prohibitions against processing Transactions or receiving payments on behalf of, or (unless required by law) re-directing payments to any other party.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



payment service provider

**13.3.4    sponsored merchant agreements (U.S.) (continued)**

- ○ Requirement that Sponsored Merchants' refund policies for purchases on the Card must be at least as favorable as their refund policy for purchase on any Non-Credit Payment Forms, and the refund policy be disclosed to Cardmembers at the time of purchase and in compliance with Applicable Law.

- ○ Prohibition against billing or collecting from any Cardmember for any purchase or payment on the Card unless Chargeback has been exercised, the Sponsored Merchant has fully paid for such Charge, and it otherwise has the right to do so.

- ○ Limitation of liability provision, including a provision in which the Sponsored Merchant agrees to abide by the limitation on our liability set forth in the Agreement.

- ○ Covenant that the Sponsored Merchant is not a third-party beneficiary under the Agreement.

- ○ Requirement to comply with all Applicable Laws, rules and regulations relating to the conduct of the Sponsored Merchant's business.

- ○ Authorization for you to terminate your provision of Payment Services to the Sponsored Merchant when required by us in accordance with the provisions of this chapter 13.

- ○ Requirement to remove our Marks from the Sponsored Merchant Website and wherever else they are displayed upon termination of the Sponsored Merchant Agreement or a Sponsored Merchant's participation in your Payment Services.

- ○ The dispute resolution provision in appendix a.2, "Arbitration Agreement (as to Claims involving American Express) (U.S.)", except as appropriate to conform with the phrasing and terminology of the Sponsored Merchant agreement.

You must provide to us copies of your standard Sponsored Merchant Agreement form from time to time on request.

If we notify you that a Sponsored Merchant has breached any of these provisions, then you shall cease providing Payment Services to it within five (5) days after your receipt of such notice and cause it to remove all our Marks from its Sponsored Merchant Website and other locations immediately.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



payment service provider

| 13.3.5 | conversion of large merchants (U.S.) | Without limiting the prohibition in section 13.3, "recruitment of sponsored merchants (U.S.)" against signing Sponsored Merchant Prospects with Estimated Annual Charge Volume of $1,000,000 or greater, we may notify you for any reason (including your signing an ineligible Sponsored Merchant Prospect) that a Sponsored Merchant has become a High CV Sponsored Merchant. |

Within five business days of receiving the notice, you shall provide us with data to enable us to assign the High CV Sponsored Merchant a unique Merchant Number.

Effective on the date specified in the notice, the following shall apply:

- the High CV Sponsored Merchant shall become a direct Card-accepting Merchant under our standard Card acceptance program and cease to be a Sponsored Merchant,

- you shall no longer have the right to permit the High CV Sponsored Merchant to accept Cards under a Sponsored Merchant Agreement,

- the High CV Sponsored Merchant will be bound by our Card acceptance agreement (to which you shall not be a party) and our Discount and other fees and assessments shall apply, and

- we shall provide the High CV Sponsored Merchant with our "welcome kit" containing our current Card acceptance agreement and information about our standard Card acceptance program.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



payment service provider

**13.4    general psp requirements (U.S.)**

You shall:

- Perform verification checks, credit checks, "know your customer," and anti-money laundering checks of Sponsored Merchants in accordance with all Applicable Laws and regulations and otherwise as we may require, providing us, on request, copies of your policies governing these checks and otherwise responding to our request about your performance of these checks.

- Ensure that each Sponsored Merchant Website does not contain libelous, defamatory, obscene, pornographic, or profane material or any instructions that may cause harm to any individuals or to the American Express Brand.

- Ensure that Sponsored Merchants adhere to the following website information display guidelines in the event a Sponsored Merchant has a website and/or operates an e-commerce business. The Sponsored Merchant Website must display the following:

  - An accurate description of the goods/services offered, including the currency type for the Transaction (e.g., U.S. Dollars).
    **Note**: Transaction currency must be in U.S. Dollars.
  - Sponsored Merchant's physical address in the U.S.
  - An email address or telephone number for customer service disputes.
  - Return/refund policy.
  - A description of the Sponsored Merchant's delivery policy (e.g., no overnight delivery).
  - A description of the Sponsored Merchant's security practices (e.g., information highlighting security practices the Sponsored Merchant uses to secure Transactions on its systems, including Transactions conducted on the Internet).
  - A statement of known export restrictions, tariffs, and any other regulations.
  - A privacy statement regarding the type of personal information collected and how the information is used. Additionally, Sponsored Merchants must provide to customers the option to decline being included in marketing campaigns or having their personal information included on lists sold to third parties.

Additional supporting information, documentation or processes are required for the Sponsored Merchant categories listed below, and PSP will furnish such documentation to American Express within seventy-two (72) hours of request. This requirement is not intended to create a representation, warranty, or guarantee by PSP that any Sponsored Merchant conducts, or will continue to conduct, business in any particular industry.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



payment service provider

**13.4    general psp requirements (U.S.) (continued)**

*Charities*: At the time of signing a Sponsored Merchant Prospect that is a 501(c)(3) charitable organization and accepting payment for tax deductible donations, PSP must obtain proof of the Sponsored Merchant Prospect's tax-exempt status (e.g., IRS Form 1023).

*Licensed Massage Parlors*: At the time of signing a Sponsored Merchant that is classified as a licensed massage parlor (MCC 7297), PSP must obtain proof that such Sponsored Merchant possesses the necessary licensure specializing in providing therapeutic massage services.

*Online Pharmacy*: At the time of signing a Sponsored Merchant Prospect that is an online pharmacy, PSP must obtain an attestation in the format provided in appendix a.6 (or in a different format chosen by PSP provided that all the information in appendix a.6 is included) from an authorized representative of the Sponsored Merchant Prospect that it complies with the licensing and inspection requirements of U.S. federal law and the state in which it is located and each state to which it dispenses pharmaceuticals, or proof that the pharmacy is certified by the VIPPS® (Verified Internet Pharmacy Practice Sites) Program of the National Association of Boards of Pharmacy. PSP must retain hard copies of this requisite online pharmacy verifying information or documentation for a period of seven (7) years from the date of receipt.

*Online Tobacco*: At the time of signing a Sponsored Merchant Prospect that is an online seller of tobacco, including "e-cigarettes", PSP must obtain a notarized "Affidavit of Compliance with Laws" in the format provided in appendix a.5 (or in a different format chosen by PSP provided that all the information in appendix a.5 is included) from the Sponsored Merchant Prospect, ensuring that Sponsored Merchant Prospect complies with all Applicable Laws involving the sale of online tobacco, including, but not limited to not being listed on the Bureau of Alcohol, Tobacco, Firearms and Explosive's PACT Act Non-Compliant List. PSP must retain copies of the notarized Affidavit of Compliance with Laws for a period of seven (7) years from the date of receipt.

*Political Organizations*: At the time of signing a Sponsored Merchant Prospect that is a political organization, PSP must obtain verification of Sponsored Merchant Prospect's status as a political organization. Such verification includes, but is not limited to, proof of Sponsored Merchant Prospect's tax exempt filing status with the IRS, article of incorporation, or approved online tools (e.g., Federal Election Commission online tool to verify Sponsored Merchant Prospect is a political organization).

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



payment service provider

**13.4    general psp requirements (U.S.) (continued)**

○ Provide Sponsored Merchants an option to opt-out of direct mail, newsletters or messages about products, services and resources from American Express for different forms of communications by contacting you via inbound telephone, email, facsimile, website and any other means identified by you, or by exercising the opt-out options that may be described or offered in emails, SMS messages, faxes or other communications from American Express. If the Sponsored Merchant has opted-out, it may continue to receive messages from American Express regarding services and programs designed to enhance the value of the American Express Network. You may provide this option using an "opt-out checkbox" or other appropriate mechanism. You must identify Sponsored Merchants that opt-out in the Sponsored Merchant file (see section 13.6, "sponsored merchant reporting requirements (U.S.)") in order for American Express to update its records accordingly. If a Sponsored Merchant opts out from receiving American Express related marketing, you shall not send such Sponsored Merchant further marketing that appears to have originated from or have involved American Express.

○ Comply with all applicable provisions in chapter 3, "Card acceptance", chapter 4, "transaction processing", chapter 5, "authorization", chapter 6, "submission", chapter 8, "protecting Cardmember information", chapter 9, "fraud prevention", chapter 11, "chargebacks and inquiries", chapter 12, "specific industries", and chapter 14, "merchant fees".

○ Maintain all licenses and legal and regulatory permissions necessary to perform your Payment Services.

○ Establish separate Merchant Numbers with us as we may require, and submit Charges thereunder in the same currency (i.e., U.S. dollars) that the Sponsored Merchant presented the price to the Cardmember.

○ Settle payments for Sponsored Merchant Charges to the applicable Sponsored Merchant. You shall not process payment on behalf of any Entity other than a Sponsored Merchant.

○ If we should establish any method to identify Sponsored Merchants by additional descriptors, you shall comply with our implementation of such method of identification.

○ Conform to any additional requirements that are provided to you for Internet Orders.

○ Certify for, and participate in, our Automated Address Verification service in connection with your Payment Services.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

payment service provider

**13.4**    **general psp**
**requirements (U.S.)**
**(continued)**

○ Inform your Processor that you are classified as a Payment Service Provider and work with them to ensure that your submission of required data elements comply with the American Express Technical Requirements.

○ Inform us promptly of any information related to any Sponsored Merchant or any Sponsored Merchant Website or other location that could reasonably lead to a Claim or demand against us by, or our liability to, a third party.

○ Upon termination of the Agreement, require that all Sponsored Merchants remove our Marks from their Sponsored Merchant Websites and all other locations.

○ If PSP cancels or disentitles a Sponsored Merchant in accordance with American Express' request, then PSP must include with its standard notification of Sponsored Merchant termination, a written communication in the format provided below:

"A federal court has ruled that you have a protected right to influence the credit or charge card that your customers use and favor any credit or charge card brand that you wish. To review the full scope of your protected rights, please read the court's Order Entering Permanent Injunction as to the American Express Defendants dated April 30, 2015, which is available at: http://www.justice.gov/atr/case-document/order-entering-permanent-injunction-american-express-defendants.

If you believe that American Express has terminated or threatened to terminate your right or ability to accept American Express Cards because you have influenced or sought to influence the general purpose credit or charge card that your customers use or because American Express wrongly determined that you disparaged or mischaracterized the American Express brand, you may report such information to American Express's Chief Compliance Officer by sending an e-mail to MerchantDOJInjunctionComplianceQuestions@aexp.com or file a complaint or inquiry with the Department of Justice by sending an e-mail to Mr. Bennett Matelson at ATR.CardSteering@usdoj.gov."

The aforementioned written communication requirement shall not apply to Sponsored Merchants whom PSP has terminated for cause, or fraudulent or other activities in compliance with these Merchant Regulations.




payment service provider

| 13.4.1 | **customer service information (U.S.)** | You and each Sponsored Merchant must maintain customer service information that is readily available for review by Cardmembers transacting with the Sponsored Merchant. The customer service information should provide clear instructions on how to contact you or the Sponsored Merchant, including an active customer service email address and telephone number. |

**13.4.2  disclosures to Cardmembers and sponsored merchants (U.S.)**

It is important that Cardmembers recognize Transactions made through your Payment Services on their billing statements. Accordingly, you must:

- make clear to Cardmembers at the time of sale and on their billing statements who is the seller (e.g., you or, when you are providing Payment Services, the Sponsored Merchant), and

- advise the Cardmember that you are accepting the Charge and ensure that your name prominently appears wherever appropriate (i.e., on the Sponsored Merchant Website payment page, and on any Transaction receipt or confirmation email issued to the Cardmember by you or the Sponsored Merchant).

> The billing descriptor information you submit must be adequate enough to reduce instances of Cardmember "no knowledge" disputes.

It is important that Sponsored Merchants understand your Payment Services. Accordingly, to the extent that you assess them fees or assessments for your Payment Services, you must:

- clearly disclose to any Sponsored Merchant that you are charging such fees or assessments (or both) for your Payment Services and the amount thereof, and

- make clear to the Sponsored Merchant that we have not required or requested such fees or assessments (or both).

**13.4.3  chargebacks / disputed charges (U.S.)**

We may exercise Chargeback on Disputed Charges arising in connection with your Payment Services. You are fully responsible and financially liable for all Transactions and all other issues involving Sponsored Merchants. We shall have no responsibility in this regard except as expressly set forth in this chapter 13.

In addition, we may place you in one of our Chargeback programs. See <u>section 11.14, "chargeback programs (U.S.)"</u>.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



payment service provider

**13.4.4   marketing (U.S.)**

To the extent that any of your marketing materials for recruiting Sponsored Merchant Prospects refer to us or the Card, that portion of the materials are subject to our prior review and written approval in each instance. You must send such marketing materials to your American Express representative or to the following address for written approval. We may, in our sole discretion, withhold or delay our approval to use those materials. You shall bear all costs and expenses relating to those materials.

Under no circumstances shall our approval of, or provision of pre-approval, material or any content therein (or both) be construed to imply any endorsement, representation, or warranty by us, and you shall not state or imply anything to the contrary. We disclaim any and all representations, warranties, whether express, implied, oral or statutory, and liabilities with respect to such materials or any content therein (or both). Your use of such materials or content (or both) is at your own risk.

> American Express Travel Related Services Company, Inc.
> 200 Vesey Street, Floor 33
> 3 World Financial Center
> Mail Drop: 01-33-04
> New York, NY 10285
>
> Attn: Payment Service Provider Team

You shall not use any Cardmember Information or lists of partial or complete Cardmember names for the purpose of providing or selling this information to third parties or other internal uses (e.g., marketing). You shall not use for marketing, sell, or disseminate a list compiled specifically of those Cardmembers who make purchases on the Card at Sponsored Merchants.



payment service provider

| | |
|---|---|
| **13.4.5** **treatment of specific industries (U.S.)** | This subsection describes the requirements applicable to the assessment of convenience fees by Sponsored Merchants classified in the rental establishments, government, utilities, or certain education (i.e., higher education, private school–kindergarten to grade 12) categories. These requirements apply regardless of whether the convenience fee is imposted by the Sponsored Merchant or PSP. |

Customers should feel free to use all forms of payment that Sponsored Merchants accept without being penalized for choosing a particular form of payment. To promote consumer choice, Sponsored Merchants are generally prohibited from imposing any restrictions, conditions, or disadvantages when the Card is accepted that are not imposed equally on all Other Payment Products. Sponsored Merchants must not impose a higher convenience fee on Charges than it imposes on Other Payment Products, except for automated clearing house funds transfers, cash, and checks. American Express views such discrimination against Cardmembers as a breach of Card acceptance. However, nothing in this section prohibits Sponsored Merchants from exercising their rights to offer discounts and incentives, or otherwise influence the customer's choice of payment form.

Sponsored Merchants in the government, utilities, and applicable education sectors may assess convenience fees on Charges, provided that such Sponsored Merchants comply with the other requirements of this sections, as follows:

- ❍ You may assess convenience fees on all Charges for Sponsored Merchants classified as government Entities, including government utilities, and privately owned utilities.

- ❍ You may assess convenience fees only on Charges for tuition, room and board, school lunch payments, or other mandatory fees for Sponsored Merchants classified as educational institutions.

- ❍ All applicable provisions in [chapter 12, "specific industries"](#).

Sponsored Merchants must clearly disclose the amount of convenience fees to the customer, which may include itemization on the billing statement, invoice or receipt, and give the customer the opportunity to cancel the Charge if the customer does not want to pay the convenience fee. Any explanation, verbal or written, describing why the convenience fee is being assessed, or how it is calculated, must characterize the convenience fee as an assessment to cover your or your Sponsored Merchant's administrative costs and not as an assessment to cover your or your Sponsored Merchant's cost of accepting the Card.

Prior to a Sponsored Merchant assessing a convenience fee, you shall notify each Sponsored Merchant of the aforementioned requirements, and monitor each Sponsored Merchant's compliance with these requirements.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



payment service provider

| 13.5 | **financial and payment terms (U.S.)** | The Discount that we charge you with respect to Charges arising in connection with your Payment Services and our payments to you will be determined from time to time according to chapter 7, "settlement", except: our one-day payment plan does not apply, unless we notify you in writing otherwise, and we may change the speed of payment for Charges as appropriate to manage risk, mitigate harm, or otherwise to the extent appropriate to operate the American Express Network. |

You have the sole right to determine all charges and fees payable by Sponsored Merchants to you for the services you provide to Sponsored Merchants, except that you must not discriminate against the Card by charging Sponsored Merchants higher or additional fees or assessments (or both) for such services than you would charge for your similar services you provide to Merchants for Other Payment Products. Any such fees or assessments must not be prohibited by Applicable Law.

| 13.6 | **sponsored merchant reporting requirements (U.S.)** | It is important that we know all Sponsored Merchants that have retained you as a PSP. Accordingly, we require Sponsored Merchant information from you on a weekly basis. Once we notify you, you must submit to us, via such method as we may prescribe, a list of all Sponsored Merchants that have retained you as a PSP. Each list must contain the data elements required by the American Express Technical Requirements. |

We may notify you if we do not receive the list, or if we believe that it is not complete and accurate. If we still have not received the list or if you fail to correct any omission or inaccuracy in the list within ten (10) days of notice, we shall have the right to terminate the Agreement or your authorization to provide Payment Services, in our sole discretion.

In addition to our other rights and remedies, we may assess a non-compliance fee as described in subsection 14.2.8, "Payment Service Provider fees (U.S.)" if you fail to fulfill these reporting requirements.

| 13.6.1 | **transactional data requirements (U.S.)** | In addition to the requirements of chapter 13, you shall provide us with the transaction data required by the American Express Technical Requirements with each Authorization and Submission request, as outlined in section 13.1, "introduction" and section 4.4, "completing a transaction at the point of sale", and otherwise with the applicable frequency required by the American Express Technical Requirements. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015          217



payment service provider

| | | |
|---|---|---|
| **13.6.2** | **disapproval of merchant (U.S.)** | We retain the right, in our sole discretion, to disapprove any Sponsored Merchant. If we notify you that we disapprove of a Sponsored Merchant, you shall: |

- cease providing Payment Services to such Sponsored Merchant within five (5) days after your receipt of such notice,
- promptly on request, confirm details to us of such Sponsored Merchant, and
- cause the Sponsored Merchant to remove all our Marks from its Sponsored Merchant Website or other locations immediately.

| | | |
|---|---|---|
| **13.7** | **indemnity - limitation of liability (U.S.)** | Your indemnity obligations under the Agreement include damages, liabilities, losses, costs and expenses, including legal fees, arising out of the following: |

- your breach of any provision of this chapter 13,
- your failure or omission in the provision of Payment Services,
- any Claim from:
  - a Sponsored Merchant Prospect that does not become a Sponsored Merchant, and
  - a Sponsored Merchant arising out of or in connection with its Sponsored Merchant Agreement (or both),
- a Sponsored Merchant's act or omission in connection with the relationship established under a Sponsored Merchant Agreement, including liability arising from fraudulent Transactions or Data Incidents at Sponsored Merchants, and
- any claim or action by your personnel, agents, and subcontractors that we are liable to such person as the employee or joint employer of such person, including any claim for employee benefits as a result.

The limitation on our liability set forth of the Agreement shall apply to any damages you may incur in connection with your provision of Payment Services.

| | | |
|---|---|---|
| **13.7.1** | **termination (U.S.)** | Without waiving our other rights and remedies, if you do not fulfill the requirements of this chapter 13, we may terminate the Agreement or your authorization to provide Payment Services, in our sole discretion. |

| | | |
|---|---|---|
| **13.8** | **audit and oversight (U.S.)** | The following sections apply to your provision of Payment Services. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

payment service provider

**13.8.1    audit rights (U.S.)**

We reserve the right to conduct audits of you for the purpose of determining compliance with the policies set forth in these Merchant Regulations. You must provide to us and our auditors access at all reasonable times to (i) any facility or part of a facility at which either you or any of your subcontractors providing the Payment Services, (ii) your personnel, and (iii) data and records relating to the Payment Services for the period you are required to maintain such records under these Merchant Regulations or the Agreement. Such access is necessary to:

- Verify the security and integrity of American Express information, Cardmember Information, Transaction Data, and Sponsored Merchant data and examine the systems that process, store, support and transmit that data;

- Verify the appropriate administration and retention of Sponsored Merchant Agreements;

- Review communications from you to Sponsored Merchants that refer to us;

- Conduct any of the audits or inspections referenced elsewhere in these Merchant Regulations;

- Examine your performance of the Payment Services and conformance to the terms of these Merchant Regulations and the Agreement including, to the extent applicable to the Payment Services and to the Charges, by performing audits: (i) of practices and procedures; (ii) of systems, equipment and software; (iii) of general controls and security practices and procedures; (iv) of disaster recovery and back-up procedures; and (v) as reasonably necessary to enable us to meet, or to confirm that you are meeting, Applicable Laws;

- Review your risk management and compliance practices, policies and controls related to Payment Services;

- Verify that Settlement for Sponsored Merchants is performed in the same manner as for Other Payment Products and that Settlement is directed to a U.S. bank account; and

- Verify that requisite "know your customer," and anti-money laundering efforts were performed by you.

You will provide to us and our auditors such assistance as we may reasonably request. You will cooperate fully with us or our designees in connection with any audit functions, including Oversight Reviews described in subsection 13.8.2, "oversight reviews (U.S.)" below, and with regard to examinations by regulatory authorities.

We and our auditors will comply with your reasonable security requirements and will schedule and conduct audits in a manner that does not unreasonably interfere with your ordinary business operations.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

October 2015         219



payment service provider

| | | |
|---|---|---|
| **13.8.1** | **audit rights (U.S.) (continued)** | You will maintain financial and non-financial records of transactions, policies and procedures, and activities used or performed in connection with Payment Services (subject to redaction of highly-confidential information and other information not relevant to Payment Services) that is reasonably necessary to enable us to exercise our audit rights under this <u>section 13.8, "audit and oversight (U.S.)"</u>. |
| | | We may provide information obtained in connection with audits, including audit findings, to our auditors. |
| | | No information or materials received by us shall serve to modify any term of, or waive any of our rights under the Agreement, nor shall any attestation accepted by us in lieu of materials requested by us serve to limit our right to require such materials at any time thereafter. |
| **13.8.2** | **oversight reviews (U.S.)** | Notwithstanding our audit rights set forth in <u>subsection 13.8.1, "audit rights (U.S.)"</u>, we shall have the right to conduct an Oversight Review at all reasonable times. The Oversight Review shall be conducted by us or our auditors. |
| | | We shall provide you with advance notice before conducting an Oversight Review. Prior to commencement, we shall schedule a kick-off meeting at which time the scope of the review shall be communicated to you. You shall have four (4) weeks to provide us with all requisite documentation requested in connection with the Oversight Review. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



payment service provider

| | | |
|---|---|---|
| **13.8.3** | **audit and oversight review follow-up (U.S.)** | Following an audit or examination as set forth in subsection 13.8.1, "audit rights (U.S.)", and subsection 13.8.2, "oversight reviews (U.S.)", above, we may conduct, or request our auditors to conduct, an exit conference with you to obtain factual concurrence with issues identified in the review. |

You and we will promptly meet to review each audit report after its issuance and to mutually agree upon the appropriate manner in which to respond to the changes suggested by the audit report.

If an audit identifies deficiencies in your systems or processes related to the performance of Payment Services, compliance with Applicable Law, or the integrity or security of American Express information, you shall provide to us, within thirty (30) days after receiving notice, a remediation plan for our approval addressing the identified deficiencies and actions that you will take to cure such deficiencies.

If you fail to comply with the requirements set forth in section 13.8, "audit and oversight (U.S.)" we have the right to issue a warning letter indicating your non-compliance. You shall have thirty (30) days to comply.

Effective July 15, 2015, If you fail to comply within thirty (30) days, then we, in our sole discretion, may assess non-compliance fees set forth in subsection 14.2.8, "Payment Service Provider fees (U.S.)".

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





payment service provider

this page intentionally left blank

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.

# Merchant Regulations - U.S.

14

## contents

14.1    introduction

14.2    types of fees

merchant fees





merchant fees

| 14.1 | introduction | You must pay us the Discount and you may be subject to various other fees and assessments. Some fees or assessments are for special products or services, while others may be applied because of your non-compliance with our policies and procedures. Many non-compliance fees and assessments can be avoided by correcting the actions that are causing you not to be in compliance. |
|---|---|---|

| 14.2 | types of fees | The Agreement provides for various fees and assessments, as described in the following tables. |
|---|---|---|

14.2.1 Card acceptance discount fees (U.S.)

| fee | description | amount |
|---|---|---|
| Discount | The Discount is one of the amounts we charge you for accepting the Card. For a full description of Discount, see chapter 7, "settlement." To determine the Discount that you pay, contact your American Express representative. | Varies |
| Monthly Flat Fee | For details on the Monthly Flat Fee option, see subsection 7.3.1, "monthly flat fee". If we charge you a Monthly Flat Fee, we will debit your Bank Account for such Monthly Flat Fee instead of debiting the amount corresponding to your Discount Rate. We may automatically charge you a Monthly Flat Fee instead of a Discount Rate if you do not activate your Merchant Account and submit Charges to us within 150 days after we set up your Merchant Account. If we do not receive any Charges from you within any period of twelve (12) consecutive months, we may charge you a Monthly Flat Fee instead of a Discount Rate. | $7.95 per month |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



merchant fees

| | fee | description | amount |
|---|---|---|---|
| **14.2.2** authorization fees (U.S.) | Authorization Integrity Fee | A fee applied in each month after the following Authorization without submission threshold has been met:<br><br>If the monthly ratio of the total amount of Approved Charges that are not submitted, reversed or submitted late to total amount of Approved Charges exceeds ten percent (10%) at an Establishment for three (3) consecutive months, we may charge, starting on the 3rd month, a fee for each Approved Charge for which you do not submit, reverse or submit late (see section 5.10, "authorization time limit"). | 0.10% of amount of the Approved Authorization dollar volume plus $0.05 for each Approved Charge |
| | gateway fee | If you or your Covered Parties route Authorization requests to American Express through the Visa or MasterCard processing gateways, Visa and MasterCard charge us fees for these Authorizations. We will pass their fees, which may vary depending on Authorization volume and other factors, on to you for all of your Authorizations that are routed through their gateways in a given month. | varies |
| | non-swiped Transaction fee | A fee applied to any Charge for which we did not receive both (i) the full Magnetic Stripe, and (ii) the indicator as to whether the Card was swiped. | 0.30% of the face amount of each non-swiped Charge |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





merchant fees

| | fee | description | amount |
|---|---|---|---|
| 14.2.2 authorization fees (U.S.) (continued) | Voice Authorization fee | If your POS System is unable to reach our computer Authorization system for Authorization, or you do not have such POS Systems, you must request the Authorization for all Charges by calling the American Express Authorization Department. We may charge you a fee for each Charge for which you request Authorization by telephone unless:<br><br>❍ such failure to request Authorization electronically is due to the unavailability or inoperability of our computer Authorization system, or<br><br>❍ you are prompted with a "Please Call" or "Referral" message by your POS System, you contact us for a Voice Authorization on the same day you receive the message, and you enter the same dollar amount (within $1) over the telephone that you initially entered in the POS System when you received the message.<br><br>For information on how to avoid Voice Authorization fees, see section 5.7, "obtaining a voice authorization (U.S.)". | $0.65 per Charge |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



merchant fees

### 14.2.3 submission and settlement fees (U.S.)

Submitting electronically allows you to avoid paying a paper Submission rate. Electronic Submission ensures your Submission file is sent to us quickly, so we can begin the process of settling with you. If you are not submitting electronically, contact Merchant Services for information on how to facilitate electronic Submission.

| fee | description | amount |
|---|---|---|
| check fee | A fee may be assessed for each check that we issue/create. | $1.50 per check |
| inbound fee | A fee applied on any Charge made using a Card that was issued outside the United States*. | 0.40% of the face amount of the Charge |
| monthly gross pay fee | If you enroll in the monthly gross pay option, we may charge this fee if the amount of Charges exceeds a threshold amount we determine. For more information on the monthly gross pay option, see section 7.6, "payment options". | 0.03% of the face amount of the Charge |
| paper statement fee | If you choose to receive paper statements, we may charge you a fee for each paper statement. | not to exceed $7.95 per statement |
| paper submission rate | All paper Submissions are charged a higher Discount Rate than electronic Submissions. To determine the Discount Rate you pay for paper Submissions, contact your American Express representative. See subsection 14.2.1, "Card acceptance discount fees (U.S.)" | varies |
| Technical Specifications non-compliance fee | A fee applied to any Transaction submitted to us that does not comply with the Technical Specifications (see section 2.7, "compliance with the technical specifications") This fee applies to Transactions submitted via both a Processor and direct to American Express. | 0.75% of the face amount of the Transaction |

*As used herein, the United States does not include Puerto Rico, the U.S. Virgin Islands, and other U.S. territories and possessions.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

merchant fees

14.2.4    **data security fees (U.S.)**

| fee | description | amount | | | |
|-----|-------------|--------|---|---|---|
| Data Incident non-compliance fee | A fee assessed to you in respect of a Data Incident. See chapter 8, "protecting Cardmember information." | Not to exceed $100,000 per Data Incident | | | |
| data security non-validation fee | Depending on your Transaction volume, you have reporting obligations under our Data Security Operating Policy (see chapter 8, "protecting Cardmember information") including providing Validation Documentation to us.<br><br>You may be assessed non-validation fees if you fail to provide the mandatory Validation Documentation to American Express by the applicable deadline. See chapter 8, "protecting Cardmember information."<br><br>American Express will notify you of the applicable deadline for each reporting period.<br>&#9675; A non-validation fee will be assessed if the Validation Documentation is not received by the first deadline.<br>&#9675; An additional non-validation fee will be assessed if the Validation Documentation is not received within thirty (30) days of the first deadline.<br>&#9675; An additional non-validation fee will be assessed if the Validation Documentation is not received within sixty (60) days of the first deadline.<br>Non-validation fees are cumulative. | **Deadline** | **Level 1** | **Level 2 Level EMV** | **Designated Level 3 Merchant Only** |
| | | First Deadline | $25,000 | $5,000 | $20/month |
| | | 30 days past due | $35,000 | $10,000 | |
| | | 60 days past due | $45,000 | $15,000 | |
| | | See chapter 8, "protecting Cardmember information." | | | |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

merchant fees

| 14.2.5 | data pass violation fee (U.S.) |
|---|---|

| description |
|---|
| As described in <u>section 4.4, "completing a transaction at the point of sale (U.S.)"</u>, you must not accept or have accepted Transaction Data from, nor provide or have provided Transaction Data to, any third parties other than your Covered Parties. If, in our sole discretion, we determine that you or any of your Establishments have violated this provision, you may be assessed data pass violation fees. |
| At the time we determine you have violated this provision, we may take the following actions, including assessment of a fee based on the gross Charge volume at your highest Merchant Account level over a rolling twelve (12) month period. |

| charge volume | data pass violation fees and other actions |
|---|---|
| Less than $1,000,000 | First violation - $2,500 fee and warning letter specifying date for correction<br><br>Second violation - $5,000 fee and final notice |
| Between $1,000,000 and $10,000,000 | First violation - $5,000 fee and warning letter specifying date for correction<br><br>Second violation - $10,000 fee and final notice |
| Above $10,000,000 | First violation - $25,000 fee and warning letter specifying date for correction<br><br>Second violation - $50,000 fee and final notice |

We may, at any time, suspend Card acceptance privileges at your Establishments or terminate the Agreement.

| 14.2.6 | excessive Chargeback fee (U.S.) |
|---|---|

| fee | description | amount |
|---|---|---|
| excessive Chargeback fee | A fee applied in each month after the following "excessive chargeback" threshold has been met: in any three (3) consecutive months, the monthly ratio of Chargebacks (less Chargeback Reversals) to gross Charges (less Credits) at an Establishment exceeds one (1) percent. For information about Disputed Charge monitoring, see <u>section 11.12, "chargeback and inquiry monitoring"</u>. | $25 per Chargeback (less Chargeback Reversals) over the 1 percent ratio. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





merchant fees

| 14.2.7 | American Express Merchant Regulations fee (U.S.) |
|---|---|

| fee | description | amount |
|---|---|---|
| Merchant Regulations fee | A fee for each copy of the Merchant Regulations you order from us. To order a copy, call Merchant Services. | Paper copy $22.50 plus shipping and handling<br><br>CD-ROM copy $8.00 plus shipping and handling |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



merchant fees

**14.2.8 Payment Service Provider fees (U.S.)**

| fee | description | amount |
|---|---|---|
| Payment Service Provider general non-compliance fee*<br><br>*effective July 15, 2015 | A fee applied in the event Payment Service Provider fails to comply with the policy and requirements documented in chapter 13.* These fees may be assessed where a non-compliance fee has not been specified for a specific policy violation or when non-compliance fees have been assessed, but the Payment Service Provider has not taken action to correct the policy violation.<br><br>*See <u>section 13.1, "introduction (U.S.)"</u>. | ○ Up to $10,000 for second violation of the same regulation within a 12-month period after notification of the first violation.<br><br>○ Up to $20,000 for third and subsequent violations of the same regulation within a 12-month period after notification of the first violation. |
| Payment Service Provider registration non-compliance fee | A fee applied in the event Payment Service Provider fails to comply with the Payment Service Provider registration process as set forth in <u>subsection 13.3.1, "payment service provider registration process (U.S)"</u>. | $15,000 per occurrence |
| Payment Service Provider Changes & Terminations reporting non-compliance fee | A fee applied if a Payment Service Provider fails to provide updates as set forth in <u>subsection 13.3.2, "payment service provider changes (U.S.)"</u>. | $5,000 per occurrence |
| Sponsored Merchant reporting non-compliance fee | A fee applied in the event a Payment Service Provider fails to provide the Sponsored Merchant file, or any of the required data elements, set forth in <u>section 13.6, "sponsored merchant reporting requirements (U.S.)"</u>. | not to exceed 0.75% of the Charge volume that you submit to us for each month in which you failed to comply with <u>section 13.6, "sponsored merchant reporting requirements (U.S.)"</u> |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





merchant fees

this page intentionally left blank

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.

# Merchant Regulations - U.S.



glossary





# glossary

| | |
|---|---|
| **Acquirer** | Us, an Affiliate of ours, or an Entity licensed by us or an Affiliate in a particular Territory, as the case may be, having arrangements with Merchants (i) entitling Cardmembers to charge purchases of the Merchants' goods or services on the Card and (ii) providing for those Merchants to transfer such Charges to us for processing on the American Express Network. |
| **Adjustment** | An American Express credit or debit to your Merchant Account. |
| **Advance Payment Charge** | A Charge for which full payment is made in advance of your providing the goods and/or rendering the services to the Cardmember. |
| **Affiliate** | Any Entity that controls, is controlled by, or is under common control with either party, including its subsidiaries. As used in this definition, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an Entity, whether through ownership of voting securities, by contract, or otherwise. For the avoidance of doubt, but not by way of limitation, the direct or indirect ownership of more than 50% of (i) the voting securities or (ii) an interest in the assets, profits, or earnings of an Entity shall be deemed to constitute "control" of the Entity. |
| **Agency** | Any Entity or line of business that uses your Marks or holds itself out to the public as a member of your group of companies. |
| **Aggregated Charge** | A Charge that combines multiple small purchases or refunds (or both) incurred on a Card into a single, larger Charge before submitting the Charge for payment. |
| **Agreement** | The General Provisions, the Merchant Regulations, and any accompanying schedules and exhibits, collectively (sometimes referred to as the Card Acceptance Agreement in our materials). |
| **American Express** | American Express Travel Related Services Company, Inc., a New York corporation. |
| **American Express Brand** | The American Express name, trademarks, service marks, logos, and other proprietary designs and designations and the imagery owned by American Express or an American Express Affiliate and the goodwill associated with all of the foregoing and with all the goods and services now and in the future provided, marketed, offered, or promoted by American Express or an American Express Affiliate. |
| **American Express Card or Cards** | (i) Any card, account access device, or payment device or service in each case bearing our or our Affiliates' Marks and issued by an Issuer or (ii) a Card Number. |
| **American Express Network or Network** | The Network of Merchants that accept Cards and the operational, service delivery, systems, and marketing infrastructure that supports this Network and the American Express Brand. |
| **Annual EMV Attestation (AEA)** | A declaration of the status of your compliance with the PCI DSS, in the form which is available at https://login.trustwave.com. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



glossary

| | |
|---|---|
| **Applicable Law** | (i) any law, statute, regulation, ordinance, or subordinate legislation in force from time to time to which you or we or an Affiliate of either is subject, (ii) the common law as applicable to them from time to time, (iii) any court order, judgment, or decree that is binding on them, and (iv) any directive, policy, rule, or order that is binding on them and that is made or given by a regulator or other government or government agency of any Territory, or other national, federal, commonwealth, state, provincial, or local jurisdiction. |
| **Application-initiated Transaction** | A Transaction initiated by an electronic device (including, but not limited to, a mobile telephone, tablet, or wearable device) utilizing a merchant software application within the electronic device. |
| **Approval/Approved** | A message granting an Authorization in response to a request for Authorization from a Merchant, consisting of an Approval or other indicator. |
| **Approved Scanning Vendors (ASVs)** | Entities that have been qualified by the Payment Card Industry Security Standards Council, LLC to validate adherence to certain Payment Card Industry Data Security Standard requirements by performing vulnerability scans of internet facing environments. See section 8.6, "periodic validation of merchant systems". |
| **Assured Reservation Program** | The Assured Reservation Program allows Cardmembers to call a participating hotel to make an Assured Reservation and guarantee the hotel reservation by giving their American Express Card. |
| **Attestation of Compliance (AOC)** | A declaration of the status of your compliance with the PCI DSS, in the form provided by the Payment Card Industry Security Standards Council, LLC. |
| **Attestation of Scan Compliance (AOSC)** | A declaration of the status of your compliance with the PCI DSS based on a network scan, in the form provided by the Payment Card Industry Security Standards Council, LLC. |
| **Authorization/Authorized** | The process by which a Merchant obtains an Approval for a Charge in accordance with the Agreement. |
| **Authorized Chargeback** | A Chargeback that occurs during the Inquiry and Chargeback process when, upon responding to an Inquiry, you authorize us to deduct the amount in dispute from your Bank Account. |
| **Bank Account** | An account that you hold at a bank or other financial institution. |
| **Batch** | A group of Transactions, submitted to American Express, usually on a daily basis. |
| **Capable Chip and PIN POS System** | A POS System that has the technical capability of processing Chip and PIN Card Transactions. |
| **Capital Damages** | Damages done to a vehicle while rented to a Cardmember. |
| **Card** | See American Express Card or Cards. |



glossary

| | |
|---|---|
| **Card Data** | Card Data includes the following elements: Cardmember name, Card Number, Expiration Date, Charge date, the amount of the Charge, the Approval, description of goods and services, your name, your address, your Merchant Number and if applicable the Establishment number, Cardmember signature (for In-Person Transactions only), 'No Refund' if you have a no refund policy and all other information as required from time to time by us or Applicable Law. |
| **Card Identification (CID) Number** | A four-digit number printed on the Card. See section 5.8, "Card identification (CID) number" for additional information. |
| **Card Not Present Charge** | A Charge for which the Card is not presented at the point of sale (e.g., Charges by mail, telephone, fax or the internet). |
| **Card Number** | The unique identifying number that the Issuer assigns to the Card when it is issued. |
| **Card Present Charge** | A Charge for which the physical Card and Cardmember are present at the point of sale, including In-Person Charges and Charges made at CATs. |
| **CARDeposit Program** | A program that permits Cardmembers to charge the payment of an Advance Payment Charge to their Cards when a deposit is required. See subsection 12.12.2.1, "CARDeposit program (U.S.)" for additional information. |
| **Cardholder Data** | Has the meaning given in the then current Glossary of Terms for the PCI DSS. |
| **Cardmember** | An individual or Entity (i) that has entered into an agreement establishing a Card account with an Issuer or (ii) whose name appears on the Card. |
| **Cardmember Information** | Any information about Cardmembers and Transactions, including, but not limited to, Transaction Data, and Cardmember name, addresses, Card Numbers, CID Numbers, and the fact that a particular person is a Cardmember. |
| **Charge** | A payment or purchase made on the Card. |
| **Charge Data** | Data to be included in Submissions of Charge Records. |
| **Charge Record** | A reproducible (both paper and electronic) record of a Charge that complies with our requirements and contains the Card Number, Transaction date, dollar amount, Approval, Cardmember signature (if applicable), and other information. |
| **Chargeback** | When used as a verb, means (i) our reimbursement from you for the amount of a Charge subject to such right, or (ii) our reversal of a Charge for which we have not paid you; when used as a noun, means the amount of a Charge subject to reimbursement from you or reversal. (Chargeback is sometimes called "full recourse" or "Full Recourse" in our materials). |
| **Chargeback Reversal** | Removal of a previously posted Chargeback. |
| **Chip** | An integrated microchip embedded on a Card containing Cardmember and account information. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



glossary

| | |
|---|---|
| **Chip Card** | A Card that contains a Chip and could require a PIN as a means of verifying the identity of the Cardmember or account information contained in the Chip, or both, (sometimes called a "smart Card", an "EMV Card", or an "ICC" or "integrated circuit Card" in our materials). |
| **Chip Card Data** | The information contained in the Chip on a Chip Card that is used to process Transactions. |
| **Claim** | Any claim (including initial claims, counterclaims, cross-claims, and third-party claims), dispute, or controversy between you and us arising from or relating to the Agreement or prior Card acceptance agreements, or the relationship resulting therefrom, whether based in contract, tort (including negligence, strict liability, fraud, or otherwise), statutes, regulations, or any other theory, including any question relating to the existence, validity, performance, construction, interpretation, enforcement, or termination of the Agreement or prior Card acceptance agreements, or the relationship resulting therefrom, except for the validity, enforceability, or scope of section 7.c of the General Provisions. |
| **Code 10** | A phrase that you provide to an American Express representative to alert them of a possible suspicious Card and/or Transaction. Code 10 situations usually occur during Authorization. |
| **Collusion** | Any Transaction, activity or agreement conducted by a Merchant or its agent with another party, including another Merchant or a Cardmember, that the Merchant knew or should have known was not legitimate, or carried out in violation of chapter 10, "risk evaluation". |
| **Compromised Card Number** | A Card Number related to a Data Incident. |
| **Consumer Protection Monitoring Program** | Our program to monitor for fraudulent, deceptive, or unfair practices relating to the sale, advertising, promotion, or distribution of goods or services to consumers. See subsection 10.3.2.1, "consumer protection monitoring program (U.S.)." for additional information. |
| **Consumer Device Cardholder Verification Method (CDCVM)** | An Issuer approved, American Express recognized Cardholder Verification Method whereby the Cardmember's credentials are verified on a Mobile Device. |
| **Corporate Purchasing Card (CPC)** | The Corporate Purchasing Card (CPC) program assists with procurement costs and enables streamlining of the procurement process from sourcing and buying, to billing payment and reconciliation. See section 4.13, "corporate purchasing Card charges" for additional information. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





## glossary

| | |
|---|---|
| **Covered Parties** | Any or all of your employees, agents, representatives, subcontractors, Processors, service providers, providers of your POS Systems or payment processing solutions, and any other party to whom you may provide Cardmember Information access in accordance with the Agreement. |
| **Credit** | The amount of the Charge that you refund to Cardmembers for purchases or payments made on the Card. |
| **Credit Record** | A record of Credit that complies with our requirements. |
| **Customer Activated Terminal (CAT)** | An unattended POS System (e.g., gasoline pump, vending machine, check-out kiosk). |
| **Data Incident** | An incident involving at least one Card Number in which there is (i) unauthorized access or use of encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) that are stored, processed, or transmitted on a Merchant's equipment, systems, and/or networks (or the components thereof); (ii) use of such encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each) other than in accordance with the Agreement; and/or (iii) suspected or confirmed loss, theft, or misappropriation by any means of any media, materials, records, or information containing such encryption keys, Cardholder Data, or Sensitive Authentication Data (or a combination of each). |
| **Data Incident Event Window** | The period that begins 365 days prior to the Notification Date and ends 33 days after the Notification Date. |
| **Data Security Operating Policy (DSOP)** | The American Express data security policy, as described in chapter 8, "protecting Cardmember information," of the *Merchant Regulations*. |
| **Decline** | A message denying the Merchant's request for Authorization. |
| **Delayed Delivery Charge** | A single purchase for which you must create and submit two separate Charge Records. The first Charge Record is for the deposit or down payment and the second Charge Record is for the balance of the purchase. |
| **Digital Wallet Application-initiated Transaction** | An Application-initiated Transaction that is initiated by a digital wallet within a Mobile Device. |
| **Digital Wallet Contactless-initiated Transaction** | A contactless Transaction initiated by a digital wallet within a Mobile Device via the contactless interface. |
| **Digital Wallet Magnetic Secure Transmission Transaction** | A type of Digital Wallet Payment where a Transaction is initiated by a digital wallet within a Mobile Device via the magnetic stripe reader within a POS system. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

glossary

| | |
|---|---|
| **Digital Wallet Payment** | A Digital Wallet Contactless-initiated Transaction, Digital Wallet Application-initiated Transaction, and/or Digital Wallet Magnetic Secure Transmission (MST) Transaction conducted via a digital wallet, operated by an American Express approved third party wallet provider that resides on a Mobile Device. |
| **Discount/Discount Rate** | An amount that we charge you for accepting the Card, which amount is: (i) a percentage (Discount Rate) of the face amount of the Charge that you submit, or a flat per-Transaction fee, or a combination of both; and/or (ii) a Monthly Flat Fee (if you meet our requirements). See subsection 7.3.1, "monthly flat fee". |
| **Disputed Charge** | A Charge about which a claim, complaint, or question has been brought. |
| **EMV Specifications** | The specifications issued by EMVCo, LLC, which are available at http://www.emvco.com. |
| **Enabled Chip and PIN POS System** | A Capable Chip and PIN POS System that has been configured to process Chip and PIN Card Transactions. |
| **Entity** | A corporation, partnership, sole proprietorship, trust, association, or any other legally recognized entity or organization. |
| **Establishments** | Any or all of your and your Affiliates' locations, outlets, websites, online networks, and all other methods for selling goods and services, including methods that you adopt in the future. |
| **Estimated Lodging Charge** | The estimated amount of Charges based on the room rates and the number of days the Cardmember expects to stay, plus taxes and other known incidental amounts. |
| **Estimated Vehicle Rental Charge** | The rental rate multiplied by the rental period reserved by the Cardmember, plus any known incidental amounts. |
| **Expiration Date** | The month and year on which a Card expires (sometimes referred to as "valid thru" or "active thru" date). |
| **Fallback** | When a Chip Card Transaction cannot be completed through the use of Chip technology in an Enabled Chip and PIN POS System and as a result, is processed as a Magnetic Stripe Transaction. |
| **Floor Limit** | A monetary threshold for a single Charge, at or above which you must obtain an Authorization before completing the Charge. |
| **Fraud Full Recourse Program** | One of our Chargeback programs. See section 11.14, "chargeback programs (U.S.)" for additional information. |
| **General Provisions** | The provisions set out in the Agreement other than the provisions in the Merchant Regulations or any accompanying schedule and exhibit hereto. |





glossary

| | |
|---|---|
| **High Risk Merchant** | A Merchant designation indicating that certain fraud Transactions conducted at the Merchant may be issued as a Chargeback to the Merchant under our Fraud Full Recourse Program. |
| **Immediate Chargeback Program** | One of our Chargeback programs. See section 11.14, "chargeback programs (U.S.)" for additional information. |
| **Incremental Fraud** | The dollar amount of fraud related to a Data Incident, as determined by American Express, and as calculated according to section 8.5, "indemnity obligations for a data incident". |
| **Independently Collected Information** | Information that (i) is not collected in order to process a Card transaction and (ii) does not include Segmentation Criteria, Card Numbers, expiration dates, effective dates, CID Numbers and/or any security identification codes associated with a Cardmember's account. |
| **In-Person Charge** | A Card Present Charge excluding Charges made at CATs (e.g., a Charge taken at a Merchant attended retail location where the Card is swiped, read by a contactless reader, inserted into a Chip Card reader, or manually key-entered). |
| **Inquiry** | Our request for information about a Disputed Charge. |
| **Insertion Order** | The agreement executed between Merchant and American Express governing Merchant's participation in a promotional marketing campaign. |
| **Internet Electronic Delivery** | Delivery of goods or services purchased on the internet via an internet download or another file transfer process (e.g., images or software download). |
| **Internet Order** | Card payment information that is taken via the World Wide Web, online (usually via a website payment page), email, intranet, extranet, or other similar network in payment for merchandise or services. |
| **Internet Physical Delivery** | Delivery of goods or services purchased on the internet to the Cardmember via mail, shipping services, or courier to a physical address. |
| **Issuer** | Any Entity (including American Express and its Affiliates) licensed by American Express or an American Express Affiliate to issue Cards and to engage in the Card issuing business. |
| **Keyed No Imprint Program** | A program that allows a Merchant to submit In-Person Charges without an imprint of the Card. See section 4.17, "keyed no imprint program" for additional information. |
| **Magnetic Stripe** | A stripe on the back of a Card that contains Cardmember and account information in machine readable form. |
| **Marketing Materials** | Collectively all copy, customer-facing offer terms and conditions and other communications relating to a Marketing Program. |
| **Marketing Program** | The promotional marketing campaign as described in the Insertion Order executed between Merchant and American Express. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



glossary

| | |
|---|---|
| **Marks** | Names, logos, service marks, trademarks, trade names, taglines, or other proprietary designs or designations. |
| **Merchant** | Any seller of goods or services, non-profit, or government Entity that enters into an Agreement with American Express or its licensees wherein the seller agrees to (i) permit any Cardmember to charge purchases of goods and services at or with such Merchant by means of the Card and (ii) transfer Transactions to American Express or its licensees. This term includes all Establishments (sometimes called "Service Establishments" or "SEs" in our materials). |
| **Merchant Account** | An account established by us upon entering into the Agreement with a Merchant. |
| **Merchant Level** | The designation we assign Merchants related to their PCI DSS compliance validation obligations, as described in section 8.6, "periodic validation of merchant systems". |
| **Merchant Number** | A unique number we assign to your Establishment. |
| **Merchant Regulations** | These *American Express Merchant Regulations - U.S.*, which are available at www.americanexpress.com/merchantpolicy and can be accessed by entering your online Merchant Account user ID and password. |
| **Merchant-Provided Creative** | Any creative materials provided to American Express by Merchant in connection with a Marketing Program, as described in the Insertion Order. |
| **Mobile Device** | An Issuer approved and American Express recognized electronic device (including, but not limited to, a mobile telephone, tablet, or wearable device) that is enabled to initiate a Digital Wallet Payment Transaction. |
| **My Merchant Account/Online Merchant Services (OMS)** | Our online tool that allows for reconciliation of payment, facilitates the resolution of Inquiries and Disputed Charges and provides Merchant reporting or, more generally, access to your Merchant Account online at www.americanexpress.com/merchant. |
| **Network** | See American Express Network or Network. |
| **No Reply Chargeback** | A Chargeback that is initiated because you do not reply to an Inquiry by the deadline. |
| **No Signature/No PIN Program** | A program that allows an Establishment to not request a signature or a PIN from Cardmembers. See section 4.18, "no signature/no pin program" for additional information. |
| **Non-Compliance Chargeback** | A Chargeback that is initiated because the Charge does not meet the terms of the Agreement. |
| **Non-Credit Payment Forms** | Any form of payment other than a (i) general purpose credit or charge card; or (ii) payment card brand name that references both general purpose credit or charge cards and debit cards, such as "Visa" or "MasterCard". |
| **Notification Date** | The date, as designated by American Express, that Issuers receive notification of the Data Incident. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





Merchant Regulations - U.S.

glossary

| | |
|---|---|
| **Notification of Changes** | Releases of scheduled changes in the *Merchant Regulations*. See section 1.4, "changes in merchant regulations". |
| **Offer** | The offer provided to Cardmembers as described in the Insertion Order. |
| **Offer End Date** | The last day that an Offer will be promoted and/or may be redeemed by Cardmembers. |
| **QR Code** | The Quick Response Code used to establish a hyperlink to Merchant's website from offline or direct mail marketing materials to be created under the Marketing Program. |
| **Other Agreement** | Any agreement, other than the Agreement, between (i) you or any of your Affiliates and (ii) us or any of our Affiliates. |
| **Oil Fraud Protection Program** | Our program providing Establishments in the oil/petroleum industry protection from counterfeit fraud Chargebacks, provided both the Establishment and Charge meet certain criteria. See subsection 12.7.3, "oil fraud protection program (U.S.)" for additional information. |
| **Other Payment Products** | Any charge, credit, debit, stored value, prepaid, or smart cards, account access devices, or other payment cards, services, or products other than the Card. |
| **Oversight Review** | A periodic review of a PSP's Payment Services. |
| **Partial Immediate Chargeback Program** | One of our Chargeback programs. See section 11.14, "chargeback programs (U.S.)" for additional information. |
| **Payment Services** | The provision of payment services in connection with Transactions between Cardmembers and Sponsored Merchants whereby you, the Entity providing such services (and not the Sponsored Merchant), are the Merchant of record, submit Transactions under your Merchant Number and receive payment from us for Charges (among other things). |
| **Payment Service Provider (PSP)** | A provider of Payment Services (sometimes called an "aggregator" or "master merchant" in our materials). |
| **Payment Card Industry Data Security Standard (PCI DSS)** | The Payment Card Industry Data Security Standard, which is available at www.pcisecuritystandards.org. |
| **PCI Forensic Investigator (PFI)** | An Entity that has been approved by the Payment Card Industry Security Standards Council, LLC to perform forensic investigations of a breach or compromise of payment Card Data. |
| **Personal Identification Number (PIN)** | A secret code for use with one or more American Express Network, Acquirer, or Issuer systems that is used to authenticate the user (e.g., a Cardmember) to that system. |
| **Point of Sale (POS) System** | An information processing system or equipment, including a terminal, personal computer, electronic cash register, contactless reader, or payment engine or process, used by a Merchant, to obtain Authorizations or to collect Transaction Data, or both. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



glossary

| | |
|---|---|
| **Prepaid Card** | A Card that is marked "Prepaid" or bearing such other identifiers used by American Express from time to time. |
| **Processor** | A service provider to Merchants who facilitates Authorization and Submission processing to the Network (sometimes referred to as an "Authorized Gateway Provider") in our materials. |
| **Proof of Delivery** | A receipt which proves that the goods were delivered to the complete and valid shipping address provided by the Cardmember when the purchase was made. |
| **Qualified Security Assessors (QSAs)** | Entities that have been qualified by the Payment Card Industry Security Standards Council, LLC to validate adherence to the Payment Card Industry Data Security Standard. See section 8.6, "periodic validation of merchant systems". |
| **Recurring Billing** | An option offered to Cardmembers to make recurring Charges automatically on their Card (e.g., membership fees to health clubs, magazine subscriptions, and insurance premiums). |
| **Referral** | During an Authorization request, the message relayed to you through your POS System (e.g., "please call" or "refer to Issuer") requiring you to telephone the American Express Authorization Department for Approval. |
| **Registered Card Offer** | An Offer in which a statement credit will be provided to a Cardmember upon making the required spend at a participating Merchant. |
| **Rent Payments** | Charges of rent on Rental Establishments (includes security deposits and common room fees). |
| **Rental Establishments** | Long-term rentals used as primary residences. See section 12.2, "rental establishments" for additional information. |
| **Report** | Any report that American Express provides to you that contains information about the Offer, including impressions, enrollments, redemptions, new/lapsed/current customer analysis, and/or other information mutually agreed upon by American Express and you. |
| **Reserve** | A fund established and/or collateral held by us as security for your or any of your Affiliates' obligations to us or any of our Affiliates under the Agreement or any Other Agreements. |
| **Rights-holder** | A natural or legal person or Entity having the legal standing and authority to assert a copyright or trademark right. |
| **Segmentation Criteria** | Any information about Cardmembers that we use for the purpose of communicating a marketing campaign, including the fact that a particular consumer is a Cardmember. |
| **Self Assessment Questionnaire (SAQ)** | A self assessment tool created by the Payment Card Industry Security Standards Council, LLC., intended to evaluate and attest to compliance with the PCI DSS. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*




glossary

| | |
|---|---|
| **Sensitive Authentication Data** | Has the meaning given in the then current Glossary of Terms for the PCI DSS. |
| **Settlement** | The process by which we compile your debits and credits to calculate a net amount that will be applied to your Bank Account (sometimes called "deposit" or "Deposit" in our materials). |
| **Split Tender** | The use of multiple forms of payment (e.g., prepaid products, cash, American Express Card) for a single purchase. |
| **Sponsored Merchant** | A Sponsored Merchant Prospect that has entered into a Sponsored Merchant Agreement with you. Sponsored Merchants are one of your Covered Parties. |
| **Sponsored Merchant Agreement** | The standard form agreement governing your provision of Payment Services that you must have the Sponsored Merchant Prospect execute pursuant to chapter 13. |
| **Sponsored Merchant Prospect** | Any third-party seller of goods and services that either: (i) does not accept the Card and which operates one or more Sponsored Merchant websites or other Establishments, or (ii) accepts the Card with respect to its existing methods for selling goods and services but also proposes to submit Transactions through a Payment Service Provider. |
| **Sponsored Merchant Website** | Any website operated by a Sponsored Merchant Prospect for the sale of goods or services (or both). |
| **Submission** | The collection of Transaction Data that you send to us. |
| **Substitute Charge Record** | A document created from original Transaction data. |
| **Summary of Charge** | The total amount of all the Charge Records (Transactions) submitted. |
| **System Outage** | Interruption of either Merchant or Network systems or services (e.g., computer system failure, telecommunications failure, or regularly scheduled downtime). |
| **Technical Specifications** | The set of mandatory, conditional, and optional requirements related to connectivity to the Network and electronic Transaction processing, including Authorization and Submission of Transactions (sometimes called "specifications" in our materials), which we may update from time to time, and which we make available on our website at www.americanexpress.com/merchantspecs or upon request from your American Express representative. |
| **Telecommunications** | Communication services, including personal communication services; cellular, paging, long distance, etc. See section 12.10. "Telecommunications" for additional information. |
| **Terminal Provider** | The Processor, vendor or company that provides your POS System. |
| **Territory** | A country, region, or sovereign territory approved by us in which you or your affiliates make goods or services available. |
| **Timeshare Unit** | The exclusive right to occupy a unit in a real estate development. See section 12.11, "timeshares" for additional information. |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



glossary

| | |
|---|---|
| **Token** | A surrogate value that replaces the Card Number. |
| **Transaction** | A Charge or Credit completed by the means of a Card. |
| **Transaction Data** | All information required by American Express, evidencing one or more Transactions, including information obtained at the point of sale, information obtained or generated during Authorization and Submission, and any Chargeback. |
| **Transmission** | A method of sending Transaction Data to American Express whereby Transaction Data is transmitted electronically over communication lines. |
| **Transmission Data** | The same as Card Data except for the requirements to include: Cardmember name, Expiration Date, the Cardmember's signature; and the words "No Refund" if the Merchant has a no refund policy. |
| **URL** | Uniform Resource Locator, a term used to identify an internet address. |
| **Valid Dates** | The dates on the Card that indicate the first and last date the Card can be used to make purchases. |
| **Validation Documentation** | Documents to be provided by Merchants under the Data Security Operating Policy. See section 8.7, "confidentiality and disclosure" for a list of documents, and section 8.6, "periodic validation of merchant systems" for the policy's requirements. |
| **Voice Authorization** | The Authorization of a Charge obtained by calling the American Express Authorization Department. |
| **we, our and us** | American Express Travel Related Services Company, Inc., a New York corporation. |
| **you and your** | The individual or Entity accepting the Card under the Agreement and (as applicable) its Affiliates conducting business in the same industry (sometimes called the "Merchant", "Service Establishment", or "SE" in our materials). |

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



glossary

this page intentionally left blank

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

# Merchant Regulations - U.S.

a.1    acknowledgement of responsibility (U.S.)

a.2    Arbitration Agreement (as to Claims involving American Express) (U.S.)

a.3    Payment Service Provider registration form (U.S.)

a.4    Payment Service Provider change form (U.S.)

a.5    affidavit of compliance with laws - online/mail order tobacco (U.S.)

a.6    affidavit of compliance with laws - internet/online pharmacies (U.S.)

appendix





appendix

## acknowledgement of responsibility (U.S.)
(see [subsection 12.12.3.2, "capital damages (U.S.)"](#))

| | | |
|---|---|---|
| Name | | |
| Address | | |
| City | State | Zip Code |
| Account Number | | |

Renter

| | | |
|---|---|---|
| Name of Renter | | |
| Address | | |
| City | State | Zip Code |
| Drivers License Number | | State |

Identification of Vehicle

| | | |
|---|---|---|
| Type of Vehicle | | Year |
| Model | | |
| License Number | | State |
| Registration Number | | |
| Rental Agreement Number | | |

Description of Damage

Estimated Amount                                   Estimated Total

By signing this form, the undersigned accepts full responsibility for the damage as set forth above, and agrees that the actual damage amount up to the estimated total amount set forth above, plus 10% thereof, may be charged to the undersigned's American Express Card account.

Authorization                          Signature                                      Date

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.

appendix

Arbitration Agreement (as to Claims involving American Express) (U.S.)

In the event that Sponsored Merchant or [insert the term you use to refer to yourself] is not able to resolve a Claim against American Express, or a claim against [insert the term you use to refer to yourself] or any other entity that American Express has a right to join in resolving a Claim, this section explains how Claims can be resolved through arbitration. Sponsored Merchant or American Express may elect to resolve any Claim by individual binding arbitration. Claims are decided by a neutral arbitrator.

**If arbitration is chosen by any party, neither Sponsored Merchant nor [insert the term you use to refer to yourself] nor American Express will have the right to litigate that Claim in court or have a jury trial on that Claim. Further, Sponsored Merchant, [insert the term you use to refer to yourself], and American Express will not have the right to participate in a representative capacity or as a member of any class pertaining to the Claim. Arbitration procedures are generally simpler than the rules that apply in court, and discovery is more limited. The arbitrator's decisions are as enforceable as any court order and are subject to very limited review by a court. Except as set forth below, the arbitrator's decision will be final and binding. Other rights Sponsored Merchant, [insert the term you use to refer to yourself], or American Express would have in court may also not be available in arbitration.**

i.  Initiation of Arbitration. Claims will be referred to either JAMS or AAA, as selected by the party electing arbitration. Claims will be resolved pursuant to this Arbitration Agreement and the selected organization's rules in effect when the Claim is filed, except where those rules conflict with this Agreement. Contact JAMS or AAA to begin an arbitration or for other information. Claims may be referred to another arbitration organization if all parties agree in writing, or to an arbitrator appointed pursuant to section 5 of the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (FAA). Any arbitration hearing that Sponsored Merchant attends shall take place in New York, unless all parties agree to an alternate venue.

ii. Limitations on Arbitration. **If any party elects to resolve a Claim by arbitration, that Claim will be arbitrated on an individual basis. There will be no right or authority for any Claims to be arbitrated on a class action basis or on bases involving Claims brought in a purported representative capacity on behalf of the general public, other Merchants or other persons or entities similarly situated.** The arbitrator's authority is limited to Claims between Sponsored Merchant, [insert the term you use to refer to yourself], and American Express. Claims may not be joined or consolidated unless all parties to this agreement agree in writing. An arbitration award and any judgment confirming it will apply only to the specific case brought by Sponsored Merchant, [insert the term you use to refer to yourself] or American Express and cannot be used in any other case except to enforce the award as between Sponsored Merchant, [insert the term you use to refer to yourself] and American Express. This prohibition is intended to, and does, preclude Sponsored Merchant from participating in any action by any trade association or other organization against American Express. Notwithstanding any other provision and without waiving the right to appeal such decision, if any portion of these *Limitations on Arbitration* is deemed invalid or unenforceable, then the entire Arbitration provision (other than this sentence) will not apply.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





appendix

iii.  Previously Filed Claims/No Waiver. Sponsored Merchant, [insert the term you use to refer to yourself], or American Express may elect to arbitrate any Claim that has been filed in court at any time before trial has begun or final judgment has been entered on the Claim. Sponsored Merchant, [insert the term you use to refer to yourself], or American Express may choose to delay enforcing or to not exercise rights under this arbitration provision, including the right to elect to arbitrate a Claim, without waiving the right to exercise or enforce those rights on any other occasion. For the avoidance of any confusion, and not to limit its scope, this section applies to any class-action lawsuit relating to the "Honor All Cards," "non-discrimination," or "no steering" provisions of the American Express Merchant Regulations, or any similar provisions of any prior American Express Card acceptance agreement, that was filed against American Express prior to the effective date of the Agreement.

iv.  Arbitrator's Authority. The arbitrator shall have the power and authority to award any relief that would have been available in court, including equitable relief (e.g., injunction, specific performance) and, cumulative with all other remedies, shall grant specific performance whenever possible.The arbitrator shall have no power or authority to alter the Agreement or any of its separate provisions, including this section, nor to determine any matter or make any award except as provided in this section.

v.  Split Proceedings for Equitable Relief. Sponsored Merchant, [insert the term you use to refer to yourself], or American Express may seek equitable relief in aid of arbitration prior to arbitration on the merits to preserve the status quo pending completion of such process. This section shall be enforced by any court of competent jurisdiction, and the party seeking enforcement shall be entitled to an award of all reasonable attorneys' fees and costs, including legal fees, to be paid by the party against whom enforcement is ordered.

vi.  Small Claims Court. American Express shall not elect to use arbitration under this section for any Claim Sponsored Merchant properly files in a small claims court so long as the Claim seeks individual relief only and is pending only in that court.

This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.



Merchant Regulations - U.S.

appendix

vii. Governing Law/Arbitration Procedures/Entry of Judgment. This arbitration section is made pursuant to a transaction involving interstate commerce and is governed by the FAA. The arbitrator shall apply New York law and applicable statutes of limitations and shall honor claims of privilege recognized by law. The arbitrator shall apply the rules of the arbitration organization selected, as applicable to matters relating to evidence and discovery, not the federal or any state rules of civil procedure or rules of evidence, provided that any party may request that the arbitrator expand the scope of discovery by doing so in writing and copying any other parties, who shall have fifteen days to make objections, and the arbitrator shall notify the parties of his/her decision within twenty days of any objecting party's submission. If a Claim is for $10,000 or less, Sponsored Merchant or American Express may choose whether the arbitration will be conducted solely on the basis of documents submitted to the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the rules of the selected arbitration organization. At the timely request of a party, the arbitrator shall provide a written and reasoned opinion explaining his/her award. The arbitrator's decision shall be final and binding, except for any rights of appeal provided by the FAA. If a Claim is for $100,000 or more, or includes a request for injunctive relief, (a) any party to this Agreement shall be entitled to reasonable document and deposition discovery, including (x) reasonable discovery of electronically stored information, as approved by the arbitrator, who shall consider, inter alia, whether the discovery sought from one party is proportional to the discovery received by another party, and (y) no less than five depositions per party; and (b) within sixty (60) days of the initial award, either party can file a notice of appeal to a three-arbitrator panel administered by the selected arbitration organization, which shall reconsider de novo any aspect requested of that award and whose decision shall be final and binding. If more than sixty (60) days after the written arbitration decision is issued the losing party fails to satisfy or comply with an award or file a notice of appeal, if applicable, the prevailing party shall have the right to seek judicial confirmation of the award in any state or federal court where Sponsored Merchant's headquarters or Sponsored Merchant's assets are located.

viii. Confidentiality. The arbitration proceeding and all testimony, filings, documents, and any information relating to or presented during the proceedings shall be deemed to be confidential information not to be disclosed to any other party. All offers, promises, conduct, and statements, whether written or oral, made in the course of the Claim resolution process, including but not limited to any related negotiations, mediations, arbitration, and proceedings to confirm arbitration awards by either party, its agents, employees, experts or attorneys, or by the mediator or arbitrator, including any arbitration award or judgment related thereto, are confidential and inadmissible for any purpose, including impeachment or estoppel, in any other litigation or proceeding involving any of the parties or non-parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation, mediation, or arbitration.

ix. Costs of Arbitration Proceedings. Sponsored Merchant will be responsible for paying Sponsored Merchant's share of any arbitration fees (including filing, administrative, hearing or other fees), but only up to the amount of the filing fees Sponsored Merchant would have incurred if Sponsored Merchant had brought a Claim in court. American Express will be responsible for any additional arbitration fees. At Sponsored Merchant's written request, American Express will consider in good faith making a temporary advance of Sponsored Merchant's share of any arbitration fees, or paying for the reasonable fees of an expert appointed by the arbitrator for good cause.





appendix

x. Additional Arbitration Awards. If the arbitrator rules in Sponsored Merchant's favor against American Express for an amount greater than any final settlement offer American Express made before any arbitration award, the arbitrator's award will include: (1) any money to which Sponsored Merchant is entitled as determined by the arbitrator, but in no case less than $5,000; and (2) any reasonable attorneys' fees, costs and expert and other witness fees incurred by Sponsored Merchant.

xi. Definitions. For purposes of this section, [appendix a.4, "Arbitration Agreement (as to Claims involving American Express) (U.S.)"](#) only, (i) American Express includes any of its affiliates, licensees, predecessors, successors, or assigns, any purchasers of any receivables, and all agents, directors, and representatives of any of the foregoing, and (ii) Sponsored Merchant includes Sponsored Merchant's affiliates, licensees, predecessors, successors, or assigns, any purchasers of any receivables and all agents, directors, and representatives of any of the foregoing, and (iii) Claim means any allegation of an entitlement to relief, whether damages, injunctive or any other form of relief, against American Express or against [insert the term you use to refer to yourself] or any other entity that American Express has the right to join in resolving a Claim, including, a transaction using an American Express product or network or regarding an American Express policy or procedure.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*

Merchant Regulations - U.S.



appendix

Payment Service Provider registration form (U.S.)

Payment Service Provider registration is required for any prospective Payment Service Provider (PSP). Initial PSP
Registrations must be completed using the Registration Form and you must not promote Card acceptance until the
appropriate setup process has been completed. All Registrations should be returned to us via email to:
program.oversight.management@aexp.com.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third
parties without the express prior written consent of American Express Travel Related Services Company, Inc.*





appendix

## Payment Service Provider Profile

PSP Legal Name: _____

PSP DBA Name: _____

PSP Full Physical Business Address: _____

_____

PSP Business Phone: _____

PSP Email: _____

PSP URL: _____

PSP Federal Tax ID (EIN) or SSN if Sole Proprietor: _____

PSP Ownership Type: _____  ❑ *Public*  ❑ *Private*

PSP Significant Owner Name: _____

PSP Significant Owner SSN: _____

PSP Significant Owner DOB: _____

PSP Significant Owner Full Physical Address: _____

_____

Industry Categories of PSP Sponsored Merchants (check all that apply):

❑ *Retail*  ❑ *Service/Professional Service*  ❑ *Restaurant*  ❑ *Education*  ❑ *Healthcare*

❑ *B2B/Wholesale*  ❑ *Mail Order & Internet*  ❑ *Residential Rent/Homeowners Association*

❑ *Utilities*  ❑ *Government*  ❑ *Other*

Description of Business: _____

If applicable, please describe the type of government services provided: _____

Will the PSP charge convenience fees? ❑ *Yes* ❑ *No*

PSP Charge Volume: _____

PSP Transaction Count: _____

PSP Chargeback Volume: _____

PCP Chargeback Count: _____

Comments: _____

Does PSP currently offer this service on behalf of any other card brand? _____

*Note -Information contained in this registration form will be used by us for review/approval of you as a PSP accepting the American Express Card. Please ensure the information is accurate and correct to avoid delays in the approval process.*

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.

appendix

1. I/We confirm we have completed a background check and financial review of the Sponsored Merchants and owners inclusive of current financials.

2. I/We confirm that the Sponsored Merchants have been reviewed by appropriate officers based on sound business practice that does not compromise the PSP or American Express.

3. I/We confirm that Anti-Money Laundering and Prevention of Terrorist Financing programs are in place to ensure compliance with Applicable Laws and the general PSP requirements set forth in section 13.4, "general psp requirements (U.S.)" of the Merchant Regulations.

4. I/We confirm that the Sponsored Merchants are currently in good standing with Payment Card Industry (PCI) standards and that the Sponsored Merchants have processes in place to ensure ongoing compliance with PCI Data Security Standards.

5. I/We confirm that processes are in place to ensure that Sponsored Merchant agreements adhere to the general PSP requirements set forth in section 13.4, "general psp requirements (U.S.)" of the Merchant Regulations.

6. I/We confirm that the Sponsored Merchants are not operating in a prohibited industry or category.

7. I/We confirm that the Sponsored Merchants' websites have been reviewed (if applicable) for compliance with the general PSP requirements set forth in section 13.4, "general psp requirements (U.S.)" of the Merchant Regulations and processes are in place to ensure ongoing compliance with requirements.

8. I/We confirm that processes are in place to ensure ongoing compliance with American Express Technical Requirements.

**By completing this registration form, I/We hereby certify that each of the above statements is true and correct, and am/are submitting this form for consideration by American Express as a Payment Service Provider.**

**Approvals**

GMS Small Merchant Acquisition: _____

Date: _____



Merchant Regulations - U.S.



appendix

Payment Service Provider change form (U.S.)

Any changes to Payment Service Provider (PSP) data for existing PSPs registered with American Express, inclusive of terminations, are required semi-annually. Changes may be communicated using this Change Form, an excel template provided by American Express, or an alternate format inclusive of all required fields on this form. All changes should be returned to us via email to: program.oversight.management@aexp.com.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



appendix

## Payment Service Provider Change Form

Request Date: _____ / _____ /_____

PSP Legal Name: _____

PSP DBA Name: _____

PSP Full Physical Business Address: _____

_____

PSP Business Phone:_____

PSP Email: _____

PSP URL: _____

PSP Tax ID (EIN) or SSN if Sole Proprietor: _____

PSP Ownership Type: _____

❏ *Public*    ❏ *Private*

PSP Significant Owner Name: _____

PSP Significant Owner SSN: _____

PSP Significant Owner DOB: _____

PSP Significant Owner Full Physical Address: _____

_____

Industry Categories of PSP Sponsored Merchants (check all that apply):

❏ *Retail*　　　❏ *Service/Professional Service*　　❏ *Restaurant*　　❏ *Education*　　❏ *Healthcare*

❏ *B2B/Wholesale*　　❏ *Mail Order & Internet*　　❏ *Residential Rent/Homeowners Association*

❏ *Utilities*　　❏ *Government*　　❏ *Other*

Description of Business: _____

If applicable, please describe the type of government services provided: _____

Will the PSP charge convenience fees? ❏ *Yes* ❏ *No*

PSP Termination Date (if applicable): _____

**By completing this change form, I/We hereby certify that each of the above statements is true and correct, and am/are submitting this form in accordance with the PSP program requirements.**

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



appendix

## affidavit of compliance with laws - online/mail order tobacco (U.S.)

(see [section 12.15, "online/mail order tobacco retail (U.S.)"](#))

The undersigned, _____, being an authorized representative of

PRINT NAMES ABOVE

_____("Company"), a company engaged in the Internet

PRINT NAME OF COMPANY ABOVE

and/or mail order sale of tobacco products, including e-cigarettes, hereby represents, warrants and certifies to American Express Travel Related Services Company, Inc., its parent, subsidiaries and affiliates (collectively, "American Express"), that the Company complies with all local, state and federal laws applicable to tobacco product and e-cigarettes sales. Although not a complete listing of the local, state and federal laws that apply to my Company's sale of tobacco products, I represent warrant and certify that the Company is in compliance with the following statutes:

State or Federal Law  Initial Below

Jenkins Act (reporting requirements for cigarettes, as amended by the Prevent All Cigarette Trafficking ("PACT") Act of 2009), 15 U.S.C. § 375 *et seq.*

Statutes prohibiting shipment of cigarettes directly to consumers

Statutes requiring licensing, tax liability disclosures to consumers, etc.

Local and state laws requiring age verification.

State/federal laws governing the possession of unstamped tobacco products


If Company is a foreign-based Internet cigarette vendor:

Cigarette Labeling Advertising Act, 15 U.S.C. § 1331 *et seq.*


I recognize and agree that American Express may provide copies of this Affidavit of Compliance to federal, state and/or local law enforcement authorities for verification of the above representations.

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



Merchant Regulations - U.S.



appendix

affidavit of compliance with laws - internet/online pharmacies (U.S.)

(see section 12.14, "internet/online pharmacies (U.S.)")

The undersigned, _____, being an authorized representative of

PRINT NAMES ABOVE

_____("Company"), a company engaged in the Internet

PRINT NAME OF COMPANY ABOVE

and/or online order sales of prescription medications (as defined by applicable law or regulation), hereby represents, warrants and certifies to American Express Travel Related Services Company, Inc., its parent, subsidiaries and affiliates (collectively, "American Express"), that Merchant complies with all local, state and federal laws applicable to prescription medication sales. Merchant further represents, warrants and certifies that Merchant is either:

Certified by the Verified Internet Pharmacy Practice Sites ("VIPPS") program of the National Association of Boards of Pharmacy (www.nabp.net) *, or

Complies with the licensing and inspection requirements of (i) U.S. federal law and the state in which Merchant is located and (ii) each state to which Merchant dispenses pharmaceuticals.

*If Merchant claims VIPPS certification, it must also provide with this Affidavit copies of applicable supporting documentation.

Merchant recognizes and agrees that American Express may provide copies of this Affidavit of Compliance and supporting documentation to federal, state and/or local law enforcement authorities for verification of the above representations. Merchant further recognizes and agrees that submission of a false certification and/or the failure to comply with all federal, state and local laws governing the sale of internet/online prescription medications may result in the immediate termination of the Company's right to accept American Express Cards.

PRINT OR TYPE PARTIAL LEGAL NAME OF MERCHANT ABOVE

By:_____

Name:_____

Title:_____

Date:_____

STATE OF _____)

_____)ss

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*



appendix

COUNTY OF _____)


On this _____ day of _____

201_____, before me, the undersigned notary public,

personally appeared _____, and s/he indicating to me that s/he has

PRINT NAME ABOVE

the authorization to execute this affidavit of compliance on behalf of Merchant, executed the foregoing instrument for the purposes therein contained, by signing above.


IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

_____

*This document contains sensitive, confidential, and trade secret information, and must not be disclosed to third parties without the express prior written consent of American Express Travel Related Services Company, Inc.*