1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  PATRICK J. COUGHLIN (111070)
   DAVID W. MITCHELL (199706)
3  ALEXANDRA S. BERNAY (211068)
   CARMEN A. MEDICI (248417)
4  ANGEL P. LAU (286196)
   LONNIE A. BROWNE (293171)
5  655 West Broadway, Suite 1900
   San Diego, CA  92101-8498
6  Telephone:  619/231-1058
   619/231-7423 (fax)
7  patc@rgrdlaw.com
   davidm@rgrdlaw.com
8  xanb@rgrdlaw.com
   cmedici@rgrdlaw.com
9  alau@rgrdlaw.com
   lbrowne@rgrdlaw.com
10
   DEVINE GOODMAN RASCO &
11     WATTS-FITZGERALD, LLP
   JOHN W. DEVINE
12 LAWRENCE D. GOODMAN
   ROBERT J. KUNTZ, JR.
13 2800 Ponce De Leon Blvd., Suite 1400
   Coral Gables, FL  33134
14 Telephone:  305/374-8200
   305/374-8208 (fax)
15 jdevine@devinegoodman.com
   lgoodman@devinegoodman.com
16 rkuntz@devinegoodman.com

17 Attorneys for Plaintiffs

   [Additional counsel appear on signature page.]

18                    UNITED STATES DISTRICT COURT

19                   NORTHERN DISTRICT OF CALIFORNIA

20 | B & R SUPERMARKET, INC., d/b/a | ) | Case No. 3:16-cv-01150-WHA |
   MILAM'S MARKET, a Florida corporation, et )
21 al., Individually and on Behalf of All Others ) | CLASS ACTION
   Similarly Situated,                        )
22                                            ) | PLAINTIFFS' MEMORANDUM OF
                              Plaintiffs,     ) | POINTS AND AUTHORITIES IN
23                                            ) | OPPOSITION TO DEFENDANT
               vs.                            ) | AMERICAN EXPRESS COMPANY'S
24                                            ) | MOTION TO COMPEL ARBITRATION
   VISA, INC., a Delaware corporation, et al., ) | AND TRANSFER VENUE
25                                            )
                              Defendants.     ) | DATE:      June 23, 2016
26                                            ) | TIME:      8:00 a.m.
                                              ) | CTRM:      8 – 19th Floor
27 _____ ) | JUDGE:     Hon. William H. Alsup

28

   1147615_1

**TABLE OF CONTENTS**

Page

I.    STATEMENT OF ISSUES TO BE DECIDED .................................................1

II.   INTRODUCTION ...........................................................................................1

III.  FACTUAL OVERVIEW ..................................................................................2

IV.   AMEX'S ARBITRATION ARGUMENT FAILS ...........................................3

      A.    Legal Standard ......................................................................................3

      B.    The Court Should Not Compel Arbitration ..........................................4

            1.    Plaintiffs' Co-Conspirator and Joint and Several Liability Claims, as Well as Those Related to AMEX's Ownership of EMVCo Are Not Subject to Arbitration..................................................................4

            2.    AMEX Cannot Arbitrate the Claims of the Many Merchants in the Class that Do Not Accept Its Cards but Accept Visa, MasterCard, or Discover.................................................5

            3.    The Alleged Conspiracy Between AMEX and the Other Defendants Is Outside the Scope of the Arbitration Agreement.................5

            4.    The Arbitration Agreement and Its Delegation Provision Are Procedurally and Substantively Unconscionable.......................................7

                  a.    The Arbitration Agreement Is Procedurally Unconscionable..........8

                  b.    The Arbitration Agreement Is Substantively Unconscionable...........................................................8

                        (1)    By Requiring the Arbitrator to Apply New York Law, the Arbitration Agreement Impermissibly Excludes Plaintiffs' Federal Antitrust and California Cartwright Act Claims .........................................9

                        (2)    The Arbitration Provision Precludes Discovery ...............10

V.    AMEX'S VENUE ARGUMENTS ARE INAPT.........................................11

      A.    Legal Standard ....................................................................................11

      B.    AMEX's Arguments Regarding Venue Fail ......................................12

            1.    Plaintiffs' Claims Are Outside the Scope of the Forum Selection Clause..........................................................................12

            2.    The Forum Selection Clause Is Not Valid .................................13

                  a.    The Forum Selection Clause Is Fundamentally Unfair Without Adequate Notice ....................................14

| | | | Page |
|---|---|---|---|
| | b. | The Forum Selection Clause Is Unreasonable | 15 |
| | 3. | Public Interest Factors Outweigh the Forum Selection Clause | 16 |
| VI. | CONCLUSION | | 18 |

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA

- ii

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Acer Am. Corp. v. Hitachi, Ltd. (In re TFT-LCD (Flat Panel)*
   *Antitrust Litig.)*,
   No. M 07-1827 SI, 2014 U.S. Dist. LEXIS 50526
   (N.D. Cal. Apr. 10, 2014) ........................................................................4

*Atl. Marine Constr. Co. v. United States Dist. Court*,
   ___ U.S. ___, 134 S. Ct. 568 (2013).............................................12, 16

*Am. Express Co. v. Italian Colors Rest.*,
   ___ U.S. ___, 133 S. Ct. 2304 (2013).............................................6, 10

*Brennan v. Bally Total Fitness*,
   198 F. Supp. 2d 377 (S.D.N.Y. 2002) ........................................................8

*Brennan v. Opus Bank*,
   796 F.3d 1125 (9th Cir. 2015) ........................................................7

*Bronstein v. United States Customs & Border Prot.*,
   No. 15-cv-02399-JST, 2016 U.S. Dist. LEXIS 28998
   (N.D. Cal. Mar. 7, 2016) ........................................................17

*Carnival Cruise Lines, Inc. v. Shute*,
   499 U.S. 585 (1991).............................................................13, 14

*Chattanooga Foundry & Pipe Works v. Atlanta*,
   203 U.S. 390 (1906).............................................................4

*Chavarria v. Ralphs Grocery Co.*,
   733 F.3d 916 (9th Cir. 2013) ........................................................7

*Ciago v. Ameriquest Mortg. Co.*,
   295 F. Supp. 2d 324 (S.D.N.Y. 2003).............................................7, 8

*Circuit City Stores v. Adams*,
   279 F.3d 889 (9th Cir. 2002) ........................................................7

*Coastal Steel Corp. v. Tilgham Wheelabrator, Ltd.*,
   709 F.2d 190 (3d Cir. 1983).............................................12

*Coors Brewing Co. v. Molson Breweries*,
   51 F.3d 1511 (10th Cir. 1995) ........................................................6

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ........................................................11

**Page**

*E. Bay Women's Health, Inc. v. gloStream, Inc.*,
 No. C 14-00712 WHA, 2014 U.S. Dist. LEXIS 55846
 (N.D. Cal. Apr. 21, 2014) .......................................................................13, 14, 15

*Farmland Indus., Inc. v. Frazier-Parrott Commodities, Inc.*,
 806 F.2d 848 (8th Cir. 1986) ........................................................................12, 13

*Fazio v. Lehman Bros. Inc.*,
 340 F.3d 386 (6th Cir. 2003) ..............................................................................6

*Gains v. Carrollton Tobacco Bd. of Trade, Inc.*,
 386 F.2d 757 (6th Cir. 1967) ............................................................................16

*Gen. Inv. Co. v. Lake Shore & M. S. R. Co.*,
 260 U.S. 261 (1922).............................................................................................9

*Gherebi v. Bush*,
 352 F.3d 1278 (9th Cir. 2003) ...........................................................................11

*Green Tree Fin. Corp.-Ala. v. Randolph*,
 531 U.S. 79 (2000)...............................................................................................9

*Hendrickson v. Octagon Inc.*,
 No. C 14-01416 CRB, 2014 U.S. Dist. LEXIS 83035
 (N.D. Cal. Jun. 17, 2014) ..............................................................................14, 15

*Howsam v. Dean Witter Reynolds, Inc.*,
 537 U.S. 79 (2002)...............................................................................................3

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
 No. MDL 1917, No. C 07-5944 SC, 2014 U.S. Dist. LEXIS 78901
 (N.D. Cal. Jun. 9, 2014) ......................................................................................16

*In re Cipro Cases I & II*,
 61 Cal. 4th 116 (2015) ........................................................................................16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 No. M 07-1827 SI, MDL No. 1827, 2014 U.S. Dist. LEXIS 55234
 (N.D. Cal. Apr. 14, 2014) .........................................................................13, 16, 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 No. M 07-1827 SI, slip op. (N.D. Cal. Feb. 6, 2012) .........................................17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 No. M 07-1827 SI, slip op. (N.D. Cal. Jan. 10, 2012) ...........................................4

*InterPetrol Berm. Ltd., v. Kaiser Aluminum Int'l Corp.*,
 719 F.2d 992 (9th Cir. 1983) .............................................................................15

1147615_1

PLAINTIFFS' OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S MOTION TO
COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA                    - iv -

Page

*Jones v. GNC Franchising, Inc.*,
   211 F.3d 495 (9th Cir. 2000) ............................................... 14

*Kilgore v. KeyBank N.A.*,
   673 F.3d 947 (9th Cir. 2012),
   *on reh'g*, 718 F.3d 1052 (9th Cir. 2013) ................................ 7

*Knutson v. Sirius XM Radio Inc.*,
   771 F.3d 559 (9th Cir. 2014) ........................................... 3, 6

*Koffler Elec. Mech. Apparatus Repair, Inc. v. Wärtsilä N. Am., Inc.*,
   No. C-11-0052 EMC, 2011 U.S. Dist. LEXIS 34851
   (N.D. Cal. Mar. 24, 2011) .................................................. 7

*Kristian v. Comcast Corp.*,
   446 F.3d 25 (1st Cir. 2006) .............................................. 16

*Lawlor v. Nat'l Screen Serv. Corp.*,
   349 U.S. 322 (1955) ........................................................ 6

*Maganallez v. Hilltop Lending Corp.*,
   505 F. Supp. 2d 594 (N.D. Cal. 2007) .................................. 3, 4

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988) ............................................ 12

*Marrese v. Am. Acad. of Orthopaedic Surgeons*,
   470 U.S. 373 (1985) ........................................................ 9

*Mason v. CreditAnswers, LLC*,
   No. 07cv1919-L(POR), 2008 U.S. Dist. LEXIS 68575
   (S.D. Cal. Sept. 5, 2008) ................................................. 14

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985) ..................................................... 3, 16

*Moody v. Metal Supermarket Franchising Am. Inc.*,
   No. C 13-5098 PJH, 2014 WL 988811
   (N.D. Cal. Mar. 10, 2014) ................................................. 7

*N. Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*,
   69 F.3d 1034 (9th Cir. 1995) ............................................ 15

*Perry v. AT&T Mobility LLC*,
   No. C 11-01488 SI, 2011 U.S. Dist. LEXIS 102334
   (N. D. Cal. Sept. 12, 2011) ........................................... 15, 16

1147615_1

PLAINTIFFS' OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S MOTION TO
COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA                    - v -

**Page**

*Ross v. Am. Express Co.*,
   547 F.3d 137 (2d Cir. 2008)........................................................................5

*Royal Printing Co. v. Kimberly-Clark Corp.*,
   621 F.2d 323 (9th Cir. 1980) ....................................................................4

*Santa Cruz Med. Clinic v. Dominican Santa Cruz Hosp.*,
   No. C 93-20613 RMW (EAI), 1995 WL 232410
   (N.D. Cal. Apr. 17, 1995) .........................................................................6

*State v. Wolowitz*,
   96 A.D. 2d 47 (N.Y. App. Div. 1983) ......................................................8

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988)..................................................................................12

*Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*,
   42 F.3d 1292 (9th Cir. 1994) ....................................................................3

*Turf Paradise, Inc. v. Ariz. Downs*,
   670 F.2d 813 (9th Cir. 1982) ....................................................................9

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
   363 U.S. 574 (1960)..................................................................................3

*Volt Info. Scis. Inc. v. Bd. of Trustees*,
   489 U.S. 468 (1989)..................................................................................3

*Wallis ex rel. Wallis v. Princess Cruises, Inc.*,
   306 F.3d 827 (9th Cir. 2002) ..................................................................14

*Ward v. Apple Inc.*,
   791 F.3d 1041 (9th Cir. 2015) ..................................................................6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
   §15.............................................................................................................9

28 U.S.C.
   §1404(a) .......................................................................................11, 12, 16

1147615_1

PLAINTIFFS' OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S MOTION TO
COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA   - vi -

## I.       STATEMENT OF ISSUES TO BE DECIDED

1.       Whether Plaintiffs[1] should be compelled, pursuant to an unconscionable arbitration agreement that many merchants never entered, to arbitrate Sherman Act, Cartwright Act and unjust enrichment claims related to a conspiracy between American Express and more than a dozen other Defendants to shift billions of dollars in liability for certain credit card chargebacks?

2.       Whether to contravene the federal policy in favor of efficient resolution of controversies by splintering American Express from Plaintiffs' action and transferring venue?

## II.      INTRODUCTION

Despite being just one of 18 named co-conspirator Defendants, American Express ("AMEX") seeks to invoke an arbitration clause to bar Plaintiffs from proceeding in this Court. They also invoke a forum selection clause in an effort to transfer venue.  But AMEX fails on both counts.  AMEX's Motion to Compel Arbitration and Transfer Venue is ill-conceived and, if granted, would result in inefficient litigation and piecemeal consideration of Plaintiffs' well-pleaded claims. Even if the Court granted AMEX's Motion to Compel Arbitration, large parts of Plaintiffs' claims that are not subject to arbitration would still be litigated in this Court – including whether AMEX was a co-conspirator, whether AMEX is jointly and severally liable and to what extent AMEX was involved with, controlled and owned EMVCo.  Significantly, AMEX acknowledges that many members of the putative class do not accept its cards, meaning there is no arbitration clause that could be invoked as to those plaintiffs.[2]  Plaintiffs also show that the parties did not agree to arbitrate the Cartwright and Sherman Act conspiracy claims, and that the clause itself is substantively and procedurally unconscionable – rendering it unenforceable.

AMEX's motion to sever and transfer the case against it to the Southern District of New York is similarly misguided.  Enforcement of the forum selection clause would not be reasonable because the vast majority of the alleged wrongdoing in this case is not governed by the agreement,

---

[1]    B&R Supermarket, Inc. d/b/a Milam's Market and Grove Liquors LLC, and proposed intervening plaintiffs Monsieur Marcel, and rue21.

[2]    AMEX concedes there are millions of merchant locations that do not accept AMEX. Dkt. No. 229 at 9 ("the millions of U.S. merchant locations that have accepted Visa, MasterCard and/or Discover cards without accepting American Express cards").

1   including claims against all other Defendants or claims based on co-conspirator liability.  Plaintiffs

2   also demonstrate that the forum selection clause is fundamentally unfair and unreasonable, and thus

3   the presumption of its validity has been rebutted and the clause must be set aside.

4          Because both the arbitration clause and the forum selection clause in AMEX's Card

5   Acceptance Agreement ("CAA") are inapplicable, AMEX's Motion must be denied in its entirety.

6   **III.    FACTUAL OVERVIEW**

7          On March 8, 2016, Plaintiffs[3] filed this class action lawsuit against Defendants[4] on behalf of

8   merchants who have been unlawfully subjected to the Liability Shift for the assessment of

9   MasterCard, Visa, Discover and AMEX credit and charge card chargebacks since October 2015.[5]

10  ¶5.  Prior to the Liability Shift, the putative Class typically was not liable for the cost of fraudulent

11  charges in "card present" transactions.  ¶¶71-75.  But AMEX and its fellow Defendants agreed to an

12  unprecedented change in the system for handling chargebacks for card present transactions.  ¶¶74-

13  75.  After October 2015, AMEX, the card-issuing banks, and the other Networks decreed that

14  merchants in the Class were liable for chargebacks attributed to any card present chip card

15  transaction not processed on "certified" chip card reading point of sale ("POS") devices.  *Id.*; *see*

16  *also* ¶79.

17         Plaintiffs allege that AMEX conspired with the other Defendants to shift the liability for

18  these fraudulent charges onto merchants like Plaintiffs under cover of a standard-setting organization

19  named EMVCo.  ¶¶8, 20, 58-60, 74-75.  Along with the other Network Defendants, AMEX owns an

20  equal share of EMVCo, which implements decisions on a "consensus basis," *i.e.*, through agreement.

21

---

22  [3]    Plaintiffs have moved to intervene additional named plaintiffs, which motion is unopposed by
23  Defendants.  Dkt. No. 255.  On May 13, 2016, AMEX filed a supplement regarding intervening
    plaintiffs Monsieur Marcel and rue21.  Dkt. No. 256.  AMEX makes the same arguments regarding
24  these Plaintiffs as it made in its initial motion.

25  [4]    Visa, Inc.; Visa USA, Inc.; MasterCard International Incorporated; American Express Company;
    Discover Financial Services; Bank of America, N.A.; Barclays Bank Delaware; Capital One
26  Financial Corporation; Chase Bank USA, National Association; Citibank (South Dakota), N.A.;
    Citibank, N.A.; PNC Bank, National Association; USAA Savings Bank; U.S. Bank National
27  Association; Wells Fargo Bank, N.A.; EMVCo, LLC; JCB Co. Ltd; and UnionPay.

28  [5]    All references to "¶" and "¶¶" are to the Complaint, filed on March 8, 2016, Dkt. No. 1.

¶20.  Plaintiffs' Sherman Antitrust Act, Cartwright Act, and unjust enrichment claims arise from this conspiracy between AMEX and the other Defendants.  ¶¶1, 5, 74-75.

Along with the other Defendants, Plaintiffs allege that AMEX knew that Class members would not be able to obtain, install, and have "certified" the necessary equipment and software in time to avoid the Liability Shift. ¶79.  Indeed, Plaintiffs allege that AMEX and the other Defendants knew that the "certification" process would take years after the October 2015 Liability Shift to complete, and thus conspired to proceed as they did to achieve supracompetitive profits. ¶¶79, 86.

## IV.    AMEX'S ARBITRATION ARGUMENT FAILS

### A.    Legal Standard

Arbitration is a matter of contract, and a "'party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).  As such, "[a]rbitration . . . is a matter of consent, not coercion."  *Volt Info. Scis. Inc. v. Bd. of Trustees*, 489 U.S. 468, 479 (1989).  "[A] disagreement about whether an arbitration clause . . . applies to a particular type of controversy is for the court."  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).  In assessing whether a dispute is arbitrable, courts ask whether the arbitration clause is broad or narrow and whether the arbitration clause encompasses the asserted claim.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985); *see also Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F.3d 1292, 1294 (9th Cir. 1994).

The burden of proving a valid and enforceable agreement rests on the party seeking to compel arbitration.  *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 599-600 (N.D. Cal. 2007).[6]  As detailed below, AMEX has failed to shoulder that burden.

---

[6]    AMEX's claim that the Supreme Court has blessed the arbitration clause in its CAA, does not answer the question as to whether the clause applies in this case, and in all circumstances.  *See* Dkt. No. 229 at 1.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA        - 3 -

**B.     The Court Should Not Compel Arbitration**

     **1.     Plaintiffs' Co-Conspirator and Joint and Several Liability Claims, as Well as Those Related to AMEX's Ownership of EMVCo Are Not Subject to Arbitration**

Plaintiffs' Complaint alleges that AMEX violated federal and state antitrust laws by conspiring with the other Defendants and through co-conspirator Defendant EMVCo.  ¶¶5, 20, 74-75, 79, 143-144, 152, 154, 168.  As a co-conspirator and co-owner of EMVCo, AMEX may not escape facing Plaintiffs' claims against it.  *Id.*; *see also* Dkt. No. 1, Prayer for Relief, §C.  Numerous decisions, including those in this District, support the commonsense notion that claims based on joint and several liability of co-conspirators are not subject to arbitration.  *See, e.g.*, *Royal Printing Co. v. Kimberly-Clark Corp.*, 621 F.2d 323, 327 (9th Cir. 1980) (citing *Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390 (1906)); Bernay Decl.,[7] Ex. 1 (*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, slip op. (N.D. Cal. Jan. 10, 2012) (claims against defendant based on co-conspirator liability not subject to arbitration).

*In re TFT-LCD (Flat Panel) Antitrust Litigation* is instructive.  The arbitration claim there was broad.  *Id.* at 2 ("If any disagreement or controversy of any kind arises between DISTRIBUTOR and SUPPLIER, the parties will meet to attempt to resolve it").  In that case Judge Illston held:

> the arbitration clause is necessarily limited to disputes arising out of the business relationship between Jaco and NEC.  Thus, Jaco's claims are arbitrable to the extent they are based upon purchases it made directly from NEC; ***to the extent Jaco's claims against NEC are based on co-conspirator liability for purchases Jaco made from other defendants, such claims are not subject to arbitration***.

*Id.*, Ex 1 at 2; *Acer Am. Corp. v. Hitachi, Ltd. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, No. M 07-1827 SI, 2014 U.S. Dist. LEXIS 50526, at *50 (N.D. Cal. Apr. 10, 2014) (same).

Here, Plaintiffs plead violations of the Sherman Act, the Cartwright Act, and a claim for unjust enrichment. Those claims are based in large part on allegations that AMEX, as a co-owner of EMVCo and as a party to Defendants' conspiracy, enacted the Liability Shift.  Those claims are thus premised on a theory of co-conspirator liability and should not be subject to arbitration.  *Id.*

---

[7]   *See* Declaration of Alexandra S. Bernay in Support of Plaintiffs' Opposition to Defendant American Express Company's Motion to Compel Arbitration and Transfer Venue, filed concurrently herewith ("Bernay Decl.").

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 4 -

1

**2.      AMEX Cannot Arbitrate the Claims of the Many Merchants in the Class that Do Not Accept Its Cards but Accept Visa, MasterCard, or Discover**

2

3      Many merchants in the putative class have been affected by the Liability Shift but do not

4    accept AMEX.   Indeed, AMEX's motion concedes that there are "millions of U.S. merchant

5    locations that have accepted Visa, MasterCard and/or Discover cards without accepting American

6    Express cards." Dkt. No. 229 at 9.[8]  These merchants, who have not entered into any contract with

7    AMEX, would not be subject to any arbitration agreement as there is no agreement between those

8    class members and AMEX to arbitrate any dispute.  *Ross v. Am. Express Co.*, 547 F.3d 137, 143 (2d

9    Cir. 2008).  As the Second Circuit held in that class action alleging AMEX conspired to fix foreign

10   currency transaction fees with MasterCard, Visa, and several Issuing Banks:

11
12
13
14
15
16

> Amex has no corporate affiliation with the Issuing Banks; the plaintiffs allege without contradiction that Amex is in fact a ***competitor*** of the Issuing Banks in the credit card market.  Amex did not sign the cardholder agreements, it is not mentioned therein, and it had no role in their formation or performance. The plaintiffs did not in any way treat Amex as a party to the cardholder agreements.  On the contrary, they do not allege to have treated Amex at all.  Just as with BMB in *Sokol Holdings, Inc.*, Amex's only relation with respect to the cardholder agreements was as a third party allegedly attempting to subvert the integrity of the cardholder agreements.  In sum, arbitration is a matter of contract and, contractually speaking, the plaintiffs do not know Amex from Adam.  Amex therefore cannot avail itself of the arbitration agreements contained in the cardholder agreements.

17   *Id.* at 146 (emphasis in original).  The same result holds here.

18
19

**3.      The Alleged Conspiracy Between AMEX and the Other Defendants Is Outside the Scope of the Arbitration Agreement**

20      While AMEX asserts claims that Plaintiffs' allegations are encompassed in the arbitration

21   provision (Dkt. No. 229 at 6-7, 9), the Card Acceptance Agreement is limited to bilateral claims

22   between a merchant and AMEX, and it does not encompass the conspiracy among AMEX and

23   multiple other Defendants.  Dkt. No. 229-2, Ex. C at 1, §1(c) ("Claim means any claim . . . dispute,

24   or controversy ***between you and us*** . . . .").  Indeed, the Limitations on Arbitration provided in the

25

26

---

[8]     To the extent the Court deems it necessary, Plaintiffs are willing to put forth a named plaintiff who does not accept AMEX but has been assessed chargebacks from Visa, MasterCard or Discover cards as a result of AMEX's conspiracy with the other Defendants.

27
28

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA            - 5 -

1   Arbitration Agreement limit an arbitrator's authority to claims between a merchant and AMEX.[9] *Id.*,

2   Ex. H. at 249 ("The arbitrator's authority is limited to Claims between Sponsored Merchant, [insert

3   the term you use to refer to yourself], and American Express."). But Plaintiffs' antitrust conspiracy

4   claims are not limited to Plaintiffs and AMEX – instead they arise from AMEX's anticompetitive

5   conspiracy with ***other*** co-conspirator Defendants. As such, they fall outside the terms of the

6   purported arbitration agreement. *Am. Express Co. v. Italian Colors Rest.*, ___ U.S. ___, 133 S. Ct.

7   2304, 2309 (2013) (recognizing that arbitration agreements should be enforced according to their

8   terms); *Knutson*, 771 F.3d at 565; *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516

9   (10th Cir. 1995) ("A dispute within the scope of the contract is still a condition precedent to the

10  involuntary arbitration of antitrust claims").

11        Because Plaintiffs have claims based on co-conspirator liability, and because Plaintiffs also

12  allege AMEX is liable through its co-ownership of EMVCo, reference to card acceptance

13  agreements or the merchant regulations is neither necessary nor integral. *See, e.g.*, *Fazio v. Lehman*

14  *Bros. Inc.*, 340 F.3d 386, 395 (6th Cir. 2003) ("A proper method of analysis here is to ask if an

15  action could be maintained without reference to the contract or relationship at issue. If it could, it is

16  likely outside the scope of the arbitration agreement."); *Santa Cruz Med. Clinic v. Dominican Santa*

17  *Cruz Hosp.*, No. C 93-20613 RMW (EAI), 1995 WL 232410, at *3 (N.D. Cal. Apr. 17, 1995)

18  (denying motion to compel and saying the "claims are not arbitrable because no language in the

19  contracts . . . needs to be interpreted in order to evaluate the merits of plaintiffs' antitrust claims").

20

21

---

22  [9]   The introduction to the *Arbitration Agreement (as to Claims involving American Express)* states

23  that "[i]n the event that Sponsored Merchant or [insert the term you use to refer to yourself] is not able to resolve a Claim against American Express, or a claim against [insert the term you use to refer

24  to yourself] ***or any other entity that has a right to join in resolving a Claim***, this section explains how Claims can be resolved through arbitration." Dkt. No. 229-2, Ex. H at 249. But AMEX does

25  not have a right to join co-conspirators to an antitrust conspiracy. *Ward v. Apple Inc.*, 791 F.3d 1041, 1049 (9th Cir. 2015) ("an absent antitrust co-conspirator generally will not be a required party

26  under Rule 19(a)(1)(A), which applies only when a party's absence prevents the court from 'accord[ing] complete relief among existing parties'"); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S.

27  322, 330 (1955) (holding that joinder of alleged antitrust co-conspirators was not required "since as joint tortfeasors they were not indispensable parties"). Unless otherwise noted, citations are omitted

28  and emphasis is added, here and throughout.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA    - 6 -

1

2

### 4. The Arbitration Agreement and Its Delegation Provision Are Procedurally and Substantively Unconscionable

As a generally applicable contract defense, unconscionability provides grounds for revoking a contract. *Circuit City Stores v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002). ("Because unconscionability is a defense to contracts generally and does not single out arbitration agreements for special scrutiny, it is . . . a valid reason not to enforce an arbitration agreement under the FAA."); *see also Kilgore v. KeyBank N.A.*, 673 F.3d 947, 963 (9th Cir. 2012), *on reh'g*, 718 F.3d 1052 (9th Cir. 2013) (*en banc*) (describing the viability of unconscionability as a defense to arbitration clauses). In light of the unequal bargaining power between AMEX and Plaintiffs and the lack of a clear and unmistakable agreement to the contrary, any unconscionability determination is for the Court to make. *Moody v. Metal Supermarket Franchising Am. Inc.*, No. C 13-5098 PJH, 2014 WL 988811, at *3 (N.D. Cal. Mar. 10, 2014) ("The court finds that the Agreements' general reference to the 'then current commercial arbitration rules of the AAA' is not [a] 'clear and unmistakable' delegation . . ., and thus finds that the threshold question of arbitrability remains with the court."); *but see Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015).

Like the arbitration clause in *Moody*, the operative language of the 260-page agreement here merely lists, deep on page 249, that the arbitral rules of the AAA or JAMS in effect when a claim is filed apply unless they conflict with the agreement. Dkt. No. 229-2, Ex. H at 249. Yet, these rules were neither included nor attached to the arbitration agreement. *E.g.*, *id.* Both the AAA and JAMS have multiple sets of rules and AMEX never specified which set of rules it was referencing.

Defendants insist that New York law must apply in assessing whether the arbitration clause is unconscionable. Dkt. No. 229 at 8. Plaintiffs don't necessarily agree, but unconscionability under California law is generally in accord with New York law. *Koffler Elec. Mech. Apparatus Repair, Inc. v. Wärtsilä N. Am., Inc.*, No. C-11-0052 EMC, 2011 U.S. Dist. LEXIS 34851, at *6, *21-*22 (N.D. Cal. Mar. 24, 2011) (finding New York and California law functionally the same in relation to unconscionability determination). The jurisdictions each require a contract to be both procedurally and substantively unconscionable to be rendered invalid. *Id.*; *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013); *Ciago v. Ameriquest Mortg. Co.*, 295 F. Supp. 2d 324, 328 (S.D.N.Y.

2003) (under New York law, a determination of unconscionability generally requires both procedural and substantive unconscionability).   A "'sliding scale'" test of procedural and substantive unconscionability is applied.  *Id.*; *see also State v. Wolowitz*, 96 A.D. 2d 47, 68 (N.Y. App. Div. 1983).

Here, the arbitration provision is both procedurally and substantively unconscionable.

### a.   The Arbitration Agreement Is Procedurally Unconscionable

AMEX's take-it-or-leave arbitration agreement is procedurally unconscionable.  It is a testament to the disparity in bargaining power between AMEX, a multinational corporation that conducts business throughout the United States, and Plaintiffs – who are faced with the Hobson's choice of either agreeing to arbitrate or give up accepting AMEX. Dkt. No. 229 at 8.  Where, as here, a party lacks a meaningful choice, but must acquiesce to the proffered terms – which AMEX may and does unilaterally amend – the provision is procedurally unconscionable.  *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002).  Defendants' assertion that Plaintiffs could have chosen not to accept AMEX cards ignores that most retailers, particularly an industry with the slim margins typical of grocery markets, need to accept all credit cards.[10]

### b.   The Arbitration Agreement Is Substantively Unconscionable

AMEX points to an illusory parity in arguing its arbitration clause is not substantively unconscionable. Dkt. No. 229 at 9.  Apart from pointing to the text of the arbitration agreement and the "sterling" reputations of JAMS and the AAA, AMEX fails to provide any support that arbitration in practice is fair to merchants.  *Id.*  For example, both AMEX and Plaintiffs are purportedly barred from instituting a class action, but this bar realistically only impacts Plaintiffs as it would be exceedingly unlikely AMEX would ever seek to file a class action.  Plaintiffs should be provided an opportunity to test issues of substantive unconscionability through discovery.  In any event, the arbitration agreement is substantively unconscionable because it may block or inappropriately limit

---

[10]   For the same reasons, the arbitration clause is procedurally unconscionable as to rue21 and Monsieur Marcel.

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA                - 8 -

1   discovery and require application of New York law, thereby precluding Plaintiffs' claims under

2   federal and California law.

**(1)    By Requiring the Arbitrator to Apply New York Law, the Arbitration Agreement Impermissibly Excludes Plaintiffs' Federal Antitrust and California Cartwright Act Claims**

The agreement's Governing Law provision mandates application of New York law. *See* Dkt. No. 229-2, Ex. C at 7 ("The Agreement and all Claims are governed by and shall be construed and enforced according to the laws of the State of New York without regard to internal principles of conflicts of law"). Indeed, the arbitration provision states: "The arbitrator shall apply New York law and applicable statutes of limitations and shall honor claims of privilege recognized by law." *Id.*, Ex. C at 6. Plaintiffs' claims, however, arise under ***federal*** (the Sherman Act and the Clayton Act) and ***California*** (Cartwright Act) statutes, not New York law. *Id.*, Ex. H at 251; *id.*, Ex. C at 6. Therefore and significantly, the parties did not agree to submit the antitrust claims at issue in this litigation – which are not governed by New York's law – to arbitration. *Id.*; *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 90 (2000) ("In determining whether statutory claims may be arbitrated, we first ask whether the parties agreed to submit their claims to arbitration . . . .").

Moreover, an arbitrator applying "New York law" could not recognize Plaintiffs' Sherman Act and Clayton Act claims because federal courts have exclusive jurisdiction over Sherman Act and Clayton Act claims. 15 U.S.C. §15; *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 379 (1985) ("federal antitrust claims are within the exclusive jurisdiction of the federal courts"); *Gen. Inv. Co. v. Lake Shore & M. S. R. Co.*, 260 U.S. 261, 287 (1922) ("This right to sue, however, is granted in terms which show that it is to be exercised only in a 'court of the United States.' This suit was brought in a state court, and in so far as its purpose was to enjoin a violation of the Sherman Anti-Trust Act that court could not entertain it. The situation was the same in respect of the purpose to enjoin a violation of the Clayton Act."); *see also Turf Paradise, Inc. v. Ariz. Downs*, 670 F.2d 813, 821 (9th Cir. 1982) ("there is no concurrent state and federal jurisdiction over the federal antitrust claims. The federal courts have exclusive jurisdiction over federal antitrust claims").

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 9 -

1   While the arbitration provision grants the arbitrators authority to award any relief available in

2   court, it also states that the "arbitrator shall have no power or authority to alter the Agreement or any

3   of its separate provisions."  Dkt. No. 229-2, Ex. H. at 250; *id.*, Ex. C at 6.  Since the arbitrator is

4   limited to applying New York law, the Governing Law provision impermissibly waives Plaintiffs'

5   substantive rights under the Sherman Act, Clayton Act, and California's Cartwright Act.  *Am.*

6   *Express Co.*, 133 S. Ct. at 2310 (prospective waiver of right to pursue statutory remedies prohibited).

7   Conversely, the arbitration provision does not contemplate an agreement between the parties to

8   litigate federal antitrust claims – especially in this case where AMEX is alleged to have participated

9   in a conspiracy with the other Defendants to commit such antitrust violations.  Accordingly, there is

10   no agreement to arbitrate federal antitrust claims.

11   **(2)   The Arbitration Provision Precludes Discovery**

12   Plaintiffs will be hamstrung if forced to arbitrate under the agreement's terms.   The

13   arbitration provision grants discovery only if a claim is for more than $100,000.  In the words of the

14   arbitration provision: "If a Claim is for $10,000 or less, Sponsored Merchant or American Express

15   may choose whether the arbitration will be conducted solely on the basis of documents submitted to

16   the arbitrator, through a telephonic hearing, or by an in-person hearing as established by the rules of

17   the selected arbitration organization."  Dkt. No. 229-2, Ex. H at 251.  The arbitration provision

18   provides no mention of discovery as to claims below $100,000:

19   If a Claim is for $100,000 or more, or includes a request for injunctive relief, (a) any
       party to this Agreement shall be entitled to reasonable document and deposition
20   discovery, including (x) reasonable discovery of electronically stored information, as
       approved by the arbitrator, who shall consider, inter alia, whether the discovery
21   sought from one party is proportional to the discovery received by another party, and
       (y) no less than five depositions per party. . . . .
22
       *Id.*
23
       AAA's and JAMS's arbitration rules also place strict limits on discovery.   Only in
24
   "exceptional cases" does the AAA permit depositions:
25
       In exceptional cases, at the discretion of the arbitrator, upon good cause
26   shown and consistent with the expedited nature of arbitration, the arbitrator may
       order depositions to obtain the testimony of a person who may possess information
27   determined by the arbitrator to be relevant and material to the outcome of the case.
       The arbitrator may allocate the cost of taking such a deposition.
28

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 10 -

1    Bernay Decl., Ex. 2 (American Arbitration Association, Commercial Arbitration Rules and

2    Mediation Procedures (Including Rules for Large Complex Commercial Disputes), L-3(f) (Oct. 1,

3    2013)).  Similarly, JAMS limits a party to a single deposition unless a showing of "reasonable need"

4    is made:

5            Each Party may take one deposition of an opposing Party or of one individual
        under the control of the opposing Party. The Parties shall attempt to agree on the
6        time, location and duration of the deposition. If the Parties do not agree, these issues
        shall be determined by the Arbitrator.  The necessity of additional depositions shall
7        be determined by the Arbitrator based upon the reasonable need for the requested
        information, the availability of other discovery options and the burdensomeness of
8        the request on the opposing Parties and the witness.

9    *Id.*, Ex. 3 (Judicial Arbitration and Mediation Services, JAMS Comprehensive Arbitration Rules,

10   Rule 17(b) (July 1, 2014)).

11       These purported rules render the agreement substantively unconscionable because antitrust

12   cases typically require far more than the scant discovery provided for in the arbitration provision.

13   **V.      AMEX'S VENUE ARGUMENTS ARE INAPT**

14       **A.      Legal Standard**

15       AMEX, which earns millions from California merchants annually, does not claim that venue

16   is improper, but instead urges the Court to disturb Plaintiffs' choice of venue by severing Plaintiffs'

17   joint and several liability claims arising out of an antitrust conspiracy and transferring them to the

18   Southern District of New York to litigate against AMEX alone.  *See* Dkt. No. 229 at 1.  AMEX

19   moves for transfer under 28 U.S.C. §1404(a), which states that "[f]or the convenience of parties and

20   witnesses, in the interest of justice, a district court may transfer any civil action to any other district

21   or division where it might have been brought."

22       The Ninth Circuit has held that "as a general matter, the district court is not required to

23   'determine the best venue,' . . . and transfer under §1404(a) 'should not be freely granted.'"  *Gherebi*

24   *v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003).  "[D]efendant must make a strong showing of

25   inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v.*

26   *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  A forum selection clause is only one

27

28

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA                - 11 -

1  of many factors in a §1404(a) analysis and certainly not a dispositive one.  *See Stewart Org., Inc. v.*

2  *Ricoh Corp.*, 487 U.S. 22, 31 (1988).[11]

3  **B.   AMEX's Arguments Regarding Venue Fail**

4  **1.   Plaintiffs' Claims Are Outside the Scope of the Forum Selection Clause**

5

6  In addressing venue in a diversity case, the threshold issue is to determine the scope of the

7  forum selection clause.  *See Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 512-13 (9th

8  Cir. 1988) ("enforcement of a forum clause necessarily entails interpretation of the clause before it

9  can be enforced").  In assessing scope, "[e]xamination of the merits of any of the claims or defenses

10 need not be made [as a] forum selection clause 'establishes a legal right which is analytically distinct

11 from the rights being asserted in the dispute to which it is addressed.'"  *Farmland Indus., Inc. v.*

12 *Frazier-Parrott Commodities, Inc.*, 806 F.2d 848, 850 (8th Cir. 1986) (quoting *Coastal Steel Corp.*

13 *v. Tilgham Wheelabrator, Ltd.*, 709 F.2d 190, 195 (3d Cir. 1983)).

14 In this case, Plaintiffs assert antitrust and other claims against 18 Defendants for their roles in

15 a conspiracy that caused injury to Plaintiffs and the class.  ¶¶1-22, 29-33.  Fully *17* of the Defendants

16 are *not* subject to the Card Acceptance Agreements between Plaintiffs and AMEX that contain the

17 forum selection clause.  *See* Bernay Decl., Ex. 4 at 1 (Agreement for American Express Card

18 Acceptance) ("This Agreement is by and between American Express Travel Related Services

19 Company, Inc., a New York corporation, and you, the Merchant.").  The Complaint alleges that 18

20 Defendants conspired through a continuing agreement, understanding, or concerted action between

21 and among themselves outside of the agreement between plaintiffs and AMEX.  ¶¶143, 152.

22 Plaintiffs could not have anticipated that AMEX would participate in an elaborate scheme of

23 concerted actions with 17 other Defendants, or the impracticality of litigating claims with joint and

24 several liabilities solely against AMEX in New York resulting therefrom.  *See Farmland*, 806 F.2d

25 at 852.

26

27 _____

[11]   AMEX's reliance on *Atl. Marine Constr. Co. v. United States Dist. Court*, is inapposite as the Supreme Court "presupposes a contractually valid forum-selection clause" in the §1404(a) analysis

28 in that case.  *See* ___ U.S. ___, 134 S. Ct. 568, 581 n.5 (2013).

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 12

1  In *Farmland*, the Eighth Circuit assessed a substantially similar forum selection clause and

2  held that allegations of an elaborate scheme with multiple defendants were not subject to the

3  agreement.[12]  *See id.* at 852 (affirming district court's finding that "under the circumstances,

4  enforcement of the forum selection clause would not be reasonable"); *see also In re TFT-LCD (Flat*

5  *Panel) Antitrust Litig.*, No. M 07-1827 SI, MDL No. 1827, 2014 U.S. Dist. LEXIS 55234, at *75-

6  *76 (N.D. Cal. Apr. 14, 2014) (finding that "vast majority of the alleged wrongdoing in this case is

7  not governed by the agreement" containing the forum selection clause as the agreement does not

8  cover claims against all other defendants or "claims based on co-conspirator liability").  The same

9  result should obtain here.

10  **2.      The Forum Selection Clause Is Not Valid**

11  Here, AMEX's forum selection clause is not contractually valid and not enforceable as it is

12  unreasonable and fundamentally unfair.  *See E. Bay Women's Health, Inc. v. gloStream, Inc.*, No. C

13  14-00712 WHA, 2014 U.S. Dist. LEXIS 55846, at *3-*4 (N.D. Cal. Apr. 21, 2014) ("*gloStream*")

14  ("A forum-selection clause is presumptively valid and should not be set aside unless the party

15  challenging enforcement of the clause can prove that it is unreasonable and fundamentally unfair.")

16  (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-95 (1991)).

17  When a forum selection clause is fundamentally unfair or unreasonable, the presumption of

18  its validity is rebutted and the clause must be set aside.  *See gloStream*, 2014 U.S. Dist. LEXIS

19  55846, at *3-*4 (citing *Carnival Cruise Lines*, 499 U.S. at 593-95).  AMEX's forum selection clause

20  suffers from both defects of being fundamentally unfair and unreasonable, and as a result, should not

21  be enforced.

22

23

---

24  [12]  In *Farmland*, the forum selection clause stated: "'[Plaintiff] agrees to bring any judicial action,
including any complaint, counterclaim, cross-claim or third party complaint, arising directly,
25  indirectly, or otherwise in connection with, out of, related to or from this Agreement or any
transaction covered hereby or otherwise arising in connection with the relationship between the
26  parties including any action by [plaintiff] against [defendant] or any person who is an officer, agent,
employee or associated person of [defendant] at the time the cause of action arises, only in courts
27  located within Cook County, Illinois, unless [defendant] voluntarily in writing expressly submits to
another jurisdiction. . . .'"  806 F.2d at 849.

28

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA            - 13 -

### a. The Forum Selection Clause Is Fundamentally Unfair Without Adequate Notice

For a forum selection clause to "comport with fundamental fairness," it needs to provide sufficient notice to the parties subject to the clause.[13]  *See Mason*, 2008 U.S. Dist. LEXIS 68575, at *6 (citing *Carnival Cruise Lines*, 499 U.S. at 595 and *Wallis ex rel. Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 839-40 (9th Cir. 2002)).  Here, AMEX's forum selection clause is ambiguous and confusing and cannot provide adequate notice of forum selection.  *See Mason*, 2008 U.S. Dist. LEXIS 68575, at *7-*9.

In its motion, AMEX suggests that the forum selection issue comes into play only if the Court does not enforce the arbitration clause.  *See* Dkt. No. 229 at 11.  The forum selection clause in the Card Acceptance Agreement states: "Subject to section 7 of the General Provisions, any action by either party hereunder shall be brought only in the appropriate federal or state court located in the County and State of New York."  Dkt. No. 229-2, Ex. B.  In turn, section 7's arbitration provision states "if any portion of these ***Limitations on Arbitration*** is deemed invalid or unenforceable, then the entire Arbitration provision . . . will not apply."  Bernay Decl., Ex 4 at 6 (emphasis in original).  In effect, without the Arbitration provision, section 7 – the section that the forum selection clause is conditioned upon – is left with solely the mediation provision as a form of dispute resolution.[14]  As such, in the event that the arbitration clause is not enforced, the forum selection clause is ambiguous concerning an antitrust class action such as this and does not mandate such action to be brought in any particular forum.

"As with all contracts, any ambiguity is to be construed against the drafter."  *Hendrickson v. Octagon Inc.*, No. C 14-01416 CRB, 2014 U.S. Dist. LEXIS 83035, at *6 (N.D. Cal. Jun. 17, 2014)

---

[13]  Although a "'take it or leave it'" contract without meaningful negotiation does not cause the forum selection clause to be unenforceable, such clauses "are subject to judicial scrutiny for fundamental fairness."  *See gloStream*, 2014 U.S. Dist. LEXIS 55846, at *11-*12; *Mason v. CreditAnswers, LLC*, No. 07cv1919-L(POR), 2008 U.S. Dist. LEXIS 68575, at *6 (S.D. Cal. Sept. 5, 2008).  The Ninth Circuit noted that "[i]n the absence of arms length negotiations and equal bargaining position, such terms are usually unconscionable."  *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 n.15 (9th Cir. 2000).

[14]  Section 7 of the General Provisions contains only five subsections: (a) Notice of Claim; (b) Mediation; (c) Arbitration; (d) Definition; and (e) Continuation.  Bernay Decl., Ex 4.

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 14 -

1   (citing *InterPetrol Berm. Ltd., v. Kaiser Aluminum Int'l Corp.*, 719 F.2d, 992, 998 (9th Cir. 1983)).

2   AMEX's forum selection clause failed to designate a forum in the event that an arbitration clause is

3   held unenforceable, and to transfer venue on the basis of an ambiguous forum selection clause would

4   require the Court to fill in the blank for the drafter.  *See id.* at *9 (stating that "[t]his Court is neither

5   empowered" nor inclined "to fill in the blanks and interpret the [forum selection clause]") (citing *N.*

6   *Cal. Dist. Council of Laborers v. Pittsburg-Des Moines Steel Co.*, 69 F.3d 1034, 1037 (9th Cir.

7   1995)).

8               **b.      The Forum Selection Clause Is Unreasonable**

9           A forum selection clause is considered "'unreasonable'" when its enforcement contravenes

10  "a strong public policy of the forum in which suit is brought."  *See gloStream*, 2014 U.S. Dist.

11  LEXIS 55846, at *3-*4.  A forum selection clause that strips away a non-waivable statutory claim

12  and causes a claimant to forfeit his statutory right is "contrary to the strong public policy of

13  California and will not be enforced."  *See Perry v. AT&T Mobility LLC*, No. C 11-01488 SI, 2011

14  U.S. Dist. LEXIS 102334, at *15 (N. D. Cal. Sept. 12, 2011) (stating "California courts will enforce

15  adequate forum selection clauses that apply to non-waivable statutory claims, because such clauses

16  does not waive the claims, they simply submit their resolution to another forum").  Indeed, AMEX's

17  choice of law and choice of forum clauses here work in tandem to strip away Plaintiffs' Sherman

18  Antitrust Act and Cartwright Act claims:

19          The Agreement and all Claims are governed by and shall be construed and
        enforced according to the laws of the State of New York without regard to internal
20      principles of conflict of law.  Subject to section 7,[15] any action by either party
        hereunder shall be brought only in the appropriate federal or state court located in the
21      County and State of New York.

22  Bernay Decl., Ex. 4 at 7.

23          Despite AMEX's efforts, "the enforceability of the forum selection clause cannot be divorced

24  from the choice of law question," as Plaintiffs' rights and claims under the federal Sherman Antitrust

25  Act and California's Cartwright Act would certainly be stripped by the combination of mandatory

26  application of New York laws in a New York forum.  *See Perry*, 2011 U.S. Dist. LEXIS 102334, at

27  _____
    [15]   The October 2015 Amendment to the AMEX Card Acceptant Agreement revised "Subject to
28  Section 7" to "Subject to Section 7 of the General Provisions."  *See* Dkt. No. 229-2, Ex. B.

    PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
    MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 15 -

1    *12-*13.  As the California Supreme Court emphasized, the state enacted the Cartwright Act to

2    protect its citizens from "the burgeoning power of monopolies and cartels" and ensuring "the

3    unrestrained interaction of competitive forces [to] yield the best allocation of our economic

4    resources, the lowest prices, the highest quality and the greatest material progress."  *In re Cipro*

5    *Cases I & II*, 61 Cal. 4th 116, 136 (2015).  As such, "'"every trust is unlawful, against public policy

6    and void"'" and "[a]greements in violation of the act are 'absolutely void and . . . not enforceable at

7    law or in equity.'"  *Id*.  Similarly, remedies under the Sherman Antitrust Act are mandatory and

8    unwaivable.  *See Kristian v. Comcast Corp.*, 446 F.3d 25, 47-48 (1st Cir. 2006) (citing *Gains v.*

9    *Carrollton Tobacco Bd. of Trade, Inc.*, 386 F.2d 757, 759 (6th Cir. 1967).

10        Given the foregoing, the Court should consider both the choice-of-law and choice-of-forum

11   clauses in determining the unenforceability of AMEX's forum selection clause as against

12   California's strong public policy in protecting its citizens from the cartel formed by Defendants.  *See*

13   *Perry*, 2011 U.S. Dist. LEXIS 102334, at *12-*13 ("explaining that, where antitrust violations are

14   alleged, the Supreme Court would have 'little hesitation in condemning' such an agreement 'as

15   against public policy'") (citing *Mitsubishi Motors Corp*, 473 U.S. at 637 n.19).  Such consideration

16   is of utmost importance as the Supreme Court noted that "a §1404(a) transfer of venue will not carry

17   with it the original venue's choice-of-law rules – a factor that in some circumstances may affect

18   public-interest considerations."  *See Atl. Marine Constr.*, 134 S. Ct. at 582.

19               **3.      Public Interest Factors Outweigh the Forum Selection Clause**

20        AMEX's forum selection clause is invalid, but regardless of its validity, the public interest

21   factors in this case outweigh the clause's application.  *See id*. (finding that "it is 'conceivable in a

22   particular case' that the district court 'would refuse to transfer a case notwithstanding the

23   counterweight of a forum-selection clause'").  Public interest factors include "'efficient resolution of

24   controversies,'" promotion of complete and consistent dispute adjudication, and "local interest in

25   resolving the controversy" – all of which are implicated in this case.  *See TFT-LCD (Flat Panel)*

26   *Antitrust Litig.*, 2014 U.S. Dist. LEXIS 55234, at *75-*76; *In re Cathode Ray Tube (CRT) Antitrust*

27   *Litig.*, No. MDL 1917, No. C 07-5944 SC, 2014 U.S. Dist. LEXIS 78901, at *92 (N.D. Cal. Jun. 9,

28   2014).

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA

1    Here, all of Plaintiffs' claims arise out of the same conspiracy among the several Defendants.

2    ¶126.  Defendants' liabilities are joint and several.  Dkt. No. 1, Prayer for Relief, §C.  Severing

3    AMEX's claims and trying them in separate districts based on an identical set of facts and law would

4    not only be inefficient and duplicative – unnecessarily burdening of two district courts with heavy

5    dockets – but also would risk inconsistent and incomplete judgments.  Losing claims relating to

6    AMEX – a significant member of the cartel – would not promote the local interest of protecting

7    California citizens by reining in the burgeoning power of cartels.  As such, courts adjudicating

8    similar complex actions have routinely denied requests made by one out of many defendants to sever

9    and transfer.  *See, e.g.*, *Bronstein v. United States Customs & Border Prot.*, No. 15-cv-02399-JST,

10   2016 U.S. Dist. LEXIS 28998, at *14-*16 (N.D. Cal. Mar. 7, 2016) (denying motion to sever and

11   transfer despite forum selection clause as piecemeal litigation "contravenes the federal policy in

12   favor of 'efficient resolution of controversies'") (collecting cases); *TFT-LCD (Flat Panel) Antitrust*

13   *Litig.*, 2014 U.S. Dist. LEXIS 55234, at *76 (refusing to enforce forum selection clause as trying one

14   defendant's claims separately from all of the other defendants' similar claims would be "'needlessly

15   inconvenient and burdensome'" and contravenes federal policy of promoting the consistent and

16   complete adjudication of disputes).

17   The Court in *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, slip op. (N.D.

18   Cal. Feb. 6, 2012) faced an analogous issue and declined to enforce the forum selection clause in a

19   multi-defendant, multi-claim case.  Bernay Decl., Ex. 5.  As Judge Illston noted:

20       Enforcing the forum selection clauses would therefore splinter [Plaintiffs'] federal-
         and state-law claims, claims which overlap to a significant degree.  This would be
21       "needlessly inconvenient and burdensome [and] plainly contrary to the policy of the
         federal judiciary of promoting the consistent and complete adjudication of disputes."
22
     *Id.* at 2.

23   In light of the fact that AMEX's forum selection clause: (1) does not encompass the claims of

24   this case; (2) is ambiguous and fundamentally unfair; (3) contravenes California's strong public

25   policies; and (4) is outweighed by public interest factors, the Court should find the clause

26   unenforceable and deny AMEX's motion to transfer.

27

28

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 17 -

## VI.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request the Court deny AMEX's Motion to Compel Arbitration and Transfer Venue.  If the Court does not deny AMEX's Motion to Compel Arbitration, Plaintiffs respectfully request the Court permit limited discovery to develop a factual record on contract formation unconscionability.

DATED:  May 19, 2016                          Respectfully submitted,

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              ARMEN ZOHRABIAN


                                                     s/ Armen Zohrabian
                                              ARMEN ZOHRABIAN

                                              Post Montgomery Center
                                              One Montgomery Street, Suite 1800
                                              San Francisco, CA  94104
                                              Telephone:  415/288-4545
                                              415/288-4534 (fax)

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              PATRICK J. COUGHLIN
                                              DAVID W. MITCHELL
                                              ALEXANDRA S. BERNAY
                                              CARMEN A. MEDICI
                                              ANGEL P. LAU
                                              LONNIE A. BROWNE
                                              655 West Broadway, Suite 1900
                                              San Diego, CA  92101-8498
                                              Telephone:  619/231-1058
                                              619/231-7423 (fax)

                                              ROBBINS GELLER RUDMAN
                                                & DOWD LLP
                                              RANDI D. BANDMAN
                                              120 East Palmetto Park Road, Suite 500
                                              Boca Raton, FL  33432
                                              Telephone:  561/750-3000
                                              561/750-3364 (fax)

1147615_1

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA          - 18 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DEVINE GOODMAN RASCO &
  WATTS-FITZGERALD, LLP
JOHN W. DEVINE
LAWRENCE D. GOODMAN
ROBERT J. KUNTZ, JR.
2800 Ponce De Leon Blvd., Suite 1400
Coral Gables, FL  33134
Telephone:  305/374-8200
305/374-8208 (fax)

Attorneys for Plaintiffs

PLAINTIFFS' MPA IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S
MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE - 3:16-cv-01150-WHA       - 19 -

CERTIFICATE OF SERVICE

I, the undersigned, declare:

3.     On May 19, 2016, I authorized the electronic filing of the PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT AMERICAN EXPRESS COMPANY'S MOTION TO COMPEL ARBITRATION AND TRANSFER VENUE with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

4.     Declarant also caused the foregoing document to be served by depositing a true copy thereof in a United States mailbox at San Diego, California in a sealed envelope with postage thereon fully prepaid and addressed to the parties listed below.  There is a regular communication by mail between the places of mailing and the places so addressed.

| | |
|---|---|
| JCB Co. LTD<br>HQ:<br>5-1-22, Minami Aoyama, Minato-ku<br>Tokyo 107-8686<br>Japan | UnionPay<br>HQ:<br>6F,CUP Mansion<br>No. 36 Hanxiao Road<br>Pudong New District<br>Shanghai, 200135<br>China |

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on May 19, 2016.

s/ Armen Zohrabian
ARMEN ZOHRABIAN

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail:  azohrabian@rgrdlaw.com

# Mailing Information for a Case 3:16-cv-01150-WHA B & R Supermarket, Inc., et al v. Visa, Inc. et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Mikael A. Abye**
  mabye@shearman.com,ron.cheatham@shearman.com,bhunter@shearman.com

- **Courtney Bedell Averbach**
  caverbach@reedsmith.com

- **Scott D. Baker**
  sbaker@reedsmith.com,cmosqueda@reedsmith.com,etaglang@reedsmith.com,cshanahan@reedsmith.com,drothschild@reedsmith.com

- **Randi D. Bandman**
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **John Eliot Beerbower**
  jbeerbower@hunton.com

- **Paul Belonick**
  pbelonick@sidley.com,sfefilingnotice@sidley.com,jhiwa@sidley.com,sfdocket@sidley.com

- **Craig A Benson**
  CBenson@paulweiss.com,wmcauliffe@paulweiss.com,mao_fednational@paulweiss.com

- **Jane Petersen Bentrott**
  jbentrott@mofo.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,E_File_SD@rgrdlaw.com,jkusy@rgrdlaw.com,AZohrabian@rgrdlaw.com

- **Boris Bershteyn**
  boris.bershteyn@skadden.com

- **Daniel I Booker**
  dbooker@reedsmith.com,dalioto@reedsmith.com

- **Andrew Baldwin Brantingham**
  brantingham.andrew@dorsey.com,hanson.katheryn@dorsey.com

- **Lonnie Anthony Browne**
  LBrowne@rgrdlaw.com

- **Brian Calandra**
  brian.calandra@shearman.com

- **Melissa Colon-Bosolet**
  mcolon-bosolet@sidley.com,nyefiling@sidley.com

- **Erica M Connolly**
  erica.connolly@aporter.com,terry.metasavage@aporter.com,sfcalendar@aporter.com

- **Dana Lynn Cook-Milligan**
  dlcook@winston.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Ethan Craig**
  ecraig@btlaw.com

- **John William Devine**
  jdevine@devinegoodman.com

- **William Yates Durbin**
  WDurbin@paulweiss.com,fvella@paulweiss.com,cyang@paulweiss.com,abaniel-stark@paulweiss.com

- **Howard Feller**
  hfeller@mcguirewoods.com

- **Tiffani B Figueroa**
  TFigueroa@mofo.com

- **Natalie Anne Fleming Nolen**
  nflemingnolen@mofo.com

- **Kenneth A. Gallo**
  kgallo@paulweiss.com,mlaramie@paulweiss.com

- **Cheryl Ann Galvin**
  cgalvin@tcolaw.com

- **Lawrence Dean Goodman**
  lgoodman@devinegoodman.com,alopez@devinegoodman.com,smallet@devinegoodman.com

- **David F. Graham**
  dgraham@sidley.com,efilingnotice@sidley.com

- **Peter E Greene**
  peter.greene@skadden.com

- **Alexander Guney**
  alexander.guney@sedgwicklaw.com

- **D. Bruce Hoffman**
  bhoffman@hunton.com,acordero@hunton.com

- **Peter K. Huston**
  phuston@sidley.com,jhiwa@sidley.com,sfdocket@sidley.com,hebalogi@sidley.com

- **Susan S. Joo**
  sjoo@hunton.com,jocampo@hunton.com

- **J. Brent Justus**
  bjustus@mcguirewoods.com

- **Raoul Dion Kennedy**
  raoul.kennedy@skadden.com,alissa.turnipseed@skadden.com,james.schaefer@skadden.com,sarah.wood@skadden.com

- **Benjamin Klebanoff**
  benjamin.klebanoff@shearman.com

- **Leslie Kostyshak**
  lkostyshak@hunton.com,jbeerbower@hunton.com

- **Harry P Koulos**
  harry.koulos@skadden.com

- **Evan R Kreiner**
  evan.kreiner@skadden.com

- **Robert J Kuntz , Jr**
  rkuntz@devinegoodman.com,vcerra@devinegoodman.com

- **Mark P. Ladner**
  mladner@mofo.com,nflemingnolen@mofo.com,stice@mofo.com,docketny@mofo.com

- **Alexandra Eve Laks**
  alaks@mofo.com,ggerrish@mofo.com

- **Angel Puimei Lau**
  alau@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Richard Qiguang Liu**
  liu.richard@dorsey.com,buresh.cassie@dorsey.com

- **Bradley Robert Love**
  bradley.love@btlaw.com,deb.adams@btlaw.com

- **Casey Erin Lucier**
  clucier@mcguirewoods.com

- **Martha Corcoran Luemers**
  eFilingPA@dorsey.com,luemers.martha@dorsey.com,hobbs.wendy@dorsey.com

- **Michelle Ann Mantine**
  mmantine@reedsmith.com,dsharp@reedsmith.com,docketingecf@reedsmith.com,jeremy.feinstein@pnc.com,sament@reedsmith.com

- **Sharon D. Mayo**
  sharon.mayo@aporter.com,robert.culhane@aporter.com,Joanna.Lee@aporter.com,Emily.Clark@aporter.com,sfcalendar@aporter.com,Jill.Hern:

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com,E_File_SD@rgrdlaw.com,ckopko@rgrdlaw.com

- **Sean D. Meenan**
  smeenan@winston.com,lschuh@winston.com,recordssf@winston.com,pacercourtfile@winston.com,docketsf@winston.com,lpearce@winston.c

- **Mark R Merley**
  Mark.Merley@APORTER.COM

- **Kendall Millard**
  kmillard@btlaw.com,kristin.johnson@btlaw.com,lroberts@btlaw.com

- **Michael B. Miller**
  mbmiller@mofo.com,docketny@mofo.com

- **David W. Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph Laurence Motto**
  JMotto@winston.com,ahodgson@winston.com

- **Dennis Francis Murphy**
  dennis.murphy@sedgwicklaw.com

- **Benjamin Robert Nagin**
  bnagin@sidley.com,nyefiling@sidley.com

- **Karen C Otto**
  karen.otto@aporter.com

- **Elizabeth P Papez**
  epapez@winston.com

- **Jeanifer Ellen Parsigian**
  jparsigian@winston.com,hhammon@winston.com,docketsf@winston.com

- **Angela Maryssa Porter**
  porter.angela@dorsey.com,vallant.tammy@dorsey.com

- **David Carlyle Powell**
  dpowell@mcguirewoods.com,ladocket@mcguirewoods.com,usdocket@mcguirewoods.com,shorne@mcguirewoods.com,izabala@mcguirewoo

- **Penelope Athene Preovolos**
  ppreovolos@mofo.com,lroiz@mofo.com

- **Roya Rahmanpour**
  roya.rahmanpour@btlaw.com,marjory.dingwall@btlaw.com

- **Alicia M Raines**
  araines@btlaw.com,pflynn@btlaw.com

- **Frederick Matthew Ralph**
  ralph.matthew@dorsey.com,stilson.jaime@dorsey.com,fairbairn.mary@dorsey.com,Kelly.Laurie@dorsey.com

- **Paul Jeffrey Riehle**
  paul.riehle@sedgwicklaw.com,SDMAcalendaring@sedgwicklaw.com,phyllis.flynn@sedgwicklaw.com

- **Patrick David Robbins**
  probbins@shearman.com,rcheatham@shearman.com

- **Lauren Kelley Ross**
  lross@cravath.com,mao@cravath.com

- **Conor Michael Shaffer**
  cshaffer@reedsmith.com

- **Ashley Lynn Shively**
  ashively@reedsmith.com,dkelley@reedsmith.com

- **Ryan A Shores**
  rshores@hunton.com,gjenkins@hunton.com

- **Robert Yale Sperling**
  rsperling@winston.com

- **James Patrick Tallon**
  jtallon@shearman.com,iwiener@shearman.com

- **Stephen E. Taylor**
  staylor@tcolaw.com,cdunbar@tcolaw.com

- **Robert John Vizas**
  robert.vizas@aporter.com,marie.zambrano@aporter.com,SFCalendar@aporter.com

- **Jamie Danielle Wells**
  jwells@mcguirewoods.com,ladocket@mcguirewoods.com,dmolakides@mcguirewoods.com

- **Rowan D. Wilson**
  rwilson@cravath.com,mao@cravath.com,kkaplan@cravath.com

- **Jennifer Michelle Wong**
  jennifer.wong@sidley.com,nyefiling@sidley.com

- **Catherine M Yang**
  CYang@paulweiss.com,mao_fednational@paulweiss.com

- **Armen Zohrabian**
  AZohrabian@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)