Elizabeth P. Papez (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
*epapez@winston.com*

Robert Y. Sperling (*pro hac vice*)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
*rsperling@winston.com*

Sean D. Meenan (SBN 260466)
Jeanifer E. Parsigian (SBN 289001)
Dana L. Cook-Milligan (SBN 301340)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
*smeenan@winston.com*
*jparsigian@winston.com*
*dlcook@winston.com*

*Attorneys for Defendant Discover Financial Services*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| B & R SUPERMARKET, INC.; GROVE LIQUORS, LLC, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>VISA, INC.; VISA USA, INC.; MASTERCARD INTERNATIONAL, INC.; AMERICAN EXPRESS COMPANY; DISCOVER FINANCIAL SERVICES; BANK OF AMERICA, N.A.; CAPITAL ONE FINANCIAL CORPORATION; CHASE BANK USA, N.A.; CITIBANK (SOUTH DAKOTA), N.A.; CITIBANK, N.A.; PNC BANK, N.A.; U.S. BANK, N.A.; WELLS FARGO BANK, N.A.; and EMVCo, LLC,<br><br>   Defendants. | **Case No.** 3:16-cv-01150-WHA<br><br>**DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION AND TO STAY RUE21'S CLAIMS AGAINST DISCOVER FINANCIAL SERVICES, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br><br><br>Date:  September 22, 2016<br>Time:  8:00 a.m.<br>Place:  Courtroom 8, 19th Floor,<br>     San Francisco Courthouse<br>     450 Golden Gate Avenue,<br>     San Francisco, CA 94102<br>Judge:  Hon. William Alsup |

1        Please take notice that on September 22, 2016, or as soon thereafter as the matter may be

2  heard, in the courtroom of the Honorable Judge William Alsup, Courtroom 8, 19th Floor, San

3  Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Discover

4  Financial Services will, and hereby does, move for an order staying putative plaintiff-intervenor

5  rue21's claims against Discover Financial Services and compelling arbitration of those claims

6  pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.

7        This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum

8  of Points and Authorities, the Declaration of George Sawertailo, the pleadings on file in this action,

9  and upon such other matters presented to the Court at the time of hearing.

10  Dated: August 18, 2016               WINSTON & STRAWN LLP

12                      By:   */s/ Elizabeth P. Papez*

                              Elizabeth P. Papez (*pro hac vice*)

13                              WINSTON & STRAWN LLP

                              1700 K Street, N.W.

14                              Washington, DC 20006

                              Telephone: (202) 282-5000

15                              Facsimile: (202) 282-5100

                              *epapez@winston.com*

17                              Robert Y. Sperling (*pro hac vice*)

                              WINSTON & STRAWN LLP

18                              35 West Wacker Drive

                              Chicago, IL 60601

19                              Telephone: (312) 558-5600

                              Facsimile:  (312) 558-5700

20                              *rsperling@winston.com*

21                              Sean D. Meenan

                              Jeanifer E. Parsigian

22                              Dana L. Cook-Milligan

                              WINSTON & STRAWN LLP

23                              101 California Street

                              San Francisco, CA 94111

24                              Telephone: (415) 591-1000

                              Facsimile: (415) 591-1400

25                              *smeenan@winston.com*

                              *jparsigian@winston.com*

26                              *dlcook@winston.com*

27                              Attorneys for Defendant

                              DISCOVER FINANCIAL SERVICES

28

# TABLE OF CONTENTS

Page(s)

I.  INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF FACTS .................................................................................. 1

    A.  rue21's Claims ........................................................................................ 1

    B.  The Arbitration Provision ....................................................................... 2

    C.  Choice-of-Law Provisions ...................................................................... 3

III.  ARGUMENT ..................................................................................................... 4

    A.  Legal Standard ........................................................................................ 4

    B.  Discover's Operating Regulations Contain a Valid Agreement to Arbitrate ............... 4

        1.  The Arbitration Provision Is Valid Under the FAA .......................................... 5

        2.  The Arbitration Provision Is Valid Under Delaware Law ................................ 5

            a.  Delaware Law Applies to Any Choice of Law Question .................... 5

            b.  Discover's Arbitration Agreement with rue21 Is Valid and Enforceable Under All Applicable Laws ................................ 7

    C.  The Operating Regulations Delegate The Question of Arbitrability to the Arbitrator ................ 8

    D.  rue21's Claims Against Discover Are Arbitrable ........................................ 9

        1.  The Broad Definition of "Disagreement" Includes rue21's Claims .............. 10

        2.  The Carve Out Language in The Definition of Disagreement Does Not Apply to rue21's Claims ................ 12

IV.  CONCLUSION ................................................................................................. 16

i

DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:16-CV-01150-WHA

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abat v. Chase Bank USA, N.A.*,
5
    738 F. Supp. 2d 1093 (C.D. Cal. 2010) ...................................................................6

6

*AccentCare Inc. v. Echevarria*,
    No. C 15-01078 JSW, 2015 WL 3465761 (N.D. Cal. June 1, 2015)..............................5
7

8

*Am. Express Co. v. Italian Colors Rest.*,
    133 S. Ct. 2304 (2013).....................................................................................................4

9

*AT & T Techs., Inc. v. Commc'n Workers of America*,
10
    475 U.S. 643 (1986)....................................................................................................5, 13

11

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...................................................................................................4, 7, 8
12

13

*BAYPO Ltd. P'ship v. Tech. JV, LP*,
    940 A.2d 20 (Del. Ch. 2007).........................................................................................11

14

*Brennan v. Opus Bank*,
15
    796 F.3d 1125 (9th Cir. 2015) ........................................................................................9

16

*Chan v. Soc'y Expeditions, Inc.*,
    123 F.3d 1287 (9th Cir. 1997) ........................................................................................5
17

18

*In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*,
    No. M:09-CV-2032 MMC, 2009 WL 4063349 (N.D. Cal. Nov. 20, 2009)....................7

19

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
20
    207 F.3d 1126 (9th Cir. 2000) ....................................................................................4, 5

21

*Ciena Corp. v. Jarrard*,
    203 F.3d 312 (4th Cir. 2000) ..........................................................................................6
22

23

*Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc.*,
    No. C.A. 04L-10-101 RRC, 2006 WL 2567916 (Del. Super. Aug. 31, 2006),
24
    *amended*, No. CIV.A. 04L-10-101RRC, 2006 WL 2901819 (Del. Super. Oct. 3,
    2006) ................................................................................................................................3

25

*Coneff v. AT&T, Corp.*,
26
    673 F. 3d 1155 (9th Cir. 2012) .......................................................................................5

27

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)........................................................................................................4

28

ii

DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -CASE NO. 3:16-CV-01150-WHA

*Energy Partners Ltd. v. Stone Energy Co.*,
    No. Civ. A 2402-N, 2006 WL 2927483 (Oct. 11, 2006 Del. Ch.)..................................13

*Gonzalez v. Citygroup*,
    Civ. No. 09-017-SLT, 2009 WL 2340678 (D. Del. 2009)..............................................7

*Green Tree Fin. Corp.-Ala. v. Randolph*,
    531 U.S. 79 (2000)........................................................................................................4

*Interdigital Tech. Corp. v. Pegatron Corp.*,
    No. 15-CV-02584-LHK, 2016 WL 234433 (N.D. Cal. Jan. 20, 2016) ...................8, 11

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
    363 F.3d 1010 (9th Cir. 2004)....................................................................................4, 5

*McLaughlin v. McCann*,
    942 A.2d 616 (Del. Ch. 2008)........................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)..................................................................................................9, 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)............................................................................................................4

*Oracle Am., Inc. v. Myriad Group A.G.*,
    724 F.3d 1069 (9th Cir. 2013) .......................................................................................8

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)......................................................................................................10

*Qualcomm Inc. v. Nokia Corp.*,
    466 F.3d 1366 (Fed. Cir. 2006).......................................................................................9

*Republic of Nicaragua v. Standard Fruit Co.*,
    937 F.2d 469 (9th Cir. 1991) ..........................................................................................9

*Salley v. Option One Mortgage Corp.*,
    592 Pa. 323 (Pa. 2007)....................................................................................................6

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) .....................................................................9, 11, 12, 13

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ..........................................................................11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. C 11-0058 SI, 2011 WL 4017961 (N.D. Cal. Sept. 9, 2011).................................11

*United Steelworkers of Amer. V. Warrior & Gulf Nav. Co.*,
    363 U.S. 574 (1960).......................................................................................................13

iii

*Wagner v. Stratton Oakmont, Inc.*,
   83 F.3d 1046 (9th Cir. 1996) ...................................................................................10

*Wells v. Merit Life Ins. Co.*,
   671 F. Supp. 2d 570 (D. Del. 2009).............................................................................7

*West IP Comm'ns, Inc. v. Xactly Corp.*,
   No. N13C-06-052 DCS, 2014 WL 3032270 (Del. Super. Ct. June 25, 2014).............11

*Zenelaj v. Handybook, Inc.*,
   82 F. Supp. 3d 968 (N.D. Cal. 2015) .......................................................................4, 9

**Statutes**

9 U.S.C. § 2 ................................................................................................................5, 7

9 U.S.C. § 4 .............................................................................................................1, 5, 7

Cal. Bus. & Prof. Code § 17200 ...................................................................................11

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

I.    **INTRODUCTION**

In its Merchant Services Agreement and related contracts with Discover Financial Services, putative plaintiff-intervenor rue21, Inc. expressly agreed "that it [would] *not resort to judicial remedies with respect to a Disagreement . . .,*" but would instead resolve any Disagreement through a three-step ADR process that culminates in mandatory and binding arbitration.  (Declaration of George Sawertailo ("Sawertailo Decl.") Ex. 3, Discover Merchant Operating Regulations ("Operating Regulations"), § 17.14.1, Resolution of Disagreements, General.)  The relevant arbitration clause broadly encompasses "[a]ny dispute, claim, or controversy of any kind or nature . . . arising out of or relating to" the agreements between Discover and rue21 and the regulations that govern their relationship.  Those agreements and regulations memorialize the rules regarding the October 2015 EMV certification and liability shift that give rise to rue21's potential claims in this action and, therefore, all of those claims must be resolved by an arbitrator.

By seeking to intervene in this lawsuit, rue21 seeks to bypass the mandatory ADR procedure to which it expressly agreed, and instead seek judicial remedies it expressly waived.  Pursuant to 9 U.S.C. § 4 and in accordance with the terms of the parties' contracts, Discover respectfully requests that this Court enter an order compelling arbitration of, and as necessary staying, rue21's claims against Discover.

II.    **STATEMENT OF FACTS**

A.    **rue21's Claims**

Rue21 seeks to join Plaintiffs' Amended Complaint asserting claims under Section 1 of the Sherman Act, various state antitrust and consumer protection statutes, and common law unjust enrichment.  (Dkt. 290.)  Plaintiffs base these claims on allegations that Discover conspired with other credit card networks, several card-issuing banks, and a standard-setting joint venture to adopt regulations and technological requirements that, if not met by a certain date, would result in acquiring banks or merchants bearing liability for certain fraudulent transactions previously borne by issuing banks.  (Dkt. 291 ("Am. Compl.").)  Plaintiffs further allege that Defendants knew that merchants would be unable meet the technical requirements by the agreed deadline, and thus would

1

1  have to assume liability for millions of dollars of allegedly fraudulent card transactions.  In making

2  these allegations, Plaintiffs concede that Discover and other networks separately announced their

3  adoption of the liability shift deadline,  and that merchants received three years notice that the Fraud

4  Liability Shift ("FLS") would occur in October 2015.  (Am. Compl. § 150.)  But they nonetheless

5  assert that the shift was the product of a conspiracy designed to have merchants absorb certain fraud-

6  related costs previously borne by certain Defendants.  (Am. Compl.)

7       The Discover regulations governing the FLS and related certification deadlines at issue in the

8  claims rue21 seeks to join are contained in Discover's Network Operating Regulations and Rules

9  Manual.  (*See* Sawertailo Decl. Ex. 3, Discover Merchant Operating Regulations § 5.10.2, Disputes

10  of Card Transactions With Counterfeit, Lost, or Stolen Chip Cards; Sawertailo Decl. Ex. 4, Dispute

11  Rules Manual R.16.1 ("Dispute Rules"), §5.6.3, UA05 - Fraud - Chip Card Counterfeit Transaction.)

12      **B.**    **The Arbitration Provision**

13       In 2003, rue21 entered into an assignment agreement with Discover to "assume all rights and

14  obligations" of the Merchant Services Agreement ("Agreement") between Discover and rue21's

15  predecessor, Penn Fashions, Inc., that had been in place since 1986.  (Sawertailo Decl., Ex. 1,

16  Assignment, Assumption and Consent to Assignment; Sawertailo Decl. Ex. 2, Agreement.)  The

17  Agreement incorporates the Operating Regulations under the heading "Other Important Documents."

18  (*See* Sawertailo Decl. Ex. 2, Agreement § 2(a) (emphasis in original) ("The Operating Regulations

19  are incorporated into this Agreement as Exhibit A.  The Operating Regulations are an integral part of

20  this Agreement . . . .").)  Section 17.14 of the Operating Regulations, which governs "Resolution of

21  Disagreements," mandates that all Disagreements be resolved pursuant to agreed-upon ADR

22  procedures:

23          All Disagreements arising out of or related to your Agreement or these

24          Operating Regulations, or any breach thereof (whether based in contract, tort, statute, fraud, misrepresentation or any other legal or

25          equitable theory) shall be resolved in accordance with the procedures set forth in this Section 17.14.

26

27  (Sawertailo Decl., Ex. 3, Operating Regulations § 17.14.1, Resolution of Disagreements, General.)

28  The procedures referenced in Section 17.14 require the parties to engage in a multi-step process for

dispute resolution.  The first step is for the respective account teams to "initially address any Disagreement."  *Id.*  If those discussions do not resolve the Disagreement, then it must be "referred to senior executives of each party [who] shall use good faith efforts to resolve the Disagreement within thirty (30) days or another mutually agreed upon period of time."  *Id.*  If a Disagreement persists following the senior executives' meeting, the Disagreement "shall be submitted to mandatory mediation by giving written notice . . . , within sixty (60) days."  *Id.* at § 17.14.2, Resolution of Disagreements, Mediation.  Finally, if the parties are unable to resolve the Disagreement through of the preceding steps, the dispute resolution procedure culminates in mandatory arbitration:  "[T]he Disagreement . . . shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules."  *Id.* at § 17.14.3, Resolution of Disagreements, Arbitration.

As noted, the dispute resolution provision states that "[e]ach party covenants to the other that it <u>will not resort to judicial remedies</u> with respect to a Disagreement except for relief in aid of mediation or arbitration."  *Id.* at § 17.14.1, Resolution of Disagreements, General.  By seeking to intervene in this lawsuit, rather than follow the dispute resolution terms in the Operating Regulations, rue21 has breached this contractual agreement.  *See Commonwealth Const. Co. v. Cornerstone Fellowship Baptist Church, Inc*., No. C.A. 04L-10-101 RRC, 2006 WL 2567916, at *21 (Del. Super. Aug. 31, 2006), *amended*, No. CIV.A. 04L-10-101RRC, 2006 WL 2901819 (Del. Super. Oct. 3, 2006).[1]

## C.   Choice-of-Law Provisions

The Operating Regulations provide that "the interpretation and enforcement of this arbitration provision shall be governed by the Federal Arbitration Act . . . [and] Delaware law shall govern to the extent that state law applies."  (Sawertailo Decl. Ex. 3, Operating Regulations § 17.14.3, Resolution of Disagreements, Arbitration.)  The Agreement also contains a choice-of-law

---

[1] Discover hereby reserves all rights incident to this breach, including but not limited to its right to reimbursement of its costs, including attorney's fees, associated with the enforcement of its arbitration rights under the Agreement.  (*See* Sawertailo Decl. Ex. 2, Agreement § 16, Reserve Account.)  Discover also reserves the right to request that the arbitrator order mediation or other dispute resolution procedures in accordance with the terms of the ADR clause.

3

DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -CASE NO. 3:16-CV-01150-WHA

provision selecting Delaware law.  (Sawertailo Decl. Ex. 2, Agreement § 25, Governing Law ("This Agreement is governed by the laws of the State of Delaware.").)

III.   **ARGUMENT**

A.   **Legal Standard**

"[I]t [is] beyond dispute that the [Federal Arbitration Act ("FAA")] was designed to promote arbitration," and that "the Act embod[ies] a national policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 345-46 (2011) (quotations and citations omitted).  Accordingly, and "consistent with [the] text [of the FAA], courts *must* 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (emphasis added); *see also*, *e.g.*, *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.").

Chapter 1 of the FAA compels courts to order arbitration in accordance with the terms of a valid agreement to arbitrate.  In assessing motions for such relief, "the district court's role is limited to determining whether [1] a valid arbitration agreement exists and, if so, [2] whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004); *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Under the FAA, the party seeking to avoid arbitration bears the burden of showing that the arbitration provision is invalid or does not encompass the claims at issue.  *See, e.g.*, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).  And where, as here, the parties have delegated the decision on arbitrability to the arbitrator, a motion to compel arbitration should be granted as long as the claims of arbitrability are not "wholly groundless." *Zenelaj v. Handybook, Inc.*, 82 F. Supp. 3d 968, 971 (N.D. Cal. 2015).

B.   **Discover's Operating Regulations Contain a Valid Agreement to Arbitrate**

For the reasons set forth below, Discover's arbitration agreement with rue21 is valid and enforceable under the FAA and Delaware law.  (*See* Sawertailo Decl. Ex. 3, Operating Regulations § 17.14.3, Resolution of Disagreement, Arbitration ("the interpretation and enforcement of this

4

arbitration provision shall be governed by the Federal Arbitration Act …[and] Delaware law shall govern to the extent that state law applies.").)

### 1.   The Arbitration Provision Is Valid Under the FAA

If a contract contains an arbitration clause, the FAA creates a presumption that the clause is valid if the "contract evidenc[es] a transaction involving commerce."  9 U.S.C. § 2; *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *see also AT & T Techs., Inc. v. Commc'n Workers of America*, 475 U.S. 643, 650 (1986).  There is no question that Discover's agreement with rue21 involves commerce.  Plaintiffs' Amended Complaint describes rue21 as "a nationwide retailer" (Am. Compl. ¶ 16), and the Agreement containing the arbitration provision concerns the facilitation of Discover credit card payments at rue21 stores nationwide.  Under the FAA, where a party to such an agreement fails or refuses to arbitrate, the aggrieved party "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4; *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

### 2.   The Arbitration Provision Is Valid Under Delaware Law

The presumption that arbitration provisions are "valid, irrevocable, and enforceable," may be overcome if there are "grounds that exist at law or in equity for the revocation" of the underlying contract.  *AccentCare Inc. v. Echevarria*, No. C 15-01078 JSW, 2015 WL 3465761, at *1 (N.D. Cal. June 1, 2015) (citing 9 U.S.C. § 2).  Any such grounds are evaluated under traditional state law principles.  *Coneff v. AT&T, Corp.*, 673 F. 3d 1155, 1161 (9th Cir. 2012).  No such grounds exist here under Delaware law, which governs Discover's network and arbitration agreements with rue21.

#### a.   Delaware Law Applies to Any Choice of Law Question

Courts exercising federal question jurisdiction apply federal common law to choice-of-law determinations.  *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997).  "Federal common law follows the approach of the Restatement (Second) of Conflicts of Laws."  *Id.*  Under the Restatement, a contractual choice-of-law provision will be enforced unless "'[1] the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis

5

DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -CASE NO. 3:16-CV-01150-WHA

for the parties' choice' or [2] 'application of the law of the chosen state would be contrary to a

fundamental policy of a state which has a materially greater interest than the chosen state in the

determination of the particular issue' and that state would be the state of applicable law in the

absence of a choice-of-law clause." *Id.* (quoting Restatement (Second) of Conflicts of Laws §

187(2) (1988)).

Discover has a "substantial relationship" to the chosen state of Delaware, as Discover is

incorporated in that state. *See Abat v. Chase Bank USA, N.A.*, 738 F. Supp. 2d 1093, 1095-96 (C.D.

Cal. 2010) (holding that Delaware had a "substantial relationship to the parties" where defendant

was incorporated there); *Ciena Corp. v. Jarrard*, 203 F.3d 312, 324 (4th Cir. 2000) (holding that "a

party's state of incorporation provides the necessary 'substantial relationship' for application of its

laws" and upholding enforcement of Delaware choice-of-law clause in the parties contract).

Application of Delaware law would not be "contrary to a fundamental policy of a state which

has a materially greater interest" in deciding the arbitration question at issue.  (Restatement §

187(2).)  In determining whether a different state has a "materially greater interest" courts look to

"the place of contracting," "the place of negotiation of the contract," "the place of performance,"

"the location of the subject matter of the contract," and "the domicil, residence, nationality, place of

incorporation and place of business of the parties."  (Restatement §§ 187(2), 188(2).)  Because rue21

is "a nationwide retailer with … stores in 48 states … [,]" (Am. Compl. ¶16), the  "place of

performance" and the "location of the subject matter of the contract" do not implicate any particular

state as having a "materially greater interest" in governing the contract than Delaware, (Restatement

§§ 187(2), 188(2)).  Indeed, the only state other than Delaware that arguably has an interest in the

validity of Discover's contract with rue21 is Pennsylvania, where rue21 is headquartered.  (*See* Am.

Compl. ¶16.)  But it cannot be said that Pennsylvania has a "materially greater interest" in having its

law, and not Delaware's law, govern this motion, particularly because the relevant legal standard in

both states is the same:  An arbitration agreement cannot be invalidated without a showing of

procedural and substantive unconscionability.[2]  *Compare Salley v. Option One Mortgage Corp.*, 592

---

[2] Plaintiffs have already conceded that California also requires "a contract to be both procedurally and substantively unconscionable to be rendered invalid."  Plaintiffs' MPA in Opp. To Def. Am. Express Co.'s Mot. To Compel Arbitration and Transfer Venue at 7:26-27 [Dkt. 259].

Pa. 323, 331 (Pa. 2007), *with Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009).

   b.  **Discover's Arbitration Agreement with rue21 Is Valid and Enforceable Under All Applicable Laws**

  "Section 2 [of the FAA] makes arbitration agreements 'valid, irrevocable, and enforceable' as written (subject, of course, to the saving clause); §3 requires courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement'; and §4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement (assuming that the 'making of the arbitration agreement or the failure . . . to perform the same' is not at issue)." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (quoting the FAA, 9 U.S.C. §§ 2-4). Discover's arbitration agreement with rue21 is valid and enforceable under these controlling principles and provisions, and to the extent rue21 argues otherwise (as Plaintiffs did in raising unconscionability in response to the arbitration clause American Express invoked in its recent motion, Dkt. 229), any such argument would fail under Delaware law.

  In order for a contract provision to be held unconscionable under Delaware law, it must be "such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other." *In re Chase Bank USA, N.A. "Check Loan" Contract Litig.*, No. M:09-CV-2032 MMC, 2009 WL 4063349 at *9 (N.D. Cal. Nov. 20, 2009) (internal quotation marks omitted); *see also Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009) (defining a contract as unconscionable under Delaware law "if one of the parties lacks meaningful choice and the contract terms unreasonably favor one party over the other"); *Gonzalez v. Citygroup*, Civ. No. 09-017-SLT, 2009 WL 2340678 at *2 n. 4 (D. Del. 2009) ("This definition encompasses two elements, procedural unconscionability (which contemplates the absence of meaningful choice) and substantive unconscionability (which contemplates unreasonably favorable terms).").

  Discover's arbitration agreement with rue21 is neither procedurally nor substantively unconscionable. Rue21 had a meaningful choice whether to accept Discover cards, and made a decision to do so, subject to the arbitration clause and other terms in Discover's Operating Rules. As

7

1    Plaintiffs concede, Discover cards are not accepted by all merchants, (Am Compl. ¶ 52), and rue21,

2    a sophisticated "nationwide retailer with . . . stores in 48 states,"[3] chose to accept them in accordance

3    with the arbitration clause in Section 17.14.3 of the Operating Regulations, which is a standard

4    commercial agreement that does not unreasonably favor Discover.  Any arbitration under the clause

5    is subject to AAA rules, which are neutral as to the parties and supply fair procedures.  (*See*

6    Sawertailo Decl. Ex. 3, Operating Regulations §17.14.3, Resolution of Disagreement, Arbitration.)

7    And Section 17.14.3 independently requires all arbitrators to take an oath of impartiality.  *Id.*  With

8    respect to cost of the proceedings, Section 17.14.3 calls for the parties to bear their own costs and

9    split the arbitration fees equally, unless the claim is worth less than $10,000, in which case

10   Discover—not the merchant (here, rue21)—bears the cost of the arbitration proceedings.  *Id.*  For all

11   of these reasons, the arbitration clause is valid and enforceable under all applicable laws.

C.    **The Operating Regulations Delegate The Question of Arbitrability to the Arbitrator**

14        Consistent with the FAA's recognition that arbitration clauses are creatures of party

15   agreement, *Concepcion*, 563 U.S. 333,  the parties to such clauses may delegate the question of

16   arbitrability to an arbitrator through a "clear and unmistakable" expression of their intent to do so.

17   *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1073-75 (9th Cir. 2013).  In this instance,

18   the parties demonstrated their intent to delegate the arbitrability determination through their election

19   of AAA rules.  (*See* Sawertailo Decl. Ex. 3, Operating Regulations §17.14.3, Resolution of

20   Disagreements, Arbitration ("the Disagreement . . . shall be resolved by binding arbitration

21   administered by the American Arbitration Association . . . under its Commercial Arbitration Rules . .

22   . . ").)  The AAA rules expressly authorize the arbitrator to decide arbitrability.  (AAA Commercial

23   Arbitration Rules, R-7(a) Jurisdiction[4] ("The arbitrator shall have the power to rule on his or her

24   own jurisdiction, including any objections with respect to the existence, scope, or validity of the

25   arbitration agreement or to the arbitrability of any claim . . . . ").)  Under Ninth Circuit precedent,

26   "incorporation of the AAA rules into an arbitration agreement is clear and unmistakable evidence

---

[3] Am. Compl. ¶16.

[4] https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased

8

1    that the parties . . . intended to delegate [the determination of] arbitrability to an arbitrator." *See*

2    *Interdigital Tech. Corp. v. Pegatron Corp.,* No. 15-CV-02584-LHK, 2016 WL 234433, at *5 (N.D.

3    Cal. Jan. 20, 2016) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir. 2015)).

4          Where an arbitration agreement delegates the question of arbitrability to the arbitrator, the

5    Court must compel arbitration unless "Defendant's assertion of arbitrability is wholly groundless."

6    *Zenelaj v. Handybook, Inc.*, 82 F. Supp. 3d 968, 971 (N.D. Cal. 2015); *id.* at 975 (citing *Qualcomm*

7    *Inc. v. Nokia Corp.*, 466 F.3d 1366, 1374 (Fed. Cir. 2006)) (To go further and "determine whether

8    [the claims at issue] are in fact arbitrable" would improperly "invade the province of the

9    arbitrator.").  For the reasons herein, rue21 cannot meet this demanding standard and the Court

10   should grant the motion to compel arbitration and leave any questions regarding the arbitrability of

11   particular claims to the arbitrator.

12         D.     **rue21's Claims Against Discover Are Arbitrable**

13         The federal policy in favor of arbitration mandates that any doubts regarding the

14   interpretation of an arbitration clause "should be resolved in favor of arbitration."  *Simula, Inc. v.*

15   *Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal citations omitted).  "[A]s with any other

16   contract, the parties' intentions control, but those intentions are generously construed as to issues of

17   arbitrability."  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).

18   That is because the FAA sets a low bar for arbitrability.  *See Republic of Nicaragua v. Standard*

19   *Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ("The standard for demonstrating arbitrability is not a

20   high one").  And the bar is even lower still in cases like this, where the ultimate decision is for the

21   arbitrator and the court need only find that the party making the request has a claim to arbitration

22   that is "not wholly groundless."  *Zenelaj*, 82 F. Supp. 3d at 975.  In performing this analysis, the

23   court is not "undertaking[ing] a full arbitrability inquiry," but rather a "more limited inquiry to

24   determine whether the assertion of arbitrability is 'wholly groundless.'"  *Qualcomm*, 466 F.3d at

25   1371.  "An order to arbitrate the particular grievance should not be denied unless it may be said with

26   positive assurance that the arbitration clause is not susceptible of an interpretation that covers the

27   asserted dispute."  *Zenelaj*, 82 F. Supp. 3d at 975 (internal citations omitted).

28         When analyzing the scope of an arbitration clause, courts "appl[y] general state-law

9

principles of contract interpretation, while giving due regarding to the federal policy in favor of arbitration."  *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996).  In this case, as described above, the Court should apply Delaware contract law consistent with the choice-of-law provisions in the Agreement and Operating Regulations.

As noted, the Operating Regulations provide that "Disagreement[s] . . . shall be resolved by binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules").  (Sawertailo Decl. Ex. 3, Operating Regulations, § 17.14.3, Resolution of Disagreements, Arbitration.)  The Operating Regulations broadly define "Disagreement" as:

> Any dispute, claim or controversy of any kind or nature between you (or any Person connected with you) and us (or any Person connected with us, including our Affiliates, employees, Agents, contracts, or service providers) arising out of or related to our relationship, the Agreement, any of the Program Documents, or respective obligations of the transactions contemplated hereby or thereby, including disputes as to the advertising, marketing, or promotion relating to, or the creation, validity, interpretation, breach, or termination of our relationship, the Agreement, or the other Program Documents, but not including Disputes or claims relating to Card Transactions, including Chargebacks, representation of Chargebacks, and arbitration of Card Transaction disputes.  Any Disagreement, regardless of whether it arose before, at the same time as, or after the date of the Agreement, shall be resolved as set forth in Section 17.14 of these Operating Regulations.

(Sawertailo Decl. Ex. 3, Operating Regulations § 18, Glossary, Disagreement.)  This description uses three expansive phrases to encompass a vast array of claims:  (1) "[a]ny dispute, claim or controversy of any kind or nature," (2) "arising out of or related to," and (3) "our relationship, the Agreement, any of the Program Documents, or respective obligations of the transactions contemplated hereby or thereby."  Rue21's claims here are governed by the broad provisions for resolving "Disagreement[s]," and the carve out for "Disputes or claims relating to Card Transactions" does not apply.

1.      **The Broad Definition of "Disagreement" Includes rue21's Claims**

The Supreme Court has recognized the breadth of the phrase "arising out of or relating to" in

10

DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF -CASE NO. 3:16-CV-01150-WHA

arbitration agreements.  *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 398 (1967) (observing that inclusion of the phrase "arising out of or relating to this agreement" in an arbitration clause makes the provision a "broad arbitration clause").  This phrase ("arising out of or relating to") in an arbitration agreement has been construed to subject to arbitration Sherman Act claims, state antitrust, consumer protection and unfair trade claims, and unjust enrichment claims where those claims touch on matters covered by the agreement.  *E.g.*, *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. C 11-0058 SI, 2011 WL 4017961, at *6 (N.D. Cal. Sept. 9, 2011) (ordering arbitration of claims under the Sherman Act, the Washington Consumer Protection Act, the California Cartwright Act, the Arizona Antitrust Act, the Illinois Antitrust Act, and the Florida Deceptive and Unfair Trade Practices Act); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 907, 915 (N.D. Cal. 2011) (holding that an arbitration clause covering claims "arising out of or relating to" the agreement applied to plaintiff's claims for unjust enrichment and unfair competition under California Business & Professions Code section 17200); *see also Simula, Inc.*, 175 F.3d at 721 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n. 13 (1985)) (concluding that federal and state antitrust claims that "touch[ed] matters covered by" an agreement were within the scope of the agreement's more limited arbitration provision for "disputes arising in connection with this Agreement").[5]

Rue21's claims against Discover fall within the far-reaching scope of claims "aris[ing] out of or are related to" the parties' relationship, the Agreement, the Program Documents,[6] or respective obligations of the transactions contemplated hereby or thereby.  Rue21 asserts claims and seeks damages arising out of the Discover network rules governing the October 2015 EMV fraud liability

_____

[5]  Because the broad choice-of-law clause here indicates that the FAA governs and Delaware law operates only "to the extent state law applies," the " body of federal substantive law of arbitrability" interpreting the FAA controls with state law merely filling the gaps.  That said, the choice of law question is of little moment because Delaware law recommends a broad interpretation of arbitration clauses consonant with the FAA and the language in the parties' agreements.  *See Interdigital Tech. Corp.*, 2016 WL 234433, at *7 (holding antitrust and other counterclaims were within scope of arbitration provision) (citing *McLaughlin v. McCann*, 942 A.2d 616, 626 (Del. Ch. 2008); *BAYPO Ltd. P'ship v. Tech. JV, L*P, 940 A.2d 20, 21, 23 (Del. Ch. 2007); *West IP Comm'ns, Inc. v. Xactly Corp.*, No. N13C-06-052 DCS, 2014 WL 3032270, at *7 (Del. Super. Ct. June 25, 2014).

[6]  Sawertailo Decl. Ex. 3, Operating Regulations § 18, Glossary, Program Documents ("The Agreement, these Operating Regulations, the Dispute Rules, the Technical Specifications, and the Certification Manual, including all appendices, exhibits, and attachments hereto and thereto.").

11

shift.[7]  These rules are set forth in Discover's Operating Regulations and Dispute Rules Manual.  (*See* Sawertailo Decl. Ex. 3, Operating Regulations § 5.10.2, Disputes of Card Transactions With Counterfeit, Lost, or Stolen Chip Cards ("A Card Present Card Transaction . . .  in which a Contact Chip Payment Device is used may be subject to Dispute if …your POS Device did not … support and use EMV technology"); Sawertailo Decl. Ex. 4, Dispute Rules § 5.6.3, UA05 – Fraud – Chip Card Counterfeit Transaction.)  Indeed, Plaintiffs' Amended Complaint identifies Section 5.6.3 of the Dispute Rules as the "Reason Code" Discover used "to implement the EMV chip card Liability Shift" they challenge, and quotes and incorporates the relevant provision in its entirety.  (Am. Compl. ¶ 79.)  For this reason alone, rue21's claims not only "touch matters" in the Operating Regulations and Dispute Rules, *Simula, Inc.*, 175 F.3d at 721—they directly challenge those rules.  Accordingly, and consistent with the presumption of arbitrability that governs here under federal law, rue21's claims are arbitrable as "dispute[s], claim[s] or controvers[ies] of any kind or nature . . . arising out of or related to our relationship, the Agreement, any of the Program Documents, or respective obligations of the transactions contemplated hereby or thereby."  (Sawertailo Decl. Ex. 3, Operating Regulations, § 18, Glossary, Disagreement.)

### 2. The Carve Out Language in The Definition of Disagreement Does Not Apply to rue21's Claims

Rue21 cannot avoid arbitration by asserting that its claims against Discover fall outside the broad definition of arbitrable "Disagreements" and into the carve out provision for "Disputes or claims relating to Card Transactions, including Chargebacks, representment of Chargebacks, and arbitration of Card Transaction disputes."  (Sawertailo Decl., Ex. 3, Operating Regulations § 18, Glossary, Disagreement.)  For the reasons below, reading this carve out to cover rue21's putative antitrust and other challenges to Discover's EMV-related network rules would conflict with the text and purpose of the parties' contracts under controlling law, and would make no sense in any event.  The "Disputes" subject to the carve out are contractually committed to <u>Discover</u> to resolve under Discover network rules, and Merchants or other parties aggrieved by such rulings—for example because they disagree with the network rule that controls the request or chargeback in question—

---

[7] Am. Compl ¶¶ 2-11, 17.

1    must pursue any such challenges in arbitration.  Accordingly, the carve out would not allow rue21 to

2    pursue its claims in this Court even if the carve out could be stretched to encompass rue21's claims,

3    which it cannot be under the terms of the parties' contracts and controlling law.

4            It is well settled that the FAA "embodies a clear federal policy in favor of arbitration [and]

5    any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."

6    *Simula, Inc.*, 175 F.3d at 719 (internal citations omitted).  Pursuant to this policy, where parties enter

7    into a broad arbitration clause, "[i]n the absence of any express provision excluding a particular

8    grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the

9    claim from arbitration can prevail."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,

10   650 (1986) (quoting *United Steelworkers of Amer. V. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-

11   85 (1960)).  Here, as noted, "Disagreement[s]" that must be submitted to arbitration include "[a]ny

12   dispute, claim, or controversy of any kind or nature between [rue21] . . . and [Discover] .  . . arising

13   out of or related to [their] relationship, the Agreement, any of the Program Documents, or respective

14   obligations of the transactions contemplated hereby or thereby."  (Sawertailo Decl. Ex. 3, Operating

15   Regulations § 18, Glossary, Disagreement.)  The only "express provision excluding a particular

16   grievance from arbitration" under this otherwise expansive definition, *AT&T Techs*, 475 U.S. at 650,

17   is the clause referring to "Disputes or claims relating to Card Transactions, including Chargebacks,

18   representment of Chargebacks, and arbitration of Card Transaction disputes."  (Sawertailo Decl. Ex.

19   3, Operating Regulations § 18, Glossary, Disagreement.)

20           The interpretation of this carve out must begin with its text, which on its face pertains only to

21   "Disputes" that Discover's Merchant Operating Regulations define as encompassing:

22               A Ticket Retrieval Request, request for a Chargeback, Chargeback,
                 request for Representment or Representment of a Card Transaction
23               …by an Issuer, Merchant, or Discover, including supporting
                 information and documentation provided by the Issuer or Merchant in
24               connection with any of the foregoing, and Discover's process of
                 resolving or effecting any of the foregoing, including Adjustments as
25               described in these Operating Regulations and Dispute Arbitration as
                 more fully described in the Dispute Rules.
26

27   (Sawertailo Decl. Ex. 3, Operating Regulations § 18, Glossary, Disputes.)

28

---

13

1    This definition must be read in a manner that respects its plain meaning in the context of the

2    parties' agreement "as a whole."  *Energy Partners Ltd. v. Stone Energy Co.*, No. Civ. A 2402-N,

3    2006 WL 2947483 at *13 (Oct. 11, 2006 Del. Ch.) ("[A] court must interpret contractual provisions .

4    . . [to] give effect to every term of the instrument" and the agreement must "also be read as a whole .

5    . . .").  Doing so makes clear that the carve out covers only discrete disagreements over particular

6    "Chargebacks" or "arbitration of Card Transactions disputes"—*not* the broad antitrust and other

7    challenges to network rules on EMV certification and liability at issue here.

8    The definition of "Disputes" encompasses only specific types of matters whose own

9    contractual definitions reference individual transactions rather than the broad rule challenges rue21

10   seeks to bring here.  For example, a "Ticket Retrieval Request" is "[a] request initiated by an Issuer

11   to Discover for documentation regarding a Card Transaction"; the term "Chargeback" simply means

12   "process a Card Transaction to reverse a previous [reconciliation between Discover and a Merchant

13   of amounts payable on a Card Transaction]"; and "Representment" is "[a] decision by Discover to

14   reverse a Chargeback of a Card Transaction."  (Sawertailo Decl. Ex. 3, Operating Regulations § 18,

15   Glossary.)  All of these terms pertain to individual card transactions that merchants, acquirers and

16   issuers in the Discover Network must handle according to Network Rules.  When a "Dispute" arises

17   concerning the proper application of those rules to one of these individual transactions, the amount

18   involved is often so small that AAA arbitration would not make sense.  Instead, and because these

19   "Disputes" typically concern a difference of opinion among merchants, acquirers or issuers

20   regarding proper treatment of particular transactions under Network Rules, resolution of such

21   disputes at the Network level is both efficient and sensible.  (Sawertailo Decl. Ex. 4, Dispute Rules,

22   § 1, Dispute Resolution Process.)  That is exactly what the carve out provides.

23   The arbitration carve out for "Disputes" pertains expressly to Discover's "process of

24   resolving or effecting" the foregoing types of discrete conflicts through procedures outlined in

25   Discover's "Dispute Rules."   Discover's Operating Regulations address these rules, and specifically

26   the "Dispute Rules Manual" that governs "the resolution of Disputes" subject to the carve-out:

27
28   The Dispute Rules Manual, which is attached as Appendix 1. . . . and
     incorporated herein by reference . . . contains instructions and
     requirements relating to **the resolution of Disputes relating to Card**

14

> *Transactions* as such document may be amended by us from time to time in accordance with its terms.

(Sawertailo Decl. Ex. 3, Operating Regulations § 18, Glossary, Dispute Rules (emphasis added).)

The Dispute Rules Manual in turn provides in relevant part that:

> The Dispute Rules Manual is incorporated by reference into the Agreement and/or Operating Regulations, and ***must be followed in connection with the resolution of Disputes involving Card Transactions***.
>
> . . . .
>
> The purpose of these Dispute Rules is to provide an orderly and consistent process for the resolution of ***all Disputes related to Card Transactions***.
>
> . . . .
>
> ***Discover will perform the Dispute resolution functions described in these Dispute Rules***.

 (Sawertailo Decl. Ex. 4, Dispute Rules § 1, Dispute Resolution Process (emphasis added).)

These contractual provisions control resolution of the "Disputes" exempt from the arbitration clause in Discover's Operating Regulations, and make clear that the carve out refers disagreements concerning discrete transactions to <u>Discover Network</u> for resolution under Network Rules.  They further provide that if a merchant is not satisfied with such resolution—for example because the merchant wishes to challenge the governing network rule—the merchant's only recourse is to pursue the challenge in the AAA arbitration proceedings outlined in Discover's Operating Regulations.

That is precisely where rue21's antitrust and other claims to Discover's EMV rules belong. Because rue21's claims go beyond disagreements over the proper treatment of particular transactions committed to Discover's resolution under network rules, the claims fall squarely within the definition of "Disagreements" subject to arbitration under Discover's Operating Regulations.  And any attempt to shoehorn them into the carve out for "Disputes . . .  relating to Card Transactions," (Sawertailo Decl. Ex. 3, Operating Regulations § 18, Glossary, Disagreement), would cause the arbitration exception to swallow the rule, render the provisions governing arbitration of "Disagreements" superfluous in violation of settled canons of contract interpretation, and fail to save rue21's court claims in any event.  Because the carve out commits covered "Disputes" to resolution by Discover with recourse only to the arbitration rue21 seeks to avoid, improperly straining the carve

15

DEFENDANT DISCOVER FINANCIAL SERVICES' NOTICE OF MOTION, MOTION TO COMPEL ARBITRATION, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN  SUPPORT THEREOF -CASE NO. 3:16-CV-01150-WHA

1    out to reach rue21's claims here would still not permit them to proceed in this Court.

2    IV.    **CONCLUSION**

3          For all the foregoing reasons, Discover respectfully requests an order staying rue21's claims

4    pending the arbitration proceedings contemplated by the parties' arbitration agreement.

5

6    Dated: August 18, 2016                        WINSTON & STRAWN LLP

7

8                                        By:    _/s/ Elizabeth P. Papez_____
                                                Elizabeth P. Papez (*pro hac vice*)
9                                               WINSTON & STRAWN LLP
                                                1700 K Street, N.W.
10                                              Washington, DC 20006
                                                Telephone: (202) 282-5000
11                                              Facsimile: (202) 282-5100
                                                *epapez@winston.com*
12
                                                Robert Y. Sperling (*pro hac vice*)
13                                              WINSTON & STRAWN LLP
                                                35 West Wacker Drive
14                                              Chicago, IL 60601
                                                Telephone: (312) 558-5600
15                                              Facsimile:  (312) 558-5700
                                                *rsperling@winston.com*
16
                                                Sean D. Meenan
17                                              Jeanifer E. Parsigian
                                                Dana L. Cook-Milligan
18                                              WINSTON & STRAWN LLP
                                                101 California Street
19                                              San Francisco, CA 94111
                                                Telephone: (415) 591-1000
20                                              Facsimile: (415) 591-1400
                                                *smeenan@winston.com*
21                                              *jparsigian@winston.com*
                                                *dlcook@winston.com*
22

23                                              Attorneys for Defendant
                                                DISCOVER FINANCIAL SERVICES
24

25

26

27

28