ROBBINS GELLER RUDMAN
  & DOWD LLP
PATRICK J. COUGHLIN (111070)
DAVID W. MITCHELL (199706)
ALEXANDRA S. BERNAY (211068)
CARMEN A. MEDICI (248417)
ANGEL P. LAU (286196)
LONNIE A. BROWNE (293171)
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
patc@rgrdlaw.com
davidm@rgrdlaw.com
xanb@rgrdlaw.com
cmedici@rgrdlaw.com
alau@rgrdlaw.com
lbrowne@rgrdlaw.com

DEVINE GOODMAN RASCO &
  WATTS-FITZGERALD, LLP
JOHN W. DEVINE
LAWRENCE D. GOODMAN
ROBERT J. KUNTZ, JR.
2800 Ponce De Leon Blvd., Suite 1400
Coral Gables, FL  33134
Telephone:  305/374-8200
305/374-8208 (fax)
jdevine@devinegoodman.com
lgoodman@devinegoodman.com
rkuntz@devinegoodman.com

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| B & R SUPERMARKET, INC., d/b/a MILAM'S MARKET, a Florida corporation, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>     vs.<br><br>VISA, INC., a Delaware corporation, et al.,<br><br>        Defendants. | Case No. 3:16-cv-01150-WHA<br><br>CLASS ACTION<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION<br><br>DATE:     May 11, 2017<br>TIME:     8:00 a.m.<br>CTRM:   8, 19th Floor<br>JUDGE:  Judge William Alsup |

1260280_1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    COMMON ISSUES OVERWHELMINGLY PREDOMINATE AS TO IMPACT
       AND DAMAGES ..................................................................................................3

       A.    Defendants' Argument that Certain Large Merchants Are Co-Conspirators
             Is False .......................................................................................................3

       B.    The But-For World Is Supported by Defendants' Documents and Data ...............5

III.   PROOF OF LIABILITY IS OVERWHELMINGLY COMMON .....................................5

       A.    Plaintiffs Paid Chargebacks ..........................................................................5

       B.    Defendants Ignore that Proof of Liability Is Common and Direct .........................7

             1.    Claimed Independent Business Decisions Are a Red Herring....................9

             2.    Plaintiffs' Model Properly Accounts for Chargebacks that Would
                   Have Occurred Regardless of the Liability Shift.....................................10

             3.    Defendants' Claims Regarding the "Need" for a Liability Shift in
                   the U.S. Are Self-Serving and Easily Rebutted .....................................12

IV.    PLAINTIFFS' EXPERT'S OPINION IS ADMISSIBLE; DEFENDANTS'
       EXPERT SHOULD BE EXCLUDED....................................................................13

V.     THE CLASS IS PROPERLY DEFINED ................................................................15

VI.    DISCOVER AND AMERICAN EXPRESS WRONGLY CLAIM THAT
       ARBITRATION AGREEMENTS PRECLUDE CLASS CERTIFICATION .................16

VII.   CONCLUSION..................................................................................................18

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**CASES**

4

*Axis, S.p.A. v. Micafil, Inc.,*
5
    870 F.2d 1105 (6th Cir. 1989) ...........................................................................8

6

*Bayshore Ford Truck v. Ford Motor Co.,*
    No. 99-cv- 00741 (JLL), 2011 U.S. Dist. LEXIS 71991
7
    (D.N.J. July 1, 2011) .......................................................................................14

8

*Briseno v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017) .....................................................................9, 10
9

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,*
10
    429 U.S. 477 (1977) ..........................................................................................8

11

*Castro v. Sanofi Pasteur Inc.,*
12
    134 F. Supp. 3d 820 (D.N.J. 2015) ..................................................................14

13

*Comcast Corp. v Behrend,*
    133 S. Ct. 1426 (2013) ..................................................................................1, 4
14

*Concord Boat Corp. v. Brunswick Corp.,*
15
    207 F.3d 1039 (8th Cir. 2000) .........................................................................13

16

*Ehret v. Uber Techs., Inc.,*
17
    148 F. Supp. 3d 884 (N.D. Cal. 2015) .............................................................16

18

*Glen Holly Entm't. Inc. v. Tektronix Inc.,*
    343 F.3d 1000 (9th Cir. 2003) ...........................................................................8
19

*Hanlon v. Chrysler Corp.,*
20
    150 F.3d 1011 (9th Cir. 1998) ...........................................................................3

21

*Herrera v. LCS Fin. Servs. Corp.,*
22
    274 F.R.D. 666 (N.D. Cal. 2011) .....................................................................16

23

*In re Air Cargo Shipping Servs. Antitrust Litig.,*
    MDL No. 1775, 2014 U.S. Dist. LEXIS 180914
24
    (E.D.N.Y. Oct. 15, 2014) .................................................................................14

25

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
    308 F.R.D. 606 (N.D. Cal. 2015)....................................................................3, 7
26

*In re Facebook, Inc. PPC Advert. Litig.,*
27
    282 F.R.D. 446 (N.D. Cal. 2012).......................................................................6

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:16-cv-01150-WHA

**Page**

*In re Korean Ramen Antitrust Litig.*,
No. 13-cv-04115-WHO, 2017 U.S. Dist. LEXIS 7756
(N.D. Cal. Jan. 19, 2017) ...................................................................................10

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521 WHO, 2017 U.S. Dist. LEXIS 24097
(N.D. Cal. Feb. 21, 2017) ..................................................................................13

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420 YGR, 2017 U.S. Dist. LEXIS 57340
(N.D. Cal. Apr. 12, 2017) ..................................................................................11

*In re Rubber Chems. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) .........................................................................3

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (N.D. Cal. 2010),
*amended in part*, 2011 U.S. Dist. LEXIS 84476,
2011 WL 3268649 (N.D. Cal. July 28, 2011) ...........................................3, 14, 16

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
No. M 07-1827 SI, 2012 U.S. Dist. LEXIS 21696
(N.D. Cal. Feb. 21, 2012) ....................................................................................8

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013) .....................................................................16

*In re Wholesale Grocery Prods. Antitrust Lit.*,
No. 09-MD-2090, 2016 WL 4697338
(D. Minn. Sept. 9, 2016) .....................................................................................17

*In re Wholesale Grocery Prods. Antitrust Lit.*,
707 F.3d 917 (8th Cir. 2013) ...............................................................................17

*In re Wholesale Grocery Prods. Antitrust Litig.*,
850 F.3d 344 (8th Cir. 2017) ..........................................................................17, 18

*Knutson v. Daily Review, Inc.*,
548 F.2d 795 (9th Cir. 1976) ................................................................................8

*Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*,
571 F.3d 672 (7th Cir. 2009) ................................................................................6

*Lawlor v. Nat'l Screen Serv. Corp.*,
349 U.S. 322 (1955) ...........................................................................................18

1

2                                                                                        **Page**

3

4     *Leyva v. Medline Indus.*,
          716 F.3d 510 (9th Cir. 2013) ................................................................4, 10

5     *Luviano v. Multi Cable, Inc.*,
6         2017 U.S. Dist. LEXIS 32349 (C.D. Cal. Jan. 3, 2017) ...................................15

7     *Pablo v. Servicemaster Global Holdings, Inc.*,
          2011 U.S. Dist. LEXIS 87918 (N.D. Cal., Aug. 9, 2011)..................................16
8
      *Primiano v. Cook*,
9         598 F.3d 558 (9th Cir. 2010) ................................................................13

10    *Scott v. Sears, Roebuck & Co.*,
          789 F.2d 1052 (4th Cir. 1986) ...............................................................15
11
      *Tan v. Grubhub, Inc.*,
12        No. 15-CV-5128-JSC, 2016 WL 4721439
13        (N.D. Cal. July 19, 2016) .....................................................................17

14    *United Indus. Inc. v. Eimco Process Equip. Co*,
15        61 F.3d 445 (5th Cir. 1995) ...................................................................8

16    *Ward v. Apple Inc.*,
          791 F.3d 1041 (9th Cir. 2015) ...............................................................18

17    *West v. Nissan N. Am., Inc.*,
18        No. 13-CV-4070, 2014 U.S. Dist. LEXIS 27335
          (W.D. Ark. Mar. 4, 2014) ....................................................................15
19
      *Zenith Radio Corp. v. Hazeltine Research*,
20        395 U.S. 100 (1969)..........................................................................9

21    **STATUTES, RULES AND REGULATIONS**

22    Federal Rules of Civil Procedure
23        Rule 23 ........................................................................................2, 3

24    Federal Rules of Evidence
          Rule 702 .....................................................................................13, 15
25

26

27

28

## I.      INTRODUCTION

Defendants' Opposition to Plaintiffs' Motion for Class Certification (Dkt. No. 460) ("Opp." or "Opposition") fails to address the damning and common evidence detailing the conspiracy Plaintiffs laid out in their Motion for Class Certification (Dkt. No. 433) ("Motion").  Defendants also concede numerosity, commonality, typicality, adequacy and superiority.  As Plaintiffs demonstrated in their opening motion, each of these elements are met.  Defendants confine their Opposition to issues related to predominance.  Their arguments on this point are misguided, misstated and ineffective.[1]

First, Defendants falsely claim that certain large merchants were considered co-conspirators by Plaintiffs and as such should not be included in the class.  This claim, stitched together with flimsy thread, is nonsensical and belied by the record.  Defendants' second misguided argument is that the but-for world put forth by Plaintiffs' expert violates *Comcast Corp. v Behrend*, 133 S. Ct. 1426 (2013), because the but-for world is one in which the Liability Shift has yet to take place.  Defendants' own documents, however, ██████████████████████████████████████ ████████████████████████████████████.  Thus, Plaintiffs' model makes sense based on the evidence.  And, even if different shift dates would need to be accounted for, Plaintiffs' expert's model demonstrates that computation could be made in a straightforward manner using common evidence.  Hoping to find an argument that hits its mark, Defendants also raise a series of logically suspect, thinly supported anecdotal attacks.  For example, they bizarrely argue that because many merchants in the data provided by Defendants (data that has been repeatedly corrected by Defendants, is still arriving and is incomplete) show small Liability

---

[1]     Defendants' effort to strike Plaintiffs' expert also fails, as Professor Micah Officer's opinions are the product of reliable principles and methods and will be helpful to the trier of fact.  *See infra*, §IV. As we explain below, Defendants' expert should be stricken because that report is based not on any reliable or testable methods (or any commonly accepted methods at all), but instead appears to be the result of random internet searches, mixed with general statements regarding the payment card industry.

Shift chargebacks, that this is evidence of a need for "merchant-by-merchant mini trials." Opp. at 12. But this is exactly what the class mechanism seeks to avoid. Defendants' own rules and codes are the source of the damages here, and thus damages are easily ascertainable unlike more complex cases where the but-for world requires complicated regression analyses. Here, despite Defendants' efforts to complicate the analysis, the but-for world can be directly traced to Defendants' own changes in reason codes and rules. Discover makes an independent argument regarding arbitration agreements. American Express filed its own brief after refusing to meet and confer, resulting in Defendants' taking more pages than allowed by the Court's Order of April 3, 2017. Dkt. Nos. 448, 463. Those arguments, related to the transfer of claims by certain plaintiffs, have been rejected before and ignore that American Express and Discover are jointly and severally liable as co-conspirators.

We note as well that some of the claimed issues with Plaintiffs' model could have easily been addressed had Defendants properly produced the data we sought for more than six months. Issues related to Defendants' data production deficiencies are addressed by Plaintiffs' expert and continue to this day. *See* Declaration of Alexandra S. Bernay in Further Support of Motion for Class Certification ("Bernay Reply Decl."), Ex. 33 (Rebuttal Report of Micah S. Officer ("Officer Rebuttal")), ¶7 & nn.4-9, ¶37 n.57; *see also* Dkt. No. 433, Ex. 29 (Officer Initial Rpt.), ¶¶37-41. These failures by Defendants are in direct contravention of the Court's statement on this point. As the Court stated more than a year ago: "And if a defendant says to me they have no proof of A, B, C or no common method of proof on A, B, C and it turned out that the plaintiffs had asked for that information and you stonewalled on it, I just assume the worst for the defendant and I grant the Rule 23. So you had better not cheat on the documents." April 21, 2016 Status Conf. Tr. (Dkt. No. 252) at 41:19-24.

## II.  COMMON ISSUES OVERWHELMINGLY PREDOMINATE AS TO IMPACT AND DAMAGES

"'"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 620 (N.D. Cal. 2015) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).[2]  This case is ideally suited for class treatment and Defendants' arguments to the contrary fail.

### A.  Defendants' Argument that Certain Large Merchants Are Co-Conspirators Is False

Defendants state that Plaintiffs have called certain large merchants co-conspirators and now seek to include those supposed co-conspirators in the proposed class. *See* Opp. at 1-2, 5-6.  This is false.  Contrary to Defendants' claims, Plaintiffs have never accused any merchant of being in on the collusive conduct at issue.  Instead, we have explained that many large merchants were able to be certified prior to the Liability Shift date.[3]  We have also explained that certain entities were for a Defendants used to engage in the conspiracy.  Defendants and their expert make a giant, unwarranted leap to claim that because Plaintiffs identified various trade associations as possible places the conspiracy blossomed, that every member of such an entity is automatically part of the conspiracy. This is nonsense.  Defendants cite to Plaintiffs' interrogatory response as a basis for this claim and

---

[2]  As the *CRT* court noted, subject to the requirements of Rule 23, courts "'resolve doubts in these actions in favor of certifying the class.'"  308 F.R.D. at 612 (quoting *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005)).  "Courts have stressed that price-fixing cases are appropriate for class certification because 'a class-action lawsuit is the most fair and efficient means of enforcing the law where antitrust violations have been continuous, widespread, and detrimental to as yet unidentified consumers.'"  *Rubber Chems.*, 232 F.R.D. at 350; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 592 (N.D. Cal. 2010), *amended in part*, 2011 U.S. Dist. LEXIS 84476, 2011 WL 3268649 (N.D. Cal. July 28, 2011).

[3]  Defendants further try to push down the damages in this case by apparently claiming that "large" merchants are not part of the class.  Of course this is not true and has no basis in fact.  Moreover, Defendants' measure of what makes a large merchant ("merchants with more than $100,000 in Visa chargebacks included in Dr. Officer's model" (Opp. at 6)) is untethered to any analysis.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:16-cv-01150-WHA                                                                    - 3 -

1    selectively quote from it to wrongly infer that Plaintiffs have called merchants co-conspirators.  They

2    go so far as to refer to these merchants as "co-conspirator merchants."  Opp. at 6.

3           Defendants' claimed *Comcast* problem simply does not exist.  Plaintiffs' theory of liability is

4    directly tied to the conspiratorial conduct of Defendants in entering into and maintaining a collusive

5    agreement to shift liability for certain payment card transactions.  *See, e.g.*, Amended Complaint,

6    ¶¶1-4.  The shift resulted in new categories of transactions being charged back to Plaintiffs under

7    specific "reason codes."   Damages are measured by review of those previously non-existent

8    chargeback reason codes.   Plaintiffs' proposed model measures only those damages directly

9    attributable to the proposed theory of antitrust liability, which Plaintiffs have shown is amenable to

10   proof through evidence common to the proposed class.  *See Leyva v. Medline Indus.*, 716 F.3d 510,

11   514 (9th Cir. 2013) (citing *Comcast*, 133 S. Ct. at 1433).  In *Comcast*, the plaintiffs proposed

12   numerous separate theories of liability and plaintiffs' expert's model then assumed the validity of all

13   of those theories, without distinction.  133 S. Ct. at 1434.  This, the Court held, "failed to measure

14   damages resulting from the particular antitrust injury on which petitioners' liability in this action is

15   premised." *Id.* at 1433.  By contrast, Plaintiffs here present a single theory of liability directly tied to

16   Plaintiffs' model.  Throughout the litigation we have explained that certain retailers were certified

17   before the Liability Shift.  That does not make those retailers co-conspirators, instead to the extent

18   those merchants do not have Liability Shift chargebacks, they were not damaged and are simply not

19   members of the defined class.[4]  That Defendants' lead argument is demonstrably false and even if

---

[4]    Defendants' expert wrongly claims that Plaintiffs allege no merchants were certified for EMV
chip readers at the time the Liability Shift went into effect.  *See* Expert Report of David P. Kaplan
(Dkt. No. 484) ("Kaplan Report"), ¶48.  Mr. Kaplan's report is riddled with this sort of basic error.
The Amended Complaint provides details that some merchants were certified in time.  *See* Amended
Complaint, ¶90(b).  Compounding this problem, Mr. Kaplan makes much of the supposed EMV
readiness of a handful of small merchants, including an archery supply business in Connecticut and a
dance supply business.  *See* Kaplan Report, ¶51.  Plaintiffs have never disputed that some merchants
were fully certified at the time of the October 2015 shift.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:16-cv-01150-
WHA                                                                                           - 4 -

accepted would only result in a diminution of damages, speaks volumes about the rest of their opposition.[5]

## B. The But-For World Is Supported by Defendants' Documents and Data

Defendants argue that certification should not be granted because the but-for world proposed by Plaintiffs assumes some or all Defendants would delay implementation of the Liability Shift. This argument misunderstands a vital aspect of this case, namely that Defendants' own documents reveal ███████████████████████████████████████████ ████████.   In fact, in some cases the Defendants ███████████████████████████. *See, e.g.*, Bernay Reply Decl., Ex. 34 (VISA-BRI-00054804); *see also* Bernay Reply Decl., Ex. 33 (Officer Rebuttal), ¶¶22-28. Thus, Plaintiffs' model focuses properly on what Defendants believed the world would look like despite their conduct.  In any event, Professor Officer's ability to use evidence common to the class, such as documents and data produced by Defendants, would be the case even if Defendants' false contention were true.

## III. PROOF OF LIABILITY IS OVERWHELMINGLY COMMON

## A. Plaintiffs Paid Chargebacks

As expected, Defendants try to distance themselves from responsibility for the chargebacks suffered by merchants here.  They contend Plaintiffs have demonstrated, at most, that acquirers were harmed by Defendants' conduct and that only impact on acquirers has been shown.  Opp. at 9.  This resurrection of *Illinois Brick* arguments already lost should be dismissed out of hand.  Dkt. No. 346 at 15-16.  Defendants ignore allegations in the Amended Complaint as well as real-world evidence

---

[5]   Defendants' contention (Opp. at 8 n.6) that Plaintiffs have "jettison[ed] the rule of reason claim" is false.  For support of this alleged abandonment, Defendants cite to page 12 of Plaintiffs' Motion which notes that the scheme at issue boils down to an agreement to artificially raise (or fix) the price paid by Plaintiffs.  *See* Motion at 12 (citing to the Court's Order at 4) ("The gravamen of our amended complaint is a form of price-fixing.").  While Plaintiffs believe they have pleaded a per se violation, we have not abandoned any claims under the rule of reason.

that demonstrates that in fact merchants paid these chargebacks.[6]  Rather than facing this evidence,

Defendants argue that there is some anecdotal evidence that some number of chargebacks were

absorbed by acquirers.  Tellingly, however, in each example, there exists a common and simple

method to determine whether in fact a merchant wound up with the liability.  Defendants themselves

admit the data exists to determine which (if any) merchants may have actually received refunds

(Defendants' expert could ██████████████████████████████████████████████

████████████████████████████████████).  Opp. at 9.  Moreover, it is plain from

Defendants' purported examples that any refunds are a small percentage of the class and that they

wrongly seek to have the Court determine which class members had suffered damages prior to

certification.  "But putting the cart before the horse in that way would vitiate the economies of class

action procedure; in effect the trial would precede the certification."  *Kohen v. Pac. Inv. Mgmt. Co.*

*LLC & PIMCO Funds*, 571 F.3d 672, 676 (7th Cir. 2009).  Contrary to the situation in *In re*

*Facebook, Inc. PPC Advert. Litig.*, 282 F.R.D. 446 (N.D. Cal. 2012), where plaintiffs' expert

testified that his method could not opine whether a workable model could be created to determine

valid, invalid and fraudulent clicks (*id.* at 459), here, no such analysis is necessary and there will be

no false positives.  Either a merchant received a chargeback pursuant to one of the newly

implemented Liability Shift codes or she did not.  ██████████████████████████████

████████████████████████████████████████████████████████████████.

Bernay Reply Decl., Ex. 33 (Officer Rebuttal), ¶54.  ██████████████████████████

█████████████████████████████████████████████████████████████████,

will be a claims administration issue, not one related to predominance.  *See* Bernay Reply Decl., Ex.

33 (Officer Rebuttal), ¶¶34-39.

---

[6]    Defendants do not cite to *Illinois Brick*, but their argument embraces that authority.  Also, we
note that these issues do not apply to American Express and Discover since those networks are both
issuers and acquirers.

**B.      Defendants Ignore that Proof of Liability Is Common and Direct**

Defendants also seek to muddy the waters by wrongly claiming that Plaintiffs' claims hinge not on the imposition and maintenance of the Liability Shift, but on other outside factors such as merchants' ability to get certified by the time the Liability Shift went into effect in October 2015. This, even if true and supported by allegations of fact (it's not), is legally irrelevant.  Plaintiffs' harm flows directly from the Defendants' actions and is not dependent on other supposedly intervening causes.  As Plaintiffs have alleged, Defendants took a historically unprecedented step, different than they had across the globe, and implemented a Liability Shift in the same way at the same time. Further, as we detailed in our opening motion, significant and damning evidence shows this collusion, as well as the Defendants' continuing agreement to maintain the Liability Shift date despite the fact that these actors knew that many merchants would not be able to have EMV-capable and certified equipment by October 2015. *See* Motion, §IV.  We show Defendants met and colluded through various trade groups, with top executives taking part in the anticompetitive decisions.  And we detail that Defendants were ultimately responsible for the certification of the machinery. *See id.*, §IV. D.

In the face of this common evidence, Defendants argue that Plaintiffs' claim depends on merchants' ability to achieve certification and that the inability to identify the reasons why some merchants were or were not certified create individualized issues.  Opp. at 10-15.  This ignores our class definition as well as the law in this circuit.  Although a far more complicated case, a similar issue was considered and rejected by the court in the *CRT* case.  There, the court noted that certain anecdotal evidence relied on by defendants' expert that not all manufacturers, wholesalers and retailers of CRT products could pass on any alleged increases in the price of CRT could not overcome plaintiffs' expert's empirical analysis of millions of price and cost observations from actual data. *Id.* at 628.  Here, Professor Officer's opinion, based on millions of observations from

the data produced by Defendants, tracks chargebacks by the very reason codes that did not exist prior to the Liability Shift.  Dkt. No. 433, Ex. 29 (Initial Officer Rpt.), ¶24 ("Defendants' materials and information received by the Plaintiffs in discovery provide[] explanations regarding which reason codes are explicitly associated with the FLS."); *id.*, ¶¶37-39, 41,50-55, 64-69, 87-92 (Defendants' data).  Thus, contrary to Defendants' claims, there is no need for "merchant-by-merchant mini trials" to determine the cause of Plaintiffs' injury.  Opp. at 12.

We note as well that "impact, like the other elements of plaintiffs' case, must be established by a preponderance of the evidence.  In fact, antitrust plaintiffs benefit from an especially lenient burden when it comes to proof of impact."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2012 U.S. Dist. LEXIS 21696, at *34 (N.D. Cal. Feb. 21, 2012) (quoting *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 811 (9th Cir. 1976)).  "Thus, plaintiffs need not be able to articulate the precise degree to which every individual class member was injured; it suffices to show tha[t] it was more likely that not that class wide impact occurred."  *TFT*, 2012 U.S. Dist. LEXIS, at *34.

Defendants rely extensively on *Glen Holly Entm't. Inc. v. Tektronix Inc.*, 343 F.3d 1000 (9th Cir. 2003), citing that opinion four times in their opposition.  That case, dealing with issues where an agreement between competitors regarding certain film-editing systems injured a consumer, is, as an initial point, unrelated to class certification.  Further, in *Glen Holly*, the court focused on issues related to antitrust standing and noted the general rule that plaintiffs' injury must flow from "that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977).[7]  In this case, unlike many complex antitrust actions, the injury plainly flows from

---

[7]   Defendants' cases are off base.  In *Axis, S.p.A. v. Micafil, Inc.*, 870 F.2d 1105, 1112 (6th Cir. 1989) the takeover by defendant of a competitor company did not cause plaintiff's harm (inability to enter the market).  *See id.*  Similarly, in *United Indus. Inc. v. Eimco Process Equip. Co*, 61 F.3d 445, 448-49 (5th Cir. 1995), plaintiff brought §§1 and 2 claims for their refusal to deal.  "In the refusal to deal context, proof of futility satisfies causation when a demand is lacking."  *Id.* at 449.  The court found that plaintiff's evidence of futility was speculative, and therefore, plaintiff failed to raise a material issue of fact concerning causation.  *Id.*

Defendants' unlawful agreement. *Zenith Radio Corp. v. Hazeltine Research*, 395 U.S. 100, 114 n.9 (1969) ("It is enough that the illegality is shown to be a material cause of the injury; a plaintiff need not exhaust all possible alternative sources of injury in fulfilling his burden of proving compensable injury . . . ."). Here, it is the collusive imposition of the Liability Shift and attendant changes in the chargeback reason codes that is the direct cause of Plaintiffs' injuries. Defendants' efforts to complicate this case by raising phantom issues is unavailing.

### 1.  Claimed Independent Business Decisions Are a Red Herring

Shirking responsibility for their role in the alleged conspiracy, Defendants blame the victims for the damages resulting from their agreement to impose and maintain the Liability Shift. Opp. at 11-12. The merchant-Plaintiffs' injuries stem from Defendants' alleged agreement to impose and maintain a common penalty through the Liability Shift. Ignoring that Defendants' alleged conspiracy required merchants to take steps they would not have had to take but for the conspiracy, Defendants claim that mini-trials will be needed to determine whether merchants self-inflicted the damages they suffer. *Id.* at 11-12. To take one absurd example, Defendants claim no class can be certified, based on an unverified statement in a newspaper article that a few merchants may have decided to disable EMV to speed up checkouts during the 2015 holiday season, thus creating individualized issues. *See* Kaplan Report, ¶75. None of this happens without the Defendants' agreement. Moreover, all purportedly individualized damages issues Defendants have concocted can readily be addressed at the claims administration stage. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017). As the Ninth Circuit recently stated:

> Defendants will have similar opportunities to individually challenge the claims of absent class members if and when they file for damages. At the claims administration stage, parties have long relied on "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" to validate claims.

In any event, these damages issues brought under the guise of causation do not overwhelm common issues. *Id.* at 1130 ("Why would a consumer risk perjury charges and spend the time and effort to submit a false claim for a *de minimis* monetary recovery?"); *Levya*, 716 F.3d at 513-14.

### 2.     Plaintiffs' Model Properly Accounts for Chargebacks that Would Have Occurred Regardless of the Liability Shift

Defendants argue that regardless of the Liability Shift, there was a "possibility" merchants could have been liable for some chargebacks incurred under Liability Shift codes even if the Liability Shift had not occurred. This, Defendants then argue, implies there could be a merchant who has "one or only a few" Liability-Shift-coded chargebacks, and that those chargebacks could have previously been charged-back to that merchant absent the Liability Shift. Defendants, therefore, conclude that without an individualized inquiry, Plaintiffs cannot establish each and every member of the class suffered from Defendants' conspiracy. Opp. at 15-16.

Upon examination, this chain of logic falls apart both factually and legally. As an initial matter, all chargebacks Plaintiffs claim damage for exist under chargeback reason codes that were created to capture chargebacks resulting from the Liability Shift. Dkt. No. 433, Ex. 29 (Initial Officer Rpt.), ¶¶24, 37-38, 39, 41, 50-55, 64-69, 87-92 (Defendants' data sources and calculation of chargebacks, *i.e.*, direct measure of damages). To the extent that any Liability Shift chargebacks could have or should have been categorized under another reason code, the number of such chargebacks is likely *de minimus*. Bernay Reply Decl., Ex. 33, ¶¶5-9. This is evidenced by Defendants and their expert being unable to come up with a single example of an actual Liability-Shift-coded chargeback that would have occurred without the Liability Shift despite producing data on millions of chargebacks. *See In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 U.S. Dist. LEXIS 7756, at *51 (N.D. Cal. Jan. 19, 2017) ("In the antitrust context, aggregate damages calculations 'need not be exact' at class-certification stage."). And legally, impact does not have to be established as to every single member of a class numbering in the hundreds of thousands,

especially considering that but-for Defendants' conduct, no damage would have been incurred by any merchant. *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2017 U.S. Dist. LEXIS 57340, at *88 (N.D. Cal. Apr. 12, 2017) ("Even if it could be shown that some individual class members were not injured, class certification, nevertheless, is appropriate where the antitrust violation has caused widespread injury to the class.").

Moreover, the examples of chargebacks Defendants cite are not what they say they are, and only demonstrate that certain of these Liability-Shift-coded chargebacks *could have* been charged back in a non-Liability Shift world under the networks' rules, not that they ever were or would be. Defendants' first example in their brief is that one of the named Plaintiffs' cashiers may not have compared the signature on the charge slip to the customer's ID, and that an examination would have revealed that the person who was signing the slip may not have been the cardholder. That this is their prime example is telling of the strength of their position. Are cashiers expected to be handwriting experts? And perhaps more importantly, if this would have been charged back in the non-Liability Shift world, why didn't the networks introduce a single example of an issuer or a network initiating a chargeback when a signature was present?

And despite Defendants' untrue statements, as Professor Officer has explained, these types of chargebacks can be accounted for using a methodology and evidence common to the class. *See generally* Dkt. No. 433, Ex. 29 (Officer Initial Rpt.), ¶¶46-49, 56-63, 70-80, 93-102; Bernay Reply Decl., Ex. 33 (Officer Rebuttal Rpt.), ¶¶5-9. As Professor Officer explained, determining a dollar estimate of these chargebacks can be accomplished by comparing the percentage of total fraud merchants were responsible for before the Liability Shift to the percentage of total fraud merchants were responsible for after the Liability Shift. Dkt. No. 433, Ex. 29 (Officer Initial Rpt.), ¶¶56-63 (Visa); ¶¶70-80 (Mastercard); ¶¶93-102 (Discover). Using this analysis, Professor Officer concluded that "chargeback volume under non-FLS reason codes is generally not statistically lower

after October 2015 relative to periods prior to the FLS."  Bernay Reply Decl., Ex. 33 (Officer Rebuttal), ¶¶7-8 n.10.  Demonstrating the weakness of their argument, Defendants notably answer this statistical analysis without an analysis of their own, rather preferring conjecture and unsupported conclusions to support their position.

### 3.    Defendants' Claims Regarding the "Need" for a Liability Shift in the U.S. Are Self-Serving and Easily Rebutted

Defendants try to justify their collusion by claiming that the Liability Shift was necessary in order to ensure EMV implementation.  *See* Opp. at 18.  Again, Defendants' arguments fail. Regardless of whether EMV implementation was or was not a "good" idea, as Plaintiffs have repeatedly explained, this case is about four competitors coming together to agree on an unprecedented change in the way certain chargebacks were handled.  And these competitors agreed to maintain the October 2015 imposition of this sea change in a similarly anticompetitive manner. The evidence adduced to date – which is overwhelmingly common to the class – supports this view and supports Plaintiffs' expert's but-for world.  Self-serving arguments that implementing EMV technology without an attached liability shift resulted in "failure" elsewhere have no bearing on the conspiracy alleged, particularly when the facts show that Defendants indeed conspired.  For example, evidence has shown that ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████  Dkt. No. 446-1, Ex. 9 (AMEX00478566).  ████████████████████████████████ ████████████████████████  *Id*.  Other common evidence makes clear that the card networks knew that decisions by competitors on the liability shift date ███████████████."  Dkt. No. 433-1, Ex. 23 (VISA-BRI-00483072) at 74.  ████████████████████████████████████ ██████████████████████████████████████████████████████████████████████

1  f ████  *Id.*; *see also* Bernay Reply Decl., Ex. 35 (VISA-BR1-00055372) at 74 (noting that ████

2  ██████████████████████████████████████████████████████████████████████████████

3  ███████████████████████████████████████████████).

4         Issues related to purported procompetitive justifications are not ones the Court need

5  determine at class certification.  Defendants' citation to *Concord Boat* on this point is revealing.

6

7  That Eighth Circuit opinion was issued after a 10-week jury trial on an unquestionably developed

8  factual record.  *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1044 (8th Cir. 2000).  It

9  was not a class action and there the court noted that an expert's opinion cannot support a ***jury's***

10  ***verdict*** if not supported by sufficient facts, a circumstance not present here.  *Id.*  Similarly,

11  Defendants claim that "powerful market forces" such as the Target data breach and government

12

13  pressure to move to "a more secure system" was affecting the industry.  *See* Opp. at 19-21.  These

14  pressures, however, relate to the ***implementation*** of EMV technology and not to the collusive

15  imposition of a Liability Shift.  Defendants' continual conflation of the issues does little to show that

16  class treatment is inappropriate.  To the extent issues related to market pressures are relevant, the

17  evidence regarding those matters is overwhelmingly common.  Plaintiffs also note that Defendants

18  refuse to address the evidence showing agreement between competitors, choosing instead to point to

19  purported justifications for the move to EMV.  *See* Motion at 5-9.

20

21  **IV.  PLAINTIFFS' EXPERT'S OPINION IS ADMISSIBLE; DEFENDANTS' EXPERT SHOULD BE EXCLUDED**

22         "Expert testimony is admissible under Rule 702 if it is both relevant and reliable."  *In re*

23  *Lidoderm Antitrust Litig.*, No. 14-md-02521 WHO, 2017 U.S. Dist. LEXIS 24097, at *112 (N.D.

24  Cal. Feb. 21, 2017).  Where there is conflict regarding an expert's testimony it "'is to be attacked by

25  cross examination, contrary evidence, and attention to the burden of proof, not exclusion.'"  *Id.* at

26  113 (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).  Here, while Defendants

27  disagree with the proposed but-for world and wrongly argue that damages do not flow directly from

28

them to Plaintiffs, these arguments – to the extent they are even relevant – are unavailing at this stage of the litigation because Plaintiffs are not required to "'prove the merits of their case-in-chief at the class certification stage . . . [i]t is unnecessary to delve further into the merits by going point-by-point through each expert's theory to decide who has designed the "better" [methodology].'" *In re TFT-LCD*, 267 F.R.D. at 604 (citation omitted).  Professor Officer has provided a workable method for determining impact and damages and Defendants' arguments to the contrary fail.

By contrast, Defendants' expert David Kaplan presents a stark lack of any scientific or technical analysis and instead bases his opinions on internet searches and unsupported conjecture. Not surprisingly, his unsupported, unscientific opinions have been struck in other antitrust actions. *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2014 U.S. Dist. LEXIS 180914 (E.D.N.Y. Oct. 15, 2014) (Kaplan opinion partially stricken at class certification; certification granted in part); *Bayshore Ford Truck v. Ford Motor Co.*, No. 99-cv- 00741 (JLL), 2011 U.S. Dist. LEXIS 71991, at *18 (D.N.J. July 1, 2011) ("[a]ny relevance or value this testimony may have is substantially outweighed by the danger of prejudice caused by having Mr. Kaplan mislead the jury as to the empirical value of this method").  And, in other cases, courts have heavily criticized Mr. Kaplan's analysis.  *Castro v. Sanofi Pasteur Inc.*, 134 F. Supp. 3d 820, 835, 841 (D.N.J. 2015) ("Mr. Kaplan does not conduct meaningful analysis to prove [his argument].")

Tellingly, ███████████████████████████████████████████████████████████████████████████████████████████████. *See* Bernay Reply Decl., Ex. 36 (April 25, 2017 Deposition Transcript of David P. Kaplan ("Kaplan Depo.")) at 12:22-13:4 █████████████████████████████████████████████████████████████

███ Mr. Kaplan's opinions also fail to meet the standards for admission because they are mere summaries of the evidence and issues of class certification to which he applies no meaningful

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:16-cv-01150-WHA

analysis.  Rule 702 excludes expert testimony on matters "within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."  *Scott v. Sears, Roebuck & Co.,* 789 F.2d 1052, 1055 (4th Cir. 1986).  Mr. Kaplan merely parrots what can be found in various documents and from the odd internet page, then states at the conclusion that these examples require individualized determinations.[8]  Mr. Kaplan's opinion that some class members benefitted from the Liability Shift is a Hail Mary, at best.  For example, his supposition that Apple benefitted from the Liability Shift because EMV technology was "more compliant" with near field communication (the technology in Apple Pay) is frivolous and unsupported by any real-world facts or law and even if it was true, it would be irrelevant.[9]  *See* Kaplan Report, ¶104.

## V.    THE CLASS IS PROPERLY DEFINED

Contrary to Defendants' contentions, the class definition here is proper.  First, even assuming the change in wording from the complaint to the class certification motion was significant, "the plaintiff may amend the class definition in its complaint to correspond to the definition discussed in the certification."  *West v. Nissan N. Am., Inc.,*No. 13-CV-4070, 2014 U.S. Dist. LEXIS 27335, at *8-*9 (W.D. Ark. Mar. 4, 2014).  Moreover, the Court can modify the definition.  "District courts have broad discretion to modify class definitions."  *Luviano v. Multi Cable, Inc.,* 2017 U.S. Dist. LEXIS 32349, at *34-*35 n.12 (C.D. Cal. Jan. 3, 2017).  Thus, to the extent the definition of payment card chargebacks does not provide the necessary precision, Plaintiffs request the Court modify the definition.  Second, any issues related to the exclusion of government entities can similarly be modified.  Finally, any claim that the defined class is a "fail safe" class by including the

---

[8]    Mr. Kaplan's report is chock-full of unverified and unsupported claims from seemingly random websites.  *See, e.g.*, Kaplan Report, ¶¶51, 52, 64; Kaplan Depo. at 90:13-95:6, 95:17-21, 97:6-19.

[9]    Mr. Kaplan also makes the specious claim that because retailers like Staples and Home Depot sell some credit card terminals, any Liability Shift-related chargebacks would need to be "offset" against the money they make from EMV-compliant card readers.  *See* Kaplan Depo. at 169-171; *see also* Kaplan Report, ¶¶101-103.  Neither Mr. Kaplan nor Defendants provide any meaningful legal basis for such a novel claim.

word unlawful is unavailing because as with the other claimed issues, this word can be modified. *TFT-LCD*, 267 F.R.D. at 590-91 (allowing modification of class definition during class certification briefing because "the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants").

## VI.   DISCOVER AND AMERICAN EXPRESS WRONGLY CLAIM THAT ARBITRATION AGREEMENTS PRECLUDE CLASS CERTIFICATION

Defendants argue without explanation that because the proposed class contains merchants who have agreed to arbitrate claims against Discover, predominance and superiority cannot be met. Opp. at 17.  American Express takes a more nuanced approach, claiming that a class that includes merchants subject to its arbitration and forum selection provisions is too overbroad to be certified, but recognizing that the class definition could be tailored to include the subclasses.[10] Dkt. No. 463 at 2-3; *see also id.* at 2 n.2.  Much like the subclasses American Express proposes, subclasses would also address the arguments Defendants have raised.  But because Defendants' arguments are flawed legally and factually, as well as premature,[11] subclasses are not necessary.

"The fact that some members of a putative class may have signed arbitration agreements or released claims against a defendant does not bar class certification."  *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011) (citing cases); *see also Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902-03 (N.D. Cal. 2015) (citing cases).  Indeed, "whether an absent class member is

---

[10]   By filing separate briefs, Defendants have run afoul of the Court's Order regarding page limits. The Court, in denying a request to file separate *Daubert* motions, held each side could file three additional pages.  Adding American Express's brief to the Defendants' joint brief brings the total pages to 31, in violation of the Court's Order. Dkt. No. 448 ("each side may exceed the applicable page limitation for their brief by THREE PAGES.").

[11]   Neither *Pablo* nor *In re Titanium* (Dkt. No. 463 at 17) help Defendants as both cases recognize that amending the class definition to exclude those subject to arbitration is premature and may be addressed by subclasses.  *Pablo v. Servicemaster Global Holdings, Inc*., 2011 U.S. Dist. LEXIS 87918, *7 (N.D. Cal., Aug. 9, 2011) (citing cases); *In re Titanium Dioxide Antitrust Litig*., 962 F. Supp. 2d 840, 846 (D. Md. 2013) ("mandatory arbitration clauses, forum selection clauses, and class action and jury trial waivers, all of which would contractually bar them from participating in this class action.. . . . did not defeat class certification").

1  bound by the arbitration clause is a question that can be dealt with on a class-wide basis, as it does

2  not appear that there will need to be an individualized inquiry as to whether the arbitration clause is

3  generally enforceable." *Id.* at 902.  Defendants' Opposition proves the point by citing generalized

4  proof common to the class.  Opp. at 17 (citing Dkt. No. 309-3 at 5 (Discover's Merchant Operating

5  Regulations, Release 16.1 v.2.0, effective April 15, 2016) and Dkt. No. 309-2 (Discover's Merchant

6  Services Agreement, September 2002)).

7

8       Any overbreadth of the type Defendants identify can be addressed by subclasses.  The Eighth

9  Circuit's decisions in *In re Wholesale Grocery Prods. Antitrust Litig.* are instructive.  707 F.3d 917

10  (8th Cir. 2013); *In re Wholesale Grocery Prods. Antitrust Litig.*, 850 F.3d 344 (8th Cir. 2017).[12]

11  There two wholesaler defendants had moved to arbitrate a suit brought by retailers alleging an

12  antitrust conspiracy.  Each retailer, however, had asserted its antitrust conspiracy claim against the

13  wholesaler defendant with whom it did not have an arbitration agreement.  707 F.3d at 919; 850 F.3d

14  at 348.  The Eighth Circuit reversed, ruling that equitable estoppel compelled arbitration.  Because

15  "these antitrust conspiracy claims do not involve violation of the terms of the contract, the face of

16  the contract does not provide the basis for the alleged injuries, and there is no evidence that the

17  contract anticipated the precise type of relationship giving rise to the claims."  707 F.3d at 924.

18

19       American Express argues that Fine Fare cannot assert claims ***against American Express*** on

20  behalf of those merchants in the proposed class subject to the forum-selection and arbitration

21  provisions contained in American Express's Card Acceptance Agreement.[13]  Dkt. No. 463 at 2.

22

23

24  _____

[12]  American Express cites a subsequent district court decision in the same matter but does not
25  mention these decisions. Dkt. No. 463 at 3 (citing *In re Wholesale Grocery Prods. Antitrust Lit.*, No.
09-MD-2090, 2016 WL 4697338, at *14-*15 (D. Minn. Sept. 9, 2016)).

26  [13]  *Tan v. Grubhub, Inc.* is distinguishable as the named plaintiff was one of just two individuals in
the entire class not subject to an arbitration and class action waiver provisions. No. 15-CV-5128-
27  JSC, 2016 WL 4721439, at *1, *3 (N.D. Cal. July 19, 2016).  Moreover, the wage-and-hour claims
against a single defendant are nothing like the joint-and-several claims under the antitrust conspiracy
28  alleged here.

Those merchants who accept American Express cards, like B & R Supermarket or Monsieur Marcel, the argument goes, are confined to litigate or arbitrate their claims *against American Express* in the Southern District of New York.  Dkt. No. 463 at 1.  While Plaintiffs recognize that this Court severed and transferred all claims by B & R Supermarket and Monsieur Marcel *against American Express*, those named Plaintiffs may bring claims arising from American Express chargebacks *against Visa, Mastercard or Discover*, all three of which are jointly and severally liable for American Express's chargebacks.[14]  Neither Visa, Mastercard nor Discover have raised any arbitration or forum-selection provisions against B & R Supermarket and Monsieur Marcel.  As in *Wholesale Grocery*, where neither wholesale defendant co-conspirator could compel arbitration against a retailer with whom it did not have an arbitration agreement, both B & R Supermarket and Monsieur Marcel may bring claims stemming from chargebacks rooted in American Express's participation in the alleged conspiracy against Visa, Mastercard or Discover based on joint-and-several liability for antitrust conspiracy.[15]  The same argument undermines Discover's challenge.

## VII.    CONCLUSION

Because Plaintiffs have demonstrated that every requirement for class certification has been met, the Court should grant Plaintiffs' Motion.  The Court should further deny Defendants' motion to strike Professor Officer's opinion, and strike Mr. Kaplan's opinion.

---

[14]    Because B & R Supermarket and Monsieur Marcel may bring claims arising from American Express chargebacks against Visa, Mastercard or Discover, the California and Florida claims should be certified.  Dkt. No. 463 at 3-4.

[15]    *Ward v. Apple Inc.*, 791 F.3d 1041, 1049 (9th Cir. 2015) ("an absent antitrust co-conspirator generally will not be a required party under Rule 19(a)(1)(A), which applies only when a party's absence prevents the court from 'accord[ing] complete relief among existing parties'") (citation omitted); *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 330 (1955) (holding that joinder of alleged antitrust co-conspirators   was not required "since as joint tortfeasors they were not indispensable parties").

1  DATED:  April 28, 2017                    Respectfully submitted,

2                                            ROBBINS GELLER RUDMAN
                                                & DOWD LLP
3                                            PATRICK J. COUGHLIN
                                             DAVID W. MITCHELL
4                                            ALEXANDRA S. BERNAY
                                             CARMEN A. MEDICI
5                                            ANGEL P. LAU
                                             LONNIE A. BROWNE
6

7                                                      s/ Alexandra S. Bernay
                                             ALEXANDRA S. BERNAY
8
                                             655 West Broadway, Suite 1900
9                                            San Diego, CA  92101-8498
                                             Telephone:  619/231-1058
10                                           619/231-7423 (fax)

11                                           ROBBINS GELLER RUDMAN
                                                & DOWD LLP
12                                           ARMEN ZOHRABIAN
                                             Post Montgomery Center
13                                           One Montgomery Street, Suite 1800
                                             San Francisco, CA  94104
14                                           Telephone:  415/288-4545
                                             415/288-4534 (fax)
15
                                             ROBBINS GELLER RUDMAN
16                                              & DOWD LLP
                                             RANDI D. BANDMAN
17                                           120 East Palmetto Park Road, Suite 500
                                             Boca Raton, FL  33432
18                                           Telephone:  561/750-3000
                                             561/750-3364 (fax)
19
                                             DEVINE GOODMAN RASCO &
20                                              WATTS-FITZGERALD, LLP
                                             JOHN W. DEVINE
21                                           LAWRENCE D. GOODMAN
                                             ROBERT J. KUNTZ, JR.
22                                           2800 Ponce De Leon Blvd., Suite 1400
                                             Coral Gables, FL  33134
23                                           Telephone:  305/374-8200
                                             305/374-8208 (fax)
24
                                             Attorneys for Plaintiffs
25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION - 3:16-cv-01150-
WHA                                                                          - 19 -

CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2017, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 28, 2017.

 s/ Alexandra S. Bernay
ALEXANDRA S. BERNAY

ROBBINS GELLER RUDMAN
& DOWD LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
E-mail:  xanb@rgrdlaw.com

1260280_1

**Mailing Information for a Case 3:16-cv-01150-WHA B & R Supermarket, Inc., et al v. Visa, Inc. et al**

**Electronic Mail Notice List**

The following are those who are currently on the list to receive e-mail notices for this case.

- **Courtney Bedell Averbach**
  caverbach@reedsmith.com,courtney-averbach-3429@ecf.pacerpro.com,reed-smith-2312@ecf.pacerpro.com

- **Scott D. Baker**
  sbaker@reedsmith.com,cmosqueda@reedsmith.com,cshanahan@reedsmith.com,scott-baker-8371@ecf.pacerpro.com,reed-smith-2312@ecf.pacerpro.com,cristi-shanahan-4367@ecf.pacerpro.com,drothschild@reedsmith.com

- **Randi D. Bandman**
  randib@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Peter T. Barbur**
  pbarbur@cravath.com,mao@cravath.com,cgessner@cravath.com

- **John Eliot Beerbower**
  jbeerbower@hunton.com

- **Paul Belonick**
  pbelonick@sidley.com,sfefilingnotice@sidley.com,jhiwa@sidley.com,sfdocket@sidley.com,paul-belonick-5747@ecf.pacerpro.com

- **Craig A Benson**
  CBenson@paulweiss.com,mao_fednational@paulweiss.com

- **Jane Petersen Bentrott**
  jbentrott@mofo.com

- **Alexandra Senya Bernay**
  xanb@rgrdlaw.com,E_File_SD@rgrdlaw.com,jkusy@rgrdlaw.com,AZohrabian@rgrdlaw.com,schateauneuf@rgrdlaw.com

- **Boris Bershteyn**
  boris.bershteyn@skadden.com

- **Daniel I Booker**
  dbooker@reedsmith.com,dalioto@reedsmith.com

- **Andrew Baldwin Brantingham**
  brantingham.andrew@dorsey.com,roadfeldt.christi@dorsey.com

- **Lonnie Anthony Browne**
  LBrowne@rgrdlaw.com

- **Cheryl Ann Cauley**
  ccauley@taylorpatchen.com,schow@taylorpatchen.com

- **Isaac Daniel Chaput**
  ichaput@cravath.com

- **Eva W. Cole**
  ewcole@winston.com,cfernandez@winston.com,docketsf@winston.com,docketny@winston.com

- **Melissa Colon-Bosolet**
  mcolon-bosolet@sidley.com,nyefiling@sidley.com,melissa-colon-bosolet-1976@ecf.pacerpro.com

- **Dana Lynn Cook-Milligan**
  dlcook@winston.com

- **Patrick J. Coughlin**
  PatC@rgrdlaw.com,SusanM@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **John William Devine**
  jdevine@devinegoodman.com

- **Kelsie A Docherty**
  kdocherty@cravath.com,mcohen@cravath.com

- **Thomas Edward Egler**
  tome@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Matthew A Eisenstein**
  matthew.eisenstein@aporter.com,Jessica.Caterina@aporter.com,Mitchell.Stern@aporter.com

- **Howard Feller**
  hfeller@mcguirewoods.com

- **Tiffani B Figueroa**
  TFigueroa@mofo.com

Case 1:17-cv-02738-MKB-JO   Document 503   Filed 04/28/17   Page 27 of 29 PageID #: 15641

- **Stephanie Ilana Fine**
  stephanie.fine@aporter.com

- **Natalie Anne Fleming Nolen**
  nflemingnolen@mofo.com

- **Kenneth A. Gallo**
  kgallo@paulweiss.com,mlaramie@paulweiss.com

- **Lawrence Dean Goodman**
  lgoodman@devinegoodman.com,alopez@devinegoodman.com,smallet@devinegoodman.com

- **David F. Graham**
  dgraham@sidley.com,efilingnotice@sidley.com,david-graham-9409@ecf.pacerpro.com

- **Peter E Greene**
  peter.greene@skadden.com

- **Alexander Guney**
  alexander.guney@sedgwicklaw.com

- **James Franklin Herbison**
  jherbiso@winston.com

- **Damaris Hernandez**
  dhernandez@cravath.com,mao@cravath.com

- **D. Bruce Hoffman**
  bhoffman@hunton.com,acordero@hunton.com

- **Peter K. Huston**
  phuston@sidley.com,jhiwa@sidley.com,sfdocket@sidley.com,hebalogi@sidley.com,peter-huston-4120@ecf.pacerpro.com

- **Susan S. Joo**
  sjoo@hunton.com,jocampo@hunton.com

- **J. Brent Justus**
  bjustus@mcguirewoods.com

- **Raoul Dion Kennedy**
  raoul.kennedy@skadden.com,alissa.turnipseed@skadden.com,james.schaefer@skadden.com,sarah.wood@skadden.com

- **Jeffrey L. Kessler**
  jkessler@winston.com,pacercourtfile@winston.com,docketsf@winston.com,docketny@winston.com

- **Ali Klein**
  aklein@cravath.com

- **Leslie Kostyshak**
  lkostyshak@hunton.com,jbeerbower@hunton.com

- **Harry P Koulos**
  harry.koulos@skadden.com

- **Evan R Kreiner**
  evan.kreiner@skadden.com

- **Robert J Kuntz , Jr**
  rkuntz@devinegoodman.com,vcerra@devinegoodman.com

- **Mark P. Ladner**
  mladner@mofo.com,nflemingnolen@mofo.com,stice@mofo.com,docketny@mofo.com,mark-ladner-4922@ecf.pacerpro.com

- **Alexandra Eve Laks**
  alaks@mofo.com,gina-gerrish-5550@ecf.pacerpro.com,ggerrish@mofo.com,alexandra-laks-0787@ecf.pacerpro.com

- **Angel Puimei Lau**
  alau@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Adrienne J Lighten**
  alighten@paulweiss.com

- **Casey Erin Lucier**
  clucier@mcguirewoods.com

- **Martha Corcoran Luemers**
  eFilingPA@dorsey.com,luemers.martha@dorsey.com,evans.elyssa@dorsey.com

- **Michelle Ann Mantine**
  mmantine@reedsmith.com,michelle-mantine-7250@ecf.pacerpro.com,dsharp@reedsmith.com,docketingecf@reedsmith.com,reed-smith-2312@ecf.pacerpro.com,sament@reedsmith.com

- **Sharon D. Mayo**
  sharon.mayo@apks.com,robert.culhane@aporter.com,Joanna.Lee@aporter.com,Emily.Clark@aporter.com,sfcalendar@aporter.com,Jill.Hernandez@aporter.com

- **Carmen Anthony Medici**
  cmedici@rgrdlaw.com,slandry@rgrdlaw.com,E_File_SD@rgrdlaw.com,ckopko@rgrdlaw.com

- **Sean D. Meenan**
  smeenan@winston.com,recordssf@winston.com,pacercourtfile@winston.com,mcourtney@winston.com,docketsf@winston.com,CWelch@winston.com

- **Mark R Merley**
  Mark.Merley@APORTER.COM

- **Eugene Mikolajczyk**
  genemik@msn.com

- **Michael B. Miller**
  mbmiller@mofo.com,mike-miller-9381@ecf.pacerpro.com,docketny@mofo.com

- **David W. Mitchell**
  davidm@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph Laurence Motto**
  JMotto@winston.com,ahodgson@winston.com

- **Dennis Francis Murphy**
  dennis.murphy@sedgwicklaw.com

- **Benjamin Robert Nagin**
  bnagin@sidley.com,nyefiling@sidley.com,benjamin-nagin-5091@ecf.pacerpro.com

- **Karen C Otto**
  karen.otto@aporter.com

- **Elizabeth P Papez**
  epapez@winston.com

- **Michelle Parikh**
  MParikh@paulweiss.com,JNoonan@paulweiss.com,mao_fednational@paulweiss.com

- **Jeanifer Ellen Parsigian**
  jparsigian@winston.com,hhammon@winston.com,docketsf@winston.com

- **Angela Maryssa Porter**
  porter.angela@dorsey.com,vallant.tammy@dorsey.com

- **David Carlyle Powell**
  dpowell@mcguirewoods.com,usdocket@mcguirewoods.com,jtabisaura@mcguirewoods.com,mdylak@mcguirewoods.com,DQuinonez@mcguirewoods.com

- **Penelope Athene Preovolos**
  ppreovolos@mofo.com,lroiz@mofo.com,linda-roiz-3645@ecf.pacerpro.com,penny-preovolos-9506@ecf.pacerpro.com

- **Frederick Matthew Ralph**
  ralph.matthew@dorsey.com,fairbairn.mary@dorsey.com

- **Paul Jeffrey Riehle**
  paul.riehle@sedgwicklaw.com,SDMAcalendaring@sedgwicklaw.com,phyllis.flynn@sedgwicklaw.com,dennis.murphy@sedgwicklaw.com

- **Lauren Kelley Ross**
  lross@cravath.com,mao@cravath.com

- **Michael Adam Rubin**
  michael.rubin@apks.com

- **Conor Michael Shaffer**
  cshaffer@reedsmith.com

- **Ashley Lynn Shively**
  ashively@reedsmith.com,dkelley@reedsmith.com,ashley-shively-0536@ecf.pacerpro.com,david-kelley-8209@ecf.pacerpro.com,reed-smith-2312@ecf.pacerpro.com

- **Ryan A Shores**
  rshores@hunton.com,gjenkins@hunton.com

- **Robert Yale Sperling**
  rsperling@winston.com

- **Christopher James Steskal**
  csteskal@fenwick.com,kayoung@fenwick.com,jtosches@fenwick.com

- **Stephen E. Taylor**
  staylor@taylorpatchen.com,schow@taylorpatchen.com,cdunbar@taylorpatchen.com

- **Diana Viggiano Valdivia**
  dvaldivia@paulweiss.com

- **Robert John Vizas**
  robert.vizas@aporter.com,marie.zambrano@aporter.com,SFCalendar@aporter.com

- **Ross E Weingarten**
  RWeingarten@paulweiss.com,mao_fednational@paulweiss.com

- **Jamie Danielle Wells**
  jwells@mcguirewoods.com,ladocket@mcguirewoods.com,dmolakides@mcguirewoods.com

- **Jennifer Michelle Wong**
  jennifer.wong@sidley.com,nyefiling@sidley.com,jennifer-wong-7703@ecf.pacerpro.com

- **Catherine M Yang**
  CYang@paulweiss.com,mao_fednational@paulweiss.com

- **Armen Zohrabian**
  AZohrabian@rgrdlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`