

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**JEFFREY L. KESSLER**
Partner
(212) 294-4698
jkessler@winston.com

**VIA ECF**

September 7, 2017

The Honorable Magistrate Judge James Orenstein
United States District Court for the Eastern District of New York
225 Cadman Plaza East, Room 1227 South
Brooklyn, NY 11201

Re:   *B & R Supermarket, Inc., et al. v. Visa, Inc., et al.*, Case No. 1:17-cv-02738-MKB-JO

Dear Judge Orenstein:

Pursuant to the Court's direction at the August 24, 2017, conference, Defendants respectfully submit this letter identifying Second Circuit authority in support of their April 7, 2017, Brief in Opposition to Class Certification (Dkt. 460) ("Class Opposition" or "Opp'n"). As detailed below, Second Circuit law supports the denial of class certification on all of the grounds set forth in the Class Opposition and accompanying record.

For the Court's convenience, this letter identifies the supplemental authorities relevant to each section of the Class Opposition in the order that each section appears in the brief.

### Overview of Defendants' Supplemental Authorities

The "party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Certification is proper only if Plaintiffs' Rule 23 evidence withstands "rigorous analysis," *id.*, which may require the court to "resolve[] factual disputes relevant to each Rule 23 requirement," including disputes related to expert testimony. *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41-42 (2d Cir. 2006); Opp'n at 4.

Defendants' Class Opposition details five principal grounds for denying Plaintiffs' Rule 23 motion for class certification. *See* Opp'n at 5-26. Second Circuit law supports denial of Plaintiffs' Rule 23(b)(3) motion on each of these grounds.[1]

---

[1] Authorities in this circuit likewise support denial of Plaintiffs' passing request to certify a Rule 23(b)(2) class, which is unsupported and improper for the reasons set forth in the Class Opposition. *Compare* Opp'n at 4 n.2, *with Jobie O. v. Spitzer*, No. 03 CIV. 8331(CM), 2007 WL 4302921, at *14-15 (S.D.N.Y. Dec. 5, 2007).



I. **Plaintiffs' Motion Rests on an Antitrust Impact and Damages Model That Violates *Comcast* and Rule 23.**

"[A]t the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged anticompetitive effect of the violation." *Comcast*, 133 S. Ct. at 1433 (internal quotation marks omitted). Plaintiffs' class model does not satisfy this controlling test for two reasons, namely: (1) the model sweeps into the proposed class large merchants that Plaintiffs' operative complaint *excludes* because those merchants are alleged "co-conspirators"; and (2) Plaintiffs' class filings presume that no defendant would have shifted fraud liability to merchants but for the alleged conspiracy, whereas their complaint alleges exactly the opposite: that Defendants *would* have shifted liability, just on different timetables. *See* Opp'n at 5-7.

These fundamental conflicts between Plaintiffs' certification model and their liability case alone compel denial of their Rule 23 motion. *See, e.g.*, *Comcast*, 133 S. Ct. at 1433; *Hughes v. The Ester C Co.*, 317 F.R.D. 333, 355 (E.D.N.Y. 2016) (denying certification motion in part because the plaintiffs' damages model was inconsistent with their liability theory); *Ault v. J.M. Smucker Co.*, 310 F.R.D. 59, 67-68 (S.D.N.Y. 2015) (same); *Sicav v. Wang et al.*, No. 12-Civ-6682, 2015 WL 268855, at *6 (S.D.N.Y. Jan. 21, 2015) (emphasizing in denying class certification on predominance grounds that "plaintiffs' definition of the class appears inconsistent with aspects of plaintiffs' pleadings").

II. **Certification Should Be Denied Because Plaintiffs Do Not Show That Common Issues Predominate.**

Even if Plaintiffs could reconcile their class model with their liability theory, their motion does not satisfy Rule 23(b)(3)'s predominance requirement, because numerous individualized issues related to antitrust impact overwhelm any alleged common issues. To satisfy the predominance requirement, Plaintiffs must show that "common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 2 William Rubenstein et al., *Newberg on Class Actions* § 4:49 (5th ed. 2012)); *see* Opp'n at 7-8. This inquiry "trains on the legal or factual questions that qualify *each* class member's case as a genuine controversy . . . [and] tests whether proposed classes are sufficiently *cohesive* to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (emphases added). The predominance inquiry "is a more demanding criterion than the commonality inquiry under Rule 23(a)," *Moore v. PaineWebber*, 306 F.3d 1247, 1252 (2d Cir. 2002) (Sotomayor, J.), and to satisfy it, Plaintiffs must show that "the legal or factual issues that can be resolved through generalized proof are 'more substantial than the issues subject only to individualized proof.'" *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 142 (S.D.N.Y. 2006) (quoting *Moore*, 306 F.3d at 1252).

This test is particularly demanding in antitrust cases, because it requires Plaintiffs to establish predominance with respect to three antitrust elements, namely: "(1) a violation of the antitrust laws by defendants; (2) some injury to plaintiffs' business or property as a result of the



violation (causation or 'impact'); and (3) the amount of damages sustained by the plaintiffs." *In re Industr. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 381 (S.D.N.Y. 1996).

Here, the impact element poses the most formidable challenge in the predominance inquiry. Plaintiffs typically argue that certification is proper because the alleged existence of a conspiracy is a common question and a Rule 23 model need not resolve all individual damages questions. *Cf. Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405-08 (2d Cir. 2015) (noting that damages model need not resolve all individual damages questions but damages issues should still be considered at class certification stage). But that is not enough to show that common questions will predominate over individual ones in determining liability. Plaintiffs "must . . . show that they can prove, through common evidence, that *all class members were . . . injured* by the alleged conspiracy." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 82 (2d Cir. 2015) ("[W]e do expect the common evidence to show all class members suffered *some* injury.") (first emphasis added) (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013)); *see* Opp'n at 7-8. This requirement—which recognizes that the *fact* of injury is a liability element distinct from *quantification* of individual damages—is fatal to Plaintiffs' motion for all the reasons outlined in the Class Opposition. *See* Opp'n at 9-17; *compare, e.g.*, *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (finding predominance where defendants *did not dispute* plaintiffs' ability to prove impact on a class-wide basis).

First, Plaintiffs fail to offer common proof that all (or even most) putative class members were injured by the challenged liability shift chargebacks because their class model shows, at most, common impact on acquirers that may or may not have been passed on to merchants. *See* Opp'n at 9-10. This flaw alone is a barrier to certification. *See Sykes*, 780 F.3d at 82; *In re Digital Music Antitrust Litig.*, No. 06-MD-1780 (LAP), 2017 WL 3037577, at *23 (S.D.N.Y. July 18, 2017) ("Because [Plaintiffs' expert's] model fails to account for price variability in the but-for world, Plaintiffs have failed to show that they can prove by common evidence that all class members were injured by the alleged price-fixing conspiracy."); *Adkins v. Morgan Stanley*, 307 F.R.D. 119, 143 (S.D.N.Y. 2015) ("In short, the question of causation is simply not subject to a classwide proof. This is itself sufficient to establish that common questions do not predominate."), *aff'd*, 656 F. App'x 555 (2d Cir. 2016).

Second, Plaintiffs do not show that all (or even most) class members incurred chargebacks that "'flow[] from that which makes defendants' [alleged] acts unlawful.'" *Freeland*, 238 F.R.D. at 142 (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)); *see* Opp'n at 10-16 (detailing how Plaintiffs' model fails to account for the facts that: (1) some merchants made the business decision not to seek certification before the deadline; (2) independent third parties impacted EMV certification timing; and (3) some chargebacks would have occurred regardless of the liability shift). Here, as in *Freeland*, "[P]laintiffs' generalized proof provides neither a method of establishing that any economic harm was suffered at all *nor a method for preventing recovery for price increases not attributable to defendants' [challenged] practices*," and therefore "does not establish that injury could be proven on a classwide basis." *Freeland*, 238 F.R.D. at 153 (emphasis added); *see also Emilio v. Sprint Spectrum L.P.*, No. 11-CV-3041 (JPO), 2017 WL 3208535, at *10 (S.D.N.Y. July 27, 2017) (denying certification based in part on "fundamental, fact-specific and heterogeneous issues surrounding causation that overwhelm the

3



common questions of law and fact"); *Oscar v. BMW of N. Am.*, LLC, No. 09-Civ-11, 2012 WL 2359964, at *4-9 (S.D.N.Y. June 19, 2012) (denying certification on Rule 23(b)(3) predominance grounds because the "individualized nature of . . . [class members'] purchase decision[s]" and terms of sale meant that plaintiffs did not have a sufficiently common method of proving that BMW's omissions caused all class members to pay more for their cars than they would have paid with proper disclosures).

Third, many of the proposed class members have arbitration agreements with Discover, and the individualized inquiries necessary to identify and litigate these agreements would overwhelm any common issues and defeat predominance and superiority. *See* Opp'n at 17; *see also Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010) ("[W]hile it is well established that the existence of a defense potentially implicating different class members differently does not *necessarily* defeat class certification . . . it is equally well established that courts must consider potential defenses in assessing the predominance requirement." (internal citations omitted)).

### III. Class Certification Should Also Be Denied Because Plaintiffs' But-For World Is Unsupported by Facts or Economic Analysis.

Plaintiffs' alleged proof of predominance, which depends on Dr. Officer's proffered expert opinion, fails for the further reason that it does not account for—and is in fact contrary to—undisputed aspects of the case record. *See* Opp'n at 17-19.

Plaintiffs' proof of common impact turns on Dr. Officer's unsupported assumption that, but for the alleged conspiracy, no network would have instituted a liability shift to incent merchants to accept chip cards. *See id.* at 17. This theory is not only inconsistent with Plaintiffs' operative complaint, *see* Part I *supra*, but also with the record now before the Court. Specifically, the liability shift assumptions in Plaintiffs' class model cannot be squared with undisputed record evidence that: (1) a liability shift of some type was necessary to ensure EMV conversion at the point of sale; and (2) the shifts the networks did adopt were driven by regulatory and market developments (like the Target data breach), as well as merchant demands, *unrelated* to the alleged collusion. *See* Opp'n at 18-21.

"An expert's opinions that are without factual basis and are based on speculation or conjecture" are not admissible. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) (summary judgment stage); *see also, e.g.*, *Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 413 (S.D.N.Y. 2012) (same regarding an opinion that was based on "surmise, estimate, guess, or conjecture" and had "no factual foundation from which to draw"). And a class model based on those types of speculative opinions cannot survive scrutiny under Rule 23. *See, e.g.*, *Freeland*, 238 F.R.D. at 147 (plaintiffs' regression analysis was "so incomplete as to be inadmissible" (quoting *Bazemore v. Friday*, 478 U.S. 385, 400 (1986))); *cf. In re Fresh Del Monte Pineapples Antitrust Litig.*, No. 04-MD-1628RMBMHD, 2009 WL 3241401, at *16-17 (S.D.N.Y. Sept. 30, 2009) (relying on record evidence to reject at summary judgment an expert report that "recite[d] selective facts in the record and then offer[ed]" self-serving "legal conclusions" on the antitrust claims in issue), *aff'd sub nom. Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520 (2d Cir. 2010).

4



## IV. Dr. Officer's Report Is Inadmissible and Therefore Incapable of Showing Injury or Damages on a Class-Wide Basis.

Plaintiffs' class model fails for the related reason that it relies on an expert opinion that is inadmissible under Rule 702, because it is neither "based on sufficient facts or data" nor the product of "reliable principles and methods." Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 592-93 (1993); *see* Opp'n at 22-23.

Dr. Officer's opinions should be excluded under Rule 702, first and foremost, because they cannot be reconciled with Plaintiffs' complaint or the record for the reasons above. *See* Opp'n at 23-24; *Comcast*, 133 S. Ct. at 1433; *Mink Mart, Inc. v. Reliance Ins. Co.*, 65 F. Supp. 2d 176, 180-81 (S.D.N.Y. 1999), ("Nothing in either [*Daubert*] or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999))).

Dr. Officer's testimony should also be excluded because it would not assist a factfinder in reliably identifying any harm traceable to the alleged collusion that supposedly "makes defendants' acts unlawful." *Freeland*, 238 F.R.D. at 142 (quoting *Brunswick Corp.*, 429 U.S. at 489). Some merchants decided not to upgrade to EMV technology at all, others did not timely invest in EMV terminals, and others were unable to get certified only because of conduct by non-conspirator third parties (such as equipment vendors). *See* Opp'n at 24-25. Dr. Officer's opinion does not adequately account for these facts, or provide any reliable common method for identifying and excluding from the proposed class those merchants that did not incur chargebacks proximately caused by the alleged conspiracy. For this reason as well, Dr. Officer's testimony must be excluded and Plaintiffs' motion to certify must be denied. *See Freeland*, 238 F.R.D. at 147.

## V. Plaintiffs' Proposed Class Definition Is Improper.

Plaintiffs ask the Court to certify a class of "Merchants who have been unlawfully subjected to the so-called Liability Shift for the assessment of MasterCard, Visa, Discover, and/or American Express payment card chargebacks, from October 2015 until the anticompetitive conduct ceases." Plaintiffs' Motion for Class Certification (Dkt. No. 433) ("Pls.'s Mot.") at 2. Beyond its failure to exclude government entities the named plaintiffs have no standing to represent (*see* Opp'n at 26), this definition is improper for three reasons.[2]

---

[2] Defendant American Express previously argued that Plaintiffs' proposed class is overbroad because it captures claims that could not be brought in the Northern District of California. *See* Defendant American Express's Opposition to Class Certification (Dkt. No. 463) ("American Express's Opp'n") at 2-3. Because the forum selection clauses in American Express's Card Acceptance Agreements call for venue in the Southern District of New York, the overbreadth problem persists. *See id.*; *cf. In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 116, 126-27 (2d Cir. 2007) (holding that each member of a putative class must satisfy statutory jurisdictional requirements), *overruled on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Wynn v. NYC Hous. Auth.*, 314 F.R.D. 122, 128 (S.D.N.Y. 2016) (finding that a proposed class was overbroad because it included individuals whose claims were barred by the statute of limitations).

Case 1:17-cv-02738-MKB-JO Document 588 Filed 09/07/17 Page 6 of 6 PageID #: 16288



First, Plaintiffs' certification request improperly expands the class definition alleged in the complaint, which was limited to merchants who incurred chargebacks on credit card transactions. *See* Opp'n at 25-26; *Vincent v. Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015) (Because the class definition is the means by which "'the defendants are placed on notice of the nature and scope of the claims asserted against them[,]' [e]xpanding the class [on a certification] motion would be unfair to the defendants." (citation omitted)).

Second, Plaintiffs' motion impermissibly asks the Court to certify a "fail-safe" class in which inclusion in the class can be determined only after a judgment on the merits of liability that Plaintiffs must prove at trial—*i.e.*, a class limited to those merchants "*unlawfully* subjected to the so-called Liability Shift." *See* Pls.'s Mot. at 2 (emphasis added); *see, e.g.*, *Spread Enter., Inc. v. First Data Merch. Servs. Corp.*, 298 F.R.D. 54, 69 (E.D.N.Y. 2014) ("[A] proposed fail-safe class should not be certified because it is unfair to defendants, it prevents an adverse judgment being entered against plaintiffs, and it is unmanageable because the members of the class could only be known after a determination of liability." (internal quotation marks omitted)).

Third, the proposed class definition is unascertainable. A proposed class must be "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 267-69 (2d Cir. 2017). Plaintiffs' pleadings fail this test by defining the class by reference to legal conclusions that Plaintiffs have not (and may never) establish: specifically, the existence of an "unlawful[] . . . Liability Shift," and the date on which Defendants' allegedly "anticompetitive conduct ceases." *See* Pls.'s Mot. at 2. These deficiencies in Plaintiffs' class definition independently compel denial of their motion. *See, e.g.*, *Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015) ("The lack of a defined class period . . . makes the modified class insufficiently definite as a matter of law."); *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund*, 290 F.R.D. 452, 462 (D. Vt. 2013) ("An end date for the class period is necessary so the class members can be 'presently ascertained.'. . . They must be identified and provided notice.").[3]

Respectfully submitted,

*/s/ Jeffrey L. Kessler*                                          Cc: All Counsel (via ECF)

---

American Express also objects to the proposed California and Florida state law classes because they lack class representatives who are able to pursue claims against American Express under California or Florida state law in this Court. *See* American Express's Opp'n at 3-4; *Marisol A. v. Giuliani*, 126 F.3d 372, 378-79 (2d Cir. 1997) (noting that "each subclass [must be] tied to one or more suitable representatives").

[3] Another district court recently found a putative antitrust class was not ascertainable in part because the class definition contained vague criteria and no definitive end date. *See In re Domestic Drywall Antitrust Litig.*, No. 13-MD-2437, 2017 WL 3700999, at *10 (E.D. Pa. Aug. 24, 2017) ("In addition, IPPs include in their definition of a class member anyone who is an 'end user' of drywall 'to the present time.' This open-ended timeframe is not warranted here, and further complicates ascertainability . . . . Moreover, the phrase is vague – does it end when the complaint was filed? At class certification? Or at some later time? It was the responsibility of counsel for IPP to limit the class in an ascertainable way, and by including the open-ended timeframe in the definition, IPPs have provided an additional reason to find that the class is not ascertainable.").

6