

600 B Street, Suite 1900
San Diego, CA 92101
619.525.3990 *phone*
619.525.3991 *fax*
www.robbinsarroyo.com

September 7, 2017

**VIA ECF**

Honorable James Orenstein, U.S.M.J.
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East, Room 1227 South
Brooklyn, NY 11201

    Re:    ***B&R Supermarket, Inc., et al. v. Visa, et al.*, Case No. 1:17-cv-02738-MKB-JO**
           **Plaintiffs' Supplemental Brief in Support of Motion for Class Certification**

Dear Judge Orenstein:

Plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket) (collectively, "Plaintiffs") respectfully submit this letter to briefly address the issue raised by defendant Discover Financial Services ("Discover") regarding supposed differences between Second and Ninth Circuit law as to class certification.

Plaintiffs also briefly address several other issues related to class certification. First, Plaintiffs wish to make clear that they are no longer seeking to certify a class pursuant to subsection (b)(2) of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"), as stated originally in the Motion for Class Certification. Motion for Class Certification ("Motion") (Dkt. 425) at 2.

Second, as Robbins Arroyo LLP ("Robbins Arroyo") is now taking a lead position in the litigation, following the able representation from Robbins Geller Rudman & Dowd LLP ("RGRD"), Plaintiffs also briefly address their ability to "vigorously prosecute" the interests of the class, which was previously addressed in the Motion filed by RGRD. Motion at 13 (citing *In re Static Random Access (SRAM) Antitrust Litig.*, No. C 07-01819 CW, 2008 U.S. Dist. LEXIS 107523, at *40 (N.D. Cal. Sept. 29, 2008)). Robbins Arroyo has been involved in this case and will continue to

vigorously represent the interests of Plaintiffs and any certified class, drawing upon over a decade of experience litigating complex actions in state and federal courts across the country, for which the firm has been recognized. *See, e.g.*, Robbins Arroyo LLP Firm Resume[1] at 7 (*Carmona v. Bryant, et al.*, Case No. CV-OC-0601251, slip op. at 23, 27 (Idaho Dist. Ct.-Ada Cnty. Jan. 23, 2007) (presiding judge recognizing that "[c]lass counsel [Robbins Arroyo] has a nationwide reputation for handling shareholder derivative litigation, various class actions, and complex litigation.")), 5 (Transcript of Proceedings at 19, 22, *In re Venoco, Inc. S'holder litig.*, C.A. No. 6825-VCG (Del. Ch. Oct. 5, 2016) (In a case consolidating eight related class actions, where Robbins Arroyo served as co-lead counsel with a large executive committee and which settled after nearly four years of litigation and extensive discovery, the court recognized at the final approval hearing that the settlement was "very fortunate for the class" and that Robbins Arroyo served as "excellent counsel.")).

Third, anticipating a potential request for an evidentiary hearing as part of the Court's review of Plaintiffs' Motion, Plaintiffs respectfully submit that there is no need for what has already occurred. First, the parties have deposed each other's experts. Thus, defendants Visa, Mastercard,[2] and Discover's contention that "limited examination of the experts would allow for a more thorough inquiry into the experts' competing conclusions" (Dkt. 489 at 1-2) is wrong—the parties each had a chance to **thoroughly** review the expert reports, **then thoroughly** depose the experts; nothing more is needed. A more thorough analysis of the experts' conclusions is not needed, and, to the extent

---

[1] Attached hereto as Exhibit 1.

[2] "Visa" refers collectively to defendants Visa Inc. and Visa U.S.A. Inc. "Mastercard" refers to defendant MasterCard International Incorporated. Visa, MasterCard, Discover, and defendant American Express Company are referred to collectively herein as "Defendants."

they conflict, "it is for the jury to evaluate this conflicting evidence and to determine what weight to give to the expert's conclusions." *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 384 (S.D.N.Y. 1996) (citation omitted). Second, the parties have briefed the issues thoroughly, and the Motion was considered fully briefed before this action was transferred; thus, the parties have had a chance to articulate their thoughts on the other side's experts. An evidentiary hearing has the potential to expand into a mini-trial and could potentially expand to include other witnesses, depending on the testimony of the experts. This added burden would have no value, given that the parties have already had plenty of opportunity to explore, review, and challenge the experts' opinions, reports, and conclusions.

### *The Law Discover Cites Highlights, at Most, a Distinction Without a Difference*

Discover has vaguely asserted that there are "relevant distinctions between Second and Ninth Circuit law" as to class certification. August 21, 2017 Joint Status Report (Dkt. 583) at 9. To be clear, Discover has only raised an argument with respect to *one* of the prerequisite factors to be considered for class certification—even Discover is not suggesting all the factors differ. The sole "difference" between Second and Ninth Circuit law with respect to class certification that Discover claims exists, is not a difference at all, and, at best, is merely a difference in language used, not in the law. Indeed, not all Defendants agree with Discover that meaningful distinctions exist. Mastercard and Visa have both taken the position that there is no need for further briefing as they "believe that class certification has been fully briefed." *Id.* at 13.

Discover asserts that there is a "requirement under Second Circuit law that Plaintiffs demonstrate ascertainability" (*id.* at 9), relying solely on *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015). However, a recent decision by the Second Circuit makes clear that there is no

meaningful difference between Second and Ninth Circuit law on ascertainability. *In re Petrobras Secs.*, 862 F.3d 250, 265-69 (2d Cir. 2017). *Petrobras* makes clear that *Brecher* goes nowhere near as far as Discover contends, and only requires that "a proposed class [be] defined using objective criteria that establish a membership with definite boundaries," a "modest threshold requirement [that] will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 269. The *Petrobras* court also unequivocally stated that "we decline to adopt a heightened ascertainability theory that requires a showing of administrative feasibility at the class certification stage." *Id.* at 265. In doing so, the court stated that "***we join*** a growing consensus that now includes the Sixth, Seventh, Eighth, and ***Ninth Circuits***" and cites cases in support (*id.* (emphasis added))—including the very case that Discover cites to supposedly demonstrate the difference between the Second and Ninth Circuits, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017) (holding that "the language of Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification").

The mere requirement that a class be sufficiently definite is not different than Ninth Circuit law, though the Ninth Circuit does not refer to that issue as one of "ascertainability." In *Briseno*, the Ninth Circuit specifically addressed the *Brecher* decision, and noted that "some courts use the word 'ascertainability' to deny certification of classes that are not clearly or objectively defined." *Briseno*, 844 F.3d at 1124 n.3. It noted that the *Brecher* court held the class was too indefinite because plaintiffs defined the class as beneficial holders of a bond series, without reference to the time owned. *Id.* While the Ninth Circuit notes that it has not adopted an ascertainability requirement, it still "addresse[s] the types of alleged definitional deficiencies other courts have

referred to as 'ascertainability' issues ... through analysis of Rule 23's enumerated requirements." *Id.* at 1124 n.4 (citation omitted). This squares with the Second Circuit's description of the issue in *Petrobras*, where it stated that there need only be a "focused target for litigation" and a "clear sense of who is suing about what." *Petrobas*, 862 F.3d at 269. The Second Circuit concluded that "the ascertainability requirement merely gives name to a particularly vexing type of class defect that would cause a proposed class to founder on the shoals of predominance, superiority, or both." *Id.* at 269 n.20. Thus, there is no practical difference between the Second and Ninth Circuits with respect to "ascertainability."

                                                          Sincerely,

                                                          */s/ George C. Aguilar*

                                                          George C. Aguilar

                                                          *Attorney for Plaintiffs*

cc:    All Counsel of Record (via ECF)

1205582