

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

ELIZABETH P. PAPEZ
Partner
202-282-5678
EPapez@winston.com

**VIA ECF**

January 8, 2018

Honorable James Orenstein
225 Cadman Plaza East, Chambers 1227 South
Brooklyn, NY 11201

Re: *B & R Supermarket, Inc., et al v. Visa, Inc. et al*, Case No. 1:17-cv-02738-MKB-JO

Dear Judge Orenstein:

On behalf of Defendant Discover Financial Services ("Discover"), I write to submit the attached supplemental authority in support of Discover's Motion for Judgment on the Pleadings Pursuant to Federal Rule of Civil Procedure 12(c) ("Motion"). (Dkt. 611.) The brief was submitted in the United States Supreme Court by the U.S. Department of Justice as Respondent supporting Petitioners in *Ohio, et al. v. American Express Co., et al.*, No. 16-1454, on December 7, 2017 ("DOJ Brief"). When Discover filed its Motion, the Supreme Court had not yet granted the petition for certiorari and the United States had not joined the petition. (*See* Dkt. 611-1, Mot. at 20 n.14.)

The brief that the DOJ subsequently submitted on the merits is judicially noticeable and directly relevant to Discover's pending Rule 12(c) motion. Discover's current Rule 12(c) motion, like its Rule 12(b) motion in 2016, seeks dismissal because the complaint does not plead any facts plausibly suggesting that Discover conspired with its rivals on the merchant chip transition and accompanying Fraud Liability Shift ("FLS") date at issue in this case.

Plaintiffs' response has always been that: (i) Discover had the same transition date as the other networks; and (ii) that must reflect a conspiracy because, absent collusion, Discover would have "done something different" and "broken ranks" on the liability shift date by offering merchants a different date or FLS terms in exchange for merchants "steering" customer business to Discover by, for example, providing customers with price breaks, fast checkout lanes, or other rewards to pay with Discover cards at the point of sale. (Dkt. 342, Hrg. Tr. 56:22–25; Dkt. 316 at 36; AC ¶ 9.) Indeed, this "steering" rationale was the lynchpin of the California court's ruling denying Discover's Rule 12(b)(6) motion last year:

> Unlike the other three, Discover claims it never had anti-steering rules and in fact had been a victim of steering. But this underscores all the more the anomaly of Discover marching in lockstep with the big three in implementing the liability shift. *Put differently, the Liability Shift should have been a fine opportunity for Discover*

> *to delay its implementation of the Liability Shift — especially in light of extensive delays in certifications — and thereby reap a competitive windfall as merchants steered customers to Discover cards. That Discover turned its back on this opportunity is hard to explain and is suggestive of collusion.*

(*See* Dkt. 346 at 15 (internal citations omitted and emphasis added); *see also* Dkt. 342, Hrg. Tr. 14:16-7 ("Plus factor number one is the problem that the networks have . . . about steering.").

The attached DOJ Brief cites merchant testimony and court findings from a government enforcement action that *directly contradict* this "steering" argument for keeping Discover in this case. Specifically, it validates Discover's argument that steering was *not possible* at the time Discover adopted its chip conversion and FLS date because merchants had to abide by other networks' "anti-steering" rules:

> *The district court's findings confirm that, if allowed to do so, merchants would seek to minimize th[eir] substantial [card transaction] costs by steering their customers towards less expensive cards. . . . [N]umerous merchants—including Enterprise, Sears, Home Depot, IKEA, Crate & Barrel, and Hilton—"testified that they would, in fact, steer if given the opportunity." . . . But by preventing merchants from shifting transactions to lower-cost (or otherwise preferred) networks, the [anti-steering] rules largely eliminate any economic incentive for other networks to take that step.*

(DOJ Br. at 27 (internal citations omitted and emphasis added); *see also id.* at 29 (explaining that the anti-steering rules at issue prohibit merchants from "engag[ing] in steering efforts with respect to any brand of credit cards," which accounts for "more than 90% of all credit-card spending"); *id.* at 33 (noting that historically "[t]he other networks' anti-steering rules thwarted Discover's attempt to translate its lower fees into greater market share.").)

These points—like the new merchant complaints in MDL 1720 that do *not* name Discover in their chip transition allegations and *concede* that steering was *not possible* when the transition dates were adopted (Dkt. 611-1 at 11-12; Dkt. 611-15, Ex. 1 to Reply Br.)—"strip" the "steering" allegations in Plaintiffs' complaint of the presumption of truth under Rule 12. (Dkt. 611-1 at 19-22 (citing, *e.g.*, *Perry v. NYSARC, Inc.*, 424 F. App'x 23 (2d Cir. 2011); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001)); Dkt. 611-14 at 8-10 (same).) And without these allegations, the Complaint pleads no plausible factual basis for its conspiracy claims

January 8, 2018
Page 3

against Discover, and dismissal is therefore warranted on the Rule 12(c) record currently before the Court.

                                          Respectfully,

                            By:    */s/ Elizabeth P. Papez*
                                       Elizabeth P. Papez


cc:      Counsel of record via ECF