UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
B&R SUPERMARKET, et al.,                    REPORT AND
                Plaintiffs,              RECOMMENDATION
           - against -
VISA, INC., et al.,                         17-CV-2738 (MKB) (JO)
                Defendants.
------------------------------------------------------------X

James Orenstein, Magistrate Judge:

Defendant Discover Financial Services ("Discover") moves under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. *See* Docket Entry ("DE") 611. Upon a referral from the Honorable Margo K. Brodie, United States District Judge, I now make this report and, for the reasons set forth below, respectfully recommend that the court deny the motion.

I.     Background

I assume the reader's general familiarity with the history of both this case and *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 05-MD-1720 (MKB) (JO) (the "MDL"). On March 8, 2016, the plaintiffs filed in the Northern District of California a putative class action complaint against four payment card networks (including, as relevant here, Discover) and other entities involved in the processing of payment card transactions, asserting antitrust claims under federal and state law. DE 1. Briefly stated, the plaintiffs' claims arise from the payment card industry's shift from cards that use magnetic stripes to those that use embedded electronic chips. In particular, the plaintiffs assert that the defendants conspired, in violation of applicable antitrust laws, to create a "Liability Shift" – that is, a shift of liability for fraudulent payment card transactions from the banks that would otherwise bear such liability to merchants such as the plaintiffs. *See generally* DE 346 (order resolving previous motion to dismiss) ("Opinion") at 2-6.

The plaintiffs amended their claims by filing the currently operative pleading on July 15, 2016. DE 291.[1] Discover moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) on August 5, 2016, DE 305, and the other defendants simultaneously did likewise. *See* DE 301; DE 303. In the Opinion issued on September 30, 2016, the court denied Discover's motion as well as those of the other three networks (Visa, MasterCard, and American Express) and granted dismissal to the remaining defendants. As relevant here, the court held that the plaintiffs had plausibly alleged Discover's role in the Liability Shift conspiracy. Because the resolution of that motion informs the one now before the court, I summarize here the portion of the Opinion that explained why the claims against Discover should proceed.

The court began its analysis by noting that allegations of competitors' parallel conduct alone do not suffice to plead an antitrust conspiracy; instead the plaintiff must plausibly allege "sufficient facts regarding the context of parallel conduct to raise a suggestion of outright collusion." Opinion at 8-9 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *In re Musical Instruments & Equip. Antitrust Litig.*, 798 F.3d 1186, 1194 (9th Cir. 2015)). The court further noted that such "[f]actual allegations 'must be enough to raise a right to relief above the speculative level.'" *Id.* at 9 (quoting *Twombly*, 550 U.S. at 545). The court then observed that one permissible way to rise above such speculation is to allege "circumstantial evidence in the form of 'certain "plus factors,"' which help distinguish 'permissible parallel conduct from impermissible conspiracy.'" *Id.* (quoting *In re Musical Instruments*, 798 F.3d at 1194). A court considering such circumstantial evidence must weigh each "plus factor" individually and all of them cumulatively to determine their sufficiency. *Id.* (same).

---

[1] Two plaintiffs filed the initial Complaint, and three more joined them as intervenors in filing the Amended Complaint. Not all of those parties remain in this action, but the procedural history relating to their claims is not relevant to the instant motion and I do not summarize it here.

The court then went on to consider the plaintiffs' claim that Visa, MasterCard and American Express had entered into the alleged Liability Shift conspiracy. In finding the claims sufficient to withstand dismissal, the court found that the plaintiffs had pleaded "both direct and circumstantial evidence of [such] a conspiracy[.]" *Id.* Starting with the direct evidence of a conspiracy, the court cited statements by high-ranking officers of both Visa and MasterCard from which "a jury could find that defendants 'got in a room' and fixed a common penalty [for merchants] effective on a common date." *Id.* at 10-11 (quoting Am. Compl. ¶ 141 (statement of Visa Chief Executive Officer) and citing Am. Compl. ¶ 120 (statement of MasterCard Vice President)). Only after discussing this direct evidence of a conspiracy did the court go on to consider that the "plaintiffs have also alleged certain 'plus factors' that, when considered cumulatively, nudge the alleged conspiracy from conceivable to plausible as to Visa, MasterCard, and American Express." *Id.* at 11. The court cited four such circumstantial allegations and concluded that they plausibly alleged a conspiracy. *Id.* at 11-14.

The court then went on to consider separately the conspiracy claim against Discover. Here again, the court found that the plaintiffs had "sufficiently [pleaded] both direct and circumstantial evidence of a conspiracy[.]" *Id.* at 14. The court explicitly held that the statements by Visa and MasterCard officers that were direct evidence of a conspiracy involving those networks also "provide direct evidence of a conspiracy involving Discover." *Id.* Only after finding that such direct allegations of a conspiracy did the court go on to consider the extent to which the plus factors it had already considered constituted sufficient circumstantial evidence of Discover's role in the claimed conspiracy. Of the four factors that sufficed to show the involvement of the other networks, the court concluded that three applied equally to Discover.

> *First*, there was a common motive to conspire as to a uniform implementation of the Liability Shift given the impending demise of the anti-steering rules. *Second*, Discover declined to offer concessions in the form of a reduced interchange fee or a delayed

3

start date to compete for business. This is so despite the roll-back of the anti-steering rules, which would have permitted merchants to steer customers to Discover had it offered concessions. *Third*, the amended complaint alleges Discover had opportunities to collude (like the other network defendants) through EMVCo, which it jointly owns, and Smart Card Alliance meetings in 2011.

*Id.* at 14-15.[2]

The court added that one of Discover's arguments made the circumstantial evidence even stronger than the comparable allegations about the other networks:

Unlike the other three, Discover claims it never had anti-steering rules and in fact had been a victim of steering. But this underscores all the more the anomaly of Discover marching in lockstep with the big three in implementing the liability shift. Put differently, the Liability Shift should have been a fine opportunity for Discover to delay its implementation of the Liability Shift – especially in light of extensive delays in certifications – and thereby reap a competitive windfall as merchants steered customers to Discover cards. That Discover turned its back on this opportunity is hard to explain and is suggestive of collusion.

*Id.* at 15. Thus, as with the claims against the other networks, the court held that the plaintiffs had successfully pleaded a conspiracy claim against Discover through allegations of both direct evidence of an unlawful agreement and the circumstantial evidence of three plus factors that also plausibly alleged the existence of joint, rather than merely parallel, conduct.

Following the court's resolution of the dismissal motions, on March 20, 2017, the Visa and MasterCard defendants moved to transfer the case to this court because of the overlap of issues between this case and the MDL. DE 437. Discover did not oppose the motion but did voice the concern that it risked "inconsistent judgments and prejudice" if this case proceeded "in parallel" with the MDL. *See* DE 450 at 1. The plaintiffs likewise did not oppose the proposed transfer, noting that they contemplated the coordination of discovery with the discovery process in the MDL, but not

---

[2] As the court explained, the term "anti-steering rules" refers to network rules that the plaintiffs in the MDL and other litigation complained "had prohibited merchants from steering customers to use certain cards or from adding a surcharge for use of certain cards." *Id.* at 5; *see also id.* at 5 n.4.

4

that this case would be consolidated with the MDL actions. DE 492 at 1-2. The court ordered the transfer on May 4, 2017. DE 518. In doing so, the court acknowledged the troubling "possibility of inconsistent litigation positions between this action and the New York MDL" but concluded "that such potential abuses would be easier to police in the Eastern District of New York." *Id.* at 2.

Discover then filed the instant fully briefed motion for judgment on the pleadings on November 2, 2017. *See* DE 611-1 ("Memo."); DE 611-13 ("Opp."); DE 611-14 ("Reply"). The court referred the motion to me by order dated November 3, 2017. I heard argument on January 23, 2018. *See* DE 635 (minute entry); DE 637 (transcript) ("Tr.").

II. Discussion

    A. Judgment on the Pleadings

The standard that Discover failed to satisfy in its first, unsuccessful motion to dismiss under Rule 12(b)(6) also applies to its latest motion under Rule 12(c). Specifically, the court must accept all of the Amended Complaint's non-conclusory factual allegations as true, drawing all reasonable inferences in the plaintiffs' favor, and determine whether those allegations suffice to support a reasonable inference that Discover is liable for the claimed misconduct. *See, e.g.*, *Milton v. Wazed*, 2018 WL 2074179, at *5 (E.D.N.Y. Mar. 30, 2018) (citing cases); *see also Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (same standard applies to motions under Rule 12(b)(6) and 12(c)).

Discover has already litigated and lost the argument that the Amended Complaint fails to satisfy that standard. Thus, in this second challenge to the same pleading, Discover acknowledges that there must be some reason, based on developments after the Opinion denying the first dismissal motion, for the court to abandon the presumption that the pleading's non-conclusory factual allegations are true. *See* Tr. at 8 (Discover's counsel conceding the proposition that "there

5

would be no colorable basis for a judgment on the pleadings … if all that had happened was that [this case] was transferred over [the plaintiffs'] opposition").

Discover predicates its latest motion on the assertion that the court may properly take notice of several things that, in its view, sufficiently undermine the Amended Complaint's allegations. In particular, it relies on judicial findings in other cases (including several that predated the Opinion resolving the first dismissal motion), and decisions and pleadings in the MDL by parties other than the plaintiffs in this action. *See* Memo. at 14. A court may rely, in certain limited circumstances, on extrinsic facts to dismiss an otherwise facially sufficient complaint. *See, e.g., Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004). As discussed below, however, no such circumstances exist here.

      B.      <u>Materials Cited in the Amended Complaint</u>

Discover asks the court to take notice of findings and factual assertions in cases to which the Amended Complaint refers. *See* Memo. at 5-6 (citing Am. Compl. ¶¶ 147-49, 249-51, 257-59). "The [Amended Complaint's] incorporation of [the cited] cases – all of which concern efforts by Visa and MasterCard to preserve their market dominance at Discover's expense – undercuts the claim that Discover was one of 'the Networks' that would conspire to 'maintain' the market *status quo* by avoiding competition." Memo. at 6. As a threshold matter, the plaintiffs correctly point out that Discover made the same argument in its first motion to dismiss, and therefore may not seek to resuscitate it here. *See* Opp. at 3 (citing similar arguments in Discover's earlier motion).

Even if the court considers such arguments anew, it should reject them on the merits. Discover's argument is essentially that having either been ignored as a potential defendant by previous antitrust plaintiffs who sued Visa and MasterCard, or been affirmatively characterized as a victim of those other networks' prior anticompetitive conduct, it cannot be the case that Discover would have colluded with its rivals as the plaintiffs now claim. The argument fails as a matter of

6

logic: there is no inherent contradiction between the assertions in prior lawsuits and the current allegation that Discover would and did enter into an unlawful agreement with the other Networks.

One of the cases that the plaintiffs cite in their pleading, and on which Discover relies in its current motion is *United States v. Am. Exp. Co.*, 88 F. Supp. 3d 143 (E.D.N.Y. 2015) ("*AmEx*"), *rev'd and remanded*, 838 F.3d 179 (2d Cir. 2016), *aff'd sub nom. Ohio v. Am. Express Co.*, 138 S. Ct. 2274 (2018)). *See* Am. Compl. ¶¶ 258-59. In short, Discover seizes on the *AmEx* court's findings that "Discover has 'only a 5.3% share of the network services market'" (which allows the inference that "merchants can profitably drop Discover if the network overplays its hand") and that American Express's anti-steering rules harmed Discover. Memo. at 6-7, 17 (quoting *AmEx*, 88 F. Supp. 3d at 207, 214). As with Discover's reliance on other cases cited in the Amended Complaint, its reliance on the proposition that Discover would not conspire with the other networks simply because it has a smaller share of a market rests on a logical fallacy. Discover might plausibly do so, among other reasons, to avoid losing market share to the other networks by failing to join them in the Liability Shift conspiracy. At a more fundamental level, the findings on which Discover now seeks to rely are a nullity: the Second Circuit reversed the district court decision in *AmEx*, and the Supreme Court later affirmed that reversal. As a result, the *AmEx* opinion is not a cognizable source of any factual findings. Similarly misguided is Discover's attempt to have the court take notice of a memorandum that the government submitted to the Supreme Court in the *AmEx* litigation. *See* DE 625. Although the court may certainly take notice that the brief was filed, it contains only argument, and not any factual matter that could conceivably contradict the allegations in the Amended Complaint. To the extent the cited memorandum in turn cites testimony taken out of context, that is not the kind of evidence of which the court may take notice.

### C. MDL Filings and the Transfer Record

Discover further argues that decisions and party filings in the MDL, as well as the plaintiffs' post-Opinion filings in this case relating to the transfer of venue, also strip key allegations in the Amended Complaint of their presumptive truth. As explained below, I disagree. To be sure, the Amended Complaint does refer to the pending litigation in the MDL. *See* Am. Compl. ¶¶ 254-57. But that fact, by itself, is of no moment: in considering the instant motion, the court may take notice of documents that the Amended Complaint does not cite only to the extent that such documents are integral to the pleading. *See L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011). None of the MDL documents on which Discover relies meet that requirement, and in any event none contradict the plaintiffs' allegations.

For example, Discover would have the court conclude that differing theories advanced by the plaintiffs in this case and those in the MDL are a basis for dismissal. It writes that "the merchants that Plaintiffs purport to represent here filed (through the same counsel representing them in both cases) MDL class claims that *expressly contradict* the allegations underlying the complaint and the Rule 12(b) ruling against Discover in this action." Memo. at 3 (emphasis in original). Discover then acknowledges that the plaintiffs have since engaged substitute counsel. *See id.* But Discover contends that the change of counsel does not matter: "The merchant Plaintiffs in this case cannot have their cake and eat it too by pleading inconsistent allegations in the MDL, relying on those pleadings in a successful request for transfer, and then asking this Court to turn a blind eye to the resulting conflict (and Rule 12 consequences) simply because they have a new lawyer." *Id.* at 3-4.

I agree that the change of counsel does not alter the analysis, but disagree in other respects. Discover's argument is deeply flawed and misleading. As it acknowledged at oral argument on the motion, it is simply untrue that the plaintiffs in this case have any responsibility for the pleadings filed by the MDL plaintiffs. The parties are different, notwithstanding that the plaintiffs in this case

8

may qualify as absent members of the putative classes that the MDL plaintiffs seek to represent. *See* Tr. at 7 (Discover's counsel agreeing to "take … as true" the proposition that "the named parties whose pleading you wish to dismiss had nothing to do with filing the new sealed MDL Complaint"). Thus, contrary to Discover's assertion, the plaintiffs here are not "pleading inconsistent allegations in the MDL." Memo. at 3. Nor is it true that the plaintiffs in this case made "a successful request to transfer" the case to this court. *Id.* To the contrary, it was Discover's co-defendants who made that successful request, and it succeeded because both Discover and the plaintiffs took identical positions on the motion: both told the court that they did not object to it.

  Moreover, even if the court were to take notice of the allegations in extrinsic pleadings by other parties, it would not advance Discover's cause. As Discover acknowledges, "the Court cannot notice such documents for 'the truth of the matters asserted[.]'" Memo. at 13 (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). After acknowledging that controlling law, Discover asserts, without citing any authority, that the court can nevertheless "take judicial notice of *contradictions* between such documents and a complaint for purposes of resolving a Rule 12 motion." *Id.* (emphasis in original). Such argument is nonsensical: a statement that is evidence only of the fact that someone said it (rather than cognizable evidence of the truth of the stated proposition) cannot contradict the content of a substantive allegation. Evidence that A said, "It is not raining" does not contradict an allegation that "it is raining" – it can only contradict the proposition that A did not make such a statement. Thus, whether because the rule Discover posits does not exist or because it is irrelevant to the dispute before the court, its reliance on a purported contradiction between the Amended Complaint and extrinsic statements not deemed true is wholly misplaced.

  Finally, although the court need not reach these matters, there is an additional reason why Discover's reliance on extrinsic pleadings is unpersuasive. Even if such statements could be considered for their truth, they do not contradict the Amended Complaint's assertion of Discover's

9

participation in the Liability Shift conspiracy for reasons the plaintiffs ably explain at great length in their memorandum opposing the instant motion. *See* Opp. at 14-20. I do not burden this Report with a recapitulation of those arguments because, while I agree with them, I conclude that they are unnecessary to the resolution of the motion.

   D.  <u>Equity and Efficiency</u>

Finally, Discover argues that granting judgment on the pleadings will promote both equity and the efficient resolution of the broader litigation that includes the MDL. *See* Memo. at 22-24. It contends that the court should either deny the plaintiffs' motion for class certification[3] or grant the instant motion to "mitigate class complications that could significantly delay final resolution of this case and the MDL, as well as limit the 'possibility of parties benefitting by taking inconsistent positions' across actions." Memo. at 24 (quoting *Heartland Payment Sys., Inc., v. Verifone Israel Ltd.*, 2010 WL 1662478, at *5 (N.D. Cal. Apr. 22, 2010)). I respectfully disagree. The court should resolve any motion for class certification on its merits, and any issues relating to the definition of any class or sub-class should be decided in that context – but the possibility that doing so may prove to be complex is no reason to dismiss the claims of the named plaintiffs. Regardless of the separate proceedings in the MDL, the plaintiffs in this case are entitled to litigate the merits of their well-pleaded claims. None of the cases that Discover cites in this regard holds or even remotely suggests that a court may dismiss an otherwise viable claim because allowing the case to proceed would subject the parties and the court to complex or lengthy litigation. *See* Memo. at 24 (citing *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085,

---

[3] The court denied class certification without prejudice on March 11, 2018. DE 643. The plaintiffs renewed their motion for such relief on July 16, 2018. *See* DE 653; DE 654.

1095 (2d Cir. 1995); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001); *Heartland Payment Sys., Inc.*, 2010 WL 1662478, at *5).

III.   Recommendation

For the reasons set forth above, I respectfully recommend that the court deny the motion for judgment on the pleadings.

IV.   Objections

Any objections to this Report and Recommendation are due by August 3, 2018. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

SO ORDERED.

Dated:  Brooklyn, New York
         July 20, 2018

                                                                                                         /s/
                                                                                           James Orenstein
                                                                                           U.S. Magistrate Judge