UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------

B & R SUPERMARKET, INC., d/b/a Milam's
Market, GROVE LIQUORS LLC, STROUK
GROUP LLC, d/b/a Monsieur Marcel, PALERO
FOOD CORP. and CAGUEYES FOOD CORP.,
d/b/a Fine Fare Supermarket,

                Plaintiffs,

      v.

MASTERCARD INTERNATIONAL INC., VISA
INC., VISA U.S.A. INC., DISCOVER
FINANCIAL SERVICES and AMERICAN
EXPRESS,

                Defendants.

----------------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-02738 (MKB) (JO)

MARGO K. BRODIE, United States District Judge:

      Plaintiffs B & R Supermarket, Inc., doing business as Milam's Market ("B & R

Supermarket"), Grove Liquors LLC, Strouk Group LLC, doing business as Monsieur Marcel

("Monsieur Marcel"), and Palero Food Corp. and Cagueyes Food Corp., doing business as Fine

Fare Supermarket ("Fine Fare Supermarket"), commenced this class action against Defendants

MasterCard International Inc. ("MasterCard"), Visa Inc., and Visa U.S.A. Inc. (collectively

"Visa"), Discover Financial Services ("Discover"), and American Express, alleging violations of

the Sherman Act, 15 U.S.C. §§ 1 and 3, and state antitrust and consumer protection laws of

California, Florida, and New York.  Plaintiffs' claims arise out of Defendants' process for

adopting EMV technology[1] for card transactions in the United States.

On November 2, 2017, Discover moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Mot. for J. on the Pleadings ("Discover Mot."), Docket Entry No. 611-1.) On November 3, 2017, the Court referred the motion to Magistrate Judge James Orenstein for a report and recommendation. (Order dated November 3, 2017.) By report and recommendation dated July 20, 2018, Judge Orenstein recommended that the Court deny Discover's motion for judgment on the pleadings (the "R&R"). (*See* R&R, Docket Entry No. 655.) On August 3, 2018, Discover filed its objections to the R&R. (Discover Obj. to R&R ("Discover Obj."), Docket Entry No. 657.) Plaintiffs responded to Discover's objections on August 17, 2018. (Pls. Resp. to Discover Obj. ("Pls. Resp."), Docket Entry No. 658.) For the reasons discussed below, the Court adopts the R&R in its entirety and denies Discover's motion.

## I.  Background

The Court assumes familiarity with the underlying facts as detailed in the R&R and provides only a summary of the pertinent facts and procedural background.

### a.  Procedural background

Plaintiffs commenced this action in March of 2016 in the United States District Court for the Northern District of California, where it was assigned to the Honorable William Haskel Alsup. (Compl., Docket Entry No. 1.) On July 15, 2016, Plaintiffs filed an Amended

---

[1] EMV technology is a global standard for credit cards that uses computer chips and chip readers to authenticate (and secure) chip-card transactions. (Am. Comp. ¶ 61, Docket Entry No. 291.) It allows for secure transmittance of "dynamic" card information by creating a unique electronic signature for each transaction. Prior to the adoption of EMV technology, payment cards relied entirely on magnetic stripes, which can only communicate "static" information such as the card number and expiration date. (*Id.*)

Complaint.[2]  (Am. Compl., Docket Entry No. 291.)  Defendants, including Discover, moved to dismiss the Amended Complaint.  (Defs. Mot. to Dismiss, Docket Entry No. 303; Discover Mot. to Dismiss, Docket Entry No. 305.)  On September 30, 2016 (the "September 2016 Order"), Judge Alsup dismissed the claims against all Defendants other than those against MasterCard, Visa, Discover, and American Express.  (September 2016 Order, Docket Entry No. 346.)

On March 20, 2017, Defendants Visa and Mastercard moved to transfer the case to this Court pursuant to 28 U.S.C. § 1404(a).  (Mot. to Transfer, Docket Entry No. 437.)  On April 3, 2017, Discover filed its "statement of non-opposition" to the transfer motion.  (Discover Statement of Non-opp'n, Docket Entry No. 450.)  On the same date, Plaintiffs filed their opposition to the transfer motion.  (Pls. Opp'n to Mot. to Transfer, Docket Entry No. 446.)  However, on April 24, 2017, Plaintiffs changed their position, and filed a non-objection letter.  (Pls. Non-opp'n to Mot. to Transfer, Docket Entry No. 492.)  On April 27, 2017, Judge Alsup held a hearing on the motion.  (Transfer Mot. Hr'g Tr., Docket Entry No. 509.)  On May 4, 2017, Judge Alsup ordered the case transferred to this Court pursuant to 28 U.S.C. § 1404(a), citing judicial efficiency and Discover's concerns about potentially inconsistent liability theories alleged by putative class members in this case and the cases consolidated in the Multi-District-Litigation ("MDL"), *In Re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 05-MD-1720.  (Order Granting Mot. to Transfer dated May 4, 2017, Docket Entry No. 518.)

---

[2]  The Amended Complaint named the following additional Defendants:  Bank of America, N.A., Barclays Bank Delaware, Capital One Financial Corporation, Chase Bank USA, National Association, Citibank, N.A., Citibank, N.A., PNC Bank, National Association, USAA Savings Bank, U.S. Bancorp National Association and Wells Fargo Bank, N.A. (collectively, the "Issuing Banks"), and EMVCo.  (Am. Compl.)

### b. Plaintiffs' claims

Plaintiffs' claims arise out of Defendants' process for adopting EMV technology for card transactions in the United States. Plaintiffs allege that Defendants conspired by entering into an agreement to: (1) adopt the same policy for shifting liability from banks to merchants ("Liability Shift") for fraudulent charges ("chargebacks"); and (2) make the Liability Shift effective on the same day for all four networks to prevent merchants from steering customers to use cards with more lenient terms. (September 2016 Order 4.)

Prior to October 1, 2015, issuing banks generally absorbed liability for fraudulent transactions. (*Id.* ¶¶ 3, 84–85.) According to Plaintiffs, to facilitate the transition process from using magnetic stripe to EMV technology, Defendants conspired to establish October 1, 2015, as an artificial date by which merchants had to have installed and certified the EMV technology, otherwise merchants, rather than the banks, would be responsible for any chargebacks. (Am. Compl. ¶¶ 286–92.) If on or after October 1, 2015, a customer presented an EMV chip card to a merchant but the merchant failed to use a certified EMV chip card reader to process the transaction (and instead used a magnetic stripe), the merchant became liable for any fraudulent charges incurred.

### c. Discover's motion for judgment on the pleadings

Discover argues that Plaintiffs' allegations against Discover no longer meet the plausibility requirement under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) because there has been a change in the record since Judge Alsup's ruling on Discover's motion to dismiss the Amended Complaint. (*see generally* Discover Mot.) The alleged change in the record is due to Plaintiffs "joining" the transfer motion, which transfer motion allegedly incorporated the Class Complaints from the MDL ("MDL Class Complaints"), and the MDL Class Complaints

contradict Plaintiffs' allegations in the Amended Complaint. (*Id.* at 10.) Discover also argues

that the allegations in the Amended Complaint no longer meet the *Twombly* standard because

they are contradicted by cases cited in the Amended Complaint. (*Id.* at 6.)

### i. Alleged changes in the record due to Plaintiffs "joining" the transfer motion and alleged contradictions between the Amended Complaint and the MDL Class Complaints

According to Discover, there has been a "game-changing shift in the Rule 12 record," (*id.*

at 1), because Plaintiffs joined the transfer motion and thereby incorporated the motion and all

supporting documents into the record, (*id.* at 10). Discover argues that in moving to transfer the

case to this Court, the MasterCard and Visa Defendants relied on the MDL Class Complaints,

and the allegations in the MDL Class Complaints "disclaim Discover's participation in any

network conspiracy around the chip conversion deadline and associated liability shift." (*Id.*)

Instead, Discover argues, the MDL Class Complaints allege that by imposing the October of

2015 Liability Shift date, Visa and MasterCard hurt Discover, because such an early date would

"ensure that even debit transactions authenticated via PIN would continue to be routed over Visa

and MasterCard networks, rather than over competitors like Discover and its debit affiliate

PULSE." (*Id.* (citations and internal quotation marks omitted).) Discover also contends that

Plaintiffs' allegations in the Amended Complaint that absent conspiracy, Discover would have

offered different liability shift terms in "exchange for their commitment to 'steer' business to

Discover," is contradicted by the allegations in the MDL Complaint that Discover would have

offered discounts to merchants to steer customers towards Discover cards, but it was unable to do

so because Visa and MasterCard maintained their anti-steering rules prohibiting merchants from

steering customers away from Visa or MasterCard cards. (*Id.*) Discover argues that because of

these contradictions, the allegations in the Amended Complaint are no longer plausible because

the MDL Class Complaints confirm that merchants would not have been able to steer customers towards Discover.  (*Id.* at 11.)

### ii.    Alleged contradictions between the Amended Complaint and the cases cited in the Amended Complaint

In addition, Discover argues that the Court should take judicial notice of the factual findings in cases that Plaintiffs cite in the Amended Complaint, portraying Discover as a victim of the conspiracy involving Visa and MasterCard.  (*Id.*)  In particular, Discover highlights Plaintiffs' citation to *United States v. Am. Exp. Co.*, 88 F. Supp. 3d 143 (E.D.N.Y. 2015) ("*Amex*"), where the district court found that Discover has "only a 5.3% share of the network services market," and that "merchants can profitably drop Discover if the network overplays its hand."  (Discover Mot. 11 (citing *Amex*, 88 F. Supp. 3d at 207).)  Discover contends that the "[Amended C]omplaint does not explain why Discover would collude with its rivals to preserve this small share and protect their dominant ones."  (*Id.* at 11, 17.)

Discover also contends that Plaintiffs, in arguing that Defendants were motivated to form a conspiracy due to the upcoming "demise" of the anti-steering rules, relied on the district court's ruling in *Amex* that found the anti-steering rules unlawful.  (*Id.* at 20.)  Discover argues that because the *Amex* decision was rendered in 2015, and Discover announced its date for Liability Shift approximately three years earlier in 2012, there was no sign of anti-steering rules being thwarted at the time Discover made its decision.  (*Id.*)  These additional contradictions, Discover argues, further support its argument that Plaintiffs' allegations against Discover are no longer plausible.  (*See id.*)

Discover concedes that in taking judicial notice of extrinsic documents, the Court cannot accept such documents for "the truth of the matters asserted," (*id.* at 13 (citing *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991))), but argues that the Court "can take judicial notice of

*contradictions* between such documents and [the Amended C]omplaint for purposes of resolving a Rule 12 motion," (*id.*). Discover contends that "[w]here such contradictions exist, the Court is no longer required [to] accept the affected factual allegations as true for Rule 12 purposes." (*Id.* at 14 (first citing *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011); and then citing *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995)).) Further, Discover argues that once the contradicted allegations are set aside, Plaintiffs' "remaining allegations [do not] plead a plausible claim for relief" against Discover, and should be dismissed. (*Id.* (citing *Twombly*, 550 U.S. at 555).)

### d. Judge Orenstein's R&R

Judge Orenstein recommended that the Court deny Discover's motion for judgment on the pleadings because a new plausibility determination is not warranted based on the purported changes in the record, and even if it were, no contradictions exist and Plaintiffs' allegations supporting claims against Discover remain plausible. (*See* R&R.)

#### i. Purported contradictions between the Amended Complaint and MDL Class Complaints

In addressing the alleged conflict between the allegations in the Amended Complaint and the MDL Class Complaints, Judge Orenstein found that Plaintiffs in this action are not responsible for the pleadings in the MDL action because the plaintiffs in the two actions are different, notwithstanding any potential overlap in the putative class membership. (R&R 8–9.) Judge Orenstein rejected Discover's argument that the pleadings in the MDL Class Complaints are incorporated into and made a part of the record of this case because Plaintiffs joined the motion to transfer the case to this district, noting that Discover and Plaintiffs took identical positions vis-à-vis the motion to transfer — "both told the court that they did not object to it." (*Id.* at 9.)

Judge Orenstein also found that even if the Court were to rely on extrinsic pleadings by other parties, as Discover concedes, the Court cannot accept the pleadings for the truth of the matters asserted. (*Id.*) As for Discover's argument that the Court can take notice of the "contradictions," Judge Orenstein found the argument to be "nonsensical," stating that "a statement that is evidence only of the fact that someone said it (rather than cognizable evidence of the truth of the stated proposition) cannot contradict the content of a substantive allegation." (*Id.*) Lastly, Judge Orenstein found that even if the allegations in the MDL Class Complaints could be accepted for their truth, they do not contradict Plaintiffs' allegations in the Amended Complaint. (*Id.* at 10.)

### ii. Purported contradictions between the Amended Complaint and the cases it cites

With regard to Discover's argument based on alleged inconsistencies between the Amended Complaint and the caselaw about Discover cited in the Amended Complaint, Judge Orenstein found that: (1) Discover made the same argument in its motion to dismiss, Judge Alsup rejected the argument, and Discover should not be allowed to make the same argument again; (2) the argument fails on the merits because there is no inherent contradiction between having a small market share, and the allegation that Discover would enter the conspiracy with larger networks because "Discover might plausibly do so, among other reasons, to avoid losing market share to the other networks by failing to join them in the Liability Shift conspiracy"; and (3) Discover's reliance on the district court's finding in *Amex* is obsolete because the district court's decision has been overturned by a Second Circuit decision, which was later affirmed by the Supreme Court. (R&R 7.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clear error standard also applies when a party makes only conclusory or general objections. *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding "general objection[s] [to be] insufficient to obtain *de novo* review by [a] district court" (citations omitted)); *see* Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file *specific* written objections to the [magistrate judge's] proposed findings and recommendations." (emphasis added)); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758, (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & C Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))).

#### ii. Judgment on the Pleadings

"The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *L-7 Designs, Inc.*

*v. Old Navy*, LLC, 647 F.3d 419, 429 (2d Cir. 2011); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 520 (2d Cir. 2006); *see also Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). In reviewing a Rule 12(c) motion for judgment on the pleadings, the Court must "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor." *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden*, 594 F.3d at 160 (alteration, citation and internal quotation marks omitted).

A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (discussing Rule 12(b)(6) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717–18 (2d Cir. 2013). The court need not accord "a legal conclusion couched as a factual allegation" the same presumption of truthfulness. *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" *Pension Ben. Guar. Corp.*, 712 F.3d at 718 (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

When deciding a motion for judgment on the pleadings, a court's review is limited to the four corners of the complaint and the answer. *L-7 Designs, Inc.*, 647 F.3d at 422. "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference[,]" as well as documents that the

complaint "relies heavily upon its terms and effect," which renders the document "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002); *see Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

### iii. Judicial Notice

The court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," or commonly known within the court's jurisdiction. Fed. R. Evid. 201; *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70–71 (2d Cir. 1998). Examples of judicially noticeable sources include, *inter alia*, court opinions, public filings by and with the federal agencies, and testimonies. *Bristol v. Nassau Cty.*, 685 F. App'x 26, 28 (2d Cir. 2017) (decisions in related state criminal proceedings); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (testimony); *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70–71 (court opinions); *Kramer*, 937 F.2d at 774 (filings with the Securities and Exchange Commission).

If the court takes judicial notice of a document, it does so for its existence, "but not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); *Glob. Network Commc'ns, Inc.*, 458 F.3d at 157 ("[A]lthough . . . [the] testimony may be public record[] of which a court may take judicial notice, 'it may do so . . . only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion.'" (quoting *Kramer,* 937 F.2d at 774)). Thus, factual findings in other court proceedings are generally not subject to judicial notice. *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70–71 (declining to judicially notice a court opinion for establishing "prevailing trademark search practice" because "[f]acts adjudicated in a prior case do not meet either test of indisputability

contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source"); *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 74 (E.D.N.Y. 2016) (denying the defendant's request for judicial notice of selected quotes from a decision in a different court because doing so would be contrary to the law of the circuit limiting judicial notice to the existence of the documents and not the truth therein, and prejudice the plaintiff); *Ujvari v. United States,* 212 F. Supp. 223, 228 (S.D.N.Y. 1963) (refusing to take judicial notice of exchange rates found in previous Tax Court cases because the court must independently determine questions of fact in case before it).

### b. Discover's objections to the R&R and Plaintiffs' responses

Discover contends that Judge Orenstein did not "fully address all of the points in Discover's brief" and misstated "Discover's position and the relevant law." (Discover Obj. 3–4.) Discover argues that Judge Orenstein misstated Discover's position to be that the new record shows that "it cannot be the case that Discover would have colluded with its rivals." (*Id.* at 4.) Discover argues that it does not need to take such a position because Rule 12(c) relief does not require such showing, instead, it is sufficient to show that Discover's parallel conduct with its rival networks could have been the result of independent decision-making. (*Id.* at 5.) Discover argues that Judge Orenstein's discussion of a potential reason for it joining the conspiracy — "to avoid losing its market share" — is consistent with its "independent decision to adopt a parallel chip card policy in a concentrated market, and is thus insufficient to support the plausibility of Plaintiffs' conspiracy claim under controlling law." (*Id.* at 6.)

Discover also objects to Judge Orenstein's finding that the transfer record is not a part of the record for the purposes of its Rule 12(c) motion because Plaintiffs, like Discover, did not object to the transfer. (*Id* at 8.) Instead, Discover argues that Plaintiffs joined the transfer motion — "Plaintiffs first opposed, and then stipulated to, the transfer in "eleventh hour"

reversal of the position . . . ." (*Id.* (citing to Transfer Mot. Hr'g Tr.)). Discover reiterates the

arguments made in its original motion for judgment on the pleadings, namely: (1) post-transfer

developments in the record contradict Plaintiffs' allegations in the Amended Complaint; (2)

additional contradictions exist between the Amended Complaint and the cases it cites; (3) the

Court should take judicial notice of these contradictions and disregard the contradicted

allegations in the Amended Complaint; (4) without the contradicted allegations, Plaintiffs'

allegations against Discover are no longer plausible, and the Court should therefore dismiss the

Amended Complaint against Discover pursuant to Rule 12(c). (*Id.* at 9–10.)

Discover contends that, as summarized by Judge Orenstein in the R&R, Judge Alsup's

determination of the plausibility of Discover joining the alleged conspiracy relied on his findings

of three "plus factors" and, based on the change in the record, these findings are no longer

plausible. (*Id.* 12–13.) The three "plus factors" are:

> (1) a "common motive to conspire as to a uniform implementation
> of the Liability Shift given the impending demise of the anti-steering
> rules"; (2) actions against self-interest in "declin[ing] to offer
> concessions in the form of a reduced interchange fee or a delayed
> start date to compete for business . . . despite the roll-back of the
> anti-steering rules, which would have permitted merchants to steer
> customers to Discover had it offered concessions"; and (3) an
> "opportunit[y] to collude" with rivals through trade associations.
> (R&R at 3–4; Dkt. 346 at 14–15.)

(*Id.*) Discover argues that the first two factors are now contradicted (1) by the allegations in the

MDL Class Complaints that merchants were not able to steer customers to networks offering

better terms; and (2) by the timing of the district court's decision in *Amex*.[3]

---

[3] Discover contends that the reversal of the district court's decision in *Amex* and the
Supreme Court's ruling that American Express' anti-steering rules are lawful, contrary to Judge
Orenstein's findings in the R&R, further strengthen Discover's argument that it could not have
been motivated by the "impending" fall of the anti-steering rules. (*Id.* at 13–14 (citing *United
States v. American Express Co.*, 838 F.3d 179 (2d Cir. 2016), *aff'd sub nom. Ohio v. American
Express Co.*, 625 U.S. ---, ---, 138 S. Ct. 2274, 2285 (2018)).)

Plaintiffs respond that the R&R should be adopted in its entirety as it correctly dismisses Discover's arguments after addressing them in full. (Pls. Resp. 3.) Plaintiffs argue that (1) the current record before the Court is "no different than the record at the time of the motion to dismiss" because the Court can only rely on the pleadings when making a Rule 12(c) determination, and a transfer motion is not a pleading, (*id.* at 5–6); (2) even if the Court were to take notice of the extrinsic pleadings by other parties, such pleadings cannot be relied upon for the truth of the matters asserted, (*id.* 6–7); and (3) even if the Court were to rely on the alleged "new record" for their truth, none "are actually contradictory to the conclusion that the Amended Complaint plausibly pleads Discover was part of a conspiracy," (*id.* at 9).

As discussed below, because there has not been a change in the record, there is no basis for a new plausibility determination under Rule 12(c).

### c. The allegations in the MDL Class Complaints are not a part of the record

Discover argues that the MDL Class Complaints are a part of the record for the purposes of this motion because they were attached to the motion to transfer that Plaintiffs "joined." (Discover Obj. 8.) In support of this argument, Discover cites to the transcript of the hearing on the motion to transfer, where Judge Alsup characterized Plaintiffs' action as "stipulating" to the motion. (*Id.* (citing Transfer Mot. Hr'g Tr.).) However, notwithstanding Judge Alsup's passing comment, the record shows that Plaintiffs did not "join" the motion to transfer, but rather, similar to Discover, did not oppose the transfer motion. (Pls. Non-opp'n to Mot. to Transfer.)

Moreover, even if Plaintiffs joined the motion, a transfer motion is not a pleading, and therefore, the motion papers are not included in the Rule 12(c) record. *L-7 Designs, Inc.*, 647 F.3d at 422 (stating that on a 12(c) motion, the court considers the complaint, the answer and the documents attached to them). Discover cites no authority for its argument that a transfer motion

is a pleading for the purposes of deciding a motion for judgment on the pleadings.[4]  (*See*

*generally* Discover Mot.; Discover Obj.)

Accordingly, the MDL Class Complaints[5] attached to the transfer motion are not a part of

the record for the purposes of deciding Discover's motion for judgment on the pleadings.  *See id.*

### d. The Court cannot judicially notice facts in the MDL Class Complaints or facts in the decisions cited in the Amended Complaint for their truth

Discover argues that the Court should take judicial notice of certain allegations in the

MDL Class Complaints attached to the transfer motion, as well as the court opinions cited in the

Amended Complaint, for the truth of the factual assertions.  (Discover Obj. 3–4.)  Although

---

[4]  Rule 7 of the Federal Rules of Civil Procedure states, in relevant part: "Pleadings. Only these pleadings are allowed: (1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."

[5]  Discover also appears to argue that the Court should take judicial notice of the alleged inconsistencies between the Amended Complaint and the Complaints by merchants Home Depot, Kroger and Wal-Mart in the MDL.  (Discover Obj. 12–13.)  Discover appears to argue that because the Amended Complaint cites to the Home Depot, Kroger, and Wal-Mart Complaints, they are incorporated into the Amended Complaint.  (*Id.*)  Discover refers to paragraph sixty-eight of the Amended Complaint as "referencing allegations by merchants Home Depot, Kroger, and Wal-Mart," and states these allegations "contradict Plaintiffs' steering allegations." (*Id.*)  However, Discover mischaracterizes paragraph sixty-eight of the Amended Complaint, which states in full:

> There are two kinds of EMV cards — "chip-and-PIN" (personal identification number) cards, where the transaction is authorized by the merchant processing the chip card and the consumer entering a PIN, and "chip-and-signature" cards, where the merchant processes the chip and the consumer signs an electronic signature pad.  The failure to use the more secure chip and PIN system has result [*sic*] in several lawsuits by large merchants against the card networks in recent months.

(Am. Compl. ¶ 68.)  Paragraph sixty-eight references "several lawsuits by large merchants against the card networks," without specifying which large merchants, which lawsuits, or any of the allegations made in these unidentified lawsuits.  The reference in paragraph sixty-eight to these unidentified "large merchants" and "lawsuits" does not provide the Court a basis to conclude that the MDL pleadings by these large merchants have been incorporated by reference and are therefore a part of the Amended Complaint and the Rule 12(c) record in this action.

conceding that the Court can only judicially notice filings from other courts for their existence and not for the truth asserted, Discover argues that the Court should nevertheless judicially notice the contradictions of the factual allegations in the Amended Complaint and the decisions cited in the Amended Complaint, compared to the allegations in the Amended Complaint.

Judge Orenstein found that "a statement that is evidence only of the fact that someone said it (rather than cognizable evidence of the truth of the stated proposition) cannot contradict the content of a substantive allegation." (R&R 9.) The Court agrees with Judge Orenstein, as the only way to determine whether there are contradictions between the Amended Complaint and the extrinsic sources (here, the MDL Class Complaints and decisions cited in the Amended Complain), would be to rely on these documents for their content, contrary to the law that instructs the Court otherwise. *See, e.g., Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir. 1992) (reversing the district court's decision to judicially notice a bankruptcy court's decision and rely on it for the truth of the factual findings).

The "facts" that Discover wants the Court to judicially notice and accept for their truth are: (1) allegations in the MDL Class Complaints that (a) "[w]hile . . . competitors such as Discover stand ready, willing, and able to compete with the [Visa and Mastercard] by offering lower fees to Merchants, [Visa and Mastercard] rules prevent and restrain any such competition by ensuring that increased efficiency and lower prices will not lead to increased market share for competitors." (Discover Obj. 14), (b) "the manner in which Visa and MasterCard rolled out the chip technology to allow for the debit routing choices mandated by Durbin [Amendment][6] thwarted competition by using an aggressive conversion date to pressure the market into

---

[6] The Durbin Amendment refers to 15 U.S.C. § 1693o-2, which *inter alia*, prohibits restricting routing of electronic debit transactions.

accepting chip technology that biased routing choice toward their networks and away from 'low cost debit networks' like Discover's PULSE," (Discover Mot. 11 (citations and internal quotation marks omitted)); and (2) (a) findings of a court cited in the Amended Complaint — that Discover has "only a 5.3% share of the network services market, . . . merchants can profitably drop Discover if the network overplays its hand," (*id*. at 6, 17 (citing *AmEx*, 88 F. Supp. 3d at 207)), and (b) the timing of the district court's ruling in *Amex* that the anti-steering rules were in violation of the antitrust law vis-à-vis the timing of the alleged conspiracy between Discover, Visa, MasterCard and American Express to impose Liability Shift for chargebacks, (*id*. at 20; *see also* Discover Obj. 13).

The Court determines whether any of the extrinsic evidence relied on by Discover can be judicially noticed for their truth.

### i. MDL Class Complaints

The alleged contradictions in the MDL Class Complaints are not undisputed facts, but rather mere allegations and therefore do not meet the requirements of Rule 201, which is limited to facts that are not reasonably disputed and the sources of which cannot be reasonably questioned. Fed. R. Evid. 201; *Int'l Star Class Yacht Racing Ass'n* 146 F.3d at 70 ("The Federal Rules of Evidence provide that courts may only take judicial notice of facts . . . that are not subject to reasonable dispute . . . . [and] caution must be used in determining that a fact is beyond controversy under Rule 201(b)" (citing Fed. R. Evid. 201)); *see also Boca Raton Firefighters & Police Pension Fund v. Bahash*, 506 F. App'x 32, 37 (2d Cir. 2012) (refusing to take judicial notice of the materials from another case for their substance as they were not "undisputed"); *Jones v. Rivera*, No. 13-CV-1042, 2015 WL 8362766, at *2–3 (S.D.N.Y. Dec. 7, 2015) (a fact to be judicially noticed must meet Rule 201's "indisputability" criteria).

Plaintiffs in this case dispute the accuracy of these "facts." (Pls. Opp'n to Discover's Mot. 16–19, Docket Entry No. 611-13.) Moreover, Discover acknowledges that allegations in the MDL Class Complaints may or may not be valid. (Discover Mot. 11 ("Valid or not, these allegations identify Discover as a victim — not perpetrator — of any network conspiracy on the chip conversion date and terms, and thus contradict the (independently implausible) claims against Discover here.").) Regardless, a mere allegation does not meet the requirements of Rule 201, which is designed for noticing facts that are either well-known or readily verifiable. *Bechtel v. Admin. Review Bd., U.S. Dep't of Labor*, 710 F.3d 443, 451 (2d Cir. 2013) ("[W]e find no abuse of discretion in the . . . decision not to take judicial notice of allegations relating to [witness'] character and credibility in a separate case." (citing *Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70–71)). The Court therefore declines to take judicial notice of the allegations in the MDL Class Complaints for their truth.[7]

---

[7] Discover cites to *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) and *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1095 (2d Cir. 1995), to argue that in determining the plausibility of the allegations in the complaint, the Court can take into account contradictions posed by judicially noticeable documents, but both cases are factually distinguishable. (Discover Obj. 11, 14.) In *Perry,* the court dismissed the plaintiff's discrimination claim because the plaintiff acknowledged in the complaint that she was not able to perform her functions due to health reasons, which allegations contradicted the discrimination allegations. *Perry*, 424 F. App'x at 25. In *Hirsch*, in discussing the plausibility of the allegations that the defendant had control over certain transactions, the court primarily relied on the contradictions within the complaint. *Hirsch*, 72 F.3d at 1095. The only fact that the court judicially noticed was the guilty plea of the two individuals who were alleging that the defendant had control over the transactions. *Id.* Even though the *Hirsch* court relied on the guilty plea for its truth, Discover's reliance on *Hirsch* is nevertheless misplaced. A guilty plea falls within the purview of Rule 201 as a fact that can be verified from sources that cannot be reasonably questioned. *United States v. Kelly*, 368 F. App'x 194, 199 (2d Cir. 2010) ("We take judicial notice of [the guilty] plea as it is 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'" (quoting Fed. R. Evid. 201(b)(2))); *see also Schwartz v. Capital Liquidators, Inc.*, 984 F.2d 53, 54 (2d Cir. 1993) (taking judicial notice of the plaintiff's criminal conviction for making false declarations in his trial testimony). Allegations made in a pleading

### ii. *Amex* — case cited in the Amended Complaint

The district court's factual findings as to Discover's market share and leverage in *Amex*, a decision that Plaintiffs cite in the Amended Complaint,[8] do not meet the requirements of Rule 201 as Discover's market share and its leverage over merchants are not undisputed facts. *See Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 70–71 (declining to judicially notice a court opinion for establishing "prevailing trademark search practice" because "[f]acts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source"); *Cabrera v. Schafer*, 178 F. Supp. 3d 69, 74 (E.D.N.Y. 2016) (denying the defendant's request for judicial notice of the selected quotes from a decision in a different court because doing so would be contrary to the law of the circuit limiting judicial notice for the existence of the documents and not the truth therein, and prejudice the plaintiff). In addition, market share is not static and can change over time. *See Int'l Star Class Yacht Racing Ass'n*, 146 F.3d at 71 ("Moreover, prevailing trademark search practices may well have changed or developed in the intervening years between the [referenced case] and the events at issue in this case."). The Court declines to take judicial notice of the factual findings of the district court in *Amex.*

As to the timing of the district court's decision in *Amex* finding anti-steering rules to

---

in a different court proceeding, on the other hand, as described above, do not fall within Rule 201 because they are not readily verifiable facts.

[8] Although Discover initially referred to a number of cases cited in the Amended Complaint, in its objection to the R&R, Discover relies exclusively on the *Amex* decision. (*See* Discover Obj. 13.)

violate the antitrust law,[9] as noted earlier, the Court can take judicial notice of the existence of other court opinions and the date of the opinion.  Discover argues that its Liability Shift decision was made in 2012 prior to the *Amex* decision in 2015 but Judge Alsup did not address the "fundamental timing problem with the steering allegations [he] credited against Discover, even though it was apparent from cases cited in the complaint."  (Discover Mot. 20.)  Judge Alsup, however, stated:

> The networks faced public and private litigation regarding the anti-steering rules.  In one action, the United States Department of Justice sued Visa, MasterCard, and American Express regarding certain anti-steering rules. In July of 2011, Visa and MasterCard entered into a consent decree that prohibited certain anti-steering rules (*id.* ¶ 257).  American Express continued to litigate the action and the district court found American Express liable for antitrust violations. *United States v. American Express Co.*, No. 10-CV-4496 (E.D.N.Y. Feb 19, 2015) (Judge Nicholas G. Garaufis).  The Second Circuit has since reversed the decision of the district court. *United States v. Am. Express Co.*, No. 15-1672, 2016 U.S. App. LEXIS 17502 (2d Cir. Sept. 26, 2016).  The Second Circuit's reversal does not detract, however, from the [A]mended [C]omplaint's allegations that the anti-steering rules were under attack at the time of the decisions to implement the Liability Shift.

(September 2016 Order 5, n2.)  In finding that Defendants were operating under the perception that the anti-steering rules were soon coming to an end, Judge Alsup did not rely solely on the district court's *Amex* decision, but also relied, at least in part, on the timing of the lawsuit brought by the government prior to 2012.  To the extent that Discover disagreed with Judge Alsup's decision, it should have sought its reconsideration.  There is no basis to justify the Court

---

[9]  Discover contends that Plaintiffs, in arguing that Defendants were motivated to form a conspiracy due to the upcoming "demise" of the anti-steering rules, relied on the district court's ruling in *Amex* that found the anti-steering rules unlawful.  (*Id.* at 20.)  Discover argues that because the *Amex* decision was rendered in 2015, and Discover announced its date for Liability Shift in 2012, there was no sign of anti-steering rules being thwarted in 2012, at the time Discover was making its decision with regard to the EMV transition.  (*Id.*)

considering this argument at this time as the record before the Court has not changed.[10] *Jackson v. New York State*, 523 F. App'x 67, 69 (2d Cir. 2013) (The law of the case doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)); *see also Estrada–Rodriguez v. Lynch*, 825 F.3d 397, 402 (8th Cir. 2016) ("Law of the case doctrine, . . . embodies principles that work alongside Rule 54(b) of the Federal Rules of Civil Procedure in guiding a court's discretion when reconsidering issues decided in the same case."); *Vega v. Miller*, 273 F.3d 460, 465 (2d Cir. 2001) ("If the motion that results in the second denial is virtually a reprise of the motion that was denied the

---

[10]  In its initial 12(c) motion, Discover did not offer an explanation as to why the alleged contradiction by the cases cited in the Amended Complaint, including *Amex*, should be viewed by the Court as having changed the record, and allowing for a new plausibility determination.  In its objection to the R&R, Discover offers the following explanation as to why the Court should make a new plausibility determination on the basis of the *Amex* decision:

> To the extent the R&R rejects these arguments as merely reprising arguments the California Court disposed [of] in its Rule 12(b) ruling, (R&R at 6), the record has changed.  At the Rule 12(b)(6) stage, Plaintiffs expressly stated that they were *not* bringing their claims on behalf of the "Home Depots and Targets of the world" or other "big merchants" — like the direct action plaintiffs or various members of the proposed MDL classes — "that got certified right away." (Dkt. 342, Hr'g Tr. at 20:11–16; *see also* AC ¶ 209 (differentiating between "very large, retailers such as Target, Walmart, and others" and "the members of the Class.")  The Rule 12(b) ruling relied on these statements, (*see* Dkt. 346 at 11 (differentiating between "giant retail chains" who would be involved in planning and "run-of-the-mill merchant, like our plaintiffs")), which Plaintiffs have since disclaimed. (*See, e.g.*, Dkt. 425.)  The Court can and should consider this shift in position in reviewing the plausibility of their claims under Rule 12(c).

(Discover Obj. 13–14, n7.)  Discover does not explain how this change in Plaintiffs' position as to whether they are asserting claims on behalf of the "big merchants" affects the record, making the cases cited by Plaintiffs in the Amended Complaint, including *Amex* new to the record, to support its claim for a new plausibility determination.

first time, there is a substantial argument for dismissing the appeal of the second motion as an evasion of the appellate timeliness requirement." (citing *Armstrong v. Texas State Board of Barber Examiners*, 30 F.3d 643, 644 (5th Cir. 1994))).

Even if the Court were to address the merits of Discover's contention as to the timing of the district court's decision in *Amex* and Discover's decision-making timeline, these actions do not render Plaintiffs' allegations implausible. Citing to the Amended Complaint, Plaintiffs explain that their argument about the "demise" of the anti-steering rules relied on the governments' announcement that it would sue Visa, Mastercard, and American Express for their anti-steering rules, and was not based on the outcome of the *Amex* lawsuit. (Pls. Opp'n to Discover's Mot. 20.) Therefore, Plaintiffs' claims are plausible based on the timing of the government's lawsuit and the role it could have plausibly played in Defendants' decision-making. *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (In reviewing a Rule 12(c) motion for judgment on the pleadings, the Court must "accept[] the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.").

## III. Conclusion

For the reasons discussed above, the Court adopts the R&R and denies Discover's motion for judgment on the pleadings.

SO ORDERED:

     s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: September 18, 2018
     Brooklyn, New York