UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

B & R SUPERMARKET, INC., d/b/a Milam's Market, GROVE LIQUORS LLC, STROUK GROUP LLC, d/b/a Monsieur Marcel, and PALERO FOOD CORP. and CAGUEYES FOOD CORP., d/b/a Fine Fare Supermarket, *Individually and on Behalf of All Others Similarly Situated,*

Plaintiffs,

v.

VISA INC., VISA U.S.A., INC., MASTERCARD INTERNATIONAL INC., AMERICAN EXPRESS COMPANY, and DISCOVER FINANCIAL SERVICES,

Defendants.[1]

**MEMORANDUM & ORDER**
17-CV-02738 (MKB)

---

MARGO K. BRODIE, United States District Judge:

Plaintiffs B & R Supermarket, Inc., doing business as Milam's Market ("B & R Supermarket"), Grove Liquors LLC, Strouk Group LLC, doing business as Monsieur Marcel ("Monsieur Marcel"), and Palero Food Corp. and Cagueyes Food Corp., doing business as Fine Fare Supermarket ("Fine Fare Supermarket"), commenced this class action against Defendants MasterCard International Inc. ("Mastercard"), Visa Inc. and Visa U.S.A., Inc. (collectively "Visa"), Discover Financial Services ("Discover"), and American Express Company ("American Express"), alleging violations of the Sherman Act, 15 U.S.C. §§ 1, 3, and state antitrust and consumer protection laws of California, Florida, and New York, and asserting unjust enrichment

---

[1] On May 6, 2021, the Court granted a consent motion to amend the caption of the case. (*See* Order dated May 6, 2021, Docket Entry No. 761.) The Court directs the Clerk of Court to amend the case caption to the caption used in this Memorandum and Order.

claims. (Compl., Docket Entry No. 1; Am. Compl., Docket Entry No. 291.) Plaintiffs' claims arise out of Defendants' processes for adopting EMV technology for card transactions in the United States.[2] Plaintiffs allege that Defendants violated antitrust laws by entering into a conspiracy to (1) adopt the same policy via nearly identical rules for shifting billions of dollars in liability from banks to merchants ("Liability Shift" or "Fraud Liability Shift" or "FLS") for fraudulent charges ("chargebacks"); and (2) make the Liability Shift effective on the same day and in the same manner for all four networks, to prevent merchants from steering customers to use cards with more lenient terms or concessions such as reduced interchange or merchant discount fees.[3] (*See* Mem. and Order dated Sept. 30, 2016 ("Sept. 2016 Order") 4, Docket Entry No. 346); *B & R Supermarket, Inc. v. Visa, Inc.* (*B & R I*), No. 16-CV-1150, 2016 WL 5725010, at *2 (N.D. Cal. Sept. 30, 2016); (Am. Compl. ¶¶ 2, 4, 7, 9.)

Currently before the Court is Discover's motion to compel arbitration and stay the claims of merchants within the Class with whom Discover has direct contractual relationships ("Retained Merchants") pending the arbitration proceedings pursuant to Rules 12(b)(1) and 12(b)(3) of the Federal Rules of Civil Procedure. (*See* Discover's Mot. to Compel Arbitration ("Discover's Mot."), Docket Entry No. 755; Discover's Mem. in Supp. of Discover's Mot.

---

[2] EMV technology is a global standard for credit cards that uses computer chips and chip readers to authenticate (and secure) chip-card transactions. (*See* Am. Compl. ¶¶ 65, 67.) It allows for secure transmittance of "dynamic" card information by creating a unique electronic signature for each transaction. (*Id.* ¶ 65.) Prior to the adoption of EMV technology, payment cards relied entirely on magnetic stripes, which can only communicate "static" information such as the card number and expiration date. (*Id.* ¶¶ 63, 65.)

[3] Plaintiffs allege that had Defendants not conspired to impose the Liability Shift at the same time, at least one Defendant would have offered more lenient terms such as no "Liability Shift component, an exten[sion of the] Liability Shift date, a break on fees, equipment or other more favorable terms." (Am. Compl. ¶ 9.) They allege that "[i]n a truly competitive environment, at least one of these entities would or should have broken ranks and offered merchants a break on any number of terms." (*Id.*)

2

("Discover's Mem."), Docket Entry No. 755-1; Pls.' Mem. in Opp'n to Discover's Mot. ("Pls.' Opp'n"), Docket Entry No. 755-7.)

For the reasons set forth below, the Court denies Discover's motion to compel as premature.

## I. Background

Plaintiffs commenced this action in March of 2016 in the Northern District of California, before District Judge William Alsup. (Compl.) On July 15, 2016, Plaintiffs filed an Amended Complaint,[4] (Am. Compl.), which Defendants later moved to dismiss,[5] (Defs.' Mot. to Dismiss, Docket Entry No. 303).

On September 30, 2016, Judge Alsup granted in part and denied in part the motions to dismiss the Amended Complaint. *B & R I*, 2016 WL 5725010, at *13. Judge Alsup dismissed the claims against all Defendants other than Mastercard, Visa, Discover, and American Express. *Id* at *9–12. Judge Alsup also granted Fine Fare Supermarket's motion to intervene against the above-named Defendants, including American Express.[6] *Id*. at *13. In a separate order, Judge

---

[4] The Amended Complaint named the following additional Defendants: Bank of America, N.A., Capital One Financial Corporation, Chase Bank USA, National Association, Citibank (South Dakota), N.A., Citibank, N.A., PNC Bank, National Association, U.S. Bank National Association, and Wells Fargo Bank, N.A. (collectively, the "Issuing Banks"), and EMVCo. (Am. Compl.)

[5] Discover and the Issuing Banks, together with EMVCo, separately moved to dismiss the Amended Complaint. (Bank Defs.' Mot. to Dismiss, Docket Entry No. 301; Discover Mot. to Dismiss, Docket Entry No. 305.)

[6] Fine Fare Supermarket is not a party to a CAA with American Express and does not accept its cards. (Pls.' Letter dated Oct. 20, 2017, Docket Entry No. 604.) Because Judge Alsup transferred B & R Supermarket's and Monsieur Marcel's direct claims against American Express to the Southern District of New York pursuant to the CAA, Fine Fare Supermarket is the only named Plaintiff with claims against American Express. However, because Fine Fare Supermarket does not accept American Express and has no agreement with American Express, it

3

Alsup severed and transferred the claims by B & R Supermarket and Monsieur Marcel against American Express to the United States District Court for the Southern District of New York based on the forum selection provisions in American Express' Card Acceptance Agreements ("CAA") with merchants. (Order granting Mot. to Transfer, Docket Entry No. 282.)

On March 10, 2017, Plaintiffs moved for class certification. (Pls.' Mot. for Class Certification, Docket Entry No. 425.) By Order dated May 4, 2017, Judge Alsup transferred the case to this Court pursuant to 28 U.S.C. § 1404(a), citing judicial efficiency and Discover's concerns with regard to potential inconsistent liability theories alleged by putative class members in this case and the cases consolidated in the multi-district litigation, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, No. 05-MD-01720 (E.D.N.Y. filed Oct. 20, 2005), pending before this Court. (Order dated May 4, 2017, Docket Entry No. 518.)

By Memorandum and Order dated March 11, 2018 (the "March 2018 Order"), the Court found that Plaintiffs had satisfied the explicit requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy of both class representatives and counsel. (Mar. 2018 Order 12–19, Docket Entry No. 643); *B & R Supermarket, Inc. v. MasterCard Int'l (B & R II)*, No. 17-CV-2738, 2018 WL 1335355, at *7–10 (E.D.N.Y. Mar. 14, 2018). However, because Plaintiffs had failed to satisfy Rule 23(a)'s implied requirement of ascertainability, the Court denied Plaintiffs' motion for class certification without prejudice. (Mar. 2018 Order 20–27); *B & R II*, 2018 WL 1335355, at *13–14.

On July 9, 2019, Plaintiffs renewed their motion for class certification, (*see* Pls.' Renewed Mot. for Class Certification, Docket Entry No. 706), and by Memorandum and Order

---

seeks only joint and several liability against American Express based on chargebacks by Mastercard, Visa, and Discover. (*Id.*)

4

dated August 28, 2020 (the "August 2020 Decision"), the Court certified a class consisting of merchants who incurred one or more unreimbursed chargeback(s) between October 1, 2015 through and including September 30, 2017, pursuant to the Fraud Liability Shift for the assessment of Mastercard, Visa, Discover and/or Amex payment card chargebacks (the "Class"), and excluding from the Class members of the judiciary and government entities or agencies. (Aug. 2020 Decision, Docket Entry No. 725). In September of 2020, Defendants Visa, Mastercard, and Discover petitioned the Second Circuit for permission to appeal the August 2020 Decision pursuant to Rule 23(f) of the Federal Rules of Civil Procedure. (*See* Copy of 23(f) Pet. for Leave to Appeal, Docket Entry No. 727.)

On October 30, 2020, while the Rule 23(f) petition was still pending before the Second Circuit, Discover served its motion to compel arbitration. (*See* Letter dated Oct. 30, 2020, Docket Entry No. 737.) In December of 2020, on consent, the parties agreed to stay the balance of their briefing on the motion to compel pending the Second Circuit's decision on the Rule 23(f) petition. (*See* Letter dated Dec. 2, 2020, Docket Entry No. 738; Order dated Dec. 9, 2020.)

In January of 2021, the Second Circuit denied Defendants' Rule 23(f) petition, finding that an immediate appeal was not warranted. (*See* USCA Mandate, Docket Entry No. 745.) Following the Second Circuit's decision, the parties resumed briefing Discover's motion to compel, (*see* Order dated Feb. 22, 2021; Order dated Mar. 26, 2021), and on March 29, 2021, the parties filed the fully briefed motion, (*see* Discover's Mot.). Plaintiffs have not yet distributed notice to the Class or submitted a notice plan to the Court for approval. (*See* Decl. of George C. Aguilar in Supp. of Pls.' Opp'n ("Aguilar Decl.") ¶ 2, Docket Entry No. 755-8.)

5

## II. Discussion

### a. Standard of review

The Federal Arbitration Act (the "FAA") requires courts to compel arbitration of claims that the parties have agreed to arbitrate. *See AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Courts consider four factors in order to determine whether an action should be dismissed in favor of arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed pending arbitration." *McAllister v. Conn. Renaissance Inc.*, 496 F. App'x 104, 106 (2d Cir. 2012) (citing *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)); *see also Daly v. Citigroup Inc.*, 939 F.3d 415, 421 (2d Cir. 2019) (same); *Garcia v. Golden Abacus Inc.*, No. 16-CV-6252, 2017 WL 2560007, at *2 (S.D.N.Y. June 13, 2017) (same).

Generally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. BMC Stock Holdings, Inc.*, 796 F. App'x 45, 48 (2d Cir. 2019) (quoting same). When an agreement is clear, "it is the language of the contract that defines the scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Abdullayeva v. Attending Homecare Servs. LLC*, 928 F.3d 218, 222 (2d Cir. 2019) ("In answering the first question — whether the parties agreed to arbitrate — we look to 'state contract law principles.'" (quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016))). An employee's right to pursue statutory claims may only be waived by a Collective Bargaining Agreement (CBA) if

that waiver is "clear[] and unmistakable[]." *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 274 (2009); *see also Lawrence v. Sol G. Atlas Realty Co., Inc.*, 841 F.3d 81, 83–84 (2d Cir. 2016) (refusing to compel arbitration where the CBA did not clearly encompass the plaintiffs' statutory claims).

In deciding a motion to compel arbitration, courts apply a similar standard to that applied to a motion for summary judgment and "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 229; *see also Soliman v. Subway Franchisee Advert. Fund Tr., Ltd.*, 999 F.3d 828, 833–34 (2d Cir. 2021) (first quoting *Nicosia*, 834 F.3d at 229; and then quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017)). The party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Harrington v. Atl. Sounding Co., Inc.*, 602 F.3d 113, 124 (2d Cir. 2010) (citing *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000)). In addition, "[a] district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" *Nicosia*, 834 F.3d at 229 (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997)); *see also Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) ("[A] stay of proceedings [is] necessary after all claims have been referred to arbitration and a stay requested.").

b. **The Court denies Discover's motion to compel arbitration as premature**

Discover argues that its motion to compel arbitration is ripe because the Court has certified a class, which "bring[s] the Retained Merchants before the Court and subject to the Court's jurisdiction." (Discover's Mem. 8; Discover's Reply in Supp. of Discover's Mot. ("Discover's Reply") 4–6, Docket Entry No. 755-9.) In support, Discover argues that there is no reason to postpone an inevitable decision on its motion to compel because "the relevant facts are

static and do not require an individualized inquiry" as only Retained Merchants already identified by Discover would be compelled to arbitration. (Discover's Reply 5–6.) Discover contends that ripeness asks "how soon a party can enforce its right" whereas waiver asks "how long a party can wait before it abandons a right." (*Id.* at 4.) It argues that the cases cited in Plaintiffs' opposition to their motion are inapposite because those cases discuss waiver and not whether parties "*must* wait until after an opt-out period expires before seeking relief and, in fact, indicate that [class] certification makes arbitration ripe for review." (*Id.* at 5 (first alteration in original).)

Plaintiffs argue that the expiration of the opt-out period after notice to the class, not just certification of a class, "establishes which parties are before the Court and which are not." (Pls.' Opp'n 5–6.) In support, Plaintiffs cite *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020), which they contend holds that the proper timing for a motion to compel is after the opt-out period for a class has ended. (*See id.* at 6–7.)

While the Second Circuit has not addressed when a motion to compel is appropriately filed in the context of class action litigation, courts routinely hold that "the earliest time to move to compel arbitration is after class certification." *Chen-Oster*, 449 F. Supp. 3d at 234–35 (collecting cases), *objections overruled*, No. 10-CV-6950, 2021 WL 4199912 (S.D.N.Y. Sept. 15, 2021); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) ("This [c]ourt will not compel absent putative class members who are not before this [c]ourt to binding arbitration or issue a ruling regarding the enforceability of the provision. Any such ruling is procedurally improper and analogous to an advisory opinion." (citing *Whittington v. Taco Bell of Am., Inc.*, No. 10-CV-1884, 2011 WL 1772401, at *7 (D. Colo. May 10, 2011))), *appeal dismissed, leave to appeal denied*, No. 19-628, 2019 WL 4296129 (2d Cir. Aug. 28, 2019); *see*

8

*also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) ("[I]t cannot be said that [the defendant's] failure to seek arbitration with the unnamed class members prior to class certification manifested inconsistency with its arbitration rights, considering that it would have been impossible in practice to compel arbitration against speculative plaintiffs and jurisdictionally impossible for the [d]istrict [c]ourt to rule on those motions before the class was certified."); *Rushing v. Williams-Sonoma, Inc.*, No. 16-CV-1421, 2020 WL 6787135, at *2–3 (N.D. Cal. Oct. 8, 2020) ("[The defendant] could not move to arbitrate claims against [the plaintiff] or against unnamed class members before class certification.  Accordingly, it did not have an existing right to compel arbitration and could not have acted inconsistently with that right."); *Jackson v. Aliera Companies*, No. 19-CV-1281, 2020 WL 4787990, at *4 (W.D. Wash. Aug. 18, 2020) ("[D]istrict courts within this [c]ircuit have determined that a party cannot move to compel putative class members to arbitration prior to class certification because putative class members are not parties to the action." (collecting cases)), *reconsideration denied*, 2020 WL 5984075 (W.D. Wash. Oct. 8, 2020); *Forby v. One Techs., LP*, No. 16-CV-856, 2020 WL 4201604, at *8 (N.D. Tex. July 22, 2020) (stating that the defendants "have not waived their rights to compel arbitration against the absent class members, nor can the court make such determination prior to class certification, as the class members are not yet parties to the litigation" (citing *Cruson v. Jackson Nat'l life Ins. Co.*, 954 F.3d 240, 251 (5th Cir. 2020))); *In re Ductile Iron Pipe Fittings ("DIPF") Direct Purchaser Antitrust Litig.*, No. 12-CV-711, 2016 WL 5508843, at *2 (D.N.J. Sept. 28, 2016) ("The issue should be addressed when all parties to the lawsuit are known and the specific arbitration agreements that [the] [d]efendant wishes to enforce can be identified.  It is not appropriate for the [c]ourt to exclude potential class members from this class action and deprive those individuals of their day in court prior to their being made

9

a party in this case."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ("It does not appear to the [c]ourt that defendants could have moved to compel arbitration against such entities prior to the certification of a class in this case because, as defendants point out, 'putative class members are not parties to an action prior to class certification.'" (quoting *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1091 (S.D. Cal. 2004))).

At least one court in this district has suggested that a defendant may only move to compel arbitration after the notice and opt-out period for the class has ended. *See Chen-Oster*, 449 F. Supp. 3d at 234–35. In *Chen-Oster*, the district court considered whether the defendant waived its right to compel arbitration when the defendant moved to compel arbitration ten years after the lawsuit commenced but three weeks after the opt-out period ended. *See id.* at 235. The district court held that the defendant did not waive its right to compel arbitration because it "moved to compel arbitration at the earliest practical time." *Id.* The district court found that the defendant had "moved expeditiously" when that class was certified in March of 2018, the deadline to opt of out of the class was in mid-January of 2019, and the defendant served individual arbitration demands "[a]bout three weeks later" in February of 2019. *Id.*

Courts in other districts that have considered the related issue of whether a defendant waived its right to compel arbitration have similarly suggested that the end of the opt-out period is the relevant consideration in deciding the timeliness of a motion to compel arbitration.[7] *See*

---

[7] Discover's argument that cases concerning waiver are inapplicable is unpersuasive. The cases on waiver discuss the related issue of when a motion to compel arbitration is properly brought, including the issue of the earliest time when such a motion can be filed. *See, e.g.*, *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234–35 (S.D.N.Y. 2020) (discussing the "earliest practical time" that a motion to compel arbitration can be filed after a class was certified). Accordingly, the Court finds the cases on waiver instructive in deciding whether the instant motion is premature.

10

*Mora v. Harley-Davidson Credit Corp.*, No. 08-CV-1453, 2012 WL 1189769, at *15 (E.D. Cal. Apr. 9, 2012) (finding that the defendant did not waive its right to compel arbitration as to unnamed class members and stating that "until a class is certified *and the opt-out period has expired*, unnamed [c]lass members are not parties to this action, and their claims are not at issue" (emphasis added)), *report and recommendation adopted*, 2012 WL 3245518 (E.D. Cal. Aug. 7, 2012); *see also Monplaisir v. Integrated Tech Grp., LLC*, No. 19-CV-1484, 2020 WL 999825, at *1 (N.D. Cal. Mar. 2, 2020) (stating that the court deferred ruling on the defendants' motion to compel arbitration "until the close of the opt-in period" following the grant of conditional class certification). For example, in *In re DIPF Direct Purchaser Antitrust Litigation*, the court denied a motion seeking to exclude unnamed class members that were subject to an arbitration agreement when the motion was filed before a class was certified. *See In re DIPF Direct Purchaser Antitrust Litig.*, 2016 WL 5508843, at *2. In denying the motion, the court stated that the motion "should be addressed when all parties to the lawsuit are known," and that "[n]ot until the expiration of the opt-out period, if a class is ever certified in th[e] case, would all the parties be aware of the composition of the class." *Id.* Similarly, in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, the court denied the plaintiffs' arguments that the defendants "waived any right to arbitration that might exist between defendants and certain members of the . . . class." 2011 WL 1753784, at *2, *4. The court held that the defendants did not waive their right to compel arbitration because the "composition of the . . . class was not set until the expiration of the opt-out period." *Id.* at *4.

While the Court certified a class in August of 2020, the notice and opt-out period for the Class has not yet expired as Class Counsel has not yet submitted a proposed notice plan to the Court. (*See* Aguilar Decl. ¶ 2 (stating that "Plaintiffs have been actively engaged in working

11

towards establishing an effective class notice regimen" and that "Plaintiffs are still determining the scope and methods of such notice, . . . and will submit their proposed notice plan to the Court as soon as practicable").) Because it is not yet known which Retained Merchants will opt out of the Class and therefore which Retained Merchants will be included in the Class before the Court, the Court denies Discover's motion to compel as premature.[8]  *See Chen-Oster*, 449 F. Supp. 3d at 234–35.

### III. Conclusion

Accordingly, the Court denies Discover's motion to compel as premature. Discover may renew its motion to compel arbitration against the Retained Merchants once the notice and opt-out period for the Class has ended.

Dated: September 27, 2021
      Brooklyn, New York

SO ORDERED:

    s/ MKB    
MARGO K. BRODIE
United States District Judge

---

[8] The Court notes that Retained Merchants have two methods of contracting with Discover: a standard merchant services agreement ("MSA"), or a custom, individually negotiated, MSA. (Decl. of Amy L. Parsons in Supp. of Discover's Mot. ("Parsons Decl.") ¶ 8, Docket Entry No. 755-2.) Merchants who have standard MSAs "accept the terms of the MSA when they accept a Discover card as payment." (*Id.* ¶ 10.) Custom MSAs "typically reflect minor revisions to the standard MSA." (*Id.* ¶ 11.) While Discover contends that the majority of Retained Merchants have standard MSAs with Discover, (*id.* ¶ 9), there are several Retained Merchants with custom MSAs, (*see* Custom Merchants Chart, annexed to Parsons Decl. as Ex. 3, Docket Entry No. 756-2). The existence of these custom MSAs potentially requiring individualized determinations on whether arbitration is warranted, coupled with the lack of notice provided to class members regarding their inclusion in the Class, further supports the Court's decision that it cannot impose a blanket order to compel arbitration on all Retained Merchants at this point in the litigation.