UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

B & R SUPERMARKET, INC., d/b/a Milam's Market, GROVE LIQUORS LLC, STROUK GROUP LLC, d/b/a Monsieur Marcel, and PALERO FOOD CORP. and CAGUEYES FOOD CORP., d/b/a Fine Fare Supermarket, *Individually and on Behalf of All Others Similarly Situated,*

                                      Plaintiffs,

                                       v.

VISA INC., VISA U.S.A., INC., MASTERCARD INTERNATIONAL INC., AMERICAN EXPRESS COMPANY, and DISCOVER FINANCIAL SERVICES,

                                      Defendants.

**PUBLIC VERSION**

**MEMORANDUM & ORDER**
17-CV-2738 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

On September 25, 2024, the Court denied Defendant Discover Financial Services' ("Discover") motion for summary judgment in the above-referenced action ("September 2024 Decision"). (*See* Sept. 2024 Decision, Docket Entry No. 948); Memorandum and Order, *B & R Supermarket*, No. 17-CV-2738, 2024 WL 4334075 (E.D.N.Y. Sept. 25, 2024) (*B&R VII*). On October 10, 2024, Discover moved for reconsideration of the Court's September 2024 Decision. On November 1, 2024, Plaintiffs B & R Supermarket, Inc., doing business as Milam's Market ("B & R Supermarket"), Grove Liquors LLC, Strouk Group LLC, doing business as Monsieur Marcel ("Monsieur Marcel"), and Palero Food Corp. and Cagueyes Food Corp., doing business as Fine Fare Supermarket ("Fine Fare Supermarket") (collectively, "Class Representatives"),

opposed the motion.[1]

For the reasons set forth below, the Court denies Discover's motion for reconsideration.

**I.   Background**

The Court assumes familiarity with the facts and extensive procedural history as set forth in prior decisions, *see B & R Supermarket, Inc. v. Visa Inc.*, No. 16-CV-1150, 2016 WL 5725010 (N.D. Cal. Sept. 30, 2016) (*B&R I*); *B & R Supermarket, Inc. v. MasterCard Int'l Inc.*, No. 17-CV-2738, 2018 WL 1335355 (E.D.N.Y. Mar. 11, 2018) (*B&R II*); *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, No. 17-CV-2738, 2021 WL 234550 (E.D.N.Y. Jan. 19, 2021) (*B&R III*), and as set forth more recently, *see B & R Supermarket, Inc. v. Visa Inc*, No. 17-CV-2738, 2024 WL 3823096 (E.D.N.Y. Aug. 14, 2024) (*B&R IV*); *B & R Supermarket, Inc. v. Visa Inc.*, No. 17-CV-2738, 2024 WL 3949977 (E.D.N.Y. Aug. 15, 2024) (*B&R V*); *B & R Supermarket, Inc. v. Visa Inc*, No. 17-CV-2738, 2024 WL 4252031 (E.D.N.Y. Sept. 13, 2024) (*B&R VI*); *B&R VII*. The Court provides below a summary of *B&R VII* pertinent to Discover's motion.

On July 27, 2023, Discover moved for summary judgment on the grounds that "Plaintiffs have provided no evidence, direct or circumstantial, that Discover's decision to set and then maintain its [fraud liability shift ("FLS")] was the product of an unlawful agreement with the other networks." (Discover's Mem. in Supp. of Discover's Mot. for Summ. J. ("Discover's Summ. J. Mem.") 2, Docket Entry No. 795-1.)  First, Discover argued that "Plaintiffs fail[ed] to identify any direct evidence of Discover's participation in the alleged conspiracy," because "[n]o such evidence exists in the case record." (*Id.* at 12–15 (emphasis omitted).)  Second, Discover

---

[1] (Discover's Mot. for Reconsideration ("Discover's Mot."), Docket Entry No. 954; Discover's Mem. in Supp. of Discover's Mot. ("Discover's Mem."), Docket Entry No. 954-1; Plaintiffs' Mem. in Opp'n to Discover's Mot. ("Pls.' Opp'n"), Docket Entry No. 957-1; Discover's Reply in Supp. of Discover's Mot. ("Discover's Reply"), Docket Entry No. 961.)

2

argued that Plaintiffs "likewise have no circumstantial evidence of Discover's involvement in any conspiracy to set or maintain its FLS that 'tends to exclude the possibility' that the alleged conspirators acted independently." (*Id.* at 16 (internal quotation marks and citation omitted).) Discover argued that Plaintiffs' evidence showed only "unilateral decision making and conscious parallelism," rather than conspiracy, and that Discover acted in its own independent economic interest. (*Id.* at 16–20.) In addition, Discover argued that its participation in trade association activities was insufficient evidence of collusion. (*Id.* at 21–22.)

In *B&R VII*, the Court found that Plaintiffs offered "enough evidence to raise a triable question of fact as to Discover's involvement in the conspiracy." *B&R VII*, 2024 WL 4334075, at \*16. The Court concluded that Plaintiffs did not provide direct evidence of Discover's involvement in the alleged conspiracy, but did offer "sufficient indirect, circumstantial evidence to support their allegation that Discover participated in the conspiracy to set or maintain its FLS." *Id.* (citation and internal quotation marks omitted). First, Plaintiffs identified a document showing that Discover and other networks discussed delaying the liability shift for transit systems. *Id.* The Court determined that "[i]f the networks explicitly discussed aligning on a liability shift for transit systems, it requires only a small inferential step to reason that the networks might also have done so with respect to point-of-sale liability." *Id.* Second, Plaintiffs pointed to an August of 2013 internal Discover presentation suggesting that Discover might "begin negotiations with [Visa] and [Mastercard] to extend fraud liability shift dates" and that it was "not recommended to announce a revised FLS until all brands agree." *Id.* Third, Plaintiffs offered evidence that Discover did not intend to compete with other networks on Europay,

3

Mastercard and Visa ("EMV") migration,[2] although it was in their economic self-interest to do so. *Id.* Fourth, Plaintiffs identified an April of 2014 internal Discover document that stated that "[t]he four major payment networks have aligned on the fraud liability shift dates for POS and automated fuel dispensers." *Id.* Accordingly, because Plaintiffs provided evidence of three "plus factors" — including "a common motive to conspire, evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators, and evidence of a high level of interfirm communications," the Court concluded that Plaintiffs' evidence "tends to exclude the possibility" that Discover was acting independently. *Id.* at 17 (internal citations omitted).

Discover now seeks reconsideration of the Court's decision in *B&R VII*.

## II. Discussion

### a. Standard of review

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 54 (2d Cir. 2019) (same); *see also* S.D.N.Y. & E.D.N.Y. Local Civ. R. 6.3 (providing that the moving party must "set[] forth concisely the

---

[2] EMV technology is "a global standard for credit cards that uses computer chips and chip reader to authenticate (and secure) chip-card transactions." *B & R Supermarket*, No. 17-CV-2738, 2024 WL 4334075, at *1 n.1 (E.D.N.Y. Sept. 25, 2024) (*B&R VII*). EMV securely transmits "dynamic" card information "by creating a unique electronic signature for each transaction." *Id.* EMV technology replaced magnetic stripes, which could "only communicate 'static' information such as the card number and expiration date." *Id.*

4

matters or controlling decisions which counsel believes the court has overlooked"). "Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts . . . ." *Pentacon BV v. Vanderhaegen*, No. 23-CV-2172, 2024 WL 3835334, at *12 (S.D.N.Y. Aug. 15, 2024) (quoting *Cobalt Multifamily Invs. I, LLC v. Shapiro*, No. 06-CV-6468, 2009 WL 4408207, at *2 (S.D.N.Y. Dec. 1, 2009)); *see also Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 2047819, at *5 (S.D.N.Y. June 7, 2022) (same). In addition to considering any evidence or controlling cases the court overlooked, the court should also consider whether there has been "an intervening change of controlling law." *Commerzbank AG*, 100 F.4th at 377 (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992); *Ethridge v. Bell*, 49 F.4th 674, 688 (2d Cir. 2022) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 3159233, at *1 (E.D.N.Y. Apr. 28, 2023) (quoting same).

It is thus well-settled that a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking [another] bite at the apple." *U.S. for Use & Benefit of Five Star Elec. Corp. v. Liberty Mut. Ins. Co.*, 758 F. App'x 97, 101 (2d Cir. 2018) (alteration in original) (quoting *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended*, (July 13, 2012)). "A motion for reconsideration is not an opportunity for a [party] to 'relitigate an issue already decided' or present arguments that could have been made before the judgment was entered." *Ethridge*, 49 F.4th at 688 (quoting *Shrader*, 70 F.3d at 257); *see also Doe v. Martucci*, No. 20-CV-2331, 2024 WL 5118505, at *2 (S.D.N.Y. Dec. 16, 2024) ("[A] motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an

5

opportunity for making new arguments that could have been previously advanced." (quoting *Assoc. Press v. U.S. Dep't of Def.*, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005); *Salveson v. JP Morgan Chase & Co.*, 166 F. Supp. 3d 242, 248 (E.D.N.Y. 2016) ("A motion for reconsideration is 'neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.'" (quoting *Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 425 (S.D.N.Y. 2014))), *aff'd*, 663 F. App'x 71 (2d Cir. 2016).

### b. The Court denies Discover's motion for reconsideration

Discover moves for reconsideration and in support argues that "the Court did not consider controlling and undisputed facts." (Discover's Mem. 1.) First, Discover argues that it is undisputed that, contrary to the Court's conclusion, merchants were part of the Payment Security Taskforce ("PST"). (*Id.* at 4.) Because merchants were part of the PST, Discover argues, "any PST communications with Discover about the EMV transition were common industry communications that do not create an inference of conspiracy." (*Id.* (quotation omitted).) In addition, Discover argues that because it was not a member of the PST's Executive Steering Committee ("SteerCo") before the FLS went into effect, its role in the PST "was no different than any of the various merchants themselves." (*Id.* at 5.) Accordingly, Discover argues, the June 11, 2014 email from an Amex executive claiming that the PST was "loud and clear that everyone should hold firm" to the established liability shift date has no value "as circumstantial evidence" as to Discover's involvement in a FLS conspiracy. (*Id.* at 2, 4–5.) Second, Discover argues that the statement that it was "not recommended to announce a revised FLS until all brands agree," *B&R VII*, 2024 WL 4334075, at *16, in an August of 2013 presentation on "implications of the Durbin amendment" only related to Discover's debit card plans. (Discover's Mem. 5.) Discover contends that the Court "likely conflated Discover's

6

analysis of the debit market with Discover's analysis of its overall fraud liability shift strategy, which would have included credit as well." (*Id.*) In addition, Discover notes that it is undisputed that coordinating with Visa and Mastercard on a FLS date was only one of six options in the August of 2013 presentation, and that it is also undisputed that the presentation recommended and at least one executive, Beth Horowitz, agreed with taking a "wait and see" approach. (*Id.* at 5–6.) Discover also argues that the presentation author "held no decision-making authority at the time" and that there is "no evidence in the record that the suggestion to negotiate with Visa and Mastercard was given any consideration by Discover leadership." (*Id.* at 6.) Discover asserts that the only remaining evidence supporting Discover's alleged collusion with the other networks are (1) "a document exclusively related to the *transit system* FLS," (2) "a *draft* document simply describing Discover's view of its strategic positioning;" and (3) "an internal summary of FLS dates that even this Court admitted 'could be innocently describing a non-collusive coincidence.'" (*Id.* at 3 (quoting *B&R VII*, 2024 WL 4334075, at *16).) Discover argues that this evidence is insufficient to raise a triable question of fact as to Discover's involvement in an FLS conspiracy. (*Id.* at 4.)

Plaintiffs argue that "Discover's claim that the Court made any error of fact is incorrect." (Pls.' Opp'n 2.) First, Plaintiffs argue that the "Court did not overlook that merchants attended PST meetings." (*Id.*) Plaintiffs contend that Discover falsely equates the Court's footnote that it "does not appear that merchants had any input or representation" on the PST, (*id.* (quoting *B&R VII*, 2024 WL 4334075, at *14 n.15)), with Discover's uncontested statement of material fact that "[o]ne or more merchants also participated" in the PST. (*Id.* at 4.) They also note that Visa and Mastercard had limited membership in the PST, that Visa and Mastercard "decided what the PST would be used for and the group's objectives," and rejected merchants like Walmart from

7

participating in the group, even though Walmart's representative stated that "[w]ithout an open governance process" the PST would "continue to put forward a solution which does not fairly represent all of the stakeholders['] concerns." (*Id.* at 5 (citations omitted).) Plaintiffs also argue that the Court's conclusion about the June 11, 2014 email "remains valid regardless of whether merchants 'had any input or representation' on the PST." (*Id.* at 6 (quoting *B&R VII*, 2024 WL 4334075, at *14 n.15).) The Court concluded that the June 11, 2014 email "at a minimum, permits the inference" that the PST gave the networks "an opportunity to communicate regarding Liability Shift dates." (*Id.* at 6 (quoting *B&R VII*, 2024 WL 4334075, at *14).) Plaintiffs argue that this inference stands regardless of whether merchants participated in PST meetings. (*Id.*) Second, Plaintiffs argue that Discover's claims about the August of 2013 presentation merely repackages and relitigates arguments the Court already decided, and relies on undisputed material facts that Discover never presented. (*Id.* at 7.) Plaintiffs argue that Discover's statement of material facts does not mention the Durbin Amendment or state that the "debit plan of attack" is not related to Discover's credit card FLS plan. (*Id.* at 7.) They note that if Discover had made either of those statements, Plaintiffs would have disputed them. (*Id.* at 8.) In addition, Plaintiffs argue that Discover's statement of material facts "says nothing about whether the [wait and see approach] was the only option Discover considered, nor that Beth Horowitz was the one to make the decision, nor that this was an approach that only related to debit cards." (*Id.* at 9.) Plaintiffs also note that Discover ignores the evidence that is consistent with it colluding with Visa and Mastercard on the FLS date, including its attempts to get a position on the PST steering committee. (*Id.*) Finally, Plaintiffs argue that even assuming Discover is correct about the evidence it asserts the Court overlooked or misconstrued, the remaining evidence "alone would

8

be more than sufficient for the Court to have denied Discover's motion for summary judgment." (*Id.* at 3.)

Discover has not demonstrated that the Court failed to "consider controlling and undisputed facts." (Discover's Mem. 1.) The Court recognizes that it is undisputed that merchants were part of the PST, (Pls.' Resp. to Discover's 56.1 & Additional Stmt. of Material Facts ("Pls.' Discover's 56.1 Resp.") ¶ 153, Docket Entry No. 795-4), and that the Court was aware of this but mistakenly stated in a footnote that "it does not appear that merchants had any input or representation" on the PST, *B&R VII*, 2024 WL 4334075, at *14 n.15. However, this does not alter the Court's conclusion that the June 11, 2014 email from an Amex executive that the PST was "loud and clear that everyone should hold firm" to the FLS date is "strong circumstantial evidence from which a jury could reasonably infer that Discover was a participant in the conspiracy." *Id.* at *16. In discussing the June 11, 2014 email, the Court explicitly noted that there was no evidence regarding who made the statement about "hold[ing] firm" to the FLS date, or even whether any of the networks agreed, but that those were "issues of fact concerning the strength of Plaintiffs' evidence" rather than an indication that the email did not support an inference of conspiracy. *Id.* at *14. Discover's participation in the PST remains undisputed, (Discover's Reply 3–4), as does the fact that the PST "was a joint industry group in which [Visa, Mastercard, Amex, and Discover] participated and through which they communicated with each other," *B&R VII*, 2024 WL 4334075, at *14. In other words, the Court concluded that the PST created "an opportunity to communicate regarding Liability Shift dates," *id.*, regardless of which networks were members of the SteerCo or whether merchants had input on the PST, (Discover's Mem. 4–5.) The Court thus declines to reconsider its conclusion about the June 11, 2014 email. *See Xue v. Koenig*, No. 19-CV-7630, 2024 WL 1374954, at *4 (S.D.N.Y. Mar. 31, 2024)

9

(declining to reconsider the court's decision denying defendants' motion for summary judgment because "the allegedly overlooked evidence" was "neither dispositive nor able to outweigh all of the other factors" favoring plaintiff); *Dreni v. PrinterOn Am. Corp.*, No. 18-CV-12017, 2021 WL 4066635, at *8 (S.D.N.Y. Sept. 3, 2021) (denying a motion for reconsideration where plaintiff's "overlooked" evidence was "irrelevant and did not rebut the clear conclusion" the court had articulated in denying plaintiff's motion for summary judgment); *Berry-Mayes v. N.Y.C. Health & Hosps. Corp.*, No. 14-CV-9891, 2017 WL 933097, at *2 (S.D.N.Y. Mar. 8, 2017) (denying a motion for reconsideration where the court's "failure to account" for a piece of evidence "does not alter the outcome of the parties' summary judgment motion[].").

Discover also does not present overlooked facts about the August of 2013 presentation. In discussing the August of 2013 presentation, the Court noted that while it "does not establish that Discover actually approached Visa and Mastercard to align on an extension to the liability shift, the fact that Discover executives considered it an option lends itself to the reasonable inference that Discover may actually have done so." *B&R VII*, 2024 WL 4334075, at *16. The Court's decision, contrary to Discover's argument, explicitly noted that the August of 2013 recommendation to delay announcing a revised FLS date until all networks agree was only one proposal among many that Discover executives considered in response to the Durbin Amendment. *Id.* In addition, Discover's assertion that there is "undisputed evidence that Discover executives decided not to pursue" coordinating with the other networks on a FLS date mischaracterizes Discover's own statement of material facts. (Discover's Mem. 6.) As Plaintiffs argue, while an email chain about the August of 2013 presentation did show that Beth Horowitz agreed "on the wait and see approach," that email also states that Horowitz asked employees "to dig a little deeper on what the impact internally would be if the brands agreed to extend to FLS."

10

(Discover's Stmt. of Undisputed Material Facts ¶ 97 ("Discover's 56.1"), Docket Entry No. 795-2.)  This email does not state that the "wait and see" approach was the only approach Discover considered, nor that Discover executives had settled on any one option.  (*Id.*)  The email in context supports the Court's conclusion that Discover executives considered, among other proposals, coordinating with the other networks on an FLS date.  (*Id.*)  The Court also did not overlook that the presentation referred to Discover's "[d]ebit plan of attack," (Discover's Mem. 5 (alteration in original)), but made the reasonable inference that what Discover considered for its debit plans it could also have considered for its credit plans.  Discover's disagreement with the Court's analysis of the August of 2013 presentation does not constitute overlooked facts warranting reconsideration.  The Court has not overlooked any undisputed facts about the August of 2013 presentation and denies reconsideration on this basis.  *Tatas v. Ali Baba's Terrace, Inc.*, No. 19-CV-10595, 2022 WL 18027620, at *5 (S.D.N.Y. Dec. 30, 2022) (denying reconsideration where the court discussed in its order plaintiff's "significant, admissible evidence on which a reasonable factfinder could decide in his favor" and where there were "no facts that the [c]ourt has overlooked"); *Sunbelt Rentals, Inc. v. McAndrews*, No. 21-CV-774, 2022 WL 603031, at *4 (D. Conn. Feb. 28, 2022) (denying reconsideration because [p]laintiff's view diverges from the [c]ourt's conclusion not because the [c]ourt overlooked critical evidence, but because [p]laintiff disagrees with the [c]ourt's" interpretation of the evidence); *Dejesus v. Malloy*, 582 F. Supp. 3d 82, 89 (W.D.N.Y. 2022) (denying reconsideration of evidence the court considered and discussed in its opinion because plaintiff's "disagree[ment] with the [c]ourt's analysis of that document" does not make it "overlooked evidence.") (quotation marks omitted).

11

### III. Conclusion

For the foregoing reasons, the Court denies Discover's motion for reconsideration.

Dated: February 12, 2025
      Brooklyn, New York

                                      SO ORDERED:

                                      _____s/ MKB_____
                                      MARGO K. BRODIE
                                      United States District Judge