UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

B & R SUPERMARKET, INC., d/b/a Milam's
Market, GROVE LIQUORS LLC, STROUK
GROUP LLC, d/b/a Monsieur Marcel, and
PALERO FOOD CORP. and CAGUEYES FOOD
CORP., d/b/a Fine Fare Supermarket, *Individually
and on Behalf of All Others Similarly Situated,*

                    Plaintiffs,

           v.

VISA INC., VISA U.S.A., INC., MASTERCARD
INTERNATIONAL INC., AMERICAN EXPRESS
COMPANY, and DISCOVER FINANCIAL
SERVICES,

                    Defendants.

-------------------------------------------------------------

**MEMORANDUM & ORDER**
17-CV-2738 (MKB)

MARGO K. BRODIE, United States District Judge:

On September 25, 2024, the Court denied Defendants Visa Inc. and Visa U.S.A., Inc.

(collectively "Visa"), Mastercard International Inc. ("Mastercard"), and Discover Financial

Services' ("Discover") (collectively with Visa and Mastercard, "Defendants") motion for

summary judgment in the above-referenced action ("September 2024 Decision"). (*See* Sept.

2024 Decision, Docket Entry No. 948); Memorandum and Order, *B & R Supermarket, Inc. v.

Visa, Inc.*, No. 17-CV-2738, 2024 WL 4334075 (E.D.N.Y. Sept. 25, 2024) (*B&R VII*). On

October 10, 2024, Visa and Mastercard moved to certify the September 2024 Decision for

interlocutory appeal, and Discover moved to join the motion in its entirety. On November 1,

2024, Plaintiffs B & R Supermarket, Inc., doing business as Milam's Market ("B & R

Supermarket"), Grove Liquors LLC, Strouk Group LLC, doing business as Monsieur Marcel

("Monsieur Marcel"), and Palero Food Corp. and Cagueyes Food Corp., doing business as Fine

Fare Supermarket ("Fine Fare Supermarket") (collectively, "Class Representatives"), opposed

the motion.[1]

 For the reasons set forth below, the Court denies Defendants' motion.

## I. Background

 The Court assumes familiarity with the facts and extensive procedural history as set forth

in prior decisions, *see B & R Supermarket, Inc. v. Visa Inc.*, No. 16-CV-1150, 2016 WL 5725010

(N.D. Cal. Sept. 30, 2016) (*B&R I*); *B & R Supermarket, Inc. v. MasterCard Int'l Inc.*, No. 17-

CV-2738, 2018 WL 1335355 (E.D.N.Y. Mar. 11, 2018) (*B&R II*); *B & R Supermarket, Inc. v.

Mastercard Int'l Inc.*, No. 17-CV-2738, 2021 WL 234550 (E.D.N.Y. Jan. 19, 2021) (*B&R III*),

and as set forth more recently, *see B & R Supermarket, Inc. v. Visa Inc*,  No. 17-CV-2738, 2024

WL 3823096 (E.D.N.Y. Aug. 14, 2024) (*B&R IV*); *B & R Supermarket, Inc. v. Visa Inc.*, 746 F.

Supp. 3d 84(E.D.N.Y. 2024) (*B&R V*); *B & R Supermarket, Inc. v. Visa Inc*, No. 17-CV-2738,

2024 WL 4252031 (E.D.N.Y. Sept. 13, 2024) (*B&R VI*); *B&R VII*; *B & R Supermarket, Inc. v.

Visa, Inc.*, No. 17-CV-2738, 2025 WL 510041 (E.D.N.Y. Feb. 12, 2025) (*B&R VIII*).  The Court

provides below a summary of *B&R VII* pertinent to Defendants' motion.

 In July of 2023, Defendants moved for summary judgment on several grounds.  Visa and

Mastercard argued that Plaintiffs (1) have failed to demonstrate antitrust standing through proof

of injury or damages; (2) lack antitrust standing under *Illinois Brick Co. v. Illinois*, 431 U.S. 720

(1977); (3) have failed to present evidence of two-sided harms as required under *Ohio v. Am.*

---

[1] (Visa & Mastercard's Mot. for Interloc. Appeal ("Defs.' Mot."), Docket Entry No. 953; Visa & Mastercard's Mem. in Supp. of Defs.' Mot. ("Defs.' Mem."), Docket Entry No. 953-1; Discover's Mot. for Joinder to Defs.' Mot. ("Discover's Joinder Mot."), Docket Entry No. 956-1; Pls.' Opp'n to Defs.' Mot. ("Pls.' Opp'n"), Docket Entry No. 957-2; Visa & Mastercard's Reply in Supp. of Defs.' Mot. ("Defs.' Reply"), Docket Entry No. 962.)

*Express Co. (Amex)*, 585 U.S. 529 (2018); (4) have failed to present sufficient evidence of market definition and anticompetitive effect as required under the rule of reason; and (5) have failed to present sufficient evidence of a conspiracy.  (Vias & Mastercard's Mem. in Supp. of Visa & Mastercard's Mot. for Summ. J. ("VM's Summ. J. Mem."), Docket Entry No. 799.) Discover moved for summary judgment solely on the basis that Plaintiffs failed to present sufficient evidence of Discover's participation in any conspiracy.[2]  (Discover's Mem. in Supp. of Discover's Mot. for Summ. J. ("Discover's Summ. J. Mem."), Docket Entry No. 795-1.)

In *B&R VII*, the Court concluded that Plaintiffs have "raised a triable question of fact as to Plaintiffs' direct purchaser status" and denied summary judgment on the basis that Defendants were indirect payors and thus could not establish *Illinois Brick* standing.  *B&R VII*, 2024 WL 4334075, at *6.  The Court referenced a decision denying Visa and Mastercard's motion for summary judgment under *Illinois Brick* in a related litigation where merchants alleged Visa, Mastercard, and a group of card-issuing banks violated Visa and Mastercard's own card acceptance rules and imposed supracompetitive interchange fees on transactions ("MDL 1720").

---

[2]  The Court denied Discover's motion for summary judgment, concluding that Plaintiffs offered "enough evidence to raise a triable question of fact as to Discover's involvement in the conspiracy."  *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-CV-2738, 2024 WL 4334075 at *16–17 (E.D.N.Y. Sept. 25, 2024) (*B&R VII*).  On October 10, 2024, Discover moved for reconsideration of *B&R VII*.  (Discover's Mot. for Reconsideration ("Discover's Mot."), Docket Entry No. 954; Discover's Mem. in Supp. of Discover's Mot. ("Discover's Mem."), Docket Entry No. 954-1.)  Discover argued that "the Court did not consider controlling and undisputed facts," including that (1) merchants were involved in the Payment Security Taskforce (the "PST"), and thus Discover's role in the PST was a "common industry communication[] . . . that d[id] not create an inference of conspiracy" and (2) that the Court conflated Discover's "analysis of the debit market with Discover's analysis of its overall fraud liability shift strategy, which would have included credit as well."  (Discover's Mem. 1–5.)  The Court denied Discover's motion for reconsideration, concluding that Discover did not identify "controlling and undisputed facts" that would have reasonably been expected to alter the Court's decision.  *B & R Supermarket, Inc. v. Visa, Inc.*, No. 17-CV-2738, 2025 WL 510041, at *4 (E.D.N.Y. Feb. 12, 2025) (*B&R VIII*).

3

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720, 2024 WL 3718656, at *7–9 (E.D.N.Y. Aug. 8, 2024) (*Interchange Fees VII*).[3]  In MDL 1720, Visa and Mastercard argued that merchants lack antitrust standing under *Illinois Brick* because merchants do not directly pay the interchange fees.  *Id.* at *2–3.  The Court reasoned that the relevant product is "card-acceptance services" and that because the relevant product is a service rather than a good, the "direct purchaser is not always the same entity as the direct payor."  *Id.* at *3.  In other words, "the identity of the direct payor is often a good proxy for the identity of the direct purchaser, but when the payor and purchaser differ, it is the purchaser who has standing."  *Id.*  The Court has since described its conclusion in MDL 1720 as a holding that the relevant inquiry is identifying "the direct purchaser of card-acceptance services, in part because no party is *purchasing* interchange fees.  Rather, the fees are the price for the service being purchased."  *B&R VII*, 2024 WL 4334075, at *6.  For the same reasons, the Court found that Plaintiffs in *B&R VII* raised a triable question of fact as to their direct purchaser status.  *Id.*  "Just as no merchants in MDL 1720 purchased interchange fees, no party in this case 'purchases' chargebacks."  *Id.*  Chargebacks "constitute a component of the price that merchants (and issuers) pay for card-acceptance (or card-issuance) services."  *Id.* (citing *Interchange Fees V*, 2024 WL 1014159, at *17).  Accordingly, because Plaintiffs presented evidence that merchants are the direct purchasers of card-acceptance services, the Court denied Visa and Mastercard's motion for summary judgment as to Plaintiff's standing under *Illinois Brick*.  *Id.* at *6.

The Court also concluded that "Defendants' conduct, if proven, constitutes a horizontal

---

[3]  For consistency with the related *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litigation*, the Court refers to decisions in that action by the short titles defined in those decisions.  *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 735 F. Supp. 3d 249, 253–54 (E.D.N.Y. 2024).

agreement on price subject to *per se* analysis." *B&R VII*, 2024 WL 4334075, at \*10.  First, the Court found that Defendants' "alleged conspiracy falls into the proscribed *per se* category of a horizontal agreement between competitors that had the effect of raising prices." *Id.* at \*9.  Second, the Court concluded that courts have "considerable experience" with price-fixing agreements like the alleged fraud liability shift ("FLS") in this case, making the agreement ripe for *per se* condemnation. *Id.* (quoting *NCAA v. Alston*, 594 U.S. 69, 89 (2021).  Third, the Court was unpersuaded by Visa and Mastercard's argument that "their alleged conspiracy was necessary to make the product available at all." *Id.*  Finally, because the Court decided that a two-sided analysis under *Amex* is unnecessary in this case, it also concluded that "*Amex* does not mandate a rule of reason analysis." *Id.*

Defendants now seek to certify the above issues to the Second Circuit for appellate review.

## II.  Discussion

### a.  Standard of review

Pursuant to 28 U.S.C. § 1292(b), a district court may certify an interlocutory appeal of an order if the court determines that (1) "such order involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" and (3) "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see also Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 218 n.12 (2d Cir. 2023) (quoting same).  "'Inherent in the requirements of section 1292(b) is that the issue' in the certified order 'be ripe for judicial determination,' because the 'purpose of section 1292(b) is not to offer advisory opinions rendered on hypotheses which (evaporate) in the light of full factual development.'" *Benoit v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d

491, 508 (2d Cir. 2020) (alteration in original) (quoting *Oneida Indian Nation of New York State v. County of Oneida*, 622 F.2d 624, 628 (2d Cir. 1980)).  The party seeking interlocutory appeal has the burden to establish all three section 1292(b) factors.  *See Sec. & Exch. Comm'n v. Coinbase, Inc.*, --- F. Supp. 3d ---, 2025 WL 40782, at *5 (S.D.N.Y. Jan. 7, 2025) ("The party bringing the motion to certify an order for interlocutory appeal bears the burden of demonstrating that the[] [section 1292(b)] criteria are met." (citing *Casey v. Long Island R.R. Co.*, 406 F.3d 142, 146 (2d Cir. 2005))); *In re Great Atl. & Pac. Tea Co., Inc.*, 615 B.R. 717, 722 (S.D.N.Y. 2020) ("A court certifying a decision for interlocutory appeal must be of the opinion that all three of these statutory conditions are met.").  Because "[i]nterlocutory appeals are 'presumptively disfavored,'" *McGraw-Hill Glob. Educ. Holdings, LLC v. Mathrani*, 293 F. Supp. 3d 394, 399 (S.D.N.Y. 2018) (quoting *Youngers v. Virtus Inv. Partners Inc.*, 228 F. Supp. 3d 295, 298 (S.D.N.Y. 2017)), district courts "have unfettered discretion to deny certification," for "'any reason, including docket congestion' and 'the system-wide costs and benefits of allowing the appeal,'" even "where the three legislative criteria of [s]ection 1292(b) appear to be met." *Coinbase, Inc.*, 2025 WL 40782, at *5 (first quoting *Transp. Workers Union of Am., Loc. 100, AFL-CIO v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 351 (S.D.N.Y. 2005); and then quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 530 (S.D.N.Y. 2014)). *See Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996) (noting that "[i]t is a basic tenet of federal law to delay appellate review until a final judgment has been entered" and that 28 U.S.C. § 1292(b) "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals"); *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 697 F. Supp. 3d 126, 132 (S.D.N.Y. 2023) ("Because interlocutory appeals are strongly disfavored, 'only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until

after the entry of a final judgment." (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990))); *Adar Bays, LLC v. Aim Expl., Inc.*, 310 F. Supp. 3d 454, 456 (S.D.N.Y. 2018) ("Certification of an interlocutory appeal 'is not intended as a vehicle to provide early review of difficult rulings in hard cases.'" (quoting *In re Levine*, No. 94-CV-44257, 2004 WL 764709, at *2 (S.D.N.Y. Apr. 9, 2004))).

> **b.    Defendants do not satisfy the substantive requirements for certification of an interlocutory appeal**

The Court finds that Defendants' arguments regarding Plaintiffs' *Illinois Brick* standing do not satisfy any of the section 1292(b) factors. While the Court finds that Defendants' arguments regarding the applicable antitrust standard of review does involve a controlling question of law, and that its resolution would materially advance the litigation, it concludes that there is no ground for a substantial difference of opinion that Defendants' alleged conspiracy is subject to *per se* treatment. Although failure to satisfy any prong of section 1292(b) is fatal to Defendants' motion, the Court discusses Defendants' arguments as to each factor below.

> **i.    Controlling question of law**

To be ripe for interlocutory appeal, the controlling question of law must "refer[] to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Coinbase, Inc.*, 2025 WL 40782, at * 6 (quoting *Capitol Recs., LLC v. Vimeo*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013)); *Fairbank Recons. Corp. v. Greater Omaha Packing Co., Inc.*, No. 13-CV-907S, 2020 WL 7427025, at *4 (W.D.N.Y. Dec. 18, 2020) (same) (quoting *Retail Pipeline, LLC v. JDA Software Grp., Inc.*, No. 17-CV-67, 2018 WL 2298355, at *2 (D. Vt. May 21, 2018)). Where reversal of the district court's order "would terminate the action," it involves a "controlling" question of law. *Klinghoffer*, 921 F.2d at 24. Short of a reversal

necessitating dismissal, at a minimum, the resolution of the issue should "materially affect the litigation's outcome." *In re Great Atl. & Pac. Tea Co., Inc.*, 615 B.R. at 722 (quoting *In re Adelphia Commc'ns Corp.*, 333 B.R. 649, 658 (S.D.N.Y. 2005)); *Coinbase, Inc.*, 2025 WL 40782, at *8 ("[A] question can be 'controlling' if reversal 'could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases.'" (quoting *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, No. 11-CV-5994, 2012 WL 2952929, at *4 (S.D.N.Y. July 18, 2012))). The issue "'need not affect a wide range of pending cases' as long as it is controlling in the instant litigation." *Jackson v. Caribbean Cruise Line, Inc.*, 88 F. Supp. 3d 129, 141 (E.D.N.Y. 2015) (quoting *Klinghoffer*, 921 F.2d at 24). *See also James v. Venture Home Solar, LLC*, 715 F. Supp. 3d 203, 217–18 (D. Conn. 2024) ("[I]n deciding whether there is a controlling question of law, a district court may 'consider whether "reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases."'" (quoting *Murray v. USB Sec., LLC*, No. 12-CV-5914, 2014 WL 1316472, at *3 (S.D.N.Y. Apr. 1, 2014))).

### 1.    *Illinois Brick* **standing**

Defendants argue that "whether Plaintiffs, a class of merchants, have standing to pursue federal antitrust damages to recover chargebacks — which they admit they did not pay directly to Visa or Mastercard — is a controlling question of law." (Defs.' Mem. 3.)  First, they contend that because it is undisputed that merchants do not directly pay chargebacks to Visa and Mastercard, the "only question that remains is the pure question of law of whether they nevertheless have standing to bring antitrust damages under *Illinois Brick*." (*Id.* at 3–4.) Defendants argue that the Second Circuit can decide that question "'quickly and cleanly' by

interpreting the scope of existing legal precedents . . . [and] will not need to delve into the record or address potential disputes of fact." (*Id.* at 3 (*United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*, 521 F. Supp. 3d 275, 275 (E.D.N.Y. 2021)).) Second, Defendants argue the question is "controlling" because "if the Second Circuit holds that Plaintiffs lack standing under *Illinois Brick*, all of their claims against Visa and Mastercard for chargeback damages will be resolved." (*Id.* at 4 (quoting *Quartararo*, 521 F. Supp. 3d at 276; *Batalla Vidal v. Nielsen*, 2018 WL 333515, at *2 (E.D.N.Y. Jan. 8, 2018)).)

Plaintiffs argue that whether they have standing under *Illinois Brick* is a "highly fact intensive" inquiry that the Court properly concluded "is a fact issue to be resolved at trial" rather than a legal issue the Second Circuit can decide "quickly and cleanly." (Pls.' Opp'n 6, 7.) They reference the Court's decision in MDL 1720 that there was a "material dispute[] as to essential facts necessary to determine the identity of the direct purchasers of card-acceptance services." (*Id.* at 7 (quoting *Interchange Fees V*, 2024 WL 1014159, at *17).) Plaintiffs argue that the factual dispute in MDL 1720 is analogous to the dispute in this case about Plaintiffs' direct purchaser status. (*Id.* at 8.) In addition, Plaintiffs argue that this issue is not controlling because even if Visa and Mastercard lack standing under *Illinois Brick*, Plaintiffs' federal claims against American Express and Discover and state law claims against all Defendants would survive. (*Id.*)

The Court's decision regarding Plaintiffs' *Illinois Brick* standing is not a "pure question of law" appropriate for interlocutory review. As the Court has explained, "[a]lthough *Illinois Brick* standing is a matter of law, a jury may find the facts necessary for the Court to establish standing or the lack thereof." *Interchange Fees V*, 2024 WL 1014159, at *11 n.20.[4] Antitrust

---

[4]    The Court previously noted that *Illinois Brick* did not technically announce a standing rule, but "[b]ecause *Illinois Brick* and the direct-purchaser rule amount to a complete bar to

standing "is a fact-specific exercise involving a fact-intensive inquiry."  *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*, 366 F. Supp. 3d 516, 532 (S.D.N.Y. 2018) (quoting *In re Platinum & Palladium Antitrust Litig.*, No. 14-CV-9391, 2017 WL 1169626, at *20 (S.D.N.Y. Mar. 28, 2017); *see also In re Aluminum Warehousing Antitrust Litig.*, 520 F. Supp. 3d 455, 472 n.24 (S.D.N.Y. 2021) ("[A] determination of standing in an individual antitrust case is highly fact-specific" (citing *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 536–37 (1983))).  Defendants fail to show that the issue of Plaintiffs' *Illinois Brick* standing is a legal issue that an appellate court can decide without studying the factual record.  *Teta v. Go N.Y. Tours, Inc.*, No. 24-CV-1614, 2024 WL 4850844, at *3 (S.D.N.Y. Nov. 21, 2024) ("Allowing an interlocutory appeal in this instance would 'require the Second Circuit to review this [c]ourt's application of the law to the facts presented by the parties.'" (quoting *In re Facebook*, 986 F. Supp. 2d at 536)); *Adar Bays*, 310 F. Supp. 3d at 456 (denying interlocutory appeal where the issue before the court was "a mixed question of law and fact that requires review of evidence in the factual record and is therefore not a 'controlling question of law' appropriate for interlocutory appeal." (quoting 28 U.S.C. §1292(b))); *In re Facebook*, 986 F. Supp. 2d at 536 ("[M]ixed questions of law and fact are not appropriate for certification under § 1292(b)." (quoting *Freeman v. Nat'l Broadcasting Co., Inc.*, No. 85-CV-3302, 1993 WL 524858, at *2 (S.D.N.Y. Dec. 15, 1993))).

### 2.    Applicable antitrust standard of review

Defendants argue that "the relevant legal standard for assessing Plaintiffs' claims . . . is also a controlling question of law."  (Defs.' Mem. 4.)  First, Defendants contend that "[c]ourts

---

recovery in damages for indirect purchasers, it has come to be treated by courts as a standing rule."  *Interchange Fees V*, 2024 WL 1014159, at *7 n.14.

around the country have recognized that the standard of review for an alleged restraint on trade is a 'question of law' appropriate for an interlocutory appeal." (*Id.* (citations omitted).) Second, they contend that the question is "controlling" because it will "fundamentally shape the issues and evidence to be considered in subsequent phases of the litigation." (*Id.* at 4–5.)

Plaintiffs argue that whether the *per se* standard of review is applicable in this case is a question "rife with factual characterizations and determinations." (Pls.' Opp'n 9.) Accordingly, Plaintiffs contend that "an appeal of the Court's ruling on the applicable antitrust standard presents a mixed question of law and fact, which is not suitable for interlocutory appeal." (*Id.* at 11.) In addition, Plaintiffs argue that this issue is not controlling because "[t]he Court would still need to hold a trial on the same claims that are before the Court now" regardless of the Second Circuit's decision on the applicable standard of review. (*Id.*)

Defendants have demonstrated that the applicable antitrust standard of review is a controlling question of law. The Second Circuit has held that determining whether the *per se* rule or rule of reason applies to alleged anticompetitive conduct is a question of law. *See United States v. Aiyer*, 33 F.4th 97, 113–14 (2d Cir. 2022) (explaining that the "analytical framework under the Sherman Act — the *per se* rule or the rule of reason — should be applied in assessing the alleged offense conduct" raises a "question of law"); *Borozny v. Raytheon Techs. Corp.*, 2023 WL 348323, at *5 (D. Conn. Jan. 20, 2023) ("Determining whether conduct should be analyzed under the *per se* or rule of reason framework is a question of law for the [c]ourt to decide." (citing *Aiyer*, 33 F.4th at 113–14)). Determining the appropriate antitrust standard of review "could significantly affect the conduct of the action," *In re Facebook*, 986 F. Supp. 2d at 536 (quoting *Glatt v. Fox Searchlight Pictures Inc.*, No. 11-CV-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013)), because it will determine the scope of Plaintiffs' claims at trial and

the burden the parties must carry to prevail. While the rule of reason standard applies a "three-step, burden-shifting framework," requiring "courts to conduct a fact-specific assessment of 'market power and market structure . . . to assess the [restraint]'s actual effect' on competition," *Amex.*, 585 U.S. at 541 (quoting *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 768 (1984)), the *per se* standard does not require a "study [of] the reasonableness of an individual restraint" because they are "categorically unreasonable restraints on trade, given their inherently anticompetitive nature." *Aiyer*, 33 F.4th at 114–15 (first citing *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997); then quoting *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 886 (2007)). If the Second Circuit reverses the Court's decision on the antitrust standard of review, it will "narrow the action's scope," *Coinbase, Inc.*, 2025 WL 40782, at *8, because of the vastly different burdens of proof under the *per se* and rule of reason standards. The applicable antitrust standard of review is, therefore, a controlling question of law. *See id.* (finding a question of law is controlling where "reversal here would 'dispose of the [plaintiff's] principal claims, which account for the bulk of the complaint's factual allegations'"); *Pentacon BV v. Vanderhaegen*, No. 23-CV-2172, 2024 WL 3835334, at *14 (S.D.N.Y. Aug. 15, 2024) (explaining a question of law is controlling where "a definitive answer . . . would narrow and streamline the action in several key respects." (internal quotation marks omitted)); *New York v. Arm or Ally, LLC*, No. 22-CV-6124, 2024 WL 2270351, at *3 (S.D.N.Y. May 20, 2024) (finding a question of law is controlling where it would "significantly affect the conduct of the action" even if it would not "terminate th[e] action." (quoting *In re A2P SMS Antitrust Litig.*, No. 12-CV-2656, 2015 WL 876456, at *3 (S.D.N.Y. Mar. 2, 2015))).

### ii.    Substantial ground for a difference of opinion

A substantial ground for a difference of opinion may exist when (1) "there is conflicting authority on the issue, or" (2) "the issue is particularly difficult and of first impression for the Second Circuit." *Coinbase, Inc.*, 2025 WL 40782, at *9 (quoting *In re Enron Corp.*, No. 06-CV-7828, 2007 WL 2780394, at *1 (S.D.N.Y. Sept. 24, 2007); *Pen Am. Ctr., Inc. v. Trump*, No. 18-CV-9433, 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) (same) (quoting *Whyte v. Wework Cos., Inc.*, No. 20-CV-1800, 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020)).  "There must be more than 'simple disagreement' on the issue."  *Danaher Corp. v. Travelers Indem. Co.*, No. 10-CV-121, 2020 WL 6712193, at *1 (S.D.N.Y. Nov. 16, 2020) (quoting *Garber v. Off. of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014)); *James*, 715 F. Supp. 2d at 218 ("Substantial ground for a difference of opinion requires more than a claim that the court's ruling was wrong. . . . [S]imply because a question is particularly difficult does not mean that there is a difference of opinion." (quoting *United States ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010))).  However, "when a question meets the standards set forth in [section] 1292(b) and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'"  *Tantaros v. Fox News Network*, 465 F. Supp. 3d 385, 391 (S.D.N.Y. 2020) (quoting *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013)); *see also Benoit*, 959 F.3d at 508 ("[T]here is ample ground for difference of opinion as to whether New York law recognizes the availability of medical monitoring for a claim based solely on property damage."); *Mei Xing Yu v. Hasaki Rest., Inc.*, 874 F.3d 94, 98 (2d Cir. 2017) (concluding that there was substantial ground for difference of opinion demonstrated by "the differing rulings within this Circuit"); *Zakrzewska v. New Sch.*, 574 F.3d 24, 27 (2d Cir. 2009) (granting a motion for interlocutory appeal based on the district court's statement that its

"conclusion is not free from doubt" (quoting *Zakrzewska v. The New Sch.*, 598 F. Supp. 2d 426, 437 (S.D.N.Y. 2009))); *Weber v. United States*, 484 F.3d 154, 159 (2d Cir. 2007) (stating that part of Congress' intent in passing section 1292(b) was "to assure the prompt resolution of knotty legal problems"); *Seneca Nation v. Cuomo*, 484 F. Supp. 3d 65, 78 (W.D.N.Y. 2020) (noting a substantial ground for opinion where the case law was "less than crystal clear").

The district court must "analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *Coinbase, Inc.*, 2025 WL 40782, at *10 (quoting *Capitol Recs., LLC*, 972 F. Supp. 2d at 551); *Pen Am. Ctr., Inc.*, 2020 WL 5836419, at *2 (same) (quoting *Flor v. Bot Fin. Corp. (In re Flor),* 79 F.3d 281, 284 (2d Cir. 1996)); *see also Weintraub v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, 593 F.3d 196, 200 (2d Cir. 2010) (affirming district court's conclusion that there was substantial ground for difference of opinion as to the status of a public employee who reports on an issue of public concern in his workplace).

### 1.   *Illinois Brick* standing

Defendants argue that "[t]here exists a substantial ground for a difference of opinion on this Court's conclusion that Plaintiffs have standing under *Illinois Brick* to seek antitrust damages against Visa and Mastercard." (Defs.' Mem. 5.)  First, Defendants argue that the Court's holding that "when the payor and purchaser differ, it is the purchaser who has standing" is "novel and at least arguably conflicts with the Second Circuit's decision in *Paycom*." (*Id.* at 6 (quoting *B&R VII*, 2024 WL 4334075, at *6).)  Defendants contend that the Second Circuit's "focus on the direct 'payor'" in *Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283 (2d Cir. 2006), "tracks the Supreme Court's "core rationale for the *Illinois Brick* rule." (*Id.* at 7.)  They argue that in *Paycom*, as in this case, merchants challenged chargeback systems

14

associated with payment card network services, and as in this case, the acquiring bank decided "whether to assess the chargeback against the merchant's account." (*Id.* at 6 (quoting *Paycom*, 467 F.3d at 291).)  The Second Circuit concluded that "even if one hundred percent of the chargebacks . . . were passed-on, Paycom, as an indirect payor of the chargebacks . . . , would still lack antitrust standing." (*Id.* at 7 (quoting *Paycom*, 467 F.3d at 291–92).)  Accordingly, Defendants argue, the Second Circuit in *Paycom*, like the Supreme Court in *Illinois Brick*, conferred standing on those "who directly paid the overcharge to the alleged antitrust violator so as not to trace that direct payment of the overcharge through multiple intermediaries." (*Id.*)  In addition, Defendants argue that subsequent Supreme Court and appellate decisions "establish and reaffirm — including in the payment card industry and specifically in *Paycom* as to chargebacks — that antitrust standing exists only for the 'direct payor.'" (*Id.* at 9.)  For example, Defendants argue that in *Apple, Inc. v. Pepper*, 587 U.S. 273, 281 (2019), the Supreme Court concluded that iPhone owners are "direct purchasers" because they "pay the alleged overcharge directly to Apple." (*Id.* at 8.)  They also argue that *Salveson v. JP Morgan Chase & Co.*, 663 F. App'x 71 (2d Cir. 2016), *In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012), and *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042 (9th Cir. 2008) "reflect the same understanding." (*Id.* at 7–8.)  Second, Defendants contend that the Court's decision is not "free from doubt" because "every payment card case of which Visa and Mastercard are aware" other than the Court's decisions in *B&R VII* and MDL 1720, have "held that the acquiring bank (or, for ATM transactions, the issuing bank) is the 'direct purchaser' for *Illinois Brick* purposes." (*Id.* (citation omitted))

Plaintiffs argue that the Court's *Illinois Brick* analysis was consistent with authority and there is no grounds for a substantial difference of opinion. (Pls.' Opp'n 11–12.)  First, they argue that Defendants "attempt to manufacture a dispute" by claiming that the Court's decision

15

conflicts with *Paycom*, but that their argument is "nothing more than picking one aspect of the Court's decision, and one of Visa and Mastercard's supporting authorities, and claiming that there is a substantial ground for a difference of opinion." (*Id.* at 12–13.) Second, they argue that Defendants' argument that the Court's conclusion conflicts with *Paycom* overlooks that Paycom did not "plead facts that would support a finding that Paycom was a direct purchaser," while Plaintiffs in this case have alleged that they directly purchase card-acceptance services. (*Id.* at 13 (quoting *Interchange Fees V*, 2024 WL 1014159, at *13).) Third, Plaintiffs argue that Defendants improperly imply that *Paycom* "overrules or expands *Illinois Brick* itself by creating an 'indirect payor' rule." (*Id.*) Plaintiffs argue that *Paycom* used the term "'indirect payor' just one time, without defining it or contrasting it to indirect purchaser," and that the term "indirect purchaser" is inapposite in this case "where Plaintiffs have alleged merchants are direct purchasers." (*Id.* at 14.) They contend that Defendants' focus on "who pays" rather than "who is the direct purchaser" would "reduce the *Illinois Brick* concept to a meaningless abstraction for all but basic cash-based transactions." (*Id.* at 15.) Fourth, Plaintiffs argue that none of the cases Defendants cite use the term "payor" or "direct payor," which Plaintiffs argue is "unsurprising" because the plaintiffs in other cases "failed to plead facts that would have supported finding that they were direct purchasers." (*Id.* at 14 (quoting *Interchange Fees V*, 2024 WL 1014159, at *13 n.22).) They argue that the Supreme Court did not support Defendants' "who pays" theory in *Apple*, but rather reaffirmed *Illinois Brick*'s straightforward conclusion that because iPhone owners bought apps directly from Apple, they were "direct purchasers," just as Plaintiffs in this case purchased chargebacks from Defendants. (*Id.* at 15–16.)

Defendants have not identified a substantial ground for a difference of opinion on the issue of Plaintiffs' *Illinois Brick* standing. First, *Illinois Brick* and *Apple* "are clear that direct

purchasers have standing." *Interchange Fees V*, 2024 WL 1014159, at *12.  The Court's conclusion that "when the [direct] payor and [direct] purchaser differ, it is the purchaser who has standing," *B&R VII*, 2024 WL 4334075, at *6, is not "novel," but relies on binding Supreme Court precedent.  (Defs.' Mem. 6.)  Government plaintiffs in *Illinois Brick* were not direct purchasers of concrete block, and accordingly the Supreme Court concluded that they did not have federal antitrust standing, 431 U.S. at 723–27.  By contrast, the Supreme Court found that "iPhone owners bought the apps directly from Apple" and "[t]herefore, under *Illinois Brick*, the iPhone owners were direct purchasers," *Apple*, 587 U.S. at 278–79.  It was not, as Defendants argue, "[t]he direct *payment* to Apple . . . [that] made those iPhone owners the direct purchaser," (Defs.' Mem. 8), but rather that "iPhone owners purchase[d] apps directly from the retailer Apple, who is the alleged antitrust violator." *Apple*, 587 U.S. at 281.  As the Supreme Court explained in *Apple*, the "sole question" under *Illinois Brick* is "whether [Plaintiffs] were 'direct purchasers'" of apps from Apple.  *Id.* at 278.  As the Court concluded in *B&R VII*, Defendants' focus on who directly paid chargebacks, rather than whether Plaintiffs were direct purchasers of card-acceptance services, does not address the relevant inquiry under *Illinois Brick*.  2024 WL 4334075, at *6.

Second, the Court's conclusion does not conflict with the Second Circuit's decision in *Paycom*, or with other appellate decisions about *Illinois Brick* standing.  As the Court previously explained in *Interchange Fees V*, the cases Defendants characterize as conflicting with the Court's conclusion are distinguishable because plaintiffs in those cases did not plead facts that would support a finding that they were direct purchasers, and in some cases conceded that they indirect purchasers.  *See B&R VII*, 2024 WL 1014159, at *13 ("*Paycom* is distinguishable by Paycom's failure to plead facts that would support a finding that Paycom was a direct

purchaser."); *id.* (agreeing with Plaintiffs that *Kendall* was distinguishable from this case because merchant-plaintiffs in *Kendall* "conceded that they were indirect purchasers"); *id.* ("Similarly, in *In re ATM Fee*, the plaintiffs conceded that they had not directly paid interchange fees, but that, instead, card-issuing banks paid the interchange fees and then passed on the costs in the form of inflated ATM fees."); *id.* at *15 (explaining that in *Salveson*, the Second Circuit did not consider who "directly purchase[d] card-acceptance services").

The Court's decision in *B&R VII* comports with Supreme Court and Second Circuit precedent on direct purchaser standing. Defendants have thus failed to show either that there is conflicting authority on the issue of Plaintiffs' *Illinois Brick* standing, or that the issue is particularly difficult and warrants interlocutory review. *Estate of Henkin v. Kuvyet Turk Katilim Bankasi A.S.*, No. 19-CV-5394, 2025 WL 622546, at *6 (E.D.N.Y. Feb. 25, 2025) (denying interlocutory appeal where the court concluded it had properly denied defendant's motion "under both the standards articulated by Second Circuit precedent and the Supreme Court"); *James*, 715 F. Supp. 3d at 218–19 (denying interlocutory review where the court's ruling followed relevant Second Circuit and Supreme Court precedent); *In re Bernard L. Madoff Inv. Sec. LLC*, No. 24-CV-11, 2024 WL 418154, at *4 (S.D.N.Y. Feb. 2, 2024) (finding no difference of opinion where the moving party merely disagreed with the court's application of the law, and noting that "if a party's disagreement with a court's analysis constituted substantial ground for a difference of opinion, 'every [court] order would provide grounds for a "substantial difference of opinion" warranting interlocutory appeal'" (quoting *Analect LLC v. Fifth Third Bancorp*, No. 06-CV-891, 2009 WL 2568540, at *5 (E.D.N.Y. Aug. 19, 2009))).

## 2.    Applicable antitrust standard of review

Defendants argue that "in light of the novelty and complexity of the alleged agreement, there is a substantial ground for a difference in opinion" on whether the alleged conspiracy should be subject to a *per se* standard.  (Defs.' Mem. 11–12.)  First, they argue that "[n]either the Plaintiffs nor the Court identified any case law that has addressed — or even contemplated — whether an alleged conspiracy not to delay implementing a fraud liability shift in connection with the migration of entire networks to more secure technology should be subject to *per se* condemnation."  (*Id.* at 10.)  Defendants contend that "it is far from clear that the networks' alleged agreement not to delay implementing" the FLS "is the same as an agreement to fix price."  (*Id.* at 11.)  Second, Defendants argue that because the "alleged restraint [wa]s implemented in connection with a larger endeavor — the migration to EMV chip cards — the existing case law is far from clear that such a restraint . . . has no purpose except stifling competition" and should be evaluated under a *per se* standard.  (*Id.* at 11–12.)

Plaintiffs argue that the "nature of the agreement in this case" does not "present a substantial ground for a difference of opinion."  (Pls.' Opp'n 18–19.)  First, they argue that Defendants attempt to "dress[] up" their alleged price-fixing conspiracy with "new terminology," (*id.* at 17), but the Court correctly concluded that the alleged conspiracy in this case is not "so novel that the Court is unfamiliar 'with the type of restraint at issue'" and cannot apply a *per se* analysis, (*id.* at 18 (quoting *B&R VII*, 2024 WL 4334075, at *9)).  Second, Plaintiffs argue that Defendants improperly challenge the Court's factual finding that the liability shift raised prices.  (*Id.* at 19.)  They contend that Defendants therefore challenge a "mixed question of law and fact," which is "unsuitable for interlocutory appeal."  (*Id.*)  Third, Plaintiffs argue that it is uncontroversial that "agreements with price effects are reviewed under the *per se* standard."  (*Id.*

at 19.)  Finally, Plaintiffs contend that, "[c]ontrary to Visa and Mastercard's arguments, the Court made the required findings that the agreement was a naked restraint [of trade] that had no purpose except stifling competition" and thus properly applied the *per se* standard.  (*Id.* at 21.)

Defendants fail to demonstrate that there is a substantial ground for a difference of opinion as to the applicability of the *per se* standard.  As the Court explained in *B&R VII*, "the fact that the alleged price fixing in this case takes the form of a liability shift does not make it so novel that the Court is unfamiliar 'with the type of restraint at issue.'"  2024 WL 4334075, at *9 (quoting *Alston*, 594 U.S. at 89).  Defendants' alleged FLS conspiracy "increase[d] the cost of a transaction in expectation" by making "accepting credit card transactions more costly than prior to the liability shift."  *Id.* at 9 n.11.  In other words, Defendants' alleged conspiracy raised the price merchants paid for card-acceptance services — the exact type of "horizontal agreement between competitors that had the effect of raising prices" that "falls into the proscribed *per se* category."  *Id.* at 9.  *See Aiyer*, 33 F.4th at 115 (explaining that "bid rigging — which is simply another 'form of horizontal price fixing' — is a *per se* violation of the Sherman Act"); *United States v. Apple, Inc.*, 791 F.3d 290, 327 (2d Cir. 2015) ("[I]t is well established that *per se* condemnation is not limited to agreements that literally set or restrict prices.  Instead, any conspiracy 'formed for purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity . . . is illegal *per se*,' and the precise 'machinery employed . . . is immaterial.'") (quoting *United States v. Socony-Vacuum Oil*, 310 U.S. 150, 223 (1940)).

In addition, the Court is not persuaded by Defendants' argument that because the "alleged restraint is implemented in connection with a larger endeavor," the agreement is not a "naked restraint of trade with no purpose except stifling of competition" and thus excerpted from *per se* review.  (Defs.' Mem. 11–12 (quoting *Giordano v. Saks Inc.*, 654 F. Supp. 3d 174, 200

(E.D.N.Y. 2023).)  "'Naked' restraints" are "restriction[s] on competition" that are "unaccompanied by new production or products." *Major League Baseball Props. Inc. v. Salvino, Inc.*, 542 F.3d 290, 339 (2d Cir. 2008) (Sotomayor, J., concurring) (quoting *Polk Bros., Inc. v. Forest City Enters., Inc.* 776 F.2d 185, 188–89 (7th Cir. 1985)).  They are contrasted with ancillary restraints, which are restraints that are "part of a larger endeavor whose success they promote" and subject to the rule of reason.  *Id.*  Ancillary restraints "govern[] the validity of restrictions imposed by a legitimate business collaboration, such as a business association or joint venture, on nonventure activities." *Aiyer*, 33 F.4th at 115 (quoting *Texaco Inc. v. Dagher*, 547 U.S. 1, 7 (2006)).  Under the ancillary restraints doctrine, "courts must determine whether the nonventure restriction is a naked restraint on trade, and thus invalid, or one that is ancillary to the legitimate and competitive purposes of the business association, and thus valid." *Id.* at 115–16 (quoting *Dagher*, 547 U.S. at 7).  The Court rejected Defendants' ancillary restraints arguments in *B&R VII*.  As the Court explained, Defendants did not show that price-fixing was "necessary for the product to exist at all," and thus warranted an exception to *per se* condemnation.  *B&R VII*, 2024 WL 4334075, at *8–9.  The Court stated that "to the extent that the product is credit card transactions or card-acceptance services, those existed long before Defendants ever contemplated shifting liability for fraudulent transactions to merchants." *Id.* at *9.  The Court further explained "to the extent that Visa and Mastercard contend their conspiracy was necessary to implement EMV, this argument is belied by evidence in the record showing that Visa and Mastercard were able to transition to EMV in other countries with staggered liability shift dates and without conspiring to fix an artificially premature liability shift date." *Id.*  In conclusion, the Court found that Defendants' alleged conspiracy was not "legitimate business collaboration" with a "competitive purpose[]," *Aiyer*, 33 F.4th at 115–16, but rather "a naked

restraint" on competition. *Id.* As discussed above, there is no difference of opinion that naked restraints of trade are subject to *per se* treatment. *Id.* at 115 ("The paradigmatic example of a *per se* illegal restraint on trade under the Sherman Act is a horizontal conspiracy to fix prices with competitors." (citing *Socony-Vacuum Oil Co.*, 310 U.S. at 223)).

The Court has already considered, and found unpersuasive, all of Defendants' arguments against the application of the *per se* rule. *B&R VII*, 2024 WL 4334075, *8–10. Accordingly, there is no substantial ground for a difference of opinion regarding the antitrust standard of review warranting interlocutory appeal. *See Teta*, 2024 WL 4850844, at *4 (finding no difference of opinion where the court's decisions "does not conflict with other decisions in this [d]istrict and does not involve difficult legal issues"); *In re Goldman Sachs Grp., Inc. Sec. Litig.*, No. 10-CV-3461, 2014 WL 5002090, at *3 (S.D.N.Y. Oct. 6, 2014) ("A mere disagreement or the possibility of a different outcome on appeal is not sufficient to show a substantial ground for difference of opinion.").

### iii.  Materially advance the litigation

A party may show that an interlocutory appeal would "materially advance" the litigation by demonstrating that the appeal "promises to advance the time for trial or to shorten the time required for trial." *Coinbase, Inc.*, 2025 WL 40782, at *12 (quoting *Transp. Workers*, 358 F. Supp. 2d at 350); *Tantaros*, 465 F. Supp. 3d at 389 (same) (quoting *Florio v. City of N.Y.*, No. 06-CV-6473, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008)). This factor carries particular weight, and is "'closely connected' to the first factor." *Capitol Recs., LLC*, 972 F. Supp. 2d at 551 (quoting *In re 650 Fifth Ave.*, No. 08-CV-10934, 2012 WL 363118, at *2 (S.D.N.Y. Feb. 2, 2012)). "In evaluating this factor, courts must consider the 'institutional efficiency of both the district court and the appellate court.'" *Coinbase, Inc.*, 2025 WL 40782, at *12 (quoting *Sec. &*

*Exch. Comm'n v. Rio Tinto PLC*, No. 17-CV-7994, 2021 WL 1893165, at *2 (S.D.N.Y. May 11, 2021)).

### 1. *Illinois Brick* standing

Defendants argue that interlocutory appeal would materially advance the litigation because it would "either . . . resolv[e] the claims against Visa and Mastercard in their entirety" or "shorten[] the time until their final resolution." (Defs.' Mem. 12–13.)  First, Defendants argue that if the Second Circuit concludes Plaintiffs lack standing under *Illinois Brick*, a substantial part of the case will be dismissed.  (*Id.* at 13.)  Second, "[a]ny decision from the Second Circuit will also provide guidance for the rest of the interchange and network fee damages claims in the other MDL 1720 remand cases."  (*Id.* at 14.)  Third, an interlocutory appeal will "help solidify the parties' bargaining positions and promote settlement" because the "relevant legal standard governing Plaintiffs' claim is a fundamental issue at the heart of this case."  (*Id.* (citations omitted).)

Plaintiffs argue that "[t]he certification of this matter following summary judgment would impede the progress of this case." (Pls.' Opp'n 22.)  First, they argue that interlocutory appeal will "simply delay and complicate the ultimate adjudication of this matter" because the issues Defendants raise are "heavily entwined with the factual record of this case, which will not be complete until trial." (*Id.* at 23.)  Second, Plaintiffs contend that courts disfavor interlocutory appeal following a denial of summary judgment, and that certification might also "impede th[e] Court's ability to try the case in a timely fashion." (*Id.* (citations omitted).)  Third, they argue that even if Plaintiffs lose standing for their federal claims under *Illinois Brick*, their federal claims against American Express and Discover and state law claims would survive.  (*Id.*)  Finally, Plaintiffs argue that Defendants' "maneuvering" has "nothing to do with efficiency, and

everything to do with their attempt to rehash and relitigate issues they have already lost." (*Id.* at 25 (citations omitted).)  In particular, Plaintiffs argue that Defendants' claim that a "decision from the Second Circuit in this case would materially advance other pending payment card cases," including MDL 1720, but question why Defendants did not seek interlocutory appeal of the Court's MDL 1720 ruling until the Court remanded the actions back to the transferring court. (*Id.* (quoting Defs.' Mem. 14; *see also* Defs.' Mem. 14 n.5 ("Moreover, in both the 7-Eleven and Target MDL remand actions, Judge [Alvin K.] Hellerstein has currently pending before him a motion seeking further consideration of the MDL 1720 Court's *Illinois Brick* ruling as to interchange, network fees, and chargebacks.").).)[5]

---

[5]  On December 18, 2024, Judge Hellerstein denied Visa and Mastercard's motion for a revised summary judgment ruling ("Judge Hellerstein's December 2024 Order").  *Target Corp. v. Visa, Inc.*, No. 13-CV-3477, 2024 WL 5155295, at *1 (S.D.N.Y. Dec. 18, 2024).  He agreed with the Court's conclusion in *Interchange Fees V* that "[w]hether [p]laintiffs were direct or indirect purchasers of [d]efendants' services cannot be decided by summary judgment.  It must be tried by a jury. . . ."  *Id.* at *3.  He also explained that *Paycom Billing Servs. v. Mastercard Int'l, Inc.*, 467 F.3d 283 (2d Cir. 2006) and *Salveson v. JP Morgan Chase & Co.*, 663 F. App'x 71 (2d Cir. 2016) are distinguishable because plaintiffs in *Interchange Fees V* "show[] a genuinely-disputed issue of material fact as to whether [p]laintiffs or the acquiring banks directly suffered [d]efendants' antitrust violations."  *Id.*  Plaintiffs argue that Judge Hellerstein's December 2024 Order is "contrary to Visa and Mastercard's arguments that the Court's *Illinois Brick* analysis" was novel and presented a "substantial ground[] for difference of opinion" or conflicted with the Second Circuit's decisions in *Paycom* or *Salveson*.  (Pls.' Ltr. Regarding Judge Hellerstein's Dec. 2024 Order 1–2, Docket Entry No. 964.)  They conclude that Judge Hellerstein's December 2024 Order supports Plaintiffs' opposition to Defendants' motion for interlocutory appeal.  (*Id.*)  Visa and Mastercard contend that Judge Hellerstein's December 2024 Order "did not address the legal question on which Defendants seek appellate guidance." (Visa and Mastercard's Ltr. Regarding Judge Hellerstein's Dec. 2024 Order 1, Docket Entry No. 965.)  They argue that Judge Hellerstein did not address "that every appellate court that has applied the *Illinois Brick* test to the payments card industry has held that the appropriate legal test is whether plaintiffs are 'direct payors,'" or that "no appellate court has held that an 'indirect payor' may be a 'direct purchaser.'"  (*Id.* (citation omitted).)  In addition, Visa and Mastercard argue that Judge Hellerstein's December 2024 Order does not address the fact that acquiring banks in *B&R* "chose not infrequently to absorb EMV chargebacks rather than pass them on to merchants," and that this "lack of a factual dispute . . . that acquirers directly pay chargebacks to issuers provides a record on which the Second Circuit can 'quickly and cleanly' address" the

Defendants have not shown that an immediate appeal of Plaintiffs' *Illinois Brick* standing would advance the ultimate termination of litigation. The Second Circuit's decision on Plaintiffs' *Illinois Brick* standing would not "advance the time for trial" or "shorten the time required for trial." *In re Facebook*, 986 F. Supp. 2d at 531. As Plaintiffs argue, even if the Second Circuit decided that Plaintiffs' federal antitrust claims were barred under *Illinois Brick*, Plaintiffs' state law claims would survive, which "Mastercard and Visa admit are based on the same arguments." (Pls.' Opp'n 23.) Plaintiffs' federal antitrust claims against Discover and American Express would also survive. (*Id.*) Certifying the question of Plaintiffs' *Illinois Brick* standing would thus not advance the termination of litigation because Plaintiffs would still have federal and state antitrust claims ready for trial regardless of the Second Circuit's decision. *In re Facebook*, 986 F. Supp. 2d at 532 (explaining certification would not materially advance litigation because "the litigation will continue to advance in substantially the same manner as if the interlocutory appeal had never occurred"); *Colon v. Metro-N. Commuter R.R. Co.*, No. 13-CV-325, 2017 WL 1375166, at *2 (D. Conn. Apr. 10, 2017) ("[T]he appeal would not materially advance the litigation because the trial would go forward on essentially the same evidence . . . ." (citing *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 87 (2d Cir. 1992) (explaining that interlocutory appeal does not advance the termination of litigation where "many of the same factual issues relevant to that [issue] would still have to be litigated"))).

---

legal issue. (*Id.* at 1–2 (citation omitted).) Finally, Visa and Mastercard note that regardless of Judge Hellerstein's opinion, "there would still be a 'substantial ground for a difference of opinion' given the broader context of the relevant appellate decisions." (*Id.* at 2 (citation omitted).) The Court substantially addresses the parties' arguments above.

## 2.   Applicable antitrust standard of review

Defendants argue that "[r]esolving the proper standard of review" on interlocutory appeal will allow the Court to instruct a potential jury on the applicable issues and evidence, ultimately "expediting" the resolution of the case.  (Defs.' Mem. 14.)

Plaintiffs argue that whatever the Second Circuit might decide regarding the standard of review, "there would still be further litigation and a trial," and thus interlocutory appeal would not promote efficient litigation.  (Pls.' Opp'n 23–24.)

Defendants have shown that interlocutory appeal of the Court's decision on the applicable antitrust standard of review would materially advance the litigation.  As discussed above, (*see supra* section II.b.1.B), the *per se* and rule of reason standards have different burdens of proof and would require the parties to produce different types of evidence at trial. Accordingly, the Second Circuit's decision about whether the applicable antitrust standard of review would materially advance the ultimate termination of litigation because it "promises . . . to shorten the time required for trial."  *Transp. Workers*, 358 F. Supp. 2d at 350; *see Coinbase, Inc.*, 2025 WL 40782, at *12 (finding that immediate appeal would materially advance the litigation where "[r]eversal would substantially narrow the scope of this action"); *Arm or Ally, LLC*, 2024 WL 2270351, at *4 (finding that immediate appeal "may materially advance the litigation" where a "reversal of this [c]ourt's holding on the . . . [certified] question would almost definitely 'shorten the time required for trial," (quoting *Capitol Recs., LLC*, 972 F. Supp. 2d at 551)); *In re Aggrenox Antitrust Litig.*, No. 14-MD-2516, 2015 WL 4459607, at *1–2 (D. Conn. July 21, 2015) (explaining that a question would "materially advance the ultimate termination of the litigation" because the issue defendants raised had "the potential to be dispositive of at least a

substantial portion of the claims" in a "large and complex case, likely to require a significant amount of time and resources to litigate.").

Although the antitrust standard of review is a controlling question of law and its resolution would advance the ultimate termination of this litigation, there is not a substantial ground for a difference of opinion that the *per se* standard applies to Defendants' alleged conspiracy. Thus, neither of Defendants' questions for interlocutory appeal satisfy all three prongs of section 1292(b), and they do not demonstrate any "exceptional circumstances . . . justify[ing] a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Fairbank Reconstruction*, 2020 WL 7427025, at *3 (quoting *In re Facebook*, 986 F. Supp. 2d at 529–30).

## III. Conclusion

For the foregoing reasons, the Court denies Defendants' motion to certify for interlocutory appeal.

Dated:  March 13, 2025
        Brooklyn, New York

                                        SO ORDERED:


                                        _____s/ MKB_____
                                        MARGO K. BRODIE
                                        United States District Judge