EXHIBIT 4

## PLAN OF ADMINISTRATION AND DISTRIBUTION

*B & R Supermarket, Inc., et al. v. Visa, Inc., et al.*, No. 1:17-cv-02738-MKB-JAM (E.D.N.Y.)

**I.     INTRODUCTION**

This Plan of Administration and Distribution ("Plan") shall govern the administration and distribution of the "Net Settlement Fund," defined as the amount of money that will be available for distribution by the Claims Administrator (as defined herein) to qualified Class members (defined below).  This amount is equal to the Gross Settlement Amount (as defined herein), plus any further amounts obtained through settlement or further litigation with the remaining Defendants (defined below), along with any interest earned thereon, after all attorneys' fees, litigation expenses, costs of notice and claims administration, class representative service awards, taxes and tax preparation costs, and other costs or payments as approved by the Court are deducted from the Gross Settlement Amount.

The Net Settlement Fund will be allocated and distributed by the Claims Administrator, according to this Plan, to the eligible members of the certified class: merchants who incurred one or more unreimbursed chargeback(s) between October 1, 2015 through and including September 30, 2017 (the "Class Period"), pursuant to the Fraud Liability Shift for the assessment of Mastercard International Inc. ("Mastercard"), Visa Inc. and Visa U.S.A. Inc. ("Visa"), Discover Financial Services ("Discover") and/or American Express Company ("Amex") (together, "Defendants") payment card chargebacks ("FLS Chargebacks"), but excluding members of the judiciary and government entities or agencies (collectively, the "Class").

**II.     STATUS OF THE LITIGATION AND SETTLEMENT SO FAR**

Settlements of the action have been reached on behalf of the Class with Defendants Discover (the "Discover Settlement") and Amex (the "Amex Settlement") (together, the "Settlement").  Plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC,

1

Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket) (collectively, "Plaintiffs") are still pursuing claims against the remaining defendants—Visa and Mastercard. The Settlement, if approved by the Court, will result in a $32.2 million dollar "Gross Settlement Amount" as a common fund (with Amex contributing $20.0 million and Discover contributing $12.2 million). Upon final approval of the Settlement, no part of this $32.2 million dollar Gross Settlement Amount will revert to Defendants. Additional litigation of this action could increase the size of the Gross Settlement Amount. If Plaintiffs favorably settle the claims on behalf of the Class against the other Defendants, this would be expected to add to the Gross Settlement Amount. Similarly, the Gross Settlement Amount could be increased if Plaintiffs proceed to trial against any remaining Defendants and obtain a favorable verdict.

### III. CLAIMS ADMINISTRATOR

Subject to Court approval, Class Counsel[1] have determined it is in the best interests of the Class to continue using Epiq Class Action and Claims Solutions, Inc. ("Epiq") as the "Claims Administrator." With the assistance of the Claims Administrator, Class Counsel will further develop this Distribution Plan and will present an updated version to the Court for approval prior to sending out any claims forms or making any distributions.

### IV. FUNDS TO BE DISTRIBUTED TO CLASS MEMBERS

#### A. Timing of Distribution

Given the ongoing litigation of the action, the size of the class, and the anticipated complexity of administering the Plan, Class Counsel do not intend to distribute the Net Settlement Fund until the claims against the remaining Defendants are resolved. This will help to ensure the efficient administration of any distribution(s) to the Class. Accordingly, Class Counsel plan to

---

[1] Robbins LLP was appointed "Class Counsel" by the Court on May 6, 2021. Dkt. No. 762.

make distribution(s) after all of the following have occurred: (1) the Court has granted final approval of any settlements with Defendants, including the Discover and Amex Settlements; (2) Plaintiffs have otherwise finally resolved claims against any remaining Defendants; and (3) any actual or potential appeals are exhausted, such that the resolution of all of Plaintiffs' claims, against all Defendants, is final.

### B. *Pro Rata* Plan of Distribution of Net Settlement Fund

Class Counsel intend to distribute the Net Settlement Fund on a *pro rata* basis to eligible members of the Class who timely submit a valid claim. Payments will be determined on a *pro rata* basis based on the dollar amount of unreimbursed FLS Chargebacks incurred by eligible Class members, as compared to the total dollar amount of unreimbursed FLS Chargebacks incurred by all eligible Class members that submit valid claims.

Given that the Class is constituted of a broad range of merchants, including a portion that incurred relatively small dollar amounts of FLS Chargebacks and others that incurred much larger amounts of FLS Chargebacks, Plaintiffs are proposing a minimum payment amount. The purpose of this minimum payment amount is twofold: (1) to incentivize the filing of claims by merchants with lower estimated damages, ensuring they receive meaningful compensation for participating in the claims process; and (2) to ensure payments to eligible Class members are economically feasible and efficient from a claims administration standpoint.

Prior to the mailing of Claim Forms (as defined herein), Class Counsel will consult with the Claims Administrator to develop a proposed minimum payment threshold ("Minimum Payment Amount"). The Claims Administrator will analyze FLS Chargeback information provided by Defendants, Net Settlement Fund projections (based on various reasonable scenarios) and historical claim rates from other relevant class action settlements in order to develop a reasonable range of Minimum Payment Amounts along with a supporting rationale for such recommendations. Class Counsel will consider this information and then seek approval for a

3

Minimum Payment Amount from the Court. Claim Form packets sent to known Class members will specify the Minimum Payment Amount such that a Class member may consider this information as part of its decision as to whether to prepare and submit a claim.

A hypothetical claimant whose *pro rata* distribution amount would have been greater than the Minimum Payment Amount would continue to receive a larger amount based on an adjusted *pro rata* distribution, which would be adjusted to account for the effect of the Minimum Payment Amount.

Insofar as the Net Settlement Fund includes residual funds after distribution or distributions as set forth herein that cannot be economically distributed to eligible claimants (because of the costs of distribution as compared to the amount remaining), Class Counsel shall make an application to the Court to approve the amount, and recipient(s) for such sums, to be used to make *cy pres* payments for the benefit of members of the Class.

### C. Conditions and Process for Claims and Distribution

Class Counsel and the Claims Administrator will utilize data produced by Defendants and any productions from non-defendant acquiring banks, as well as from claimants themselves, for the purposes of mailing Claim Form packets to likely Class members, determining valid claims, and the appropriate amounts to distribute *pro rata* to each eligible claimant. Once the claims process begins, the following conditions must be met in order for a member of the Class to receive a distribution from the Net Settlement Fund: (1) the entity is a member of the Class; (2) the entity has timely submitted a claim, based on a timeline to be determined before the claims process begins; and (3) the Claim Form must be complete including all required elements. All claims will be subject to audit, and larger claims may require verification. Class Counsel will work with the Claims Administrator to process the data available to them to attempt to minimize the burdens on claimants with respect to submitting proof of a valid claim, as discussed further herein.

4

The Claims Administrator will attempt to link the chargeback data provided to Class Counsel by Defendants in this litigation with the other data productions available to Class Counsel, including the productions made by Defendants to facilitate notice to the Class, and the productions from third-party acquiring banks. The Claims Administrator in conferral with Class Counsel intend to pre-populate Claims Forms, especially for Class members with the largest dollar amounts of chargebacks, to the extent administratively feasible. The degree to which the Claims Administrator will be able to accomplish this pre-population will depend on a range of factors, including the availability of supporting data, the number of discrete FLS Chargeback transactions, the number of identified Class members submitting valid claims, the difficulty in linking a specific FLS Chargeback transaction to the related downstream entity or entities that incurred the chargeback, and the proportion of Class members who make valid claims that consist of relatively high dollar amounts of incurred FLS Chargebacks. Any Class member receiving a pre-populated claim amount on its Claim Form will have an opportunity as part of the claim submission process to accept or challenge the pre-populated amount.

As part of the Claim Form package sent via postal mail and/or email (to the extent a facially valid scrubbed email address is available), the Claims Administrator will provide claimants with credentials they can use to quickly log into the Case Website (www.FraudLiabilityShiftLitigation.com) to view their FLS Chargeback amounts and file a claim. Pre-populated Claim Forms may also contain a QR code a claimant can scan to immediately log into the Case Website to view the information without entering the credentials manually.

To the extent a claimant's FLS Chargeback data is not located in Defendants' data productions, the Claims Administrator will consider information provided by the claimant in order to value their claim. Such information to substantiate a claim is expected in one of two types (as described below) or some combination thereof: (1) Research Request; and/or (2) FLS Chargeback

5

Documentation. The Claims Administrator will work with Class Counsel to determine whether other forms of information or documentation can be used to substantiate a claim and will update this Plan with any other available forms of proof.

For a Research Request, a Class member may provide information to allow the Claims Administrator to analyze datasets received from Defendants and/or other sources to seek to identify additional FLS Chargebacks incurred by the Class member. Information provided by a Class member in connection with a Research Request may include, among other things: (1) location address(es); (2) payment processor name(s); or (3) merchant identifier numbers or other unique identifying numbers that can be used to match a given claimant with Defendants' chargeback data sets. Once a Research Request has been processed by the Claims Administrator, the Claims Administrator will notify the Class member as to the outcome of this research. Prior to the claim submission deadline, if the claimant is still dissatisfied with the outcome of the Claims Administrator's research, the Class member may submit a further Research Request provided they are able to include significant new information with this additional Research Request that would assist the Claims Administrator with its further research efforts.

Either in lieu of a Research Request or as a supplement, a Class member may provide documentation substantiating FLS Chargebacks it incurred during the Class Period. Such documentation could include information about an FLS Chargeback it received from its acquirer or payment processor such as a chargeback notice, a daily settlement advice or a monthly account statement. Such documentation is expected to indicate that the chargeback is related to fraudulent charges (rather than a return of merchandise, services cancellation, error correction and the like).

It is expected that there could be instances in which a discrete FLS Chargeback transaction is claimed by more than one entity involved in the underlying transaction. Such contention could occur, for example, between a franchisor and franchisee or between a payment facilitator and end

6

merchant. In such instances of a conflict, the Claims Administrator will notify the affected claimants and provide a process for the respective claimants to indicate why they should receive the settlement payment amount related to the contested FLS Chargeback. In lieu of documentation to the contrary, it is generally expected that the end merchant that provided goods or services in exchange for a payment is the entity that incurred the FLS Chargeback.

The Claims Administrator and Class Counsel reserve the right to establish other methods via which reasonable estimates of the FLS Chargebacks incurred by a respective claimant may be made in order to value a claim. To the extent such other methods are identified, claimants will be informed of the documentation and data that must be produced to utilize these methods, if any. It is expected that insights obtained via the processing of Research Requests and FLS Chargeback Documentation submissions received during the claims intake and review stages may assist Class Counsel and the Claims Administrator in assessing the viability of approaches to make reasonable estimates of FLS Chargebacks for such outstanding claims.

As further detailed herein, prior to issuing payment, the Claims Administrator will notify each claimant of the total dollar amount of the FLS Chargebacks the Claims Administrator has associated with their claim, and provide the opportunity to challenge this amount. Excluded from this notification will be claimants that previously accepted an FLS Chargeback amount that was provided by the Claims Administrator or indicated that they accept the Minimum Payment Amount. There will also be a process by which any Class member can seek a review of their claim ineligibility. Members of the Class should maintain any records of incurred FLS chargebacks during the Class Period.

Information to be supplied by claimants may consist of some or all of the following, for the period commencing October 1, 2015 through September 30, 2017, to the extent known: (1) the Claimant's legal name, doing-business-as (DBA) name and federal taxpayer identification number

7

(TIN); (2) if different, the merchant's legal name, DBA name and TIN; (3) FLS Chargebacks incurred; (4) the amounts of any reimbursements of any of those FLS chargebacks; (5) location address(es) during the Class Period; (6) payment processor(s) and acquirers used during the Class Period; (7) merchant identifier numbers (MIDs) for the acquirers, payment processors and Defendant networks for which a claimant accepted payment during the Class Period; (8) other unique identifiers; (9) information sufficient to identify any franchise relationship, if any; and (10) contact information and preferred method of contact. The Case Website will be configured to allow the submission of all required claim information electronically.

The Claims Administrator may require claimants to provide supporting documentation and/or additional information as appropriate in connection with: (1) a challenge to a pre-populated claim estimate; (2) a request to aggregate claims (e.g. consolidation of claims for multiple TINs associated with a single entity); (3) a claim submitted by a third-party; (4) a disputed claim (e.g., sale of business, dissolution or bankruptcy); or (5) an audit.

It will be the responsibility of each claimant to provide the Claims Administrator with any change in its postal and/or email address and there will be a facility on the Case Website for doing so.

### D. Claim Form

The Claims Administrator will disseminate a claim form ("Claim Form") to known members of the Class as soon as practicable after all of the following have occurred: (1) the Court has granted final approval of any settlements with Defendants, including the Amex and Discover Settlements; (2) Plaintiffs have otherwise finally resolved claims against any remaining Defendants; and (3) any actual or potential appeals are exhausted, such that the resolution of all of Plaintiffs' claims, against all Defendants, is final. As part of the Claim Form, the claimant will be provided the option to choose to accept either the pre-populated FLS Chargeback amount calculated by the Claims Administrator (if available) or the Minimum Payment Amount as listed

8

on the Claim Form. Claimants with a pre-populated form may also contest the pre-populated amount on the Claim Form, as noted above.

If the Claims Administrator has mailed a settlement notice to a likely Class member, a Claim Form packet will be sent to the merchant automatically. Prior to the dissemination of Claim Forms, the Claims Administrator will also establish functionality on the Case Website for unknown potential Class members to provide their contact information in order to be sent a Claim Form packet following the commencement of the claim submission period.

## V. THE CLAIMS PROCESS

### A. Timing of Claim Form Submissions

When the claims process begins, the following criteria will apply. To be considered valid, all Claim Forms must be submitted to the Claims Administrator, via the Case Website or addressed in accordance with the instructions on the Claim Form, by or before the deadline specified in the Claim Form unless such deadline is extended by order of the Court. If sent by mail, a Claim Form shall be deemed submitted when posted, provided that the envelope: (1) shows that first-class postage was affixed or prepaid; and (2) bears a postmark or postage meter with a date no later than the deadline. If sent by private or commercial carrier (e.g., Federal Express, UPS, etc.), a Claim Form shall be deemed submitted on the shipping date reflected on the shipping label. If sent electronically, a Claim Form shall be deemed submitted when the "Submit" button has been clicked on the Case Website and a Claim Confirmation Number has been provided to the Claimant.

### B. Third-Party Filings

It is anticipated that third-parties, including claim filing companies, law firms, accounting firms and purchasers of bankruptcy assets, will solicit and file claims in lieu of Class members. The Claims Administrator, along with Class Counsel, will develop disclosures that must be provided by third-parties in communicating with potential clients and in contracting with their clients, as well as criteria that must be met with regard to sufficient proof of authorization

9

documentation prior to the claims process (i.e. full name, TIN, title, disclosure language, etc.). Such third-parties will be required to adhere to the explicit criteria in their contracts with their clients. Insufficient documentation may result in the third-party filer being unable to represent a Class member and file a claim.

To assist third-party filers with efficient filing methods, the Case Website is expected to be configured to allow a bulk submission process whereby an authorized third-party filer can submit claims on behalf of multiple Class members in a single submission.

### C.    Claim Review and Analysis

All Claim Forms shall be subject to anti-fraud procedures and random and/or selective audits. The Claims Administrator shall be responsible for developing an appropriate plan to audit Claims Forms (an "Audit Plan"). The Claims Administrator shall provide its Audit Plan to Class Counsel before beginning any audits.

In addition to an Audit Plan, the Claims Administrator will implement a robust conflict resolution process to ensure that the appropriate Class member, or their verified representative, is able to easily and efficiently file a claim when more than one party attempts to submit a claim for a single Class member.

The Case Website will also include a method by which merchants can report unauthorized activity and claims attempted or made on their behalf.

### D.    Challenges to the Claims Administrator's Calculations

Members of the Class that file claims will be entitled to challenge decisions by the Claims Administrator regarding the amount or denial of any claim. However, if a claim is validated and the claimant has previously accepted either the pre-populated FLS Chargeback amount provided by the Claims Administrator or the Minimum Payment Amount, the claimant may not be afforded a subsequent opportunity to challenge their claim.

Claimants may challenge the Claims Administrator's determination of unreimbursed FLS Chargebacks associated with their claim and may appeal the Claims Administrator's determination of such challenge.  Claimants whose claims are denied, or who disagree with the final calculation of their claims, may challenge such denials or final calculations in writing, together with supporting documentation, mailed or emailed to the Claims Administrator within thirty days after receipt of the notice of the denial or final calculation of the claim.  Upon review of the claimant's challenge and supporting documentation, the Claims Administrator will make a determination whether the claim should be denied, approved or adjusted, and will notify the claimant of its determination, together with information about how the claimant can appeal such determination to Class Counsel for a *de novo* review.

## VI. NOTICE AND CLAIMS ADMINISTRATION WEBSITE

The website fraudliabilityshiftlitigation.com, which has been operational since June 28, 2022, will be updated to reflect information concerning the Settlement and to, *inter alia*: (1) permit persons to read and/or download the Notice of Class Action Settlement, the operative complaint, the settlement agreements for the Discover Settlement and the Amex Settlement, certain Court orders or decisions, Class Counsel's names, address(es), and contact information, and other pertinent documents or information agreed to by the parties or ordered by the Court; (2) facilitate a registration process for Class members to be sent a Claim Form packet once the claims submission period commences; (3) facilitate the answering of FAQs regarding the Settlement, the status of the litigation, this Plan, and/or to provide any updates agreed upon by the parties; and (4) functionality for claimants to submit a Claim Form electronically.  The Case Website will continue to be available in in English and Spanish.

## VII. TELEPHONE SUPPORT

The Claims Administrator has set up an automated IVR telephone system that claimants can reach through a toll-free number to, *inter alia*, obtain information and request documents

related to the claims process.  This system has been operational since June 28, 2022.  The IVR system shall be updated to permit callers to hear options in English, Spanish and potentially other languages, and shall offer callers who choose a non-English option certain case-related documents in that requested language.  In addition, the IVR telephone system will include updated recorded information stating that Discover and Amex have each entered into settlement agreements with Plaintiffs, that these parties are seeking Court approval of the Settlement, and that further details will be available in the future.

To assist Class members, the Claims Administrator will continue to provide trained staff to respond to questions by telephone during normal business hours and by email.

## VIII.  MODIFICATION

Class Counsel may apply to the Court to make material modifications to the Plan on notice to members of the Class and Defendants.  Class Counsel reserve the right to make non-material modifications to the Plan, consistent with the goal of efficient, effective, and timely distribution of the Net Settlement Fund, without notice to the Class or further approval from the Court.