# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE NAMENDA INDIRECT PURCHASER ANTITRUST LITIGATION | No. 1:15-cv-6549 (CM) (RWL) <br><br> MEMORANDUM AND ORDER |

McMahon, J.:

In accordance with Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Sergeants Benevolent Association Health & Welfare Fund ("SBA" or "Plaintiff") moves for final approval of a settlement resolving all claims against Defendants and approval of the Plan of Allocation (collectively, the "Settlement"). For the following reasons, the Settlement is APPROVED.

Plaintiff also moves for an award of attorneys' fees in the amount of 33-1/3% of the gross Settlement Fund, or $18,812,666; reimbursement for Plaintiffs' Counsel's litigation expenses in the amount of $5,879,787.65; and a case contribution award of $100,000 to SBA. For the following reasons, these amounts are APPROVED.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On August 19, 2015, SBA filed an antitrust class action lawsuit on behalf of itself and a putative class of similarly situated indirect purchasers of the brand and generic versions of Namenda – a drug used to treat Alzheimer's disease. ECF 1. SBA sued Namenda brand manufacturers Forest Laboratories, a wholly owned subsidiary of Defendant Actavis PLC, and Merz GmbH & Co. KGaA., Merz Pharma GmbH & Co. KGaA, and Merz Pharmaceuticals GmbH (collectively "Merz") (the "Brand Defendants"), as well as eight generic manufacturers (the "Generic Defendants") for taking actions designed to limit generic competition for Namenda. Plaintiff originally advanced two theories of antitrust liability: (1) that Defendant Forest entered into several reverse-payment ("pay for delay") settlements with generic manufacturers of Namenda, which unlawfully delayed the market entry of generic competitors; and (2) Defendant Forests' conduct in effectuating a "hard switch" for consumers between two versions of Namenda harmed competition.

On September 22, 2015, a Direct Purchaser ("DPP") action was filed against Defendants Forest and Merz on substantially the same grounds.

The Brand Defendants filed a joint motion to dismiss both the indirect and direct plaintiff actions. At the same time, the Brand and Generic Defendants also filed an additional motion to dismiss the indirect purchaser action. On September 13, 2016, the Court largely denied the motion to dismiss directed to both the DPP and Indirect Purchaser suits. In the same opinion, the Court also stayed Plaintiff's case. *See Sergeants Benevolent Association Health & Welfare Fund*, 2016 WL 4992690, at *1 (S.D.N.Y. Sept. 13, 2016). On September 10, 2018, the Court lifted the stay on Plaintiff's case. The Court then permitted Defendants to file renewed motions to dismiss against Plaintiff after it determined that "intervening events in the Direct Purchaser action and new case

2

law in the Second Circuit warrant supplemental briefing." ECF 134. Plaintiff largely prevailed on Defendants' motions to dismiss. ECF 107, 186.

On February 11, 2021, Plaintiff successfully obtained class certification of a third-party payor class, on Plaintiff's reverse payment claims, under the laws of thirty jurisdictions. *See, In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 576-77 (S.D.N.Y. 2021). The third-party payor class is limited to those who paid for or were reimbursed for generic and brand Namenda IR and XR in the enumerated states during the period of June 1, 2012 through December 31, 2017. *See Id.*

Prior to obtaining class certification, Class Counsel settled with the Generic Defendants and defined in those Settlement Agreements a class of all end payors in the United States who paid for Namenda XR and IR during the period of April 14, 2010 through the time when the Generic Defendants' anticompetitive conduct ceased. *See* ECF 284, 505, 514.

While Plaintiff's motion for class certification was *sub judice*, both the Forest and Merz Defendants filed individual motions for summary judgment. *See* ECF 650 and 653, *see also* ECF 957 at 10 and 17. At the same time, Defendants also filed *Daubert* motions against five of Plaintiff's merits experts. *See* ECF 543-553. Plaintiff also affirmatively moved for summary judgment and to exclude, in part, the opinions of several of Defendants' experts. *See* ECF 561-62, 568-71, 573-76. On June 11, 2021, the Court substantially denied the parties' cross motions for summary judgment and *Daubert* motions. *See In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727 (S.D.N.Y June 11, 2021.)

On June 30, 2022, Defendants filed a motion seeking clarification of the Court's June 11, 2021 decision granting in part Defendant's *Daubert* motion to exclude the testimony of one of Plaintiff's experts. On August 15, 2022, the Court issued its decision on the parties' motions *in*

3

*limine* and Defendants' motion for "clarification." ECF 890.

On August 24, 2022, Defendants moved to decertify the class as to damages. ECF 895. Class Counsel defeated Defendants' motion for decertification in its entirety and maintained the third-party class. *See In re Namenda Indirect Purchaser Antitrust Litig.*, 2022 WL 4298767 (S.D.N.Y. Sept. 19, 2022).

On September 22, 2022, the Final Pretrial Conference was held. On October 4, 2022, only two weeks before trial, Plaintiff notified the court that it had reached an agreement in principle with Actavis and Merz, the remaining defendants, for $54,400,000.00. ECF 950. Class Counsel signed a Settlement Agreement on November 11, 2022. *See* ECF 919-1.

## DISCUSSION

### I. Final Settlement Approval

"The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (internal quotations omitted). This particularly complex pharmaceutical class action, brought on behalf of end payors, is well-suited for settlement.

Fed. R. Civ. P. 23(e) provides that a court may approve a class action settlement if "it is fair, reasonable, and adequate." Rule 23(e)(2) lists four factors to consider in determining fairness:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class was adequate, taking into account: (i) the cost, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23 (e)(3); and (D) the proposal treats class members equitably relative to each other.

Courts within the Second Circuit also analyze the factors listed in *City of Detroit v.*

4

*Grinnell*, 495 F.2d 448, 463 (2d Cir. 1974) to determine whether a settlement is substantively fair and thus warrants final approval: (1) complexity, expense, and likely duration of the litigation; (2) reaction of the class; (3) stage of the proceedings and amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through trial; (7) defendants' ability to withstand a greater judgment; (8) range of reasonableness of the settlement in light of the best possible recovery; and (9) range of reasonableness of the settlement in light of all the attendant risk of litigation. All nine factors need not be satisfied; the court must look at the totality of these factors in light of the specific circumstances involved." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2014 U.S. Dist. LEXIS 177175, at *14 (S.D.N.Y. Dec. 19, 2014).

"The factors set forth in Rule 23(e)(2) have been applied in tandem with the Second Circuit's *Grinnell* factors and 'focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'" *Christine Asia Co. v. Jack Yun Ma*, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (quoting Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, 918 (Apr. 26, 2018)).

A. The Settlement is Procedurally Fair

Rules 23(e)(2)(A)-(D) "constitute the procedural analysis of the fairness inquiry." *Christine Asia Co.*, 2019 WL 5257534, at *9 (quoting *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019)) (internal quotation marks omitted). "A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *6 (S.D.N.Y. Dec. 18, 2019) (citations omitted). The presumption of fairness and adequacy applies here.

5

Class counsel negotiated a settlement of the claims vigorously. Plaintiff and the Brand Defendants attempted to resolve this case in March 2019 but did not formally engage in mediation. In April 2019, Plaintiff and the Generic Defendants engaged in mediation with Jonathan Marks, a pre-eminent mediator. That mediation included the exchange of lengthy mediation statements, an in-person session, and multiple-telephonic conference sessions. ECF 963 at ¶ 3. On August 16, 2019, a settlement was reached with Generic Defendants, Amneal, Sun, Upsher- Smith, and Wockhardt. ECF 277. Within twelve months, other Generic Defendants, Teva, Barr, and Cobalt agreed to resolve the claims alleged against them. ECF 468. Finally, a settlement was reached with the remaining Generic Defendant, Dr. Reddy's. ECF 471. The two remaining Brand Defendants continued to litigate vigorously and in March 2022, the parties participated in a one-day mediation with retired United States District Judge Faith Hochberg, which again, included additional written submissions. ECF 957 at ¶ 17. That mediation did not produce any resolution. As a consequence, and during the mediation period, the parties continued to engage in intensive trial preparation. The parties began another round of mediation session in August 2022. Ultimately, on October 4, 2022, the parties reached a settlement in principle. ECF No. 950.

Accordingly, the requirements of Rules 23(e)(2) (A)-(B) are met.

  B. <u>The Settlement is Substantively Fair</u>

   *1. Complexity, Expense, and Likely Duration of the Litigation*

The first *Grinnell* factor evaluates whether the continuation of the litigation would be complex, expensive, and lengthy. This case, had it not settled, would have been all three. *See, e.g., Jermyn v. Best Buy Stores, L.P.*, 2012 WL 2505644, at *5 (S.D.N.Y. June 27, 2012) (recognizing the complexity of a potential trial with 25 fact witnesses, additional expert witness, and hundreds of exhibits).

6

This case was scheduled to be tried in two phases, with Phase 1 covering "pay-for-delay" liability and causation issues, and Phase 2 covering quantum of damages issues for Plaintiff's state antitrust, consumer protection claims, and equitable claims.[1] For Phase 1 alone, the parties projected calling over twenty live fact and expert witnesses, some of whom would be on the witness stand for lengthy amounts of time. Additionally, the parties also anticipated calling several witnesses by video. Defendants raised numerous defenses that Plaintiff would have needed to overcome in order to prevail in Phases 1 and 2 of this jury trial. Plaintiff would have also had to litigate at trial substantially novel issues, including issues which applied solely to Plaintiff's case.

Moreover, whichever side lost at trial surely would have appealed (most likely after filing extensive post-trial motions). Given the size and complexity of the case, this process would have likely included a petition for *certiorari* as well. Such continued litigation would have required further time and resources with no certainty of a favorable outcome. By contrast, the Settlement provides the Class with immediate, substantial, and definite relief without the delay, risk, and uncertainty of trial and continued litigation.

Accordingly, analysis of the first *Grinnell* factor strongly supports approval of the Settlement.

### 2. The Reaction of the Class to the Settlement

No Class member has objected to final approval of the Settlement. ECF 963 ¶¶ 8, 10. Although more than 40,000 notices were sent by direct mail to members of the Brand Defendants class and there was publication of the notice to all members of the Class and information available

---

[1] While Plaintiff's claims were brought under state law, those laws are interpreted in conformity with the federal antitrust laws. *See, e.g., In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 572-75 (S.D.N.Y. 2021).

7

on the dedicated website, only 15 members of the Brand Defendant class requested exclusion. *Id.* at ¶ 9. Such a minimal number of opt-outs overwhelmingly demonstrates a favorable reaction of the Class toward the settlement.

Accordingly, analysis of the second *Grinnell* factor strongly supports approval of the Settlement.

### 3. The Stage of the Proceedings and the Amount of Discovery Completed

The third *Grinnell* factor considers the amount of discovery completed, with a "focus[] on whether the plaintiffs obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *7 (S.D.N.Y. Sep. 9, 2015) (internal quotation omitted). Here, years of comprehensive fact and expert discovery was completed, multiple mediations were held, and this case was on the verge of trial. Thus, the parties' "knowledge of the strength and weakness of their claims was more than the norm" in class action litigation. *In re Veeco Instruments Sec. Litig.*, 2007 WL 4115809, at *8 (S.D.N.Y. Nov. 7, 2007). In negotiating the Settlement, Class counsel was intimately familiar with the strengths and weaknesses of Plaintiffs' claims and the Defendants' defenses.

Accordingly, analysis of the third *Grinnell* factor strongly supports approval of the Settlement.

### 4. The Risks of Establishing Liability, Damages, and Maintaining the Class Through Trial

"Courts generally consider the fourth, fifth, and sixth *Grinnell* factors together." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 432 (S.D.N.Y. 2016).

In assessing the risks of liability, a court need not decide the merits of the case, resolve unsettled legal questions, or attempt to predict the outcome. *See Bryant v. Potbelly Sandwich*

8

*Works, LLC*, 2020 WL 563804, at *3 (S.D.N.Y Feb. 4, 2020). Rather, a court "must only weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Id.* (internal quotation omitted). Regardless of the perceived strength of a plaintiff's case, liability is "no sure thing," and "[l]itigation inherently involves risks." *Wal–Mart Stores*, 396 F.3d at 118. "Indeed, the primary purpose of settlement is to avoid the uncertainty of a trial on the merits." *Tiro v. Pub. House Invs.*, LLC, 2013 WL 4830949, at *8 (S.D.N.Y. Sep. 10, 2013) (quoting *Matheson v. T-Bone Rest. LLC*, 2011 WL 6268216, at *5 (S.D.N.Y. Dec. 13, 2011)).

Forest and Merz still deny all Plaintiff's allegations, "including that any [Third-Party Payor] Class member is entitled to damages or other relief." *See* ECF. No. 956, at 5. The Generic Defendants also deny Plaintiff's allegations. *See* ECF 278-1 at 2, 470-1 at 2, 473-1, at 2. Plaintiff faced a risk proving liability and causation on the reverse payment claim to the jury.

Even presuming that Plaintiff prevailed on liability, the Defendants would have mounted an aggressive attack on the existence of and amount of Plaintiff's damages in front of the jury. *See, e.g. Fleisher*, 2015 WL 10847814, at *9 ("Even if Plaintiffs won the liability phase, Plaintiffs also faced risks in establishing damages during the separate damages phase of trial."). In fact, "[t]here are numerous examples of antitrust plaintiffs receiving little or no damages (or having damages sharply reduced) despite extensive litigation and despite prevailing on liability." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F.Supp.3d 307, 315 (S.D.N.Y. 2020) (citing cases). Here, even after the Court denied Defendants' motion for decertification in its entirety, Defendants filed a motion for leave to file a renewed motion to decertify the Class as to damages less than 3 weeks before trial was scheduled to begin. ECF 946. Defendants' motion was *sub judice* at the time of settlement. The risk accompanying Defendants' pending decertification motion as to damages weighs substantially in favor of the fairness of a settlement.

*See Fleisher*, 2015 WL 10847814, at *9 (quoting *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013)) (internal quotation marks omitted).

In addition, while the Court certified the Class here and denied Defendants' motion for decertification, that does not obviate the risk of later decertification because "[FRCP] 23(c) authorizes a court to decertify a class at any time." *In re Advanced Battery Techs. Sec. Litig.*, 298 F.R.D. 171, 178 (S.D.N.Y. 2014). Accordingly, the risks and uncertainties of maintaining class action status (and for the entire Class Period) supports approval of the Settlement.

Overall, these factors counsel in favor of approving the settlement.

### 5. The Ability of Defendants to Withstand a Greater Judgment

The seventh *Grinnell* factor addresses whether the defendant is able to withstand a greater judgment. This inquiry "is typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp.3d at 314. In the absence of this condition, courts generally do not consider this factor, and "this factor, standing alone, does not suggest that the settlement is unfair." *Id.* at 314-15 (*quoting Fleisher*, 2015 WL 10847814, at *9) (internal quotations omitted). Here, Plaintiff does not contend that Defendants could not withstand a greater judgment; therefore, this factor "drops out." *Id.* at 315.

### 6. The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of the Litigation

Courts typically analyze the final two *Grinnell* factors in tandem. *Guevoura*, 2019 WL 6889901, at *9 n.1. Determining "whether a settlement amount is reasonable does not involve the use of a mathematical equation yielding a particularized sum." *In re Bear Stearns Cos. Inc. Sec., Deriv. & ERISA Litig.*, 909 F. Supp. 2d 259, 269 (S.D.N.Y. 2012). Settlement should be in a "range of reasonableness . . . recogniz[ing] the uncertainties of law and fact in any particular

10

case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Guippone v. BH S&B Holdings LLC*, 2016 WL 5811888, at *7 (S.D.N.Y. Sep. 23, 2016) (quoting *Henry v. Little Mint, Inc.*, 2014 WL 2199427, at *10 (S.D.N.Y. May 23, 2014). Moreover, "'[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *In re Payment Card Interchange Fee*, 2019 WL 6875472, at *29 (quoting *Grinnell*, 495 F. 2d at 455).

The range of potential damages was vast and in the discretion of the jury. Given the complexity and risk, the $56,438,000 all-cash settlement represents an excellent recovery. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) (approving $40.3 million settlement with a recovery of approximately 6.25% of estimated damages); *In re Gilat Satellite Networks, Ltd.*, 2007 WL 2743675, at *11-12 (E.D.N.Y. Sep. 18, 2007); (approving $20 million settlement representing 10.6% of maximum damages); *In re Omnivision Techs., Inc. Sec. Litig.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs).

Accordingly, analysis of the eighth and ninth *Grinnell* factors strongly supports approval of the Settlements.

II. The Plan of Allocation

The proposed Plan of Allocation would allocate the net settlement fund to Class members who submit claims on a *pro rata* basis efficiently and fairly. A plan of distribution for a settlement fund in a class action must meet the same standards applicable to approval of the settlement as a whole, *i.e.,* the distribution plan must be fair, reasonable and adequate. *Hart v. RCI Hosp. Holdings*, 2015 WL 5577713, at *12. (S.D.N.Y. Sep. 22, 2015). "[A]n allocation

11

formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class counsel." *Id.* at *34 (quoting *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002)).

Here, the proposed Plan of Allocation meets this standard. As set forth in the Plan of Allocation, the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees, incentive award for named Plaintiff, and costs and expenses ("Net Settlement Fund"), will be paid to Class members who submit timely and valid claims based on each Class member's *pro rata* share of the Class' total purchases of brand and/or generic Namenda IR and brand Namenda XR. This plan is similar to plans that have previously been approved by courts in analogous cases. *See, e.g., In re Loestrin 24 Fe Antitrust Litig.*, 2020 WL 4038942 (D.R.I. July 17, 2020) (pro rata shares of settlement fund computed on the basis of claimants' purchases); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 1:14-md02503-DJC, ECF Nos. 1067-7 (Ex. 3), 1077 (D. Mass.) (same); and *In re Lidoderm Antitrust Litig.*, 2018 WL 11375216, at *3 (N.D. Cal. Sept. 20, 2018) (same).

The allocation will reflect the amount of relative damage sustained by each member of the Class. The Plan of Allocation will allocate the Net Settlement Fund to Class members efficiently and fairly based upon the amount of purchases claimed by each member of the Class that files a claim form. The Plan of Allocation provides a fair and reasonable method of determining each Class member's proportionate share of the Net Settlement Fund in proportion to the share of overcharges each suffered. Among other things, the Plan of Allocation describes the method of calculating each Class member's *pro rata* share of the Net Settlement Fund.

Because the Plan of Allocation appears to fairly and rationally allocate the proceeds of the net settlement fund among Class members and comes by the recommendation of experienced

12

Class Counsel, it is approved.

III. Attorneys' Fees, Expenses, and Case Contribution Awards

Class Counsel seek an award of attorneys' fees in the amount of $18,812,666, *i.e.*, 33-1/3% of the settlement amount (plus an equal percentage of any interest accrued since the settlement amount was escrowed), and reimbursement of litigation expenses in the amount of $5,879,787.65. Class Counsel also seeks an incentive award in the amount of $100,000 for sole class representative SBA.

A. Attorneys' Fees

The Supreme Court has held that where counsel has created a common fund, attorneys' fees are properly determined on a percentage-of-recovery basis. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class."). The Second Circuit has approved this method. *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000).

"As a 'cross-check on the reasonableness of the requested percentage,' however, courts also look to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate." *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 2021 WL 76328, at *4 (S.D.N.Y. Jan. 7, 2021) (quoting *Goldberger*, 209 F.3d at 53).

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage of-the-fund method or the lodestar approach, it should consider the traditional criteria that reflect a reasonable fee in common fund cases, including: (i) time and labor expended by counsel; (ii) risks of the litigation; (iii) magnitude and complexity of the litigation; (iv) requested fee in relation to the settlement; (v) quality of representation; and (vi) public policy considerations. 209 F.3d at 50.

Class Counsel spent 51,769.4 hours, with a value of $32,048,598.25, prosecuting this case from investigation through January 31, 2023. ECF 963 at ¶ 7. Class Counsel largely

13

defeated the Defendants' motions to dismiss, engaged in large-scale discovery, successfully obtained class certification of a third-party payor class, largely defeated Defendants' motions for summary judgment, largely defeated Defendants' motions to exclude the opinions of Plaintiff's experts; successfully moved to exclude in part several defense expert opinions; briefed twenty-nine motions *in limine* filed by both sides; defeated Defendants' motion for decertification in its entirety; prepared for and participated in multiple mediations; and fully prepared for a two-phase trial that would have begun two weeks after the parties settled. Moreover, Class Counsel has and will continue to expend a significant number of hours in connection with administering the Settlement. Since this case's inception in 2015, Plaintiff confronted significant risk at each stage that the claims would fail leaving Class Counsel with nothing.

"An antitrust class action is arguably the most complex action to prosecute." *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices and Antitrust Litig.*, No. 17-MD-2785-DDC-TJJ, 2022 WL 2663873, at *5 (D. Kan. July 11, 2022) (citation and internal quotation marks omitted); *see also In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, No. 18-MD-2819-NG-LB, 2022 WL 3043103, at *9 (E.D.N.Y. Aug. 2, 2022) (characterizing antitrust case against pharmaceutical manufacturer as "complex, discovery-intensive, and expert-dependent"). This antitrust lawsuit involved numerous state antitrust and consumer protection statutes, the principles of unjust enrichment, patent law, the Hatch-Waxman Act, pharmaceutical manufacturing processes, and the Medicaid Drug Rebate Program.

Class Counsel has vigorously litigated this unusually complicated case from initial investigation through trial preparation and settlement. The collective and extensive experience of Plaintiff's counsel enabled them to compare the risks and benefits of continued litigation to the settlement for the collective benefit of Plaintiff and the Class. Indeed, the "quality of [class

14

counsel's] representation is evidenced by the quality of the result achieved." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020).

As to public policy, incentivizing the prosecution of complex end-payor antitrust actions, such as the one here, upholds the policy goals of private antitrust enforcement. Courts recognize that "It is important to encourage top-tier litigators to pursue challenging antitrust cases . . . [because] [o]ur antitrust laws address issues that go to the heart of our economy." *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476-DLC, 2016 WL 2731524, at *18 (S.D.N.Y. Apr. 26, 2016).

A 33-1/3% fee is both well within the range of fee awards within this Circuit and for complex pharmaceutical antitrust cases. *See, e.g., In re Chicago Bridge & Iron Co. N.V. Sec. Litig.*, No. 1:17-CV-1580, 2022 WL 3220783, at *1 (S.D.N.Y. Aug. 5, 2022) (finding a baseline fee percentage of 33-1/3% to be "reasonable and appropriate"); *Bryant*, 2020 WL 563804, at *6 (holding "a one-third award of the settlement proceeds [for attorneys' fees] is considered typical and reasonable . . . because the attorneys' fees requested were entirely contingent upon success"); *Restasis,* 2022 WL 3043103, at *9 (33-1/3% attorneys' fees on $29,999,999.99 settlement fund for class of end payors); *Loestrin*, 2020 WL 4038942, at *9 (33-1/3% attorneys' fees on $62,500,000 settlement fund for class of end payors).

Additionally, a lodestar "cross-check" confirms that the fee requested in this case is eminently fair and reasonable given that it will result in an award substantially less than Plaintiff's counsel's actual lodestar. An award of 33-1/3% will yield a fee of $18,812,666 and will result in a 41.3% discount from Plaintiff's counsels' lodestar. *See* ECF 963 at ¶ 7 (reflecting a lodestar value of $32,048,598.25). When the fee requested "is significantly less than the

15

lodestar," there is a strong suggestion that "the requested fee is reasonable." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 146-47 (S.D.N.Y. 2010). The award of 33-1/3% of the settlement fund will help to maintain the incentive of counsel to continue to prosecute these types of cases on a purely contingent basis.

In light of the time and effort devoted to this case by Plaintiffs' Counsel to achieve the $56,438,000 recovery, as well as the lodestar cross-check – equating to a negative multiplier, 41.3% of the total lodestar – the Court finds the requested fee award is reasonable.

B. <u>Class Counsel's Request for Reimbursement of Expenses</u>

It is well-settled that counsel who have created a common fund for the benefit of a class are entitled to reimbursement for out-of-pocket expenses reasonably incurred to establish the fund. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 150. Here, Class Counsel's unreimbursed expenses were reasonably incurred and necessary to the representation of the Class. *See* ECF 963 at ¶ 7, Exh. B-F. These expenses include costs for seven testifying experts and one consulting expert, computerized legal research, the creation and maintenance of electronic document databases for discovery and trial, travel and lodging expenses, copying, court reporters, deposition and hearing transcripts, and multiple mediations. *Id.* These are the typical kinds of expenses that are routinely deemed reasonable and necessary. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 150; *see also Restasis*, 2022 WL 3043103, at *9.

Accordingly, Class Counsel's request for reimbursement is granted.

C. <u>Case Contribution Awards</u>

Finally, SBA requests a Case Contribution Award of $100,000.

Incentive awards are to reimburse a named plaintiff, who "take on a variety of risks and tasks when they commence representative actions." *In re Marsh ERISA Litig.*, 265 F.R.D. at 150. The award of $100,000 to the sole class representative, SBA, is appropriate, in recognition of the

16

long hours it spent participating in this litigation since its inception in 2015, including filing suit, reviewing key motion practice, reviewing discovery requests, reviewing and collecting discovery, including claims data, preparing for and sitting for depositions, reviewing settlement proposals, and preparing to testify at trial. This award would represent less than one percent of the total value of the settlement fund. The amount requested is in accord with other incentive awards granted in this district. *See, e.g., In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400-CM-PED, 2010 WL 4537550, at *31 (S.D.N.Y. Nov. 8, 2010) (authorizing $100,000 incentive award for class representative who actively participated in the litigation since its inception, including reviewed complaints, produced documents, and sat for deposition); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 2018 WL 6250657, at *18 (S.D.N.Y. Nov. 29, 2018) (awarding $500,000 ($50,000 to six plaintiffs and $100,000 to two). It is also consistent with awards made to class representatives in similar pharmaceutical antitrust cases. *See e.g., In re Lidoderm Antitrust Litig.*, 2018 WL 11375216, at *3 (N.D. Cal. Sept. 20, 2018) ($100,000); *In re K-Dur Antitrust Litig.*, 2017 WL 11636125, at *2 (D.N.J. Oct. 5, 2017) ($100,000); *King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, 2015 WL 12843830, at *6 (E.D. Pa. Oct. 15, 2015) ($100,000 to certain representatives); *In re Neurontin Antitrust Litig.*, No. CV 02-1830, 2014 WL 12962880, at *3 (D.N.J. Aug. 6, 2014) ($100,000).

Accordingly, the Case Contribution Awards to SBA is approved.

## CONCLUSION

For the foregoing reasons, the motion for final approval of the settlement is granted and the motion for an award of attorneys' fees and expenses and case contribution award is granted. The Proposed Settlement and Plan of Allocation are approved. In addition, Class Counsel is awarded attorneys' fees in the amount of $18,812,666, representing 33-1/3% of the

Settlement Fund. Moreover, Class Counsel shall be reimbursed for $5,879.787.65 in litigation expenses forthwith. Finally, SBA may be disbursed $100,000 forthwith.

The Clerk of Court is directed to terminate all pending motions and to mark this case closed.

Dated: March 23, 2023

_____
United States District Judge

BY ECF TO ALL PARTIES