**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ——————————————— X | | |
| B & R SUPERMARKET, INC., d/b/a MILAM'S MARKET, Individually and on Behalf of All Others Similarly Situated, | : : : : | Case No. 1:17-cv-02738-MKB-JAM <u>CLASS ACTION</u> |
| Plaintiff, | : : | |
| v. | : : | |
| VISA, INC., et al., | : : | |
| Defendants. | : : | |
| ——————————————— X | | |

**ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT
WITH DISCOVER AND AMEX AND DIRECTING NOTICE TO THE CLASS**

WHEREAS, the Court has considered the Amended Stipulation and Agreement of Settlement between Plaintiffs and defendant Discover Financial Services ("Discover") dated June 6, 2025 ("Discover Settlement Agreement") and the Stipulation and Agreement of Settlement between Plaintiffs and defendant American Express Company ("Amex") dated May 16, 2025 ("Amex Settlement Agreement" and, with the Discover Settlement Agreement, "Settlement Agreements", attached as **Exhibits A and B** to this Order), which set forth the terms and conditions for a proposed settlement of the above-captioned class action as to defendants Discover and Amex and the termination and disposition of all causes of action against Discover and Amex in the above-captioned class action with prejudice;

WHEREAS, Plaintiffs have applied for an order granting preliminary approval of the settlements set forth in the Settlement Agreements and directing notice to the Class in connection with the Settlement Agreements pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure;

WHEREAS, the Court has considered Plaintiffs' Motion for Preliminary Approval of Settlement with Discover and Amex ("Preliminary Approval Motion"), the memorandum of law and evidence filed in support thereof, and all other papers submitted in connection with the Settlement Agreements and the Preliminary Approval Motion, and;

WHEREAS, the Court held a hearing on _____, 2025, at which the Court heard argument on whether the Settlement Agreements should be preliminarily approved;

NOW, THEREFORE, IT IS HEREBY ORDERED AND DECREED as follows:

1.    The Court has considered whether the Settlement Agreements preliminarily satisfy the class action settlement requirements of Federal Rule of Civil Procedure 23.  Based on its consideration, the Court hereby preliminarily approves the Settlement Agreements for class action

settlement purposes, including specifically the Plan of Administration and Distribution contained as Exhibit 4 to the Declaration of George C. Aguilar filed along with Plaintiffs' Preliminary Approval Motion, concluding that the Court will likely be able to approve the Settlement Agreements as fair, reasonable, and adequate under Rule 23(e)(2), and that the Class, already certified, still meets the criteria for certification for purposes of judgment, subject to further consideration at a hearing (the "Fairness Hearing").

2.      This Order incorporates by reference the definitions in the Settlement Agreements, and all terms herein shall have the same meanings as set forth in the Settlement Agreements.

3.      All members of the Class shall be bound by all determinations and judgments in the action concerning the Settlement Agreements, whether favorable or unfavorable to the Class.

4.      The Court has subject matter and personal jurisdiction over Plaintiffs, all members of the certified Class, and defendants Discover and Amex.

5.      Based on and pursuant to the class action criteria of Federal Rules of Civil Procedure 23(a) and 23(b)(3), the Court concluded on August 28, 2020, in its memorandum & order on Plaintiffs' renewed motion for class certification that the requirements of Rule 23(a) and (b)(3) have been met for the following class: "Merchants who incurred one or more unreimbursed chargeback(s) between October 1, 2015 through and including September 30, 2017, pursuant to the Fraud Liability Shift for the assessment of Mastercard, Visa, Discover and/or Amex payment card chargebacks (the "Class"). Excluded from the Class are members of the judiciary and government entities or agencies." Dkt. No. 725 at 9-10. The Court concludes that there have been no changes to the Class, claims, or circumstances relating to the Settlement Agreements, that would disturb the Court's prior finding that the Class is certifiable. The Court therefore finds that the Class is certifiable for purposes of judgment.

6.      Discover and Amex have denied and continue to deny each and all of the claims made by Plaintiffs in the Action and have denied and continue to deny liability against Discover and Amex arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. No determination has been made by the Court regarding who is right, and there are still significant risks for the Class in establishing liability and damages at trial.

7.      The notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715, have been met.

8.      The Court appoints Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator to serve as the Administrator for the Settlement Agreements.  Epiq will assist Class Counsel in effectuating and administering the Notice Plan delineated in the Declaration of Cameron R. Azari, Esq. Regarding Settlement Notice Plan and Distribution Plan (the "Azari Declaration"), submitted in connection with Plaintiffs' Preliminary Approval Motion.  Epiq will also assist Class Counsel in preparing for the claims process and further developing the Plan of Administration and Distribution.

9.      The Court appoints The Huntington National Bank, as the Escrow Agent for the Settlement Agreements.

10.     Class Counsel and their designees, including the Claims Administrator and the Escrow Agent, are authorized to expend funds from the escrow accounts to pay taxes, tax expenses, notice, and administration costs as set forth in the Settlement Agreements.

11.     The Court determines that given that notice of class certification was already provided to the Class, and the Class had the opportunity to opt-out, and that they were told that they would be bound by decisions by the Court if they did not, there is sufficient justification to forgo a second opportunity to opt-out of the Class.  Therefore, the Court orders that Class members

will have the opportunity to object to the Settlement Agreements, but will not be provided a second opportunity to opt-out of the class.

12.    The Court approves the method of notice to be provided to the Class that is described in the Settlement Agreements and in the Notice Plan contained in the Azari Declaration, including use of the long-form notice to be mailed and included on the Case Website and the publication notice attached to the declaration of George C. Aguilar submitted in connection with Plaintiffs' Preliminary Approval Motion.  The Court finds and concludes that such notice: (a) is the best notice that is practicable under the circumstances, and is reasonably calculated to reach the members of the Class that would be bound by the Settlement Agreements and to apprise them of the Action, the terms and conditions of the Settlement Agreements, and their right to object to the Settlement Agreements; and (b) meets the requirements of Federal Rule of Civil Procedure 23 and due process.

13.    Within 60 days following the Court's entry of this Preliminary Approval Order, the Claims Administrator shall complete the individual notice portion of the Notice Plan and the supplemental media publication portion of the plan, as described in the Azari Declaration.

14.    As stated in the long-form notice and publication notice, members of the Class shall have until 100 days after the Court's entry of the Preliminary Approval Order — i.e., 40 days after the last date for completion of the mail and publication notice (the "Class Objection Period") — to submit an objection to the Settlement Agreements, any request for Attorneys' Fee Awards, any request for Expense Awards, or any request for Plaintiffs' Service Awards (be an "Objector"), and to file any notice to appear.

15.    Such an Objector must file a written statement of objections with the Court within the Class Objection Period, and send it to the Claims Administrator and the following designees

of Class Counsel and counsel for defendants Discover and Amex, by first-class mail and postmarked within the Class Objection Period:

> Claims Administrator: FLS Litigation Administrator, P.O. Box 6430, Portland, OR 97228-6430
>
> Designees of Class Counsel: George C. Aguilar and Michael J. Nicoud, Robbins LLP, 5060 Shoreham Place, Suite 300, San Diego, CA, 92122-5976,
>
> Designees of Defendant Discover: James F. Herbison and Jeanifer Parsigian, Winston & Strawn LLP, 35 W. Wacker Drive, Chicago, IL 60601-1695,
>
> Designees of Defendant Amex: Peter T. Barbur and David H. Korn, Cravath, Swaine & Moore LLP, Two Manhattan West, 375 Ninth Avenue, New York, NY 10001-1641.

16.    The Objector's written statement of objections must: (a) contain the words "*B & R Supermarket, Inc., et al. v. Visa, Inc., et al.*"; (b) state each and every objection of the Objector and the specific reasons therefor; (c) provide all legal support and all evidence on which the Objector relies in support of any objection; (d) state the full name, address, and telephone number of the Objector; (e) provide information sufficient to establish that the Objector is a member of the Class, including a statement by what position or authority they have the power to object on the member's behalf, and the business names, brand names, "doing business as" names, taxpayer identification number(s), and addresses of any stores or sales locations for which they seek to object on behalf of; and (f) state the full name, mailing address, email address, and telephone number of any counsel representing the Objector in connection with the objections.

17.    In addition, any Objector or counsel for an Objector that desires to appear at the final approval hearing must file with the Court within the Class Objection Period, and send to the designees of Class Counsel and defendants Discover and Amex identified above, by first class mail and postmarked within the Class Objection Period, a separate notice of intention to appear that identifies by name, position, address, and telephone number each person who intends to appear at the final approval hearing on behalf of the Objector.

18.     Prior to 30 days before the end of the Class Objection Period—i.e., within 70 days after the Court's entry of this Preliminary Approval Order—Class Counsel will file all motions and supporting papers seeking the Court's approval of any Fee and Expense Award and Plaintiffs' service awards with respect to the their representation of merchants in the Action, which culminated in the Settlement Agreements.  Class Counsel will provide notice of such motions and any additional details to members of the Class by causing all such motions and supporting papers, and any additional details regarding the Plan of Administration and Distribution, to be posted prominently on the Case Website prior to, or simultaneously with, their filing with the Court.

19.     Within 115 days after the Court's entry of the Preliminary Approval Order, the Claims Administrator shall prepare a report, and cause it to be filed with the Court and provide it to the following designees of Class Counsel, defendant Discover, and defendant Amex:

Designees of Class Counsel: George C. Aguilar and Michael J. Nicoud, Robbins LLP, 5060 Shoreham Place, Suite 300, San Diego, CA, 92122-5976,

Designees of Defendant Discover: James F. Herbison and Jeanifer Parsigian, Winston & Strawn LLP, 35 W. Wacker Drive, Chicago, IL 60601-1695,

Designees of Defendant Amex: Peter T. Barbur and David H. Korn, Cravath, Swaine & Moore LLP, Two Manhattan West, 375 Ninth Avenue, New York, NY 10001-1641.

The Claims Administrator's report shall:

(a)     Confirm that the Notice Plan was carried out and that the website notice, mail notice, publication notice, and any other notice to members of the Class was provided in the manner directed by the Court; and

(b)     Identify the date on which all new content on the Case Website was made available to members of the Class, and identify the dates on which the mail notice was mailed, the dates of publication notices, and the date or dates of any other notice directed by the Court.

20.     The Claims Administrator's expenses for the foregoing notice, including those of any third-party vendors it uses to perform tasks necessary for the implementation or effectuation of its duties, shall be paid from the Escrow Account.  In no event shall Discover, Amex, or other Released Party from either the Amex Settlement Agreement or the Discover Settlement Agreement have any obligation, responsibility, or liability with respect to the Claims Administrator or the Notice Plan, including with respect to the costs, administration expenses, or any other charges for any notice procedures.

21.     Within 125 days after the Court's entry of the Preliminary Approval Order—i.e., within 25 days after the conclusion of the Class Objection Period—Class Counsel shall file a motion and supporting papers seeking the Court's final approval of the Settlement Agreements and Class Counsel and any other party shall file papers responding to objections, if any, to any aspect of the Settlement Agreements, or to any aspect of the requests for approval of the Fee and Expense Award, or Plaintiffs' service awards with respect to their representation of merchants in the Action, which culminated in the Settlement Agreements.

22.     The Court will hold the Fairness Hearing at _____ o'clock on _____, in Courtroom 6F, United States District Court for the Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201.  At that Fairness Hearing, the Court will conduct an inquiry as it deems appropriate into the fairness, reasonableness, and adequacy of the Settlement Agreements, address any objections to it, and determine whether the Settlement Agreements and the Plan of Administration and Distribution should be finally approved, whether final judgment should be entered thereon, and whether to approve any motions for a Fee and Expense Award and Plaintiffs' service awards.

23.    The Court stays all further proceedings in this Action as between Plaintiffs and defendants Discover and Amex, except for proceedings related to effectuating and complying with the Settlement Agreements and the terms of this Order, pending the Court's determination of whether the Settlement Agreements should be finally approved or the termination of the Settlement Agreements.

24.    If final approval of each of the Settlement Agreements is not obtained, either/both that are not finally approved will become null and void, and Plaintiffs and the respective defendant (Amex/Discover) of the settlement agreement that is not finally approved, will revert to their positions as of the execution date of the Settlement Agreements without prejudice to their rights, claims, or defenses.

25.    Pending the Court's determination of whether the Settlement Agreements should be finally approved or the termination of the Settlement Agreements, the Court enjoins the members of the Class from challenging in any action or proceeding any matter covered by the Settlement Agreements or its release and covenant not to sue provisions, and from commencing, maintaining, or participating in, or permitting another to commence, maintain, or participate in on its behalf, any claims being released against Released Parties as defined by both the Amex Settlement Agreement and the Discover Settlement Agreement, except for proceedings in the Action related to effectuating and complying with the Settlement Agreements.

26.    Neither the Settlement Agreements, nor any of their terms or provisions, nor any of the negotiations or proceedings connected with them, shall be construed as an admission or concession by Plaintiffs or Amex or Discover, as to the truth or falsity of any of the allegations in the Action, or of any liability, fault, or wrongdoing of any kind, and defendants Amex and Discover deny and continue to deny each and all of the claims made by Plaintiffs in the Action and of

liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action.

27.    Below are the dates set forth by the Court in this Order:

| Event | Date |
|---|---|
| Completion of settlement notice plan to the Class | 60 days following the entry date of the preliminary approval order |
| Submission of motion for attorneys' fees, expenses, and service awards for the class representatives | 70 days following the entry date of the preliminary approval order |
| Deadline for Class members to object to the settlement | 100 days following the entry date of the preliminary approval order |
| Plaintiffs' notice to the Court confirming completion of settlement notice plan | 115 days following the entry date of the preliminary approval order |
| Submission of motion and memorandum in support of final approval of the settlement and any responses by the parties to any objections filed by any Class members | 125 days following the entry date of the preliminary approval order |
| Fairness Hearing | To be set by the Court, at least 140 days following the entry date of the preliminary approval order. |

IT IS SO ORDERED.

DATED: _____

_____
HONORABLE MARGO K. BRODIE
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| ————————————————— X | | |
| B & R SUPERMARKET, INC., d/b/a MILAM'S MARKET, a Florida corporation, et al., Individually and on Behalf of All Others Similarly Situated, | : : : : : | Case No. 1:17-cv-02738-MKB-JAM  <u>CLASS ACTION</u> |
| Plaintiffs, | : : | |
| v. | : : | |
| VISA, INC., et al., | : : | |
| Defendants. | : : | |
| ————————————————— X | | |

**AMENDED STIPULATION AND AGREEMENT OF SETTLEMENT**

## I.    RECITALS

This Amended Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on June 6, 2025 ("Execution Date"), between Plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket) (collectively, "Plaintiffs" or "Class Representatives"), for themselves individually and on behalf of each member of the Class (as defined herein) (collectively, "Class Members") and Discover Financial Services ("Discover"), by and through Plaintiffs' Counsel and Discover's Counsel (as defined herein).  This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), with respect to the Released Parties (as defined herein), upon and subject to the terms and conditions herein.

WHEREAS, on July 15, 2016, Plaintiffs filed the operative complaint in this Action (as defined herein), the Amended Complaint for Violations of the Sherman Antitrust Act, the Clayton Antitrust Act, California's Cartwright Act, New York's Donnelly Act, Florida's Antitrust and Unfair Trade Practices Act and Unjust Enrichment (the "Complaint");

WHEREAS, on August 28, 2020, the Court (as defined herein) entered an order granting Plaintiffs' renewed motion for class certification and certified a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

WHEREAS, Plaintiffs are prosecuting the Action on their own behalf and on behalf of a certified Rule 23(b)(3) class against Discover and the other Defendants (as defined herein);

WHEREAS, Plaintiffs have alleged, among other things set forth more fully in the Complaint and subsequent filings, that Defendants, including Discover, violated antitrust laws by entering into a conspiracy to: (1) adopt the same policy via nearly identical rules for shifting billions of dollars in liability for fraudulent charges, or "chargebacks," from banks to merchants

("Fraud Liability Shift," "Liability Shift," or "FLS"); and (2) make the Liability Shift effective on the same day and in the same manner for all four networks, to prevent merchants from steering customers to use cards with more lenient terms or concessions such as reduced interchange or merchant discount fees.  Plaintiffs allege Defendants' actions damaged the Class, as defined herein, in violation of the Sherman Act, 15 U.S.C. §§ 1 and 3, *et seq.* as well as state antitrust, restraint of trade, and unfair competition laws;

WHEREAS, Plaintiffs have contended that they and the Class Members are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the Complaint, arising from Discover's (and the other Defendants') alleged conduct;

WHEREAS, Discover has denied and continues to deny each and all of the claims and allegations made by Plaintiffs in the Action and all liability against it arising out of any of the conduct, statements, acts, or omissions that were alleged, or that could have been alleged, in the Action, and Discover has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs, for themselves individually and on behalf of each Class Member, and Discover agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Discover or of the truth of any of the claims or allegations alleged in the Action or a waiver of any defenses thereto;

WHEREAS, Plaintiffs and Discover have engaged in extensive discovery regarding the facts pertaining to Plaintiffs' claims and Discover's defenses;

WHEREAS, Plaintiffs' Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the

- 2 -

Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount (as defined herein) to be paid by Discover under this Settlement Agreement, are obtained for the Class; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Class;

WHEREAS, Discover, while continuing to deny that it is liable for any of the claims asserted against it in the Action and maintaining that it has valid defenses to such claims, has nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the Complaint as to Discover and a release of claims as set forth herein;

WHEREAS, the Parties previously entered into a settlement agreement dated February 10, 2025 (the "Prior Settlement Agreement") and now desire to enter into this amended Settlement Agreement, which is intended to supersede the Prior Settlement Agreement in its entirety;

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Plaintiffs' Counsel and Discover's Counsel under the guidance and oversight of former U.S. District Judge Layn Phillips as Mediator, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between Discover and Plaintiffs, both for themselves individually and on behalf of the Class; and

WHEREAS, the Parties further acknowledge and agree that nothing in this amended Settlement Agreement is intended to be, nor shall be construed as, inconsistent with the terms, conditions, or intent of the Prior Settlement Agreement;

- 3 -

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Plaintiffs (for themselves individually and on behalf of the Class and each member thereof who has not timely excluded themselves) and Discover, by and through Plaintiffs' Counsel and Discover's Counsel, that, subject to the approval of the Court and any appellate review of that approval, the Action be settled, compromised, and dismissed with prejudice as to Discover and the other Released Parties, without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

## II.    DEFINITIONS

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

1.    "Action" means *B & R Supermarket, Inc., et al. v. Visa, Inc., et al.*, No. 1:17:cv-02738-MKB-JAM (E.D.N.Y.), which is currently pending in the United States District Court for the Eastern District of New York.

2.    "Authorized Claimant" means any Class Member who will be entitled to a distribution from the Net Settlement Fund as provided for in the Plan of Distribution.

3.    "Claims Administrator" means Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a third-party retained by Plaintiffs' Counsel to manage and administer the process by which each member of the Class is notified of the Settlement Agreement and paid from the Net Settlement Fund.

4.    "Class," as defined in the Court's class certification Order dated August 28, 2020, means all "Merchants who incurred one or more unreimbursed chargeback(s) between October 1, 2015 through and including September 30, 2017, pursuant to the Fraud Liability Shift for the assessment of Mastercard, Visa, Discover and/or Amex payment card chargebacks.  Excluded from the Class are members of the judiciary and government entities or agencies."  Also excluded

from the Class are any putative class members who previously excluded themselves from this Action by filing a request for exclusion with the requirements set forth in the Order Granting Unopposed Motion for Approval of Proposed Class Notice and Notice Plan dated June 3, 2022, and the Class Notice pursuant thereto previously provided to Class Members.

5.    "Class Member" means a Person who is a member of the Class and has not timely and validly excluded himself, herself, or itself in accordance with the requirements set forth in the Order Granting Unopposed Motion for Approval of Proposed Class Notice and Notice Plan dated June 3, 2022.

6.    "Class Counsel" means Robbins LLP.

7.    "Class Notice" means the proposed form of, method for, and the date of dissemination of notice of the Settlement Agreement to the Class.

8.    "Class Representatives" means Plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket).

9.    "Complaint" means the Amended Complaint for Violations of the Sherman Antitrust Act, the Clayton Antitrust Act, California's Cartwright Act, New York's Donnelly Act, Florida's Antitrust and Unfair Trade Practices Act and Unjust Enrichment filed in the Action on July 15, 2016.

10.    "Court" means the United States District Court for the Eastern District of New York.

11.    "Defendants" means Discover, Mastercard International, Inc. ("Mastercard"), Visa, Inc. and Visa U.S.A., Inc. (collectively, "Visa"), and American Express Company ("Amex"); and

any other Person or Persons who are named as defendants in the Action at any time up to and including the date a Preliminary Approval Order is entered.

12.    "Discover" means Discover Financial Services.

13.    "Discover's Counsel" means Winston & Strawn LLP.

14.    "Effective Date of Settlement" has the meaning given to it in Section VII.

15.    "Escrow Account" means the account to be established with the Escrow Agent for the purpose of holding the Gross Settlement Fund pursuant to the terms of this Settlement Agreement.

16.    "Escrow Agent" means the bank or trust company that agrees to establish and maintain the Escrow Account upon approval of the Court as set forth in Section XI.

17.    "Execution Date" means the date of the execution of this Settlement Agreement by counsel for all Parties thereto.

18.    "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure.

19.    "Fee and Expense Application" has the meaning given to it in Section X.

20.    "Fee and Expense Award" has the meaning given to it in Section X.

21.    "Final Approval Order" has the meaning given to it in Section V.

22.    "Final Judgment and Order of Dismissal" has the meaning given to it in Section V.

23.    "Gross Settlement Fund" means the Settlement Amount plus any interest that may accrue.  The Gross Settlement Fund includes any amounts for notice and administration of the Settlement, any fees or expenses that may be awarded, and any service awards.  In no event shall

Discover be required to contribute more than $12.2 million ($12,200,000.00) to the Gross Settlement Fund.

24.    "Mediator" means former U.S. District Judge Layn R. Phillips.

25.    "Net Settlement Fund" has the meaning given to it in Section XI.

26.    "Parties" means, collectively, Plaintiffs (on behalf of themselves and the Class) and Discover.

27.    "Person" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

28.    "Plaintiffs" means B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket).

29.    "Plaintiffs' Counsel" means Class Counsel and other counsel representing any of the named Plaintiffs in this Action.

30.    "Plan of Distribution" means a plan or formula for allocation of the Net Settlement Fund among, and distributing the Net Settlement Fund to, Authorized Claimants as set forth in the Class Notice, or such other plan of allocation as the Court shall approve.

31.    "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Settlement Agreement and that approves the form of Class Notice and preliminarily approves a proposed Plan of Distribution.

32.    "Released Claims" means, in consideration of payment of the Settlement Amount into the Escrow Account as specified in Section XI of this Settlement Agreement, and for other valuable consideration, any and all manner of known and unknown claims, causes of action, cross-claims, counterclaims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs,

rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), arising out of the factual predicates of the Action, whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, including without limitation any and all actual or potential actions, losses, judgments, fees, fines, debts, liabilities (including joint and several), liens, causes of action, demands, rights, damages, penalties, punitive damages, costs, expenses (including attorneys' fees and legal expenses), indemnification claims, contribution claims, obligations, compensation, and claims for damages or for declaratory, equitable or injunctive relief of any nature (including but not limited to antitrust, RICO, contract, tort, conspiracy, unfair competition or unfair trade practice claims), whenever incurred, and liabilities of any nature whatsoever (including joint and several) that have or could have been alleged in the Action by the Releasing Parties against the Released Parties to the fullest extent permitted by law, from the beginning of time and continuing into the future without end.  It is expressly agreed for purposes of clarity that any claims arising out of the factual predicates of the Action, including with respect to the rules, fees, and/or conduct at issue, are claims that have or could have been alleged in the Action by the Releasing Parties against the Released Parties.

33.    "Released Party" or "Released Parties" means Discover Financial Services, and its past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates, divisions, predecessors, successors, assigns, and members, and each of their respective officers, directors, employees, trustees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, members, and assigns.  "Released Party" or "Released Parties" does not include any other Defendant or alleged co-conspirator, either explicitly or as a third-party beneficiary.

34.     "Releasing Parties" means, individually and collectively, Plaintiffs and any Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers, predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

35.     "Settlement Agreement" means this Amended Stipulation and Agreement of Settlement.

36.     "Settlement Amount" means the sum of $12.2 million dollars ($12,200,000.00) payable in lawful tender of the United States.

37.     "Taxes" means all (i) taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, penalties, or additions to tax) arising in any jurisdiction with respect to the income earned by the Gross Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" within the meaning of Treasury Regulations §1.468B-1 (or any equivalent state or local tax law) and (ii) other taxes or tax expenses imposed on or in connection with the Gross Settlement Fund.

## III.     GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT

38.     The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement.

## IV.    PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

39.    As soon as reasonably possible and in no event later than thirty (30) calendar days after the Execution Date, Plaintiffs' Counsel shall submit to the Court, and Discover shall support, a motion requesting entry of a Preliminary Approval Order.  That motion shall, *inter alia*:

(a)    seek preliminary confirmation that the Class already certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure will serve as the Class for purposes of the settlement;

(b)    request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure;

(c)    request authorization to disseminate Class Notice via: (1) a proposed form of, method for, and date of dissemination of Class Notice; and (2) a proposed Preliminary Approval Order.  Class Notice shall be as provided in the motion and as approved by the Court, with all expenses paid from the Gross Settlement Fund, subject to the provisions of Section XI of this Settlement Agreement.  The motion shall recite and ask the Court to find that the method of Class Notice to all Class Members who can be identified upon reasonable effort constitutes valid, due, and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process. The Claims Administrator will also establish and maintain a dedicated settlement website, from which Class Members can view and download relevant documents;

(d)    seek appointment of the Claims Administrator;

(e)    seek appointment of an Escrow Agent;

(f)    request that the Court, pending final determination of whether the Settlement Agreement should be approved, stay all proceedings in the Action against Discover

until the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement, except those proceedings provided for or required by this Settlement Agreement;

(g)     request that the Court, pending final determination of whether the Settlement Agreement should be approved, temporarily enjoin each Class Representative and each Class Member, either directly, representatively, or in any other capacity, from prosecuting in any forum any Released Claim against any of the Released Parties;

(h)     request a Court hearing at which the Court will consider the final approval of this Settlement Agreement; and

(i)     attach a proposed form of order, the proposed text of which Plaintiffs' Counsel shall provide to Discover at least five (5) business days prior to the submission to the Court of the motion requesting entry of a Preliminary Approval Order.  Plaintiffs' Counsel will consider in good faith any suggestions from Discover regarding the proposed form of order.  The form of order will include such provisions as are typical in such orders, including: (1) setting a date for the Fairness Hearing; (2) a provision indicating that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* (as of the Execution Date) without prejudice to their rights, claims, or defenses; (3) stating the substantial litigation risks that the Class faced in the Action; (4) requiring that all Class Members be bound by all final determinations in the Action concerning the settlement, whether favorable or unfavorable to the members of the Class; and (5) stating that Discover has denied and continues to deny each and all of the claims made by Plaintiffs in the Action and has denied and continues to deny liability against Discover arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action, and Discover has asserted a number of defenses to Plaintiffs' claims.

40.     Class Members who were in existence as of June 3, 2022, and did not exclude themselves from the Class pursuant to the Court's Order Granting Unopposed Motion for Approval of Proposed Class Notice and Notice Plan dated June 3, 2022, will not be provided another opportunity to opt-out.  This provision shall not be amended in whole or in part without the consent of both Plaintiffs and Discover.

41.     Discover shall be responsible for providing all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

42.     The Parties to this Settlement Agreement contemplate and agree that, prior to final approval of the settlement, Plaintiffs will request a Fairness Hearing at which the Court will consider the final approval of this Settlement Agreement.

## V.    FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST DISCOVER

43.     If the Court preliminarily approves the Settlement Agreement, Plaintiffs shall seek entry of a Final Approval Order and a Final Judgment and Order of Dismissal against Discover, the proposed text of which Plaintiffs and Discover shall agree upon.  The Final Approval Order and Final Judgment and Order of Dismissal submitted for Court approval will include, at a minimum, terms:

(a)     that the Class already certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure will be the Class for purposes of the settlement;

(b)     as to the Action, approving fully and finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

(c)     finding that the Class Notice given to Class Members constitutes the best notice practicable under the circumstances and complies in all respects with the valid, due, and

sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

(d)     as to Released Parties, directing that the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, with each Party bearing their own costs;

(e)     discharging and releasing the Released Parties from the Released Claims, regardless of whether any such Releasing Party executes and delivers a proof of claim;

(f)     permanently barring and enjoining Plaintiffs or any Class Member from (i) instituting or prosecuting any other action against any of the Released Parties as to any of the Released Claims, or (ii) assisting any third party in commencing or maintaining any suit against any Released Party related in any way to any of the Released Claims;

(g)     reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement and this Settlement Agreement, to the Court; and

(h)     determining under Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing that the judgment of dismissal as to the Released Parties shall be final and entered forthwith.

44.     The Final Judgment and Order of Dismissal shall become final when (i) the Court has entered a final order approving this Settlement Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to the Released Parties against all Class Members and without costs other than those provided for in this Settlement Agreement, and (ii) the time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as to the Released Parties described in (i) hereof has expired or, if

appealed, approval of this Settlement Agreement and the final judgment as to the Released Parties have been affirmed in their entirety by the Court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review.  It is agreed that the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

45.    As of the Execution Date, Plaintiffs, Class Members, and Discover shall be bound by the Settlement Agreement's terms and this Settlement Agreement shall not be rescinded except in accordance with the terms of this Settlement Agreement.

**VI.    NO ADMISSION OF WRONGDOING OR LIABILITY BY DISCOVER**

46.    Nothing in this Settlement Agreement will constitute or be construed as an admission of liability or wrongdoing by Discover.  Neither this Settlement Agreement (regardless of whether it becomes final), nor the Final Judgment and Order of Dismissal, nor any and all negotiations, documents, or discussions associated with them, nor any proceedings undertaken in accordance with the terms set forth herein, shall be deemed or construed to be (i) an admission or concession by Discover (or evidence thereof) in any action or proceeding of any kind whatsoever, civil, criminal, or otherwise, before any court, arbitrator, administrative agency, regulatory body, or any other body or authority present or future, (ii) evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by Discover, or (iii) evidence of the truth or validity of any of the claims or allegations contained in any complaint or any other pleading that Plaintiffs or Class Members have or could have asserted against Discover, including without limitation that Discover has engaged in any conduct or practice that violates any antitrust statute, or other law, regulation, or obligation.  Discover expressly denies any wrongdoing or liability whatsoever for any and all such claims and allegations.  Discover does not admit that a class was or could be certified for any purpose other than this Settlement Agreement.

- 14 -

## VII.    EFFECTIVE DATE OF SETTLEMENT

47.    The "Effective Date of Settlement" shall be the latest date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(a)    the Settlement Amount has been contributed to the Escrow Account pursuant to this Settlement Agreement;

(b)    entry of the Preliminary Approval Order;

(c)    final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

(d)    no Party has exercised his, her, or its rights to terminate this Settlement Agreement pursuant to Section XIV, and all periods for any Party to exercise such rights have expired; and

(e)    entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final pursuant to Section V, Paragraph 44.

48.    Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to the Plan of Distribution or Fee and Expense Application, or both, shall not in any way delay or preclude the Effective Date of Settlement.

## VIII.   SCOPE AND EFFECT OF SETTLEMENT

49.    The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against Discover; and (ii) any and all Released Claims as against all Released Parties.

50.    Upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have fully,

- 15 -

finally, and forever waived, released, relinquished, and discharged all Released Claims against the Released Parties; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue, either directly, representatively, or in any other capacity, any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit, action, proceeding or claim in any court, tribunal, administrative agency, regulatory body, arbitrator or other body in any jurisdiction against any of the Released Parties related in any way to any Released Claims.

51.     The Parties intend that the Release in this agreement be interpreted and enforced broadly and to the fullest extent permitted by law.  Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with regard to the Released Claims.  Nevertheless, each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

52.     The Released Claims effected by Paragraph 50 are intended to apply according to their terms, regardless of Section 1542 of the California Civil Code ("Section 1542") or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. The Releasing Parties acknowledge that they have been advised by their attorneys of the contents and effect of Section 1542 and hereby expressly waive and release with respect to the Released Claims any and all provisions, rights, and benefits conferred by (i) Section 1542, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO

EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

(ii) any equivalent, similar, or comparable past, present, or future law or principle of law in any jurisdiction; or (iii) any law or principle of law in any jurisdiction that would limit or restrict the effect or scope of the provisions of the release set forth above. The foregoing release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a mere recital.

53.    The releases provided in this Settlement Agreement shall become effective immediately upon occurrence of the Effective Date of Settlement without the need for any further action, notice, condition, or event.

54.    The Parties shall seek entry by the Court of an order, in the Final Judgment and Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person against the Released Parties for contribution or indemnification (however denominated) for all or a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or otherwise.

55.    In the event that this Settlement Agreement is terminated pursuant to Section XIV, or any condition for the final approval of this Settlement Agreement is not satisfied, the release and covenant not to sue provisions of this Paragraph shall be null and void and unenforceable.

## IX.    COOPERATION

56.    As a material term of the Settlement Agreement, Discover will agree to cooperate (fully and faithfully) in further litigation against the remaining Defendants in this Action. Cooperation in further litigation against the remaining Defendants in this Action is a material component of the Settlement Agreement and is defined as the follows:

(a)     Discover agrees to use reasonable efforts to authenticate documents and/or things produced in the Action in connection with trial, whether by declarations, affidavits, depositions, hearings, or live witnesses at trial, as may be necessary for the Action;

(b)     Discover agrees to respond to requests for clarification on produced chargeback data, testimony, or expert opinion, and/or further documentation or information relating to chargeback data, as necessary for the Action;

(c)     Discover will utilize its best efforts to produce up to two then-current Discover employees as live witnesses at any trial of Plaintiffs' claims in the Action;

(d)     Discover will not object to reasonable requests for trial depositions as necessary for the Action, in case of medical or other emergency; and

(e)     At least four months prior to trial, at a time agreed to by Plaintiffs and Discover, Discover's Counsel will meet with Plaintiffs' Counsel for five hours, and more if agreed-to by Discover and Plaintiffs, at an agreed-upon location, or virtually if in-person attendance is not possible, and provide at that meeting a reasonably detailed description of the principal facts known to Discover that are relevant to the alleged conduct at issue in the Action.

57.     Additionally, in connection with the settlement, Discover will, to the extent permitted by law, work in good faith to furnish information reasonably available to it to assist in the identification of potential Class Members.  Discover further agrees to employ reasonable and good faith efforts to cooperate with Plaintiffs to ensure the timely production of this information, as well as to determine the specific information to be provided and the format of that information. Any confidentiality or security concerns Discover may have in connection with providing such information will be addressed by Plaintiffs in good faith, including by allowing Discover to condition its provision of the information upon its approval of the data security and privacy

- 18 -

practices of the Claims Administrator handling its information.  In turn, Discover will respond in good faith to reasonable inquiries or requests from the Claims Administrator or Plaintiffs that may arise in connection with the notice, claims, or distribution process.  Discover agrees to employ reasonable and good faith efforts to cooperate with the Claims Administrator and other third-party service providers with respect to notice, claims processing, and claims distribution by providing information concerning its capacity to facilitate those third-party service providers' efforts to provide notice.  To the extent any disagreements arise as to the information Discover agrees to provide under this paragraph, the Parties will first attempt to meet and confer in good faith to reach a resolution.  If, following a good faith meet and confer process, the Parties cannot reach a resolution, the Parties agree they will submit the dispute to the Court for resolution in accordance with applicable law.  Nothing in this paragraph identifying cooperation that Discover shall provide to the Claims Administrator is intended to cause Discover to assume the role or responsibilities of the Claims Administrator.  Similarly, nothing in this paragraph is intended to waive any party's rights to seek to impose or oppose any additional obligations with respect to notice, claims, or distribution of the Settlement Amount.

## X.    FEE AND EXPENSE APPLICATION

58.    Plaintiffs' Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them solely from the Gross Settlement Fund of (1) an award of attorneys' fees; plus (2) reimbursement of reasonable expenses paid by Plaintiffs' Counsel in connection with prosecuting the Action; plus (3) any interest earned in the escrow account on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Gross Settlement Fund, as appropriate, and as may be awarded by the Court (the "Fee and Expense Award").

59.     The Fee and Expense Award, as approved by the Court, shall be paid solely from the Gross Settlement Fund to an account designated by Plaintiffs' Counsel within five (5) business days after entry of a final, non-appealable order.  Plaintiffs' Counsel shall not seek payment of same from any source other than the Gross Settlement Fund.  Plaintiffs and Class Members shall not seek payment of any attorneys' fees or costs from Discover in this Action.

60.     Plaintiffs' Counsel shall allocate the Fee and Expense Award among themselves in good faith.

61.     In the event that the order making the Fee and Expense Award is reversed or modified, then Plaintiffs' Counsel shall, within ten (10) business days from receiving notice from Discover's Counsel or from a court of appropriate jurisdiction, refund to the Gross Settlement Fund the Fee and Expense Award or any portion thereof previously paid to them plus interest thereon at the same rate as earned by the account into which the balance of the Gross Settlement Fund is deposited.

62.     The procedure for, and the allowance or disallowance by the Court of, the application by Plaintiffs' Counsel for attorneys' fees, costs, and expenses to be paid out of the Gross Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, the pendency of any such application, or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, provide a basis to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the settlement.

63.     Plaintiffs' Counsel may request service awards for each of the Plaintiffs, to be drawn exclusively from the Gross Settlement Fund, as provided for in Paragraph 68(b).

## XI.    THE GROSS SETTLEMENT FUND

64.    The Gross Settlement Fund shall be established within an Escrow Account and administered by the Escrow Agent, designated by Class Counsel, subject to the continuing jurisdiction of the Court.  No monies shall be paid from the Gross Settlement Fund without the specific authorization of Plaintiffs' Counsel, based on prior approval by the Court.  Plaintiffs' Counsel will form an appropriate escrow agreement in conformance with this Settlement Agreement.

65.    Within twenty-five (25) business days following the Court's entry of the Preliminary Approval Order, provided that within seven (7) days following entry of such Preliminary Approval Order, Plaintiffs' Counsel shall provide Discover with such information as Discover may require to effect the payment, and subject to the provisions hereof, and in full, complete the necessary wire transfers, Discover shall cause the payment of $12.2 million ($12,200,000.00) to be wired to the Escrow Agent.  These funds, together with any interest earned thereon, shall constitute the Gross Settlement Fund.  In the event that Plaintiffs' Counsel does not provide Discover with the information required to complete the wire transfer within the prescribed time, Discover's payment obligations under this paragraph shall be deferred by an amount of time equivalent to Plaintiffs' Counsel's delay in providing such information.

66.    The Gross Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government.  The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they

- 21 -

mature.  Discover shall have no responsibility or liability for any losses incurred by the Gross Settlement Fund.

67.     All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

68.     The Gross Settlement Fund shall be applied as follows:

(a)     to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(b)     to pay service awards for each of the Plaintiffs, if and to the extent allowed by the Court;

(c)     to use, if approved by the Court, up to $650,000.00 of the Settlement Amount for payment of any Court-approved costs and expenses in connection with providing Class Notice and the administration of the settlement, including, without limitation, identifying potential members of the Class; soliciting, reviewing, and evaluating proofs of claim or release forms, or both; and administering the settlement and disbursing the Gross Settlement Fund.  For the avoidance of doubt, notice and administration costs shall not include Plaintiffs' Counsel's work in securing settlement approval, including appeals from the grant of a Final Approval Motion.  If necessary, Plaintiffs shall be permitted to apply directly to the Court for approval of additional amounts to be used for notice and administration expenses without Discover's written agreement to the amounts requested, which shall be funded out of the Gross Settlement Fund.  In no event shall Discover have any obligation to increase the Settlement Amount or the Gross Settlement Fund for any purpose, including notice and administration costs.  In the event the Settlement Agreement is not approved by the Court or otherwise terminated, all amounts actually incurred up

to $650,000.00 for notice and/or administration are not recoverable and will not be returned or refunded to Discover;

      (d)     to pay the Taxes and tax expenses described in Section XIII herein;

      (e)     to pay any other Court-approved fees and expenses; and

      (f)     to distribute the balance of the Gross Settlement Fund (the "Net Settlement Fund") to Class Members as allowed by the Court.

69.     It is understood and agreed that no consideration or amount or sum paid, credited, offered, or expended by Discover in performance of this Settlement Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim or offense. Each Class Member is enforcing its rights as a private party and is not directly, indirectly, or derivatively enforcing any rules or exercising any regulatory powers as part of a governmental function on behalf of itself or any government or governmental entity.

70.     This Settlement Agreement does not include any provisions for injunctive relief.

## XII.   ADMINISTRATION OF THE SETTLEMENT

71.     Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel shall seek to have the Claims Administrator approved by the Court, for purposes of administering the settlement claims process, as set forth herein.

72.     The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

73.     The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes that may be raised by Class Members regarding the amount that they are owed under the Plan of Distribution.

74.     The Claims Administrator shall process this settlement based upon the orders of the Court and this Settlement Agreement, and, after entry of relevant order(s) of the Court, distribute the Net Settlement Fund in accordance with such order(s) and this Settlement Agreement.

75.     Except for its obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, the Released Parties shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.

76.     The Net Settlement Fund shall be distributed by the Claims Administrator only after the Effective Date of Settlement.

77.     Plaintiffs and Class Members shall look solely to the Gross Settlement Fund as full, final and complete satisfaction of all Released Claims.  Except as set forth in Section XI, Paragraph 65, Released Parties shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and Released Parties shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Plaintiffs, by any Class Member, or by any Releasing Parties, including, but not limited to, by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims.  Plaintiffs and Class Members acknowledge that as of the Effective Date of Settlement, the releases given herein shall become effective immediately by operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

78.     Any funds that remain in the Net Settlement Fund after distribution of the Net Settlement Fund in accordance with the Plan of Distribution shall not revert to Discover.  Plaintiffs shall apply directly to the Court to authorize the *cy pres* distribution of those remaining funds.

## XIII.  TAXES

79.    The Parties agree that the Gross Settlement Fund is intended to be a qualified settlement fund within the meaning of Treasury Regulations §1.468B-l, and agree not to take any position for tax purposes inconsistent therewith.  The Parties agree that the Gross Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any "relation-back election" (within the meaning of Treasury Regulations §1.468B-1) required to treat the Gross Settlement Fund as a qualified settlement fund from the earliest date possible.  The Claims Administrator shall be designated as the "administrator" (within the meaning of Treasury Regulation §1.468B-2(k)(3)) of the Gross Settlement Fund.

80.    The Claims Administrator shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election."  Such election shall be made in compliance with the procedures and requirements contained in the relevant Treasury Regulations.  The Gross Settlement Fund, less any amounts incurred for notice and administration as defined in Paragraph 68(c), and/or Taxes , including any accrued interest thereon, shall be returned to Discover, as provided in Section XIV, if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to Section XIV.

81.    The Claims Administrator shall timely and properly file, or cause to be filed, all income, informational, and other tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treasury Regulations §l.468B-2(k) and §l.468B-2(l)(2)).

82.    All Taxes shall timely be paid out of the Gross Settlement Fund by the Claims Administrator without prior order from the Court.  The Claims Administrator shall also be obligated to, and shall be responsible for, withholding from distribution to Class Members any

funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes. The Parties agree to cooperate with the Claims Administrator, Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section XIII.

83.    Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Gross Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Gross Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns. The Claims Administrator shall indemnify and hold harmless the Parties, using monies from the Gross Settlement Fund, from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence (including, without limitation, taxes payable by reason of any such indemnification payments).

84.    The Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the settlement provided herein.

## XIV.  TERMINATION OF SETTLEMENT

85.    Plaintiffs, through Plaintiffs' Counsel, and Discover, through Discover's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Settlement Agreement by providing written notice of their election to do so to all other Parties hereto within thirty (30) days of the date on which the following occurs: (1) if the Court, in a final order, declines to enter the Preliminary Approval Order, the Final Approval Order, or the Final

Judgment and Order of Dismissal (denying it in its entirety or in any material respect), or (2) if the Court enters the Final Approval Order and the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, the Final Approval Order or the Final Judgment and Order of Dismissal is finally vacated, modified, or reversed; provided, however, that the Parties agree to act in good faith to secure final approval of this settlement, and to attempt to address in good faith concerns regarding the settlement identified by the Court or any court of appeal. Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application or any plan of distribution, or both, or any determination on appeal from any such orders, shall not provide grounds for termination of this Settlement Agreement or settlement.

86.    Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, or is not approved, or in the event the Effective Date of Settlement fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered (subject to seeking whatever revisions to the pretrial schedule as may be necessary to protect the rights of the Parties), and any portion of the Gross Settlement Fund previously paid by or on behalf of Discover, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to in Section X above), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable in accordance with Paragraph 68(c), shall be returned to Discover within ten (10) business days from the date of the event causing such termination. At the request of Discover's Counsel, the Escrow Agent shall apply for any tax refund owed on the Gross Settlement Fund and pay the proceeds to Discover.

The Parties expressly reserve all of their rights if this Settlement Agreement is rescinded or does not otherwise become final.

## XV.    MISCELLANEOUS

87.    The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Plaintiffs or any Class Member against the Released Parties with respect to the Action and the Released Claims. Accordingly, Plaintiffs and Discover agree not to assert in any judicial proceeding that the Action was brought by Plaintiffs or defended by Discover in bad faith or without a reasonable basis. The Parties further agree not to assert in any judicial proceeding that any Party violated Rule 11 of the Federal Rules of Civil Procedure. The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

88.    The terms and provisions of the Stipulated Protective Order, filed on June 15, 2016, and approved on July 1, 2016, shall survive and continue in effect through and after any final adjudication of the Action.

89.    Nothing in this Settlement Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

90.    The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

91.    The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain

jurisdiction for the purpose of entering orders relating to the Fee and Expense Application and the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

92.    For the purpose of construing or interpreting this Settlement Agreement, Plaintiffs and Discover agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

93.    This Settlement Agreement shall constitute the entire agreement between Plaintiffs and Discover pertaining to the settlement of the Action against Discover and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Discover in connection therewith. All terms of this Settlement Agreement are contractual and not mere recitals.  The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Class Members.

94.    The terms of this Settlement Agreement are not severable, but are interdependent and have been agreed to only as a whole by Plaintiffs (for themselves individually and on behalf of each Class Member in the Action) and Discover.

95.    This Settlement Agreement may be modified or amended only by a writing executed by Plaintiffs, through Plaintiffs' Counsel, and Discover, through Discover's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court.  Amendments and modifications may be made without notice to the Class unless notice is required by law or by the Court.

96.    All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

97.     Discover, Plaintiffs, their respective counsel, and the Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

98.     The Parties acknowledge that this Settlement Agreement makes no determination as to which Class Members are entitled to distribution from the Net Settlement Fund, or as to the formula for determining the amounts to be distributed.

99.     Any proposed plan of distribution is not a necessary term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that any particular plan of distribution be approved.  The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular plan of distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

100.    Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party related to this Settlement Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by United States mail and electronic mail, to:

FOR PLAINTIFFS:

George C. Aguilar
Michael J. Nicoud
Jacob Ogbozo
ROBBINS LLP
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

gaguilar@robbinsllp.com
mnicoud@robbinsllp.com
jogbozo@robbinsllp.com


FOR DISCOVER;

James F. Herbison
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
jherbiso@winston.com

Johanna Rae Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jhudgens@winston.com

Jeanifer E. Parsigian
Dana L. Cook-Milligan
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com
dlcook@winston.com


101.    This Settlement Agreement may be executed in counterparts by Plaintiffs and

Discover, and a facsimile or PDF signature shall be deemed an original signature for purposes of

executing this Settlement Agreement.

102.    Plaintiffs and Discover acknowledge that they have been represented by counsel

and have made their own investigations of the matters covered by this Settlement Agreement to

the extent they have deemed it necessary to do so.  Therefore, Plaintiffs, Discover, and their

respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake.   Moreover, Plaintiffs, Discover, and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

103.    Each of the undersigned attorneys represents that he/she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Plaintiffs' Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs.   Each of the undersigned attorneys shall use his/her best efforts to effectuate this Settlement Agreement.

IN   WITNESS   WHEREOF,   the   Parties   hereto,   through   their   fully   authorized representatives, have agreed to this Settlement Agreement, dated June 6, 2025.

George C. Aguilar
Michael J. Nicoud
Jacob W. Ogbozo
**ROBBINS LLP**
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsllp.com
mnicoud@robbinsllp.com
jobgozo@robbinsllp.com

John W. Devine
**DEVINE GOODMAN & RASCO, LLP**
2800 Ponce De Leon Blvd., Suite 1400

James F. Herbison
**WINSTON & STRAWN LLP**
35 W. Wacker Dr.
Chicago, IL 60601
Telephone: (312) 558-5600
Facsimile: (312) 558-5700
jherbiso@winston.com

Johanna Rae Hudgens
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jhudgens@winston.com

- 32 -

Coral Gables, FL 33134
Telephone: (305) 374-8200
Facsimile: (305) 374-8208
jdevine@devinegoodman.com

Thomas G. Amon
**LAW OFFICES OF THOMAS G. AMON**
420 Lexington Avenue, Suite 1402
New York, NY 10170
Telephone: (212) 810-2430
Facsimile: (212) 810-2427
tamon@amonlaw.com

*Class Counsel and Counsel for Plaintiffs B &
R Supermarket, Inc. (d/b/a Milam's Market),
Grove Liquors LLC, Strouk Group LLC
(d/b/a Monsieur Marcel), and Palero Food
Corp. and Cagueyes Food Corp. (d/b/a Fine
Fare Supermarket)*

Jeanifer E. Parsigian
Dana L. Cook-Milligan
**WINSTON & STRAWN LLP**
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com
dlcook@winston.com

*Attorneys for Defendant Discover Financial
Services*

- 33 -

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ——————————————————— X | |
| B & R SUPERMARKET, INC., d/b/a MILAM'S MARKET, a Florida corporation, et al., Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>   v.<br><br>VISA, INC., et al.,<br><br>        Defendants. | : Case No. 1:17-cv-02738-MKB-JAM<br>:<br>: <u>CLASS ACTION</u><br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| ——————————————————— X | |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

## I.    RECITALS

This Stipulation and Agreement of Settlement ("Settlement Agreement") is made and entered into on May 16, 2025 ("Execution Date"), between Plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket) (collectively, "Plaintiffs" or "Class Representatives"), for themselves individually and on behalf of each member of the Class (as defined herein) (collectively, "Class Members") and American Express Company ("Amex"), by and through Plaintiffs' Counsel and Amex's Counsel (as defined herein).  This Settlement Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined herein), with respect to the Released Parties (as defined herein), upon and subject to the terms and conditions herein.

WHEREAS, on July 15, 2016, Plaintiffs filed the operative complaint in this Action (as defined herein), the Amended Complaint for Violations of the Sherman Antitrust Act, the Clayton Antitrust Act, California's Cartwright Act, New York's Donnelly Act, Florida's Antitrust and Unfair Trade Practices Act and Unjust Enrichment (the "Complaint");

WHEREAS, on August 28, 2020, the Court (as defined herein) entered an order granting Plaintiffs' renewed motion for class certification and certified a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

WHEREAS, Plaintiffs are prosecuting the Action on their own behalf and on behalf of a certified Rule 23(b)(3) class against Amex and the other Defendants (as defined herein);

WHEREAS, Plaintiffs have alleged, among other things set forth more fully in the Complaint and subsequent filings, that Defendants, including Amex, violated antitrust laws by entering into a conspiracy to: (1) adopt the same policy via nearly identical rules for shifting billions of dollars in liability for fraudulent charges, or "chargebacks," from banks to merchants

("Fraud Liability Shift," "Liability Shift," or "FLS"); and (2) make the Liability Shift effective on the same day and in the same manner for all four networks, to prevent merchants from steering customers to use cards with more lenient terms or concessions such as reduced interchange or merchant discount fees.  Plaintiffs allege Defendants' actions damaged the Class, as defined herein, in violation of the Sherman Act, 15 U.S.C. §§ l and 3, *et seq.* as well as state antitrust, restraint of trade, and unfair competition laws;

WHEREAS, Plaintiffs have contended that they and the Class Members are entitled to actual damages, treble damages, and injunctive relief for loss or damage, and threatened loss or damage, as a result of violations of the laws as alleged in the Complaint, arising from Amex's (and the other Defendants') alleged conduct;

WHEREAS, Amex has denied and continues to deny each and all of the claims and allegations made by Plaintiffs in the Action and all liability against it arising out of any of the conduct, statements, acts, or omissions that were alleged, or that could have been alleged, in the Action, and Amex has asserted a number of defenses to Plaintiffs' claims;

WHEREAS, Plaintiffs, for themselves individually and on behalf of each Class Member, and Amex agree that neither this Settlement Agreement nor any statement made in negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by Amex or of the truth of any of the claims or allegations alleged in the Action or a waiver of any defenses thereto;

WHEREAS, Plaintiffs and Amex have engaged in extensive discovery regarding the facts pertaining to Plaintiffs' claims and Amex's defenses;

WHEREAS, Plaintiffs' Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the

- 2 -

Action, the legal and factual defenses thereto, and the applicable law, that: (1) it is in the best interests of the Class to enter into this Settlement Agreement in order to avoid the uncertainties of litigation and to assure that the benefits reflected herein, including the value of the Settlement Amount (as defined herein) to be paid by Amex under this Settlement Agreement, are obtained for the Class; and (2) the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate and in the best interests of the Class;

WHEREAS, Amex, while continuing to deny that it is liable for any of the claims asserted against it in the Action and maintaining that it has valid defenses to such claims, has nevertheless agreed to enter into this Settlement Agreement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby to put fully to rest this controversy, to avoid the risks inherent in complex litigation, and to obtain complete dismissal of the Complaint as to Amex and a release of claims as set forth herein; and

WHEREAS, this Settlement Agreement is the product of arm's-length negotiations between Plaintiffs' Counsel and Amex's Counsel under the guidance and oversight of former U.S. District Judge Layn Phillips as Mediator, and this Settlement Agreement embodies all of the terms and conditions of the settlement agreed upon between Amex and Plaintiffs, both for themselves individually and on behalf of the Class;

NOW, THEREFORE, in consideration of the covenants, terms, and releases in this Settlement Agreement, it is agreed, by and among Plaintiffs (for themselves individually and on behalf of the Class and each member thereof who has not timely excluded themselves) and Amex, by and through Plaintiffs' Counsel and Amex's Counsel, that, subject to the approval of the Court and any appellate review of that approval, the Action be settled, compromised, and dismissed with

prejudice as to Amex and the other Released Parties, without costs, except as stated herein, and releases be extended, as set forth in this Settlement Agreement.

## II.    DEFINITIONS

As used in this Settlement Agreement, the following capitalized terms have the meanings specified below:

1.    "Action" means *B & R Supermarket, Inc., et al. v. Visa, Inc., et al.*, No. 1:17:cv-02738-MKB-JAM (E.D.N.Y.), which is currently pending in the United States District Court for the Eastern District of New York.

2.    "Amex" means American Express Company.

3.    "Amex's Counsel" means Cravath, Swaine & Moore LLP.

4.    "Authorized Claimant" means any Class Member who will be entitled to a distribution from the Net Settlement Fund as provided for in the Plan of Distribution.

5.    "Claims Administrator" means Epiq Class Action & Claims Solutions, Inc. ("Epiq"), a third-party retained by Plaintiffs' Counsel to manage and administer the process by which each member of the Class is notified of the Settlement Agreement and paid from the Net Settlement Fund.

6.    "Class," as defined in the Court's class certification Order dated August 28, 2020, means all "Merchants who incurred one or more unreimbursed chargeback(s) between October 1, 2015 through and including September 30, 2017, pursuant to the Fraud Liability Shift for the assessment of Mastercard, Visa, Discover and/or Amex payment card chargebacks.  Excluded from the Class are members of the judiciary and government entities or agencies."  Also excluded from the Class are any putative class members who previously excluded themselves from this Action by filing a request for exclusion with the requirements set forth in the Order Granting

Unopposed Motion for Approval of Proposed Class Notice and Notice Plan dated June 3, 2022, and the Class Notice pursuant thereto previously provided to Class Members.

7.      "Class Member" means a Person who is a member of the Class and has not timely and validly excluded himself, herself, or itself in accordance with the requirements set forth in the Order Granting Unopposed Motion for Approval of Proposed Class Notice and Notice Plan dated June 3, 2022.

8.      "Class Counsel" means Robbins LLP.

9.      "Class Notice" means the proposed form of, method for, and the date of dissemination of notice of the Settlement Agreement to the Class.

10.     "Class Representatives" means Plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket).

11.     "Complaint" means the Amended Complaint for Violations of the Sherman Antitrust Act, the Clayton Antitrust Act, California's Cartwright Act, New York's Donnelly Act, Florida's Antitrust and Unfair Trade Practices Act and Unjust Enrichment filed in the Action on July 15, 2016.

12.     "Court" means the United States District Court for the Eastern District of New York.

13.     "Defendants" means Amex, Mastercard International, Inc. ("Mastercard"), Visa, Inc. and Visa U.S.A., Inc. (collectively, "Visa"), and Discover Financial Services ("Discover"); and any other Person or Persons who are named as defendants in the Action at any time up to and including the date a Preliminary Approval Order is entered.

14.     "Effective Date of Settlement" has the meaning given to it in Section VII.

15.    "Escrow Account" means the account to be established with the Escrow Agent for the purpose of holding the Gross Settlement Fund pursuant to the terms of this Settlement Agreement.

16.    "Escrow Agent" means the bank or trust company that agrees to establish and maintain the Escrow Account upon approval of the Court as set forth in Section XI.

17.    "Execution Date" means the date of the execution of this Settlement Agreement by counsel for all Parties thereto.

18.    "Fairness Hearing" means the hearing to be held by the Court to determine whether the settlement set forth in this Settlement Agreement shall receive final approval pursuant to Rule 23 of the Federal Rules of Civil Procedure.

19.    "Fee and Expense Application" has the meaning given to it in Section X.

20.    "Fee and Expense Award" has the meaning given to it in Section X.

21.    "Final Approval Order" has the meaning given to it in Section V.

22.    "Final Judgment and Order of Dismissal" has the meaning given to it in Section V.

23.    "Gross Settlement Fund" means the Settlement Amount plus any interest that may accrue.  The Gross Settlement Fund includes any amounts for notice and administration of the Settlement, any fees or expenses that may be awarded, and any service awards.  In no event shall Amex be required to contribute more than $20 million ($20,000,000.00) to the Gross Settlement Fund.

24.    "Mediator" means former U.S. District Judge Layn R. Phillips.

25.    "Net Settlement Fund" has the meaning given to it in Section XI.

26.    "Parties" means, collectively, Plaintiffs (on behalf of themselves and the Class) and Amex.

27.    "Person" means an individual or entity, and his, her, or its spouses, heirs, predecessors, successors, representatives, or assignees.

28.    "Plaintiffs" means B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket).

29.    "Plaintiffs' Counsel" means Class Counsel and other counsel representing any of the named Plaintiffs in this Action.

30.    "Plan of Distribution" means a plan or formula for allocation of the Net Settlement Fund among, and distributing the Net Settlement Fund to, Authorized Claimants as set forth in the Class Notice, or such other plan of allocation as the Court shall approve.

31.    "Preliminary Approval Order" means an order of the Court that preliminarily approves the settlement set forth in this Settlement Agreement and that approves the form of Class Notice and preliminarily approves a proposed Plan of Distribution.

32.    "Released Claims" means, in consideration of payment of the Settlement Amount into the Escrow Account as specified in Section XI of this Settlement Agreement, and for other valuable consideration, any and all manner of known and unknown claims, causes of action, cross-claims, counterclaims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), arising out of the factual predicates of the Action, whether class or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, or otherwise in nature, including without limitation any and all actual or potential actions, losses, judgments, fees, fines, debts, liabilities (including joint and several), liens, causes of action, demands, rights, damages, penalties, punitive damages, costs, expenses (including attorneys' fees and legal

- 7 -

expenses), indemnification claims, contribution claims, obligations, compensation, and claims for damages or for declaratory, equitable or injunctive relief of any nature (including but not limited to antitrust, RICO, contract, tort, conspiracy, unfair competition or unfair trade practice claims), whenever incurred, and liabilities of any nature whatsoever (including joint and several) that have or could have been alleged in the Action by the Releasing Parties against the Released Parties to the fullest extent permitted by law, from the beginning of time and continuing into the future without end, except that Released Claims does not include any claims against Amex by class members who are bound by a valid Card Acceptance Agreement and who were compelled to arbitrate by the Court's August 14, 2024 Memorandum and Order.  It is expressly agreed for purposes of clarity that any claims arising out of the factual predicates of the Action, including with respect to the rules, fees, and/or conduct at issue, are claims that have or could have been alleged in the Action by the Releasing Parties against the Released Parties.

33.     "Released Party" or "Released Parties" means American Express Company, and its past, present, and future, direct and indirect parents (including holding companies), subsidiaries, affiliates, associates, divisions, predecessors, successors, assigns, and members, and each of their respective officers, directors, employees, trustees, agents, attorneys, legal or other representatives, trustees, heirs, executors, administrators, advisors, members, and assigns.  "Released Party" or "Released Parties" does not include any other Defendant or alleged co-conspirator, either explicitly or as a third-party beneficiary.

34.     "Releasing Parties" means, individually and collectively, Plaintiffs and any Class Member, on behalf of themselves and any of their respective past, present or future officers, directors, stockholders, agents, employees, legal or other representatives, partners, associates, trustees, parents, subsidiaries, divisions, affiliates, heirs, executors, administrators, purchasers,

predecessors, successors, and assigns, whether or not they object to the settlement set forth in this Settlement Agreement, and whether or not they make a claim for payment from the Net Settlement Fund.

35.     "Settlement Agreement" means this Stipulation and Agreement of Settlement.

36.     "Settlement Amount" means the sum of $20 million dollars ($20,000,000.00) payable in lawful tender of the United States.

37.     "Taxes" means all (i) taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, penalties, or additions to tax) arising in any jurisdiction with respect to the income earned by the Gross Settlement Fund, including any taxes or tax detriments that may be imposed upon the Released Parties with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" within the meaning of Treasury Regulations §1.468B-1 (or any equivalent state or local tax law) and (ii) other taxes or tax expenses imposed on or in connection with the Gross Settlement Fund.

## III.   GOOD FAITH EFFORTS TO EFFECTUATE THIS SETTLEMENT AGREEMENT

38.     The Parties agree to cooperate with one another in good faith to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms of this Settlement Agreement.

## IV.   PRELIMINARY APPROVAL ORDER, NOTICE, AND FAIRNESS HEARING

39.     As soon as reasonably possible and in no event later than thirty (30) calendar days after the Execution Date, Plaintiffs' Counsel shall submit to the Court a motion requesting entry of a Preliminary Approval Order.  That motion shall, *inter alia*:

(a)    seek preliminary confirmation that the Class already certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure will serve as the Class for purposes of the settlement;[1]

(b)    request preliminary approval of the settlement set forth in this Settlement Agreement as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure;

(c)    request authorization to disseminate Class Notice via: (1) a proposed form of, method for, and date of dissemination of Class Notice; and (2) a proposed Preliminary Approval Order.  Class Notice shall be as provided in the motion and as approved by the Court, with all expenses paid from the Gross Settlement Fund, subject to the provisions of Section XI of this Settlement Agreement.  The motion shall recite and ask the Court to find that the method of Class Notice to all Class Members who can be identified upon reasonable effort constitutes valid, due, and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23 and due process. The Claims Administrator will also establish and maintain a dedicated settlement website, from which Class Members can view and download relevant documents;

(d)    seek appointment of the Claims Administrator;

(e)    seek appointment of an Escrow Agent;

(f)    request that the Court, pending final determination of whether the Settlement Agreement should be approved, stay all proceedings in the Action against Amex until

---

[1] Amex agrees not to challenge the settlement Class in connection with preliminary approval or final approval proceedings, but Amex otherwise preserves all of its arguments related to class certification/decertification in the event the Settlement Agreement is not approved.

the Court renders a final decision on approval of the settlement set forth in this Settlement Agreement, except those proceedings provided for or required by this Settlement Agreement;

(g)    request that the Court, pending final determination of whether the Settlement Agreement should be approved, temporarily enjoin each Class Representative and each Class Member, either directly, representatively, or in any other capacity, from prosecuting in any forum any Released Claim against any of the Released Parties;

(h)    request a Court hearing at which the Court will consider the final approval of this Settlement Agreement; and

(i)    attach a proposed form of order, the proposed text of which Plaintiffs' Counsel shall provide to Amex at least five (5) business days prior to the submission to the Court of the motion requesting entry of a Preliminary Approval Order.  Plaintiffs' Counsel will consider in good faith any suggestions from Amex regarding the proposed form of order.  The form of order will include such provisions as are typical in such orders, including: (1) setting a date for the Fairness Hearing; (2) a provision indicating that, if final approval of the settlement is not obtained, the settlement is null and void, and the Parties will revert to their positions *ex ante* (as of the Execution Date) without prejudice to their rights, claims, or defenses; (3) stating the substantial litigation risks that the Class faced in the Action; (4) requiring that all Class Members be bound by all final determinations in the Action concerning the settlement, whether favorable or unfavorable to the members of the Class; and (5) stating that Amex has denied and continues to deny each and all of the claims made by Plaintiffs in the Action and has denied and continues to deny liability against Amex arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action, and Amex has asserted a number of defenses to Plaintiffs' claims.

40.     Class Members who were in existence as of June 3, 2022, and did not exclude themselves from the Class pursuant to the Court's Order Granting Unopposed Motion for Approval of Proposed Class Notice and Notice Plan dated June 3, 2022, will not be provided another opportunity to opt-out.  This provision shall not be amended in whole or in part without the consent of both Plaintiffs and Amex.

41.     Amex shall be responsible for providing all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

42.     The Parties to this Settlement Agreement contemplate and agree that, prior to final approval of the settlement, Plaintiffs will request a Fairness Hearing at which the Court will consider the final approval of this Settlement Agreement.

## V.    FINAL JUDGMENT AND ORDER OF DISMISSAL AGAINST AMEX

43.     If the Court preliminarily approves the Settlement Agreement, Plaintiffs shall seek entry of a Final Approval Order and a Final Judgment and Order of Dismissal as to Amex, the proposed text of which Plaintiffs and Amex shall agree upon.  The Final Approval Order and Final Judgment and Order of Dismissal submitted for Court approval will include, at a minimum, terms:

(a)     that the Class already certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure will be the Class for purposes of the settlement;

(b)     as to the Action, approving fully and finally this settlement and its terms as being a fair, reasonable, and adequate settlement as to the Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to its terms and conditions;

(c)     finding that the Class Notice given to Class Members constitutes the best notice practicable under the circumstances and complies in all respects with the valid, due, and

sufficient notice requirements of Federal Rule of Civil Procedure 23, and meets the requirements of due process;

       (d)     as to Released Parties, directing that the Action be dismissed with prejudice and, except as provided for in this Settlement Agreement, with each Party bearing their own costs;

       (e)     discharging and releasing the Released Parties from the Released Claims, regardless of whether any such Releasing Party executes and delivers a proof of claim;

       (f)     permanently barring and enjoining Plaintiffs or any Class Member from (i) instituting or prosecuting any other action against any of the Released Parties as to any of the Released Claims, or (ii) assisting any third party in commencing or maintaining any suit against any Released Party related in any way to any of the Released Claims;

       (g)     reserving exclusive jurisdiction over the settlement and this Settlement Agreement, including all future proceedings concerning the administration, interpretation, consummation, and enforcement of this settlement and this Settlement Agreement, to the Court; and

       (h)     determining under Rule 54(b) of the Federal Rules of Civil Procedure that there is no just reason for delay and directing that the judgment of dismissal as to the Released Parties shall be final and entered forthwith.

     44.    The Final Judgment and Order of Dismissal shall become final when (i) the Court has entered a final order approving this Settlement Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment dismissing the Action with prejudice as to the Released Parties against all Class Members and without costs other than those provided for in this Settlement Agreement, and (ii) the time for appeal from the Court's approval of this Settlement Agreement and entry of a final judgment as to the Released Parties described in (i) hereof has expired or, if

appealed, approval of this Settlement Agreement and the final judgment as to the Released Parties

have been affirmed in their entirety by the Court of last resort to which such appeal has been taken

and such affirmance has become no longer subject to further appeal or review.  It is agreed that

the provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account

in determining the above-stated times.

45.    As of the Execution Date, Plaintiffs, Class Members, and Amex shall be bound by

the Settlement Agreement's terms and this Settlement Agreement shall not be rescinded except in

accordance with the terms of this Settlement Agreement.

## VI.    NO ADMISSION OF WRONGDOING OR LIABILITY BY AMEX

46.    Nothing in this Agreement will constitute or be construed as an admission of

liability or wrongdoing by Amex.  Neither this Settlement Agreement (regardless of whether it

becomes final), nor the Final Judgment and Order of Dismissal, nor any and all negotiations,

documents, or discussions associated with them, nor any proceedings undertaken in accordance

with the terms set forth herein, shall be deemed or construed to be (i) an admission or concession

by Amex (or evidence thereof) in any action or proceeding of any kind whatsoever, civil, criminal,

or otherwise, before any court, arbitrator, administrative agency, regulatory body, or any other

body or authority present or future, (ii) evidence of any violation of any statute or law or of any

liability or wrongdoing whatsoever by Amex, or (iii) evidence of the truth or validity of any of the

claims or allegations contained in any complaint or any other pleading that Plaintiffs or Class

Members have or could have asserted against Amex, including without limitation that Amex has

engaged in any conduct or practice that violates any antitrust statute, or other law, regulation, or

obligation.  Amex expressly denies any wrongdoing or liability whatsoever for any and all such

claims and allegations.  Amex does not admit that a class was or could be certified for any purpose

other than this Settlement Agreement.

- 14 -

## VII.    EFFECTIVE DATE OF SETTLEMENT

47.    The "Effective Date of Settlement" shall be the latest date when all of the following events shall have occurred and shall be conditioned on the occurrence of all of the following events:

(a)    the Settlement Amount has been contributed to the Escrow Account pursuant to this Settlement Agreement;

(b)    entry of the Preliminary Approval Order;

(c)    final approval by the Court of the settlement set forth in this Settlement Agreement, following Class Notice and the Fairness Hearing;

(d)    no Party has exercised his, her, or its rights to terminate this Settlement Agreement pursuant to Section XIV, and all periods for any Party to exercise such rights have expired; and

(e)    entry by the Court of a Final Judgment and Order of Dismissal, and the Final Judgment and Order of Dismissal becomes final pursuant to Section V, Paragraph 44.

48.    Notwithstanding any other provision herein, any proceeding or order, or motion for reconsideration, appeal, petition for a writ of certiorari or its equivalent, pertaining solely to the Plan of Distribution or Fee and Expense Application, or both, shall not in any way delay or preclude the Effective Date of Settlement.

## VIII.    SCOPE AND EFFECT OF SETTLEMENT

49.    The obligations incurred pursuant to this Settlement Agreement shall be in full and final disposition of: (i) the Action against Amex; and (ii) any and all Released Claims as against all Released Parties.

50.    Upon the Effective Date of Settlement, each of the Releasing Parties: (i) shall be deemed to have, and by operation of the Final Judgment and Order of Dismissal, shall have fully,

- 15 -

finally, and forever waived, released, relinquished, and discharged all Released Claims against the Released Parties; (ii) shall forever be enjoined from prosecuting in any forum any Released Claim against any of the Released Parties; and (iii) agrees and covenants not to sue, either directly, representatively, or in any other capacity, any of the Released Parties on the basis of any Released Claims or to assist any third party in commencing or maintaining any suit, action, proceeding or claim in any court, tribunal, administrative agency, regulatory body, arbitrator or other body in any jurisdiction against any of the Released Parties related in any way to any Released Claims.

51.     The Parties intend that the Release in this agreement be interpreted and enforced broadly and to the fullest extent permitted by law.  Each Releasing Party may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with regard to the Released Claims.  Nevertheless, each Releasing Party hereby expressly waives and fully, finally, and forever settles and releases, upon this Settlement Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claim, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

52.     The Released Claims effected by Paragraph 50 are intended to apply according to their terms, regardless of Section 1542 of the California Civil Code ("Section 1542") or any equivalent, similar, or comparable present or future law or principle of law of any jurisdiction. The Releasing Parties acknowledge that they have been advised by their attorneys of the contents and effect of Section 1542 and hereby expressly waive and release with respect to the Released Claims any and all provisions, rights, and benefits conferred by (i) Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO

> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE
> RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
> MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE
> DEBTOR OR RELEASED PARTY.

(ii) any equivalent, similar, or comparable past, present, or future law or principle of law in any

jurisdiction; or (iii) any law or principle of law in any jurisdiction that would limit or restrict the

effect or scope of the provisions of the release set forth above.  The foregoing release of unknown,

unanticipated, unsuspected, unforeseen, and unaccrued losses or claims is contractual, and not a

mere recital.

53.     The releases provided in this Settlement Agreement shall become effective

immediately upon occurrence of the Effective Date of Settlement without the need for any further

action, notice, condition, or event.

54.     The Parties shall seek entry by the Court of an order, in the Final Judgment and

Order of Dismissal or otherwise, to the extent not prohibited by law, barring claims by any Person

against the Released Parties for contribution or indemnification (however denominated) for all or

a portion of any amounts paid or awarded in the Action by way of settlement, judgment, or

otherwise.

55.     In the event that this Settlement Agreement is terminated pursuant to Section XIV,

or any condition for the final approval of this Settlement Agreement is not satisfied, the release

and covenant not to sue provisions of this Paragraph shall be null and void and unenforceable.

## IX.    COOPERATION

56.     As a material term of the Settlement Agreement, Amex agrees to cooperate (fully

and faithfully) in further litigation against the remaining Defendants in this Action, with such

cooperation defined as follows:

(a)    Amex agrees to use reasonable efforts to authenticate documents and/or things produced in the Action in connection with trial, whether by declarations, affidavits, depositions, hearings, or live witnesses at trial, as may be necessary for the Action;

(b)    Amex agrees to respond to requests for clarification on produced chargeback data, testimony, or expert opinion, as necessary for the Action;

(c)    Amex will utilize its best efforts to produce up to two then-current Amex employees as live witnesses at trial, as necessary for the Action; and

(d)    In case of medical or other emergency, Amex will not object to reasonable requests for trial depositions as necessary for the Action.

57.    At present, Class Counsel believe they do not require from Amex any additional contact information or other data related to Class Members in order to provide the best practicable notice under the circumstances to potential Class Members. To the extent Class Counsel identify, in the future, gaps in the information or data needed to carry out the Notice Plan or to pay claims in accordance with the Plan of Distribution, Class Counsel shall identify such additional information or data for Amex, and Amex agrees to provide reasonable cooperation in providing (or assisting Class Counsel in otherwise obtaining) any such necessary information or data to the Claims Administrator, as appropriate, with all Parties agreeing that Amex shall have reasonable and sufficient time to do so. Any data or information provided pursuant to this Paragraph 57 shall be kept Confidential. Nothing in this paragraph is intended to cause Amex to assume the role or responsibilities of the Claims Administrator. Similarly, nothing in this paragraph is intended to waive any party's rights to seek to impose or oppose any additional obligations with respect to notice, claims, or distribution of the Settlement Amount.

## X.    FEE AND EXPENSE APPLICATION

58.    Plaintiffs' Counsel may submit an application or applications to the Court (the "Fee and Expense Application") for distribution to them solely from the Gross Settlement Fund of (1) an award of attorneys' fees; plus (2) reimbursement of reasonable expenses paid by Plaintiffs' Counsel in connection with prosecuting the Action; plus (3) any interest earned in the escrow account on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Gross Settlement Fund, as appropriate, and as may be awarded by the Court (the "Fee and Expense Award").

59.    The Fee and Expense Award, as approved by the Court, shall be paid solely from the Gross Settlement Fund to an account designated by Plaintiffs' Counsel within five (5) business days after entry of a final, non-appealable order.  Plaintiffs' Counsel shall not seek payment of same from any source other than the Gross Settlement Fund.  Plaintiffs and Class Members shall not seek payment of any attorneys' fees or costs from Amex in this Action.

60.    Plaintiffs' Counsel shall allocate the Fee and Expense Award among themselves in good faith.

61.    In the event that the order making the Fee and Expense Award is reversed or modified, then Plaintiffs' Counsel shall, within ten (10) business days from receiving notice from Amex's Counsel or from a court of appropriate jurisdiction, refund to the Gross Settlement Fund the Fee and Expense Award or any portion thereof previously paid to them plus interest thereon at the same rate as earned by the account into which the balance of the Gross Settlement Fund is deposited.

62.    The procedure for, and the allowance or disallowance by the Court of, the application by Plaintiffs' Counsel for attorneys' fees, costs, and expenses to be paid out of the Gross Settlement Fund are not part of this Settlement Agreement, and are to be considered by the Court

separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to the Fee and Expense Application, the pendency of any such application, or any appeal from any such order shall not operate to terminate or cancel this Settlement Agreement, provide a basis to terminate or cancel this Settlement Agreement, or affect or delay the finality of the judgment approving the settlement.

63.    Plaintiffs' Counsel may request service awards for each of the Plaintiffs, to be drawn exclusively from the Gross Settlement Fund, as provided for in Paragraph 68(b).

## XI.    THE GROSS SETTLEMENT FUND

64.    The Gross Settlement Fund shall be established within an Escrow Account and administered by the Escrow Agent, designated by Class Counsel, subject to the continuing jurisdiction of the Court.  No monies shall be paid from the Gross Settlement Fund without the specific authorization of Plaintiffs' Counsel, based on prior approval by the Court.  Plaintiffs' Counsel will form an appropriate escrow agreement in conformance with this Settlement Agreement.

65.    Within twenty-five (25) business days following the Court's entry of the Preliminary Approval Order, provided that within seven (7) days following entry of such Preliminary Approval Order, Plaintiffs' Counsel shall provide Amex with such information as Amex may require to effect the payment, and subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, Amex shall cause the payment of $20 million ($20,000,000.00) to be wired to the Escrow Agent.  These funds, together with any interest earned thereon, shall constitute the Gross Settlement Fund.  In the event that Plaintiffs' Counsel does not provide Amex with the information required to complete the wire transfer within the prescribed time, Amex's payment obligations under this paragraph shall be deferred by an amount of time equivalent to Plaintiffs' Counsel's delay in providing such information.

66.     The Gross Settlement Fund shall be invested exclusively in accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a United States Treasury Fund or a bank account that is either: (i) fully insured by the Federal Deposit Insurance Corporation; or (ii) secured by instruments backed by the full faith and credit of the United States Government. The proceeds of these accounts shall be reinvested in similar instruments at their then-current market rates as they mature. Amex shall have no responsibility or liability for any losses incurred by the Gross Settlement Fund.

67.     All funds held by the Escrow Agent shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Settlement Agreement and the Plan of Distribution approved by the Court.

68.     The Gross Settlement Fund shall be applied as follows:

(a)     to pay the Fee and Expense Award, if and to the extent allowed by the Court;

(b)     to pay service awards for each of the Plaintiffs, if and to the extent allowed by the Court;

(c)     to use, if approved by the Court, up to $650,000.00 of the Settlement Amount for payment of any Court-approved costs and expenses in connection with providing Class Notice and the administration of the settlement, including, without limitation, identifying potential members of the Class; soliciting, reviewing, and evaluating proofs of claim or release forms, or both; and administering the settlement and disbursing the Gross Settlement Fund. For the avoidance of doubt, notice and administration costs shall not include Plaintiffs' Counsel's work in securing settlement approval, including appeals from the grant of a Final Approval Motion. If

- 21 -

necessary, Plaintiffs shall be permitted to apply directly to the Court for approval of additional amounts to be used for notice and administration expenses, which shall be funded out of the Gross Settlement Fund.  In no event shall Amex have any obligation to increase the Settlement Amount or the Gross Settlement Fund for any purpose, including notice and administration costs.  In the event the Settlement Agreement is not approved by the Court or otherwise terminated, all amounts actually incurred up to $650,000.00 for notice and/or administration are not recoverable and will not be returned or refunded to Amex;

       (d)    to pay the Taxes and tax expenses described in Section XIII herein;

       (e)    to pay any other Court-approved fees and expenses; and

       (f)    to distribute the balance of the Gross Settlement Fund (the "Net Settlement Fund") to Class Members as allowed by the Court.

69.    It is understood and agreed that no consideration or amount or sum paid, credited, offered, or expended by Amex in performance of this Settlement Agreement constitutes a penalty, fine, punitive damages, or other form of assessment for any alleged claim or offense.  Each Class Member is enforcing its rights as a private party and is not directly, indirectly, or derivatively enforcing any rules or exercising any regulatory powers as part of a governmental function on behalf of itself or any government or governmental entity.

70.    This Settlement Agreement does not include any provisions for injunctive relief.

## XII.    ADMINISTRATION OF THE SETTLEMENT

71.    Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel shall seek to have the Claims Administrator approved by the Court, for purposes of administering the settlement claims process, as set forth herein.

72.     The Claims Administrator shall effectuate the notice plan approved by the Court in the Preliminary Approval Order, shall administer and calculate the claims, and shall oversee distribution of the Net Settlement Fund in accordance with the Plan of Distribution.

73.     The Claims Administrator also shall assist in the development of the Plan of Distribution and the resolution of any disputes that may be raised by Class Members regarding the amount that they are owed under the Plan of Distribution.

74.     The Claims Administrator shall process this settlement based upon the orders of the Court and this Settlement Agreement, and, after entry of relevant order(s) of the Court, distribute the Net Settlement Fund in accordance with such order(s) and this Settlement Agreement.

75.     Except for its obligation to fund the settlement or cause it to be funded as detailed in this Settlement Agreement, the Released Parties shall have no liability, obligation, or responsibility for the administration of the settlement or disbursement of the Net Settlement Fund.

76.     The Net Settlement Fund shall be distributed by the Claims Administrator only after the Effective Date of Settlement.

77.     Plaintiffs and Class Members shall look solely to the Gross Settlement Fund as full, final and complete satisfaction of all Released Claims.  Except as set forth in Section XI, Paragraph 65, Released Parties shall have no obligation under this Settlement Agreement or the settlement to pay or cause to be paid any amount of money, and Released Parties shall have no obligation to pay or reimburse any fees, expenses, costs, liability, losses, Taxes, or damages whatsoever alleged or incurred by Plaintiffs, by any Class Member, or by any Releasing Parties, including, but not limited to, by their attorneys, experts, advisors, agents, or representatives, with respect to the Action and Released Claims.  Plaintiffs and Class Members acknowledge that as of the Effective Date of Settlement, the releases given herein shall become effective immediately by

operation of the Final Judgment and Order of Dismissal and shall be permanent, absolute, and unconditional.

78.    Any funds that remain in the Net Settlement Fund after distribution of the Net Settlement Fund in accordance with the Plan of Distribution shall not revert to Amex. Plaintiffs shall apply directly to the Court to authorize the *cy pres* distribution of those remaining funds.

## XIII.    TAXES

79.    The Parties agree that the Gross Settlement Fund is intended to be a qualified settlement fund within the meaning of Treasury Regulations §1.468B-l, and agree not to take any position for tax purposes inconsistent therewith. The Parties agree that the Gross Settlement Fund shall be treated as a qualified settlement fund from the earliest date possible and agree to any "relation-back election" (within the meaning of Treasury Regulations §1.468B-1) required to treat the Gross Settlement Fund as a qualified settlement fund from the earliest date possible. The Claims Administrator shall be designated as the "administrator" (within the meaning of Treasury Regulation §1.468B-2(k)(3)) of the Gross Settlement Fund.

80.    The Claims Administrator shall timely make, or cause to be made, such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election." Such election shall be made in compliance with the procedures and requirements contained in the relevant Treasury Regulations. The Gross Settlement Fund, less any amounts incurred for notice and administration as defined in Paragraph 68(c), and/or Taxes , including any accrued interest thereon, shall be returned to Amex, as provided in Section XIII, if the settlement does not become effective for any reason, including by reason of a termination of this Settlement Agreement pursuant to Section XIV.

81.    The Claims Administrator shall timely and properly file, or cause to be filed, all income, informational, and other tax returns necessary or advisable with respect to the Gross

- 24 -

Settlement Fund (including, without limitation, the returns described in Treasury Regulations §l.468B-2(k) and §l.468B-2(l)(2)).

82.     All Taxes shall timely be paid out of the Gross Settlement Fund by the Claims Administrator without prior order from the Court.  The Claims Administrator shall also be obligated to, and shall be responsible for, withholding from distribution to Class Members any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes.  The Parties agree to cooperate with the Claims Administrator, Escrow Agent, each other, and their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this Section XIII.

83.     Neither the Parties nor their counsel shall have any responsibility for or liability whatsoever with respect to: (i) any act, omission, or determination of the Escrow Agent, Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Gross Settlement Fund or otherwise; (ii) the Plan of Distribution; (iii) the determination, administration, calculation, or payment of any claims asserted against the Gross Settlement Fund; (iv) any losses suffered by, or fluctuations in the value of, the Gross Settlement Fund; or (v) the payment or withholding of any Taxes, expenses, and/or costs incurred in connection with the taxation of the Gross Settlement Fund or the filing of any returns.  The Claims Administrator shall indemnify and hold harmless the Parties, using monies from the Gross Settlement Fund, from and against any claims, liabilities, or losses relating to the matters addressed in the preceding sentence (including, without limitation, taxes payable by reason of any such indemnification payments).

84.     The Class Members shall be responsible for paying any and all federal, state, and local income taxes due on any distribution made to them pursuant to the settlement provided herein.

## XIV.  TERMINATION OF SETTLEMENT

85.    Plaintiffs, through Plaintiffs' Counsel, and Amex, through Amex's Counsel, shall, in each of their separate discretions, have the right to terminate the settlement set forth in this Settlement Agreement by providing written notice of their election to do so to all other Parties hereto within thirty (30) days of the date on which the following occurs: (1) if the Court, in a final order, declines to enter the Preliminary Approval Order, the Final Approval Order, or the Final Judgment and Order of Dismissal (denying it in its entirety or in any material respect), or (2) if the Court enters the Final Approval Order and the Final Judgment and Order of Dismissal and appellate review is sought and, on such review, the Final Approval Order or the Final Judgment and Order of Dismissal is finally vacated, modified, or reversed; provided, however, that the Parties agree to act in good faith to secure final approval of this settlement, and to attempt to address in good faith concerns regarding the settlement identified by the Court or any court of appeal.  Notwithstanding this paragraph, the Court's determination as to the Fee and Expense Application or any plan of distribution, or both, or any determination on appeal from any such orders, shall not provide grounds for termination of this Settlement Agreement or settlement.

86.    Except as otherwise provided herein, in the event the Settlement Agreement is terminated in accordance herewith, is vacated, or is not approved, or in the event the Effective Date of Settlement fails to occur for any reason, then the Parties to this Settlement Agreement shall be deemed to have reverted to their respective status in the Action as of the Execution Date, and, except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Settlement Agreement and any related orders had not been entered (subject to seeking whatever revisions to the pretrial schedule as may be necessary to protect the rights of the Parties), and any portion of the Gross Settlement Fund previously paid by or on behalf of Amex, together with any interest earned thereon (and, if applicable, re-payment of any Fee and Expense Award referred to

in Section X above), less Taxes due, if any, with respect to such income, and less costs of administration and notice actually incurred and paid or payable in accordance with Paragraph 68(c), shall be returned to Amex within ten (10) business days from the date of the event causing such termination.  At the request of Amex's Counsel, the Escrow Agent shall apply for any tax refund owed on the Gross Settlement Fund and pay the proceeds to Amex.  The Parties expressly reserve all of their rights if this Agreement is rescinded or does not otherwise become final.

## XV.    MISCELLANEOUS

87.    The Parties to this Settlement Agreement intend the settlement to be a final and complete resolution of all disputes asserted or that could be asserted by Plaintiffs or any Class Member against the Released Parties with respect to the Action and the Released Claims. Accordingly, Plaintiffs and Amex agree not to assert in any judicial proceeding that any Party violated Rule 11 of the Federal Rules of Civil Procedure.  The Parties agree that the amount paid and the other terms of the settlement were negotiated at arm's-length in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel and the Mediator.

88.    The terms and provisions of the Stipulated Protective Order, filed on June 15, 2016, and approved on July 1, 2016, shall survive and continue in effect through and after any final adjudication of the Action.

89.    Nothing in this Settlement Agreement is intended to waive any right to assert that any information or material is protected from discovery by reason of any individual or common interest privilege, attorney-client privilege, work product protection, or other privilege, protection, or immunity, or is intended to waive any right to contest any such claim of privilege, protection, or immunity.

90.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

91.     The administration and consummation of the settlement as embodied in this Settlement Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders relating to the Fee and Expense Application and the Plan of Distribution, and enforcing the terms of this Settlement Agreement.

92.     For the purpose of construing or interpreting this Settlement Agreement, Plaintiffs and Amex agree that it is to be deemed to have been drafted equally by all Parties hereto and shall not be construed strictly for or against any Party.

93.     This Settlement Agreement shall constitute the entire agreement between Plaintiffs and Amex pertaining to the settlement of the Action against Amex and supersedes any and all prior and contemporaneous undertakings of Plaintiffs and Amex in connection therewith.  All terms of this Settlement Agreement are contractual and not mere recitals.  The terms of this Settlement Agreement are and shall be binding upon each of the Parties hereto, their heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns, and upon all other Persons claiming any interest in the subject matter hereto through any of the Parties hereto including any Class Members.

94.     The terms of this Settlement Agreement are not severable, but are interdependent and have been agreed to only as a whole by Plaintiffs (for themselves individually and on behalf of each Class Member in the Action) and Amex.

95.     This Settlement Agreement may be modified or amended only by a writing executed by Plaintiffs, through Plaintiffs' Counsel, and Amex, through Amex's Counsel, subject (if after preliminary or final approval by the Court) to approval by the Court.  Amendments and

modifications may be made without notice to the Class unless notice is required by law or by the Court.

96.     All terms of this Settlement Agreement shall be governed by and interpreted according to the substantive laws of New York without regard to its choice-of-law principles.

97.     Amex, Plaintiffs, their respective counsel, and the Class Members hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of New York, for any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement, including, without limitation, any suit, action, proceeding, or dispute relating to the release provisions herein.

98.     The Parties acknowledge that this Settlement Agreement makes no determination as to which Class Members are entitled to distribution from the Net Settlement Fund, or as to the formula for determining the amounts to be distributed.

99.     Any proposed plan of distribution is not a necessary term of this Settlement Agreement, and it is not a condition of this Settlement Agreement that any particular plan of distribution be approved.  The Plan of Distribution is a matter separate and apart from the settlement between the Parties and any decision by the Court concerning a particular plan of distribution shall not affect the validity or finality of the proposed settlement, including the scope of the release.

100.     Any and all notices, requests, consents, directives, or communications by any Party intended for any other Party related to this Agreement shall be in writing and shall, unless expressly provided otherwise herein, be given by United States mail and electronic mail, to:

FOR PLAINTIFFS:

George C. Aguilar
Michael J. Nicoud

- 29 -

Jacob Ogbozo
Robbins LLP
5060 Shoreham Place, Suite 300
San Diego, CA 92122
619-525-3990 (office)
gaguilar@robbinsllp.com
mnicoud@robbinsllp.com
jogbozo@robbinsllp.com


FOR AMEX:

Peter T. Barbur
Damaris Hernández
David H. Korn
Rebecca J. Schindel
CRAVATH, SWAINE & MOORE LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
pbarbur@cravath.com
dhernandez@carvath.com`
dkorn@cravath.com
rschindel@cravath.com

101.    This Settlement Agreement may be executed in counterparts by Plaintiffs and Amex, and a facsimile or PDF signature shall be deemed an original signature for purposes of executing this Settlement Agreement.

102.    Plaintiffs and Amex acknowledge that they have been represented by counsel and have made their own investigations of the matters covered by this Settlement Agreement to the extent they have deemed it necessary to do so.  Therefore, Plaintiffs, Amex, and their respective counsel agree that they will not seek to set aside any part of this Settlement Agreement on the grounds of mistake.  Moreover, Plaintiffs, Amex, and their respective counsel understand, agree, and expressly assume the risk that any fact may turn out hereinafter to be other than, different from, or contrary to the facts now known to them or believed by them to be true, and further agree

that this Settlement Agreement shall be effective in all respects notwithstanding and shall not be subject to termination, modification, or rescission by reason of any such difference in facts.

103.    Each of the undersigned attorneys represents that he/she is fully authorized to enter into the terms and conditions of, and to execute, this Settlement Agreement, subject to Court approval; and the undersigned Plaintiffs' Counsel represent that they are authorized to execute this Settlement Agreement on behalf of Plaintiffs. Each of the undersigned attorneys shall use his/her best efforts to effectuate this Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto, through their fully authorized representatives, have agreed to this Settlement Agreement, dated May 16, 2025.

George C. Aguilar
Michael J. Nicoud
Jacob W. Ogbozo
**ROBBINS LLP**
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsllp.com
mnicoud@robbinsllp.com
jobgozo@robbinsllp.com

John W. Devine
**DEVINE GOODMAN & RASCO, LLP**
2800 Ponce De Leon Blvd., Suite 1400
Coral Gables, FL 33134
Telephone: (305) 374-8200
Facsimile: (305) 374-8208
jdevine@devinegoodman.com


Thomas G. Amon
**LAW OFFICES OF THOMAS G. AMON**
420 Lexington Avenue, Suite 1402
New York, NY 10170

Peter T. Barbur
Damaris Hernández
David H. Korn
Rebecca J. Schindel
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Telephone: (212) 474-1000
pbarbur@cravath.com
dhernandez@cravath.com
dkorn@cravath.com
rschindel@cravath.com

*Attorneys for Defendant American Express Company*

- 31 -

Telephone: (212) 810-2430
Facsimile: (212) 810-2427
tamon@amonlaw.com

*Class Counsel and Counsel for Plaintiffs B &
R Supermarket, Inc. (d/b/a Milam's Market),
Grove Liquors LLC, Strouk Group LLC
(d/b/a Monsieur Marcel), and Palero Food
Corp. and Cagueyes Food Corp. (d/b/a Fine
Fare Supermarket)*