**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ————————————————————— X | |
| B & R SUPERMARKET, INC., d/b/a    : | Case No. 1:17-cv-02738-MKB-JAM |
| MILAM'S MARKET, a Florida    : | |
| corporation, et al., Individually and on    : | <u>CLASS ACTION</u> |
| Behalf of All Others Similarly Situated,    : | |
|    : | |
| Plaintiffs,    : | |
|    : | |
| v.    : | |
|    : | |
| VISA, INC., et al.,    : | |
|    : | |
| Defendants.    : | |
| ————————————————————— X | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**<u>PRELIMINARY APPROVAL OF SETTLEMENT WITH VISA AND MASTERCARD</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................1

II.    PROCEDURAL HISTORY.................................................................................2

     A.     Mediation and Settlement ......................................................................3

III.   THE COURT WILL LIKELY BE ABLE TO GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT.................................................................4

     A.     The Procedural 23(e)(2) Factors Support the V/MC Settlement ............6

     B.     The Substantive 23(e)(2) Factors Support the V/MC Settlement ..........7

         1.     The Settlement Provides Adequate Relief for the Class ............7

             a.     The Costs, Risks, and Delay of Trial and Appeal Favor the Settlement ......................................................................7

                 (1)     The Complexity, Expense, and Likely Duration of the Litigation Favors Settlement...........................................7

                 (2)     The Risks of Establishing Liability......................................8

                 (3)     The Risks of Establishing Damages .................................12

                 (4)     The Risks of Maintaining the Class Through the Trial..................................................................................12

                 (5)     The Stage of the Proceedings Factor Strongly Weighs in Favor of Approval of the Settlement ...............12

                 (6)     The Ability of Defendants to Withstand a Greater Judgment Is Neutral .........................................................12

                 (7)     The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation..................13

             b.     Effectiveness of Distributing Relief to the Class...........................18

             c.     The Proposed Attorneys' Fees Award and Class Representative Service Awards Are Reasonable...........................19

             d.     The Releases in the Settlement Are Appropriate...........................21

             e.     Any Agreement Required To Be Identified Under Rule 23(e)(3) ........................................................................................21

2.  The Proposed Settlement Treats Class Members Equitably ......................22

3.  The Reaction of the Class to the Settlement, to the Extent It Can
    Be Assessed at this Stage, Supports the Settlement...................................22

IV.  THE SETTLEMENT NOTICE PLAN IS CONSISTENT WITH WHAT WAS
     ORDERED FOR CLASS NOTICE AND IS REASONABLE ........................................22

V.   THE PROPOSED SCHEDULE OF EVENTS IS FAIR AND REASONABLE .............22

VI.  CONCLUSION.................................................................................................................23

**TABLE OF AUTHORITIES**

**CASES**                                                                      **PAGE(S)**

*Alaska Elec. Pension Fund v. Bank of Am. Corp.*,
    No. 14-CV-7126 (JMF), 2018 WL 6250657 (S.D.N.Y. Nov. 29, 2018) ..........................21

*Bodon v. Domino's Pizza, LLC*,
    No. 09-CV-2941, 2015 WL 588656 (E.D.N.Y. Jan. 16, 2015) .........................................14

*Caccavale v. Hewlett-Packard Co.*,
    No. 2:20-cv-0974, 2024 WL 4250337 (E.D.N.Y. Mar. 13, 2024) ..........................4, 5, 6, 8

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)....................................................................................5, 16, 17

*Cruz Guerrero v. Montefiore Health Sys. Inc.*,
    No. 22-CV-9194 (KHP), 2025 WL 100889 (S.D.N.Y. Jan. 15, 2025)............................20

*Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*,
    62 F.4th 704 (2d Cir. 2023) ...........................................................................................14

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-cv-8405, 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) .....................................12

*Flores v. CGI Inc.*,
    No. 22-CV-350 (KHP), 2022 WL 13804077 (S.D.N.Y. Oct. 21, 2022) ...........................5

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ...........................................................................13

*Godson v. Eltman, Eltman, & Cooper, P.C.*,
    328 F.R.D. 35 (W.D.N.Y. 2018)....................................................................................13

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)................................................................................................5

*Hall v. ProSource Techs., LLC*,
    No. 14-CV-2502, 2016 WL 1555128 (E.D.N.Y. Apr. 11, 2016) .....................................14

*Illinois Brick Co. v. Illinois*,
    431 U.S. 720 (1977)...............................................................................................8, 10, 11

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    No. 06-MD-1775 JG VVP, 2015 WL 5918273 (E.D.N.Y. Oct. 9, 2015) ........................21

*In re AOL Time Warner, Inc.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...........................18

*In re Citigroup, Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013) ............................................................13

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ...................................................................16

*In re Facebook, Inc.*,
    822 F. App'x 40 (2d Cir. 2020) ...................................................................13

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018) ...........................................................13

*In re Gen. Motors LLC Ignition Switch Litig.*,
    No. 14-MC-2543 (JMF), 2020 WL 7481292 (S.D.N.Y. Dec. 18, 2020).........................20

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) .....................................................................8

*In re Initial Public Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ...........................................................17

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-MD-02420 YGR (DMR), 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020),
    *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) .......................................18

*In re Med. X-Ray Film Antitrust Litig.*,
    No. CV-93-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998).................................18

*In re Namenda Direct Purchaser Antitrust Litig.*,
    462 F. Supp. 3d 307 (S.D.N.Y. 2020) ...........................................................12

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................. *passim*

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...........................................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05-MD-1720 (MKB) (JO),
    2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ....................................14, 16, 17

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    No. 05-md-1720, 2024 WL 3236614 (E.D.N.Y. June 28, 2024)............................. *passim*

*In re Tenaris S.A. Sec. Litig.*,
 No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) ..........18, 20

*Lenorowitz v. Mosquito Squad Franchising, LLC*,
 No. 3:20-CV-1922 (OAW), 2024 WL 5038238 (D. Conn. Dec. 9, 2024) ........................4

*Levitt v. Rodgers*,
 257 F. App'x 450 (2d Cir. 2007) ......................................................................................4

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
 542 F.3d 290 (2d Cir. 2008)...........................................................................................11

*Marin v. 310 Bowery Grp. LLC*,
 No. 24 CIV. 1340, 2025 WL 893731 (S.D.N.Y. Mar. 24, 2025) .....................................13

*Moses v. New York Times Co.*,
 79 F.4th 235 (2d Cir. 2023) .............................................................................................4

*Newman v. Stein*,
 464 F.2d 689 (2d Cir. 1972)............................................................................................14

*Ohio v. American Express Co. (Amex)*,
 585 U.S. 529 (2018).........................................................................................................11

*Paycom Billing Services, Inc. v. Mastercard International, Inc.*,
 467 F.3d 283 (2d Cir. 2006).......................................................................................10, 11

*Pearlstein v. BlackBerry Ltd.*,
 No. 13 CIV. 7060 (CM), 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ...................20, 21

*Schutter v. Tarena Int'l, Inc.*,
 No. 21-CV-3502 (PKC), 2024 WL 4118465 (E.D.N.Y. Sept. 9, 2024)................6, 12, 21

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
 No. 01-CV-11814, 2004 WL 1087261 (S.D.N.Y. May 14, 2004) ....................................13

*US Airways, Inc. v. Sabre Holdings Corp.*,
 938 F.3d 43 (2d Cir. 2019)..............................................................................................11

*Viafara v. MCIZ Corp.*,
 No. 12 Civ. 7452 (RLE), 2014 WL 1777438 (S.D.N.Y. May 1, 2014)............................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005)..............................................................................................14

*Ying v. All-Ways Forwarding of N.Y. Inc.*,
 No. 20-CV-6242 (ENV)(MMH), 2025 WL 968586 (E.D.N.Y. Mar. 31, 2025) .........13, 20

*Zhu v. Wanrong Trading Corp.*,
      No. 18-CV-417 (ENV)(MMH), 2024 WL 4351357 (E.D.N.Y. Sept. 30, 2024).............4, 5

## STATUTES, RULES & OTHER AUTHORITIES

Fed. R. Civ. P. 23 ..................................................................................................................4, 5, 7

Plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market) ("B & R"), Grove Liquors LLC

("Grove"), Strouk Group LLC (d/b/a Monsieur Marcel) ("Strouk"), and Palero Food Corp. and

Cagueyes Food Corp. (d/b/a Fine Fare Supermarket) ("Fine Fare, and collectively, "Plaintiffs")

respectfully submit this memorandum in support of Plaintiffs' Motion for Preliminary Approval of

Settlement with Visa and Mastercard.[1]

## I.     INTRODUCTION

Plaintiffs have reached resolution of the remaining claims in this action that add nearly

$200 million to the common fund achieved on behalf of the Class (defined herein). This settlement

reached with Visa and Mastercard provides for a payment of $199,500,000 to a common fund on

behalf of the Class (the "V/MC Settlement"), which is in addition to the $32,200,000 that was

achieved through the earlier settlements with Discover and Amex (the "Discover Settlement" and

the "Amex Settlement") (together, the "Earlier Settlements").[2] Combined, this results in a total

common fund of $231,700,000.

This outstanding result was the product of more than nine years of litigation. Plaintiffs

have accomplished much since this case was first filed on March 8, 2016: generated and reviewed

a gargantuan evidentiary record; engaged in expert discovery with their own two experts and

Defendants' seven experts; survived motions to dismiss; certified the claims on behalf of the Class;

and defeated motions for summary judgment, *Daubert* motions, and motions to decertify the Class.

---

[1] Defendants Visa, Inc. and Visa U.S.A., Inc. ("Visa"), Mastercard International Incorporated ("Mastercard"), Discover Financial Services ("Discover"), and American Express Company ("Amex") are collectively referred to as "Defendants" or the "Networks." Plaintiffs and Defendants are referred to collectively as the "Parties." Throughout this brief, all citations and footnotes are deemed omitted and all emphasis is deemed added, unless otherwise noted.

[2] Plaintiffs filed a motion for preliminary approval of the Earlier Settlements on June 24, 2025 ("Discover/Amex Prelim Motion"). Dkt. No. 975. The Court has not yet ruled on this motion.

The V/MC Settlement was reached deep into this litigation, with the Parties having completed fact and expert discovery and summary judgment—they were fully informed regarding the facts and the law. Moreover, the V/MC Settlement was reached only after five mediations, with two well-respected former judicial officers serving as mediators.

The V/MC Settlement, like the Earlier Settlements, uses the same definition of Class that the Court has already certified, and there are no changes to the claims or definitions that warrant revision of that decision. Moreover, after the extensive notice program was completed, and the opt-out period for the Class expired, less than 350 exclusion requests were received, just a small fraction of the approximately one million merchants to whom direct class notice was sent.

The V/MC Settlement is an excellent outcome for the Class that appropriately weighs the potential rewards of further litigation against Visa and Mastercard with the risks and costs of taking the case further. The V/MC Settlement provides for a substantial payment of nearly $200 million to the Class. Visa and Mastercard have denied and continue to deny all of Plaintiffs' claims in the action, but have agreed to enter into the V/MC Settlement to avoid the further risk, expense, inconvenience, and distraction of burdensome and protracted litigation.

Class Counsel respectfully submit that the V/MC Settlement, like the Earlier Settlements, is in the best interests of the Class, is fair, reasonable and adequate, and merits preliminary approval under Federal Rule of Civil Procedure 23.

Plaintiffs further propose revised notices for the Class that incorporate all of the settlements, and a schedule for notice, briefing, and hearing and approval for all of the settlements at the same time.

## II.    PROCEDURAL HISTORY

Plaintiffs incorporate by reference Sections II(A)-(D) of the memorandum in support of the Discover/Amex Prelim Motion ("Discover/Amex Prelim Memo," Dkt. No. 975-1) at pages 3-

10, given that these sections describe the procedural history of the action with respect to all Defendants. Plaintiffs describe the mediation and settlement process with Visa and Mastercard separately below.

### A. Mediation and Settlement

It took numerous efforts to settle the case over the course of eight years. The first efforts involved a series of mediations with the highly regarded and experienced Hon. Edward A. Infante (Ret.) as the mediator. Declaration of George C. Aguilar in Support of Plaintiffs' Motion for Preliminary Approval of Settlement with Visa and Mastercard ("Aguilar Decl."), ¶4. In total, Plaintiffs had four such mediation sessions with Judge Infante: March 22, 2017, May 11, 2018, June 23, 2023, and September 11, 2024. *Id.* Each of these mediation sessions were hard-fought, arm's-length attempts to settle the case in good faith, but each were unsuccessful. *Id.*

Following the Court's summary judgment and *Daubert* motion rulings, and after the success of the mediations with Discover and Amex with a different mediator, the parties tried again in 2025. *Id.*, ¶5. Plaintiffs and Visa and Mastercard attended a full-day in-person mediation on August 13, 2025, in New York, NY, utilizing the Hon. Layn R. Phillips (Ret.) of Phillips ADR Enterprises, P.C. as the mediator (the "Mediator"). *Id.* At the conclusion of this fifth mediation session, as the result of a mediator's proposal, Plaintiffs and Visa and Mastercard reached agreement on a settlement in principle. *Id.* Over the next few weeks, Plaintiffs and Visa and Mastercard negotiated and drafted a stipulation of settlement, which was executed on September 12, 2025 (the "V/MC Stip."). *Id.*, ¶5 & Ex. 1. The V/MC Settlement provides that Visa and Mastercard will pay $119,700,000, and $79,800,000, respectively, to the Gross Settlement Fund (as defined in the V/MC Stip.). V/MC Stip., ¶¶21, 67.

## III. THE COURT WILL LIKELY BE ABLE TO GRANT FINAL APPROVAL OF THE PROPOSED SETTLEMENT

To grant preliminary approval of the V/MC Settlement, the Court must "determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) ("*Payment Card 2019 Prelim*") (emphasis in original). Here, as with the Earlier Settlements, the Class in the proposed V/MC Settlement is defined by "the Court's class certification Order dated August 28, 2020," with no changes. V/MC Stip., ¶4; Discover Stip. (Prior Aguilar Decl., Ex. 1), ¶4; Amex Stip. (Prior Aguilar Decl., Ex. 2), ¶6.[3] The Class has also remained unchanged through two failed motions to decertify the Class. Dkt. Nos. 936, 937, 940. Thus, the Court's inquiry can be focused on the first prong. *See, e.g.*, *Lenorowitz v. Mosquito Squad Franchising, LLC*, No. 3:20-CV-1922 (OAW), 2024 WL 5038238, at *1 (D. Conn. Dec. 9, 2024) (recognizing in preliminary approval context that "[h]ere, the class is certified; thus, the court narrows its focus to the first prong."); *see also* Discover/Amex Prelim Memo at 11 (citing authority for the same).

To determine whether the Court can approve the proposal under Rule 23(e)(2), the Court assesses whether the settlement is "fair, reasonable, and adequate." *Caccavale v. Hewlett-Packard Co.*, No. 2:20-cv-0974, 2024 WL 4250337, at *8 (E.D.N.Y. Mar. 13, 2024) (citing Fed. R. Civ. P. 23(a) and *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023)). This is a "determination within the sound discretion of the court." *Zhu v. Wanrong Trading Corp.*, No. 18-CV-417 (ENV)(MMH), 2024 WL 4351357, at *3 (E.D.N.Y. Sept. 30, 2024) (citing *Levitt v.*

---

[3] "Prior Aguilar Decl." refers to the Declaration of George C. Aguilar submitted with the Discover/Amex Prelim Motion. Dkt. No. 975-2.

*Rodgers*, 257 F. App'x 450, 453 (2d Cir. 2007)).  Within "the Second Circuit, '[t]here is a strong judicial policy in favor of settlements, particularly in the class action context.'"  *Id.* (citing *Flores v. CGI Inc.*, No. 22-CV-350 (KHP), 2022 WL 13804077, at *2 (S.D.N.Y. Oct. 21, 2022)).

Courts conduct the assessment of whether a settlement is "fair, reasonable and adequate" through two sets of factors: "both the Rule 23(e) factors and the *Grinnell* factors—to the extent that they differ."  *Caccavale*, 2024 WL 4250337, at *9 (citing *Payment Card 2019 Prelim*, 330 F.R.D. at 29); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (setting forth *Grinnell* factors), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  The Rule 23(e)(2) factors the Court considers are whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's-length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>>
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-md-1720, 2024 WL 3236614, at *11 (E.D.N.Y. June 28, 2024) ("*Payment Card 2024*").  Factors (A) and (B) are "procedural in nature," and "examine the conduct of the litigation and of the negotiations leading up to the proposed settlement," while (C) and (D) "guide the substantive review of a proposed

settlement" and seek to assess "the relief that the settlement is expected to provide to class members." *Schutter v. Tarena Int'l, Inc.*, No. 21-CV-3502 (PKC), 2024 WL 4118465, at *6 (E.D.N.Y. Sept. 9, 2024) (cleaned up).

Additionally, courts have found that the Rule 23(e)(2) factors do "not otherwise address the following *Grinnell* factors: the ability of the defendants to withstand a greater judgment; the range of reasonableness of the settlement fund in light of the best possible recovery; and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Caccavale*, 2024 WL 4250337, at *9 (citing *Payment Card 2019 Prelim*, 330 F.R.D. at 30 n.22). Thus "courts continue to analyze these factors in combination with the Rule 23(e)(2) factors." *Id.* As with the Earlier Settlements, both the procedural and substantive factors weigh strongly in favor of approval, and thus, the Court can conclude it will likely be able to grant final approval of the V/MC Settlement. For many of the factors, the analysis is the same for the V/MC Settlement as it was for the Earlier Settlements, and Plaintiffs thus incorporate by reference those arguments where appropriate, as indicated below.

## A. The Procedural 23(e)(2) Factors Support the V/MC Settlement

As described in the Discover/Amex Prelim Motion, the Court has previously recognized on several occasions that both Plaintiffs and Class Counsel are adequate, and those conclusions are even stronger after years of additional litigation victories and reaching the V/MC Settlement and Earlier Settlements. Plaintiffs incorporate by reference Sections III(A)(1)-(3) of the Discover/Amex Prelim Memo at pages 13-19, as they address issues identical to all settlements. The only difference here is that there is even further evidence of arm's-length negotiations given the parties utilized the services of two experienced mediators and engaged in five mediation sessions before reaching the V/MC Settlement. Aguilar Decl., ¶¶4-5; Discover/Amex Prelim Memo at 17-19 (discussing role of mediator in assessing arm's-length nature of settlement).

**B.    The Substantive 23(e)(2) Factors Support the V/MC Settlement**

**1.    The Settlement Provides Adequate Relief for the Class**

"In assessing whether a settlement provides adequate relief for the class under Rule 23(e)(2)(C), the Court is directed to consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." *Payment Card 2024*, 2024 WL 3236614, at *21 (citing Fed. R. Civ. P. 23(e)(3)).

**a.    The Costs, Risks, and Delay of Trial and Appeal Favor the Settlement**

"Under this Rule 23(e)(2) factor, courts may need to forecast the likely range of possible classwide recoveries and likelihood of success in obtaining such results." *Id*. This subfactor overlaps with "several *Grinnell* factors, including: (1) the complexity, expense, and likely duration of the litigation; (ii) the risks of establishing liability; [(iii) the risks of establishing damages]; [iv] the risks of maintaining the class action through the trial; and [v] the range of reasonableness of the settlement fund in light of the best possible recovery and in light of all the attendant risks of litigation." *Id.* Plaintiffs also discuss "the ability of Defendants to withstand a greater judgment" and the "stage of the proceedings" *Grinnell* factors here as they tie closely to these other factors.

**(1)    The Complexity, Expense, and Likely Duration of the Litigation Favors Settlement**

As explained in Plaintiffs' Discover/Amex Prelim Memo, this factor strongly favors the V/MC Settlement. Plaintiffs incorporate by reference their arguments in Section III(B)(1)(a)(1) of the Discover/Amex Prelim Memo at pages 20-21. In addition, Plaintiffs add the following:

Further litigation would mean preparing for trial with Visa and Mastercard.[4] Pre-trial, trial, and post-trial briefing and preparation alone would entail significant efforts. Aguilar Decl., ¶7. Visa and Mastercard account for five of the Defendants' seven expert witnesses, all of which Plaintiffs would have to confront at trial. *Id*. Further, each of these experts would be challenging the opinions of Plaintiffs' own experts. *Id*. Given the history of this litigation, it is likely that Visa and Mastercard would engage in post-trial appeals if Plaintiffs were successful at trial, including especially the *Illinois Brick* and two-sided versus one-sided market analysis issues they have repeatedly raised, as discussed further below. *Id*.

This factor weighs strongly in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement.

### (2)    The Risks of Establishing Liability

To analyze this factor "the court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Caccavale*, 2025 WL 882220, at *7 (cleaned up). "The Court need not 'adjudicate the disputed issues or decide unsettled questions' to assess such risks." *Id.* (citing *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)). Further, "[c]ourts approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Glob. Crossing*, 225 F.R.D. at 459.

Here, Plaintiffs acknowledge that some of the risks of establishing liability have diminished given Plaintiffs' repeated success against Defendants' motions, including numerous *Daubert* motions and motions for summary judgment. *See Payment Card 2024*, 2024 WL 3236614, at *23 (concluding that this factor was "likely to weigh against final approval" where "Plaintiffs' claims

---

[4] Though the Court has not yet ruled on the Discover/Amex Prelim Motion, Plaintiffs draft this section from the perspective that these settlements would eventually be approved, leaving only Visa and Mastercard as defendants at trial but for this V/MC Settlement.

ha[d] survived numerous *Daubert* and summary judgment motions"). However, there are still significant risks to establishing liability at trial.

Given that the Court has concluded Plaintiffs have not "offered any 'direct evidence' of an agreement among Defendants," Plaintiffs' case will need to be proven with circumstantial evidence. Dkt. No. 950 at 33. Plaintiffs will need to develop a case at trial with circumstantial evidence sufficient to show parallel conduct plus the existence of "plus factors" demonstrating the conspiracy. *See id*. at 34-38 (recognizing that on summary judgment Plaintiffs sufficiently demonstrated parallel conduct and "evidence [t]hat adequately satisfies all three of the [following] 'plus factors' – (i) common motive to conspire, (ii) evidence that the parallel acts were against the apparent economic self-interest of the individual alleged conspirators, and (iii) evidence of a high level of interfirm communications").

Visa and Mastercard will have numerous arguments at trial. While Plaintiffs' evidence was sufficient to defeat Defendants' motions for summary judgment, Visa and Mastercard would ask jurors to draw different inferences at trial from this evidence. *E.g.*, *id.* at 41-43 (assessing evidence and concluding that "this document could be innocently describing a non-collusive coincidence," but "drawing all reasonable inference in favor of Plaintiffs requires the inference that Defendants proactively aligned on the same dates for their fraud liability shifts").

This includes that "Plaintiffs 'cannot prove injury-in-fact.'" *Id*. at 5 (citing Dkt. No. 799, V/MC Mem., at 58). Visa and Mastercard would challenge at trial the key premise that "in the absence of [an agreement not to delay the FLS] at least one Defendant would have delayed its FLS." *Id.* Visa and Mastercard "argue that Visa considered delaying the [FLS], but decided against it for its own unilateral reasons." *Id*. at 29 (citing Dkt. No. 799, V/MC Mem., at 33-34).

Visa and Mastercard also argued that "the evidence shows that Mastercard publicly stated [in 2015] that it had no intent to delay its [FLS]." *Id*. at 30 (citing Dkt. No. 799, V/MC Mem., at 38-39).

Visa and Mastercard have also contended that "after Target experienced a 'massive data breach' in December of 2013 … 'Visa reversed course' and 'reaffirm[ed] its [original FLS date] at the end of January 2014,' in large part due to 'media and consumer outcry.'" *Id*. at 29 (citing Dkt. No. 799, V/MC Mem., at 33-34). Defendants have argued that "Plaintiffs cannot fairly ignore … evidence [regarding the Target data breach]" that was "announced on December 18, 2013, [and] 'shook the industry.'" Dkt. No. 725 at 47-48; Dkt. No. 744 at 47-48 (ellipsis and first insertion in original). Defendants assert that this breach "served as a turning point for merchants who had been pushing back on the costs of EMV migration" and that "state and federal legislators and other government offices pressured the networks to respond to the Target breach by accelerating, not delaying, EMV adoption." Dkt. No. 799 at 8; Dkt. No. 870 at 8.

In sum, "Visa and Mastercard [will] contend that … the evidence is consistent with unilateral, non-collusive conduct." Dkt. No. 950 at 30 (citing Dkt. No. 799, V/MC Mem., at 42-57). Visa and Mastercard's competing versions of the evidence would be supported at trial by their five experts. Aguilar Decl., ¶7.

Visa and Mastercard's trial arguments will also include that "Plaintiffs cannot recover for any injury resulting from chargebacks because, under the Supreme Court's decision in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), federal antitrust law does not permit an 'indirect payor' to recover for alleged overcharges resulting from antitrust violations." Dkt. No. 950 at 11 (citing Dkt. No. 799, V/MC Mem., at 13-14). In part, Visa and Mastercard base this argument on their interpretation of "the Second Circuit's decision in *Paycom Billing Services, Inc. v. Mastercard International, Inc.*, 467 F.3d 283 (2d Cir. 2006)." *Id*. (citing Dkt. No. 799, V/MC Mem., at 14-

16).  Visa and Mastercard contend *Paycom* held that "'merchants are indirect payors with respect to fraud chargebacks,' and *Illinois Brick* therefore 'barred the merchant [in *Paycom*] from pursuing fraud chargebacks as damages'" from the networks.  *Id.* (insert in original).

Though the Court concluded in its order on the motions for summary judgment that *per se* is the applicable standard of review, Visa and Mastercard would likely also contend again at trial (or on appeal) that the applicable standard of review at trial is "the rule of reason," and "that the *per se* standard applies only where the challenged conduct has no 'redeeming virtue' and only has a 'pernicious effect on competition.'"  *Id*. at 16 (citing Dkt. No. 799, V/MC Mem., at 18 (quoting *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 315 (2d Cir. 2008)).  The landscape would be vastly different depending on whether Plaintiffs need to prove a *per se* violation or proceed under the rule of reason.

Additionally, Visa and Mastercard would argue again that the analysis of Plaintiffs' liability expert Dr. Abrantes-Metz must be disregarded as "contrary to governing law."  Dkt. No. 942 at 10; Dkt. No. 946 at 10 (citing Dkt. No. 817, VMD AM Reply, at 2).  Visa and Mastercard have argued that Dr. Abrantes-Metz's analysis is "contrary to governing law because following the Supreme Court's decision in *Ohio v. American Express Co. (Amex)*, 585 U.S. 529 (2018), and the Second Circuit's decision in *US Airways, Inc. v. Sabre Holdings Corp.*, 938 F.3d 43 (2d Cir. 2019), any analysis that does not consider both sides of a transaction platform is 'methodologically incorrect, unhelpful to the factfinder, and therefore inadmissible.'"  *Id.*

Though Plaintiffs have developed a strong case against Visa and Mastercard, serious risks remain.  These are just some of the arguments and risks Plaintiffs would face litigating this matter through to a trial and any appeals.  Accordingly, this factor weighs in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement.

### (3) The Risks of Establishing Damages

As with the Earlier Settlements, this factor weighs strongly in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement. Plaintiffs incorporate by reference their arguments in Section III(B)(1)(a)(3) of the Discover/Amex Prelim Memo at pages 25-26.

### (4) The Risks of Maintaining the Class Through the Trial

As with the Earlier Settlements, this factor weighs in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement. Plaintiffs incorporate by reference their arguments in Section III(B)(1)(a)(4) of the Discover/Amex Prelim Memo at pages 26-27.

### (5) The Stage of the Proceedings Factor Strongly Weighs in Favor of Approval of the Settlement

As with the Earlier Settlements, this factor weighs strongly in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement. Plaintiffs incorporate by reference their arguments in Section III(B)(1)(a)(5) of the Discover/Amex Prelim Memo at page 27.

### (6) The Ability of Defendants to Withstand a Greater Judgment Is Neutral

Courts note that "[t]his factor is 'typically relevant only when a settlement is less than what it might otherwise be but for the fact that the defendant's financial circumstances do not permit a greater settlement." *Schutter*, 2024 WL 4118465, at *12 (quoting *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 314 (S.D.N.Y. 2020)). When that situation is not present, courts generally do not give much consideration to this factor, and "this factor, standing alone, does not suggest that the settlement is unfair." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2015 WL 10847814, at *9 (S.D.N.Y. Sept. 9, 2015). If this were not the case, "as one court in this Circuit has noted, 'then only the most massive settlement awards could be deemed reasonable in

cases against large corporations.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 413 (S.D.N.Y. 2018) (concluding that this factor was "neutral" even though Facebook could "clear[ly]" "withstand a judgment in excess of $35 million"), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020). Further, "a defendant's 'ability to pay is much less important than the other *Grinnell* factors, especially where the other factors weigh in favor of approving a settlement.'" *Marin v. 310 Bowery Grp. LLC*, No. 24 CIV. 1340, 2025 WL 893731, at *9 (S.D.N.Y. Mar. 24, 2025) (quoting *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 303 (E.D.N.Y. 2015)). Thus, here, this factor is neutral.

        **(7)**      **The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and in Light of All the Attendant Risks of Litigation**

"The range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often combined for the purposes of analysis." *Payment Card 2024*, 2024 WL 3236614, at *26. "'In considering the reasonableness of the settlement fund, a court must compare "the terms of the compromise with the likely rewards of litigation."'" *Id.* at *26 (citing *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 58 (W.D.N.Y. 2018) (quoting *In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 384 (S.D.N.Y. 2013))). "In order to calculate the 'best possible' recovery, the [C]ourt must assume complete victory on both liability and damages as to all class members on every claim asserted against each defendant in the [a]ction." *Id.* (citing *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814, 2004 WL 1087261, at *5 (S.D.N.Y. May 14, 2004)). Determining if a settlement amount is reasonable "'does not involve the use of a mathematical equation yielding a particularized sum.'" *Ying v. All-Ways Forwarding of N.Y. Inc.*, No. 20-CV-6242 (ENV)(MMH), 2025 WL 968586, at *10 (E.D.N.Y. Mar. 31, 2025) (quoting *Viafara v. MCIZ Corp.*, No. 12 Civ. 7452 (RLE), 2014

WL 1777438, at *7 (S.D.N.Y. May 1, 2014)). Instead, "[t]he range of reasonableness is a 'range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Payment Card 2024*, 2024 WL 3236614, at *26 (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972))).

"'Courts in this district have held that 'the question … is not whether the settlement represents the highest recovery possible … but whether it represents a reasonable one in light of the many uncertainties the class face.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472, at *29 (E.D.N.Y. Dec. 16, 2019) ("*Payment Card 2019 Final*") (citing *Hall v. ProSource Techs., LLC*, No. 14-CV-2502, 2016 WL 1555128, at *8 (E.D.N.Y. Apr. 11, 2016) (quoting *Bodon v. Domino's Pizza, LLC*, No. 09-CV-2941, 2015 WL 588656, at *6 (E.D.N.Y. Jan. 16, 2015))), *aff'd sub nom. Fikes Wholesale, Inc. v. HSBC Bank USA, N.A.*, 62 F.4th 704 (2d Cir. 2023). Class Counsel believe the settlement amount achieved here represents an excellent outcome, considering the risks of the litigation, the potential outcomes, and the vast difference in estimated damages between Plaintiffs and Defendants. Aguilar Decl., ¶9.

Plaintiffs and Defendants have widely differing estimates of damages. Plaintiffs' damages expert, Dr. Officer, concluded that "the total dollar amount of damages suffered by members of the certified class of Plaintiffs is $1,454,485,686." Dkt. No. 803 at 131; Dkt. No. 906 at 131. Of this amount, Visa accounts for $762,051,815, and Mastercard accounts for $544,384,692. Aguilar Decl., ¶8.

In contrast, Visa's experts provided alternative chargeback calculations for different scenarios, across all four Defendants.[5]  *Id*.  These alternative scenarios include chargeback amounts for a three-, six-, twelve-, eighteen-, or twenty-four-month delay of the Fraud Liability Shift; along with three different scenarios: 1) a delay of only domestic debit FLS charges, 2) a delay of domestic credit and debit FLS charges, with no delay of cross-border FLS charges; and 3) a delay of credit and debit charges including a delay of cross-border FLS charges.  *Id.*  Visa's experts also provided a figure for a six-month delay of the debit and credit transactions, without cross-border charges (in Visa and Mastercard's summary judgment motion they argued, among other things, that the Court should limit damages to six months and exclude cross-border chargebacks) amounting to $392,390,199 ("Defendants' MSJ Alternative").  *Id.*; Dkt. No. 799 at 4, 64-66; Dkt. No. 870 at 4, 64-66.  Visa and Mastercard account for $223,999,732, and $126,306,627 of this amount, respectively.  Aguilar Decl., ¶8.

Accounting for *only* the total chargebacks associated with each Defendant, and not taking into account any adjustments such as absorption rates, government entities, or opt-outs—each of which would *lower* Plaintiffs' potential recovery at trial—Plaintiffs provide the following estimates of their recovery percentages.  Plaintiffs' recovery from all Defendants—$231.7 million—accounts for 15.93% of Plaintiffs' best-case estimate for single damages recoverable from Defendants at trial and 59.05% of what would be recoverable under Defendants' MSJ Alternative.  Plaintiffs' recovery from just Visa and Mastercard—$199,500,000—accounts for

---

[5] Plaintiffs do not purport to be making, adopting, or agreeing with any damages arguments on behalf of Defendants, or claiming that these arguments represent the entirety of their position. Nevertheless, these alternative calculations come from Visa's previously disclosed expert reports and reflect Class Counsel's current understanding of certain of Defendants' damages estimates and arguments.  Though these estimates were provided by Visa's experts, Plaintiffs believe these to be the most useful benchmarks for the Court's analysis for each of the four Defendants at this time.

13.72% of Plaintiffs' best-case estimate for single damages recoverable from Defendants at trial and 50.84% of what would be recoverable under Defendants' MSJ Alternative.

Again, these estimates are conservative, given that they do not account for the various adjustments that will be urged by Defendants, such as absorption rates by acquirers, chargebacks associated with government entities, and opt-outs, that would be heavily litigated at trial. If Plaintiffs were to adjust for these amounts for these factors, the percentage recovery rates would be even higher.

This "settlement amount compares favorably with settlements reached in other antitrust class actions, especially given the lack of prior governmental investigation and the disparity between the parties' damages calculations." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 230 (E.D.N.Y. 2013) (citing *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (settlement of $336 million and injunctive relief "represent an extraordinarily significant recovery" in light of the fact that "Plaintiffs did not have the benefit of a Government investigation")), *rev'd and vacated on other grounds*, 827 F.3d 223 (2d Cir. 2016); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 478 (S.D.N.Y. 1998) (antitrust settlement of $1.027 billion approved where plaintiffs' and defendants' damages estimates were vastly disparate); *see also Payment Card 2019 Final*, 2019 WL 6875472, at *28 (recognizing plaintiffs' economist expert provided estimated damages for plaintiffs at between $463-754 billion, while "[d]efendants' expert would have estimated damages" at $1.21-3.66 billion). Moreover, "'the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Payment Card 2019 Prelim*, 330 F.R.D. at 49 (citing *Grinnell*, 495 F.2d at 455). Indeed, "[t]here is no reason, at least in theory, why a satisfactory

settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* (citing *Grinnell*, 495 F.2d at 455 n.2).

Even with the most Plaintiff-friendly estimate of total damages possible, which does not account for numerous adjustments that Defendants would heavily litigate at trial, *see, e.g.*, Dkt. No. 942 at 52; Dkt. No. 946 at 52 (noting that "[i]n sum, Visa, Mastercard, and Discover are correct insofar as Dr. Officer may not present to the jury evidence of these 'damages' (*e.g.*, chargebacks incurred by government entities)"), the 13.72% recovery from Visa and Mastercard (15.93% when combined with Discover and Amex) is an excellent result for this action. Aguilar Decl., ¶¶6, 9. The result is even more favorable when measured against Defendants' MSJ Alternative. The recovery from Visa and Mastercard is 50.84% of Defendants' MSJ Alternative for all four Defendants (59.05% when combined with Discover and Amex).

Courts regularly approve settlements with recoveries in the range achieved here. For example, in *In re Initial Public Offering Securities Litigation*, 671 F. Supp. 2d 467, 483 (S.D.N.Y. 2009), the court found the settlement amount reasonable and granted final approval where plaintiffs achieved a "$586 million settlement [that] represents two percent of the aggregate expected recovery." Like here, the court recognized that "while the proposed settlement is being compared—justifiably or not—to the expected recovery amount as calculated by plaintiffs' damages expert, plaintiffs note that the expected recovery is based largely on assumptions, 'any of which, if wrong, could doom any recovery at all or certainly drastically reduce any recovery even if successful at trial.'" *Id.* at 484; *Payment Card 2019 Final*, 2019 WL 6875472, at *28-30 (recognizing that "Judge Gleeson found that the figure agreed to … 'represent[ed] approximately 2.5% … of the largest possible estimate of actual damage to merchants" and that "the percentage … is now likely even less" yet still finding settlement "fair, reasonable, and adequate"); *see also*

*In re Tenaris S.A. Sec. Litig.*, No. 18-CV-7059(KAM)(SJB), 2024 WL 1719632, at *8 (E.D.N.Y. Apr. 22, 2024) (recognizing that the "proposed settlement amount … represents 4.02-5.01% of the total estimated 'best-case' recovery" and was thus "significantly higher than the 2.4-2.9% average settlement recovery rate for similar securities class actions between December 2011 and December 2022); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 WL 661515, at *5-6 (E.D.N.Y. Aug. 7, 1998) (finding 17% of "best possible recovery" within range of reasonableness and recognizing that "[t]his court has previously approved settlements that represent a far smaller percentage of the best possible recovery than that proposed here," including "less than 2%" and "6.4-11%"); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR (DMR), 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020) (characterizing "11.7 percent of the single damages" as an "excellent" result for an antitrust class action), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022).  Further, the "concrete benefits of this Settlement outweigh the possibility of a higher recovery after trial." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *13 (S.D.N.Y. Apr. 6, 2006) (recognizing that the "benefit of the Settlement will … be realized far earlier than a hypothetical post-trial recovery" where it included a "substantial, immediate recovery" that was accruing interest in escrow).

Thus, the V/MC Settlement amount is well within the range of reasonableness that would permit the Court to conclude it is likely to grant final approval of the V/MC Settlement.

### b.     Effectiveness of Distributing Relief to the Class

As with the Earlier Settlements, this factor weighs in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement.  Plaintiffs incorporate by reference their arguments in Section III(B)(1)(b) of the Discover/Amex Prelim Memo at pages 35-38.  The Distribution Plan has been updated to reflect the V/MC Settlement but is otherwise substantively identical to the Distribution Plan submitted with the Discover/Amex Prelim Motion.  *Cf.* Aguilar

Decl., Ex. 3; *with* Prior Aguilar Decl., Ex. 4.  The proposed Distribution Plan is an effective and standard method of distributing relief to the Class.

> ### c. The Proposed Attorneys' Fees Award and Class Representative Service Awards Are Reasonable

In the Discover/Amex Prelim Motion seeking preliminary approval of the Earlier Settlements and their combined $32.2 million settlement amount, Class Counsel noted that they would apply for an award of attorneys' fees not to exceed 33.3% of the Gross Settlement Fund attributable to those Earlier Settlements (as defined in the Discover Stip., ¶23 & §XI and Amex Stip., ¶23 & §XI) plus accrued interest, and seek the reimbursement of expenses incurred during the course of this litigation in an amount not to exceed $2 million.  Discover/Amex Prelim Memo at 38-39.  That remains Class Counsel's intent.  In connection with the V/MC Settlement, Class Counsel will apply for an award of attorneys' fees not to exceed 27.5% of the Gross Settlement Fund attributable to that settlement (as defined in the V/MC Stip., ¶21 & §XI) plus accrued interest, and seek the reimbursement of the remaining expenses incurred during the course of this litigation, in an amount not to exceed $3 million (in addition to the expenses sought in connection with the Earlier Settlements, for a total up to $5 million).[6]  Aguilar Decl., ¶11.  Class Counsel will also seek the Court's approval of $50,000 service awards for each of the named Plaintiffs as class representatives, which will replace, rather than supplement, the request for a $25,000 service award in connection with the Earlier Settlements.  *Id.*  Class Counsel will make appropriately supported submissions in support of these requests, with ample time for Class members to weigh in prior to any settlement hearing.  *Id.*

---

[6] Combined, Class Counsel's total fee request for the Earlier Settlements and the V/MC Settlement amounts to 28.31% of the $231.7 million common fund.

Class Counsel's fee and expense request is appropriate given the excellent results achieved, and the complexity and scope of this litigation, which has already been ongoing for more than nine years and has progressed through every stage before trial. Class Counsel have not received any payment in this action thus far, and have incurred millions of dollars in expenses and devoted thousands of attorney and other professionals' time to this matter with no guarantee of any recovery. *Id*. Moreover, "[d]istrict courts within the Second Circuit routinely approve attorneys' fees awards of one third or 33 1/3% as reasonable." *Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10 (collecting cases); *see also Pearlstein v. BlackBerry Ltd.*, No. 13 CIV. 7060 (CM) (KHP), 2022 WL 4554858, at *9-10 (S.D.N.Y. Sept. 29, 2022) (holding that "Class Counsel's request for one-third of the gross settlement fund is reasonable within this circuit" and approving fee request of $55 million of $165 million common fund and $4.2 million in expenses, plus accrued interest, and collecting cases awarding 33 1/3% in fees); *see also Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22-CV-9194 (KHP), 2025 WL 100889, at *10 (S.D.N.Y. Jan. 15, 2025) (recognizing that "Courts in this Circuit routinely find that a percent of fund award is appropriate and that a one-third percentage is fair and reasonable" and collecting cases stating the same); *In re Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2020 WL 7481292, at *2 (S.D.N.Y. Dec. 18, 2020) (recognizing that "Courts both within and outside the Second Circuit have, in similar circumstances, awarded percentages at and above 30% of funds comparable to (and even larger than) this one" for a $155,600,000 total settlement value).

The timing of the payment of an attorney fee award is also reasonable (V/MC Stip., ¶61), given that Class Counsel have undertaken this litigation for over nine years without any payment of fees or expenses, and will continue to work on the matter throughout the settlement administration process. Aguilar Decl., ¶11; *see, e.g.*, *Ying*, 2025 WL 968586, at *8 (recognizing

that "courts have held that payment to attorneys before disbursements to claimants 'does not undercut that case where, as here, the majority of other factors weigh significantly' in favor of final settlement approval" (quoting *Schutter*, 2024 WL 4118465, at *9)).

Similarly, Class Counsel's request for service awards for the named Plaintiffs as class representatives is commensurate with their long involvement in this case, hours of dedication and service to the interests of the Class, and the recognition of the appropriateness of such awards in numerous other cases. Aguilar Decl., ¶11; *e.g.*, *Pearlstein*, 2022 WL 4554858, at *11 (awarding $100,000 to two lead plaintiffs and recognizing "[t]he award amount is consistent with similar awards granted in this district"); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2018 WL 6250657, at *4 (S.D.N.Y. Nov. 29, 2018) (awarding $100,000 to two plaintiffs and $50,000 to six others); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 JG VVP, 2015 WL 5918273, at *6 (E.D.N.Y. Oct. 9, 2015) (approving $90,000 service awards).

### d.     The Releases in the Settlement Are Appropriate

Another factor considered by courts is the appropriateness of the bargained for releases. *See, e.g.*, *Payment Card 2019 Prelim*, 330 F.R.D. at 42-47; *Payment Card 2024*, 2024 WL 3236614, at *34-35. Here, the releases are appropriate because they explain that they extend "to the fullest extent permitted by law," and are limited to claims, causes of action, etc. that are "arising out of the factual predicates of the Action." V/MC Stip., ¶32; *see Payment Card 2024*, 2024 WL 3236614, at *34 (recognizing with approval that release "contain[ed] the 'de-facto severability clause' described by the Second Circuit: 'this release shall extend to, but only to, the fullest extent permitted by federal law'" and was "constrained by the 'identical factual predicate' test").

### e.     Any Agreement Required To Be Identified Under Rule 23(e)(3)

There are no such agreements to be disclosed here. Aguilar Decl., ¶13.

### 2. The Proposed Settlement Treats Class Members Equitably

As with the Earlier Settlements, which treats Class Members the same through the *pro rata* based Distribution Plan, this factor weighs in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement. Plaintiffs incorporate by reference their arguments in Section III(B)(2) of the Discover/Amex Prelim Memo at page 41.

### 3. The Reaction of the Class to the Settlement, to the Extent It Can Be Assessed at this Stage, Supports the Settlement

As with the Earlier Settlements, this factor weighs strongly in favor of the Court finding that it is likely to be able to grant final approval of the V/MC Settlement. The limited reaction of the Class can be gauged by the limited opt-outs following notice of class certification. Plaintiffs incorporate by reference their arguments in Section III(B)(3) of the Discover/Amex Prelim Memo at page 42.

## IV. THE SETTLEMENT NOTICE PLAN IS CONSISTENT WITH WHAT WAS ORDERED FOR CLASS NOTICE AND IS REASONABLE

The Notice plan remains the same as what was proposed in connection with the Discover/Amex Prelim Motion. Plaintiffs have updated the notices to reflect the additional settlement with Visa and Mastercard, and they are attached to the Aguilar Decl. as Exhibits 4-8. Other than this change, Plaintiffs incorporate by reference their arguments in Section IV of the Discover/Amex Prelim Memo at pages 43-46. As explained therein, the proposed notice plan is reasonable and should be approved, and the Court should exercise its discretion to approve the settlements without a second opportunity to opt-out, in light of the notice of class certification already provided.

## V. THE PROPOSED SCHEDULE OF EVENTS IS FAIR AND REASONABLE

Plaintiffs respectfully submit that it would be most efficient to have one hearing for preliminary approval of the Earlier Settlements and the V/MC Settlement, to be followed by one

fairness hearing for both the Earlier Settlements and the V/MC Settlement. Plaintiffs have submitted a proposed order herewith contemplating the Court's approval of the Earlier Settlements along with the V/MC Settlement. With that caveat, as set out in the Proposed Order, Plaintiffs propose the following schedule for all of the settlements:

| Event | Timeline |
|---|---|
| Completion of the Settlement Notice Plan to the Class | Within 60 days of the Court's entry of the Preliminary Approval Order ("Order Date"). |
| Submission of motion for attorneys' fees, expenses and service awards for the class representatives | Within 70 days of the Order Date. |
| Deadline for Class Members to object to the settlement | Within 100 days of the Order Date. |
| Plaintiffs' notice to the Court confirming completion of Settlement Notice Plan | Within 115 days of the Order Date. |
| Submission of motion and memorandum in support of final approval of the settlement and any responses by the parties to any objections filed by any Class members | Within 125 days of the Order Date. |
| Fairness Hearing | On a date to be set by the Court, but no earlier than 140 days from the Order Date. |

This schedule is fair to Class members. It gives Class Members 40 days to review the preliminary approval papers and Settlements before deciding whether to object. And it gives 30 days for Class Members to consider Class Counsel's application for fees, expenses, and class representative service awards before deciding whether to object to any or all of them. Accordingly, Plaintiffs respectfully request that the Court issue the Proposed Order establishing the schedule set forth therein.

## VI.    CONCLUSION

The motion for preliminary approval should be granted.

Dated: October 10, 2025

Respectfully submitted,

**ROBBINS LLP**

*s/ George C. Aguilar*
GEORGE C. AGUILAR (*pro hac vice*)
MICHAEL J. NICOUD (*pro hac vice*)
JACOB W. OGBOZO (*pro hac vice*)
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsllp.com
mnicoud@robbinsllp.com
jogbozo@robbinsllp.com

**DEVINE GOODMAN & RASCO, LLP**
JOHN W. DEVINE
2800 Ponce De Leon Boulevard, Suite 1400
Coral Gables, FL 33134
Telephone: (305) 374-8200
Facsimile: (305) 374-8208
jdevine@devinegoodman.com

**LAW OFFICES OF**
  **THOMAS G. AMON**
THOMAS G. AMON
420 Lexington Avenue, Suite 1402
New York, NY 10170
Telephone: (212) 810-2430
Facsimile: (212) 810-2427
tamon@amonlaw.com

*Class Counsel and Attorneys for Plaintiffs B & R
Supermarket, Inc. (d/b/a Milam's Market), Grove
Liquors LLC, Strouk Group LLC (d/b/a Monsieur
Marcel), and Palero Food Corp. and Cagueyes
Food Corp. (d/b/a Fine Fare Supermarket)*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on October 10, 2025, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered parties and attorneys of record.

*s/ George C. Aguilar*
GEORGE C. AGUILAR
**ROBBINS LLP**
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
gaguilar@robbinsllp.com
