

5060 Shoreham Pl., Ste. 300
San Diego, CA 92122
619.525.3990 *phone*
619.525.3991 *fax*
www.robbinsllp.com

August 5, 2026

**VIA CM/ECF**

Honorable Brian M. Cogan                    Magistrate Judge Joseph A. Marutollo
U.S. District Court                         U.S. District Court
  for the Eastern District of New York        for the Eastern District of New York
225 Cadman Plaza East                       225 Cadman Plaza East
Courtroom 10A South                         Courtroom 11A South
Brooklyn, NY 11201                          Brooklyn, NY 11201

Re:   ***B & R Supermarket, Inc., et al. v. Visa, et al.*,**
      **Case No. 1:17-cv-02738-BMC-JAM**

Dear Judges Cogan and Marutollo:

Pursuant to the Court's July 31, 2026 order, Class Counsel and attorneys for plaintiffs B & R Supermarket, Inc. (d/b/a Milam's Market), Grove Liquors LLC, Strouk Group LLC (d/b/a Monsieur Marcel), and Palero Food Corp. and Cagueyes Food Corp. (d/b/a Fine Fare Supermarket) (collectively, "Plaintiffs"), respectfully submit this supplemental brief in support of their Unopposed Motion for a Prospective Order Concerning Misleading Third-Party Claims Filing Services ("Motion") (Dkt. No. 999).

**The Court Has the Authority to Enter Orders Ensuring the Integrity of the Proceedings and the Protection of the Class**

This Court has previously recognized that "[a]s part of its obligation to protect class members, the Court has broad authority to regulate the behavior of non-parties in their dealings with the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* ("*In re Payment Card"*), 768 F. Supp. 3d 418, 431 (E.D.N.Y. 2025) (citing *In re Payment Card*, No. 05-MD-1720 (JG), 2014 WL 4966072, at *1 (E.D.N.Y. Oct. 3, 2014) (noting that "[t]he Court's authority is clear, and its obligation to protect class members is strong")). This authority is empowered by a "procedural basis, under Federal Rule of Civil Procedure 23(d), or an equitable basis, under the All Writs Act." *Id.* (citing *In re Payment Card*, 2014 WL 4966072, at *1). Thus, in circumstances like here, where "a district court retains exclusive jurisdiction over settlement agreements and distribution of settlement funds pursuant to those agreements, it may issue orders necessary to protect the settlement from threats by both parties and non-parties." *In re Visa Check/Mastermoney Litig.*, No. CV-96-5238 (JG), 2006 WL 1025588, at *4 (E.D.N.Y. Mar 31, 2006).[1]

---

[1] Here, as throughout, all citations and footnotes are omitted and all emphasis is deemed added, unless otherwise noted.



First, "[t]he All Writs Act, 28 U.S.C. § 1651(a), authorizes courts to enter curative orders in the context of class action settlement agreements as necessary 'to protect the settlement from threats by both parties and non-parties.'" *In re Payment Card*, 768 F. Supp. 3d at 431 (citing *In re Visa Check*, 2006 WL 1025588, at *4). These orders "may extend to anyone 'in a position to frustrate the implementation of a court order or the proper administration of justice.'" *Id.* (citing *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)). The Court can "'prohibit communications with class members entirely, compel communications correcting misleading statements, and declare contracts between third parties and class members void.'" *Id.* (citing *In re Visa Check*, 2006 WL 1025588, at *5).

Second, "Rule 23(d) of the Federal Rules of Civil Procedure also gives courts the authority to regulate communications by parties and their counsel with class members. As the Supreme Court has explained, '[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties.'" *Id.* at 431-32 (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)).

**It Is Appropriate and Prudent to Adopt Modest Guardrails Now that Will Preemptively Protect the Class from Misleading or False Information**

This Court has repeatedly recognized both that it has the power to take proactive measures to protect the interest of a class and that it is prudent to do so. For example, just last year the Court recognized in the *Interchange* action[2] that "efforts have consistently been made to ***proactively*** protect class members from deception." *In re Payment Card*, 768 F. Supp. 3d at 424. Indeed, the Court has recognized that "the overwhelming majority of the members of the merchant class need protection from overreaching claims filing services, and [the Court] intend[s] to provide that protection ***proactively***. *Preventing confusion and deception before they can happen is far preferable to taking remedial measures after they happen*." *Id.* (citing *In re Payment Card*, Text Order, Dkt. No. 6147) (alterations in original, emphasis added).

Moreover, the Court is empowered, under the All Writs Act, or under Rule 23(d), to take action now, even though no misleading conduct has yet occurred. The Second Circuit has recognized this prophylactic power, noting that "[a]n important feature of the All-Writs Act is its grant of authority to enjoin and bind non-parties to an action ***when needed*** to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985) (citing *New York Tel. Co.*, 434 U.S. at 174 (recognizing "[t]he power conferred by the [All Writs Act] extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a

---

[2] *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, No. 05-MD-1720-BMC-JAM (E.D.N.Y.).

court order or the proper administration of justice, and ***encompasses even those who have not taken any affirmative action to hinder justice***.")).

Similarly, an order pursuant to Rule 23(d) need only take into account "a weighing of the need for a limitation and the ***potential*** interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101-02. Thus, a "carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances" under Rule 23(d) need only "identify[] the ***potential*** abuses being addressed." *Id.*; *see also In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (recognizing that "Rule 23(d) does not, however, require a finding of ***actual*** harm; it authorizes the imposition of a restricting order to guard against the ***'likelihood*** of serious abuses.'" (emphasis in original) (citing *Gulf Oil*, 452 U.S. at 104)).

With this prospective class protection in mind, this Court has previously entered orders addressing potential harm that went beyond the actual harm already identified. For example, in September 2018, the Court recognized in connection with an anticipated settlement agreement in *Interchange* that "various third-party entities [will] seek new business relationships based on the proposed settlement" and adopted certain requirements for "***[a]ll*** third-party filing companies wishing to represent merchants …." *In re Payment Card*, 768 F. Supp. 3d at 425 (citing Dkt. No. 7260). Similarly, in *In re Visa Check*, the Court recognized, in considering the "power conferred by [the All Writs Act]" that the Court had power to "take steps, both ***proactive*** and reactive, to protect each class member's interest in the settlement funds." *In re Visa Check*, 2006 WL 1025588 at *4-5. Thus, even though there have not yet been any fraudulent or misleading statements identified, the Court has the power to proactively protect the Class.

Given the Court's power to protect the Class, and the lessons learned from the *Interchange* action, it would be prudent to enter the proposed order now, to attempt to minimize the issues the Class may face.

First, the ***potential*** abuses are known from the Court's long history with the *Interchange* action. While the classes and settlements are not coextensive, there are similarities. For example, this Class also contains merchants of all manner and size. Moreover, we expect that many of the same third-party filing services who participated or sought to participate in the *Interchange* settlement will seek to leverage those efforts here as well. Indeed, Class Counsel and the Claims Administrator have already been informed by certain third-party filers who purport to represent claimants in *Interchange* that they will be looking to do so in this settlement as well. Despite the Court's best efforts to minimize disruptions in the *Interchange* settlement, there have still been issues with third-party filers necessitating monthly reports, and in some instances escalating up to requests for sanctions. *See, e.g.*, *In re Payment Card*, 768 F. Supp. 3d at 425-26 (noting monthly reports), 432-433 (considering requests for permanent injunction and sanctions). Waiting until abuses occur will only exacerbate these issues and worsen the potential for deception or confusion for Class members.

Second, the relief requested is narrow and tailored to the specific ***potential*** abuse identified. The requested relief would require third-party filing services to include three basic, factual statements in their solicitations or marketing materials in connection with this settlement.

Dkt. No. 999-2 at 2 (¶1.A). It would also require them to direct class members to the Court-approved Settlement website. *Id.* at 2 (¶1.B). The other provisions provide for explicit potential remedies for violation of these basic ground rules. *Id.* at 2-3 (¶¶3-5). This narrowly requested relief is modeled closely on what was adopted in *Interchange* to minimize misleading or fraudulent information being perpetuated through third-party filing services. *Compare In re Payment Card*, 768 F. Supp. 3d at 425, *with* Dkt. No. 999-2 at 2-3. Other courts have implemented similar guardrails for third-party filers. *See*, *e.g.*, Order Regarding Third-Party Claims Filing Services, *In re College Athlete NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal. Nov. 26, 2024), ECF No. 576.

Further, the relief sought relates to commercial speech, which is "not afforded the highest level of First Amendment protection." *In re Initial Pub. Offering Sec. Litig.*, 499 F. Supp. 2d 415, 421 n.23 (S.D.N.Y. 2007) (recognizing that "[g]iven that a substantial portion of these communications contain solicitations for clients, these press releases are likely commercial speech"). "The First Amendment does not protect misleading commercial speech, which may be prohibited by the government if it is more likely to deceive the public than to inform it." *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV. 3288 (DLC), 2003 WL 22701241, at *8 (S.D.N.Y. Nov. 17, 2003) (citing C*ent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563-64 (1980)).

Accordingly, Class Counsel respectfully submit that the Court has the authority to enter the requested relief, and that it would be appropriate and prudent to do so now, to attempt to minimize the same type of misconduct that has created a substantial amount of extra work for the Court and the parties, and cost to the class, in *Interchange*.

Respectfully submitted,

*/s/ Michael J. Nicoud*

Michael J. Nicoud
(admitted *pro hac vice*)
*Attorney for Plaintiffs*

cc:     All Counsel of Record (via CM/ECF)